ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
LAW OFFICES OF ANDREW L. PACKARD
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062
andrew@packardlawoffices.com
wncarlon@packardlawoffices.com

WILLIAM VERICK (State Bar No. 140972)
KLAMATH ENVIRONMENTAL LAW CENTER
1125 16th Street, Suite 204
Arcata, CA 95521
Tel: (707) 630-5061
Fax: (707) 630-5064
Email: wverick@igc.org

J. KIRK BOYD (State Bar No. 122759)
LAW OFFICE OF JOHN KIRK BOYD
548 Market St., Suite 1300
San Francisco, CA 94104-5401
Tel: (415) 440-2500
jkb@drjkb.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PACIFIC BELL TELEPHONE COMPANY,<br><br>　　　　Defendant. | Case No. 2:21-cv-00073-MCE-JDP<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>**(Federal Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)(1)(B)** |

CALIFORNIA SPORTFISHING PROTECTION ALLIANCE ("CSPA" or "Plaintiff"), by and through its counsel, hereby alleges:

## I. JURISDICTION AND VENUE

1. This is a civil suit brought under the citizen suit enforcement provision of the Federal Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)(1)(B) ("RCRA") against Pacific Bell Telephone Company ("Pac Bell" or "Defendant"). This Court has subject matter jurisdiction over the parties and the subject matter of this action pursuant to RCRA Section 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), 28 U.S.C. § 1331 (an action arising under the laws of the United States) and 28 U.S.C. §§ 2201–2202 (power to issue declaratory relief in case of actual controversy and further necessary relief based on such a declaration).

2. As required by RCRA, between August 6, 2020 and August 20, 2020, Plaintiff provided Defendant with a written Notice of Violation of Federal Law and Notice of Intent to Begin Citizen Enforcement Action ("Notice Letter"), a true and correct copy of which is attached to this Complaint as **Exhibit A**, and which is incorporated by reference in full. *See* 33 U.S.C. § 1365(b)(1)(A); 40 C.F.R. § 135.2(a)(1). The Notice Letter was provided by certified mail return receipt requested, and by personal service on Defendant's Chief Executive Officer and agent for service of process. Plaintiff mailed a copy of the Notice Letter to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region IX; the California Attorney General, the Acting Director of the California Department of Resources, Recycling and Recovery pursuant to 40 C.F.R. § 254.2. Each of these Notice Letters were delivered to the intended recipients no later than August 27, 2020.

3. More than ninety days have passed since Plaintiff served the Notice Letter on Defendant and the agencies. Plaintiff is informed and believes, and thereupon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting a court action to redress the violations alleged in this Complaint.

4. Venue is proper in the Eastern District of California pursuant to RCRA Section 7002(a), 42 U.S.C. § 6972(a) because the sources of the violations are located within this District. Venue is also proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to

Plaintiff's claims occurred in this District. Intra-district venue is proper in Sacramento, California, because the sources of the violations are located in El Dorado and Placer Counties.

## II. INTRODUCTION

5. This Complaint seeks relief for Defendant's ongoing violations of RCRA. Defendant Pac Bell operated two submarine telecommunications cables ("Cables") that traversed portions of Lake Tahoe. These Cables are situated on the bottom of Lake Tahoe and, if measured end-to-end, the total length of the Cables would be approximately 41,600 feet. The two Cables share a similar structure. Each Cable has an outer coating of jute impregnated with tar/bitumens. Inside this jute coating are 0.25 inch steel rods that run the length of the submarine portions of the Cables. These steel rods are meant to protect the inner portion of each Cable. The inner portion of each cable consists of a lead jacket with walls approximately 0.25 inches thick. This lead jacket surrounds the copper strands and is meant to protect them from contact with water. Each foot in length of the Cables contains approximately 3.3 pounds of lead. The portions of the Cables that are at issue in this case – laying on the bottom of Lake Tahoe – therefore contain approximately 137,000 pounds (more than 68 tons) of lead.

6. The Cables are no longer operative. At some point in the past, Defendant replaced the Cables with new, more modern cables, placed either in the same location or routed through a different location. Once a Cable was replaced, it – and all of the lead it contained – was abandoned on the bottom of Lake Tahoe. Both of the Cables at issue in this case have been abandoned. One of the Cables has been cut at one or both ends; both Cables appear to not have been in service for years.

