ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
LAW OFFICES OF ANDREW L. PACKARD
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062
andrew@packardlawoffices.com
wncarlon@packardlawoffices.com

WILLIAM VERICK (State Bar No. 140972)
KLAMATH ENVIRONMENTAL LAW CENTER
1125 16th Street, Suite 204
Arcata, CA 95521
Tel: (707) 630-5061
Fax: (707) 630-5064
Email: wverick@igc.org

J. KIRK BOYD (State Bar No. 122759)
LAW OFFICE OF JOHN KIRK BOYD
548 Market St., Suite 1300
San Francisco, CA 94104-5401
Tel: (415) 440-2500
jkb@drjkb.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>           Plaintiff,<br><br>     v.<br><br>PACIFIC BELL TELEPHONE COMPANY,<br><br>           Defendant. | CASE NO. 2:21-cv-00073-MCE-JDP<br><br>**PLAINTIFF'S STATUS UPDATE** |

PLAINTIFF'S STATUS UPDATE

On May 19, 2023, Plaintiff filed a Status Update with this Court. In that update, Plaintiff explained that there was a dispute with the Defendant, AT&T, as to whether or not the permits issued for the removal of cables leaking lead into Lake Tahoe created a prohibition on removal activities between Memorial Day and Labor Day, 2023. In meet and confer sessions prior to the filing of Plaintiff's Update, Defendant was of the opinion that the permits created an absolute prohibition on removal between Memorial Day and Labor Day. Plaintiff's opinion was that the permits did not create an absolute prohibition during this time.

Plaintiff asked the Court for 10 days to contact the agencies and ask for clarification of their permits. In a Minute Order, on May 24, 2023, this Court granted this time extension and ordered that further Status Conference Updates be filed with the Court by June 2, 2023.

The drafters of the two key permits at question, the Tahoe Regional Protection Agency (TRPA), and the California State Parks, have been contacted by counsel for Plaintiff.  Both have confirmed, in writing, that their permits do not create any prohibition on the removal of the cables between Memorial Day and Labor Day. (Please see emails from TRPA and State Parks attached as Exhibit 1).

When the agencies provided this clarification, Plaintiff immediately wrote to Defendant, and attached the emails from the agencies about the good news that removal activities could proceed in the summertime when the weather is good, and it is easier to get the job accomplished. Despite the certainty from the agencies that the cables could be removed between Memorial Day and Labor Day, Defendant refused to discuss the details of how the removal might take place in this time period. (Please see emails attached as Exhibit 2).

The goal for all concerned should be to comply with the Consent Decree that both parties accept requires the cables to be removed by July 27, 2023. To this end, in an email letter, Plaintiff also provided Defendant with recent photographs taken on May 5, 2023 showing the location of

two boat ramps, including the largest boat ramp on Lake Tahoe, Lake Forest, near Tahoe City and Obexer's along the Westshore, both of which are available immediately for removal operations.

Plaintiff has also researched how the removal process can immediately be done from all three boat ramps, Lake Forest, Obexer's and Tahoe Keys and provided this information to Defendant.

Finally, Plaintiff has met with a local barge operator in Tahoe City who presently has two barges on the water at the Tahoe City Marina, one with an excavator that can be used to lift the cable up and pinch it into pieces. These barges, like the ramps, are immediately available. A detailed operations and cost breakdown was also provided to the Defendant showing that removal could be done in two weeks at a cost of 420,000.

(The letter to Defendant with photographs and a cost breakdown for removal of the cables is attached as Exhibit 3).

So far Defendant has refused to discuss these logistical details. Instead, Defendant has written on May 26, 2023 that "...the cables present no danger whatsoever to the environment." Plaintiff has already shown photographic evidence to Defendant, images taken by master divers with sophisticated photographic equipment, how eight miles of cable are scrapping and fraying on the rocks at the bottom of the lake, and leaking lead into the lake. This is harmful to the environment, and with the passage of time, including the intense storms of the past winter, along with the aging of the cable, the harm to the environment is ever-increasing.

The Consent Decree is in place. The focus of the parties now is supposed to be on the details for the removal of the cables in accordance with the Consent Decree, not delay and claims that there is no danger to the environment, so delay does not matter.  It does matter to the fish in the lake, and it matters to the families with homes on the Westshore with children who swim in the lake while it is possible to see the old, frayed cable right in front of them. These families have

- 2 -
PLAINTIFF'S STATUS UPDATE

written to AT&T four times and never received a response. (See latest letter attached as Exhibit 4).

It is time for the Defendant to remove its toxic garbage from the lake in accordance with the Consent Decree.  Defendant should not be allowed to continue with a self-imposed limitation on removal activities between Memorial Day and Labor Day, and delay removal all the way into October, a period when the weather changes, the water gets rough, and it often snows.

Guidance would be appreciated from the Court to the parties requiring that the logistical details for removal of the cable, in accordance with the Consent Decree, by July 27, 2023, be the focus of their work over the next week. Another Status Update, with this focus, should be provided to the Court by **June 9, 2023**.

As has been the case all along, and the Exhibits to this Update reflect, Plaintiff remains ready to collaborate with Defendant to accomplish the removal of the cables in accordance with the requirements of the Consent Decree. Hopefully the parties will work up the precise removal details over the next seven days and report back to the Court. If the Defendant refuses, then Plaintiff may need to file a Motion to Enforce the Consent Decree.

Respectfully submitted,

DATED:  June 2, 2023                    LAW OFFICES OF ANDREW L. PACKARD


By:  /s/ Andrew L. Packard
        ANDREW L. PACKARD

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE