NAVI SINGH DHILLON (SBN 279537)
navidhillon@paulhastings.com
CHRISTOPHER J. CARR (SBN 184076)
chriscarr@paulhastings.com
DEBORAH SCHMALL (SBN 112052)
deborahschmall@paulhastings.com
LUCAS GRUNBAUM (SBN 314180)
lucasgrunbaum@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000
Fax: (415) 856-7100

Attorneys for Defendant
PACIFIC BELL TELEPHONE COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PACIFIC BELL TELEPHONE COMPANY,<br><br>　　　　Defendant. | Case No. 2:21-cv-00073-MCE-JDP<br><br>**DEFENDANT'S STATUS REPORT**<br><br>Judge:　　　Jeremy D. Peterson<br>Courtroom:　9<br>Date:　　　　N/A<br>Time:　　　　N/A |

Defendant Pacific Bell Telephone Company (Defendant) respectfully submits this brief status report in accordance with the Court's May 24, 2023, minute order.  ECF No. 31.

As background, this lawsuit concerns two submarine telecommunications cables (Cables) located in Lake Tahoe.  Plaintiff alleges lead is leaching from the Cables in violation of federal and state law.  From the outset and continuing today, Defendant contends Plaintiff's claims are baseless and that the Cables have never adversely impacted Lake Tahoe's water quality.  Nevertheless, to avoid the costs and burdens of protracted litigation, Defendant agreed to remove the Cables as part of an amicable settlement memorialized in a stipulated Consent Decree approved by the Court in November 2021.  ECF No. 22.

In this update, Defendant reports on the work that has occurred to facilitate the removal of the Cables pursuant to the settlement in the Consent Decree.  In short, all required permits and approvals have been obtained, and Defendant stands ready to remove the Cables when feasible to do so and consistent with regulatory authorizations, which prohibit removal during the summer recreation season.  In the meantime, Defendant reiterates that no pressing need exists to remove the Cables before the end of the recreation season (i.e., September).  In 2021, experts performed extensive water sampling and field investigations in and around the Cables in Lake Tahoe using the "best available methodologies."  The experts concluded Lake Tahoe's "water quality is not adversely impacted by the two legacy communications cables."  In the spirit of transparency, the full report from these experts is submitted in connection with this update.  Dhillon Decl. Ex. A.

* * *

Naturally, the settlement in the Consent Decree provides Defendant will remove the Cables from Lake Tahoe only after obtaining all required permits and regulatory approvals from federal, state, and local agencies. More specifically, the Consent Decree provides for removal of the Cables within 90 days of receiving the last regulatory approval or "*as soon thereafter as reasonably practicable* […]*, subject to the other terms of this Decree and all applicable laws, rules and regulations*."  ECF No. 22 (emphasis added).  The parties understood the precise timing as to when the Cables would be removed was uncertain due to permit terms, weather conditions, and other factors.  For that very reason, the Consent Decree allows for flexibility, as reflected in the Consent

Decree's language that allows for removal as soon as "reasonably practicable." Contrary to any suggestion by Plaintiff, the 90-day period referenced in the Consent Decree is not a hard deadline.

Because Lake Tahoe is highly regulated, approvals were required from multiple agencies:

| Agency | Approval Date |
|---|---|
| Lahontan Regional Water Quality Control Board | October 25, 2022 |
| Tahoe Regional Planning Agency | March 9, 2023 |
| California Department of Fish and Wildlife | March 20, 2023 |
| California Department of Parks and Recreation | March 24, 2023 |
| California State Lands Commission | April 3, 2023 |
| U.S. Army Corps of Engineers | April 12, 2023 |
| U.S. Forest Service | April 28, 2023 |

In the Joint Status Update filed in this Court on April 17, 2023, Plaintiff stipulated that "Defendant has been diligently pursuing" all required approvals. ECF No. 27. Notably, Defendant received the last approval on April 28, 2023.

Regulatory agencies have imposed myriad conditions on the removal of the Cables, including when the removal can occur. For example, to avoid potential impacts to recreational uses on Lake Tahoe, the California Department of Parks and Recreation (State Parks) provided a narrow window—May 1 to May 26—to enter Lake Tahoe to remove the Cables. Dhillon Decl. Ex. B at 18. Because the final approval from the U.S. Forest Service was obtained mere days before the removal window opened, Defendant's independent contractor had insufficient time to mobilize equipment and make other arrangements necessary to complete the work in that timeframe.

The approval from State Parks specifically allows Defendant to ask for a new window to enter Lake Tahoe, and the next window opens after the end of the recreation season (September). *Id.* Consistent with Defendant's last status update (ECF No. 29), on May 23, 2023, Defendant submitted to State Parks a written request for a new entry window (Dhillon Decl. Ex. C). On that same day, Defendant provided Plaintiff a copy of that written request. State Parks has yet to act.

For whatever reason, Plaintiff now incorrectly contends that removal must occur before July 27—during the peak recreation season. Defendant has identified on several occasions the

permitting restrictions and other factors rendering Plaintiff's preferred schedule infeasible.[1]  *See* ECF No. 29 at 5-7.  Among other things, Defendant has shared the detailed removal plans with Plaintiff to highlight the complexity of the process, which is being undertaken by an independent contractor with the expertise to perform the work in a lawful manner consistent with all applicable rules and regulations.  Defendant has made other arrangements too.  For example, Defendant's contactor selected a location with an industrial yard so there is sufficient space to stage needed equipment (e.g., modular barges, support boats, mini excavator, crane) and to enable the safe and timely removal of the Cables.[2]

Defendant has acted in good faith at every step, including providing Plaintiff with periodic updates throughout the process.  While Plaintiff may be eager for work to commence sooner, Defendant can only proceed in a manner that is lawful.  And as noted above, the Cables do not cause any adverse impacts to the environment, undercutting any assertion that removal must occur before the end of the recreation season.

Defendant will continue to confer with Plaintiff and suggests the Court order a further status update be filed within 60-90 days.

Respectfully submitted,

DATED: June 2, 2023                                     PAUL HASTINGS LLP

                                                        By:  /s/ Navi Singh Dhillon
                                                             NAVI SINGH DHILLON

                                                             Attorneys for Defendant,
                                                             PACIFIC BELL TELEPHONE
                                                             COMPANY

---

[1] Plaintiff recently claimed it had spoken to two of the seven regulatory agencies to confirm no removal restriction existed during the peak recreation season.  Plaintiff erroneously suggested the agencies had agreed to lift the permitting restrictions or otherwise approved removal at an earlier date. Plaintiff also declined to share its actual correspondence with the agencies or respond to Defendant's substantive points regarding the actual permit terms and conditions.

[2] Even if the work could be completed during the peak recreation season, the locations for staging identified by Plaintiff are not appropriate for a project of this duration with its attendant scope and complexity.