ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
LAW OFFICES OF ANDREW L. PACKARD
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062
andrew@packardlawoffices.com
wncarlon@packardlawoffices.com

WILLIAM VERICK (State Bar No. 140972)
KLAMATH ENVIRONMENTAL LAW CENTER
1125 16th Street, Suite 204
Arcata, CA  95521
Tel: (707) 630-5061
Fax: (707) 630-5064
Email: wverick@igc.org

J. KIRK BOYD (State Bar No. 122759)
LAW OFFICE OF JOHN KIRK BOYD
548 Market St., Suite 1300
San Francisco, CA 94104-5401
Tel: (415) 440-2500
jkb@drjkb.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC BELL TELEPHONE COMPANY,<br><br>Defendant. | CASE NO. 2:21-cv-00073-MCE-JDP<br><br>**PLAINTIFF'S STATUS UPDATE**<br><br><br>Zoom Conference<br>June 22, 2023 10:00 a.m. |

This Court ordered the parties to file a status update by June 15, 2023, in preparation for a Status Conference via zoom on June 22, 2023.  This is the Plaintiff's Status Update.

PLAINTIFF'S STATUS UPDATE

On June 14, 2023, the parties held a meet and confer via zoom to discuss the specifics for the removal of the cables in Lake Tahoe pursuant to the Consent Decree.

The Consent Decree's "Court Entry Date" was November 4, 2021. The Decree provided that within (5) days of the Court Entry Date the Defendant would begin the permitting process, and try to obtain the permits within six months. If it took more than six months, the Defendant could seek an extension. At the end of six months, Defendant requested an extension and Plaintiff agreed. Dkt. No 24. At the end of that extension, Defendant requested another extension, and again Plaintiff agreed. Dkt. No 26.

Defendant knew that the Consent Decree provides that Defendant shall remove the cables from Lake Tahoe within ninety (90) days following receipt of the last permit. (Consent Decree, Section 2). On April 14, 2023, Defendant wrote to Plaintiff, stating that "[a]t this point we anticipate all approvals will be received by the end of the month, if not earlier", so Defendant could plainly see, as early as mid-April, that the 90-day removal period would begin by the end of April. As expected, the final permit from the U.S. Forest Service was received on April 28, 2023, thereby activating the 90-day period for the removal to be completed by July 27, 2023.

It has been described in earlier Status Updates that, *despite* the 90-day deadline in the Consent Decree, Defendant claimed that the permits created an absolute prohibition on the removal of the cables between Memorial Day and Labor Day, and that they could not finish by Memorial Day. Plaintiff reviewed the permits and did not see where they created an absolute ban to removal during that time period, and told this to Defendant. Plaintiff then asked the Court for 10 days to contact the agencies and ask for clarification of their permits. In a Minute Order, on May 24, 2023, this Court granted this time extension and ordered that further Status Conference Updates be filed with the Court by June 2, 2023.

The drafters of the two key permits in question, the Tahoe Regional Protection Agency and California State Parks, were contacted by counsel for Plaintiff. Both confirmed, in writing, that their permits do *not* create an absolute prohibition on the removal of the cables between Memorial Day and Labor Day, as long as the conditions on physical removal activities (such as having a wildlife observer on the barge, having warnings on the slow-moving barge, using a tender boat to warn away any of the recreational boats passing by), are followed.

Defendant claimed during the meet and confer teleconference on June 14 that Plaintiff's counsel had misrepresented to the Court that the permits allow that those removing the cable "can just do whatever they want." Plaintiff's counsel has never made this representation to the Court, or to anyone else: the point at issue is that there is no absolute prohibition based on timing, and so long as the conditions described above are followed. (See Declaration of J. Kirk Boyd submitted herewith.)

Both parties agreed at the June 14 meet and confer that the California State Parks permit allows an extension of the permit dates – and California State Parks has already extended the date once, in red indicating a new date of **May 1-26, 2023**. (See Dkt No. 33-1, Page 28 of 100, California State Parks Permit). Unfortunately, Defendant did not get the removal work done during this period, and another extension is needed. The questions on which the parties need the guidance of this Court are the following: What should the extension date request be? Should the date be in July so that the removal work can comply with the 90-day requirement in the Consent Decree, or should it be set in September?

Earlier, on May 10, 2023, the parties held a meet and confer. On that day, Defendant took the position that the permits created an absolute ban on removal from Memorial Day to Labor Day. Plaintiff responded that the permits did not create an absolute prohibition, and they would seek clarification from the agencies, as well as discuss with the Court, if necessary, whether it

- 2 -
PLAINTIFF'S STATUS UPDATE

was proper for Defendant to read in an absolute prohibition. Despite this earlier meet and confer exchange about whether there was a prohibition, on May 23, 2023, Defendant apparently sent a letter to California State Parks asking for another extension to September/October, 2023. Defendant unilaterally chose an extension date well beyond the July 27, 2023 deadline set by the Consent Decree.

At the June 14 meet and confer -- even when faced with evidence that there is no absolute prohibition on removal activities, and that the extension date they had chosen was well beyond the 90-day period -- Defendant refused to even ask State Parks for an extension date that would allow for removal by July 27 in accord with the Consent Decree. Defendant now claims that a prohibition exists for the months of June and July because of recreational boating, but the permits do not say this. *In short, Defendant has created its own prohibition period, in contravention of the Consent Decree.*

In addition, the prohibition for recreational boating is disingenuous. The barge is slow moving. Almost all of the boats on Lake Tahoe are small, nimble power boats capable of avoiding a slow-moving barge with signage and a tender to ward them off. A look at the maps in the case shows that most of the eight miles of cable is offshore, and the barge will not even be in the direct line of boat traffic, or can be easily avoided. With respect to Emerald Bay, the barge will only be present for a few days at most, and there is plenty of room in the bay for the barge and the runabouts, and the tender can provide any guidance needed. Since there is no absolute prohibition, and to comply with the Consent Decree, the parties should send a joint letter to State Parks asking for an extension from July 6 until July 27, another 20-day extension. This is similar to the last extension and will comply with the Consent Decree. All three of the large boat ramps on Lake Tahoe, including Tahoe Keys, are available for removal during this period.

If the Defendant continues to seek an extension beyond the Consent Decree, without even requesting an extension that complies with the Consent Decree, then Plaintiff will bring a motion asking the Court to direct the Defendant to make a good faith effort to comply with the 90-day period in the Consent Decree.

There is good reason to remove the cable in July rather than wait until September and October.  The sun is high, and the days are long in July, making it easier and safer for the divers who need to follow the cable, and work out trouble spots should it be caught on rock due to movement during the past winter, or previous ones.  The weather also changes in September and October, with at times there being snow in those months (and now the fire season). Should there be any difficulties in the removal such as mechanical breakdowns, or other unforeseen problems, it is best to be able to deal with them in good weather, and without the impending winter.

Everyone benefits from removing this toxic garbage from the lake.

Respectfully submitted,

DATED:  June 15, 2023                                        LAW OFFICES OF ANDREW L. PACKARD

By: /s/ Andrew L. Packard
      ANDREW L. PACKARD

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE