NAVI SINGH DHILLON (SBN 279537)
navidhillon@paulhastings.com
CHRISTOPHER J. CARR (SBN 184076)
chriscarr@paulhastings.com
DEBORAH SCHMALL (SBN 112052)
deborahschmall@paulhastings.com
LUCAS GRUNBAUM (SBN 314180)
lucasgrunbaum@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000
Fax: (415) 856-7100

Attorneys for Defendant
PACIFIC BELL TELEPHONE COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC BELL TELEPHONE COMPANY,<br><br>Defendant. | Case No. 2:21-cv-00073-MCE-JDP<br><br>**DEFENDANT'S STATUS REPORT**<br><br>Judge:      Hon. Jeremy D. Peterson<br>Courtroom:  9<br>Date:       June 22, 2023<br>Time:       10:00 a.m. |

In accordance with this Court's order of June 8, 2023, Defendant Pacific Bell Telephone Company (Defendant) respectfully submits this status report in advance of the conference set for June 22, 2023. Defendant's last status update was filed on June 2, 2023. Accordingly, this update focuses on events since that date.

Defendant continues to work diligently with relevant agencies to facilitate removal of the two telecommunications cables (Cables). As previously reported, Defendant submitted on May 23, 2023, a written request to the California Department of Parks and Recreation (State Parks) for authorization to enter Lake Tahoe for removal work between September 6, 2023, and October 31, 2023. The State Parks permit specifies the date range for the new entry window (fall 2023), and provides context for that date range (i.e., to avoid "any recreational impacts"). ECF No. 33-1 at 28. Contrary to any assertion by Plaintiff, Defendant followed the permit when selecting the requested date range. State Parks has yet to act on the request.

On June 11, 2023, Defendant had a telephone call with State Parks staff to discuss the status of Defendant's request. To process the request and evaluate whether additional removal conditions may be required under the California Environmental Quality Act (CEQA), State Parks asked Defendant for additional information (e.g., coordination with the Coast Guard, mooring locations, work schedule details). Defendant agreed and expects to provide all the information by the end of this week. Although unable to commit to a date certain, State Parks stated it may be able to process Defendant's request within two or three weeks of receiving the remaining information. In the meantime, Defendant will continue to make necessary arrangements so the Cables can be removed in a safe and timely manner, and consistent with the terms imposed by the many permitting agencies.

On June 14, 2023, counsel for the parties conferred by telephone to discuss the permitting status and timing of removal. As before, Defendant explained that removing the Cables during the peak recreation season is not feasible. No agreement was reached.

Lastly, Defendant briefly addresses some inaccurate statements in Plaintiff's prior status update. ECF No. 32. For example, Plaintiff writes "both parties accept" that the Consent Decree "requires" the Cables to be removed by July 27, 2023. *Id*. at 2. That is incorrect. As set forth in Defendant's last status update, the Consent Decree does not impose a hard deadline but rather

allows for flexibility.  ECF No. 33 at 2-3.  Plaintiff had no answer when pressed on this point during the most recent meet-and-confer process.

Plaintiff also contends that State Parks "confirmed, in writing" that the permits "do not create any prohibition" on the removal of the Cables over the summer.[1]  ECF No. 32 at 2.  That is simply untrue.  Plaintiff cites an e-mail with State Parks to support that assertion, but that e-mail says no such thing.  Rather, the referenced e-mail from State Parks is clear that any changes relating to "seasonal timing" (i.e., performing the work during the summer) "will need to be *revaluated* [sic] under CEQA and [agency] specialist staff will need to update condition measures regarding potential impacts[.]"  ECF No. 32-1 at 2 (emphasis added).  In short, the e-mail only further confirms that removal must proceed under the terms of all permits and conditions, and that modifications to the project schedule may trigger additional CEQA review.  As discussed above, Defendant had a call just a few days ago with State Parks, during which the agency reaffirmed the need for both (i) a new entry window, and (ii) an evaluation of potential environmental impacts associated with performing work in the new entry window.

Defendant has explained the above to Plaintiff multiple times (*see* ECF No. 33 at 3-4), yet Plaintiff continues to incorrectly contend that Defendant is free to remove the Cables *now*.  Not so.  Defendant will only proceed consistent with the law and pursuant to the terms of the many permits.

Apart from the permitting restrictions, a few practical observations:  It will take time to mobilize workers, move equipment and make other logistical arrangements before removal can commence.  The removal process itself is then estimated to take approximately three weeks. June, July and August are the busiest months on Lake Tahoe, and conducting a complex, multi-week operation during this busy period presents not only safety concerns but a greater likelihood of

---

[1] It is unclear why Plaintiff contends the Tahoe Regional Planning Agency (TRPA) is relevant to this issue.  In prior correspondence with Plaintiff (*see* ECF No. 29 at 5-6), Defendant identified, as examples, permitting conditions imposed by State Parks, the California Department of Fish and Wildlife (CDFW), and the U.S. Army Corps of Engineers (Army Corps).  No mention was made of TRPA.  Yet, in its May 22, 2023, status update, Plaintiff asked the Court for time to ask "State Lands" and CDFW whether permit conditions prohibit removal during the summer.  ECF No. 30 at 2-3.  Plaintiff does not mention conditions imposed by CDFW or the Army Corps or State Lands.  But more to the point, Plaintiff's shifting contentions reflect its misunderstanding of the complex permitting process surrounding removal of the Cables.

interference with recreational activities. The regulators understood this when imposing the myriad permit conditions. In addition, the Cables have been in the water for decades, and experts have concluded "using the best available methodologies" that Lake Tahoe's "water quality is not adversely impacted" by the Cables. ECF No. 33-1 at 5.

In effect, Plaintiff asks this Court to second-guess the technical expertise of agencies that imposed the permitting conditions and the judgment of experienced professionals retained to do the work in a lawful, safe and responsible manner. The Court should decline the invitation. At this juncture, Defendant suggests the Court set a further status conference in 60 days, at which time the parties should have greater clarity on the timing of the removal.

Respectfully submitted,

DATED: June 15, 2023                                    PAUL HASTINGS LLP


                                                        By: /s/ Navi Singh Dhillon
                                                            NAVI SINGH DHILLON

                                                            Attorneys for Defendant,
                                                            PACIFIC BELL TELEPHONE
                                                            COMPANY