NAVI SINGH DHILLON (SBN 279537)
navidhillon@paulhastings.com
PETER C. MEIER (SBN 179019)
petermeier@paulhastings.com
CHRISTOPHER J. CARR (SBN 184076)
chriscarr@paulhastings.com
LUCAS GRUNBAUM (SBN 314180)
lucasgrunbaum@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000

HARIKLIA KARIS (*admitted pro hac vice*)
hkaris@kirkland.com
ROBERT B. ELLIS (*admitted pro hac vice*)
rellis@kirkland.com
MARK J. NOMELLINI (*admitted pro hac vice*)
mnomellini@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

Attorneys for Defendant
PACIFIC BELL TELEPHONE COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC BELL TELEPHONE COMPANY,<br><br>Defendant. | Case No. 2:21-cv-00073-MCE-JDP<br><br>**DEFENDANT PACIFIC BELL TELEPHONE COMPANY'S STATUS CONFERENCE STATEMENT**<br><br>Judge: Hon. Jeremy D. Peterson<br>Courtroom: 9<br>Date: August 24, 2023<br>Time: 10:00 a.m. via ZOOM |

Defendant Pacific Bell Telephone Company (AT&T) respectfully submits this statement in advance of the status conference set for August 24, 2023. Counsel for the parties conferred on August 15, 2023, regarding the topics referenced in Local Rule 240 and agreement was reached on certain issues, as identified below.

**A.     The Dispute and Procedural Status**.

This lawsuit concerns two submarine telecommunications cables (Cables) located in Lake Tahoe. Plaintiff alleges lead is being released from the Cables and adversely impacting the water quality of Lake Tahoe. Plaintiff asserts two claims. The first claim is for alleged violations of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6972(a)(1)(B). The second claim is for alleged violations of California's Safe Drinking Water and Toxic Enforcement Act of 1986, commonly known as "Prop. 65," Health & Safety Code § 25249.5, et seq.

AT&T strongly disputes these claims. In 2021, AT&T retained an environmental consulting firm, Haley & Aldrich, to evaluate whether the Cables were negatively impacting the water of Lake Tahoe. After extensive water quality testing next to the Cables, the experts concluded the answer is no, finding any detectable lead was consistent with background levels in the lake, not from the Cables. That expert report was later filed in this Court. ECF No. 33-1.

Nevertheless, in September 2021, AT&T agreed to remove the Cables as part of a voluntary settlement to avoid the costs and burdens of litigation, subject to certain conditions. In November 2021, the Court approved that conditional settlement, which was memorialized in a Consent Decree. ECF No. 22. Thereafter, AT&T worked towards securing regulatory approvals needed to remove the Cables.

But the landscape changed dramatically in July 2023 when the *Wall Street Journal* (Journal) published a series of stories asserting that lead-clad telecom cables in Lake Tahoe and elsewhere raise a significant public health concern. As explained in a prior submission (ECF No. 41), AT&T strongly disagrees with the Journal's reporting. Consistent with the terms of the Consent Decree, and in light of the public health risk specter created by the Journal, AT&T exercised its right to terminate the Consent Decree to allow development of a further record regarding the safety of the

Cables in cooperation with the U.S. Environmental Protection Agency and other regulators. On July 27, 2023, AT&T filed a Notice of Election to Vacate the Consent Decree (ECF No. 49), which was unopposed (ECF No. 54). On August 1, 2023, the Court entered an Order Vacating Consent Decree, thereby restoring the parties to their respective legal positions prior to its entry. ECF No. 55.

**B.     Recent Developments**.

AT&T previously informed the Court that it had retained another environmental consulting firm (Ramboll) to test the water quality of Lake Tahoe next to the Cables. Just like Haley & Aldrich, Ramboll concluded in an August 2023 report that the Cables have no adverse impact on the environment. Dhillon Decl. Ex. A at p. 1. Among other things, Ramboll found the "highest concentration levels of lead detected at close proximity to the cables [were] more than 200 times below the [EPA's] drinking water action level for lead[.]" *Id*. And just like Haley & Aldrich, Ramboll found that "at all locations sampled the concentrations of lead were similar to background levels." *Id*. A true copy of Ramboll's August 2023 report has been filed as **Exhibit A** to the Dhillon Declaration.

