NAVI DHILLON (SBN 279537)
navidhillon@paulhastings.com
DEBORAH SCHMALL (SBN 112052)
deborahschmall@paulhastings.com
LUCAS GRUNBAUM (SBN 314180)
lucasgrunbaum@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000

HARIKLIA KARIS (*admitted pro hac vice*)
hkaris@kirkland.com
ROBERT B. ELLIS (*admitted pro hac vice*)
rellis@kirkland.com
MARK J. NOMELLINI (*admitted pro hac vice*)
mnomellini@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

Attorneys for Defendant
PACIFIC BELL TELEPHONE COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC BELL TELEPHONE COMPANY,<br><br>Defendant. | CASE NO. 2:21-cv-00073-MCE-JDP<br><br>**UNOPPOSED REQUEST FOR AUTHORIZATION OF SUBSTITUTE SERVICE OF PROCESS** |

1    Defendant Pacific Bell Telephone Company (AT&T) respectfully submits this unopposed request for an order authorizing service by certified mail and e-mail of *subpoenas duces tecum* upon Seth Jones (Jones) and Monique Rydel Fortner (Fortner). Consistent with the discussions at the August 24, 2023, status conference, AT&T submits two declarations to provide the requested evidentiary support for the request, along with this brief statement to provide additional context.

Jones and Fortner are two non-parties with highly relevant evidence, and it appears both are actively evading personal service. Counsel for Plaintiff stated in a public interview that Seth Jones "brought [this case] to us on a platter." ECF No. 57-1, Ex. B. Specifically, Jones dove to the bottom of Lake Tahoe, cut "a foot of [a lead-clad cable] off, and took it all apart, and weighed the various components, and determined that every foot of that cable contained three pounds of lead." *Id*. at 2. Jones then brought the cable to counsel for Plaintiff, the cable was placed in a "kiddie swimming pool" with water Plaintiff later tested for lead, and, in the words of Plaintiff's counsel, "we had the evidence that we needed to bring the case." *Id*.

More recently, Jones and Fortner conducted additional testing of lead-clad telecommunications cables, in Lake Tahoe and elsewhere, on behalf of the *Wall Street Journal* ("the Journal"). In July 2023, the Journal published a series of stories asserting that the cables raise a significant public health concern. The Journal claimed it conducted testing in Lake Tahoe "in March and May of this year" to support its reporting, and that "[r]esearchers Seth Jones and Monique Rydel Fortner, from the environmental consulting firm Marine Taxonomic Services, collected lead, soil, and water samples at the Journal's request." Karis Decl. Ex. A at 7. According to the stories, "Seth Jones and Monique Rydel Fortner . . . discovered the underwater cables in Lake Tahoe more than 10 years ago, alerted the public and advocated for their removal," and have since "become experts in lead cables." Karis Decl. Exs. B at 5; A at 7.

The sample collection and analysis Jones performed for Plaintiff—which Plaintiff's counsel describes as "the evidence that we needed to bring the case"—is very important to this litigation. So, too, is the sample collection and analysis that Jones and Fortner performed for the Journal in Lake Tahoe and similar locations.

AT&T issued subpoenas to Jones and Fortner on August 4, 2023, asking them to produce,

among other things, all documents and communications related to all sampling, testing, and analysis they have performed on lead-clad telecommunications cables at Lake Tahoe and similar locations, including the work they performed for Plaintiff and the Journal. *See* Dhillon Decl. Ex. 1; Ex. 2.

Since issuing these subpoenas, AT&T has repeatedly sought to serve Jones and Fortner, using multiple process servers, without success.  Three separate process servers from Specialized Legal Services, Inc. attempted to serve Jones at a San Marcos, California address on four separate occasions between August 4 and August 8.  Dhillon Decl. Ex. 3 at 1-3.  On one occasion, a man at the address told the process server that Jones was "not in and he did not know his schedule." *Id*. at 2.  On the next visit, a woman told the process server that Jones "won't be back for a couple of weeks." *Id*. at 2.  A different process server also attempted service on Jones at a new address in Solana Beach, California, but after six visits between August 9 to August 16, no one had answered the door. *Id*. at 4-5.  AT&T then hired a different process server who made two additional attempts to serve Jones on August 22 and 23 at his San Marcos address, but was unable to make contact. Karis Decl. Ex. C.

A process server attempted to serve Fortner at a South Lake Tahoe, California address on four occasions between August 4 and August 11. Dhillon Decl. Ex. 4.  Although multiple vehicles were present on at least two of those occasions, no one answered the door. *Id*. at 1.  Process servers have also attempted service at two other addresses for Fortner—one in Carlsbad, California and one in Rogue River, Oregon—but were unsuccessful. *Id.* at 3; Dhillon Decl. Ex. 5. Finally, a different process server attempted to serve Fortner on August 20 and 23, but was unsuccessful. Karis Decl. Ex. D.

