1  ANDREW L. PACKARD (State Bar No. 168690)
   Email: andrew@packardlawoffices.com
2  WILLIAM N. CARLON (State Bar No. 305739)
   Email: wncarlon@packardlawoffices.com
3  Law Offices of Andrew L. Packard
4  245 Kentucky Street, Suite B3
   Petaluma, CA 94952
5  Tel: (707) 782-4060
   Fax: (707) 782-4062
6
7  [Additional counsel on p. 2]

8  Attorneys for Plaintiff
   CALIFORNIA SPORTFISHING
9  PROTECTION ALLIANCE

10
11                    **UNITED STATES DISTRICT COURT**
12                    **EASTERN DISTRICT OF CALIFORNIA**
13
14

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, | Case No: 2:21-cv-00073-JDP |
| Plaintiff, | |
| v. | **PLAINTIFF'S NOTICE OF MOTION AND MOTION TO AMEND SCHEDULING ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| PACIFIC BELL TELEPHONE COMPANY | |
| Defendant. | Hearing Date: January 11, 2024<br>Time: 10:00 a.m.<br>Court: Robert T. Matsui U.S. Courthouse<br>Courtroom: 9, 13th Floor<br>Magistrate Judge: Hon. Jeremy D. Peterson |

1  MATTHEW MACLEAR (State Bar No. 209228)
   Email: mcm@atalawgroup.com
2  JASON FLANDERS (State Bar No. 238007)
   Email: jrf@atalawgroup.com
3  ERICA A. MAHARG (State Bar No. 279396)
   Email: eam@atalawgroup.com
4  J. THOMAS BRETT (State Bar No. 315820)
   Email: jtb@atalawgroup.com
5  AQUA TERRA AERIS LAW GROUP
   4030 MARTIN LUTHER KING JR WAY
6  OAKLAND, CA 94609
   Tel: (415) 568-5200
7
   WILLIAM VERICK (State Bar No. 140972)
8  Email: wverick@igc.org
   KLAMATH ENVIRONMENTAL LAW CENTER
9  1125 16th Street, Suite 204
   Arcata, CA  95521
10 Tel: (707) 630-5061; Fax: (707) 630-5064

11
   J. KIRK BOYD (State Bar No. 122759)
12 Email: jkb@drjkb.com
   LAW OFFICE OF JOHN KIRK BOYD
13 548 Market St., Suite 1300
   San Francisco, CA 94104-5401
14 Tel: (415) 440-2500

15
   BRIAN ACREE (State Bar No. 202505)
16 Email: brian@brianacree.com
   LAW OFFICES OF BRIAN ACREE
17 331 J Street, Suite 200
   Sacramento, CA 95814
18 Tel: (916) 505-6861

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

TO THE COURT, THE PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on January 11, 2024 at 10:00 a.m., or as soon thereafter as the matter be heard, at the United States District Court for the Eastern District of California, Robert S. Matsui Courthouse, Courtroom 9—13th Floor, 501 I Street, Sacramento, CA 95814, before the Honorable Jeremy D. Peterson, Plaintiff California Sportfishing Protection Alliance will move to amend the scheduling order pursuant to Federal Rule of Civil Procedure 16(b)(4) ("Motion"). This Motion is based upon this Notice of Motion of Motion; Memorandum of Points and Authorities in support thereof; the Declaration of Matthew C. Maclear in support thereof; the Declaration of J. Kirk Boyd in support thereof; the Court's file in this matter; and upon any other such argument or evidence as the Court may consider for hearing on this matter.

Dated: November 27, 2023

AQUA TERRA AERIS LAW GROUP

/s/ Erica A. Maharg
Erica A. Maharg
Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 6

II. PROCEDURAL AND FACTUAL BACKGROUND ................................................... 6

    A. Vacating the Consent Decree and Entry of Scheduling Order ............................... 6

    B. New Counsel and Information Regarding Sampling Schedule .............................. 7

    C. Meet and Confer Efforts .......................................................................................... 8

III. LEGAL STANDARD .................................................................................................... 9

IV. DISCUSSION ................................................................................................................ 9

    A. CSPA Proposed a Schedule in August 2023 Based on the Best Information Available. ... 10

    B. Amending the Schedule Is Necessary to Complete Investigation and Sampling and to Accommodate New Counsel's Litigation Schedule. ............................................ 10

