Joshua Koltun (Bar No. 173040)
One Sansome Street
Suite 3500, No. 500
San Francisco, California 94104
Telephone: 415.680.3410
Facsimile: 866.462.5959
joshua@koltunattorney.com

Attorney for Third Party Witnesses
Below the Blue,
Marine Taxonomic Services, Ltd,
Seth Jones, and Monique Rydel-Fortner

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>         Plaintiff,<br><br>v.<br><br>PACIFIC BELL TELEPHONE COMPANY<br><br>Defendant. | Case No. 2:21-cv-00073-JDP<br><br>**THIRD PARTY WITNESS BELOW THE BLUE ADMINISTRATIVE MOTION FOR EXTENSIONS OF TIME**<br><br>*Filed herewith:*<br><br>Declaration of Seth Jones<br>Declaration of Joshua Koltun<br>[Proposed] Order |

*Introduction*

Pursuant to Local Rules 114 and 233, Below the Blue ("BTB") requests certain brief extensions of time so that newly-engaged counsel can simultaneously (i) assist in the production of those documents as to which BTB has no objection to production, and also (ii) move this Court to reconsider its order compelling production of documents as to which BTB has legitimate legal objections to production. Since BTB had no counsel to appear for it, it was barred from filing opposition to the motion to compel, and so it was granted. But now it has counsel.

To be clear, the dispute is over producing – to either party in this litigation—documents concerning BTB's assistance to the Wall Street Journal in gathering news to disseminate to the public. BTB contends that such documents are subject to the First Amendment Reporter's Privilege. BTB and related entities will be producing other information, including any documents or communications with Plaintiffs.

*Factual and Procedural Background*

On July 27, Defendants sent the Wall Street Journal a subpoena for documents concerning its reporting on lead-clad cables. Koltun Decl., ¶ 1. Subsequently, on August 9, BTB was served with the subpoena at issue here, and subpoenas have also issued to related company Marine Taxonomic Services, Ltd. ("MTS"), and Seth Jones and Monique Ryder-Fortner. (The undersigned counsel represents all four entities and persons ("MTS Entities") and does not intend to raise any issues distinguishing access to documents between any of these entities or persons).

Jones told defense counsel that he was looking for counsel and asked for an extension of time to respond to the subpoenas. Defense counsel responded that they would only grant an extension of time in exchange for "cooperation from you in accepting service and ***producing the documents*** on a rolling basis." DE 65-18 at 3 (emphasis added). Jones responded that he "object[ed] to the requests in the subpoena because they are burdensome, not related to litigation and violate my first amendment rights." DE 65-18 at 2.

Jones sought to obtain legal counsel to respond to the various subpoenas. Jones Decl., ¶ 1. On August 26, Jones signed an engagement agreement for legal representation in this matter by the Vance Center for International Justice. *Id.* That agreement reflected that Vance Center lawyers would seek

1  to find law firms with which to co-counsel. *Id.* Although Jones understood that Alexander
2  Papachristou of the center was not admitted in California, his understanding was that he should direct
3  all communications from defense counsel to Papachristou until such California co-counsel was
4  engaged.  He understood that to include such matters as negotiating extensions or accepting service of
5  counsel. *Id.*  On more than one occasion he understood – and Papachristou so represented to
6  Defendants -- that law firms had agreed to act as such co-counsel with the Vance Center, only to later
7  learn that they had withdrawn or declined such representation.  *Id*.  DE 65-16 at 3 (Papachristou
8  confirms hat Vance Center has secured counsel, who is getting up to speed); Hearing Transcript at 10
9  (Defense counsel Karis: "we've been told several times [by Papachristou] that he had secured counsel
10 and then we receive follow-up communication indicating that he no longer had secured counsel")

11 Jones showed up at the hearing on the Motion to Compel without counsel.  As the Court told
12 Jones at the hearing, however, MTS is a corporate entity that cannot represent itself *pro se,* and thus
13 he could not present any arguments in opposition to the motion.  Transcript, 5.  By the same token,
14 Jones would not have been able to file written opposition *pro se.*  The Court indicated sympathy with
15 Jones' difficulty and encouraged him to keep trying to obtain counsel. *Id.,* 5-7.  The Court noted that
16 the motion was unopposed, however, and granted the motion.  *Id.* at 7.

