NAVI DHILLON (SBN 279537)
navidhillon@paulhastings.com
PETER C. MEIER (SBN 179019)
petermeier@paulhastings.com
CHRISTOPHER J. CARR (SBN 184076)
chriscarr@paulhastings.com
LUCAS GRUNBAUM (SBN 314180)
lucasgrunbaum@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000

HARIKLIA KARIS (*admitted pro hac vice*)
hkaris@kirkland.com
ROBERT B. ELLIS (*admitted pro hac vice*)
rellis@kirkland.com
MARK J. NOMELLINI (*admitted pro hac vice*)
mnomellini@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

Attorneys for Defendant
PACIFIC BELL TELEPHONE COMPANY

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC BELL TELEPHONE COMPANY,<br><br>Defendant. | CASE NO. 2:21-cv-00073-JDP<br><br>**PACIFIC BELL'S OPPOSITION TO BELOW THE BLUE'S "ADMINISTRATIVE" MOTION FOR EXTENSIONS OF TIME AND FOR "TOLLING"**<br><br>Magistrate Judge Hon. Jeremy D. Peterson<br><br>Complaint Filed:     January 14, 2021 |

Defendant Pacific Bell respectfully submits this opposition to Below the Blue ("BtB") administrative motion for an order excusing from complying with the court-ordered deadline to produce documents called for by a subpoena that was served on August 9, 2023 (the "Subpoena").

## I.     INTRODUCTION

This is a delay tactic.  BtB has already unilaterally granted itself an extension, and seeks a further extension until a baseless motion for reconsideration is resolved.  BtB is not entitled to a "redo."

It has been 117 days since Pacific Bell served its subpoena.[1]  It has been 5 days since BtB missed the November 30 deadline set by the Court's November 9 Order.  Dkt. 80.  BtB now stands in violation of the Court's Order.  As the Court previously recognized, the further delays sought by BtB would jeopardize the schedule.  Dkt. 81 (Court: "[W]e need to proceed and keep the case moving….").

BtB claims both "tolling" of the Court's Order and various "extensions" are justified because it now has counsel and wishes to object to the Subpoena.  Dkt. 87, at 2.  But BtB has long had sophisticated and well-funded entities and attorneys in its corner, including "a team of environmental lawyers," the *Wall Street Journal* ("WSJ"), the Environmental Defense Fund ("EDF"), the Vance Center, and Alexander Papachristou, Esq.

Below the Blue's website states:

> Our goal is to remove foreign debris from bodies of water, educate the public about pollution, and collect data that will help facilitate policy change and enforcement.  ***We work closely with a team of environmental lawyers***, local agencies and residents to help guide our path.[2]

According to BtB's counsel, BtB entered into an "oral agreement" with the WSJ in 2022, whereby Seth Jones and Monique Fortner of BtB allegedly agreed to act as "reporters" for the WSJ in connection with its series on lead-clad cables.  Declaration of Jon David Kelley ("Kelley Decl."), ¶7.  In May 2022, BtB (through Marine Taxonomic Services) entered into a written agreement with EDF in connection with the same lead-cable series, whereby EDF agreed to pay BtB/MTS $85,000 (it is unusual, to say the least, that BtB would allegedly enter into an "oral argument" with the WSJ and a written agreement with EDF).

---

[1]     And it was no easy task to effect service; the Court will recall Pacific Bell had asked to effect substitute service due to efforts to evade service.

[2]     https://belowtheblue.org/about-us-1 (emphasis added).

1

**PACIFIC BELL'S OPPOSITION TO BTB'S MOTION FOR EXTENSION**

On August 26, BtB engaged the Vance Center and Alexander Papachristou, Esq. to represent it. Dkt. 87, at 1; Dkt. 87-1 (Jones Declaration), at 2 ("On August 26, I signed an engagement agreement for legal representation in this matter by the Vance Center for International Justice."). Mr. Papachristou is a sophisticated attorney who has appeared in major litigation. *See, e.g, Am. Ass'n of Cruise Passengers v. Cunard Line, Ltd.*, 691 F. Supp. 379, 380 (D.D.C. 1987) (listing Mr. Papachristou as counsel of record).

