1  NAVI DHILLON (SBN 279537)
   navidhillon@paulhastings.com
2  PETER C. MEIER (SBN 179019)
   petermeier@paulhastings.com
3  CHRISTOPHER J. CARR (SBN 184076)
   chriscarr@paulhastings.com
4  LUCAS GRUNBAUM (SBN 314180)
   lucasgrunbaum@paulhastings.com
5  PAUL HASTINGS LLP
   101 California Street, 48th Floor
6  San Francisco, California  94111
   Telephone:  (415) 856-7000
7  Fax: (415) 856-7100

8  HARIKLIA KARIS (*admitted pro hac vice*)
   hkaris@kirkland.com
9  ROBERT B. ELLIS (*admitted pro hac vice*)
   rellis@kirkland.com
10 MARK J. NOMELLINI (*admitted pro hac vice*)
   mnomellini@kirkland.com
11 KIRKLAND & ELLIS LLP
   300 North LaSalle
12 Chicago, IL 60654
   Telephone: (312) 862-2000
13 Fax:  (312) 862-2200

14 Attorneys for Defendant
   PACIFIC BELL TELEPHONE COMPANY
15

16                 UNITED STATES DISTRICT COURT

17                 EASTERN DISTRICT OF CALIFORNIA

18

| | |
|---|---|
| 19  CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>20<br><br>21               Plaintiff,<br><br>22       v.<br><br>23  PACIFIC BELL TELEPHONE COMPANY,<br><br>24               Defendant. | Case No. 2:21-cv-00073-MCE-JDP<br><br>**DEFENDANT PACIFIC BELL'S OPPOSITION TO PLAINTIFF'S MOTION TO AMEND SCHEDULING ORDER**<br><br>Judge:       Hon. Jeremy D. Peterson<br>Date:         January 11, 2024<br>Time:        10:00 a.m.<br>Courtroom:  9<br><br>Action Filed: January 14, 2021<br>Trial Date:    None |

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................... 2

    A.      Plaintiff Has Not Been Diligent in Developing or Pursuing Its Claims. ............... 2

    B.      The Court Issued Its Scheduling Order After Extensive Input from the Parties. ............................................................................................................... 4

    C.      Plaintiff's Request To Modify the Court's Schedule. ........................................... 5

LEGAL STANDARD ....................................................................................................................... 6

DISCUSSION .................................................................................................................................... 7

    A.      No Good Cause Exists To Depart from the Mutually Agreed Upon Schedule. ............................................................................................................. 7

    B.      Plaintiff's Alleged Concerns Were Foreseeable. ................................................... 7

    C.      Plaintiff Has Not Shown It Is Unable To Comply with the Scheduling Order. ................................................................................................................. 10

    D.      Further Delay Unduly Prejudices Pacific Bell. .................................................. 10

CONCLUSION ............................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brooke v. River Park Hospitality, Inc.*,
   Case No. 1:20-cv-00102-SAB, 2020 WL 3491016 (E.D. Cal. June 26, 2020) ........................ 8

*Jackson v. Laureate, Inc.*,
   186 F.R.D. 605 (E.D. Cal. 1999) ...................................................................................... 6, 8

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992) .................................................................................... 6, 7, 10

*Kuschner v. Nationwide Credit, Inc.*,
   256 F.R.D. 684 (E.D. Cal. 2009) ......................................................................................... 10

*Sheridan v. Reinke*,
   611 Fed.Appx. 381 (9th Cir. 2015) ....................................................................................... 9

*Tschantz v. McCann*,
   160 F.R.D. 568 (N.D. Ind. 1995) ........................................................................................ 10

**Other Authorities**

Fed. R. Civ. P. 16 ............................................................................................................... *passim*

Pacific Bell respectfully submits this opposition to Plaintiff's motion to modify the current Scheduling Order (ECF No. 70).

