NAVI DHILLON (SBN 279537)
navidhillon@paulhastings.com
PETER C. MEIER (SBN 179019)
petermeier@paulhastings.com
CHRISTOPHER J. CARR (SBN 184076)
chriscarr@paulhastings.com
LUCAS GRUNBAUM (SBN 314180)
lucasgrunbaum@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California  94111
Telephone:  (415) 856-7000
Fax: (415) 856-7100

HARIKLIA KARIS (*admitted pro hac vice*)
hkaris@kirkland.com
ROBERT B. ELLIS (*admitted pro hac vice*)
rellis@kirkland.com
MARK J. NOMELLINI (*admitted pro hac vice*)
mnomellini@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Fax:  (312) 862-2200

Attorneys for Defendant
PACIFIC BELL TELEPHONE COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC BELL TELEPHONE COMPANY,<br><br>Defendant. | Case No. 2:21-cv-00073-MCE-JDP<br><br>**DECLARATION OF NAVI SINGH DHILLON IN SUPPORT OF PACIFIC BELL'S OPPOSITION TO PLAINTIFF'S MOTION TO AMEND SCHEDULING ORDER**<br><br>Judge:      Hon. Jeremy D. Peterson<br>Date:        January 11, 2024<br>Time:       10:00 a.m.<br>Courtroom:   9<br><br>Action Filed:  January 14, 2021<br>Trial Date:   None |

I, Navi Singh Dhillon declare as follows:

1.  I am a Partner at Paul Hastings LLP and lead counsel for Defendant Pacific Bell Telephone Company (Pacific Bell).  I make this declaration in support of Pacific Bell's opposition to plaintiff California Sportfishing Protection Alliance's (Plaintiff) motion to amend scheduling order filed on November 27, 2023.  Unless otherwise indicated, I have personal knowledge of the matters set forth below and, if called as a witness, I could and would testify competently thereto.

2.  Attached as **Exhibit A** is a true copy of the transcript from the status conference held on August 24, 2023

3.  On September 19, 2023, I received an e-mail from Plaintiff's counsel Mr. Andrew Packard stating that Plaintiff "is in the process of bringing in new counsel[.]"  A true copy of that e-mail correspondence is attached as **Exhibit B**.

4.  Attached as **Exhibit C** is a true copy of Plaintiff's Amended Responses to Defendant's First Set of Requests for Admissions, served on October 25, 2023.

5.  Attached as **Exhibit D** is a true copy of the November 9, 2023, transcript from the hearing on Pacific Bell's motion to compel Below the Blue to comply with document subpoena.

6.  On October 23, 2023, I received an e-mail from Mr. Matthew Maclear in which Mr. Maclear introduced himself as new counsel for Plaintiff and requested extensions to the scheduling order in this case.  A true copy of that e-mail correspondence is attached as **Exhibit E**.

7.  On October 31, 2023, counsel for the parties conferred by Zoom videoconference to discuss Plaintiff's request to modify the scheduling order.  During that call, Plaintiff's counsel Mr. Maclear and Ms. Erica Maharg asked that Pacific Bell agree to the extensions requested in Mr. Maclear's e-mail on October 23, 2023 (Exhibit E), due to conflicts with Mr. Maclear's and Ms. Maharg's other litigation matters.  In response, counsel for Pacific Bell stated they did not see good cause for such lengthy delays given the parties had engaged in significant scheduling discussions with the Court in recent months and Pacific Bell had been managing this matter to comply with the deadlines set by the Court.  I nevertheless stated we would consider reasonable, targeted extensions of certain deadlines to accommodate Mr. Maclear's and Ms. Maharg's actual conflicts.  In that connection, counsel for Pacific Bell requested during the conference that Mr. Maclear and Ms.

- 2 -

Maharg provide more details of their conflicts.  Plaintiff's counsel did not provide the requested information.

8.      On November 2, 2023, Mr. Maclear sent a letter to Pacific Bell that purports to provide further support for Plaintiff's request to modify the scheduling order.  A true copy of that letter is attached as **Exhibit F**.

9.      On November 22, 2023, my office sent a letter to Plaintiff concerning the parties' prior discussions on Plaintiff's proposed extensions to the scheduling order.  A true copy of that letter is attached as **Exhibit G**.

10.     On December 8, 2023, counsel for Plaintiff contacted Pacific Bell for the first time to express its concerns with Pacific Bell's prior responses to written discovery.

11.     Attached as **Exhibit H** is a true copy of e-mail correspondence between Mr. Tom Neltner of the Environmental Defense Fund (EDF) and Mr. Seth Jones and Ms. Monique Rydel-Fortner of Marine Taxonomic Services (MTS) between May 3, 2022 and June 7, 2022.  EDF produced this document on September 8, 2023 in response to a subpoena served by Pacific Bell.

12.     Attached as **Exhibit I** is a true copy of e-mail correspondence between Ms. Lindsay McCormick and Mr. Tom Neltner of EDF, and Mr. Seth Jones and Ms. Monique Rydel-Fortner of MTS on June 15, 2022, as well as a true copy of the attachment referenced in that correspondence. EDF produced these documents on September 8, 2023 in response to a subpoena served by Pacific Bell.

13.     Attached as **Exhibit J** is a true copy of an e-mail dated August 1, 2023, between Mr. Boyd and Dr. Binkhorst; this document was produced in response to a subpoena served by Pacific Bell.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on December 11, 2023, in San Francisco, California.

By:   _/s/ Navi Singh Dhillon_____
        NAVI SINGH DHILLON

# EXHIBIT  A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. JEREMY D. PETERSON, MAGISTRATE JUDGE

| | |
|---|---|
| CALIFORNIA SPORTFISHING<br>PROTECTION ALLIANCE,<br><br>         Plaintiff,<br><br>vs.<br><br>PACIFIC BELL TELEPHONE<br>COMPANY,<br><br>         Defendant.<br>———————————————— | )<br>)<br>)<br>)  No. 21-CV-00073-JDP<br>)<br>)  **STATUS CONFERENCE**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Sacramento, California          Thursday, August 24, 2023

REPORTER'S TRANSCRIPT OF PROCEEDINGS

<u>**APPEARANCES OF COUNSEL**</u>:

For the Plaintiff:      **J. KIRK BOYD**
                         Law Office of John Kirk Boyd
                        548 Market Street, Suite 1300
                        San Francisco, California 94104

                        **WILLIAM NAZAR CARLON**
                           Law Office of Andrew L. Packard
                        245 Kentucky Street, Suite B3
                        Petaluma, California 94952

For the Defendant:      **NAVTEJ SINGH DHILLON**
                         Paul Hastings
                        101 California Street, 48th Floor
                        San Francisco, California 94111

                        **HARIKLIA KARIS**
                        Kirkland & Ellis
                        300 North LaSalle
                        Chicago, IL 60654

TRANSCRIBED BY:  KAREN HOOVEN, RMR, CRR, CSR No. 5816

Proceedings recorded by electronic sound recording, transcript
produced by court reporter.

1   Thursday, August 24, 2023                Sacramento, California

2   10:11 a.m.

3          THE CLERK:  Calling civil case 21-0073-JDP.

4   California Sportfishing Protection Alliance versus Pacific

5   Bell Telephone Company.  We're on calendar for a status

6   conference.

7          THE COURT:  Good morning to you all.  Let's start

8   with appearances from counsel, beginning with counsel for

9   plaintiff, please.

10         MR. BOYD:  Good morning, Your Honor.  Kirk Boyd on

11   behalf of the plaintiff.  And with me is my co-counsel William

12   Carlon.

13         MR. CARLON:  Good morning, Your Honor.

14         THE COURT:  Good morning to both of you.  And for

15   defendants?

16         MR. DHILLON:  Good morning, Your Honor.  This is

17   Navtej Dhillon from Paul Hastings for defendant.

18         MS. KARIS:  And good morning, Your Honor.  Hariklin

19   Karis for defendants as well.

20         THE COURT:  Good morning to both of you.  Okay.  So

21   we last had a status conference here in mid July.  At that

22   time the status of the consent decree was not entirely

23   settled.  Following that conference, defendant did file a

24   motion as had been anticipated at the time, to terminate the

25   consent decree.  And plaintiff later filed a notice of

1   non-opposition.  So I don't believe those issues, which could

2   have been before me today or at least something to be

3   discussed, are something we need to talk about today.

4        Both parties have since filed status reports and have

5   proposed schedules for this case and are desirous of going

6   forward with scheduling.  The parties have generally filed

7   relatively similar schedules and I understand that there was a

8   meet and confer on, I believe, August 15th.  I do appreciate

9   that.  I appreciate -- it sounds like a number of issues have

10  been worked out, which I sure appreciate.

11       MR. BOYD:  They have, Your Honor.  And pardon me for

12  interrupting.  But I just want to clarify something because

13  since we filed those schedules, along with our statement, on

14  the plaintiffs' side we have four lawyers and two are solo

15  practitioners and the other is a small firm.  As things have

16  been rapidly developing, now the defendant has also brought in

17  additional counsel from Kirkland & Ellis, as you've seen, and

18  there are a number of things that they're doing.

19       It's really caused us -- our expectation, as you know

20  well from the last time that we talked together, was that

21  those cables were going to be removed commencing on September

22  the 6th.  And I'm not trying to revisit that at all, just to

23  say that we thought that those cables were coming out.

24       And now with things moving, with new counsel coming

25  in and things like that, we feel that we need -- and we would

1   ask you, Your Honor, for a 60-day extension of this hearing so

2   that we could have some time to regroup.  We've been talking

3   with the defendants, we will continue to talk with them.

4   Things are moving on the discovery, both they have submitted

5   some and we're preparing it.  They're also moving with respect

6   to the evidence collection for you, to really let the science

7   be the guide in this, as we said in our papers and we talked

8   about before.  We want to make sure that there's the best

9   science available to you.

10          So we would ask for that, today be just if you would

11  bump this for 60 days.  Mr. Packard, who you've seen before,

12  he's been with me usually, now he's out of town today.  So if

13  it's possible to do that, that would be much appreciated.  I

14  think it would serve us all.  We can wait and set the trial

15  date.  I heard in your previous hearing that you were talking

16  about you like to set those dates when you know that they can

17  stick.  It would be premature to try to set a trial date at

18  this time.  And so we'd ask you to move this 60 days down the

19  road.  Thank you.

20          THE COURT:  So, Mr. Boyd, just to make sure I

21  understand.  This is different.  So you're backing away from

22  the schedule proposed in your August 17th filing; is that

23  correct?

24          MR. BOYD:  Yes.  That's correct, Your Honor.  Counsel

25  feels that we really do need some time to be able to go over

1  this case and fully prepare it for you and for the -- while

2  it's ongoing, of course.  But we would like to have the 60-day

3  period to be able to regroup, Your Honor.

4         THE COURT:  Uh-huh.  Well, I think I understand your

5  request.  At this point, you're not up against any immediate

6  deadlines and wouldn't be --

7         MR. BOYD:  Correct.

8         THE COURT:  -- even if I were to schedule the case.

9  And my -- you know, I'll check with defendant and see.  If

10 they have no objection, we could push things back.  But my

11 inclination would be to schedule the case now and then to

12 revisit that should there be issues down the road that, you

13 know, you could move to modify the scheduling order should

14 anything come up that does require more time.  It seems

15 conceivable that that could be the case.  But, you know, I do

16 understand your request.

17        I'm not sure if defendants were expecting this or

18 not.  But let me just turn to defendants and perhaps they

19 share your view.  Mr. Dhillon, in your view, do you think we

20 should schedule this case as had been anticipated by

21 this -- by your filing and also, at the time, by plaintiffs'

22 filing or what are your thoughts on a 60-day push back?

23        MR. DHILLON:  Thank you, Your Honor.  We very much

24 believe that a case schedule should be set today, Your Honor.

25 This is very much a surprise to us.  As noted in our papers,

1    we had a lengthy meet and confer call last week with counsel,

2    multiple lawyers from the plaintiff's side, my firm with my

3    colleagues from Kirkland & Ellis.  It was a productive call.

4            We also had a second call yesterday to work through

5    the remaining issue on the procedure for expert disclosures.

6    And none of these issues were raised on that call either, Your

7    Honor.  So this is very much a surprise.

8            But I think Your Honor's comment that having a

9    schedule set today and to the extent an issue would arise in

10   the future, we can certainly revisit it as needed.  But from

11   our perspective, getting a trial date put in place and other

12   important dates will be very helpful in advancing this case in

13   an orderly and expeditious manner.

14           THE COURT:  Okay.  Thank you, Mr. Dhillon.  Just so

15   you know, as Mr. Boyd noted, I'm disinclined to set a trial

16   date at this point just because I do want to set one that

17   holds.  But I may set some other dates leading up to that.

18           Mr. Boyd, further thoughts?  I mean, as -- you know,

19   I wouldn't be setting a trial date today.  We'd just be

20   setting some other dates along the way.  It's quite possible

21   something may arise that would merit adjustment of that

22   schedule down the road.  But I don't know that I see a need to

23   push everything back 60 days now.  All other things being

24   equal, I want this case and every case to move along.

25           And I'm not sure -- I understand you're feeling -- I

1    mean, the ground has shifted beneath your feet in a big way

2    here and I think that's true on the other side as well.

3    Certainly I do understand, you know, defendants brought in

4    other counsel.  That was some time ago and significantly

5    before your last meet and confer.  So I just want to give you

6    a chance.  Anything else I should know that -- in terms of

7    reasons I should push this back a flat 60 days?

8         MR. BOYD:  Well, first, I appreciate that you're not

9    going to set a trial date today.  So that is helpful.  But at

10   the same time on the initial disclosures, Your Honor, they've

11   been submitting these reports that we really take issue with.

12   We think they're inaccurate in that they're not looking at the

13   entire cable, you know.  They're just looking at select

14   pieces.

15        And I don't want to go into the details on this, but

16   on the initial disclosures, I'd like you to make sure that you

17   don't set those initial disclosures before, say, May of 2024

18   so that we know that we have plenty of time to be able to

19   prepare the very best evidence for you.  We think that there

20   can be a lot of avoidance of spats, Your Honor, by going back

21   out there and really taking -- we're going to go from the

22   beginning -- from the end of that eight-mile cable all the way

23   down it and videotape the whole thing.  We're going to mark

24   all the places where there's any signs that the cable is

25   wearing.  And we're going to take photographs of that.  We're

1    going to have GPS coordinates so that samples can be taken

2    from those areas where there's leaching.

3          In other words -- and we want them to be there for

4    all of this, Your Honor.  Again, I think this is really

5    important.  We welcome them and their divers to be there as we

6    go down this entire cable.  We welcome them to be there as

7    we're taking the pictures and we're taking the coordinates.

8          All with the hope that, for you, we develop a package

9    of scientific information and proof, evidence, for both as to

10   what the exact situation is out there now so that other than

11   going back and arguing about what was done previously, we have

12   a full set of evidence that we can give Your Honor.  So that's

13   why I would just say if you can please make sure that those

14   initial disclosures aren't until next May, that would be

15   appreciated.

16         THE COURT:  So that seems like a pretty big ask, Mr.

17   Boyd.  I mean, initial disclosures are initial disclosures.  I

18   mean, it's not -- I would think May is approximately the date

19   I'm looking for for the expert disclosures.

20         MR. BOYD:  No, no, that's what -- pardon me.

21         THE COURT:  Okay.

22         MR. BOYD:  I'm talking about the experts.  Talking

23   about May for the expert disclosures, that's what I'm talking

24   about as well.

25         THE COURT:  Okay.  Thank you.  Thank you.  That would

1    have been a lot more than 60 days.

2            MR. BOYD:  Absolutely.  No, no.  Pardon me.  By far,

3    we were well beyond the initial disclosures.  We're moving

4    into regular discovery now and that's a good thing.

5            THE COURT:  Okay.  So I understand your request, Mr.

6    Boyd.  I'm not at this time going to just do a flat 60-day

7    push back.  I think this case can move.  I want to make sure

8    that parties have the time that they need to get the work

9    done.

10           On the other hand, this is going to be something

11   that, you know, both parties are going to need to approach

12   with urgency.  I want the case to move.  There's a lot of work

13   that needs to be done.  And you may need to redouble your

14   efforts, Mr. Boyd, and some things may need to happen faster

15   than was anticipated.  But, you know, if there's a reason that

16   that's impossible, then we should talk about that and we can

17   do so down the road and you can move to modify the scheduling

18   order.

19           Okay.  So let me turn then to scheduling order and to

20   the parties' request.  Although, I understand, Mr. Boyd, that

21   plaintiffs have backed away from the dates referenced.  I am

22   inclined to go with a pretty close version of the dates

23   mentioned by the parties back in last week's filing.

24           Let me start, though, with the joinder of additional

25   parties or amendment to the pleadings.  The parties propose

1    October 9th as a deadline.  But I guess my question is whether

2    any parties anticipate amendment at this time.  Mr. Boyd, this

3    may go to your basic statement of how the ground has shifted

4    underneath you.  But do you anticipate amendment at this

5    point, Mr. Boyd?

6             MR. BOYD:  If there were to be any, it will be done

7    by October 9th, Your Honor.

8             THE COURT:  Okay.  Defendants, anything from your

9    perspective that you anticipate?

10            MR. DHILLON:  It depends, Your Honor, on what changes

11   are made to the operative pleadings.  But even if the

12   operative pleading were to be relied upon by the plaintiff, we

13   do anticipate making modifications to our answer.

14            THE COURT:  Oh, okay.  Well, as I did in the last

15   case, what I typically do is just not allow amendment without

16   good cause.  I mean, here, since the parties have requested

17   that, I'll go with the parties' October 9th date for amendment

18   and we'll put that in the scheduling order.

19            As far as jurisdiction and venue, I don't believe we

20   have any issues.  Turning to motions, I understand the

21   defendant anticipates a *Daubert* motion, potentially some

22   others.

