Joshua Koltun (Bar No. 173040)
One Sansome Street
Suite 3500, No. 500
San Francisco, California 94104
Telephone: 415.680.3410
Facsimile: 866.462.5959
joshua@koltunattorney.com

Attorney for Third Party Witnesses
Below the Blue,
Marine Taxonomic Services, Ltd,
Seth Jones, and Monique Rydel-Fortner

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>              Plaintiff,<br>v.<br><br>PACIFIC BELL TELEPHONE COMPANY<br><br>              Defendant | Case 2:21-cv-00073-JDP<br><br>**INFORMAL BRIEF IN SUPPORT OF BELOW THE BLUE'S PROPOSED MOTION TO PARTIALLY RECONSIDER ORDER TO COMPEL**<br><br>Zoom Hearing: December 21, 2023<br>Time:           10 am<br>Courtroom    9<br>Judge:         Hon. Jeremy D. Peterson |

*The material as to which BTB/MTS has no objection – all of which relates specifically to the cables in Lake Tahoe at issue in this litigation -- has been or is being produced.* The production included *thousands of pages of documents* responsive to the subpoena, including maps, geolocation data, and videos, concerning those two cables. BTB/MTS role in this case was limited to finding those cables and bringing them to the attention of Plaintiff. At no point did BTB/MTS conduct sampling of Lake Tahoe water for Plaintiff. MTS also conducted an underwater survey of the Cables for the League to Save Lake Tahoe, created a video showing the length of the cable, with areas of concern marked with zip-ties, and created maps showing GPS coordinates of those points. All that has been produced. A few remaining documents may be located and produced.

*What is at issue is whether AT&T can obtain information concerning the investigation that BTB/MTS conducted with the Wall Street* **Journal** *around the country, after this case had settled*. BTB/MTS assisted the *Journal* (and in a separate parallel investigation, EDF) in investigating lead-clad cables at multiple sites around the country, of which Lake Tahoe was only one. All three entities expected to – and did -- publish reports concerning these investigations.

*AT&T originally sought this information directly from the* **Journal**, *and is now seeking to do an end-run around the Reporter's Privilege.* On July 27, AT&T sent the Wall Street *Journal* a subpoena for documents concerning its nationwide reporting on lead-clad cables, with a letter vigorously disputing that reporting. That subpoena was later served and then withdrawn, and the subpoenas to BTB/MTS issued. BTB/MTS asserts the Reporters Privilege on all such material and has not produced it to either side. Plaintiff has respected BTB/MTS's assertion of privilege.

*It is appropriate for the Court to partially reconsider its order to compel with respect to BTB/MTS's claim of privilege, because BTB/MTS raised its objection but was unable to litigate it until it secured the undersigned counsel.* The Reporter's Privilege is "[r]ooted in the First Amendment." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) ("*Shoen I*"). First Amendment rights can only be deemed waived "upon clear and convincing evidence that the waiver is knowing, voluntary and intelligent." *Leonard v. Clark*, 12 F.3d 885, 889 (9th Cir. 1993). BTB/MTS timely asserted its objections to producing documents but was unable to litigate them until now because – through no fault of its own -- it was unable to secure counsel that could litigate the issue. (The only

Joshua Koltun ATTORNEY

"legal representation" offered by the Vance Center is that its "lawyers work with clients to identify their needs, and … then invite law firms to work on the projects." [Law Firms & Clearinghouses | Cyrus R. Vance Center For International Justice](). DE 87 at 1-2; *Palandjian v. Pahlavi*, 103 F.R.D. 410, 413 (1984) (reporter who "attempted, however inartfully" to assert the privilege did not waive it). The motion to compel was granted because, without counsel, BTB was unable to oppose it. It would be a manifest injustice to allow AT&T to obtain information concerning the *Journal's* **nationwide** reporting without allowing full briefing of the privilege issue.