7. Plaintiff has obtained a portion of one of the Cables and has tested it to determine whether the Cables are likely to leach lead into Lake Tahoe. A piece of the Cable approximately 40 centimeters in length was submerged in a plastic container of Lake Tahoe water. A sample was taken of the water after one day and analysis of that sample showed that enough lead had dissolved from the Cable into the water to cause the water to have a concentration of 650 micrograms of lead per liter of water. A second sample of the water was taken after seven days and analysis of that sample showed that enough lead had continued to be dissolved from the Cable to raise the concentration of lead in the water to 1,500 micrograms per liter. A reasonable inference that can be drawn from this data is that lead in the Cables is being disseminated into the aquatic environment of Lake Tahoe, and that humans and wildlife

who make contact with, or who drink, Lake Tahoe water are exposed to the toxic heavy metal, lead.

8. Lead is a chemical that is known to the State of California to cause cancer and reproductive toxicity within the meaning of Cal. Health & Safety Code § 25249.8.  California Code of Regulations, title 27, section 27001, subparagraphs (b) and (c).  Various agencies of California and the United States government – including California's Office of Health Hazard Assessment, the federal Occupational Safety and Health Administration, the federal Department of Health & Human Services and the federal Environmental Protection Agency – have determined that exposure to lead impairs development of the central nervous system in species that have central nervous systems, including birds, fish and mammals, including humans, at blood lead levels as low as can be measured.  Each of these agencies has determined that exposure to lead causes sterility in male mammals, including male humans; and the Department of Health & Human Services and the Environmental Protection Agency have both determined that exposure to lead delays the onset of puberty in female mammals, including female humans.

9. Lake Tahoe is a water of the State of California.  The Regional Water Quality Control Board for the Lahontan Region ("Regional Board"), as part of its Water Quality Control Plan for the Lahontan Region ("Basin Plan"), has determined Lake Tahoe to be an existing source of municipal and residential water supply.  The Basin Plan also states that the Regional Board has determined that the beneficial uses of Lake Tahoe also include wildlife habitat and water contact recreation.  People boat on and swim in Lake Tahoe and make physical contact with its waters.  Lake Tahoe is habitat for many species of water fowl, for fish-eating species of birds such as osprey, fishers, eagles, and others members of the *accipitridea* family of birds, for many species of fish, and for marine mammals such as otters.

III. **THE PARTIES**

10. Plaintiff CSPA is a non-profit public benefit corporation organized under the laws of California, based in Stockton, California.  CSPA is dedicated to the preservation, protection and defense of the environment, wildlife and natural resources of California waters, including the waters of Lake Tahoe.  Members of CSPA boat on and swim in Lake Tahoe, and drink water drawn from the Lake. Members of CSPA use Lake Tahoe to fish, boat, kayak, swim, bird watch, view wildlife, and engage in scientific study.  Members of CSPA also work on and in the waters of Lake Tahoe, making physical

First Amended Complaint for Declaratory and Injunctive Relief and Civil Penalties

4

contact with those waters on a regular basis.  Lead that dissolves from the Cables threatens or impairs each of those uses and/or contributes to such threats and impairments.  For example, lead that dissolves from the Cables is present in Lake Tahoe water.  When CSPA members contact or drink that water, their body burden of lead is increased and they, and/or their children, face a concomitant increased risk of sterility, neurodevelopmental toxicity, cancer, and other physical ailments associated with exposure to lead.  Thus, the interests of CSPA's members have been, are being, and will continue to be adversely affected by Defendant's ongoing failure to comply with RCRA.  The relief sought herein will redress the harms to Plaintiff caused by Defendant's activities because that relief will significantly reduce lead being discharged from Defendant's Cables into Lake Tahoe.   To further its goals, CSPA actively seeks federal and state agency implementation of state and federal laws that protect the integrity of California waters, and as necessary, directly initiates enforcement actions on behalf of itself and its members.

11.     Pacific Bell Telephone Company ("Pac Bell") is a corporation that provides telecommunication services in California.

12.     Pac Bell had the telecommunications Cables denoted in the Notice Letter as Cables A and B (herein referred to as Emerald Bay Cable and 7-Mile Cable, respectively) (including their lead components) installed in Lake Tahoe.

13.     Pac Bell owned and operated these two telecommunications Cables as part of its business providing telecommunication services.

## IV.   LEGAL BACKGROUND

### Resource Conservation and Recovery Act

14.     Congress enacted RCRA to provide a remedy for harm caused by disposal of solid waste that may present an imminent and substantial endangerment to health or the environment.  42 U.S.C. § 6972(a)(1)(B) authorizes commencement of a civil action to enjoin such disposal of waste.  RCRA allows such a civil action to be brought against, "any person . . . who has contributed or who is contributing to the past or present handling, storage, treatment transportation or disposal of any solid or hazardous waste which may present in imminent and substantial endangerment to health or the environment."