On July 18, 2023, Plaintiff's counsel made public comments explaining the purported "science" behind Plaintiff's alleged claims and the events that took place prior to Plaintiff bringing this case. Dhillon Decl. Ex. B. at 2-3. Plaintiff's counsel explained that Seth Jones, a diver who claims to have discovered the cables while diving in Lake Tahoe and "plays a prominent part in the Wall Street Journal's articles," went to the bottom of Lake Tahoe, cut "a foot of [the cable] off, and took it all apart, and weighed the various components, and determined that every foot of that cable contained three pounds of lead." *Id*. at 2. Jones then brought the cable to Plaintiff, and in the words of Plaintiff's counsel:

> [W]e got a kiddie swimming pool and filled it with Lake Tahoe water and let the cable sit in it for like a day, and then we took a water sample, and sent it off to a lab, and had astoundingly high levels of lead in the water. So, we had the evidence that we needed to bring the case.

*Id*. Placing a freshly cut section of cable with newly-exposed lead inside a "kiddie swimming pool" with lake water does not replicate actual conditions in Lake Tahoe. Indeed, Plaintiff's counsel acknowledged as much: "[I]f you just take a water sample from some random place in Lake Tahoe, you're going to find virtually no lead in it." *Id*. at 4. This apparently is the extent of the "testing" underlying Plaintiff's alleged claims, which may be the subject of a *Daubert* motion as noted below. It is no wonder, then, that the data independently collected by Haley & Aldrich and Ramboll directly undermine Plaintiff's allegations and the Journal's reporting.

AT&T is not alone in finding the Journal's reporting inaccurate. For example, the Journal's reporting claimed high lead levels were detected beneath aerial telecom cables at a public park in Wappingers Falls, New York. In response to that reporting, the State of New York closed the park so that it could conduct its own independent testing. On July 27, 2023, New York public health officials released an independent report, reaching the exact opposite conclusion of the Journal regarding the safety of the telecom cables. That independent report concluded testing showed that:

> …Temple Park Playground and adjacent areas do not provide evidence for excessive or widespread lead contamination in soil due to the telecommunication cable lines and do not suggest a significant exposure or public health risk for people involved in recreational activities at this location.

Dhillon Decl. Ex. C at 1. On August 1, 2023, New York Governor Kathy Hochul declared that, based on New York's independent testing, lead levels at the site are safe:

> Temple Park in Wappingers Falls is safe to reopen after soil analysis shows lead levels meet state and federal safety standards for children's play areas. The park was temporarily closed out of an abundance of caution due to media reports that suggested there were elevated lead levels in the soil originating from old overhead lead-containing cables left by telecommunications companies. The State's scientific analysis found no evidence of elevated or widespread lead contamination in the area sampled.

Dhillon Decl. Ex. D. Beyond the existing evidence in the record, AT&T submits that further scrutiny of Plaintiff's allegations will yield similar results: the Cables have no adverse effect on human health or the environment.

**C.     Case Management Matters.**

Given the procedural posture of this case, AT&T addresses the following case management matters consistent with Local Rule 240.

    **1.     Pleading Status and Amendments.**

The original complaint filed in January 2021 asserted RCRA and Prop. 65 claims. Following meet-and-confer discussions, Plaintiff filed an amended complaint that only asserted a RCRA claim. AT&T answered and the parties shortly thereafter reached a tentative settlement. In August 2021, Plaintiff filed the operative Second Amended Complaint (SAC). Two days before Plaintiff filed its motion to approve the proposed settlement, AT&T filed an answer to the SAC as an administrative matter to facilitate entry of the proposed Consent Decree.

Having conferred, counsel for the Parties agree that the Court should set a deadline for filing any amended pleadings and AT&T proposes the following:

- Deadline for Plaintiff to file an amended complaint or to provide notice to AT&T that it elects to stand on the SAC: 30 days.

- Deadline for AT&T to respond to any amended complaint or file any amended answer to the operative SAC: 21 days.

    **2.     Formulation and Simplification of Issues, Including Elimination of Frivolous Claims and Defenses.**

AT&T contends the core issues presented in this action include:

- Whether Plaintiff can establish the Cables present an imminent and substantial endangerment to health or the environment within the meaning of RCRA.

- Assuming Plaintiff can meet its initial burden, whether the Cables are releasing a significant amount of lead into the environment within the meaning of Prop. 65.

AT&T seeks an expeditious resolution of the alleged claims and suggests the Court direct counsel to confer on ways to streamline this action, including a potential bifurcation of issues.

**3.     Appropriateness of Any Variance from the Usual Filing and Service Requirements Applicable to the Action**.

The parties have agreed to accept electronic service. As to certain third parties, AT&T has made multiple attempts to effect service of subpoenas on third parties. Under the circumstances and consistent with Rule 45 when reasonable efforts to effect personal service have been unsuccessful, counsel for both parties agree that it would be appropriate to effect service of these third-party subpoenas via alternate means, such as overnight mail. In the lead up to the upcoming conference, AT&T will continue to try to effect traditional service, and will ask for the Court's assistance as needed.