On August 15, Jones sent an email to counsel for AT&T—copying Ms. Fortner—asking for an extension of the deadlines to respond to the subpoenas served on Marine Taxonomic Services and an entity called "Below the Blue," which is controlled by Jones and Fortner. Dhillon Decl. Ex. 6. Counsel for AT&T responded on August 16, agreeing to provide an extension if Mr. Jones would accept service of the subpoena directed to him, personally. *Id.*  Mr. Jones responded on August 22, insisting on an extension for Marine Taxonomic Services and Below the Blue ***but refusing to accept service of his personal subpoena***.  *Id*.  Jones responded separately on August 23 that "no one ask[ed]

me in person to accept service or [gave] me a subpoena," but after counsel for Pacific Bell replied with an electronic copy of the subpoena, Jones again refused to accept service. *Id*.

In sum, both Jones and Fortner have evaded service of their personal subpoenas over the course of eighteen attempts at five separate addresses, and despite AT&T's recent e-mail correspondence with them.

Courts routinely authorize alternative means of service, such as certified mail and email, after repeated attempts at personal service have failed. *See, e.g.*, *RP Golden State Mgmt., LLC v. Ohio Sec. Ins. Co.*, 2020 WL 4748324, at *5 (E.D. Cal. Aug. 17, 2020); *Wells Fargo Bank N.A. v. Wyo Tech Inv. Grp. LLC*, 2019 WL 3208114, at *2 (D. Ariz. July 16, 2019); *SEC v. Pence*, 322 F.R.D. 450, 454 (S.D.N.Y. 2017); *Toni Brattin & Co. v. Mosaic Int'l, LLC*, 2015 WL 1844056, at *3 (N.D. Cal. 2015).[1] Rule 45 provides only that "[s]erving a subpoena requires delivering a copy to the named person"; it does not require any specific method of service. Fed. R. Civ. P. 45(b)(1). As courts have observed, "where personal service is required, the Federal Rules of Civil Procedure more clearly indicate that requirement." *See Wells Fargo*, 2019 WL 3208114, at *3 (noting that "[u]nder Rule 4(e)(2)(a), personal service of the summons and complaint may be effectuated by 'delivering a copy of the summons and of the complaint to the individual *personally*'") (emphasis added). Moreover, interpreting Rule 45 to require personal service "would render superfluous" the provision of the Rule "indicating that proof of service is accomplished by 'filing ... a statement showing the ... *manner* of service." *Id*. (quoting Fed. R. Civ. P. 45(b)(4)) (emphasis added); *see also Pence*, 322 F.R.D. at 454. Finally, interpreting "deliver[y]" to require personal service, when certified mail or email would far more quickly and effectively provide notice and an opportunity to be heard, would contravene Rule 1's admonition that that the Rules should be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

---

[1] Although unnecessary to address the matter because this request is unopposed, AT&T notes that courts differ on whether personal service is even required by Rule 45. *See, e.g.*, *Evans v. Biomet, Inc.*, 2022 WL 3648250, at *3 (D. Alaska Feb. 1, 2022) (reading the term "deliver[y] to require personal service); *Prescott v. City of Stanislaus*, 2012 WL 10617, at *3 (E.D. Cal. Jan. 3, 2012) (same); *Wells Fargo*, 2019 WL 3208114, at *3 (concluding personal service is not required under Rule 45).

Where a party is unable to effect personal service notwithstanding their best efforts, courts have permitted parties to use any means of service "reasonably calculated under the circumstances to provide … both notice and an opportunity to present objections." *Pence*, 322 F.R.D. at 455.  Both certified mail and e-mail satisfy that requirement, and especially here, where Jones has already contacted counsel for Pacific Bell via email but refused to accept service.  Pacific Bell will serve the subpoenas via certified mail to all known addresses for Jones and Fortner, and will also send the subpoenas to their e-mail accounts.  Both of these methods are far more likely to result in the "deliver[y]" of the subpoenas to Jones and Fortner than personal service, which has failed over the course of more than *eighteen attempts at five separate addresses*.

We ask that the Court grant this unopposed request.  A proposed order has been submitted for the Court's consideration.

Respectfully submitted,

Dated: August 30, 2023

KIRKLAND & ELLIS LLP

By: */s/ Hariklia Karis*
HARIKLIA KARIS

Attorney for Defendant
PACIFIC BELL TELEPHONE COMPANY