        1. CSPA Requires Additional Time to Conduct a Necessary Investigation. .......................... 11

        2. The Current Schedule Conflicts with ATA Counsel's Current Litigation Schedule. .......... 13

    C. CSPA Has Diligently Sought an Amended Schedule. ........................................... 14

    D. The Amended Schedule Will Not Delay Trial or Prejudice Defendant. ............... 14

V. CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Federal Cases**

*Crawford v. Delta Sci. Corp.,* No. CV 10-2960 AHM (JCx), 2011 U.S. Dist LEXIS 47759 (C.D. Cal. April 25, 2011) .................................................................................................................. 15

*Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992). ............................................. 9

*Learjet, Inc. v. Onek, Inc.* (*In re W. States Wholesale Nat. Gas Antitrust Litig.)*, 715 F.3d 716 (9th Cir. 2013) ........................................................................................................................ 14

*Lopez v. Am. Fire & Cas. Co.*, No. 1:20-cv-01418-JLT-SAB, 2022 U.S. Dist. LEXIS 30205, (E.D. Cal. Feb. 18, 2022).................................................................................................................. 9, 14

*Neidermeyer v. Caldwell,* 718 Fed. App'x. 485 (9th Cir. 2017)......................................................... 14

*Software Rights Archive, LLC v. Facebook, Inc.,* No. C-12-3970 RMW, 2013 U.S. Dist. LEXIS 133707 (N.D. Cal. Sep. 17, 2013) ................................................................................... 15

*United States ex rel. Terry v. Wasatch Advantage Grp.*, LLC, 327 F.R.D. 395 (E.D. Cal. 2018) ...... 9

**Federal Statutes**

Fed. R. Civ. P. 16(b) ........................................................................................................................ 9

Fed. R. Civ. P. 16(b)(4)................................................................................................................... 9

**Other Authorities**

BALLENTINE'S LAW DICTIONARY (3d ed. 2010) ..................................................................... 12

PLAINTIFF'S MOTION TO AMEND SCHEDULING ORDER

## I. INTRODUCTION

In this Motion for Leave to Amend the Scheduling Order ("Motion"), Plaintiff California Sportfishing Protection Alliance ("CSPA" or "Plaintiff") seeks to modify the Initial Pretrial Scheduling Order entered by the Court on October 10, 2023. Dkt. No. 70 ("Scheduling Order"). CSPA seeks a modest extension of approximately five months in total, to address unforeseen delays in conducting sampling and analysis, as well as to avoid significant conflicts with CSPA's new lead counsels' schedules. CSPA seeks an order modifying the Scheduling Order as follows:

| Deadline | Scheduling Order Dkt. No. 70 | Proposed Extension |
|---|---|---|
| Deadline to file a motion to amend pleadings | 10/26/2023 | 1/15/2024 |
| Notice of subject matter for each expert report | 3/22/2024 | 7/24/2024 |
| Expert disclosures | 4/12/2024 | 8/10/2024 |
| Rebuttal disclosures | 5/10/2024 | 9/20/2024 |
| Last day to hear motions to compel | 6/20/2024 | 11/8/2024 |
| Discovery closes | 7/12/2024 | 12/31/2024 |
| Deadline to file dispositive motions (*not calendared*) | 8/8/2024 | 1/31/2025 |
| Last day to hear dispositive motions | 9/12/2024 | 2/28/2025 |

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A. VACATING THE CONSENT DECREE AND ENTRY OF SCHEDULING ORDER

CSPA filed this action on January 14, 2021, alleging Defendant has violated the Resource Conservation and Recovery Act and Proposition 65 by allowing telecommunications, which it placed on the bottom of Lake Tahoe ("Cables"), to degrade and discharge lead into Lake Tahoe. Dkt. No.1. The Parties engaged in early settlement discussions and were successful in settling the claims by September 2021, without further litigation or discovery. *See* Dkt. No. 16. The Court entered an Amended Consent Decree on November 5, 2021. Dkt. No. 2021.