17 The undersigned counsel (Koltun) first spoke to Jones on November 22, the day before
18 Thanksgiving, and agreed to act as counsel for the MTS entities.  Koltun Decl., ¶ 2.  To be clear,
19 Koltun is not cocounseling with the Vance Center and has had no dealings with them. *Id.*

20 Koltun is a solo practitioner.  *Id., ¶* 3.  He has no associates or paralegals. *Id.*  He worked
21 through the Thanksgiving holiday to get on top of a veritable fire-hose of information. *Id.* He has
22 been reviewing documents and interviewing his clients to understand the nature of the potentially
23 responsive documents and the facts and circumstances that surrounded the creation of those
24 documents and communications. *Id.*   He is an experienced First Amendment litigator and
25 immediately recognized that there is a large category of documents that are subject to the First
26 Amendment reporters privilege. *Id.*

27 On November 24, the day after Thanksgiving, Koltun sent defense counsel an email
28 introducing himself as representing all four MTS entities, and proposed that, now that MTS had

Joshua Koltun ATTORNEY

obtained counsel, that Defendant stipulate to give MTS a brief opportunity to respond to the various subpoenas so that the parties could expeditiously meet and confer and determine what disputes existed and present any such disputes to the Court. *Id.,* ¶ 4. Koltun indicated that he was available during the rest of Thanksgiving and could make himself available through the Christmas holidays. Alternatively, Koltun proposed that he would move for reconsideration of this Court's order compelling production, and asked to meet and confer on that motion. *Id.*

Defense counsel did not respond at all until Tuesday afternoon, November 28, at which point they proposed talking the next day. *Id.,* ¶ 5. That same evening Koltun sent formal objections and responses to the subpoenas on behalf of the MTS entities. *Id.* Wednesday morning (today) Koltun and defense counsel met and conferred by Zoom call and followed up by email. *Id.*

Defense counsel has declined to extend the deadline for BTB to produce documents, which is November 30, tomorrow. *Id., ¶* 6. They declined to extend the time to file an response to OSC to MTS in the Southern District, also due tomorrow. *Id.* They declined to stipulate that all matters concerning discovery from the MTS entities be consolidated in this Court. *Id*. Defense counsel has not indicated whether they would oppose an extension of time for Beyond the Blue to file its Motion to Reconsider. *Id.* Defense counsel has not responded yet to an email from Koltun asking what times they are available next week for the informal Zoom conference regarding the Motion to Reconsider that this Court requires under its procedures. *Id.*

### *ARGUMENT*

The undersigned understands defense counsel's frustrations with BTB's inability to find counsel that could appear in this action and effectively represent it. But as shown above, BTB at all times acted in the reasonable and good faith understanding that such representation was imminent.

The motion to compel was granted because BTB had no California counsel and was barred from opposing it. But now BTS has found counsel.

The undersigned counsel signed onto this matter the day before Thanksgiving and has been making heroic efforts to get on top of a complex matter. He is simultaneously (i) trying to gather documents for production while also identifying those documents that are privileged and (ii) preparing for motion practice before this Court (and in the Southern District) to reconsider the order compelling

- 3 -

production.

The issue of First Amendment Privilege is quite serious – serious enough that Defendants withdrew their efforts to obtain these documents directly from the Wall Street Journal.[1]  That same privilege applies to these documents as held by BTB/MTS, who assisted the Wall Street Journal in reporting the story. The undersigned would like the opportunity to properly present that issue to this Court on a Motion to Reconsider.  Since defense counsel would not grant the courtesy of very modest extensions of time, the undersigned respectfully requests that the Court order such extensions, as follows:

- An extension to produce all documents as to which there is no objection, from November 30 until December 7th;
- An extension to file a Motion to Reconsider, from December 7 until December 14th; and
- Tolling of the obligation to produce documents as to which there is an objection until the motion to reconsider has been resolved.

Respectfully submitted,

November 29, 2023

                    /s/
Joshua Koltun
Attorney for Third Party Witnesses Below the Blue, Marine Taxonomic Services, Ltd, Seth Jones, and Monique Rydel-Fortner

---

[1] EDF has a similar First Amendment Privilege, but it is largely moot, because EDF agreed to produce the documents requested from BTB as to its assistance to EDF. Counsel understands that Defendant will contend that this fact constitutes a general waiver of all of the documents to which BTB claims privilege.  Counsel would like the opportunity to brief that issue.