Pacific Bell sought to meet and confer with BtB and its attorneys on September 5, September 11, September 14, and September 18. *See* Dkt. 65-16. Pacific Bell filed its motion to compel on September 26. Dkt. 65. The Court granted that motion after a hearing on November 9. Dkt. 80.

During the November 9 hearing, Mr. Jones was not candid with the Court about Mr. Papachristou. During the hearing, the Court observed that "we need to recognize that the fact of the matter is *you don't currently have counsel* and, and we need to proceed and keep the case moving." Dkt 83. at 7 (emphasis added). Mr. Jones did not disclose to the Court what he now states in his declaration, that "[o]n August 26, I signed an engagement agreement for legal representation in this matter by the Vance Center for International Justice." Dkt. 87-1.

On November 24, a few days before the compliance deadline, Pacific Bell's counsel received an email from Joshua Koltun indicating that he—like the Vance Center and Alexander Papachristou, Esq. before him—had been engaged as BtB's counsel. Kelley Decl., Ex. A. On November 28, Mr. Koltun served a single set of responses and objections to Pacific Bell's subpoena on behalf of BtB, Seth Jones, Monique Fortner, and MTS. *Id.*, at Ex. B. Notwithstanding that these responses and objections were over 12-weeks overdue, meaning that the objections have long been waived, BtB objects to producing the vast majority of documents that the Court's Order requires be produced. *Id.* The parties met and conferred on November 29. *Id.* ¶4. During that call, Mr. Koltun represented that his attorney fees were being paid by the WSJ. *Id.* Mr. Koltun also claimed that BtB had entered into an "oral agreement" with the WSJ, whereby BtB agreed to act as reporters for the WSJ, and therefore were entitled to assert the reporter's privilege. *Id.* ¶6. Mr. Koltun claimed that he intends to assert the reporter's privilege in a "motion for reconsideration" to be filed on December 14. *Id.* ¶7. No explanation was provided as to why, if it is true that the WSJ entered into an "oral agreement" with BtB to serve as reporters (to whom the reporter's privilege would apply) in 2022, the WSJ did not pay for BtB's representation months ago when it received

Pacific Bell's subpoena (as the WSJ is allegedly doing today according to Mr. Koltun).

# I.   ARGUMENT

### A.   BtB Could Have Asserted the Reporter's Privilege Many Months Ago, But Chose Not to Do So For Strategic Reasons.

According to BtB, it has had agreements with the WSJ and EDF since 2022. Kelley Decl. ¶¶ 6, 7. BtB has received funding from the EDF since 2022. And BtB's lawyer Mr. Koltun is funded by the WSJ today. *Id.* ¶4. BtB has been represented by lawyers in connection with this specific matter—the Vance Center and Alexander Papachristou, Esq.—since at least August 26. Dkt. 87-1. During the November 9 hearing, Seth Jones of BtB claimed he talked to "dozens of [lawyers] almost daily," who gave him "good arguments not to give documents currently." Dkt. 83, at 3.

Funded by sophisticated entities (EDF and WSJ), surrounded by "dozens" of lawyers, and represented since mid-August, BtB could have asserted a "reporter's privilege" argument months ago. Mr. Koltun—or someone like him paid by the WSJ—could have been retained by BtB and paid by the WSJ in August. Instead, BtB refused to produce any documents, forcing Pacific Bell to file a motion to compel and the Court to hold a hearing and enter the November 9 Order.

While a few documents have now been produced, BtB's strategic choice to delay these proceedings does not justify its ongoing violations of this Court's Order. Nor does BtB's opportunistic hiring of a second set of lawyers justify a "do over" at this late stage of the proceedings.

### B.   BtB's Proposed "Tolling" and "Extensions" Would Jeopardize the Court's Schedule.

BtB's Motion seeks three forms of relief: (1) "tolling" until a "motion for reconsideration" has been resolved (*i.e.*, a stay of the Court's Order); (2) an extension from November 30 to December 7 to produce a minority of the documents at issue; and (3) an extension of the deadline to seek reconsideration as to a majority of documents subject to the Court's Order, from December 7 to December 14. Dkt. 87, at 5. All three requests should be denied.