## INTRODUCTION

Plaintiff falls far short of showing good cause to modify the Scheduling Order, which tracked a joint proposal of the parties. Plaintiff does not show it has been diligent in investigating its claims either *before* or *after* filing suit. Indeed, just last month, Plaintiff admitted that it has never tested the waters of Lake Tahoe near the cables. Nor does Plaintiff offer any persuasive explanation as to why claimed scheduling conflicts in other matters should take priority over this action, which this Court has noted is a "significant case."[1] Plaintiff is simply running away from its own allegations of "imminent and substantial harm," which were based on an unscientific "kiddie pool" experiment. Plaintiff now seeks delay for the sake of delay.

In contrast, Pacific Bell retained respected environmental consulting firms to test the waters near the cables in response to Plaintiff's claims, and filed expert reports with the Court—showing lead levels next to the cables are either non-detectable or consistent with background (normal) levels. Remarkably, Plaintiff filed this suit without a shred of competent evidence and spun up a supposed public health threat.

The Scheduling Order followed a months-long meet-and-confer process, multiple written submissions from both parties, and conferences with the Court. For example, on August 17, 2023, Plaintiff's counsel told this Court:

> Finally, as for a trial date, the parties are in agreement as to a trial schedule. The trial schedule was discussed during the main conference and then distributed afterwards (It is attached hereto). The parties have agreed to a trial date of September 16, 2024, and worked out a timeline leading up to that date trial day.

ECF No. 56. After fully considering the parties' respective positions, the Court entered the Scheduling Order on October 10, 2023.

Nevertheless, the ink had barely dried on the Scheduling Order before Plaintiff asked to modify every one of the deadlines set by the Court. Plaintiff first claimed it needed to modify dates

---

[1] Dhillon Decl., Ex. D (Nov. 9, 2023 Tr.) at 9:19-21.

- 1 -

because it *added* even more lawyers from a new law firm to its existing roster of three law firms, and those new lawyers had unspecified scheduling conflicts.[2] When asked to identify scheduling conflicts with specificity so the parties could discuss potentially moving some dates by a few weeks, Plaintiff provided no information that would justify a wholesale modification of the schedule.

Plaintiff then shifted gears and came up with a new justification. Plaintiff now claims it needs a permit to conduct—for the first time—environmental sampling that it should have performed *before* making serious allegations of public harm.

Plaintiff seeks a continuance of up to six months as to the entire schedule. Defendant is mindful that conflicts can arise and reasonable adjustments are appropriate in some circumstances. Throughout the meet-and-confer process, Defendant has made clear that it is open to reasonable adjustments (e.g., 2-4 weeks) to specific dates as a professional courtesy, but Plaintiff declined this offer. What Defendant strongly opposes is an extended delay when Plaintiff is the one claiming an imminent harm exists, and Plaintiff has already displayed a pattern and practice of agreeing to dates and then later seeking delay.

Pacific Bell respectfully asks that the Court deny the motion.

## BACKGROUND

**A.     Plaintiff Has Not Been Diligent in Developing or Pursuing Its Claims.**

Plaintiff sent a pre-suit notice letter to Pacific Bell in August 2020. In that letter, Plaintiff claimed it had "conducted an investigation of the Cables, including having divers swim above them and photograph them, to determine the extent to which they discharge lead into Lake Tahoe." ECF No. 1 at 15. Five months later, in January 2021, Plaintiff filed suit, alleging the cables present an "imminent and substantial harm" to the environment. *Id*. at 32.

In July 2023, *The Wall Street Journal* (*Journal*) published a series of stories asserting lead-clad cables in Lake Tahoe and elsewhere raise a significant public health concern. Pacific Bell strongly disputed that reporting, particularly in light of Pacific Bell's prior testing, the results of

---

[2] Plaintiff's motion omits that it told Defendant on September 19, 2023—three weeks before issuance of the Scheduling Order—that it was bringing in new counsel to join the existing team. Dhillon Decl., Ex. B. Plaintiff's new counsel should have been fully aware of the schedule that had been proposed to the Court by Plaintiff before they accepted the engagement.