23            Let's turn to discovery scheduling here.  Initial

24   disclosures, I'll set at September 14th, which was the date

25   previously referenced by both parties.  As for fact and expert

1   discovery, there's pros and cons for both approaches, but I am

2   inclined towards setting those at the same date.  So I'm going

3   to set an single date there.  For initial expert disclosures,

4   I understand there's a disagreement between the parties here.

5   I am going to go with the single date.  Again, there are pros

6   and cons, but --

7           MR. BOYD:  We agreed to that yesterday, Your Honor.

8   We agreed to a single date.

9           THE COURT:  Okay.

10          MR. BOYD:  Get the parties to move back some.

11          THE COURT:  Okay.

12          MR. DHILLON:  Your Honor, if I could just provide a

13  little context to that.  In the spirit of compromise we did

14  say we were open to a simultaneous exchange, but we also

15  discussed a somewhat modified version of what Your Honor I

16  think typically does, but I think it's consistent with Local

17  Rule 240.  We thought that we could layer in a date for

18  supplemental expert, which follows the Rule 2034 approach

19  that's referenced in Rule 240.  And even before that, an

20  informal date where topics are exchanged.  And that was a

21  suggestion by Mr. Boyd.  And we agreed to that suggestion.

22          And with those modifications, we thought that would

23  allow for an orderly process for expert disclosures and

24  hopefully avoid disputes as to whether certain opinions had

25  been timely disclosed or not.  Or whether certain opinions are

1    true rebuttal or not.  And it's been an approach that we've

2    had a lot of success working through in cases of this type.

3         THE COURT:  What was your proposed date, if I'm

4    understanding you correctly, for the supplemental expert

5    disclosures?

6         MR. DHILLON:  It was two weeks after the simultaneous

7    exchange for supplemental and then three weeks thereafter for

8    the rebuttal.  And three weeks before the simultaneous

9    exchange would be the informal date for just topics to be

10   identified by each side.

11        THE COURT:  Okay.  Mr. Boyd, is that correct?  That

12   schedule works for you?

13        MR. BOYD:  That's correct, Your Honor.  As long as we

14   ask that it be, you know, set so that those initial

15   disclosures would be in April or May.  And then we'd move

16   those dates after that.  That would be fine.

17        THE COURT:  Okay.  I had been looking at March 11th

18   for the initial expert disclosures.  But let's check with

19   defendants.  Mr. Dhillon, did you have a meeting of the minds

20   with Mr. Boyd on what those -- I think he's looking for a

21   dater late than I've been looking at.

22        MR. DHILLON:  Your Honor, the date that plaintiff had

23   asked for was March 18th and we were fine with that date.  But

24   all of these dates, Your Honor, were keyed to a trial date and

25   I appreciate Your Honor's general preference not to set one.

1    But I was hoping that perhaps we could revisit potentially --

2    given the kind of unique nature of this case, potentially

3    having a trial date set.  I think it would be very helpful

4    both on the prep and we're not -- we're having a difficult

5    time, Your Honor, getting a sense of how busy Your Honor's

6    docket was on your own trial schedule and wanted to work

7    around that as well to make whatever trial date we have here

8    would work well with the Court's schedule.

9         THE COURT:  Sure.  Well, I appreciate that.  One of

10   the up sides, I hope, we hope as a court, is to consent to a

11   Magistrate Judge jurisdiction is that we're able to make room

12   for trials, you know, largely at the convenience of the

13   parties.  There are limits to that, of course.  But as far as

14   you can be looking at years upon years getting to trial before

15   a district judge, you don't have to worry about that as much

16   with me.  So I appreciate that consideration, but I have quite

17   a bit of flexibility in terms of when the trial could actually

18   be set.

19        My interest is just keeping the case moving up until

20   then.  And my basic view, Mr. Dhillon, is that we can keep the

21   case moving by setting deadlines for experts and other things

22   along the way without necessarily keying them to a trial date.

23   My goal in not setting a trial date would not be to take the

24   lid off the pot and remove the pressure, but simply to wait

25   until we see how things shake out so that I can set a date

1   that will be more likely to stick.  But I don't intend to in

2   any way suggest that there should be a general slowing or loss

3   of any urgency by not setting a trial date.  Is there -- help

4   me understand what the up side of setting a trial date -- I

5   mean, is it simply urgency in wanting to keep things moving

6   that favors a trial date in your view?

7            MR. DHILLON:  That's partly the case, Your Honor.

8   But I think in this case it's more really the context

9   surrounding how we got to this particular point.  We do have,

10  in the background, this specter created by some reporting and

11  the plaintiff filing this lawsuit that there's some issue with

12  the safety of these telecom cables.  We strongly disagree with

13  that, Your Honor, as we've explained in prior submissions.

14  And so from our perspective, it's important to have that issue

15  adjudicated sooner than later in light of the claims raised in

16  this case and the broader context surrounding the dispute.

17            THE COURT:  I have no problem with sooner rather than

18  later.  In fact, so the parties have been looking -- there's

19  some shift again in plaintiff's side, but the parties have

20  been looking for, I believe, a September trial date.  I think

21  that's feasible conceivably.  You know, but there are a few

22  things that may need to happen between here and then and, you

23  know, to the extent that that's possible, that that may

24  happen, seems like that could result in an adjustment.  I

25  mean, that's a pretty tight schedule.  I don't have a problem

1  with that schedule.  But -- and, in fact, I sit down and

2  pencil in dates myself.  I'm going to have to think a little

3  bit about these other dates that the parties have given me.

4  But I think that continues to function with the September

5  trial date.

6          By the way, let me ask, Mr. Dhillon, given these

7  further discussions that have occurred between the parties,

8  sounds like very recently, does that shift at all where the

9  parties were aiming in terms of the trial date?

10         MR. DHILLON:  Your Honor, I actually have a revised

11 schedule that I think reflects complete agreement with

12 plaintiff, at least as of yesterday.  And the trial date that

13 we initially had proposed of September 16th, pushed back to

14 September 30th consistent with the modifications around expert

15 disclosures.

16         And Your Honor, just a little more context around the

17 expert disclosures.  With the supplemental, we added the

18 additional topical disclosure to ensure that any supplemental

19 disclosures would be very limited in scope if at all.  We

20 certainly don't want a circumstance where people are

21 disclosing experts untimely -- and Mr. Boyd completely agreed

22 with that.  So just want to provide the context as to what the

23 intent was around that date.  And we also agreed from the date

24 of rebuttal experts, that we would need about six weeks, Your

25 Honor, to complete expert discovery round depositions.

1    THE COURT:  Okay.  Well, here would be my proposal.

2  I typically like to finalize the schedule here during the

3  hearing, but there have been a lot of moving parts here.  I

4  will tell you, when I sat down on my own and penciled things

5  out, I was coming out with a date closer to the end of

6  September, beginning of October.  So what you're looking at

7  now is more the way that I was inclined to come out myself if

8  I were to set a trial date.

9    So why don't I ask you to send that in, Mr. Dhillon.

10  Mr. Boyd, if you want to send in a different schedule.  I'm

11  going to ask the parties to do that by close of business

12  tomorrow.  Is that feasible on your end -- well, you've

13  already got yours, Mr. Dhillon.  I presume you could do that.

14  Mr. Boyd, is that feasible?  If you have a disagreement on the

15  schedule, give me your alternate proposed schedule by

16  tomorrow.

17    Bear in mind, please, Mr. Boyd, I'm disinclined to

18  just push everything back 60 days, so I'm likely to just

19  ignore the dates if that's built in.  So you may want to

20  consider a schedule that doesn't include a 60-day delay.

21    MR. BOYD:  Would we still have the C&C in 60 days

22  from now, Your Honor?  We're glad to do that.  We'll have

23  another C&C in 60 days, we're in favor of reporting back to

24  you in 60 days.

25    THE COURT:  So I'm inclined to schedule the case now.

1   Both parties seem to want some version of a status conference

2   in 30 to 60 days.  I'm happy to set that.  I usually don't.  I

3   mean, and part -- when I schedule the case, I'd like to think

4   that I've scheduled the case and it will typically stick.  But

5   I'm happy to set another -- it's a complicated case, there's a

6   lot happening.  I'm happy to set another hearing in that

7   period if that works for the parties.  But be advised that I

8   don't see that as an opportunity to re-open the schedule.

9        You know, my expectation would be no, we'll discuss

10  other issues that may have come up during the time, such as an

11  AB, or I'll ask for a status report in advance.  But it's not

12  an opportunity to reschedule the case, we're going to schedule

13  the case now.  What sounds like what's really going to happen

14  is I'll look at the parties' submissions during the next

15  couple of days, hopefully early next week I'll issue a

16  scheduling order and that will come out in writing based on

17  our discussions today.

18       Could I ask the parties in their submission -- Mr.

19  Dhillon, maybe this already a part of what you're doing.  But

20  be as explicit as possible, if you could, in terms of, you

21  know, the disclosure of expert topics.  You know, address what

22  you mean by supplemental, what you mean by rebuttal reports.

23       You know, I think you touched on and this is probably

24  implicit in my tendency to group expert and fact discovery

25  together.  There are line drawing issues that can arise in

18

1   this context and that just results in a lot of wasted time.

2   At the end of the day, the information that's

3   disclosed -- that has to be exchanged is the information that

4   has to be exchanged.  And how exactly we group it is just a

5   sideshow and a distraction.

6           So I think if you can be as clear as possible, you

7   know, in terms of what you intend those terms to mean, that

8   would be helpful.  And the same for you, Mr. Boyd.  To be

9   fair, also, let me just say, both parties could submit by

10  close of business tomorrow.  So five p.m. Pacific time

11  tomorrow August 25th.  And then I'll take that into

12  consideration and issue a written scheduling order.

13          Okay.  So I think my schedule here has been overtaken

14  by late breaking events, shifts in the parties' posture, so I

15  will skip over walking through the dates that I had

16  anticipated until I've had a chance to review the parties'

17  submissions.

18          You know, I generally do use our local rules as a

19  guide.  But if there's agreement between both parties and the

20  schedule is reasonable, I'll certainly give that a lot of

21  weight and think carefully about that.  And that's -- so let

22  me just table that issue for now.

23          Mr. Boyd, are there other issues that we should

24  discuss this morning?

25          MR. BOYD:  There is one other, Your Honor, and that

1   is with respect to the third party subpoenas that have been

2   sent out.  The scope of these is overbroad and they're looking

3   for tests that were done, say, in Louisiana that had nothing

4   to do with this case here in Lake Tahoe.  And so we feel that

5   it would be proper to limit the scope of these third party

6   subpoenas so that this case doesn't get overwhelmed with just

7   unduly burdensome results from other locales that have nothing

8   to do with the current state of the evidence in Lake Tahoe.

9       THE COURT:  Yes, and I did see the point referenced

10  in your filing, also in defendant's filing they

11  referenced -- defendant's position is that that issue isn't

12  ripe yet, that there should be a further meet and confer.  Let

13  me just ask, I understand the parties have met and conferred

14  further.  Mr. Dhillon, is that still your position, do you

15  feel like -- has there been a meet and confer regarding that

16  specific issue?

17      MR. DHILLON:  Your Honor, there has not.  But to the

18  extent Your Honor would like to engage further on this, my

19  colleague Ms. Karis would be prepared to answer any further

20  questions you might have on that particular topic.  But the

21  answer is no, Your Honor, we have not conferred on the scope

22  of the subpoena or had any meaningful discussions around that.

23      THE COURT:  Okay.  And I appreciate the availability

24  and willingness to discuss that this morning.  But before I

25  get involved, I think it's appropriate for the parties to meet

1    and confer further.  I would encourage you to try to work that

2    out.  I understand there's a lot of contention in this case.

3    On the flip side, you have worked many things out and I

4    applaud both parties for that.

5           I encourage the parties to meet and confer further in

6    accordance with my standard procedure.  If that doesn't work,

7    just call the Court, we'll put you on the schedule and then we

8    can have an informal discovery conference like I have set

9    immediately following this hearing with another case.  And

10   we'll discuss at that time the approach.  And if appropriate,

11   then I'll authorize motion practice.

12          I'm sure it's a complicated issue.  There's a lot of

13   other sites that I understand may be at issue.  There's a lot

14   of costs.  So, I mean, I think we should stick with the

15   standard procedure and I would ask the parties to meet and

16   confer on that first.

17          MR. BOYD:  Very well.

18          THE COURT:  Apart from that, Mr. Boyd, anything

19   further?

20          MR. BOYD:  Nothing further, Your Honor.

21          THE COURT:  Okay.  Thank you.  Mr. Dhillon, anything

22   further from defendants?

23          MR. DHILLON:  There is one other item where we

24   actually have conferred with counsel and it does relate to the

25   subpoenas, but more of a process related issue.  We have been

1    trying to effect service on two individuals, Seth Jones and

2    Monique Fortner.  We've tried, I think close to about a dozen

3    times to affect service under Rule 45.  I've had a couple of

4    emails from Mr. Jones to me copying Ms. Fortner and we've

5    tried to ask them to work with us.  They've asked for an

6    extension of time we've offered to give them an extension of

7    time with the standard request that please accept service to

8    them as individuals.  And we have been unsuccessful in

9    reaching their agreement.

10         And we raised this issue with counsel for plaintiff

11   during the meet and confer and they had no objection to Your

12   Honor issuing an order allowing for service by alternative

13   means.  And so what we would propose, Your Honor, is to send

14   again via email in connection with the thread that's already

15   open and we would also send them by overnight mail to the

16   addresses that we have on file.

17         THE COURT:  And you're hoping I would authorize that

18   at this point?  And can you help me understand what -- so the

19   issue with personal service is that they're -- you're in email

20   communication, if I got that correctly.  But is there -- you

21   know, elaborate a little bit more if you would.  What's the

22   issue with personal service?

23         MR. DHILLON:  Your Honor, we've tried to affect

24   service at business addresses, personal addresses.  We've had

25   processors go out at least four or five times to each address.

1    From our perspective, there is an effort to evade service

2    here.  And the open email thread kind of fortified that

3    conclusion.  They acknowledged our effort to affect service

4    yet will not work with us to deliver it to their physical

5    addresses.  And they will not accept it via email, yet they're

6    asking for additional 30 days.

7             So it's, from our perspective, a classic circumstance

8    where folks are evading.  And we would like to check the box

9    on the service stip and we can move forward with meet and

10   conferring with them that may be needed to help facilitate the

11   production of the documents that are essential to this case.

12            And to provide a little context, Your Honor, these

13   are the same individuals that effectively brought this case to

14   the plaintiff.  So they have a lot of information that's

15   highly relevant, which I think perhaps adds some context as to

16   why it's been so difficult to effect service on them in

17   particular.

18            THE COURT:  Uh-huh.  Thank you, Mr. Dhillon.  The

19   challenge for me, of course, is that those -- although I

20   understand your view that these parties have some connection

21   to plaintiffs.  They're not actually before me this morning.

22   And so I have only one side, if you will, of that.  This may

23   be something that while certainly evading process is something

24   I'm eager to prevent, something where I may need a motion to

25   resolve.  You know -- yes, I see we have an additional

1    individual here on the line, I believe, who is speaking.  Is

2    there somebody else there?

3           THE CLERK:  That's Mr. Dhillon.  He's appearing via

4    phone and via video due to some connection issues.

5           THE COURT:  Oh, okay.  It must have just been Mr.

6    Dhillon, your microphone was picking something up.  I'm sorry.

7    I thought an additional party was trying to speak.

8           MR. DHILLON:  No.  Just as a suggestion, Your Honor,

9    we've seen this circumstance before.  Very much appreciate the

10    Court's comment about perhaps needing a motion.  The whole

11    motion -- filing the motion kind of brings us in the same loop

12    in terms of serving it on them.  What we typically have done

13    in circumstances like this, if requested by the Court, I'd be

14    happy to submit an affidavit from my office.  We can have an

15    affidavit from the process server.  We can get those on file

16    so you'll have an evidentiary record and we can submit a

17    proposed order.  And the request here is unopposed by

18    plaintiff.

19           And given that record, we think Your Honor would be

20    well within its discretion to enter that order so we can

21    effect service.  And again, we'll make every effort to make

22    sure they receive it.  And of course, we have the open email

23    thread so it's not a circumstance where we're not able to get

24    in contact with them.  It's really to end any kind of

25    gamesmanship around not being at home or saying they haven't

24

1  been served.

2          THE COURT:  Thank you, Mr. Dhillon.  That's exactly

3  where I was going.  And I need evidence personal service could

4  not be completed and I need some form of a record before I can

5  authorize that.  So it's not something I can really do today.

6  But, yes, please go ahead with those submissions.  I'll take a

7  look and it may be something that I can do without further

8  need for a hearing.

9          Okay.  Mr. Dhillon, anything further on behalf of

10  defendant?

11          MR. DHILLON:  No, Your Honor.  Thank you.

12          THE COURT:  Okay.  Thank you all very much.  Nice to

13  see you.  Have a good rest of the day.

14          MS. KARIS:  Thank you.

15          MR. BOYD:  Thank you, Your Honor.

16      (The proceedings were concluded at 10:42 a.m.)

17

18          I, KAREN HOOVEN, Certified Shorthand Reporter and

19  court-approved transcriber, do hereby certify the foregoing

20  transcript as true and correct from the official electronic

21  recording of the proceedings in the above-entitled matter.

22

23  DATED:  15th of November, 2023    /s/  Karen Hooven
                                      KAREN HOOVEN, CSR, RMR, CRR
24

25

# EXHIBIT  B

| | |
|---|---|
| **From:** | Andrew Packard |
| **To:** | Dhillon, Navi |
| **Cc:** | Meier, Peter C.; Kirk Boyd; Bill Verick; Brian Acree; Will Carlon; Douangphayvan, Joseph; Karis, Hariklia; Nomellini, Mark J. |
| **Subject:** | [EXT] Re: California Sportfishing Protection Alliance v. Pacific Bell Telephone Company, Case No. 2:21-cv-00073 -- Third Party Subpoenas |
| **Date:** | Tuesday, September 19, 2023 4:13:45 PM |
| **Attachments:** | image001.png |
| | image001.png |

---

**--- External Email ---**

Dear Navi,

We believe a joint request for a status conference in the near term is a good idea. However, CSPA is in the process of bringing in new counsel, and would request your forbearance until tomorrow, or Thursday at the latest, when we can respond to your request of today's date.

Please provide the specific dates under consideration so that I can alert CSPA's new counsel to this request now.