***Anyone who intends to publish information to the public is a "reporter" and may invoke the Reporter's Privilege.*** *Shoen I*, 5 F.3d at 1293. The "reporter" need not have any association with the mainstream media. *Id.* The purpose of the privilege is to protect "the free flow of information to the public." *Id.* at 1292. BTB/MTS is a reporter, because it had "the intent to use material - sought, gathered or received - to disseminate information to the public and … such intent existed at the inception of the newsgathering process." *Id.* at 1293-94; DE 65-14 (Request 9, referring to BTB/MTS published report). That BTB is an environmental activist organization in no way undercuts its privilege. *Anti-Defamation League v. Sup. Ct.,* 67 Cal.App. 4th 1072, 1092-94 (public advocacy organization may invoke Reporter's Privilege). If BTB/MTS had acted independently of either the *Journal* or EDF it would still be entitled to claim the privilege. That it undertook these separate investigations in collaboration with the *Journal* and EDF only strengthens the assertion of privilege.

***The Privilege covers all information that the reporter has chosen not to publish.*** *Shoen I*, 5 F.3d at 1295. There need not have been a promise of confidentiality. *Id.* AT&T contends that EDF's disclosure of certain information that it had not published in its report constitutes a "subject matter" waiver of all information concerning lead-clad cables held by EDF, BTB/MTS, or the *Journal*. That unsound contention flies in the face of the essence of the Reporter's Privilege: to protect ***unpublished*** information. The doctrine of "subject matter waiver" which comes from the attorney-client context, is inapplicable to the Reporter's Privilege. *Damiano v. Sony Music Ent., Inc.*, 168 F.R.D. 485, 499 (D.N.J. 1996). The Reporter's privilege may be waived only where the reporter has given information to one litigant but not the other. *Michael v. Estate of Kovarbasich*, , 2015 U.S. Dist. LEXIS 168901, at *12 (C.D. Cal. Dec. 11, 2015). Here BTB/MTS is asserting the privilege against both parties.

***AT&T cannot meet the heavy burden to overcome the Reporter's Privilege.*** To overcome BTB/MTS's privilege, AT&T must show that the requested material is "(1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant to an important issue in the case." *Shoen v. Shoen*, 48 F.3d 412, 416 (9th Cir. 1995) (*Shoen II).* That is a heavy burden, designed to "prevail in all but the most exceptional cases." *Id.*

***AT&T has not exhausted other sources; quite the contrary.*** AT&T insists not only that it is *possible* to assess the safety of the lead-clad cables in Lake Tahoe independently of the *Journal*'s reporting, but (i) that it backed out of the Consent Decree precisely to enable such testing ***by the EPA and "regulators"***, and (ii) that ATT has already performed such testing. DE 41 at 2 & Exh A at 3; DE 91 at 1:12-16.  In any event, BTB/MTS has produced the video it created that shows points of damage or concern marked with zip-ties, and maps showing precise geolocations of those spots. The parties' experts, as well as the EPA and "regulators" are free to use such information in their own testing.[1]

***AT&T's case hardly "rises or falls" on the material it is seeking; on the contrary that information is not relevant at all.*** To overcome the privilege, the information sought must be "clearly relevant to an important issue in the case," *id.;* the claim for which the information is to be used must "virtually rise[] or fall[] with the admission or exclusion of the proffered evidence." *Krase v. Graco Children Prods*, 79 F.3d 346, 351 (2d Cir. 1996). Here, the majority of the investigation that BTB/MTS did with the *Journal* took place far away from Lake Tahoe; of no possible relevance. That small portion of the material that relates to Lake Tahoe is also irrelevant, because the *Journal's* reporting on Lake Tahoe is not at issue here.

AT&T is seeking this information to rebut the *Journal's* reporting in the public arena.  But this is a court of law, not the court of public opinion.  BTB/MTS has produced everything AT&T needs to defend this case.  AT&T should not be allowed to abuse the discovery process to obtain anything else.

December 19, 2023                                                          __/s/ Joshua Koltun__

---

[1] By the same token, the information sought by this subpoena concerning BTB/MTS's investigation in collaboration with the Journal and EDF is ***cumulative*** of information that EDF produced to AT&T, not to mention the voluminous information that BTB/MTS itself recently produced.