## V.   STATEMENT OF FACTS

15. Pac Bell, as part of its business of providing telecommunications services in California, installed two telecommunications Cables and routed submarine portions of those Cables through parts of Lake Tahoe. One of these Cables crosses the mouth of Emerald Bay, with approximately 2,000 feet of cable submerged on the Lake bottom ("Emerald Bay Cable"). A second Cable ran (and remains) submerged for approximately 39,600 feet close to and along the western shore of the Lake ("7-Mile Cable"). More precise geographical coordinates for the location of these Cables are provided in the Notice Letter, appended hereto as **Exhibit A**, and wholly incorporated by reference into this Complaint.

16. The Cables contain approximately 3.3 pounds of elemental lead per foot. This lead is confined within the Cable in a crystal matrix.

17. As time and technology progressed, the copper strands in these Cables became obsolete; cables made of fiber optic strands offered more reliability and much greater capacity. At a yet to be determined time in the past, Pac Bell replaced the Cables, submerged portions of which are relevant to this action. When Pac Bell installed new fiber optic cables along the same submarine right of way as the Emerald Bay Cable crossing Emerald Bay, it obtained permission from the California Lands Commission to abandon the older copper-strand-Cable in place, and did so. The second Cable, the 7-Mile Cable, running along the western shore of the Lake has also been abandoned in place. The Cables are no longer used for any purpose.

18. The Cables have not been maintained and have been worn and damaged over time. The tar-impregnated jute coating can be seen to have been abraded and washed away over certain portions of the Cables. Boat anchors and debris have torn into parts of the Cables, exposing the lead sheathing that was originally designed to protect the copper strands from contact with water. Cable A is cut at both ends, exposing the lead sheathing.

19. When Pac Bell decommissioned the Cables, it generated a waste in the form of the Cables. When Pac Bell abandoned the Cables, it disposed of that waste in the waters of Lake Tahoe.

20. Lake Tahoe water contacts the lead sheathing in the Cables and dissolves the lead, and then distributes the lead throughout Lake Tahoe and its larger environment. Lead is taken up by plants and animals and is thus introduced into the food chain of the larger Lake Tahoe ecosystem,

concentrating in organisms as the lead moves up the food chain into higher benthic level organisms. Lake Tahoe is designated as a source of domestic and municipal drinking water.

21. For Californians, Lake Tahoe is a natural wonder, an icon. For more than 150 years, Californians have enjoyed recreating on the Lake, observing the wildlife that thrives in, on and around it. As long ago as 1869, Mark Twain described his fascination with Lake Tahoe in his novel, *The Innocents Abroad*.

22. Lead is a chemical that has long been known to cause neuro-toxicity. In the past decade, federal government agencies published the results of three large scale overviews of the toxicity of lead. These overviews evaluated lead toxicity in light of existing body of peer-reviewed, published research. Lead is especially toxic to the developing nervous system. There are various critical phases of the development of a central nervous system, including, for example, the genesis of synapses and synaptic pruning. Lead has been shown to impair both of these critical functions. Impairment of the genesis of synapses means that the nervous system develops without all of the needed synapses, which affects learning and memory. Impairment of synaptic pruning affects the ability to focus attention and to concentrate. Being able to learn, remember and to concentrate are three key components of what is commonly called intelligence. Not surprisingly, therefore, humans and other animals exposed perinatally to lead exhibit impaired performance on tests designed to assess intelligence. Children exposed to lead before age 6 have been shown to lose approximately one point of IQ for each microgram per deciliter increase in their blood lead levels. All three of the federal agencies that conducted these overviews of lead toxicity (The Agency for Toxic Substances and Disease Registry, the Environmental Protection Agency and the National Toxicology Program) concluded that there is sufficient evidence to conclude that exposure to lead in developing humans impairs their short-term memory and executive function – the ability to formulate and execute a plan. Lead has been shown to be toxic in this way at exposure levels as low as can be measured. There is no level of lead exposure that has been shown not to cause neurodevelopmental toxicity.