**4.     Summary Judgment and Other Anticipated Motions**.

No motions are pending at this time and AT&T will evaluate at a later date whether it is appropriate to seek summary judgment on some or all claims.

AT&T anticipates bringing a *Daubert* motion. As discussed above, in July 2023, AT&T learned that, prior to filing this action, Plaintiff did not actually test any water near the Cables where they are situated in Lake Tahoe. Instead, Plaintiff obtained a *severed* portion of one of the Cables, and then submerged it—and its *newly* exposed lead—in a "kiddie swimming pool." From all that appears, that is the extent of the "scientific" evidence allegedly supporting Plaintiff's claims.

**5.     Rule 26(a) Initial Disclosures**.

Counsel for the parties have held a Rule 26(f) conference. However, due to the prior conditional settlement, the parties did not exchange initial disclosures. The parties have agreed to exchange initial disclosures within 21 days of the status conference—September 14, 2023.

**6.     Discovery Status**.

AT&T has served Plaintiff with its first set of written discovery. In addition, AT&T has served third-party subpoenas and is coordinating with Plaintiff to ensure all materials produced by third parties are digitized, Bates-stamped, and promptly distributed. Each of the subpoenas served by AT&T is directed to a specific third party in possession of particular information that is directly relevant to this litigation. Although Plaintiff has raised some generalized concerns, no specific

objections have been made and the parties have not completed the meet-and-confer process. Until that occurs, any potential dispute is not yet ripe for resolution.

AT&T will confer with Plaintiff on other discovery matters, including the timing of additional testing, and exchanging split samples from a site visit. AT&T does not anticipate the need for any special privilege issues or procedures, or believe any modifications to the standard discovery limits are needed at this time.

**6.    Evidentiary and Confidentiality Issues.**

AT&T is not aware of any evidentiary issues at this time.

**7.    Scheduling Issues**.

AT&T has proposed below a case schedule and suggests the next status conference be set within 30-60 days. As the case progresses and after meeting and conferring, counsel for the parties can make additional case management proposals for the Court's consideration.

**8.    Pre-Trial Procedures**.

AT&T contends no specific orders modifying the standard pretrial procedures specified by these Local Rules are needed at this time.

**9.    Trial Issues**.

The alleged claims will be tried to the bench. AT&T estimates it will take 4-5 days to complete the presentation of evidence, assuming 6-hour trial days. Plaintiff estimates it will take 7 days to complete the presentation of evidence.

**10.    Dispute Resolution**.

AT&T contends the case is not suitable for ADR at this time.

**11.    Other Issues for Court's Consideration**.

AT&T does not have any further case management proposals to make at this time.

**D.    Proposed Case Management Schedule**.

During the meet-and-confer process, AT&T proposed to Plaintiff the case schedule below. Today, Plaintiff informed AT&T that it agrees to all aspects of the schedule, except the dates for expert disclosures. AT&T will continue to confer with Plaintiff on that remaining issue and will

be prepared to discuss its proposal for expert disclosure dates at the conference to the extent agreement is not reached.

| No. | Event | Proposed Date |
|---|---|---|
| 1 | Rule 26(a)(1) Initial Disclosures | September 14, 2023 |
| 2 | Deadline for pleading amendments | October 9, 2023 |
| 3 | Fact-discovery cut-off date | February 26, 2024 |
| 4 | Plaintiff's Expert disclosures | March 4, 2024 |
| 5 | Defendant's Expert Disclosures | April 1, 2024 |
| 6 | Rebuttal Expert Disclosures | April 15, 2024 |
| 7 | Close of Discovery | May 17, 2024 |
| 8 | Deadline to file dispositive and *Daubert* motions | June 14, 2024 |
| 9 | Responses to dispositive and *Daubert* motions | July 9, 2024 |
| 10 | Replies in support of dispositive and *Daubert* motions | July 23, 2024 |
| 11 | Deadline for pre-trial filings, e.g., exhibits, deposition designations. | July 30, 2024 |
| 12 | Responses to pre-trial filings | August 19, 2024 |
| 13 | Final pre-trial conference | August 26, 2024 |
| 14 | Bench trial – estimated 4-5 days | September 16, 2024 |

Respectfully submitted,

DATED: August 17, 2023                         PAUL HASTINGS LLP


By: /s/ Navi Singh Dhillon
    NAVI SINGH DHILLON

    Attorneys for Defendant
    PACIFIC BELL TELEPHONE
    COMPANY

- 9 -