Pursuant to the Consent Decree, Defendant obtained permits and approvals to remove the Cables by June 2023. Dkt. No. 33 at 2:10-14. Also, during the term of the Consent Decree, Defendant hired consultants to conduct sampling around specific sections of the Cables and to opine on whether the Cables adversely impacted Lake Tahoe. *Id*. at 2:15-19; *see also* Dkt. No. 33-1 at 4-9 (Haley &

Aldrich, October 2021). Despite having all permit approvals in place, Defendant sought leave to vacate the Consent Decree and reinitiate litigation after a news article regarding the Cables and other similar cables around the United States was published by the *Wall Street Journal* on July 9, 2023. *See* Dkt. No. 49 at 3. The Court vacated the Consent Decree on August 1, 2023. Dkt. No. 55.

In the Order vacating the Consent Decree, the Court ordered the Parties to file case management statements by August 17, 2023. Dkt. No. 55 at 2:11-12. Each Party submitted an initial case management statement, Dkt. Nos. 56, 57, and amended statements pursuant to Court order on August 25, 2023, Dkt. Nos. 61, 62. By the time Defendant submitted its initial case management statement, it had hired another consultant to conduct further testing and opine on the harm from the Cables to Lake Tahoe. *See* Dkt. No. 57 at 3:7-15; *see also* Dkt. No. 57-1 at 4-42 (Ramboll US Consulting, Inc, Lake Tahoe Water Lead Study, Aug. 3, 2023). The sampling for this report was conducted in June 2023, while the Consent Decree was still in place. Dkt. No. 57-1 at 6.

Plaintiff proposed a schedule that would require disclosure of expert reports by May 1, 2024 and rebuttal expert reports by July 1, 2024 and would close discovery on August 15, 2024. Dkt. No. 61 at 3. Plaintiff also sought a hearing date for dispositive and *Daubert* motions on October 30, 2024. *Id*. Between August 1, when the Consent Decree was vacated, and the filing of the proposed schedule, CSPA did not have an opportunity to retain consultants and experts to conduct sampling and analysis of the Cables, and, as a result, had not determined the timeline necessary to conduct such an investigation. Boyd Decl., ¶ 3. Moreover, CSPA did not anticipate difficulties in obtaining previous sampling and analysis conducted by third parties, including from Marine Taxonomic Services and/or Beyond the Blue, which Defendant subpoenaed in early August 2023. Boyd Decl., ¶ 4; *see also* Dkt. No. 65 (Defendant's Motion to Compel [Beyond the Blue's] Compliance with Subpoena).

The Court entered the Scheduling Order on October 10, 2023. Dkt. No. 70. In the Order, the Court adopted a compromise schedule, placing most deadlines in between the dates requested by Plaintiff and Defendant. *See id*.; *compare* Dkt No. 61 at 3, Dkt. No 62 at 3.

### B. NEW COUNSEL AND INFORMATION REGARDING SAMPLING SCHEDULE

After the Consent Decree was vacated and litigation was reinitiated, CSPA's existing counsel determined they needed additional legal resources to litigate the matter. Boyd Decl., ¶ 5. Existing

counsel reached out to counsel at Aqua Terra Aeris Law Group (ATA) in mid-September 2023, to discuss representing CSPA in this matter. Maclear Decl., ¶ 4. ATA and CSPA entered into their representation agreement on October 2, 2023. Maclear Decl., ¶ 2. At that point, ATA counsel began getting up to speed with the facts, procedural history, current status of the litigation, evaluating the case, strategizing with existing counsel and outlining a litigation plan for future implementation, although the existing counsel was continuing to take the lead on litigation at this time. Maclear Decl., ¶ 5. ATA counsel was brought in as new lead counsel and appeared in the case on October 23, 2023. Dkt. No. 74.

CSPA's counsel began the process of identifying, interviewing, and establishing consulting expert relationships with potential experts on behalf of CSPA almost immediately after the Consent Decree was vacated. Boyd Decl., ¶ 5; Maclear Decl., ¶ 6. However, due to scheduling and budget constraints, it has taken CSPA the past few months to find and retain qualified experts and/or consultants to conduct the necessary investigations and express necessary opinions. Maclear Decl., ¶ 7. CSPA is still in search of additional testifying experts in support of its claims. *Id.*, ¶ 8.