The most important of the requests—the request for "tolling" of the Order (*i.e.,* a stay)—is relegated to the last line of BtB's motion. *See id.* BtB offers no citations or facts in support of its

tolling/stay request.[3]  Even if BtB eventually files a motion for reconsideration, it would not stay the Court's Order.  Fed. R. Civ. P. 60(c)(2) (motion for reconsideration "does not affect the judgment's finality or suspend its operation").

The tolling/stay sought by BtB would jeopardize the Court's existing schedule.  The expert disclosure deadline in this case is in April 2024.  BtB should have been producing documents since August 2023, and must produce all responsive documents immediately to avoid jeopardizing the Court's schedule.  As Plaintiff's counsel admitted, the work performed by BtB/EDF/WSJ is at the heart of this case:

> We litigated the Lake Tahoe case that was kind of brought to us on a platter.  And the Wall Street Journal went out and spent a lot of time and did a lot of digging, and found out stuff that we wish we had known when we were bringing the case.  We didn't go to Lake Tahoe and take water samples near the cable.  They did.  And we didn't take samples of soil near cables.  They did.

Dkt. 57-1, Ex. B.

Nor is BtB's proposed December 7 production of "documents as to which there is no objection" even remotely sufficient to keep the schedule on track.  First, BtB has made it clear that, even after December 7, it intends to withhold the majority of documents on frivolous[4] "reporter's privilege grounds, even though those documents are required to be produced under this Court's November 9 Order.

Making matters worse, BtB argues it should be granted an after-the-fact "extension" of the Order's November 30 deadline not so it can comply with the Order, but so it can *challenge* it.  BtB produced a minority of the documents responsive to the Court's Order on December 4, but brazenly suggests that it will withhold the majority of documents the Court ordered must be produced.  Then BtB proposes to delay filing a "motion for reconsideration" (covering the majority of the documents the Court ordered it to

---

[3]  Nor does BtB explain why its "stay" request is properly included in an "administrative" motion.

[4]  BtB's first amendment objections are also baseless: the privilege does not apply to Jones, Fortner, BtB, or MTS, and BtB has admittedly waived its attempt to assert the privilege, now.  First, BtB and its principals are not reporters, they are scuba-certified divers who seek to "remove foreign debris from bodies of water, educate the public about pollution, and collect data that will help facilitate policy change and enforcement."  Nothing more.  Second, Mr. Koltun admitted during the parties meet-and-confer that no written agreement exists between BtB or Jones and the Wall Street Journal.  The only written agreement relating to the work performed is with the Environmental Defense Fund ("EDF").  And third, during the meet and confer with Mr. Koltun, he conceded that EDF had waived any reporter's privilege.  Kelley Decl., ¶8.  Because Below the Blue contracted with EDF, any reporter's privilege it could assert is derivative of EDF's privilege, and thus was waived when EDF waived its privilege.

produce) until December 14.  That "motion for reconsideration" on alleged "reporter's privilege" documents would not be fully briefed until January 2024, jeopardizing the upcoming discovery deadlines.  As discussed above, there is no reason BtB, together with one of the many lawyers and sophisticated entities it has been working with, could not have timely asserted any objections it believed applicable, including the putative "reporter's privilege" its counsel asserts for the first time now, more than four months after it received the subpoena.  "Motions for reconsideration are disfavored" and "may ***not*** be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation," which is precisely what has happened here.  Considering all of the above, the futility of BtB's delay strategy is clear.  *Dairy, LLC v. Milk Moovement, Inc.*, 2022 WL 913024, at *1 (E.D. Cal. Mar. 29, 2022) (citing *Northwest Acceptance Corp. v. Lynnwood Equip*, 841 F.2d 918 (9th Cir. 1988)).

## II.     CONCLUSION

The Court's Order is clear and unambiguous: BtB was required to "produce all documents called for by the Subpoena by no later than November 30, 2023," and neither the timing of the retention of BtB's second lawyer nor the service of baseless and untimely objections and responses change that.  The Court should deny BtB's Motion in the interests of judicial efficiency, fairness, and because "we need to keep the case moving."  Dkt. 81, at 7:6-7; 10:3-4.  A proposed order has been submitted for the Court's consideration.

DATED:  December 4, 2023

Respectfully submitted,

KIRKLAND & ELLIS LLP

*/s/ Hariklia Karis*
HARIKLIA "CARRIE" KARIS
Attorney for Movant

PACIFIC BELL TELEPHONE COMPANY