- 2 -
DEFENDANT'S OPPOSITION TO MOTION TO                                           CASE NO. 2:21-cv-00073-MCE-JDP
AMEND SCHEDULING ORDER

1  which previously had been filed in this action. On August 1, 2023, the Court vacated the Consent
2  Decree entered in this action to allow prompt investigation of the cables. Plaintiff has not provided
3  specific information to show it has been diligent in preparing its case for trial since that time—or
4  before.

5  　　　As noted above, Plaintiff stated in its pre-suit notice letter that it had hired "divers" to
6  investigate the cables. Through discovery, Pacific Bell has learned those divers are Seth Jones and
7  Monique Fortner of Marine Taxonomic Services (MTS) and Below the Blue (BtB).

8  　　　In 2022 and 2023, MTS and BtB apparently conducted water sampling near the cables and
9  shared those results with the *Journal*. The *Journal* claimed water sampling near the cables in Lake
10 Tahoe suggested a public health concern existed. But the *Journal* hid from the public that samples
11 collected by MTS and BtB in 2022 showed *non-detectable* or very low lead levels at the cable
12 locations. *See* Dhillon Decl., Ex. I (EDF0686) (describing the work of MTS and BtB and stating
13 that "the lead in water samples were mostly below detection or quite low," and that "lead levels
14 were quite low; highest around 1 ppb"). Those results were consistent with sampling conducted by
15 the Haley & Aldrich environmental consulting firm in 2021.[3]

16 　　　The *Journal* chose not to publish these lab results and as a "backup plan," Dhillon Decl.,
17 Ex. H at 7, asked a different laboratory to employ new methods to test for lead in water from Lake
18 Tahoe. It then touted the results from this "backup" sampling while hiding its own data that cast
19 doubt on its claims. Neither MTS nor BtB ever disclosed their 2022 sampling results to the public.
20 Indeed, over the past four months both organizations have evaded compliance with subpoenas
21 asking for information about their environmental sampling, and they continue to withhold
22 documents. ECF Nos. 65, 87, 88.

23 　　　As reported to the Court in August 2023, and in light of the *Journal's* claims, Pacific Bell
24 asked another prominent environmental consulting firm (Ramboll) to test the water quality of Lake
25 Tahoe next to the cables. ECF No. 57 at 3. Just like Haley & Aldrich, Ramboll concluded in an
26 August 2023 expert report that the cables have no adverse impact on the environment. ECF No.

---

[3] Environmental sampling performed in 2021 by Haley & Aldrich, on behalf of Pacific Bell, demonstrated the cables are not adversely impacting Lake Tahoe water. ECF No. 33.

57-1 at 6.  Among other things, Ramboll found the "highest concentration levels of lead detected at close proximity to the cables [were] more than 200 times below the [EPA's] drinking water action level for lead[.]"  *Id.*  And just like Haley & Aldrich, Ramboll found that "*at all locations sampled the concentrations of lead were similar to background levels.*"  *Id.* (emphasis added).

The record shows Plaintiff did not diligently investigate its claims before or after filing suit.  Plaintiff's counsel admitted in July 2023 that it based its case entirely on a "kiddie pool" experiment conducted with the help of MTS and BtB – the same organizations that covered up results of sampling of Lake Tahoe water in 2022 that showed lead was non-detectable.  Plaintiff's experiment did not test water where the cables are located.  And Plaintiff admits it *never* conducted such testing.  Dhillon Decl., Ex. C (Am. Resp. to RFA No. 5).  Thus, Plaintiff had no reasonable scientific basis to claim that the cables allegedly cause an "imminent and substantial harm to human health and/or the environment."  *See*, *e.g.*, ECF No. 12 (SAC) at ¶ 32.

**B.    The Court Issued Its Scheduling Order After Extensive Input from the Parties.**

In August 2023, the parties engaged in extensive discussions regarding a case schedule and submitted a proposed schedule to the Court.  The sole disagreement between the parties involved the deadlines for expert disclosures.  *See* ECF No. 56 ("parties are in agreement as to a trial schedule" and the "one issue" of disagreement was expert disclosures).