Thank you,

Andrew

On Tue, Sep 19, 2023 at 11:58 AM Dhillon, Navi <navidhillon@paulhastings.com> wrote:

> Hi Andrew
>
> Following up on my e-mail below. In addition, our side plans to request a status conference with the Court during the first two weeks of October. Please let us know if you have any conflicts during that window.
>
> ---
>
> **Navi Dhillon | Partner**
> O: 415.856.7080 | M: 415.203.8805
>
> ---
>
> **From:** Dhillon, Navi
> **Sent:** Monday, September 18, 2023 4:17 PM
> **To:** 'Andrew Packard' <andrew@packardlawoffices.com>
> **Cc:** Meier, Peter C. <petermeier@paulhastings.com>; 'Kirk Boyd' <jkb@drjkb.com>; 'Bill Verick' <wverick@igc.org>; 'Brian Acree' <brian@brianacree.com>; 'Will Carlon' <wncarlon@packardlawoffices.com>; Douangphayvan, Joseph <josephdouangphayvan@paulhastings.com>; 'Karis, Hariklia' <hkaris@kirkland.com>; 'Nomellini, Mark J.' <mnomellini@kirkland.com>
> **Subject:** RE: [EXT] Re: California Sportfishing Protection Alliance v. Pacific Bell Telephone Company, Case No. 2:21-cv-00073 -- Third Party Subpoenas
>
> Hi Andrew
>
> Our side would like to find a good time tomorrow to confer about case management and your extension request. 12-3 PST is currently open for us and we are happy to send an invite.
>
> Please let us know.
>
> ---
>
> **Navi Dhillon | Partner**
> O: 415.856.7080 | M: 415.203.8805
>
> ---
>
> **From:** Dhillon, Navi
> **Sent:** Monday, September 18, 2023 12:47 PM
> **To:** 'Andrew Packard' <andrew@packardlawoffices.com>
> **Cc:** Meier, Peter C. <petermeier@paulhastings.com>; Kirk Boyd <jkb@drjkb.com>; Bill Verick <wverick@igc.org>; Brian Acree <brian@brianacree.com>; Will Carlon <wncarlon@packardlawoffices.com>; Douangphayvan, Joseph <josephdouangphayvan@paulhastings.com>; Karis, Hariklia <hkaris@kirkland.com>;

Nomellini, Mark J. <mnomellini@kirkland.com>

**Subject:** RE: [EXT] Re: California Sportfishing Protection Alliance v. Pacific Bell Telephone Company, Case No. 2:21-cv-00073 -- Third Party Subpoenas

Hi Andrew

Please excuse the delay.  We agree to extend the deadline through this Wednesday (9/20) and will revert tomorrow on the requested two-week extension.

---



**Navi Dhillon | Partner**
O: 415.856.7080 | M: 415.203.8805

**From:** Andrew Packard <andrew@packardlawoffices.com>
**Sent:** Monday, September 18, 2023 10:06 AM
**To:** Dhillon, Navi <navidhillon@paulhastings.com>
**Cc:** Meier, Peter C. <petermeier@paulhastings.com>; Kirk Boyd <jkb@drjkb.com>; Bill Verick <wverick@igc.org>; Brian Acree <brian@brianacree.com>; Will Carlon <wncarlon@packardlawoffices.com>; Douangphayvan, Joseph <josephdouangphayvan@paulhastings.com>; Karis, Hariklia <hkaris@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>
**Subject:** [EXT] Re: California Sportfishing Protection Alliance v. Pacific Bell Telephone Company, Case No. 2:21-cv-00073 -- Third Party Subpoenas

**--- External Email ---**

Hi Navi,

The courtesy of your response would be greatly appreciated.

Andrew

On Fri, Sep 15, 2023 at 2:15 PM Andrew Packard <andrew@packardlawoffices.com> wrote:

> Dear Navi,
>
> CSPA would like to request the courtesy of a two-week extension on the discovery due on Monday the 18th.
>
> Please advise.
>
> Thank you,
>
> Andrew
>
> On Tue, Sep 12, 2023 at 1:51 PM Andrew Packard <andrew@packardlawoffices.com> wrote:
>
>> Thanks, Navi.
>>
>> Confirming the mutual extension, for the Parties Initial Disclosures, from September 14th to September 28th.
>>
>> Andrew
>>
>> On Tue, Sep 12, 2023 at 1:36 PM Dhillon, Navi <navidhillon@paulhastings.com> wrote:
>>
>>> Hi Andrew
>>>
>>> We are fine with a mutual two-week extension of the initial disclosure deadline for both parties to 9/28.  Please confirm.

Best regards

---

**Navi Dhillon | Partner**
O: 415.856.7080 | M: 415.203.8805

**From:** Andrew Packard <andrew@packardlawoffices.com>
**Sent:** Tuesday, September 12, 2023 11:24 AM
**To:** Meier, Peter C. <petermeier@paulhastings.com>
**Cc:** Kirk Boyd <jkb@drjkb.com>; Dhillon, Navi <navidhillon@paulhastings.com>; Bill Verick <wverick@igc.org>; Brian Acree <brian@brianacree.com>; Will Carlon <wncarlon@packardlawoffices.com>; Douangphayvan, Joseph <josephdouangphayvan@paulhastings.com>
**Subject:** [EXT] Re: California Sportfishing Protection Alliance v. Pacific Bell Telephone Company, Case No. 2:21-cv-00073 -- Third Party Subpoenas

---

**--- External Email ---**

Hi Peter,

CSPA would like to request the courtesy of a two-week extension on the initial disclosures due on Thursday, September 14th.

Please advise.

Thank you,

Andrew

On Tue, Sep 12, 2023 at 9:33 AM Meier, Peter C. <petermeier@paulhastings.com> wrote:

> Hi Kirk,
>
> You should have now received the EDF and Pace productions.  We have not received any other productions from third parties.  We are continuing to meet and confer with various third parties (including RTI and Pace) regarding their compliance with the subpoenas.
>
> Best regards,
>
> Peter
>
> **From:** Kirk Boyd <jkb@drjkb.com>
> **Sent:** Monday, September 11, 2023 6:38 PM
> **To:** Meier, Peter C. <petermeier@paulhastings.com>
> **Cc:** Andrew Packard <andrew@packardlawoffices.com>; Dhillon, Navi <navidhillon@paulhastings.com>; Bill Verick <wverick@igc.org>; Brian Acree <brian@brianacree.com>; Will Carlon <wncarlon@packardlawoffices.com>; Douangphayvan, Joseph <josephdouangphayvan@paulhastings.com>
> **Subject:** [EXT] Re: California Sportfishing Protection Alliance v. Pacific Bell Telephone Company, Case No. 2:21-cv-00073 -- Third Party Subpoenas
>
> ---
>
> **--- External Email ---**
>
> Peter,

Thank you for keeping me informed as soon as any production from any of the third-party subpoenas is provided.

I look forward to receiving the share file link from Joe. When do you expect that link will be provided?

Have you received any other documents from any third parties in response to the subpoenas?

I assume that the Pace documents will be provided via email soon.

Best.

Kirk


On Sep 11, 2023, at 6:04 PM, Meier, Peter C. <petermeier@paulhastings.com> wrote:

Kirk,

We received productions of documents on Friday from the Environmental Defense Fund and Pace Laboratories.  The production from EDF is too large to e-mail, so I have copied our paralegal Joe Douangphayvan to request that he send you a share file link so you can download the production.  The production from Pace consistently only of two documents that were not bates stamped.  We are bates stamping those documents so that they can be forwarded to you as well.

Best regards,

Peter

---

**From:** Meier, Peter C.
**Sent:** Friday, August 11, 2023 6:39 PM
**To:** 'Kirk Boyd' <jkb@drjkb.com>; Andrew Packard <andrew@packardlawoffices.com>
**Cc:** Dhillon, Navi <navidhillon@paulhastings.com>; Bill Verick <wverick@igc.org>; Brian Acree <brian@brianacree.com>; Will Carlon <wncarlon@packardlawoffices.com>
**Subject:** RE: California Sportfishing Protection Alliance v. Pacific Bell Telephone Company, Case No. 2:21-cv-00073 -- Third Party Subpoenas

Absolutely.  We'll make sure that all materials produced by third parties are digitized, Bates-stamped, and promptly distributed to you.  A calendar is good idea and we'll put one together so we'll all stay coordinated.

Best regards,

Peter

---

**From:** Kirk Boyd <jkb@drjkb.com>
**Sent:** Friday, August 11, 2023 10:50 AM
**To:** Andrew Packard <andrew@packardlawoffices.com>

**Cc:** Meier, Peter C. <petermeier@paulhastings.com>; Dhillon, Navi <navidhillon@paulhastings.com>; Bill Verick <wverick@igc.org>; Brian
Acree <brian@brianacree.com>; Will Carlon <wncarlon@packardlawoffices.com>
**Subject:** [EXT] Re: California Sportfishing Protection Alliance v. Pacific Bell Telephone Company, Case No. 2:21-cv-00073 -- Third Party
Subpoenas

_____

--

| --- External Email --- |
| :-- |

--

Hello Peter,

As we go through this process, let's make sure that all of this production is done digitally so that we can easily distribute it, and
make use of it in the preparation of the case. Have each of these subpoenas included a request for digital production, with an
understanding that originals may be required later?

Thank you for telling us about the extensions that you have given. It will be helpful for us to have an email calendar of when the
documents will be  produced, and then note on that email, which we can circulate back-and-forth, when documents are produced
and copies are provided.

We would like digital copies of all documents, or anything else, that is produced.

Best,

Kirk

> On Aug 11, 2023, at 10:36 AM, Andrew Packard <andrew@packardlawoffices.com> wrote:
>
> Thank you for the update, Peter.
>
> Kirk Boyd is going to be CSPA's point person to coordinate with you on the third-party subpoenas.
>
> Andrew
>
>
>> On Fri, Aug 11, 2023 at 9:21 AM Meier, Peter C. <petermeier@paulhastings.com> wrote:
>>
>> Andrew,
>>
>> As an update, we've withdrawn without prejudice the subpoena for Tom Neltner.  We'll provide a further update on the
>> status of service by early next week.
>>
>> Peter
>>
>> _____
>>
>> **From:** Meier, Peter C.
>> **Sent:** Thursday, August 10, 2023 6:41 PM
>> **To:** 'Andrew Packard' <andrew@packardlawoffices.com>
>> **Cc:** Dhillon, Navi <navidhillon@paulhastings.com>; Kirk Boyd <jkb@drjkb.com>; Bill Verick <wverick@igc.org>; Brian Acree
>> <brian@brianacree.com>; Will Carlon <wncarlon@packardlawoffices.com>
>> **Subject:** RE: [EXT] Re: California Sportfishing Protection Alliance v. Pacific Bell Telephone Company, Case No. 2:21-cv-

00073 -- Third Party Subpoenas

Thanks Andrew, and sounds good.  On service, we sent them to a vendor on Friday afternoon but service is not complete; we need to effect personal service so it may take some time to locate and serve everyone.

EDF contacted us and we granted them a 30-day extension to respond.  Pace Laboratories also contacted us yesterday and we will likewise provide a similar extension if requested.

We hope to have the proofs of service back next week and will send them your way.  Of course, pleased to coordinate on all of this.

Peter

**From:** Andrew Packard <andrew@packardlawoffices.com>
**Sent:** Thursday, August 10, 2023 3:52 PM
**To:** Meier, Peter C. <petermeier@paulhastings.com>
**Cc:** Dhillon, Navi <navidhillon@paulhastings.com>; Kirk Boyd <jkb@drjkb.com>; Bill Verick <wverick@igc.org>; Brian Acree <brian@brianacree.com>; Will Carlon <wncarlon@packardlawoffices.com>
**Subject:** [EXT] Re: California Sportfishing Protection Alliance v. Pacific Bell Telephone Company, Case No. 2:21-cv-00073 -- Third Party Subpoenas

**--- External Email ---**

Thank you, Peter.  I'll get back to you regarding who on our team will coordinate with your offices on this issue.

For all future correspondence herein, please copy my co-counsel Kirk Boyd, Bill Verick, and Brian Acree, as well as my associate, Will Carlon.

I note that the document subpoenas were signed last week, on August 4th; please clarify when they were sent.

Thank you,

Andrew

On Thu, Aug 10, 2023 at 11:28 AM Meier, Peter C. <petermeier@paulhastings.com> wrote:

Dear Andrew,

I'm writing to give notice of the attached third-party document subpoenas which we've sent out for service on the following persons/entities:

- Environmental Defense Fund

- Monique Fortner

- Pace Analytical Services, LLC

- Marine Taxonomic Services, Ltd.

- Tom Neltner

- RTI International

- Below the Blue

- Bruce Nelson

- Seth Jones

Please let me know if there is someone on your team you would like us to coordinate with to provide copies of any documents produced.

Best regards,

Peter

---

**Peter Meier | Partner, Litigation Department**
Paul Hastings LLP | 101 California Street, Forty-Eighth Floor, San Francisco, CA 94111 | Direct: +1.415.856.7030 | Main: +1.415.856.7000 | Fax: +1.415.856.7130
| petermeier@paulhastings.com| www.paulhastings.com

********************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

--

The Law Offices of Andrew L. Packard

245 Kentucky Street, Suite B3
Petaluma, CA  94952
Tel. (707) 782-4060

Fax. (707) 782-4062

Cell (707) 787-7033

The communication contained in this message is considered privileged and confidential.  It is protected by attorney client privilege and the attorney work product doctrine. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in  error, please provide notification to the sender immediately by replying to the message and deleting it from your computer. This Email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521 and is legally privileged.

********************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

--

The Law Offices of Andrew L. Packard

245 Kentucky Street, Suite B3
Petaluma, CA  94952
Tel. (707) 782-4060

**Fax. (707) 782-4062**

Cell (707) 787-7033

The communication contained in this message is considered privileged and confidential.  It is protected by attorney client privilege and the attorney work product doctrine. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in  error, please provide notification to the sender immediately by replying to the message and deleting it from your computer. This Email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521 and is legally privileged.

***************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

***************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

--

The Law Offices of Andrew L. Packard

245 Kentucky Street, Suite B3
Petaluma, CA  94952

**Tel. (707) 782-4060**

**Fax. (707) 782-4062**

Cell (707) 787-7033

The communication contained in this message is considered privileged and confidential.  It is protected by attorney client privilege and the attorney work product doctrine. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in  error, please provide notification to the sender immediately by replying to the message and deleting it from your computer. This Email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521 and is legally privileged.

***************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

--

The Law Offices of Andrew L. Packard

245 Kentucky Street, Suite B3
Petaluma, CA  94952

**Tel. (707) 782-4060**

**Fax. (707) 782-4062**

Cell (707) 787-7033

The communication contained in this message is considered privileged and confidential.  It is protected by attorney client privilege and the attorney work product doctrine. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in  error, please provide notification to the sender immediately by replying to the message and deleting it from your computer. This Email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521 and is legally privileged.

--

The Law Offices of Andrew L. Packard

245 Kentucky Street, Suite B3
Petaluma, CA  94952

**Tel. (707) 782-4060**

**Fax. (707) 782-4062**

Cell (707) 787-7033

The communication contained in this message is considered privileged and confidential.  It is protected by attorney client privilege and the attorney work product doctrine. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in  error, please provide notification to the sender immediately by replying to the message and deleting it from your computer. This Email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521 and is legally privileged.

--

The Law Offices of Andrew L. Packard

245 Kentucky Street, Suite B3

Petaluma, CA  94952

**Tel. (707) 782-4060**

**Fax. (707) 782-4062**

Cell (707) 787-7033

The communication contained in this message is considered privileged and confidential.  It is protected by attorney client privilege and the attorney work product doctrine. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in  error, please provide notification to the sender immediately by replying to the message and deleting it from your computer. This Email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521 and is legally privileged.

*************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

--
The Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA  94952
**Tel. (707) 782-4060**
**Fax. (707) 782-4062**
Cell (707) 787-7033

The communication contained in this message is considered privileged and confidential.  It is protected by attorney client privilege and the attorney work product doctrine. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in  error, please provide notification to the sender immediately by replying to the message and deleting it from your computer. This Email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521 and is legally privileged.

# EXHIBIT  C

ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
LAW OFFICES OF ANDREW L. PACKARD
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062
andrew@packardlawoffices.com
wncarlon@packardlawoffices.com

WILLIAM VERICK (State Bar No. 140972)
KLAMATH ENVIRONMENTAL LAW CENTER
1125 16th Street, Suite 204
Arcata, CA  95521
Tel: (707) 630-5061
Fax: (707) 630-5064
Email: wverick@igc.org

[Additional counsel on p. 2]

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>            Plaintiff,<br><br>    v.<br><br>PACIFIC BELL TELEPHONE COMPANY,<br><br>            Defendant. | CASE NO. 2:21-cv-00073-MCE-JDP<br><br>**PLAINTIFF'S AMENDED RESPONSES TO DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSIONS TO PLAINTIFF** |

J. KIRK BOYD (State Bar No. 122759)
LAW OFFICE OF JOHN KIRK BOYD
548 Market St., Suite 1300
San Francisco, CA 94104-5401
Tel: (415) 440-2500
jkb@drjkb.com


MATTHEW MACLEAR (State Bar No. 209228)
JASON FLANDERS (State Bar No. 238007)
ERICA A. MAHARG (State Bar No. 279396)
J. THOMAS BRETT (State Bar No. 315820)
AQUA TERRA AERIS LAW GROUP
4030 MARTIN LUTHER KING JR WAY
OAKLAND, CA 94609
Tel: (415) 568-5200
Email: MCM@atalawgroup.com
        jrf@atalawgroup.com
        eam@atalawgroup.com
        jtb@atalawgroup.com

0
PLAINTIFF'S RESPONSES TO REQUEST FOR ADMISSIONS

1          RESPONSES TO DEFENDANT'S REQUEST FOR ADMISSIONS.

2   **REQUEST FOR ADMISSION NO. 1:**

3          Admit that before filing this ACTION, YOU used a "kiddie swimming pool" to test a

4   severed portion of the CABLES.

5   **RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

6          Plaintiff objects to the extent that the request seeks information protected by an attorney

7   client privilege or constitutes attorney work product.   Plaintiff further objects that although this

8   action was filed some time ago, until a few weeks ago Plaintiff understood that this action had

9   settled pending and conditioned only upon Defendant obtaining required permits for cable

10  removal.  A few weeks ago, Defendant withdrew that agreement, and the litigation of this case

11  began.  Accordingly, the matter is at a very early stage of the litigation, and Plaintiffs has yet

12  received no responses to discovery.  As such, Plaintiff reserves the right to augment and

13  supplement responses upon the results of that discovery and related investigation in the case.