23. Lead causes neurodevelopmental toxicity to humans, fish, birds, non-human mammals and all other animals that have central nervous systems. Human beings, water fowl, birds, marine and other mammals, and fish are exposed to lead that leaches off the Cables into the wider water column of

Lake Tahoe. These exposures occur when these animals and humans make physical contact with Lake Tahoe water, when they drink that water, and when they ingest the flesh of other animals that have ingested lead from the water of Lake Tahoe. Once ingested, lead is absorbed into the bones and teeth of the exposed animal, and exists in a dynamic equilibrium with the lead in blood cells and blood plasma. Lead stored in bones and teeth is the major portion of the body burden of lead that most animals carry with them. Lead stored in bones is released into the blood stream under certain conditions, most often when mammals lactate. Lead released into the blood stream then perfuses developing nervous tissue, and impairing that development as described in the preceding paragraph. As such, exposure to lead that has leached off the Cables and into the Lake Tahoe water column may cause imminent and substantial harm to Lake Tahoe-associated humans and wildlife.

## FIRST CLAIM FOR RELIEF
### Violations of RCRA
### 42 U.S.C. § 6972(a)(1)(B)

24. Plaintiff incorporates the allegations contained in the above paragraphs of this complaint as though fully set forth herein.

25. To further the ends of its telecommunications business, Pac Bell has abandoned the Cables on the bottom of Lake Tahoe. As such, the Cables are solid waste within the meaning of RCRA and Pac Bell has disposed of them, also within the meaning of RCRA.

26. The two Cables Pac Bell disposed of on the bottom of Lake Tahoe together contain more than sixty tons of lead.

27. Lead in the Cables comes into contact with the water of Lake Tahoe, which dissolves the lead, thus causing people who make physical contact with the water to be dermally exposed to lead. This dissolved lead from the cables is also ingested by humans when they drink water from Lake Tahoe or when they eat fish caught in Lake Tahoe. Other animals in the greater Lake Tahoe ecosystem are exposed to lead in similar ways.

28. Lead is neurodevelopmentally toxic in all animals that possess a central nervous system, is toxic to spermatogenesis and sperm health, and delays onset of puberty in female humans and females of many other species.

29. Because many vulnerable species are exposed to lead from the Cables, Pac Bell's disposal of the Cables on the bottom of Lake Tahoe causes, or may cause, imminent and substantial harm to human health and/or the environment. Pac Bell's continuing disposal of the Cables on the bottom of Lake Tahoe thus violates 42 U.S.C. § 6972(a)(1)(B). As such, Pac Bell is subject to an injunction ordering Pac Bell to remove the Cables from Lake Tahoe.

## VI. RELIEF REQUESTED

Wherefore, CSPA respectfully requests that this Court grant the following relief:

a. Declare Pac Bell to have violated and to be in violation of 42 U.S.C. § 6972(a)(1)(B);

b. Enjoin Pac Bell from further and continuing disposal of the Cables where the Cables are in contact with the waters of Lake Tahoe;

c. Enjoin Pac Bell from further and continuing release of lead from the Cables into the waters of Lake Tahoe;

d. Order Pac Bell to undertake measures to remediate the release of lead resulting from Pac Bell's disposal of Cables in the waters of Lake Tahoe.

e. Award Plaintiff's costs and fees (including reasonable attorney, witness, and consultant fees) as authorized by RCRA; and,

f. Award any such other and further relief as this Court may deem appropriate.

Dated: April 7, 2021                    Respectfully Submitted,

                                        LAW OFFICES OF ANDREW L. PACKARD

                                        By: /s/ Andrew L. Packard

                                        Andrew L. Packard
                                        Attorneys for Plaintiff
                                        CALIFORNIA SPORTFISHING
                                        PROTECTION ALLIANCE

**EXHIBIT A**



August 6, 2020

| | | |
|---|---|---|
| Ken DaRosa, Acting Director<br>California Department of Resources, Recycling and Recovery<br>1001 "I" Street<br>Sacramento, CA 94814 | Rhonda J. Johnson, CEO<br>Pacific Bell Telephone Company<br>430 Bush Street<br>San Francisco, CA 94108 | Proposition 65 Enforcement Reporting<br>Attention Prop 65 Coordinator<br>1515 Clay St., Suite 2000<br>Oakland, CA 94612 |
| Andrew R. Wheeler, Administrator<br>U.S. EPA<br>1200 Pennsylvania Ave, N.W.<br>Washington, D.C. 20460 | John Busterud, Regional Administrator<br>U.S. EPA, Region 9<br>75 Hawthorne Street<br>San Francisco, CA 94105 | CT Corporation System<br>Registered Agent for<br>Pacific Bell Telephone Company<br>818 West Seventh St., Ste 930<br>Los Angeles, CA 90017 |
| District Attorney<br>El Dorado County<br>778 Pacific Street<br>Placerville, CA 95667 | Douglas A. Cannon, CEO<br>Sierra Pacific Power Company<br>6100 Neil Road<br>Reno, NV 89511 | Corpservices Company<br>Registered Agent for<br>Sierra Pacific Power Company<br>8301 Florence Ave, #201<br>Downey, CA 90240 |
| District Attorney<br>Placer County<br>10810 Justice Center Dr., #240<br>Roseville, CA 94678 | Ian Robertson, CEO<br>Liberty Utilities (CalPeco Electric) LLC<br>345 Davis Rd. Suite 100<br>Oakville L6J 2X1<br>ON, Canada | CT Corporation System<br>Registered Agent for Liberty Utilities (CalPeco Electric) LLC<br>818 West Seventh St. Ste 930<br>Los Angeles, CA 90017 |