Moreover, CSPA's counsel has contacted multiple regulatory agencies to determine permitting requirements for sampling and discovered that the California Department of Parks & Recreation will require a permit that will take approximately ninety (90) days to process. Maclear Decl., ¶¶ 9-10. While CSPA counsel originally intended to begin investigations in October 2023, it is now obvious that logistically many of those investigative tasks cannot be started until February 2024 and will not be completed before March or April 2024, considering expert/consultant schedule, permitting requirements, and weather. Boyd Decl., ¶ 3; Maclear Decl., ¶ 11.

### C. MEET AND CONFER EFFORTS

On October 23, 2023, the same day that ATA counsel appeared in the case, Matthew Maclear of ATA emailed Defendant's counsel proposing an amended schedule and asking to meet and confer. Maclear Decl., ¶ 15, Ex. A (email communication). The parties met via video conference on October 31, 2023 to discuss a potential amended schedule. *Id.*, ¶ 16. At the meeting, Defendant's counsel indicated they would consider moving only specific deadlines two to four weeks at most. *Id.*, ¶ 17, Ex. A. Despite this apparent stalemate, CSPA counsel committed to providing a more detailed

1 explanation of good cause for the amendment. *Id*. CSPA counsel provided a detailed explanation of good cause on November 2, 2023 and asked for Defendant to respond by November 7, 2023. *Id.*, ¶ 19, Ex. B (CSPA letter). On November 7, 2023, CSPA counsel provided additional, newly-acquired information regarding the permitting requirements and schedule for that, further justifying amending the schedule. *Id.*, ¶ 20, Ex. A. On November 15, 2023, Defendant's counsel, Navi Dhillon, responded that they "will provide a further written response in the coming days." *Id.*, ¶ 21, Ex. A. On November 22, 2023, counsel for Defendant indicated they would not stipulate to the requested extension. Maclear Decl., ¶ 22, Ex. C.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992). The "focus of the inquiry is upon the moving party's reasons for seeking modification." *Johnson,* 975 F.2d at 609 (internal citation omitted). Specifically, the Court will consider the following factors: "whether the movant was diligent in helping the court to create a workable Rule 16 order; whether matters that were not, and could not have been, foreseeable at the time of the scheduling conference caused the need for amendment; and whether the movant was diligent in seeking amendment once the need to amend became apparent." *Lopez v. Am. Fire & Cas. Co.*, No. 1:20-cv-01418-JLT-SAB, 2022 U.S. Dist. LEXIS 30205, at *4 (E.D. Cal. Feb. 18, 2022) (quoting *United States ex rel. Terry v. Wasatch Advantage Grp.*, LLC, 327 F.R.D. 395, 404 (E.D. Cal. 2018)). "The prejudice to other parties…may be considered, but the focus is on the moving party's reason for seeking the modification." *Lopez*, 2022 U.S. Dist. LEXIS 30205, at *4 (quoting *Johnson*, 975 F.2d at 609).

### IV. DISCUSSION

CSPA meets the three-prong test detailed in *Lopez* to demonstrate that good cause exists to modify the scheduling order in this case. *See Lopez*, 2022 U.S. Dist. LEXIS 30205, at *4. First, CSPA's existing counsel at the time worked to prepare a scheduling order that would meet the desires of the Parties to litigate the case quickly with the information available at the time. Second, the

amendment is needed because CSPA's counsel did not know and could not have known about the time it would take to conduct the sampling and investigation necessary to prepare expert reports. Moreover, at the time CSPA proposed a schedule, ATA was not representing CSPA, and therefore, their existing litigation schedules were not and could not have been considered in the proposal. Third, as soon as CSPA became aware of the additional time required for sampling and the conflicts with ATA counsel's litigation schedule, CSPA notified Defendant and attempted to come to an agreement for a new schedule. Finally, while the Court need not consider prejudice to Defendant, little to no prejudice exists here. Trial for the matter has not been set, and CSPA is seeking a reasonable extension of approximately five months. In contrast, denying this Motion would significantly prejudice CSPA's ability to acquire necessary information, conduct discovery and to prepare for trial.