On August 24, 2023, the Court held a conference to discuss a case schedule.  ECF No. 60.  Notwithstanding the prior discussions between the parties (including the day before the conference, on August 23), counsel for Plaintiff asked to delay entry of a scheduling order by 60 days so it could "regroup" and backtracked from the schedule it had proposed in writing to the Court.  Dhillon Decl., Ex. A at 4.  The only reason cited by Plaintiff for its sudden change of position was the addition of new counsel hired by Pacific Bell, which had occurred well before Plaintiff agreed to the joint schedule.  *Id*. at 3.  The Court directed the parties to confer and submit proposed schedules by August 25.

Following the August 24 conference, Plaintiff suggested the parties agree to an October 2024 trial date.  Defendant agreed and circulated a proposed schedule keyed to that trial date.  ECF No. 62.  Although it attempted to back away from that agreement as well, Plaintiff ultimately

proposed a schedule that would allow for the completion of all discovery by summer 2024. ECF No. 61.

The Scheduling Order was entered on October 10, 2023. ECF No. 70. Since that time, Pacific Bell has been diligently preparing its defense in reliance on the court-ordered deadlines.

### C.     Plaintiff's Request To Modify the Court's Schedule.

Less than two weeks after the Court issued its Scheduling Order, and weeks after having been retained, Plaintiff's additional counsel at the Aqua Terra Aeris Law Group (ATA) contacted Pacific Bell's counsel and asked to modify the Scheduling Order. Plaintiff did not disclose that it had retained ATA before entry of the Scheduling Order. Dhillon Decl., Ex. E; *see* ECF No. 85 at 8.

In an email to Pacific Bell's counsel, Mr. Maclear of ATA said the Scheduling Order conflicted with ATA's "other pre-existing litigation deadlines." Dhillon Decl., Ex. E. During a conference call on October 31, 2023, Plaintiff's counsel asked Pacific Bell to agree to a 5- to 6-month extension of the deadlines in the Scheduling Order to accommodate ATA's other litigation matters.[4] *Id*. at ¶ 7.

Counsel for Pacific Bell stated they did not see how there would be good cause for such lengthy extensions given that the parties and the Court had already discussed scheduling matters at considerable length and Pacific Bell had been managing this matter accordingly. Dhillon Decl. at ¶ 7. Pacific Bell nevertheless indicated it would, as a professional courtesy, consider reasonable extensions to accommodate actual conflicts, if ATA could provide additional information. *Id*. ATA declined to provide any details during this call. *Id*. Pacific Bell stated it could not represent to the Court that good cause existed to amend the Scheduling Order based on the information presented, but that it would consider any additional information from Plaintiff. *Id*.

On November 2, 2023, ATA sent a letter to Pacific Bell with purported justifications for the requested extensions. Dhillon Decl., Ex. F. As before, for all deadlines except for amending the pleadings, Plaintiff's counsel proposed extensions between 4 to 6 months. *Id*. In support of

---

[4] During this call, Plaintiff's counsel did not identify purported permitting requirements for new environmental sampling in Lake Tahoe as a reason for extending the Scheduling Order deadlines.

Plaintiff's request to extend the deadline for expert disclosures from April 12, 2024 to August 10, 2024, ATA said that the deadlines "overlap [with] expert disclosures in two other ATA cases with the same lead counsel, which have been in active litigation for far longer than this matter," and "our firm also has dispositive motion filing deadlines in two additional cases" in mid-April to May. *Id*. at 2. ATA declined to identify the purported expert disclosure deadlines in the other "active litigation" matters, or otherwise explain why it was necessary to extend the deadline to August. ATA further asserted for the first time that the Scheduling Order deadlines "do not allow sufficient time for gathering data and sharing data between parties," even though Plaintiff previously agreed to dates earlier than those reflected in the Scheduling Order.