14  Plaintiff further objects that the request is vague and ambiguous in its use of the term "kiddie

15  swimming pool."  Assuming that "kiddie swimming pool" means a small swimming pool

16  intended to be utilized by small children, Deny.

17

18  **REQUEST FOR ADMISSION NO. 2:**

19         Admit that the testing described in Paragraph 7 of YOUR COMPLAINT involved the use

20  of a "kiddie swimming pool" with a newly cut portion of the CABLES submerged in water.

21  **RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

22         Plaintiff objects to the extent that the request seeks information protected by an attorney

23  client privilege or constitutes attorney work product.   Plaintiff further objects that although this

24  action was filed some time ago, until a few weeks ago Plaintiff understood that this action had

25  settled pending and conditioned only upon Defendant obtaining required permits for cable

26  removal.  A few weeks ago, Defendant withdrew that agreement, and the litigation of this case

27  began.  Accordingly, the matter is at a very early stage of the litigation, and Plaintiff has yet

28  received no responses to discovery.  As such, Plaintiff reserves all rights to augment and

PLAINTIFF'S RESPONSES TO REQUEST FOR ADMISSIONS

supplement responses upon the results of that discovery and related investigation in the case. Plaintiff further objects that the request is vague and ambiguous in its undefined use of the term "kiddie swimming pool" and "newly cut."  Assuming that "kiddie swimming pool" means a small swimming pool intended to be utilized by small children, Deny.

**REQUEST FOR ADMISSION NO. 3:**

Admit that other than the testing described in Paragraph 7 of YOUR COMPLAINT, YOU did not perform any testing before filing this ACTION to determine whether lead is being released from the CABLES.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Plaintiff objects to the extent that the request seeks information protected by an attorney client privilege or constitutes attorney work product.   Plaintiff further objects that although this action was filed some time ago, until a few weeks ago Plaintiff understood that this action had settled pending and conditioned only upon Defendant obtaining required permits for cable removal.  A few weeks ago, Defendant withdrew that agreement, and the litigation of this case began.  Accordingly, the matter is at a very early stage of the litigation, and Plaintiff has yet received no responses to discovery.  As such, Plaintiff reserves the right to augment and supplement responses upon the results of that discovery and related investigation in the case. Plaintiff further objects that the request is vague and ambiguous in its undefined use of the phrase "did not perform any testing." For purposes of answering this Request, Plaintiff assumes that "testing" refers to collecting samples of environmental media, such as water or sediment, and having the samples analyzed for pollutants. Without waiving these objections and subject to them, Admit.

**REQUEST FOR ADMISSION NO. 4:**

Admit that other than the testing described in Paragraph 7 of the COMPLAINT, YOU did not perform any testing to support the allegations in the COMPLAINT.

PLAINTIFF'S RESPONSES TO REQUEST FOR ADMISSIONS

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Plaintiff objects to the extent that the request seeks information protected by an attorney client privilege or constitutes attorney work product.   Plaintiff further objects that although this action was filed some time ago, until a few weeks ago Plaintiff understood that this action had settled pending and conditioned only upon Defendant obtaining required permits for cable removal.  A few weeks ago, Defendant withdrew that agreement, and the litigation of this case began.  Accordingly, the matter is at a very early stage of the litigation, and Plaintiff has yet received no responses to discovery.  As such, Plaintiff reserves the right to augment and supplement responses upon the results of that discovery and related investigation in the case. Plaintiff further objects that the request is vague and ambiguous in its undefined use of the phrase "did not perform any testing."  For purposes of answering this Request, Plaintiff assumes that "testing" refers to collecting samples of environmental media, such as water or sediment, and having the samples analyzed for pollutants. Without waiving these objections and subject to them, Admit.

**REQUEST FOR ADMISSION NO. 5:**

Admit that before filing this ACTION, YOU did not collect any water samples within one foot of where the CABLES are situated in Lake Tahoe.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Plaintiff objects to the extent that the request seeks information protected by an attorney client privilege or constitutes attorney work product.   Plaintiff further objects that although this action was filed some time ago, until a few weeks ago Plaintiff understood that this action had settled pending and conditioned only upon Defendant obtaining required permits for cable removal.  A few weeks ago, Defendant withdrew that agreement, and the litigation of this case began.  Accordingly, the matter is at a very early stage of the litigation, and Plaintiff has yet received no responses to discovery.  As such, Plaintiff reserves the right to augment and supplement responses upon the results of that discovery and related investigation in the case.

PLAINTIFF'S RESPONSES TO REQUEST FOR ADMISSIONS

Plaintiff further objects that the request is vague and ambiguous in its use of the phrase "within one foot of where the CABLES are situated in Lake Tahoe."  Without waiving these objections and subject to them, Admit.

**REQUEST FOR ADMISSION NO. 6:**

Admit that before filing this ACTION, YOU did not test any water samples collected within one foot of where the CABLES are situated in Lake Tahoe.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Plaintiff objects to the extent that the request seeks information protected by an attorney client privilege or constitutes attorney work product.   Plaintiff further objects that although this action was filed some time ago, until a few weeks ago Plaintiff understood that this action had settled pending and conditioned only upon Defendant obtaining required permits for cable removal.  A few weeks ago, Defendant withdrew that agreement, and the litigation of this case began.  Accordingly, the matter is at a very early stage of the litigation, and Plaintiff has yet received no responses to discovery.  As such, Plaintiff reserves the right to augment and supplement responses upon the results of that discovery and related investigation in the case.  Without waiving these objections and subject to them, Admit.

**REQUEST FOR ADMISSION NO. 7:**

Admit that YOU have no test data for any of YOUR members reflecting that their "body burden of lead is increased" due to the CABLES.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Plaintiff objects to the extent that the request seeks information protected by an attorney client privilege or constitutes attorney work product.   Plaintiff further objects that although this action was filed some time ago, until a few weeks ago Plaintiff understood that this action had settled pending and conditioned only upon Defendant obtaining required permits for cable removal.  A few weeks ago, Defendant withdrew that agreement, and the litigation of this case

began.  Accordingly, the matter is at a very early stage of the litigation, and Plaintiff has yet

received no responses to discovery.  As such, Plaintiff reserves the right to augment and

supplement responses upon the results of that discovery and related investigation in the case.

Plaintiff further objects that the request seeks personal health information of individuals which

may be subject to individual privilege.  Plaintiff further objects that the request is vague and

ambiguous in its use of the undefined term "test data." Without waiving these objections and

subject to them, Admit.

**REQUEST FOR ADMISSION NO. 8:**

Admit that YOUR members have not suffered any physical injury due to the CABLES.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Plaintiff objects to the extent that the request seeks information protected by an attorney

client privilege or constitutes attorney work product.   Plaintiff further objects that although this

action was filed some time ago, until a few weeks ago Plaintiff understood that this action had

settled pending and conditioned only upon Defendant obtaining required permits for cable

removal.  A few weeks ago, Defendant withdrew that agreement, and the litigation of this case

began.  Accordingly, the matter is at a very early stage of the litigation, and Plaintiff has yet

received no responses to discovery.  As such, Plaintiff reserves the right to augment and

supplement responses upon the results of that discovery and related investigation in the case.

Plaintiff further objects that the request seeks personal health information of individuals which

may be subject to individual privilege.  Plaintiff further objects that the request is vague and

ambiguous in its use of the undefined phrase "suffered any physical injury."  Plaintiff further

objects to the Request because it seeks information regarding all of Plaintiff's members.

Requiring Plaintiff to obtain information from each member in order to respond to this request is

not proportional to the needs of the case.  Accordingly, Plaintiff does not have sufficient

information to admit or deny this Request and on that basis Denies.

**REQUEST FOR ADMISSION NO. 9:**

PLAINTIFF'S RESPONSES TO REQUEST FOR ADMISSIONS

1    Admit that YOUR members have not suffered any economic injury due to the CABLES.

2

3    **RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

4    Plaintiff objects to the extent that the request seeks information protected by an attorney

5    client privilege or constitutes attorney work product.   Plaintiff further objects that although this

6    action was filed some time ago, until a few weeks ago Plaintiff understood that this action had

7    settled pending and conditioned only upon Defendant obtaining required permits for cable

8    removal.  A few weeks ago, Defendants withdrew that agreement, and the litigation of this case

9    began.  Accordingly, the matter is at a very early stage of the litigation, and Plaintiff has yet

10   received no responses to discovery.  As such, Plaintiff reserves the right to augment and

11   supplement responses upon the results of that discovery and related investigation in the case.

12   Plaintiff further objects that the request is vague and ambiguous in its use of the undefined term

13   "economic injury." Plaintiff further objects to the extent it seeks information regarding all of

14   Plaintiff's members. Plaintiff has many member who have not been polled as to their personal

15   injuries that might be connected with discharges from the CABLES.  Plaintiff therefore objects

16   that requiring Plaintiff to obtain information from each member in order to respond to this request

17   is not proportional to the needs of the case.  Accordingly, Plaintiff does not have sufficient

18   information either to admit or deny this Request, and on that basis Denies.

19

20   **REQUEST FOR ADMISSION NO. 10:**

21   Admit that YOUR members continue to recreate in Lake Tahoe despite the presence of

22   the CABLES.

23   **RESPONSE TO REQUEST FOR ADMISSION. 10:**

24   Plaintiff objects to the extent the request seeks information protected by an attorney client

25   privilege or that constitutes attorney work product.   Plaintiff further objects that although this

26   action was filed some time ago, until a few weeks ago Plaintiff understood that this action had

27   settled pending and conditioned only upon Defendant obtaining required permits for cable

28

1  removal.  Plaintiff objects on the basis that the term "YOUR members" is vague and ambiguous.

2  Does the Request ask as to the status of ALL of Plaintiff's members, just some, or ANY

3  members?  A few weeks ago, Defendant withdrew that agreement, and the litigation of this case

4  began.  Accordingly, the matter is at a very early stage of the litigation, and Plaintiff has yet

5  received no responses to discovery.  As such, Plaintiff reserves the right to augment and

6  supplement responses upon the results of that discovery and related investigation in the case.

7  Plaintiff further objects that the request is vague and ambiguous in its use of the undefined phrase

8  "members continue to recreate." Plaintiff further objects to the extent it seeks information

9  regarding all of Plaintiff's members. Requiring Plaintiff to obtain information from each member

10  in order to respond to this request is not proportional to the needs of the case.  Assuming that this

11  Request seeks an admission that at least one of Plaintiff's members continues to recreate in Lake

12  Tahoe sporadically, Admit.

13  **REQUEST FOR ADMISSION NO. 11:**

14      Admit that DEFENDANT does not own CABLE D.

15  **RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

16      Plaintiff objects to the extent that the request seeks information protected by an attorney

17  client privilege or constitutes attorney work product.   Plaintiff further objects that although this

18  action was filed some time ago, until a few weeks ago Plaintiff understood that this action had

19  settled pending and conditioned only upon Defendant obtaining required permits for cable

20  removal.  A few weeks ago, Defendant withdrew that agreement, and the litigation of this case

21  began.  Accordingly, the matter is at a very early stage of the litigation, and Plaintiff has yet

22  received no responses to discovery.  As such, Plaintiff reserves the right to augment and

23  supplement responses upon the results of that discovery and related investigation in the case.

24  Without waiving these objections and subject to them, Admit.

25  **REQUEST FOR ADMISSION NO. 12:**

26      Admit that YOU did not obtain a permit to remove from Lake Tahoe the "portion of one

27  of the cables" referenced in paragraph 7 of the Complaint.

28

PLAINTIFF'S RESPONSES TO REQUEST FOR ADMISSIONS

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Plaintiff objects to the extent that the request seeks information protected by an attorney client privilege or constitutes attorney work product.   Plaintiff further objects that although this action was filed some time ago, until a few weeks ago Plaintiff understood that this action had settled pending and conditioned only upon Defendant obtaining required permits for cable removal.  A few weeks ago, Defendant withdrew that agreement, and the litigation of this case began.  Accordingly, the matter is at a very early stage of the litigation, and Plaintiff has yet received no responses to discovery.  As such, Plaintiff reserves the right to augment and supplement responses upon the results of that discovery and related investigation in the case. Plaintiff further objects that the use of the phrase "to remove from Lake Tahoe" carries the implied assumption that Plaintiff removed the length of cable from Lake Tahoe and any response then carries a confirmation of this implication.  Without waiving these objections and subject to them, Admit.

**REQUEST FOR ADMISSION NO. 13:**

Admit that YOU did not take water samples near the CABLES.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Plaintiff objects to the extent that the request seeks information protected by an attorney client privilege or constitutes attorney work product.   Plaintiff further objects that although this action was filed some time ago, until a few weeks ago Plaintiff understood that this action had settled pending and conditioned only upon Defendant obtaining required permits for cable removal.  A few weeks ago, Defendant withdrew that agreement, and the litigation of this case began.  Accordingly, the matter is at a very early stage of the litigation, and Plaintiff has yet received no responses to discovery.  As such, Plaintiff reserves the right to augment and supplement responses upon the results of that discovery and related investigation in the case. Plaintiff further objects that the request is vague and ambiguous in use of the phrase "near the CABLES"  and vague and ambiguous in a lack of time specification and vague and ambiguous in its use of the phrase YOU did not take water samples" and whether that phrase includes

knowledge of water samples taken by third parties.  Without waiving these objections and subject to them, Plaintiff admits that the water placed in the container in which the cable was also placed was taken from Lake Tahoe at a location that was not near where the cable in Lake Tahoe is located.  The water, in the container that was tested, however, was near the cable placed in the container.  On that basis, Deny.

**REQUEST FOR ADMISSION NO. 14:**

Admit that YOU did not take samples of soil near the CABLES.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Plaintiff objects to the extent that the request seeks information protected by an attorney client privilege or constitutes attorney work product.   Plaintiff further objects that although this action was filed some time ago, until a few weeks ago Plaintiff understood that this action had settled pending and conditioned only upon Defendant obtaining required permits for cable removal.  A few weeks ago, Defendant withdrew that agreement, and the litigation of this case began.  Accordingly, the matter is at a very early stage of the litigation, and Plaintiff has yet received no responses to discovery.  As such, Plaintiff reserve the right to augment and supplement responses upon the results of that discovery and related investigation in the case. Plaintiff further objects that the request is vague and ambiguous in its use of the phrase "YOU did not take water samples of soil near" and whether that phrase includes knowledge of water samples taken by third parties.  Without waiving these objections and subject to them, Admit.

Respectfully submitted,

1   DATED:  October 25, 2023                    KLAMATH ENVIRONMENTAL LAW
                                                CENTER
2

3
                                                By
4                                                       WILLIAM VERICK

5                                               Attorney for Plaintiff
                                                CALIFORNIA SPORTFISHING
6                                               PROTECTION ALLIANCE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S RESPONSES TO REQUEST FOR ADMISSIONS

1

PROOF OF SERVICE

2

I am a citizen of the United States of America and work in City of Arcata, California.  I

3

am over the age of 18 and not a party to the within action.  My business address is 1125 16th

4

Street, Suite 204, Arcata, CA  95521.

5

6

On October 25, 2023, I served the following document(s) described as

7

**PLAINTIFF'S AMENDED RESPONSES TO DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF**

8

9

on the interested parties as follows:

10

NAVI DHILLON
PETER C. MEIER

11

CHRISTOPHER J. CARR
LUCAS GRUNBAUM

12

PAUL HASTINGS, LLP
101 California Street, 48th Floor

13

San Francisco, CA  94111
Email. navidhillon@paulhastings.com; petermeier@paulhastings.com;

14

chriscarr@paulhastings.com; lucasgrunbaum@paulhastings.com

15

HARIKLIA KARIS
ROBERT B. ELLIS

16

MARK J. NOMELLINI
KIRKLAND & ELLIS, LLP

17

300 North LaSalle
Chicago, IL  60654

18

Email: hkaris@kirkland.com; rellis@kirkland.com; mnomellini@kirkland.com

19

By agreement of the parties, by personally emailing the aforementioned document(s) in PDF format to the respective email address(es) listed above.   I did not receive an electronic

20

message indicating any errors in transmission.

21

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

22

23

Executed on October 25, 2023 in Arcata, California.