BY CERTIFIED MAIL
RETURN RECEIPT REQUESTED

    **Re:    Notice of Violations of Federal Law and Notice of Intent to Begin Citizen Enforcement Action**

Greetings:

    I write on behalf of the California Sportfishing Protection Alliance (hereinafter, "CSPA") to notify you of violations of federal and California law caused by four submerged cables (the

"Cables") that lie abandoned in Lake Tahoe's Emerald Bay and along the west shore of Lake Tahoe. Three of these Cables are submarine telecommunications cables; the other is a submarine power cable. Lake Tahoe is located in the California counties of Placer and El Dorado. These violations have been, and are continuing to be, committed by the "Noticed Parties" described in Section II, below, and, more fully, as the private entities in the attached Service List.

CSPA has conducted an investigation of the Cables, including having divers swim above them and photograph them, to determine the extent to which they discharge lead into Lake Tahoe. Lake Tahoe is an existing source of domestic and municipal drinking water. The Cables vary in size and length with three of them, two telecommunications and one power, crossing along the bottom near the mouth of Emerald Bay, and another one approximately five and a half miles traveling along the west shore of the lake. All of the Cables are damaged and discharging lead into Lake Tahoe.

The Cables are as follows:

**Cable A**.

Cable A is approximately 2000 feet long, submerged in Emerald Bay. The latitude and longitudinal coordinates for the southern endpoint is 38.96421504N -120.08144917W and 38.96482016N -120.08359610W for the northern endpoint. A visual inspection shows that Cable A is a submarine telecommunications type with an outer layer of jute impregnated with bitumens/tar, which covers steel rods that protect the interior of Cable A. Under the steel rods is a thick lead sheath that surrounds strands of copper wrapped in paper. This cable has been cut at both ends. An analysis of the piece of the cut end of Cable A reveals that the Cable contains per foot, 3.39 pounds of lead, 4.15 pounds of steel, 0.71 pounds of petroleum-based tar-impregnated jute and 0.77 pounds of copper. Accordingly, in its 2,000-foot length, Cable A contains approximately 6,780 pounds of lead. A visual inspection of Cable A reveals that not only is the Cable cut at one end, so obviously it is not in working condition, but the Cable is damaged at various places along its length, by boat anchors and in other ways, such that, in these damaged portions, the tar-impregnated jute covering no longer prevents water intrusion into the interior of the Cable.

**Cable B.**

Cable B is approximately five and a half miles long. It is submerged along the west shore of Lake Tahoe with the latitude and longitudinal coordinates for the southern end point of 38.94396945N -120.06913414W and 39.00944887N -120.11311122W for the northern endpoint. Cable B appears on close visual inspection to be of the same size, type and character as Cable A. At various points along its more than 5.5-mile length, Cable B has been damaged by boat anchors and has frayed on submerged rocks to the point that the lead sheath is directly exposed

to lake water.  Based on an estimated 3.39 pounds per foot, the submerged portion of Cable B contains approximately 89,500 pounds of lead.

### Cable C.

Cable C is approximately 2,000 feet long and submerged in Emerald Bay with latitude and longitudinal coordinates of 38.96105015N -120.08387085W for the southern end point and 38.96478251N -120.09067881W for the northern endpoint.  A close visual inspection reveals that the Cable is a telecommunication cable of a submarine type. At various points it has been damaged by boat anchors and has frayed on submerged rocks to the point that the lead sheath is directly exposed to lake water.  It appears to be unworkable and abandoned.  Cable C is smaller in diameter than Cable A or Cable B.  Nevertheless, it is estimated that the submerged portion of Cable C contains thousands of pounds of lead.