### A. CSPA Proposed a Schedule in August 2023 Based on the Best Information Available.

On August 25, 2023, CSPA proposed a schedule based on the information available to them at the time and with the goal of setting a trial date as soon as practicable. After the Consent Decree was vacated on August 1, 2023, the Parties met and conferred to discuss a schedule. *See* Dkt. No. 56 at 2:4-5. While CSPA had engaged in initial conversations with potential experts, CSPA did not have time to formally retain a consultant to advise Plaintiff on an investigation and sampling plan, because of the short timeline between the order vacating the Consent Decree and the deadline to file case management statement. *See* Dkt. No. 70; Boyd Decl., ¶¶ 2-3. Moreover, during the initial scheduling, Defendant expressed a desire to have trial as soon as possible. *See, e.g.*, Maclear Decl., ¶ 23, Ex. D (8/24/23 Tr.) at 14:14-16. CSPA agreed, and still agrees, with that general goal. Finally, the schedule CSPA proposed only considered potential scheduling conflicts of CSPA's counsel at the time. *Id.*, ¶ 13. Accordingly, CSPA proposed a schedule based on the initial discussions with experts, existing counsel's schedule, and the desire to litigate the matter quickly.

### B. Amending the Schedule Is Necessary to Complete Investigation and Sampling and to Accommodate New Counsel's Litigation Schedule.

The facts here support modifying the scheduling order for two general reasons. First and foremost, after the scheduling order was entered, CSPA learned it would take longer than originally

anticipated to retain experts and consultants to plan and to conduct an investigation necessary to support expert opinions. Second, CSPA's new counsel at ATA has direct conflicts with the current scheduling order. Neither situation could have been known when CSPA proposed a schedule in August 2023. At the August 24, 2023 case management conference, the Court recognized that the proposed schedules were "tight" and noted that modifications, such as this one, may be necessary. *See* Maclear Decl., Ex. D (8/24/23 Tr.) at 14:25, 6:20-22 ("it's quite possible something may arise that would merit adjustment of that schedule down the road."), 5:13-15 ("you could move to modify the scheduling order should anything come up that does require more time. It seems conceivable that that could be the case."). Such is the case now.

1. CSPA Requires Additional Time to Conduct a Necessary Investigation.

As detailed above, CSPA has been diligently working to retain experts and consultants to develop and conduct an investigation to assess the discharges and harms from the Cables, since the Court vacated the Consent Decree on August 1. *See* Boyd Decl., ¶¶ 2-3; *see also* Maclear Decl., ¶¶ 6-8. This has included identifying and retaining the following: a consultant to analyze sampling results and opine on the harms; a consultant to develop a sampling plan; and consultants to conduct underwater sampling. Maclear Decl., ¶ 6. To find the appropriate set of consultants, CSPA was required to identify a number of potential consultants and have numerous initial conversations regarding their relevant experience and training, scheduling, budget, equipment needs, contracting requirements, etc. *Id*. While CSPA counsel started this process prior to submitting a proposed schedule, it was not and could not have been completed in that timeframe. Boyd Decl., ¶¶ 2-3; *see also* Maclear Decl., ¶¶ 6-8. Further, CSPA has subsequently reached out to several regulatory agencies to determine if there are any permitting requirements. Maclear Decl., ¶¶ 9-10. California Department of Parks and Recreation stated CSPA would need a permit for its anticipated investigation, and the permit will take approximately ninety days to process after the study is developed and the application is received. Maclear Decl., ¶ 10. CSPA is diligently working with its retained consultants to prepare the scientific study and file the permit application now. *Id*. Thus, while CSPA originally anticipated it would be able to conduct sampling in October and November 2023, CSPA's consultants anticipate that the investigation will not be complete until March or April 2024.

Maclear Decl., ¶ 11.

In addition to conducting an independent investigation, CSPA anticipates significant delays in obtaining responses to fact discovery. First, Defendant has served a number of third-party subpoenas and has sought motion to compel for at least one in this Court, resulting in delay of the responses. *See* Dkt. No. 65. Second, although CSPA has diligently pursued fact discovery, it appears that the parties will need to work through significant issues to obtain the relevant and permissible discovery sought. CSPA propounded discovery on Defendant, including requests for admission, interrogatories, and requests for production of documents on October 4, 2023. Boyd Decl., ¶ 6. Defendant sought a two-week extension, which CSPA granted. Boyd Decl., ¶ 6. On November 17, 2023, Defendant served responses on CSPA. Boyd Decl., ¶ 7. From an initial review, Defendant failed to sufficiently respond. Boyd Decl., ¶ 7.[1] Thus, CSPA anticipates that the Parties will need to meet and confer regarding the discovery responses, necessarily resulting in further delays to obtaining relevant facts.[2] In order to ensure completeness of the expert exchanges, these fact discovery disputes must be resolved first and responsive information exchanged.