Counsel for Pacific Bell provided a written response to ATA on November 22, 2023. Dhillon Decl., Ex. G. Pacific Bell explained it did not believe Plaintiff had shown good cause to support a 4- to 6-month extension of all key deadlines in the Scheduling Order. *Id*. Pacific Bell nevertheless offered to confer further and consider additional information that may support reasonable, targeted adjustments to deadlines. Plaintiff declined this offer and filed its motion.

## LEGAL STANDARD

A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Modification of a scheduling order may be appropriate if deadlines "cannot reasonably be met despite the diligence of the party seeking the extension." *Id*. However, "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id*.

A showing of diligence typically requires the movant to show: (i) diligence in assisting the Court in creating a workable Rule 16 order; (ii) noncompliance with a Rule 16 deadline has or will occur despite diligent efforts to comply, and "because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference"; and (iii) diligence in seeking an amendment of the Rule 16 order "once it became apparent [the moving party] could not comply with the order." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607-08 (E.D. Cal. 1999) ("Central to this required showing of diligence is whether the movant

discharged her obligation under Rule 16 to collaborate with the district court in managing the case."). In addition, although "the focus of the inquiry is upon the moving party's reasons for seeking modification," the "existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion." *Johnson*, 975 F.2d at 609.

## DISCUSSION

### A. No Good Cause Exists To Depart from the Mutually Agreed Upon Schedule.

CSPA is a professional plaintiff.[5] At every step, it has been represented by experienced counsel. Counsel for all parties agreed to a schedule that would allow for trial in Fall 2024. A joint schedule was proposed to the Court. *See* ECF Nos. 56 ("parties have agreed to a trial date of September 16, 2024"), 57, 62; Dhillon Decl., Ex. A at 14 (noting "the parties have been looking for, I believe, a September trial date. I think that's feasible conceivably.").

On this record, Plaintiff has not shown good cause for the lengthy extensions it seeks. Pacific Bell agrees with the Court's prior observation that situations "may arise that would merit adjustment of [the] schedule down the road," Dhillon Decl., Ex. A at 6, and Pacific Bell remains willing to consider reasonable adjustments to the Scheduling Order if supported by good cause. However, Plaintiff has refused to engage meaningfully other than to say it wants far more time.

### B. Plaintiff's Alleged Concerns Were Foreseeable.

The gist of Plaintiff's motion is that it could not have foreseen the extent of fact and expert discovery needed to prosecute its claims within the periods set forth in the Scheduling Order.[6] The

---

[5] Plaintiff has filed several lawsuits alleging discharges of lead in violation of Proposition 65, including suits in the Eastern District. *See California Sportfishing Protection Alliance v. Forever Resorts, LLC*, E.D. Cal. Case No. 2:16-cv-01595-MCE-EFB; *California Sportfishing Protection Alliance v. Chico Scrap Metal, Inc.*, E.D. Cal. Case No. 2:10-cv-01207-GEB-AC. Plaintiff has also brought multiple cases in the Eastern District involving alleged violations of federal laws such as the Clean Water Act. *See, e.g., California Sportfishing Protection Alliance v. Agricultural Mgmt. and Prod. Co., Inc.*, E.D. Cal. Case No. 2:14-cv-02328-KJM-AC; *California Sportfishing Protection Alliance v. MCM Construction, Inc.*, E.D. Cal. Case No. 2:13-cv-00847-JAM-EFB.

[6] Plaintiff's initial schedule proposed that discovery would close on May 17, 2024. ECF No. 56. Plaintiff then proposed closing discovery on August 15, 2024. ECF No. 61. The Scheduling Order sets the close of discovery on July 12, 2024—nearly 11 months *after* Plaintiff first submitted its proposed schedules. ECF No. 70. Plaintiff now seeks to extend that deadline by an additional 5 months, to December 31, 2024. *See* ECF No. 85-3.

- 7 -

1  contention lacks merit.  Plaintiff began taking steps to litigate this case more than 3 years ago.
2  Plaintiff is no stranger to this type of litigation, having brought multiple lawsuits under federal
3  environmental laws and Proposition 65.