24

William Verick

25

26

27

28

- 11 -

PLAINTIFF'S RESPONSES TO REQUEST FOR ADMISSIONS

# EXHIBIT  D

```
 1                    UNITED STATES DISTRICT COURT

 2                   EASTERN DISTRICT OF CALIFORNIA

 3   CALIFORNIA SPORTFISHING      :    Case No. 2:21-cv-00073-JDP
     PROTECTION ALLIANCE,
 4                                :
         Plaintiff,                    Sacramento, California
 5                                :    Thursday, November 9, 2023
              v.                       10:45 a.m.
 6                                :
     PACIFIC BELL TELEPHONE COMPANY,   DEFENDANT'S MOTION TO
 7                                :    COMPEL COMPLIANCE WITH
         Defendant.                    SUBPOENA [65]
 8                                :
     : : : : : : : : : : : : : : :
 9
                         TRANSCRIPT OF PROCEEDINGS
10            BEFORE THE HONORABLE JEREMY D. PETERSON,
                   UNITED STATES MAGISTRATE JUDGE
11

12   APPEARANCES (via Zoom):

13   For the Defendant:          Paul Hastings, LLP
                                 BY:  NAVTEJ S. DHILLON, ESQ.
14                               101 California St., 48th Floor
                                 San Francisco, CA  94111
15
                                 Kirkland & Ellis LLP
16                               BY:  HARIKLIA KARIS, PHV
                                      MARK J. NOMELLINI, PHV
17                               300 North LaSalle
                                 Chicago, IL  60654
18

19   Court Recorder:            COURT PERSONNEL

20
     Transcript prepared by:     JANICE RUSSELL TRANSCRIPTS
21                               1418 Red Fox Circle
                                 Severance, CO  80550
22                               (757) 422-9089
                                 trussell31@tdsmail.com
23

24   Proceedings recorded by electronic sound recording; transcript
     produced by transcription service.
25
```

```
 1    APPEARANCES (via Zoom continued):

 2                              Kirkland & Ellis LLP
                               BY:  JONATHAN D. KELLEY, ESQ.
 3                              4550 Travis Street
                               Dallas, TX  75205
 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1  SACRAMENTO, CALIFORNIA, THURSDAY, NOVEMBER 9, 2023, 10:45 A.M.

2          THE COURTROOM DEPUTY:  Calling Civil Case 21-00073-

3  JDP, California Sportfishing Protection Alliance versus Pacific

4  Bell Telephone Company.  Your Honor, we're on calendar today

5  for Defendant's Motion to Compel a Compliance with Subpoena.

6          THE COURT:  Thank you, Nic.  And good morning.  Let's

7  take just a moment to allow the parties to turn on their

8  screens and we'll transition to this final matter.

9          Okay.  Good morning.  So as an initial matter, I

10  understand we have Mr. Seth Jones here, who's associated with

11  Beyond the Blue, and that's the corporation that, I believe,

12  received the subpoena at issue here.

13          So Mr. Jones, I'm gonna start with you.  Just to make

14  sure I understand correctly.  Mr. Jones, you are not an

15  attorney, right?

16          MR. JONES:  I am not.  I'm not trained in the law at

17  all.  We are currently looking for lawyers.  I've had some

18  assistance from Alexander Papachristou with the New York City

19  Bar and the Vance Center, but we are looking for representation

20  in California and we haven't had any luck because of all the

21  conflicts of interest, which you can probably understand.  But

22  the lawyers we have talked to say we have good arguments not to

23  give documents currently, but we need to find --

24          THE COURT:  Mr. Jones, don't, don't tell us about what

25  you talked to those potential attorneys about.

1          MR. JONES:  Okay.  That's --

2          THE COURT:  You know, you would need to and I don't

3    want you to waive potential privilege, so.

4          Okay.  So thank you.  There was a question I did have

5    for you in a general level, is whether you were considering

6    retaining an attorney.

7          MR. JONES:  Yes.  We are looking for one and I would

8    actually like to ask you for assistance in the matter, if I

9    can, as well.

10         THE COURT:  Okay.

11         So let's start with appearances.  Let's take a pause

12   on this matter for, on that issue and let, let me get

13   appearances, if I could, on behalf of defendant.

14         MR. DHILLON:  Good morning, your Honor.

15         MS. KARIS:  Good morning, your Honor.  Oh, go ahead.

16         MR. DHILLON:  Sorry.

17         Good, good morning, your Honor.  This is Navtej

18   Dhillon from Paul Hastings on behalf of defendant.

19         THE COURT:  Good morning, Mr. Dhillon.

20         MS. KARIS:  And good morning, your Honor.  This is

21   Hariklia Karis from Kirkland & Ellis.

22         THE COURT:  And good morning, Ms. Karis.

23         And any further appearances?

24         MR. NOMELLINI:  Your Honor, Mark Nomellini on behalf

25   of the defend, of the defendant.

1          THE COURT:  Good morning, Mr. Nomellini.

2          MR. KELLEY:  Good morning, your Honor.  This is Jon

3    Kelley at Kirkland & Ellis on behalf of defendant.

4          THE COURT:  And good morning, Mr. Kelley.

5          Okay.  So, so turning back, Mr. Jones, to you here for

6    a moment.  The, the challenges that, you know, as, as you've

7    seen in some of the other matters, if you were paying attention

8    this morning, some parties do sometimes appear and represent

9    themselves.  We call that appearing *pro se*.  The challenges, or

10   a challenge, among several, is that you cannot appear *pro se* on

11   behalf of an organization, such as the corporation that you're

12   a part of.

13         So I can't, you know, you aren't appearing today in a

14   legal sense because you do not yet have an appearance.  You

15   asked can the Court help you with obtaining counsel.  From time

16   to time in somewhat unusual cases, the Court will play a hand

17   in obtaining counsel.  I don't know that we're in a situation

18   in this case where that is necessary or, or something that I

19   think is, all things considered, appropriate at this moment.  I

20   would encourage you to keep working on obtaining counsel.  It

21   does sound, from some of the papers that I reviewed in

22   anticipation of today's hearing, that you've been working on

23   trying to get counsel for some time.

24         Could I ask you do you have an, an idea of how long

25   have you been working on trying to find counsel?

| 1 | MR. JONES:  I mean, I feel like it's been months now. |
| 2 | We've talked to dozens of people almost daily. |
| 3 | THE COURT:  Okay. |
| 4 | MR. JONES:  Yeah.  Spent an immense amount of time |
| 5 | dealing with this third-party overreaching subpoena. |
| 6 | THE COURT:  Okay.  Well, I understand and of course, |
| 7 | you're, you are, you know, litigating or potentially |
| 8 | litigating.  I mean, first, you're, you're a third-party |
| 9 | subpoena recipient here.  You aren't part of this case. |
| 10 | MR. JONES:  Thankfully. |
| 11 | THE COURT:  But I, you know, and, and you, you |
| 12 | referenced conflicts and of course, it's a significant entity |
| 13 | in scale and in resources on the other side.  On the other |
| 14 | hand, you know, lawyers litigate against defendants every day. |
| 15 | So I, I'm, I'm confident there are a lot of lawyers |
| 16 | out there that, that would not be barred by a conflict of |
| 17 | interest in, in representing you in this matter.  On the other |
| 18 | hand, finding an attorney is difficult, especially when you are |
| 19 | not one. |
| 20 | So I, I understand that, but there, there may be some |
| 21 | pretty strict limits in terms of what I or the Court can do, |
| 22 | you know, apart from making such observations, to, to help you |
| 23 | in this matter. |
| 24 | And, and, and in today's -- and you know, turning now |
| 25 | to the subject of today's hearing, you know, we need to and |

1  should go ahead with today's hearing, notwithstanding the fact

2  that you are working on obtaining counsel.

3          So I'm not deaf to what you're saying, Mr. Jones.  I

4  understand you're working on, on obtaining counsel, but, you

5  know, we need to recognize that the fact of the matter is you

6  don't currently have counsel and, and we need to proceed and

7  keep the case moving.

8          So let's turn now to, to the discovery motion at issue

9  today, which is defendant's motion to compel compliance with

10  this subpoena issued to the third party, Beyond, Below the Blue

11  -- excuse me.  At this point, that motion is unopposed.

12  There's been no appearance on behalf of, of the entity.  And,

13  and so I am going to, to grant that motion to compel and I'll

14  do so on the record here in just a moment.

15          Before I do that, I wanna walk through certain details

16  relating to the subpoena and then I'll hear from the parties,

17  should there be any need to talk further about, about these

18  details.  And there've been extensive filings here from

19  defendants.  So I, I think I have quite a bit of information,

20  at least from that perspective.

21          But if there's anything further we should discuss,

22  I'm, I'm happy to do that.

23          So let's see.  Defend, defendant served Below the

24  Blue's registered agent with the subpoena on August 9th of this

25  year and the subpoena demands 18 categories of documents, 3

1  categories of tangible items.  The discovery sought was and,

2  and is relevant within the meaning of that term in our Rules

3  and Below the Blue has not responded in terms of any filing.

4          On, on September, turning to the following month, on

5  September 28, 2023, defendant mailed Below the Blue a copy of

6  the motion at issue this morning.  The FedEx receipt does show

7  receipt from an S. Jones for delivery.  Defendant also mailed a

8  copy of the motion to the registered agent for Below the Blue,

9  which I believe is Legal Zoom, and the proof of service

10 indicates the defendant also sent courtesy copies by e-mail to

11 Mr. Seth Jones and also to the registered agent.  That's -- and

12 we still do not have a response from Below the Blue.

13         So considering all that, I do expect here to grant the

14 motion.

15         Before I do that, does any appearing party wish to be

16 heard further on the matter?

17         I'll turn to counsel for defendant.  Anything further

18 we need to consider or address this morning?

19         MR. JONES:  Umm.

20         MS. KARIS:  No, your --

21         MR. JONES:  Can I --

22         THE COURT:  Oh, just, wait, wait just a second,

23 Mr. Jones.  Let me hear from, from defendant.

24         Go ahead, Ms. Karis.

25         MS. KARIS:  Your Honor, thank you.

1          We stand on our papers.  I think the Court has

2     accurately reflected the record.  And so we have nothing

3     further to add at this time.

4          THE COURT:  Okay.  Thank you.

5          Mr. Jones, it sounded like you wished to make a

6     comment.

7          MR. JONES:  Yes.  I, I know that Alexander

8     Papachristou has had e-mail and phone conversations with Jon

9     Kelley, at minimum, explaining numerous times that we are

10    looking for counsel and he's chosen to ignore that, ultimately.

11    So there have been correspondence.

12         Again, I'm not trained in any legal matters.  So I

13    don't understand these processes, but we are very diligently

14    trying to get representation.

15         THE COURT:  I understand your points, Mr. Jones.

16    Just, you know, for what it's worth, I'm, you know, highly

17    doubtful that I'm going to at any point stop the trajectory of

18    this case to provide more time for you to obtain counsel.  You

19    know, there is a lot going on in this case.  It's a significant

20    case.  We're already looking at dates that are pretty far out

21    in the future and I don't wanna push those back.

22         So I encourage you to obtain counsel, Mr. Jones, but

23    I, I -- and I hear your points and, and I understand you wish

24    there had been a different response from defendant in, in

25    response to your protestations or statements that you're trying

1    to get counsel, but I'm not here to tell you that, that

2    there's, you know, any, any misbehavior from what I'm hearing

3    on, on defendant's part in, in any way, you know.  We, we need

4    to keep the case moving.

5           So okay.  I grant the motion.

6           MS. KARIS:  Your Honor?

7           THE COURT:  Yeah, yeah.  Go ahead, Ms. Karis.

8           MS. KARIS:  I, I certainly don't wanna add to the

9    Court's record, but I do need to correct a misstatement.

10          Mr. Jones indicated that the defendants have not

11   responded and while we haven't submitted the full written

12   communication to the Court, we are happy to do so to reflect

13   that on every single occasion that Mr. Jones or

14   Mr. Papachristou has reached out to us we have, in fact,

15   responded.  The challenge is that every time since August we

16   continue to be told the same thing, which is that he's

17   continuing to try to look for counsel and in fact, as -- and

18   we've been told several times that he had secured counsel and

19   then we receive follow-up communication indicating that he no

20   longer had that secured counsel.

21          And so I don't wanna argue the point, but I also don't

22   want the impression left with the Court that we did not respond

23   to Mr. Jones or Mr. Papachristou, who reached out on his

24   behalf.

25          THE COURT:  Okay.  Thank you, Ms. Karis.  I -- I -- I

1   understand your point of view on this matter.

2           Okay.  And I don't need any further submission of, of

3   correspondence relaying, relating to this matter.  I'll stand

4   by my prior comments on it.

5           So I do grant the motion.  I'll do so for the, the

6   reasons I've just stated on the record and I'll grant Below the

7   Blue until -- I'll give a little bit more time than usual

8   considering the holidays -- I'll grant Below the Blue until

9   November 30th to respond to that.

10          Anything further I should address this time, at this

11  time?

12          On behalf of defendant?

13          MS. DHILLON:  No, your Honor.  Thank you.

14          THE COURT:  Okay.

15          Okay.  We do not have an appearance on behalf of

16  plaintiff.

17          I will ask Mr. -- Mr. -- Mr. Jones, is there anything

18  else you wish to comment on this morning?

19          MR. JONES:  No.  Again, I'm not trained in the law.

20  So I don't understand any of these conversations --

21          THE COURT:  Okay.

22          MR. JONES:  -- or what I need to do next.

23          THE COURT:  Okay.

24          Well, thank you all very much.  Nice to see you this

25  morning.  And have, have a good rest of the day.

1          MS. KARIS: Thank you, your Honor.

2          MR. DHILLON:  Thank you, your Honor.

3      (Proceedings concluded at 10:56 a.m.)

4

5

6

7                          CERTIFICATE

8          I, court approved transcriber, certify that the

9   foregoing is a correct transcript from the official electronic

10  sound recording of the proceedings in the above-entitled

11  matter.

12

13  /s/ *Janice Russell*                    November 9, 2023

14  Janice Russell, Transcriber                    Date

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT E

| From: | Matthew Maclear |
|---|---|
| To: | Dhillon, Navi; Meier, Peter C.; Grunbaum, Lucas; Carr, Chris; mnomellini@kirkland.com; hkaris@kirkland.com; robert.ellis@kirkland.com; jon.kelley@kirkland.com |
| Cc: | Erica Maharg; Andrew Packard; LFT-wncarlon; William Verick; Brian Acree; Kirk Boyd |
| Subject: | [EXT] CSPA v. Pacific Bell Telephone Company (Case No. 21-cv-00073-JDP) |
| Date: | Monday, October 23, 2023 4:38:10 PM |

---

**--- External Email ---**

Dear Counsel,

Greetings, I am writing to introduce myself as new counsel for Plaintiffs in California Sportfishing Protection Alliance v Pacific Bell Telephone Co., E.D. Cal., Case No. 2:21-cv-00073-JDP.  ATA Law Group has recently been retained by CSPA to take lead with the litigation for Plaintiff.  Erica Maharg and I will be your primary points of contact going forward.

I would also like to set up a time to meet and confer to discuss a stipulation to extend the scheduling order that has been entered by the Court.  Since ATA is new to the matter, we must get up to speed and need an extension of the schedule to do so. Moreover, the current schedule that has been entered conflicts with other pre-existing litigation deadlines. Thus, we believe there is good cause for such an extension, and hopefully, the parties can agree to avoid CSPA needing to file a motion. CSPA proposes the following schedule (I have put current deadlines for your reference):

| Deadline | Scheduling Order Dkt. No. 70 | Proposed Extension |
|---|---|---|
| Mtn to Amend Pleadings | 10/26/2023 | 1/15/2024 |
| Notice of subject matter for each expert report | 3/22/2024 | 7/24/2024 |
| Expert disclosures | 4/12/2024 | 8/10/2024 |
| Rebuttal disclosures | 5/10/2024 | 9/20/2024 |
| Last day to hear mtns to compel | 6/20/2024 | 11/8/2024 |
| Discovery cut-off | 7/12/2024 | 12/31/2024 |
| Deadline - file MSJ | 8/8/2024 | 1/31/2025 |
| Last day - hearing dispositive mtns | 9/12/2024 | 2/28/2025 |

Please let me know when you are available to discuss this extension request.

All the best,
Matt


Matthew C. Maclear

Aqua Terra Aeris (ATA) Law Group

4030 Martin Luther King Jr. Way

Oakland, CA 94609

415.568.5200

www.atalawgroup.com



**CONFIDENTIALITY NOTICE:** This email and any attachments are privileged, including but not limited to attorney-client or attorney work-product privileged. The information is intended only for the use of the intended individual or entity, whether named properly above or not. If you are not the intended recipient, you are hereby notified that any review, disclosure, copying, distribution, or the taking of any action in reliance on the contents of this emailed information is strictly prohibited. If you have received this email in error, please immediately notify the sender by telephone or email to arrange for destruction of information and the return of the documents.

**IRS Circular 230 disclosure:** To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachment) is not intended or written by us to be used, and cannot be used, (i) by any taxpayer for the purpose of avoiding tax penalties under the Internal Revenue Code or (ii) for promoting, marketing or recommending to another party any transaction or matter addressed herein.

# EXHIBIT  F



MATTHEW C. MACLEAR