### Cable D.

Cable D is approximately 2,000 feet long and submerged in Emerald Bay with latitude and longitudinal coordinates for the southern end point of 38.96125614N -120.08451815W and 38.96439289N -120.09007347W for the northern endpoint.  A close visual inspection of Cable D reveals that it is a power cable and it is cut at both ends with the ends pulled away from the shore and left in deeper water. The GPS coordinates for the northern cut-end are 38.964735N -120.09058444W.  The cable is also severely damaged at several places along its length and, thus, is no longer being used.  Cable D is a submarine power cable with a lead sheath surrounding the inner core of copper wire.  The Cable is approximately the same diameter as Cables A and B.  Based upon this and visual inspection of Cable D, it is estimated that Cable D also contains approximately 3.39 pounds of lead per foot.  Accordingly, it is estimated that the submerged portion of Cable D contains 6,780 pounds of lead.

CSPA submerged a sample of Cable A in a plastic container filled with Lake Tahoe water.  After 24 hours, a sample was taken of the water and sent to a state-certified laboratory for analysis, which showed that enough lead had leached from the piece of the Cable to bring the concentration of lead in the water to 650 micrograms per liter.  After seven days, another sample of the water was taken and sent to the same laboratory for analysis, which showed that the concentration of lead in the water had risen to 1,500 micrograms per liter.  This is evidence that lead is leaching from the Cables into Lake Tahoe.  Since the Cables have similar composition, based on these findings, it is reasonable to infer that they are all presently discharging lead into Lake Tahoe well beyond established limits for safety.

Lead is a substance that causes neurodevelopmental toxicity, reproductive toxicity (including sterility and delayed onset of puberty in females) and cancer in humans and other animals.  Lead is known, pursuant to 27 Cal. Code Regs. section 27001, subsections (b) and (c), to cause cancer developmental and reproductive toxicity in both males and females.  This letter

begins the process by which CSPA will seek available remedies under the federal Resource Conservation and Recovery Act ("RCRA") and California's Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65"). CSPA will pursue these remedies to have the abandoned/discarded Cables removed from Lake Tahoe and disposed of in a way that they may no longer pose an imminent danger of substantial harm to human health, the health of other animals and the environment. Removal will prevent the ongoing discharge and release of lead into the waters of Lake Tahoe, a source of drinking water. CSPA will further seek civil penalties for Proposition 65 violations.

## I.     The Noticing Party

CSPA is a non-profit association dedicated to the preservation, protection and defense of the environment, wildlife and natural resources of California waters, including the waters of Lake Tahoe. CSPA's main office is at 3536 Rainier Avenue, Stockton, California, 95204. CSPA's telephone number is (530) 464-5067. In addition to other California counties, members of CSPA reside in Placer and El Dorado Counties. CSPA members utilize the waters of Lake Tahoe for recreation and work in, on and around Lake Tahoe. Members of CSPA drink water that comes from Lake Tahoe.

## II.    The Noticed Parties

Pacific Bell Telephone Company ("Pac Bell" or "Noticed Party") is a corporation that provides telecommunication services in California. Pac Bell at one time had the telecommunications Cables A, B and C (including their lead components) installed in Lake Tahoe. Pac Bell owned and operated the Cables A, B and C as part of its business providing telecommunication services. Cables A, B and C are no longer used. Pac Bell abandoned the Cables A, B and C in place on the bottom of Lake Tahoe and had at least one of these Cables cut at both ends in Lake Tahoe as part of that abandonment. For each of these three Cables, this Notice pertains to the Cables themselves, their lead sheathing, and the lead that dissolves off the sheathing and is discharged and released into the water of Lake Tahoe. Pac Bell is in violation of the Resource Conservation and Recovery Act ("RCRA") and the discharge to drinking water provisions of Proposition 65.

Sierra Pacific Power Company ("NV Energy" or "Noticed Party") provides electrical power to consumers in East Central California and Nevada. As part of its electrical utility service, Sierra Pacific Power Company owned and operated Cable D, and had it installed in Lake Tahoe. Later it had both ends of the cable cut and moved to a deeper portion of Emerald Bay where they could not be as easily seen. In this manner, Sierra Pacific abandoned/discarded/disposed of the cable leaving it to leach lead into Emerald Bay. This Notice pertains to Cable D itself, its lead sheathing, and the lead that dissolves off the sheathing and is discharged and released into the water of Lake Tahoe. NV Energy is in violation of the RCRA and the discharge to drinking water provisions of Proposition 65.