In short, the current schedule will significantly impair CSPA's ability to investigate and gather necessary evidence for experts in time for preparation of reports and trial. "As ground for a continuance, [good cause is] something which deprives the applicant of a fair trial if forced to proceed at the appointed time." Good Cause Definition, BALLENTINE'S LAW DICTIONARY (3d ed. 2010), *available at* Lexis. CSPA did not have time between when the consent decree was vacated and when the schedules were proposed to effectively determine how much time CSPA's consultants need to obtain permits and conduct the sampling and analysis plans. Further, extending the deadline to amend the pleadings is also appropriate to afford new counsel an opportunity to assess all potential claims

---

[1] Defendant has wholly refused to answer at least nine out of sixteen interrogatories and, from CSPA's perspective, has provided inapplicable objections to all. Boyd Decl., ¶ 7. Similarly, Defendant has objected to each and every request for production of documents and has wholly refused to respond to seven out of thirty-eight requests. *Id*. Moreover, Defendant only produced some of the documents responsive to the requests for production and has not yet provided a date by which it will serve all other responsive documents. *Id*.

[2] CSPA has also objected to many of Defendant's discovery requests and has refused to respond on the basis of those objections. While CSPA believes these objections are appropriate, this is likely to cause further delay.

based on the facts and to avoid a future motion to amend the scheduling order. Thus, good cause exists to extend the schedule as proposed by CSPA.

### 2. The Current Schedule Conflicts with ATA Counsel's Current Litigation Schedule.

CSPA's new counsel from ATA Law Group, who are now lead counsel in this matter, also have several significant conflicts with the current schedule that make it difficult to meet deadlines. First, the dispositive motion hearing date is set for September 12, 2024, which would require that a motion be filed no later than August 8, 2024. ATA attorney Erica Maharg has another trial scheduled for August 6-16, 2024. *San Francisco Baykeeper v. City of Sunnyvale et al.*, N.D. Cal. Case No. 5:20-cv-824-EJD, Dkt. No. 198. Further, ATA counsel, Matthew Maclear and Erica Maharg, have dispositive and non-dispositive motion briefing and hearings close in time to the August 8 deadline in another case. *See San Joaquin Raptor/Wildlife Rescue Center v. Ardagh Glass*, E.D. Cal. Case No. 1:22-cv-00595-JLT-SKO, Dkt. No. 25 at 4.[3] These conflicts would create a significant impediment to preparing a filing a motion for summary judgment in the present case.

Second, the current expert and rebuttal expert disclosure deadlines, set for April 12, 2024 and May 11, 2024, respectively, overlap with other expert disclosure deadlines in two other cases, as well as dispositive motion briefing in two other matters. *See San Joaquin Raptor/Wildlife Rescue Center v. Ardagh Glass,* E.D. Cal. Case No. 1:22-cv-00595-JLT-SKO, Dkt. No. 25 at 3-4 (Maclear and Maharg are counsel of record); *see Animal Legal Def. Ctr. v. Foster Farms*, Merced Superior Court, Case No. 20-cv-024393 (Flanders lead counsel); *see also California Coastkeeper Alliance v. Cosumnes Corporation*, E.D. Cal. Case No. 2:20-cv-01703-DB, Dkt. No. 101 at 6 (Flanders and Maharg counsel).

Because ATA was not retained by CSPA until well after the schedules were proposed, CSPA could not have taken these scheduling conflicts into consideration when they originally proposed the schedule. *See* Maclear Decl., ¶ 2; *see also* Dkt. Nos. 56, 61. While CSPA and counsel understand that

---

[3] Trial for this matter is scheduled for December 3, 2024, which is why CSPA proposes the filing and hearing deadlines for dispositive motions in January and February 2024. *See San Joaquin Raptor/Wildlife Rescue Center v. Ardagh Glass*, E.D. Cal. Case No. 1:22-cv-00595-JLT-SKO, Dkt. No. 25 at 4.

some conflicts will occur within the course of an attorney's docket, these numerous and significant deadlines will significantly constrain counsel's ability to effectively represent CSPA. Finally, counsel for Defendant did not raise any specific conflicts with the schedule proposed by CSPA. Maclear Decl., ¶ 18.