4  Moreover, in its August 25, 2023, Supplemental Briefing, Plaintiff sought to justify its
5  proposed adjustments to the pre-trial schedule based in part on its need to "identify, vet, and retain
6  experts; coordinate an inspection and sampling schedule; and then execute that schedule."  ECF
7  No. 61 at 2.  Based on this representation, Plaintiff proposed that fact and expert discovery close
8  on August 15, 2024.  *Id.* at 3.  The Court considered this statement in setting the Scheduling Order.

9  A moving party's purported inability to comply with a scheduling order deadline can
10 support a finding of good cause.  *See Jackson*, 186 F.R.D. at 608.  But, as noted, the law typically
11 requires the moving part to show the "development of matters which could not have been
12 reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference."  *Id.*; *Brooke
13 v. River Park Hospitality, Inc.*, Case No. 1:20-cv-00102-SAB, 2020 WL 3491016, *1 (E.D. Cal.
14 June 26, 2020). A party's failure to identify new, unforeseeable circumstances supports denial of a
15 motion to modify a scheduling order.  *Jackson*, 186 F.R.D. at 609.  Plaintiff does not come close
16 to meeting its burden.

17 ***Additional Investigation***.  Despite filing suit more than 3 years ago, Plaintiff now claims it
18 is necessary to perform extensive new investigations of its own allegations.  Plaintiff contends it
19 began working to retain experts and consultants on August 1, 2023.  ECF No. 85 at 11.  Despite
20 this, Plaintiff now says it will need 5 to 6 additional months to perform its investigations.  *Id*.  The
21 only justification provided for such delay is a purported 90-day permitting requirement from State
22 Parks.  Conspicuously absent from Plaintiff's argument is any explanation as to why it did not start
23 such investigations in August 2023, when it contends it planned to undertake such additional work.
24 *See* ECF No. 61 at 2.  Nor does Plaintiff explain what portions of its contemplated investigations
25 require a permit, or why obtaining such a permit would materially delay its investigation.  In short,
26 Plaintiff has failed to present any new circumstances that justify the need for a nearly half-year
27 extension of the Scheduling Order deadlines.
28

- 8 -

***Discovery***.  Plaintiff next claims lengthy extensions are required because it "anticipates significant delays in obtaining responses to fact discovery." ECF No. 85 at 12.  But as before, Plaintiff fails to identify any new circumstances that could not have been foreseen in August 2024. As an experienced litigant represented by experienced counsel, Plaintiff should have known that discovery disputes may arise that would need to be promptly addressed to keep this case on schedule.  In addition, while Plaintiff asserts, without explanation, that Pacific Bell's discovery responses are deficient and the parties "will need to meet and confer" to resolve Plaintiff's concerns, *id.*, Plaintiff fails to explain why it is reasonable to assume such disputes will take months to resolve, especially in light of the discovery procedures available in this Court.  And perhaps even more concerning, Plaintiff did not raise any of its purported discovery concerns with Pacific Bell until December 8, 2023.[7]  Dhillon Decl. at ¶ 10; *see Sheridan v. Reinke*, 611 Fed.Appx. 381, 384 (9th Cir. 2015) (failure to diligently pursue discovery was grounds for denying request to modify scheduling order).  Threatening future discovery disputes does not warrant delay.

***Retaining New Counsel.***  Plaintiff also places much emphasis on the fact that it retained new "lead counsel" from ATA in October 2023, and that ATA's other litigation matters will "make it difficult" to meet the Scheduling Order's deadlines. ECF No. 85 at 13.  The reasoning is difficult to follow.  At the time of the August 2024 conference, multiple law firms represented Plaintiff and they fully understood what work needed to be done before trial in Fall 2024.  Plaintiff should have expected that (i) the Court would issue the Scheduling Order shortly after the Rule 16 conference, (ii) the Scheduling Order would likely reflect the parties' stated intention of bringing this case to trial in Fall 2024, and (iii) Plaintiff would need to manage this litigation to comply with the Scheduling Order.  Plaintiff nevertheless retained new counsel with "significant" conflicts with the Scheduling Order, apparently under the assumption the Court would readily adapt its Scheduling Order to prioritize ATA's other matters.[8]

---

[7] Plaintiff's brief statement in its motion was the first time Pacific Bell learned that Plaintiff had concerns with the responses Pacific Bell served more than 2 weeks before, on November 17, 2023.