PARTNER

4030 MARTIN LUTHER KING JR. WAY
OAKLAND, CA 94609

T: 415-568-5200
mcm@atalawgroup.com

November 2, 2023

**Via Email**

Navi Dhillon
navidhillon@paulhastings.com
Peter C. Meier
petermeier@paulhastings.com
Christopher J. Carr
chriscarr@paulhastings.com
Lucas Grunbaum
lucasgrunbaum@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, CA 94111

Hariklia Karis
hkaris@kirkland.com
Robert B. Ellis
rellis@kirkland.com
Mark J. Nomellini
mnomellini@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654

**RE: Plaintiff's Request to Extend Schedule**

Dear Counsel,

To follow up from the meet and confer on Tuesday, 10/30, we are writing to provide you additional information regarding the good cause for Plaintiff's request for Defendant to stipulate to an extended schedule. You have stated that you will only consider agreeing to a 2-4 week extension for certain dates. However, in order to represent our client's interests and to ensure that there is sufficient time to gather the necessary facts to prove our claims, a more comprehensive extension is necessary, and we believe there is good cause for one. Moreover, pushing back one date will, as I believe you said on our call, have cascading effects that require other dates to move as well. So it is not as simple as moving one or two dates to avoid conflicts. That being said, we have offered some modifications to our originally proposed schedule.

Considering Defendant's stated position at the meet and confer, we do not anticipate that this will change Defendant's position. However, please let us know if Defendant is willing to agree to the extension, and we will draft a stipulation. We are also willing to consider a counter-proposal for the schedule, including an agreement to only specific dates, if Defendant cares to offer one. If we do not hear back from you by COB Tuesday, November 7, we will proceed with seeking leave from the Court.

| Deadline | Scheduling Order Dkt. No. 70 | Proposed Extension |
|---|---|---|
| Mtn to Amend Pleadings | 10/26/2023 | 1/15/2024 |

As new counsel, we are evaluating the case from the beginning to ensure the complaint has been properly alleged and whether we need to add potential other claims. Moving this deadline will also save judicial resources in the event that the complaint would need to be amended at a later date by avoiding the need for a motion. Moreover, the liberal standard for amending the pleadings under the FRCP would weigh in favor of granting leave at a later date.

| Notice of subject matter for each expert report | 3/22/2024 | 7/24/2024 |
|---|---|---|

This deadline should align with the expert disclosures and the same good cause supports moving this out as explained below in our response to the expert disclosure deadline.

However, Plaintiff is willing to offer to move this deadline to early to mid-June as a compromise position.

| Expert disclosures | 4/12/2024 | 8/10/2024 |
|---|---|---|
| Rebuttal disclosures | 5/10/2024 | 9/20/2024 |

The current expert disclosure deadlines overlap expert disclosures in two other ATA cases with the same lead counsel, which have been in active litigation for far longer than this matter. It will put an unrealistic burden on our firm to conduct expert disclosures in three cases at the same time. Further, during the same period – mid-April to May – our firm also has dispositive motion filing deadlines in two additional cases.

Further and more importantly, the current expert disclosure deadlines do not allow sufficient time for gathering data and sharing data between the parties. Defendant used the time while the CD was in place to commission studies that presumably they intend to use in their defense. (Aldrich 2021; Ramboll sampling June 2023). Plaintiffs had no reason to believe that gathering such information would be necessary, considering the CD. Thus, Plaintiffs are starting from scratch, and after discussing with potential experts and samplers, the timeline originally allotted is not sufficient.

Moreover, as new counsel, we believe more time is needed to exchange most, if not all facts, prior to expert disclosures. Defendants themselves have sought additional time to respond to the first round of discovery; moreover, Defendants are attempting to enforce third party subpoenas, which will likely include relevant data for experts to consider. All of this will take time and is necessary to be in place before expert disclosures occur.

In an effort to compromise, we are willing to agree to an exchange of expert disclosures July 12 and rebuttal disclosures to August 16.



| Deadline | Scheduling Order Dkt. No. 70 | Proposed Extension |
|---|---|---|
| Last day to hear mtns to compel | 6/20/2024 | 11/8/2024 |
| Discovery cut-off | 7/12/2024 | 12/31/2024 |

The date to hear motions to compel and final discovery deadlines will need to align with expert disclosures. Moreover, the current deadline for motions to compel conflicts with discovery cut-off deadlines in another case and two dispositive motion briefings in two other cases that require counsel's time.

Based on the revised proposed deadlines for expert and rebuttal disclosures, a deadline in early October (October 8) for a hearing on motion to compel and a month later (Nov. 8) for discovery cut-off would be appropriate.

| Deadline - file MSJ (calculated per local rules) | 8/8/2024 | 1/31/2025 |
|---|---|---|
| Last day - hearing dispositive mtns | 9/12/2024 | 2/28/2025 |

As mentioned on the meet and confer, counsel has another trial schedule for August 6-16, 2024, which is a direct conflict with the when a dispositive motion would need to be filed in this matter under the current schedule. Moreover, moving the proposed deadlines up earlier to November or December creates a further conflict, as ATA counsel assigned to this case have another trial scheduled for December 3, 2024, as well as conflicts with holidays, which likely apply to both parties. Thus, we could choose to move these deadlines up a couple weeks, if Defendant counsel would otherwise agree to the schedule and would prefer those deadlines.

Assuming the court is prepared to hold a trial weeks after dispositive motion hearing, this would put a trial in Spring 2025.

       We believe this provides the information requested by you on our meet and confer and more than sufficient good cause to extend the schedule. We look forward to hearing back from you by Tuesday as indicated above.

Respectfully,

Matthew C. Maclear
**AQUA TERRA AERIS LAW GROUP**

# EXHIBIT  G

# PAUL
## HASTINGS

1(415) 856-7080
navidhillon@paulhastings.com

November 22, 2023

**VIA E-MAIL**

Matthew Maclear, Esq. and Erica Maharg, Esq.
ATA Law Group
4030 Martin Luther King Jr. Way
Oakland, CA 94609

Re:     *California Sportfishing Protection Alliance v. Pacific Bell Telephone Company*, Case No. 2:21-cv-00073-JDP; Plaintiff's Request to Modify Pretrial Scheduling Order

Dear Counsel:

We write in response to Plaintiff's request to modify the previously agreed upon case schedule, which the Court slightly modified when entering a Scheduling Order on October 10, 2023.

As discussed in our meet-and-confer call on October 30, 2023, and as we confirmed in later correspondence, Plaintiff is requesting to delay all deadlines in the Scheduling Order based on the fact that it has added the ATA Law Group to its attorney team. Plaintiff continues to be represented by the experienced team of lawyers (Andrew Packard, William Carlon, Bill Verick, and Kirk Boyd and their respective firms) who have represented Plaintiff since it filed this action in 2021. We have told you that we are willing to support reasonable adjustments to the Court's schedule (e.g., a 2-to-4 week modification of particular dates) in order to accommodate Plaintiff and on a showing of good cause. Your letter dated November 2, 2023, however, rejects this offer and continues to argue that the Plaintiff should be entitled to push out the key deadlines adopted by the Court by nearly six months.

As discussed below, Plaintiff has not made the showing required for such a significant change to the Court's schedule.

## Background

Based on our meet-and-confer, we understand that your law firm was aware of the extensive input that the parties provided to the Court prior to its entry of the Scheduling Order. Below is a brief recap of that history.

The Court conducted a Status Conference on July 19, 2023, at which it directed the parties to meet and confer regarding case management and to return for a conference with the Court on August 24, 2023.

After the parties conferred regarding the trial and pre-trial schedule, Plaintiff submitted a Status Conference Statement on August 17, 2023, which correctly reported to the Court that "the parties have agreed to a relatively swift trial date." Plaintiff further stated:

> [A]s for a trial date, the parties are in agreement as to a trial schedule. The trial schedule was discussed during the main conference [between the parties] and then distributed afterwards.... The parties have agreed to a trial date of September 16, 2024, and worked out a timeline leading up that that trial day. [Plaintiff's Status Conference Statement, at 2].

PAUL
HASTINGS

Matthew Maclear, Esq. and Erica Maharg, Esq.
November 22, 2023
Page 2

Plaintiff's Status Conference Statement attached a proposed timeline that closely tracked the schedule proposed by Defendant, which included a proposed close of fact discovery on February 26, 2024, and a close of expert discovery on May 17, 2024.

At the Status Conference on August 24, 2023, the Court suggested that the parties further meet and confer regarding their proposed pre-trial schedule, with an eye toward having the case ready for trial by the fall of 2024.  The parties again met and conferred on August 24 and 25.  On August 25, Plaintiff filed a further statement to the Court regarding the schedule, explaining that it had decided it needed more time to prepare its case for trial.  Plaintiff now asked the Court to schedule the close of all discovery for August 15, 2024, noting that Defendant had not agreed to this date.

The Court issued the Scheduling Order on October 10, 2023.  Having considered Plaintiff's request for more time, the Court stated:  "All discovery shall be completed by July 12, 2024."  This date was nearly two months later than the date the parties had jointly proposed in their August 17, 2023 statements to the Court. The Court set this and the other pre-trial deadlines after full consideration of both parties' positions.

Notably, Plaintiff represented that it had retained new counsel weeks *before* the Court entered the Scheduling Order.

**<u>Plaintiff Has Not Shown Good Cause to Modify the Court's Scheduling Order</u>**

Less than two weeks after the Court issued its Scheduling Order, we received your request that the dates set by the Court be moved back by nearly six additional months.  We requested on our call that you provide us with any dates when you will not be available for trial, and any scheduling conflicts you have (e.g., trial dates in other matters) for the period September through December 2024.  As we said on the call we will consider a reasonable adjustment to the Court's schedule, but we would need to know there is good cause for such an adjustment.  We have consistently said that we would be open to moving some dates by 2-to-4 weeks as a professional courtesy to avoid actual conflicts.

In your letter, you do not provide us with the information we have requested regarding specific scheduling conflicts.  Although you refer to two trial dates on your firm's current calendar, one on August 6, 2024 and another on December 3, 2024, it is common that counsel will have trial dates set during the pre-trial phase of other litigation.  Although motion briefing may be required during August 2024, you do not explain how these two trial dates would prevent Plaintiff's large legal team from meeting any deadlines, let alone justify a delay of nearly six months in the completion of discovery and motion practice.  Even assuming there might be a conflict for Plaintiff with the briefing schedule in August, you do not explain why a continuance of a few weeks (which we have offered) would not resolve such a potential conflict.  Further, there are no deadlines on the Court's schedule that conflict with your firm's December 2024 trial date, so there would be no need to adjust the current schedule in light of this other potential trial.  Despite these facts, your letter continues to insist that key Court-ordered dates be pushed back by approximately six months.

Modification of a scheduling order requires a showing of good cause.  *See, e.g., Hollis v. Bal*, 2022 WL 1478927, *2 (E.D. Cal. Apr. 27, 2022) (denying motion to modify scheduling order due to failure to show good cause).  Plaintiff has not made such a showing, and has not given Defendant any basis to represent to the Court that there is good cause.  Thus, we cannot agree to Plaintiff's proposal.

In this connection, we observe that the Court at the last discovery hearing, on November 9, 2023, recognized that this is a significant case and when granting our motion indicated the Court wished to



Matthew Maclear, Esq. and Erica Maharg, Esq.
November 22, 2023
Page 3

avoid further delays.  The Court stated:  "It's a significant case. We're already looking at dates that are pretty far out in the future and I don't wanna push those back."  (11/9/23 Tr. at 9).

If there is any additional information you believe would show good cause for modifying the Scheduling Order, we are available to further confer with you.  As noted, we remain willing to discuss specific and reasonable adjustments to specific dates that present specific conflicts.

Sincerely,

Navi S. Dhillon
of PAUL HASTINGS LLP


cc:      All counsel

# EXHIBIT  H

**From:**    tneltner@edf.org [tneltner@edf.org]
**Sent:**    6/7/2022 6:33:01 PM
**To:**    Seth Jones [seth@consultmts.com]
**CC:**    Lindsay McCormick [lmccormick@edf.org]; Monique Rydel-Fortner [monique@consultmts.com]
**Subject:**    Re: [EXTERNAL] Re: Lab sampling bottles

Most excellent!

Sent from my iPhone


On Jun 7, 2022, at 2:24 PM, Seth Jones <seth@consultmts.com> wrote:

 We shipped them off and got back to tahoe late last night. We will send data maps. Photos and update about the trip soon. Mo is working on downloading tablet data and compiling today.  We didn't get to all the areas WSJ had laid out. But Susan was very happy with what was found.

Sent from my iPhone


On Jun 5, 2022, at 3:23 PM, Seth Jones <seth@consultmts.com> wrote:

 Perfect

Sent from my iPhone


On Jun 5, 2022, at 4:26 PM, Tom Neltner <tneltner@edf.org> wrote:

 Nice! Unless Susan wants differently, I suggest sending one set to our lab.

Sent from my iPhone


On Jun 5, 2022, at 5:03 PM, Seth Jones <seth@consultmts.com> wrote:

 Greats finds! Still at it. We plan on shipping samples tomorrow am. We collected duplicates of the water samples. Do you want us to send a set to your lab and a set to RTI? Or all to RTI?

EDF_0000000069



EDF_0000000070

Sent from my iPhone

On Jun 3, 2022, at 9:33 PM, Tom Neltner <tneltner@edf.org> wrote:

 Wow. You have been busy!  Nice job!

Sent from my iPhone

On Jun 3, 2022, at 10:09 PM, Seth Jones <seth@consultmts.com> wrote:

Yes and yes!

A couple highlights from today. Pile of twisted up leaded cables in the water you can see bare lead right at the waterline and bare down into the water.

Several old cable crossing signs

That upright hotdog thing is a cable splice. Entirely lead. Just exposed on the sidewalk. One of the signs in the middle below the green sign is about the watershed…

Lots of the cables were buried in mud. But we still got gems!!!



EDF_0000000071



Sent from my iPhone


On Jun 3, 2022, at 5:52 AM, Tom Neltner <tneltner@edf.org> wrote:

Wonderful.

The mass of twisted metal is the steel cable that is usually wrapped around the lead pipe, right?  Is the lead pipe above the ground?

Tom

Tom Neltner
Senior Director, Safer Chemicals

Environmental Defense Fund
1875 Connecticut Ave., NW
Washington, DC 20009
T  202-572-3263
C 317-442-3973
tneltner@edf.org<mailto:tneltner@edf.org>

From: Seth Jones <seth@consultmts.com>
Sent: Friday, June 3, 2022 6:49 AM
To: Lindsay McCormick <lmccormick@edf.org>
Cc: Tom Neltner <tneltner@edf.org>; Monique Rydel-Fortner <monique@consultmts.com>
Subject: Re: [EXTERNAL] Re: Lab sampling bottles

Hey! We are in New Iberia,LA and Susan is meeting us first thing this am. We got supplies and a boat ready yesterday and did get on the water here around 7:30 last night to test the boat. All good. We went to the site closest to launch ramp which near an old bridge. On land there was a cut end of an old leaded phone cable! Bare lead exposed. [cid:image001.jpg@01D87716.6EC9E2A0] [cid:image002.jpg@01D87716.6EC9E2A0] [cid:image003.jpg@01D87716.6EC9E2A0] [cid:image004.jpg@01D87716.6EC9E2A0]

Confidential

The close up pic shows lead clearly! People fishing a few hundred feet down from the bridge. They had a catfish they had caught and were saving to eat. Said they would be their all night catching fish. A locals spot… Graffiti next to site. Park like area.  We will actually collect data this am there. We were just making sure boat was good etc.

We did have a cottonmouth snake eyeballing us close there.   River flows are a little higher then normal so the banks not as exposed as much as we were hoping. We will be able to sample I'm sure but diving here doesn't look great.

Great first sign that we saw one right away at the first wsj site we looked at!

For bottles. We will be very fluid with where we go and do not have hotels booked yet because these are spread out so far and we don't know how long things will take and what Susan will want to spend time on. So I think we just get bottles sent to The Tahoe address and we use the 35 or so we have here for these sites. If you feel we should collect more I can pick a hotel back towards New Orleans area that we could get an overnight sat delivery to. Then we could use them Sunday. We will sample thru Sunday. But it's hard to know where at this point. Sorry that we are in flux on this one.

Exciting start and we will update you with
What we are seeing!


Sent from my iPhone


On Jun 2, 2022, at 11:25 AM, Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>> wrote:

Hi Seth and Monique,

Do you have the address for us to send the bottles to?

Best,
Lindsay

From: Lindsay McCormick
Sent: Wednesday, June 1, 2022 2:15 PM