Liberty Utilities (CalPeco Electric), LLC is an electric utility company. In 2011, NV Energy assigned its lease for Cable D to California Pacific Electric Company, LLC ("CalPeco Electric"). CalPeco Electric was acquired by Liberty Utilities, LLC in 2012 and is now named, Liberty Utilities (CalPeco Electric), LLC (a "Noticed Party"). As part of its business of holding the lease from the State Lands Commission for Cable D, Liberty Utilities, LLC is thus responsible for the abandonment and discard of Cable D on the bottom of Lake Tahoe, is continuing its abandonment of Cable D on the bottom of Lake Tahoe, and continues to discharge and release lead from Cable D into Lake Tahoe waters. Liberty Utilities (CalPeco Electric) has been doing so each day for at least the past five years and will continue to do so each day into the future until Cable D is removed from the bottom of LakeTahoe is disposed of properly. Liberty Utilities (CalPeco Electric), LLC is in violation of the RCRA and the discharge to drinking water provisions of Proposition 65.

### III.    Factual Background: The Problem with Abandoning the Cables in Lake Tahoe

As discussed above, the submerged Cables have been cut or damaged, which has allowed water to intrude into the Cables. In addition, inspection of the submerged part of the Cables shows that as part of the damage to the Cables, sections of the tar-impregnated jute have virtually disappeared, leaving the steel protective rods exposed, and in some places severed. This means that in sections of the Cables that have been damaged in this way, lake water intrudes into the Cables and contacts the lead sheathing. It has been shown that when Lake Tahoe water contacts the lead sheathing in the Cable, the water dissolves lead from the sheathing. This lead-laden water then mingles with the larger body of Lake Tahoe water, polluting it with lead. Because the Noticed Parties have discarded/abandoned and disposed of the Cables in the manner they have, the Cables continuously discharge and release lead – a toxic heavy metal – into the local aquatic environment, which is a source of drinking water within the meaning of California Health & Safety Code section 25249.5.

The disposal and abandonment of the Cables in Lake Tahoe, and the subsequent and continuing discharge of lead from the Cables into Lake Tahoe poses a significant threat to the health of persons and to the local environment, including fish and wildlife. Not only is lead toxic to humans, it is also toxic to birds, fish and mammals. Numerous members of the public are exposed daily to lead from the Cables when they swim, boat and dive in Lake Tahoe and when they drink water drawn from Lake Tahoe, or eat fish caught in Lake Tahoe. The lead also increases the body burdens of lead in the fish, birds and mammals that live in or on Lake Tahoe and/or feed on prey that live in or on Lake Tahoe. These increased lead body burdens cumulatively subject humans and animals to significant health risks.

### IV. Specific Permits, Standards, Regulations, Conditions, Requirements or Orders Violated

#### A. RCRA Standard Violated

With regard to RCRA, this Notice pertains to the Noticed Parties' violations of 42 U.S.C. § 6972(a)(1)(B), which provides that:

> Any person may commence a civil action on his own behalf – against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

For purposes of RCRA, the Noticed Parties have contributed and are contributing to the past, present and future storage and disposal of solid waste, to wit the Cables and their lead sheathing, in a way that may present an imminent and substantial endangerment to health and the environment.

#### B. Provisions of Proposition 65 that are Being Violated

With regard to Proposition 65, this Notice pertains to the Noticed Parties' violations of Cal. Health & Saf. Code § 25249.5, which provides that:

> No person in the course of doing business shall knowingly discharge or release a chemical known to the state to cause cancer or reproductive toxicity into water or onto or into land where such chemical passes or probably will pass into any source of drinking water, notwithstanding any other provision or authorization of law except as provided in Section 25249.9.

The Noticed Parties cut the Cables and abandoned them, and left damaged Cables in Lake Tahoe. They did this as part of their business selling telecommunication services and electrical utility service in California and Nevada. As the Cables sit abandoned on the bottom of Lake Tahoe, they continuously discharge and release lead – a chemical known to the State of California to cause cancer and reproductive toxicity – into the waters of Lake Tahoe. Each Noticed Party employs ten or more persons and is thus a "person in the course of business" for purposes of California Health & Safety Code section 25249.11(b).

Pursuant to the Basin Plan for the Lahontan Region, Lake Tahoe has been designated an existing source of domestic and municipal water supply. As such, Lake Tahoe is a source of

drinking water within the meaning of California Health & Safety Code section 25249.11(d).  The Noticed Parties' business practice of leaving the Cables abandoned on the bottom of Lake Tahoe is thus a continuous violation of California Health & Safety Code section 25249.5 because the Cables continuously discharge and release lead into Lake Tahoe waters.