### C.  CSPA Has Diligently Sought an Amended Schedule.

As soon as CSPA became aware that it needed additional time for expert exchanges and to complete discovery, as well as conflicts with new counsel's schedule, CSPA notified Defendant. *See* Maclear Decl., ¶ 15 (notifying Defendant on October 23, 2023, the same day ATA counsel appeared in the case). "A party fails to exercise due diligence where the party seeking a modification has known of the facts necessitating the modification and yet failed to seek one." *Neidermeyer v. Caldwell,* 718 Fed. App'x. 485, 489 (9th Cir. 2017) (quoting *Learjet, Inc. v. Onek, Inc*. (*In re W. States Wholesale Nat. Gas Antitrust Litig.)*, 715 F.3d 716, 737 (9th Cir. 2013)). The opposite is the case here. As explained above, CSPA worked from August through November to retain consultants and seek advice on the scope and timing of an investigation. *See* Boyd Decl., ¶¶ 2-3; Maclear Decl., ¶¶ 6-8. Through this process, it became apparent that the April 12, 2024 deadline to exchange expert reports is not feasible. *See* Maclear Decl., ¶¶ 11-12. CSPA did not wait until the April 12, 2024 expert disclosure deadline is impending but is seeking an extension as soon as it knew it needed more time.

### D.  The Amended Schedule Will Not Delay Trial or Prejudice Defendant.

While a Court need not consider harm to the other parties while considering a modification of the scheduling order, *see Lopez*, 2022 U.S. Dist. LEXIS 30205, at *4, it is worth noting that the modification sought will not prejudice the Court or Defendant. The Court has not scheduled a trial in this matter, and thus, the schedule will not require a trial to be rescheduled. While Plaintiff recognizes the proposed schedule does modify Court hearings, Plaintiff has no information to believe this will significantly disrupt the Court's calendar.

Similarly, Defendant has stated that it will suffer prejudice from the extension because it will delay the adjudication of CSPA's claims against it. Maclear Decl., ¶ 18. While CSPA respects that Defendant has an interest in trial, as does CSPA, the delay of approximately five months sought by CSPA is not a significant burden to this interest. *See Crawford v. Delta Sci. Corp.,* No. CV 10-2960

AHM (JCx), 2011 U.S. Dist LEXIS 47759, *9 (C.D. Cal. April 25, 2011) ("delay alone . . . usually will not justify denial of leave to amend." [internal quotation omitted]); *see also Software Rights Archive, LLC v. Facebook, Inc.,* No. C-12-3970 RMW, 2013 U.S. Dist. LEXIS 133707, at *19 (N.D. Cal. Sep. 17, 2013) ("Delay alone, without specific examples of prejudice resulting therefrom, is insufficient to establish *undue* prejudice." [emphasis in original]). Moreover, because trial is not scheduled in this matter, it is unclear when CSPA's claims would have been adjudicated under the existing schedule and whether Defendant will suffer any harm at all from an extension.

Finally, any harm that Defendant does suffer from the slight delay cannot outweigh the harm that CSPA would suffer if it were unable to gather the facts, evidence, and analysis necessary to present its case to the Court. Defendant took the period during which the consent decree was in place to contract for two separate reports to be prepared to support their position. Haley & Aldrich collected samples in mid-March 2021 and produced a report in October 2021. *See* Dkt. No. 33-1 at 5, 9. Ramboll US Consulting collected samples in June 2023 and produced a report in August 2023. *See* Dkt. No. 57-1 at 4, 6.[4] Of course, CSPA had no reason to reason to conduct such an investigation while the Consent Decree was in place, because Defendant was committed to removing the Cables. Dkt. No. 22. It is critical that Plaintiff be afforded an adequate opportunity to conduct similar investigations in order for the claims to be fairly adjudicated.

## V. CONCLUSION

For the foregoing reasons, CSPA respectfully requests that the Court grant the Motion and enter the Proposed Order filed concurrently herewith.

Dated: November 27, 2023                          AQUA TERRA AERIS LAW GROUP

                                                  s/ Erica A. Maharg
                                                  Erica A. Maharg
                                                  Attorneys for Plaintiff CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

---

[4] Defendant's reports show that preparing a written report after sampling can take two to seven months to complete, further supporting a modest five-month extension.