[8] Pacific Bell notes that ATA is currently handling other litigation filed by Plaintiff, including cases in the Eastern District.  *See, e.g., California Sportfishing Protection Alliance v. Allison*, Case No. 2:20-cv-02482-WBS-AC.

- 9 -

DEFENDANT'S OPPOSITION TO MOTION TO AMEND SCHEDULING ORDER

CASE NO. 2:21-cv-00073-MCE-JDP

A litigant's decision to retain new counsel with pre-existing scheduling conflicts does not justify modifying the Scheduling Order—which the existing counsel in the case for both parties had negotiated and were relying upon. *See Tschantz v. McCann*, 160 F.R.D. 568, 572 (N.D. Ind. 1995) ("the burden was on Plaintiff's counsel to prosecute his case properly and he cannot blame either the Defendants, or the Court, for his failure to do so"). That said, Pacific Bell appreciates that handling multiple litigation matters can be challenging and has consistently told Plaintiff it is willing to consider reasonable extensions to avoid actual conflicts. But Plaintiff has provided insufficient information to justify the requested extensions.[9]

### C. Plaintiff Has Not Shown It Is Unable To Comply with the Scheduling Order.

As explained above, Plaintiff's purported justifications for modifying the Scheduling Order are speculative and hypothetical. Hypothetical future conflicts are insufficient to support a showing of good cause. *See, e.g, Johnson*, 975 F.2d at 608 (modification of scheduling order may be appropriate if deadlines "cannot reasonably be met"); *Kuschner v. Nationwide Credit, Inc.*, 256 F.R.D. 684, 687 (E.D. Cal. 2009) (party seeking amendment of scheduling order must show "it is unable to comply with the scheduling order's deadlines"). At its core, Plaintiff's position is that the requested extensions would make it more convenient for Plaintiff and its counsel to litigate this case. The law demands far more.[10]

### D. Further Delay Unduly Prejudices Pacific Bell.

Pacific Bell strongly disputes the allegations that the cables present an imminent threat to human health or the environment. Having made such allegations that result in reputational harm to Pacific Bell, Plaintiff should not be permitted to delay these proceedings absent a compelling showing of good cause supported by specific facts. Further, while Plaintiff may have a preferred

---

[9] Beyond the fact that Plaintiff's stated reasons were foreseeable, the motion is untimely. From all that appears, Plaintiff retained new counsel back in September. The retention of new counsel is the principal basis for the motion. It is unclear why Plaintiff waited so long to inform both Pacific Bell and the Court that the schedule it previously proposed no longer worked.

[10] Plaintiff claims it did not retain any experts or consultants before August 17, 2023. ECF 85-1 at ¶ 3. However, a document produced in discovery reflects that Plaintiff's counsel, Mr. Boyd, had retained an expert as early as August 1, 2023. Dhillon Decl., Ex. J (e-mail discussion between Dr. Binkhorst and Mr. Boyd).

schedule, Pacific Bell's counsel likewise has multiple professional obligations to manage. Coordinating schedules in a significant case with multiple law firms and multiple experts is no easy task and all counsel reasonably relied upon the schedule both *before* it was presented to the Court and *after*.

## CONCLUSION

We ask that the Court deny the motion. A proposed order has been submitted for the Court's consideration.

Respectfully submitted,

DATED: December 11, 2023               PAUL HASTINGS LLP

                                       By: /s/ *Navi Singh Dhillon*
                                            NAVI S. DHILLON

                                       Attorneys for Defendant
                                       PACIFIC BELL TELEPHONE COMPANY