To: Tom Neltner <tneltner@edf.org<mailto:tneltner@edf.org>>; 'Seth Jones' <seth@consultmts.com<mailto:seth@consultmts.com>>
Cc: 'Monique Rydel-Fortner' <monique@consultmts.com<mailto:monique@consultmts.com>>
Subject: RE: [EXTERNAL] Re: Lab sampling bottles

Hi all,

I just touched base with Kathy with EHS.  Here's the update:

 *   The samples will need to be run as wastewater samples. This doesn't impact cost, but, as Seth also learned, it means that we can send the samples back to Richmond at EHS.  The chain of custody form that Monique sent around is the correct form.
 *   They are ready to send the additional 50 bottles to LA as soon as we get a shipping address. Depending on when you all plan to sample, we can overnight the samples if needed.

EDF_0000000073

Safe travels!
Lindsay

From: Lindsay McCormick
Sent: Wednesday, June 1, 2022 11:07 AM
To: Tom Neltner <tneltner@edf.org<mailto:tneltner@edf.org>>; Seth Jones
<seth@consultmts.com<mailto:seth@consultmts.com>>
Cc: Monique Rydel-Fortner <monique@consultmts.com<mailto:monique@consultmts.com>>
Subject: RE: [EXTERNAL] Re: Lab sampling bottles

I actually just heard back from the lab after Tom sent his email.  I'm scheduling a call shortly to get the answer
on wastewater/drinking water and will loop back on that. But even if we get the shipping address today, I
imagine that it will take a few days for the bottles to arrive in LA.  What days do you plan on sampling?

From: Tom Neltner <tneltner@edf.org<mailto:tneltner@edf.org>>
Sent: Wednesday, June 1, 2022 10:47 AM
To: Seth Jones <seth@consultmts.com<mailto:seth@consultmts.com>>
Cc: Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>>; Monique Rydel-Fortner
<monique@consultmts.com<mailto:monique@consultmts.com>>
Subject: RE: [EXTERNAL] Re: Lab sampling bottles

No word from lab so you may not get more bottles.

I suggest talking to the lab about running as drinking water or wastewater.  If they are lake samples, I prefer
labeling them that way. We just need an LOQ of 1 ppb or less.

Good luck on the trip.

Tom

Tom Neltner
Senior Director, Safer Chemicals

Environmental Defense Fund
1875 Connecticut Ave., NW
Washington, DC 20009
T  202-572-3263
C 317-442-3973
tneltner@edf.org<mailto:tneltner@edf.org>

From: Seth Jones <seth@consultmts.com<mailto:seth@consultmts.com>>
Sent: Wednesday, June 1, 2022 9:57 AM
To: Tom Neltner <tneltner@edf.org<mailto:tneltner@edf.org>>
Cc: Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>>; Monique Rydel-Fortner
<monique@consultmts.com<mailto:monique@consultmts.com>>
Subject: Re: [EXTERNAL] Re: Lab sampling bottles

Cool thanks for the update! We are feeling good and packing up. Plan to fly today and stay through the
weekend. For bottles we will send a hotel address later today.

For the tahoe samples… did you get clarification from the lab on where they will go? What COC to use? We

EDF_0000000074

can ship them out this am.  I think the big question was will they run as drinking water. Or did we decide to send as if they are and not say they are lake samples???  We have one sediment sample as well from Tahoe we collected that same day.

Susan has been texting this am and wants to have a call with us in a couple hours. She said she was going to send their Tom and a photographer… all fine with us. Easier on our own… but I know they are very frantic to get material in their hands so it's all good.

Let us know as things come up on your end or anything you want us to change/add.   Do either of you want to be on the text thread?  Probably not I assume. But if so I can add!

Thank you again for the opportunity. We know change takes a long time… but we are here for the long haul!
Sent from my iPhone

On May 31, 2022, at 5:17 PM, Tom Neltner <tneltner@edf.org<mailto:tneltner@edf.org>> wrote:

Susan called today and we talked through it.  She will work through options with RTI.  In the meantime, go ahead and take the extra samples.  For drinking water, the sample has to be analyzed within 14 days.

She also mentioned sending a reporter (likely her) and a camera person to watch the process.  I told her that was great as long as it was OK with you two.  I am OK delaying the NOLA trip to next week.

Tom

Tom Neltner
Senior Director, Safer Chemicals

Environmental Defense Fund
1875 Connecticut Ave., NW
Washington, DC 20009
T  202-572-3263
C 317-442-3973
tneltner@edf.org<mailto:tneltner@edf.org>

From: Tom Neltner
Sent: Saturday, May 28, 2022 9:12 AM
To: Seth Jones <seth@consultmts.com<mailto:seth@consultmts.com>>
Cc: Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>>; Monique Rydel-Fortner <monique@consultmts.com<mailto:monique@consultmts.com>>
Subject: Re: [EXTERNAL] Re: Lab sampling bottles

A bit awkward. Thanks for checking.

I suspect they are concerned about my skepticism about finding lead in water. It is central to their hypothesis. So they want a backup plan.

I respect and appreciate that. Heck, every good project has surprises and ones involving lead or water usually have more. That is why we do this.

So my recommendation is to take the samples and use your judgment.

The problem is the back door approach. This is your call, but you may want to let her know that you checked

EDF_0000000075

with me and that I recommended you give it a go. That would be a gentle way of suggesting she keep all in the loop - or at least you will. :)

Note that I have not yet responded to her Thursday note about RTI. I have had mixed experiences with them and some very chemical industry-biased work. But that may have been an exception. I know there are some excellent people there. So just a word of caution. I will do some more reviewing.

Tom

Sent from my iPhone

On May 27, 2022, at 9:36 PM, Seth Jones <seth@consultmts.com<mailto:seth@consultmts.com>> wrote:
 Shoot! That's a long time… glad you are back to normal!

Shalini called yesterday after a call with RTI and wants us to collect extra water samples for them to run while we are at sites. I told her we are happy to collect extra water/sediment at a site we are already doing so for you as it wouldn't take much extra time… BUT that she would need to clear it with you. I didn't understand what/why she wanted to loop in RTI. Maybe they will run them for free. But if so I assume they would want to do something with that data…. I'm just not sure.

Have you talked with her?  I told her to reach out to you and let us know if we should change our current approach at all.  If it's helpful for the big picture great! But sometimes limiting the cooks in the kitchen can be helpful as well.

I will let you know if I hear from wsj either way.


Sent from my iPhone

On May 27, 2022, at 6:26 PM, Tom Neltner <tneltner@edf.org<mailto:tneltner@edf.org>> wrote:
 That sounds like a smart idea.  Please take care of yourself.  I am just now getting back to normal after seven weeks of long Covid.
Sent from my iPhone

On May 27, 2022, at 9:18 PM, Seth Jones <seth@consultmts.com<mailto:seth@consultmts.com>> wrote:
 Hi Lindsay,

We will try to determine our schedule tomorrow… we both are testing negative but have bad colds. Mine feels like it turned the corner today for the better. Just head fog for sure! We might look at delaying the flights for a day or two.
Sent from my iPhone

On May 27, 2022, at 10:23 AM, Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>> wrote:

HI Seth,

I wanted to let you know that I sent an email to Kathy at EHS yesterday afternoon, but I haven't heard back yet.  Will let you know as soon as I do.  In the meantime, please do send me the hotel address info in Louisiana whenever you have it.  How long will you all be there sampling? I've inquired with Kathy about how long it will take for the bottles to arrive once sent.

Confidential

Best,
Lindsay

From: Seth Jones <seth@consultmts.com<mailto:seth@consultmts.com>>
Sent: Thursday, May 26, 2022 10:44 AM
To: Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>>
Cc: Tom Neltner <tneltner@edf.org<mailto:tneltner@edf.org>>
Subject: Re: [EXTERNAL] Re: Lab sampling bottles

I will try to shoot for the 3:30 time.  I can check in in a few hours to see if that will work. Thank you.
Sent from my iPhone

On May 26, 2022, at 7:25 AM, Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>>
wrote:

Hi Seth,

Here's Tom and my current availability today and tomorrow:


  *  Today, after 3:30 pm ET (other than 5-6:30 pm when I'm busy, I could go late)
  *  Friday, 9-10:30 am, 12-2 pm ET

Let us know what works for you.

Lindsay

From: Tom Neltner <tneltner@edf.org<mailto:tneltner@edf.org>>
Sent: Thursday, May 26, 2022 8:02 AM
To: Seth Jones <seth@consultmts.com<mailto:seth@consultmts.com>>; Lindsay McCormick
<lmccormick@edf.org<mailto:lmccormick@edf.org>>
Subject: RE: [EXTERNAL] Re: Lab sampling bottles

Would earlier in the morning – before you go to the site – work?

Tom Neltner
Senior Director, Safer Chemicals

Environmental Defense Fund
1875 Connecticut Ave., NW
Washington, DC 20009
T  202-572-3263
C 317-442-3973
tneltner@edf.org<mailto:tneltner@edf.org>

From: Seth Jones <seth@consultmts.com<mailto:seth@consultmts.com>>
Sent: Wednesday, May 25, 2022 11:10 PM
To: Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>>
Cc: Tom Neltner <tneltner@edf.org<mailto:tneltner@edf.org>>
Subject: Re: [EXTERNAL] Re: Lab sampling bottles

Confidential

Sorry for the schedule hassle. Tomorrow the field work should go smoother giving me a chance to drive to cell service when you both have time.  Let me know a time that works.

Sent from my iPhone

On May 25, 2022, at 8:35 AM, Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>> wrote:

Seth, would 5 pm eastern work for you?

From: Tom Neltner <tneltner@edf.org<mailto:tneltner@edf.org>>
Sent: Wednesday, May 25, 2022 11:18 AM
To: Seth Jones <seth@consultmts.com<mailto:seth@consultmts.com>>; Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>>
Subject: RE: [EXTERNAL] Re: Lab sampling bottles

I can do anything after five before ten if I have sufficient notice.

Tom Neltner
Senior Director, Safer Chemicals

Environmental Defense Fund
1875 Connecticut Ave., NW
Washington, DC 20009
T  202-572-3263
C 317-442-3973
tneltner@edf.org<mailto:tneltner@edf.org>

From: Seth Jones <seth@consultmts.com<mailto:seth@consultmts.com>>
Sent: Wednesday, May 25, 2022 11:17 AM
To: Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>>
Cc: Tom Neltner <tneltner@edf.org<mailto:tneltner@edf.org>>
Subject: Re: [EXTERNAL] Re: Lab sampling bottles

Sorry cell service here is terrible… can we do the call later in the day?
Sent from my iPhone

On May 25, 2022, at 7:43 AM, Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>> wrote:

Hi Seth-

I sent out a calendar invite with video info this morning, but in case you have trouble accessing it here's the call in:

+1 347-690-2327,,141005418#<tel:+13476902327,,141005418#>   United States, New York City
Phone Conference ID: 141 005 418#

Best,
Lindsay

From: Seth Jones <seth@consultmts.com<mailto:seth@consultmts.com>>

Confidential

Sent: Tuesday, May 24, 2022 7:15 PM
To: Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>>
Cc: Tom Neltner <tneltner@edf.org<mailto:tneltner@edf.org>>
Subject: Re: [EXTERNAL] Re: Lab sampling bottles

Friday is the best for me but I think it's important to talk as soon as possible. I can plan to make any time tomorrow work. I will be in the field at the Mexican boarder but can always hike out of the canyon as needed.
Sent from my iPhone

On May 24, 2022, at 2:53 PM, Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>> wrote:
 Sorry calendars are crazy; I'm now busy 12-12:30 tomorrow but could do 12:30-1 or the Thurs/Fri times
Sent from my iPhone

On May 24, 2022, at 3:49 PM, Tom Neltner <tneltner@edf.org<mailto:tneltner@edf.org>> wrote:

I am just now seeing this note. Sorry about that.

Would 12-1 pm ET tomorrow work for you instead? If not, Thurs and Fri times I sent along are still open for us

Tom Neltner
Senior Director, Safer Chemicals

Environmental Defense Fund
1875 Connecticut Ave., NW
Washington, DC 20009
T  202-572-3263
C 317-442-3973
tneltner@edf.org<mailto:tneltner@edf.org>

From: Seth Jones <seth@consultmts.com<mailto:seth@consultmts.com>>
Sent: Tuesday, May 24, 2022 5:01 PM
To: Tom Neltner <tneltner@edf.org<mailto:tneltner@edf.org>>
Cc: Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>>
Subject: Re: [EXTERNAL] Re: Lab sampling bottles

We could do5:30 your time today if it's still good.
Sent from my iPhone

On May 24, 2022, at 11:13 AM, Tom Neltner <tneltner@edf.org<mailto:tneltner@edf.org>> wrote:

I can also go today after 5

Tom Neltner
Senior Director, Safer Chemicals

Environmental Defense Fund
1875 Connecticut Ave., NW
Washington, DC 20009
T  202-572-3263
C 317-442-3973
tneltner@edf.org<mailto:tneltner@edf.org>

From: Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>>
Sent: Tuesday, May 24, 2022 2:10 PM
To: Seth Jones <seth@consultmts.com<mailto:seth@consultmts.com>>
Cc: Tom Neltner <tneltner@edf.org<mailto:tneltner@edf.org>>
Subject: RE: [EXTERNAL] Re: Lab sampling bottles

HI Seth,

Unfortunately it looks like Tom now has a meeting tomorrow 4-5 pm ET.  Would 12-1 pm ET tomorrow work
for you instead? If not, Thurs and Fri times I sent along are still open for us.

Best,
Lindsay

From: Seth Jones <seth@consultmts.com<mailto:seth@consultmts.com>>
Sent: Tuesday, May 24, 2022 2:06 PM
To: Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>>
Cc: Tom Neltner <tneltner@edf.org<mailto:tneltner@edf.org>>
Subject: Re: [EXTERNAL] Re: Lab sampling bottles

Let's shoot for tomorrow!  I will be in the field right at the Mexican boarder. If I have phone issues I will let the
group know in the am so we can change the time as needed.

I called the lab and will forward an email they just sent me.

Thank you!
Sent from my iPhone

On May 23, 2022, at 2:01 PM, Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>>
wrote:

Dropping Terry and Monique for the sake of their inboxes.

Below is our availability later this week.  Do any of these times work for you? If not, we can look to the next
week.


  *  Wed, 4-5 pm ET
  *  Thurs, 4-5 pm ET
  *  Friday, before 1 pm ET

Best,
Lindsay

Confidential

From: Seth Jones <seth@consultmts.com<mailto:seth@consultmts.com>>
Sent: Monday, May 23, 2022 4:59 PM
To: Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>>
Cc: Tom Neltner <tneltner@edf.org<mailto:tneltner@edf.org>>; Monique Rydel-Fortner
<monique@belowtheblue.org<mailto:monique@belowtheblue.org>>; Terry Hyland
<thyland@edf.org<mailto:thyland@edf.org>>
Subject: Re: [EXTERNAL] Re: Lab sampling bottles

Yes that would be great!
Sent from my iPhone

On May 23, 2022, at 1:46 PM, Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>>
wrote:

Hi Seth,

When the bottles arrive in the mail, they should include chain of custody paperwork to fill out.  There are
procedures we usually adhere to when sampling from the tap, but most do not apply in this scenario.  Perhaps
the three of us (you, Tom, and me) could find a time to discuss the details of the plan and sampling protocol
later this week?

Best,
Lindsay

From: Seth Jones <seth@consultmts.com<mailto:seth@consultmts.com>>
Sent: Sunday, May 22, 2022 12:50 PM
To: Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>>
Cc: Tom Neltner <tneltner@edf.org<mailto:tneltner@edf.org>>; Monique Rydel-Fortner
<monique@belowtheblue.org<mailto:monique@belowtheblue.org>>; Terry Hyland
<thyland@edf.org<mailto:thyland@edf.org>>
Subject: Re: [EXTERNAL] Re: Lab sampling bottles

Thank you for these!

Are there special handling protocols you all follow?

We plan on collecting samples on the Tahoe cable shortly and getting them shipped out.  If you like the
protocol.

We also are trying to get all of our ducks in a row to sample Louisiana just after the holiday.

We didn't discuss it previously. But should we grab a jar of sediment from under the cable where these come to
shore or where we are buried splice boxes on shore?  We could fill a glass jar or ziplock very easily if you think
the data is helpful at all.

See notes below on in water sampling protocol -

We plan to sample via diver with a clean plastic syringe. We will  start with new ones and triple rinse them with

EDF_0000000081

DI water from a chemistry lab.  The diver will take syringes down in a ziplock bag to keep them clean. Once in the planned sampling location 3 100mL syringes of water will slowly be collected at the sampling point.

On an exposed cable location the syringes will be held 1cm off of the cable and slowly filled. At open water / control site mid water column samples will be collected.

Divers will put syringes back into the ziplock bag underwater and bring up to topside staff. This staff will be wearing nitrile gloves. Syringes will be carefully extracted into the lab provided 250 mL plastic bottles. These bottles will be kept in a cooler on ice during the sampling.

Once the team is back to shore and gear and samples organized. A COC will be filled out and samples will be packaged and sent to the lab for analysis.

Sampling locations will be planned out ahead of time and all actual locations will be taken with a dGPS and note made for anything moved or additional samples collected.

Thanks and talk soon!

Seth
Sent from my iPhone

On May 10, 2022, at 7:40 AM, Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>> wrote:

Hi Seth,

Absolutely, I'll put the order in this morning.

After touching base with Tom and EHS on what they offer, we'll plan on ordering 50 250 mL bottles and sample for both lead and arsenic in CA.  Based on the results we see, we may want to then move to just lead sampling in the other states.

Best,
Lindsay

From: Seth Jones <seth@consultmts.com<mailto:seth@consultmts.com>>
Sent: Sunday, May 8, 2022 8:46 AM
To: Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>>
Cc: Tom Neltner <tneltner@edf.org<mailto:tneltner@edf.org>>; Monique Rydel-Fortner <monique@belowtheblue.org<mailto:monique@belowtheblue.org>>; Terry Hyland <thyland@edf.org<mailto:thyland@edf.org>>
Subject: [EXTERNAL] Re: Lab sampling bottles

Hi All,

EDF_0000000082

Thank you for the support! For the first set could you have 50 bottles sent to our address in Tahoe?

Marine Taxonomic Services
C/o Seth Jones
1155 Golden Bear Trail
South Lake Tahoe, CA 96150
858-232-1958


We will get a draft sampling plan over shoot for review.

Thank you,

Seth


Sent from my iPhone




On May 3, 2022, at 6:39 AM, Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>> wrote:

Hi Seth and Monique,

I will reach out to EHS labs now to give them a heads up on the project.  Once you have a clear idea of how many bottles, which elements, and locations you'd like them shipped to, let me know and I'll get that info over to EHS.  Also happy to chat if that would be helpful.

Best,
Lindsay

From: Tom Neltner <tneltner@edf.org<mailto:tneltner@edf.org>>
Sent: Tuesday, May 3, 2022 8:49 AM