### C.  The Activity that Constitutes the Violations

This notice of intention to file a citizen suit pertains to the Cables, which lie discarded, abandoned and disposed of on the bottom of Lake Tahoe in Placer and El Dorado Counties, California.  The Cables continuously discharge and release lead into the waters of Lake Tahoe.  Humans and wildlife utilize Lake Tahoe and, in doing so, are exposed to the lead that the abandoned Cables discharge and release into the waters of Lake Tahoe.

Lead has long been known to be a potent neurotoxin.  There is an extensive toxicological literature that demonstrates that exposure to lead causes sterility in male humans and other mammals.  There is an extensive toxicological literature that demonstrates that exposure to lead delays the onset of puberty in female humans and other mammals.  Exposure to lead has been shown to kill aquatic bird life.  Lead is toxic to fish and, basically, any animal that has a central nervous system.  There is an extensive toxicological literature that demonstrates that pre-natal exposure to lead impairs the development of the central nervous systems of humans and other animals.  Lead does this at levels of exposure as low as can be measured.  Lead's toxic effect on the developing nervous system does so according to a supralinear curve, which means that lower levels of exposure do proportionately more harm to the developing nervous system than higher levels of exposure.  There is an extensive toxicological literature that demonstrates that for each one microgram per deciliter rise in the concentration of lead in blood of a human between conception and six years of age, there is a corresponding loss of approximately one IQ point.  There is no level of exposure to lead known to science that does not cause harm to humans and other animals.

## V.  The Persons Responsible for Violating RCRA and Proposition 65

The Noticed Parties are each responsible for violating RCRA and Proposition 65 as further described in this letter.

### A.  Dates of Violation of RCRA, 42 U.S.C. § 6972(a)(1)(B)

Lead has been discharged and released from the lead sheathing of the Cables into the waters of Lake Tahoe every day since the Noticed Parties cut the Cables and abandoned them on the bottom of Lake Tahoe and left them damaged on the bottom knowing they were damaged.  Lead will continue to be discharged and released from the lead sheathing of the Cables into the waters of Lake Tahoe, thus presenting an imminent and substantial endangerment to health and the environment that has occurred every day for at least the past five years and will continue every day into the future until the Noticed Parties remove the Cables from Lake Tahoe and properly dispose of them.  Accordingly, the Noticed Parties have been violating this RCRA

provision continuously for at least the past five years. Thus, the dates of violation to which this Notice pertains are each and every single day dating back at least five years from the date of this letter and continuing each day into the future until the abandoned Cables have been removed from Lake Tahoe and disposed of in a responsible manner.

### B.  Dates of Violation of Proposition 65

The Cables have discharged and released lead into the waters of Lake Tahoe every day for at least the past year preceding the date of this Notice letter. The Cables will all continue to discharge and release lead into the waters of Lake Tahoe each and every day into the future until the Noticed Parties remove the Cables from Lake Tahoe and properly dispose of them. The dates of violation of Health and Safety Code section 25249.5 are each day over at least the past year, plus every day into the future until the abandoned Cables have been removed from Lake Tahoe.

### VI.  Full Name, Address and Telephone Number of the Person Giving Notice

The full name, address and telephone number of the person providing this Notice is:

Bill Jennings, Executive Director
California Sportfishing Protection Alliance
3536 Rainer Avenue
Stockton, CA 95204
(209) 464-5067

### VII.  Name, Address and Telephone Numbers of Noticing Party's Counsel

William Verick
Klamath Environmental Law Center
1125 16th Street, Suite 204
Arcata, CA 95521
(707) 630-5061

Brian Acree
Law Offices of Brian Acree
331 "J" Street, Suite 200
Sacramento, CA 95814
(916) 505-6861

Andrew Packard
William Carlon
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
(707) 782-4060

Kirk Boyd
Law Offices of Kirk Boyd
548 Market Street, Suite 1300
San Francisco, CA 94104
(415) 440-2500

CSPA would be happy to discuss effective remedies for the violations referenced in this Notice. If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate these discussions immediately so that a resolution may be reached before the end of the

60-day notice period (for the Proposition 65 violations alleged here) and 90-day notice period (for the RCRA violations alleged here). Please contact counsel if you have any questions or would like more information

    Cordially,

*[signature]*

    William Verick