To: Seth Jones <seth@consultmts.com<mailto:seth@consultmts.com>>; Monique Rydel-Fortner <monique@belowtheblue.org<mailto:monique@belowtheblue.org>>
Cc: Terry Hyland <thyland@edf.org<mailto:thyland@edf.org>>; Lindsay McCormick <lmccormick@edf.org<mailto:lmccormick@edf.org>>
Subject: Lab sampling bottles

Seth and Monique,

Good call yesterday.  Terry handles our comms and can be helpful on strategy and messaging.  Lindsay is our manage and can be helpful on anything.

Let me know when you are ready for me to make connections with folks in New Orleans.  My key people are Adrianne Katner of LSU.  She knows drinking water well.  The other is Howard Mielke of Tulane.  He is retired but knows lead well.  I need to brief them first.   I am also coordinating with our team that works in the region.

Confidential

Lindsay can help you coordinate with EHS, our lab that gives discounted samples for lead, arsenic and cadmium.  I would suggest starting with fifty 500 mL bottles to support your piloting the approach in California area.  I also think you should test for all three elements in California and Louisiana but probably drop cadmium in the others. They will also drop ship supplies to specific locations if you need.  Your call.

EHS will bill us for the bottles and the analysis.  I think the analysis is $10 or $15 for lead and $5 more for each additional element.  You would need to pay for shipping samples to them.

I have been thinking through the ground water sampling at private wells along the river.  I initially thought it made sense but am not so sure after thinking it over.  Lead adheres to soil pretty well so it may be filtered out.  I am guessing not much adherence to sand though.  Alkalinity of the water matters. High pH good. I need to do some research with water chemists.

Tom

Tom Neltner
Senior Director, Safer Chemicals

Environmental Defense Fund
1875 Connecticut Ave., NW
Washington, DC 20009
T  202-572-3263
C 317-442-3973
tneltner@edf.org<mailto:tneltner@edf.org>

This e-mail and any attachments may contain confidential and privileged information. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this e-mail and destroy any copies. Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal.

EDF_0000000084

# EXHIBIT  I

**From:**        Lindsay McCormick [lmccormick@edf.org]
**Sent:**        6/15/2022 4:46:02 PM
**To:**          Seth Jones [seth@consultmts.com]; Monique Rydel-Fortner [monique@consultmts.com]
**CC:**          Tom Neltner [tneltner@edf.org]
**Subject:**     Initial Sample Results
**Attachments:** 22-06-01961.pdf; 22-06-01490.pdf; 22-06-01498.pdf


Hi Seth and Monique,

I hope you had a safe trip back from Louisiana!

The first set of results from Tahoe have just come in (see attached).  Looks like the lead in water samples were mostly below detection or quite low (highest was 2 ppb), but the sediment sample came out at 8.4 ppb lead.  Not much showing up for arsenic and cadmium.

Are you all getting these results directly from EHS labs as well?

Best,
Lindsay



**Lindsay McCormick**
Senior Manager, Safer Chemicals
Healthy Communities

**Environmental Defense Fund**
1875 Connecticut Ave, NW
Washington DC 20009
**T** 202 572 3245

**lmccormick@edf.org**
edf.org

Confidential

# EHS Laboratories

## Metals in Waste Water
## Analysis Report

Environmental Hazards Services, L.L.C.
7469 Whitepine Rd
Richmond, VA 23237
Telephone: 800.347.4010

**Report Number:** 22-06-01961

**Client:** Environmental Defense Fund
1875 Connecticut Ave. NW
Suite 600
Washington DC, 20009

**Received Date:** 06/09/2022
**Analyzed Date:** 06/10/2022
**Reported Date:** 06/15/2022

**Project/Test Address:** 202-575-3263

<u>Client Number:</u>
201489

# Laboratory Results

<u>Fax Number:</u>

| **Lab Sample Number:** | 22-06-01961-001 | **Narrative ID:** |
|---|---|---|
| **Client Sample Number:** | BT 1.1 WATER 2 | |

| Analyte | Concentration ppm (mg/L) | Reporting Limit (mg/L) |
|---|---|---|
| Arsenic (As) | <0.050 | 0.050 |
| Cadmium (Cd) | <0.050 | 0.050 |
| Lead (Pb) | <0.050 | 0.050 |

| **Lab Sample Number:** | 22-06-01961-002 | **Narrative ID:** |
|---|---|---|
| **Client Sample Number:** | BT 15.1 WATER 2 | |

| Analyte | Concentration ppm (mg/L) | Reporting Limit (mg/L) |
|---|---|---|
| Arsenic (As) | <0.050 | 0.050 |
| Cadmium (Cd) | <0.050 | 0.050 |
| Lead (Pb) | <0.050 | 0.050 |

| **Lab Sample Number:** | 22-06-01961-003 | **Narrative ID:** |
|---|---|---|
| **Client Sample Number:** | BT 17.1 WATER 2 | |

| Analyte | Concentration ppm (mg/L) | Reporting Limit (mg/L) |
|---|---|---|
| Arsenic (As) | <0.050 | 0.050 |

Confidential

EDF_0000000687

Environmental Hazards Services, L.L.C

**Client Number:** 201489                                                         **Report Number:** 22-06-01961
**Project/Test Address:** 202-575-3263

| Analyte | Concentration ppm (mg/L) | Reporting Limit (mg/L) |
|---|---|---|
| Cadmium (Cd) | <0.050 | 0.050 |
| Lead (Pb) | 0.74 | 0.050 |

| **Lab Sample Number:** | 22-06-01961-004 | **Narrative ID:** |
|---|---|---|
| **Client Sample Number:** | BT 17.2 WATER 2 | |

| Analyte | Concentration ppm (mg/L) | Reporting Limit (mg/L) |
|---|---|---|
| Arsenic (As) | <0.050 | 0.050 |
| Cadmium (Cd) | <0.050 | 0.050 |
| Lead (Pb) | <0.050 | 0.050 |

| **Lab Sample Number:** | 22-06-01961-005 | **Narrative ID:** |
|---|---|---|
| **Client Sample Number:** | BT 25.1 WATER 2 | |

| Analyte | Concentration ppm (mg/L) | Reporting Limit (mg/L) |
|---|---|---|
| Arsenic (As) | <0.050 | 0.050 |
| Cadmium (Cd) | <0.050 | 0.050 |
| Lead (Pb) | <0.050 | 0.050 |

| **Lab Sample Number:** | 22-06-01961-006 | **Narrative ID:** |
|---|---|---|
| **Client Sample Number:** | BT 26.2 WATER 2 | |

| Analyte | Concentration ppm (mg/L) | Reporting Limit (mg/L) |
|---|---|---|
| Arsenic (As) | <0.050 | 0.050 |
| Cadmium (Cd) | <0.050 | 0.050 |
| Lead (Pb) | <0.050 | 0.050 |

| **Lab Sample Number:** | 22-06-01961-007 | **Narrative ID:** |
|---|---|---|
| **Client Sample Number:** | BT 26.3 WATER 2 | |

| Analyte | Concentration ppm (mg/L) | Reporting Limit (mg/L) |
|---|---|---|
| Arsenic (As) | <0.050 | 0.050 |

Confidential

EDF_0000000688

**Client Number:**      201489                                          **Report Number:**  22-06-01961
**Project/Test Address:** 202-575-3263

| | | |
|---|---|---|
| Cadmium (Cd) | <0.050 | 0.050 |
| Lead (Pb) | <0.050 | 0.050 |

---

| **Lab Sample Number:** | 22-06-01961-008 | **Narrative ID:** |
|---|---|---|
| **Client Sample Number:** | BT 26.4 WATER 2 | |

| Analyte | Concentration ppm (mg/L) | Reporting Limit (mg/L) |
|---|---|---|
| Arsenic (As) | <0.050 | 0.050 |
| Cadmium (Cd) | <0.050 | 0.050 |
| Lead (Pb) | <0.050 | 0.050 |

---

| **Lab Sample Number:** | 22-06-01961-009 | **Narrative ID:** |
|---|---|---|
| **Client Sample Number:** | BT 27.1 2 WATER INTAKE | |

| Analyte | Concentration ppm (mg/L) | Reporting Limit (mg/L) |
|---|---|---|
| Arsenic (As) | <0.050 | 0.050 |
| Cadmium (Cd) | <0.050 | 0.050 |
| Lead (Pb) | <0.050 | 0.050 |

---

| **Lab Sample Number:** | 22-06-01961-010 | **Narrative ID:** |
|---|---|---|
| **Client Sample Number:** | BL 21 WATER 2 | |

| Analyte | Concentration ppm (mg/L) | Reporting Limit (mg/L) |
|---|---|---|
| Arsenic (As) | <0.050 | 0.050 |
| Cadmium (Cd) | <0.050 | 0.050 |
| Lead (Pb) | <0.050 | 0.050 |

---

| **Lab Sample Number:** | 22-06-01961-011 | **Narrative ID:** |
|---|---|---|
| **Client Sample Number:** | BL 2.2 WATER 2 | |

| Analyte | Concentration ppm (mg/L) | Reporting Limit (mg/L) |
|---|---|---|
| Arsenic (As) | 0.14 | 0.050 |

Confidential                                                                                          EDF_0000000689

Environmental Hazards Services, L.L.C

**Client Number:** 201489

**Report Number:** 22-06-01961

**Project/Test Address:** 202-575-3263

| | | |
|---|---|---|
| Cadmium (Cd) | <0.050 | 0.050 |
| Lead (Pb) | <0.050 | 0.050 |

| **Lab Sample Number:** | 22-06-01961-012 | **Narrative ID:** |
|---|---|---|
| **Client Sample Number:** | MISS 2.3 WATER 2 | |

| Analyte | Concentration ppm (mg/L) | Reporting Limit (mg/L) |
|---|---|---|
| Arsenic (As) | <0.050 | 0.050 |
| Cadmium (Cd) | <0.050 | 0.050 |
| Lead (Pb) | <0.050 | 0.050 |

| **Lab Sample Number:** | 22-06-01961-013 | **Narrative ID:** |
|---|---|---|
| **Client Sample Number:** | MISS 5.1 WATER 2 | |

| Analyte | Concentration ppm (mg/L) | Reporting Limit (mg/L) |
|---|---|---|
| Arsenic (As) | <0.050 | 0.050 |
| Cadmium (Cd) | <0.050 | 0.050 |
| Lead (Pb) | <0.050 | 0.050 |

| **Lab Sample Number:** | 22-06-01961-014 | **Narrative ID:** |
|---|---|---|
| **Client Sample Number:** | MISS 6.1 WATER 2 | |

| Analyte | Concentration ppm (mg/L) | Reporting Limit (mg/L) |
|---|---|---|
| Arsenic (As) | <0.050 | 0.050 |
| Cadmium (Cd) | <0.050 | 0.050 |
| Lead (Pb) | <0.050 | 0.050 |

| **Lab Sample Number:** | 22-06-01961-015 | **Narrative ID:** |
|---|---|---|
| **Client Sample Number:** | MISS 7.1 WATER 2 | |

| Analyte | Concentration ppm (mg/L) | Reporting Limit (mg/L) |
|---|---|---|
| Arsenic (As) | <0.050 | 0.050 |

Confidential

EDF_0000000690

**Client Number:**     201489                                               **Report Number:** 22-06-01961
**Project/Test Address:** 202-575-3263

| Analyte | Concentration ppm (mg/L) | Reporting Limit (mg/L) |
|---|---|---|
| Cadmium (Cd) | <0.050 | 0.050 |
| Lead (Pb) | <0.050 | 0.050 |

| **Lab Sample Number:** | 22-06-01961-016 | **Narrative ID:** |
|---|---|---|
| **Client Sample Number:** | MISS 13.1 WATER 2 | |

| Analyte | Concentration ppm (mg/L) | Reporting Limit (mg/L) |
|---|---|---|
| Arsenic (As) | <0.050 | 0.050 |
| Cadmium (Cd) | <0.050 | 0.050 |
| Lead (Pb) | <0.050 | 0.050 |

| **Lab Sample Number:** | 22-06-01961-017 | **Narrative ID:** |
|---|---|---|
| **Client Sample Number:** | MISS 3.1 WATER 2 | |

| Analyte | Concentration ppm (mg/L) | Reporting Limit (mg/L) |
|---|---|---|
| Arsenic (As) | <0.050 | 0.050 |
| Cadmium (Cd) | <0.050 | 0.050 |
| Lead (Pb) | <0.050 | 0.050 |

**Methods:**     Mercury (Hg): EPA SW846 7470A
                   All other metals: EPA SW846 3010A/6010D

**Analyst:**     Anthony Dee

Reviewed By Authorized Signatory: _Tasha Eaddy_

*Tasha Eaddy*
QA/QC Clerk

Method EPA SW846 1311 recommends 100g for analysis.

The condition of the samples analyzed was acceptable upon receipt per laboratory protocol unless otherwise noted on this report. All internal quality control requirements associated with the batch were met, unless otherwise noted. Results represent the analysis of samples submitted by the client. Sample location, description, area, volume, etc., was provided by the client. This report cannot be used by the client to claim product endorsement by NVLAP or any agency of the U.S. Government. This report shall not be reproduced except in full, without the written consent of the Environmental Hazards Service, L.L.C. California Certification #2319 NY ELAP #11714.

| Legend | g = gram | ppm = parts per million | mg/L = milligrams per liter |
|---|---|---|---|

Confidential                                  EDF_0000000691

# ENVIRONMENTAL HAZARDS SERVICES, LLC

## Metals Chain of Custody Form

Pg 1 of 2

| Company Name | Environmental Defense Fund/Marine Taxonomic Services | Account # | 201489 |
|---|---|---|---|
| Company Address | 1875 Connecticut Ave Suite 600 | City/State/Zip | Washington, DC 20009 |
| Phone | 202-572-3263 | Email | seth@consultmts.com |
| Project Name / Testing Address | 202-575-3263 | | |
| PO Number | | Collected By | Seth Jones, Monique Rydel |
| Turn-Around Time | ☒ 5 DAY  ○ 3 DAY  ○ 2 DAY  ○ 1 DAY  ○ SAME DAY OR WEEKEND - Must Call Ahead | | |

| LAB NUMBER | Client Sample ID | Collection Date & Time | METALS Pb TCLP | TCLP RCRA 8 | RCRA 8 Total | Toxic Metal Profile | Welding Fume Profile | TX 11 TCLP | CA 17 Total | Other Metals | PARTICULATES Total Nuisance Dust | Respirable Dust | TSP Gravimetric | TSP Pb | PM-10 | AIR Total Time Mins. | Flow Rate L/min. | Vol. Total Liters | WIPES AREA Circle The Unit of Measurement Used cm or in |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | BT 1.1 Water #2 | 3 June 2022 6:50 | | | | | | | | Pb, Ar, Cd | | | | | | | | | x |
| 2 | BT 15.1 Water #2 | 3 June 2022 13:11 | | | | | | | | | | | | | | | | | x |
| 3 | BT 17.1 Water #2 | 3 June 2022 15:08 | | | | | | | | | | | | | | | | | x |
| 4 | BT 17.2 Water #2 | 3 June 2022 15:13 | | | | | | | | | | | | | | | | | x |
| 5 | BT 25.1 Water #2 | 3 June 2022 19:27 | | | | | | | | ↓ | | | | | | | | | x |
| 6 | | | | | | | | | | | | | | | | | | | x |
| 7 | BT 26.2 Water #2 | 4 June 2022 8:53 | | | | | | | | Pb, Ar, Cd | | | | | | | | | x |
| 8 | BT 26.3 Water #2 | 4 June 2022 8:41 | | | | | | | | | | | | | | | | | x |
| 9 | BT 26.4 Water #2 | 4 June 2022 8:11 | | | | | | | | | | | | | | | | | x |
| 10 | BT 27.1 Water Intake | 4 June 2022 9:42 | | | | | | | | ↓ | | | | | | | | | x |
| 11 | | | | | | | | | | | | | | | | | | | x |
| 12 | BT 2.1 Water #2 | 5 June 2022 2:12 | | | | | | | | Pb, Ar, Cd | | | | | | | | | x |
| 13 | BT 2.2 Water #2 | 5 June 2022 2:02 | | | | | | | | ↓ | | | | | | | | | x |
| 14 | | | | | | | | | | | | | | | | | | | x |
| 15 | | | | | | | | | | | | | | | | | | | x |

| Released By: Signature: | Monique Rydel   Monique Rydel | Date: 6 June 2022 | Time: 11:06 |
|---|---|---|---|

### LAB USE ONLY – BELOW THIS LINE

Received By: A. Walker

Signature: A. Walker

Date: 06/09/22   Time: 12:20   ☐ AM  ☒ PM

☐ Portal Contact Added

22-06-01961

Due Date:
06/16/2022
(Thursday)
AE

📍 7469 WHITEPINE RD, RICHMOND, VA  23237   (800)-347-4010

📄 RESULTS VIA CLIENT PORTAL AVAILABLE @ www.leadlab.com

# ENVIRONMENTAL HAZARDS SERVICES, LLC

## Metals Chain of Custody Form

Pg 2 of 2

| Company Name | Environmental Defense Fund/Marine Taxonomic Services | Account # | 201489 |
|---|---|---|---|
| Company Address | 1875 Connecticut Ave Suite 600 | City/State/Zip | Washington, DC 20009 |
| Phone | 202-572-3263 | Email | seth@consultmts.com |
| Project Name / Testing Address | 202-575-3263 | | |
| PO Number | Collected By | Seth Jones, Monique Rydel | |

Turn-Around Time: ✓ 5 DAY   ○ 3 DAY   ○ 2 DAY   ○ 1 DAY   ○ SAME DAY OR WEEKEND - Must Call Ahead

| LAB NUMBER | Client Sample ID | Collection Date & Time | Pb TCLP | TCLP RCRA 8 | RCRA 8 Total | Toxic Metal Profile | Welding Fume Profile | TX-11 TCLP | CA 17 Total | Other Metals | Total Nuisance Dust | Respirable Dust | TSP Gravimetric | TSP Pb | PM-10 | Total Time Mins. | Flow Rate L/min | Vol. Total Liters | AREA Circle The Unit of Measurement Used cm or in |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | miss 2.3 Water #2 | 5 June 2022 13:22 | | | | | | | | Pb, Ar, Cd | | | | | | | | | x |
| 2 | miss 5.1 Water #2 | 5 June 2022 13:41 | | | | | | | | | | | | | | | | | x |
| 3 | miss 6.1 Water #2 | 5 June 2022 14:00 | | | | | | | | | | | | | | | | | x |
| 4 | miss 7.1 Water #2 | 5 June 2022 15:53 | | | | | | | | | | | | | | | | | x |
| 5 | miss 13.1 Water #2 | 5 June 2022 19:25 | | | | | | | | ↓ | | | | | | | | | x |
| 6 | | | | | | | | | | | | | | | | | | | x |
| 7 | MISS 3.1 Water #2 | 4 June 2022 18:21 | | | | | | | | Pb, Ar, Cd | | | | | | | | | x |
| 8 | | | | | | | | | | | | | | | | | | | x |
| 9 | END OF SAMPLES | | | | | | | | | | | | | | | | | | x |
| 10 | | | | | | | | | | | | | | | | | | | |
| 11 | | | | | | | | | | | | | | | | | | | |
| 12 | | | | | | | | | | | | | | | | | | | |
| 13 | | | | | | | | | | | | | | | | | | | |
| 14 | | | | | | | | | | | | | | | | | | | |
| 15 | | | | | | | | | | | | | | | | | | | |

| Released By: | Monique Rydel | Date: | 6 June 2022 | Time: | 11:06 |
|---|---|---|---|---|---|
| Signature: | Monique Rydel | | | | |

**LAB USE ONLY – BELOW THIS LINE**

Received By: A. Walker

Signature: A. Walker

Date: 06, 09, 22   Time: 12 : 20   ☐ AM   ☑ PM

☐ Portal Contact Added

📍 7469 WHITEPINE RD, RICHMOND, VA 23237   (800)-347-4010

🖥 RESULTS VIA CLIENT PORTAL AVAILABLE @ www.leadlab.com

19161

EHS Laboratories™

Attach Laboratory Label Here

Confidential

# EXHIBIT J



## Fwd: contact information

1 message

**Kirk Boyd** <kirk@erlives.org>                                                Tue, Aug 1, 2023 at 3:30 PM
To: Gordon Binkhorst <gbinkhorst@gmail.com>

Hello Gordon,

Please pardon that I am forwarding an email I just sent from my law firm account. For some reason an IT person will
figure out, mail sent to gmail addresses, but not others, is being bounced this morning. We'll get it figured out, and I
want to make sure that this email goes through to you.

You can continue to send email to me at jkb@drjkb.com

Best,

Kirk


> Begin forwarded message:
>
> **From:** jkb acct <jkb@drjkb.com>
> **Subject: Re: contact information**
> **Date:** August 1, 2023 at 12:25:06 PM PDT
> **To:** Gordon Binkhorst <gbinkhorst@gmail.com>
>
> Hello Gordon,
>
> Thank you for this quick follow up, and for talking with me today. As we have discussed, our goal
> working together, and throughout the assessment of evidence and presentation of that info throughout
> this case, is to "let science be the guide." We have an excellent Judge, and I'm confident that he too will
> let science be the guide.
>
> As we pursue that goal, I appreciate that you will work with us consulting at $150 an hour with an
> understanding that should you be deposed or testify at trial, that amount will increase to $225 an hour
> for that work. Also, I appreciate the conversation that we previously had was our initial contact, and
> consider that to be preliminary without pay. But as for today, we have begun working together, and your
> rate of $150 an hour is included for the phone conversation that we just had.
>
> I will send you a more formal written retention letter as an expert, but for the time being please keep
> track of the time you spend and submit a summary of your time spent on this matter every two weeks.
> It's best if your time summaries include the date and a very brief general description of the type of work
> you are doing. You can simply have a long list of entries to which you add more, and send to me every
> couple of weeks. If you choose to use a more formal billing software, that's fine too, but I am not asking
> for an extensive description of your work. I know that keeping time records is taxing, and your time is
> best spent using your expertise to figure out exactly what the science is with these cables leaching lead
> into Lake Tahoe.
>
> I look forward to our continued working together.
>
> Best,

BINKHORST000775

*Law Office of John Kirk Boyd*

548 Market St., Suite 1300
San Francisco, CA 94104
415 690 6687

On Aug 1, 2023, at 11:41 AM, Gordon Binkhorst <gbinkhorst@gmail.com> wrote:

--
Gordon K. Binkhorst, Ph.D.
300 Fern Street
West Hartford, CT 06119
cell: 860-573-6288

BINKHORST000776