MATTHEW MACLEAR (State Bar No. 209228)
Email: mcm@atalawgroup.com
JASON FLANDERS (State Bar No. 238007)
Email: jrf@atalawgroup.com
ERICA A. MAHARG (State Bar No. 279396)
Email: eam@atalawgroup.com
J. THOMAS BRETT (State Bar No. 315820)
Email: jtb@atalawgroup.com
AQUA TERRA AERIS LAW GROUP
4030 MARTIN LUTHER KING JR WAY
OAKLAND, CA 94609
Tel: (415) 568-5200

[Additional counsel on p. 2]

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>　　Plaintiff,<br><br>v.<br><br>PACIFIC BELL TELEPHONE COMPANY<br><br>　　Defendant. | Case No: 2:21-cv-00073-JDP<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO AMEND SCHEDULING ORDER**<br><br>Hearing Date: January 11, 2024<br>Time: 10:00 a.m.<br>Courtroom: 9, 13th Floor<br>Magistrate Judge: Hon. Jeremy D. Peterson |

ANDREW L. PACKARD (State Bar No. 168690)
Email: andrew@packardlawoffices.com
WILLIAM N. CARLON (State Bar No. 305739)
Email: wncarlon@packardlawoffices.com
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062

WILLIAM VERICK (State Bar No. 140972)
Email: wverick@igc.org
KLAMATH ENVIRONMENTAL LAW CENTER
1125 16th Street, Suite 204
Arcata, CA  95521
Tel: (707) 630-5061; Fax: (707) 630-5064

J. KIRK BOYD (State Bar No. 122759)
Email: jkb@drjkb.com
LAW OFFICE OF JOHN KIRK BOYD
548 Market St., Suite 1300
San Francisco, CA 94104-5401
Tel: (415) 440-2500

BRIAN ACREE (State Bar No. 202505)
Email: brian@brianacree.com
LAW OFFICES OF BRIAN ACREE
331 J Street, Suite 200
Sacramento, CA 95814
Tel: (916) 505-6861

## I. INTRODUCTION

In its Motion to Amend Scheduling Order (ECF No. 85 ["Motion"]), Plaintiff California Sportfishing Protection Alliance ("CSPA" or "Plaintiff") seeks a modest extension of the scheduling order primarily to ensure that it can conduct sampling and gather necessary facts before expert disclosures, as well as to avoid conflicts with CSPA's counsels' schedules. Defendant Pacific Bell Telephone Company ("Defendant") opposes the Motion, by ignoring the numerous bases supporting good cause for the amendment, by mischaracterizing the timeline of the litigation, and by asserting unsupported prejudice to Defendant from the amendment. In fact, CSPA has shown good cause exists as a result of the unforeseen circumstances delaying planned sampling and investigation, numerous and ongoing discovery disputes hindering timely fact gathering, and conflicts between CSPA's newly-retained counsel from Aqua Terra Aeris Law Group ("ATA") and the entered schedule. Moreover, CSPA has been diligent throughout this litigation in asserting its claims and in prosecuting the case after the Consent Decree was vacated on August 1, 2023. Further, Defendant's assertions of prejudice are insufficient to deny the Motion, and finally, CSPA's proposed schedule is reasonable. For these reasons and as explained herein, CSPA asks this Court to grant the Motion.

## II. DISCUSSION

### A. CSPA Has Demonstrated Good Cause Exists to Modify the Scheduling Order as Requested.

As CSPA explained in the Motion, good cause exists to modify the scheduling order because of unforeseen delays in conducting sampling, significant discovery disputes, and conflicts with new counsels' existing litigation schedule. Defendant's opposition fails to establish these bases do not provide good cause for the modest extension requested by Plaintiff.

1. <u>The Specific Delay in the Investigation Timeline Was Unforeseen and Establishes Good Cause.</u>

While CSPA has diligently sought to retain consultants and experts to conduct necessary sampling and investigation, the process has taken longer than Plaintiff originally contemplated when it proposed a schedule, making it unlikely, if not impossible, for CSPA to meet the deadline to disclose experts and their reports on April 12, 2024. *See* ECF No. 85 at 8, 11; ECF No. 85-2 (Maclear Decl.),

¶¶ 6-12; ECF No. 85-1 (Boyd Decl.), ¶¶ 2-3; Maclear Supp. Decl., ¶¶ 3-7; Boyd Supp. Decl., ¶¶ 3-4. Thus, Plaintiff seeks a modification of that deadline by approximately four months to August 10, 2024. Defendant recognizes that, "A moving party's purported inability to comply with a scheduling order deadline can support a finding of good cause." ECF No. 91 (Defendant's Opposition to Motion to amending Scheduling Order ["Opposition"]), at11:9-10, citing *Jackson v. Laureate*, 186 F.R.D. 605, 608 (E.D. Cal. 1999). Such is the case here.

However, Defendant argues the delays in the investigation presented by Plaintiff were foreseeable. *See* ECF No. 91 at 11. While CSPA did plan on implementing an investigation, including sampling, when it proposed a schedule (ECF No. 61 at 2), Plaintiff reasonably believed, based on initial discussions with potential consultants, that the investigation could be conducted during the fall and early winter of 2023. *See* ECF No. 85-1, ¶ 3. Understanding that an investigation would occur, and actually retaining experts, developing a sampling plan and schedule, and determining all the steps and time necessary to implement that investigation are two very different things. As CSPA explained, the information gained through this process has made it clear that additional time is necessary. ECF No. 85-2, ¶ 12.[1]

Defendant incorrectly asserts that CSPA failed to provide any explanation of why CSPA did not start the investigation in August 2023. ECF No. 91 at 11:22-23. In fact, CSPA explained that it did start the process of retaining experts in August 2023. ECF No. 85-1, ¶ 2; *see also* ECF No. 91-1 (Dhillon Decl.), at 104. CSPA continued that search through November 2023, and that "due to scheduling and budget constraints," it took CSPA through November to retain the necessary experts and/or consultants. ECF No. 85-2, ¶¶ 6-7. CSPA encountered numerous, unexpected setbacks during

---

[1] Moreover, Plaintiff made clear, even when it proposed a schedule, that a delay in the schedule could occur. In its August 25, 2023 Supplemental Briefing re Case Management Schedule, CSPA stated: "To be clear, Plaintiff has a keen interest in resolving this case as quickly as possible. However, the practical realities of collecting evidence from a submerged cable and the waters surrounding it should be taken into account when setting deadlines in this case. While Plaintiff will endeavor to adhere to the schedule suggested below, it may be necessary for the reasons stated above to seek a continuance into the summer diving season." ECF No. 61 at 2. At the hearing on the schedule, the Court itself recognized the potential need to amend the schedule. *See* ECF No. 85-2 at 29:10-15, 30:20-22, 32:21-25.

this process. *See* Maclear Supp. Decl., ¶¶ 3-7; Boyd Supp. Decl., ¶¶ 3-4. Thus, the original schedule for sampling that Plaintiff contemplated proved unworkable, despite CSPA's diligent efforts to retain experts and begin the investigation.

Accordingly, Defendant is incorrect that "[t]he only justification provided for such a delay [in the investigation timeline] is a purported 90-day permitting requirement for State Parks." ECF No. 91 at 11:20-22. However, the permitting requirement provides further good cause. California Department of Parks & Recreation informed CSPA's counsel that it required a permit for sediment testing, which would take approximately 90 days to process. ECF No. 85-2, ¶ 10; *see also* Maclear Supp. Decl., ¶ 8.[2] Again, Plaintiff did not have that information prior to submitting its proposed schedule.

In sum, Defendant's assertion that "Plaintiff has failed to present any new circumstances that justify" the proposed amendment is simply untrue. *See* ECF No. 92 at 1:26. Unlike the movant in *Jackson v. Laureate*, cited by Defendant, CSPA has provided an explanation of what circumstances have changed since the scheduling order was proposed and entered. *Compare Jackson*, 186 F.R.D. at 608-609 (denying amendment because movant failed to articulate any reason why her earlier representation to the Court could not be met or what new information required an amendment). Therefore, Plaintiff has shown good cause exists to amend the scheduling order.

        2.  <u>Numerous Discovery Disputes Provide Additional Good Cause to Modify the Expert Disclosure Date and Subsequent Deadlines.</u>

In its Motion, Plaintiff also explained that the numerous discovery disputes have delayed the acquisition of facts that will inform expert disclosures, including information from third parties, such as Environmental Defense Fund, Marine Taxonomic Services, Beyond the Blue, and Seth Jones. Defendant asserts that "Plaintiff should have known that discovery disputes may arise that would

---

[2] In the Opposition, Defendant criticizes CSPA's counsel for not identifying these permitting requirements at the Parties' meet and confer. ECF No. 91 at 8, n. 4. Yet, CSPA only became aware of the permitting requirements on November 3, 2023, four days after the meet and confer. *See* ECF No. 85-2 at 8; Maclear Supp. Decl., ¶ 8. CSPA's subsequent notification to Defendant of this additional basis shows CSPA's continued diligence in sharing information with Defendant and good cause in seeking a prompt amendment to the scheduling order.

need to be promptly addressed to keep this case on schedule." ECF No. 91 at 12:4-6. While discovery disputes unfortunately are standard during litigation, the extent of the disputes in this case are not. Defendant itself has filed one motion to compel a response to a third-party subpoena in this Court (ECF No. 65) and has filed three other actions in different forums to compel responses to other subpoenas.[3] The responses to these subpoenas were originally due on August 18, 2023, and the months-long and continuing delay in getting complete responses justifies amending the schedule.[4]

Moreover, Defendant's failure to produce documents to Plaintiff and adequate responses to discovery is also not standard or expected. While this is not the forum to argue the merits of Defendant's refusal to respond appropriately to discovery requests, as Plaintiff noted in its Motion, Defendant failed to provide substantive responses to half of all interrogatories, has refused to provide documents to seven out of thirty-eight requests for production, and to date, has only produced thirteen documents. ECF. No. 85-1 at ¶ 7.[5] Effectively, Defendant has not produced documents nor provided adequate written responses.

Defendant criticizes CSPA for not diligently pursuing discovery. *See* ECF No. 91 at 12:9-13, citing *Sheridan v. Reinke*, 611 Fed. Appx. 381, 384 (9th Cir. 2015). Yet, Plaintiff sent a 30-page detailed meet and confer letter to Defendant on December 8, 2023, only three weeks after Defendant's responses, which included the Thanksgiving holiday. ECF No 85-1, ¶ 7; ECF No. 91-1, ¶ 10. In the December 8 letter, Plaintiff asked Defendant to meet and confer and to respond by December 15, 2023. Maclear Supp. Decl., ¶ 10. To date, Defendant has not responded. Plaintiff is attempting to work through the discovery disputes; however, a dispute of this extent and nature will take time and

---

[3] *Pacific Bell Telephone Company v. Marine Taxonomic Services*, Case No. 3:23-cv-01747-DMS-KSC (S.D. Cal.); *Pacific Bell Telephone Company v. Jones*, Case No. 3:23-cv-01905-DMS-KSC (S.D. Cal.); *California Sportfishing Protection Alliance v. Pacific Bell Telephone Company*, Case No. 1:23-mc-00125-TJK (D.D.C.).

[4] For instance, the action filed in Washington, D.C. is awaiting transfer to the Eastern District of California. *See California Sportfishing Protection Alliance v. Pacific Bell Telephone Company*, Case No. 1:23-mc-00125-TJK (D.D.C.), Minute Order issued December 13, 2023.

[5] In comparison, third parties, such as Environmental Defense Fund, Beyond the Blue, and Marine Taxonomic Services have produced thousands of documents, collectively, despite ongoing discovery disputes. Maclear Supp. Decl., ¶ 9.

delay the acquisition of important facts. In *Sheridan*, by contrast, there was no indication that the plaintiff sought to compel discovery and only waited until after discovery closed to reopen discovery based on defendant's failure to disclose information. *Sheridan*, 611 Fed. Appx. at 384. The situation here is not analogous: CSPA is attempting to resolve the discovery disputes promptly, within the discovery deadlines. However, the process will necessarily take time.

In short, while some discovery disputes can be anticipated, the extent of the existing disputes in this case are numerous and exceptional. Moreover, when a schedule is "tight" at the outset (ECF No. 85-2 at 32:25), even normal discovery disputes can result in delays, despite the diligence of the Parties in conducting discovery.

### 3. ATA Counsel's Scheduling Conflicts Provide Further Good Cause.

Defendant mischaracterizes the Motion when it asserts that "[t]he retention of new counsel is the principal basis for the motion." ECF No. 91 at 13, n. 9. CSPA has provided numerous bases for amending the schedule, most prominently, the need for time to prepare for, obtain permits, and conduct sampling and to complete discovery before expert disclosures.

However, the conflicts outlined by ATA counsel provides a further rationale for amending the deadlines. ATA has pointed to specific conflicts with existing litigation deadlines in its Motion. ECF No. 85 at 13. None of these conflicts were foreseeable because ATA was retained after the schedules were proposed.

Defendant cites to one case purporting to state that "new counsel with pre-existing scheduling conflicts does not justify modifying the Scheduling Order . . .." ECF No. 91 at 13:1-5, citing *Tschantz v. McCann*, 160 F.R.D. 568, 572 (N.D. Ind. 1995). *Tschantz* is neither factually analogous to the circumstances present here, nor does it stand for the proposition for which Defendant cites it. In *Tschantz*, plaintiff sought to amend its complaint to substitute correct defendants after the deadline to amend the complaint had passed. *Id*. at 570. Despite knowing of the correct defendant for several months, plaintiff's counsel missed the deadline to amend the complaint. *Id*. at 570-72. The court found that counsel's scheduling error was not good cause. *Id*. at 572. Here, Plaintiff's counsel is not seeking relief from a deadline that was missed as a result of counsel's error. Plaintiff is seeking a modification to address future conflicts in counsels' schedule, promptly after becoming aware of the conflicts. In

contrast to *Tschantz*, good cause exists here to amend the schedule to address these conflicts.

## B.  CSPA HAS ACTED DILIGENTLY IN ATTEMPTING TO COMPLY WITH THE SCHEDULING ORDER AND IN SEEKING THIS MODIFICATION.

Defendant raises several arguments throughout its opposition to imply that CSPA was not diligent in either litigating this case or seeking to amend the schedule. None have merit.

First, Defendant repeatedly mischaracterizes the timeline of the litigation by asserting that Plaintiff has had more than three years to investigate its claims, implying CSPA should have conducted its investigation earlier. *See, e.g.*, ECF No. 91 at 7:5, 11:17-18. While Plaintiff filed the action almost three years ago, the Parties settled the claims within months of initiation of litigation. *See* ECF No. 1 (Complaint filed January 14, 2021); *see also* ECF No. 16 (parties settled September 2021). Plaintiff had no cause to employ costly consultants and conduct further sampling to prove its claims while the Consent Decree was in place. Accordingly, the appropriate timeframe to judge Plaintiff's diligence is not from the date when the Complaint was filed but from the date the Consent Decree was vacated on August 1, 2023. As explained in the Motion, as soon as the Court vacated the Consent Decree, Plaintiff began the process of identifying and attempting to retain appropriate consultants to gather necessary information to prosecute its case. *See* ECF No. 85 at 11.

Second, Defendant argues that the Motion should be denied because Plaintiff did not "diligently investigate its claims before. . . filing suit." ECF No. 91 at 7:5; *see also* ECF No. 91 at 7:5-12. Defendant impliedly argues that Plaintiff needed to conduct all testing and gather all information necessary to prove its claims prior to filing the Complaint. The federal rules require no such thing. The federal rules only require that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). The complaint is sufficient if it gives the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." The pleading must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, nowhere does Rule 8 or the case law interpreting it require Plaintiff to compile and produce all facts supporting its claims prior to filing the Complaint. Further, in making factual assertions, the rules further require counsel to certify that "the factual contentions have evidentiary support or, if specifically so identified, will likely have

evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ Proc. 11(b)(3). Thus, Rule 11 specifically contemplates that discovery will produce additional facts, which is precisely what the discovery process is for.

Here, the Complaint explains that Plaintiff sampled water wherein a portion of the cable was submerged in Lake Tahoe water, and the samples showed significantly high levels of lead. ECF No. 12, ¶ 7. [6] That provides a sufficient basis on which to allege Plaintiff's claims.[7] Ultimately, Defendant is arguing the merits of the claims by refuting the sufficiency of Plaintiff's evidence, but Defendant's assertions that Plaintiff's existing evidence is insufficient to prove its case does not provide a basis to deny the Motion at issue.[8] Defendant's position regarding the weight of the evidence exchanged thus

---

[6] In its Opposition, Defendant criticizes the evidence on which Plaintiff relied to file the Complaint. *See* ECF No. 91 at 4:5-12. Before filing the Complaint, Plaintiff explained that it tested a portion of cable, by submerging the piece of cable in water in a plastic container. ECF No. 12 (Second Amended Complaint), ¶ 7. "A sample was taken of the water after one day and analysis of that sample showed that enough lead had dissolved from the Cable into the water to cause the water to have a concentration of 650 micrograms of lead per liter of water. A second sample of the water was taken after seven days and analysis of that sample showed that enough lead had continued to be dissolved from the Cable to raise the concentration of lead in the water to 1,500 micrograms per liter." The Complaint further details the numerous and severe human health and environmental effects of lead exposure. *Id*., ¶¶ 8, 25-26. Plaintiff has not yet conducted sampling within Lake Tahoe, nor has Plaintiff ever indicated it has. Thus, CSPA appropriately answered the Request for Admission admitting that Plaintiff did not take water samples within Lake Tahoe prior to filing the action. ECF No. 91-1 at 44:17-45:3. In any case, Defendant's mischaracterization of the admission is immaterial to this Motion.

[7] If Plaintiff had not met the Rule 8 requirements for alleging a complaint, presumably Defendant would have raised that issue through a Rule 12 motion. Defendant did not do so and cannot now raise an alleged lack of facts to support the Complaint as a justification for impairing Plaintiff's ability to conduct discovery.

[8] In the Opposition, Defendant impugns the credibility of Marine Taxonomic Services (MTS) and the *Wall Street Journal* by asserting that the *Wall Street Journal* hid samples taken by MTS from the cables showing low or no levels of lead. ECF No. 91 at 6:8-15, citing to Dhillon Decl., Ex. I (EDF0686) (ECF No. 91-1 at 95). While the merits of claims or adequacy of the evidence are not at issue in this Motion, it is important to clarify the record. The email that Defendant cites mischaracterizes the sampling results attached thereto. The sender confused the reporting unit, wrongly stating that the results were reported in parts per billion (ppb), rather than parts per million (ppm), thereby understating the amount of lead in the samples. *Compare* ECF No. 91-1 at 95 *to id*. at 96-100. Defendant repeats this mistake in the Opposition. ECF No. 91 at 6:10-15. Moreover. at least one water quality sample showed levels of lead at 0.74 ppm, which amounts to 740 ppb of lead. *Id*. For reference, the State of California has established safe harbors for cancer at 15 micrograms/liter (or ppb) and for reproductive toxicity at 0.5 ppb. *See* California Office of Environmental Health and

far does not provide a basis to overlook good cause to modify the schedule, particularly when the basis for modifying the schedule is to allow sufficient time for Plaintiff to conduct necessary investigations. For unknown reasons, Defendant conducted at least two investigations to refute Plaintiff's factual contentions, while the Consent Decree was in place. *See* ECF No. 33-1 at 4-9; *see also* Dkt. No. 57-1 at 4-42. The schedule should not deprive Plaintiff of conducting a similar investigation to counter Defendant's evidence.

Third, Plaintiff has acted diligently after the schedules were proposed to meet the deadlines. As Plaintiff has stated, it has worked to compile the necessary team of experts and consultants over the course of the last few months and sought a modification of the scheduling order as soon as it became clear that the investigation could not be conducted within the present schedule. ECF No. 85-2, ¶¶ 7-12. While it is true that Mr. Boyd was communicating with an expert, Dr. Binkhorst, as early as August 1, 2023, Dr. Binkhorst was not formally retained, due to financial constraints, until mid-October, and further, he is not conducting the sampling. Maclear Supp. Decl., ¶ 7. This fact does not undermine Plaintiff's earlier averments, but rather demonstrates Plaintiff's diligence.

Defendant paradoxically asserts that Plaintiff has both waited too long to seek a modification of the scheduling order and has not shown a present conflict justifying a modification. *See* ECF No. 91 at 13:10-11, n. 9. In other words, Plaintiff has brought this Motion both too late and too early. In fact, Plaintiff has brought this Motion as soon as it became clear that meeting the current scheduling order, in particular the expert disclosure deadline is no longer feasible. Plaintiff is not merely bringing this Motion as a matter of convenience but has demonstrated that conducting sampling, preparing expert reports based on that sampling, and acquiring all necessary facts to support the expert analysis will take longer than originally anticipated. *See* Good Cause Definition, BALLENTINE'S LAW DICTIONARY (3d ed. 2010) available at LEXIS (good cause is "something which deprives the applicant of a fair trial if forced to proceed at the appointed time.").

---

Hazard Assessment, Lead and Lead Compounds, *available at* https://oehha.ca.gov/proposition-65/chemicals/lead-and-lead-compounds (last accessed December 21, 2023). Further, the email also notes high levels of lead in sediment below those cables. ECF No. 91-1 at 95.

### C. DEFENDANT HAS NOT PROVIDED ANY EVIDENCE IT WILL BE UNDULY PREJUDICED BY THE DELAY REQUESTED.

Defendant asserts, without support, that it will be unduly prejudiced by the modest delay sought by Plaintiff. As explained in the Motion, mere delay of litigation is not sufficient to show undue prejudice. *See Crawford v. Delta Sci. Corp.,* No. CV 10-2960-AHM (JCx), 2011 U.S. Dist. LEXIS 47759, *9 (C.D. Cal. April 25, 2011); *see also Software Rights Archive, LLC v. Facebook, Inc.*, No. C-12-3970 RMW, 2013 U.S. Dist. LEXIS 133707, *19 (N.D. Cal. Sep. 17, 2013). Moreover, Defendant has not specified any actual conflicts with their counsel's schedule and the one proposed by Plaintiff during the meet and confer process or in the Opposition. Such general and potential conflicts do not support a finding of undue prejudice.[9]

### III. PLAINTIFF'S PROPOSED SCHEDULE IS REASONABLE.

The primary driver for amending the schedule is to allow sufficient time for Plaintiff to gather necessary data and evidence through sampling and discovery to inform expert analysis and opinions. Through discussions with experts and consultants, CSPA anticipates the sampling will not be completed before March or April 2024. ECF No. 85-2, ¶ 11. To allow time for laboratory analysis of the samples and consideration of the results by experts, CSPA proposes to move the expert disclosure date from April 12, 2024 to August 10, 2024, approximately four months. ECF No. 85-2, ¶ 14. Because the expert disclosure deadline drives all subsequent deadlines, such as the close of discovery and dispositive motion hearing, it is necessary to request amendment of those deadlines. CSPA prepared a schedule that would follow a similar timeline as the original schedule approved by the Court, based off the proposed expert disclosure date. Moreover, as explained in the Motion, CSPA proposed a schedule that would attempt to avoid serious, direct conflicts with preexisting litigation. *See* ECF No. 85 at 13. Thus, CSPA's proposed schedule takes into consideration these factors and is intended to ensure to avoid further future amendments.

---

[9] CSPA is happy to meet and confer with Defendant to address any actual scheduling conflicts, if necessary, after the Court decides this Motion.

## IV. CONCLUSION

For the foregoing reasons and the reasons stated in the Motion, CSPA respectfully requests that the Court grant the Motion and enter the Proposed Order (ECF No. 85-3).

Dated: December 21, 2023                    AQUA TERRA AERIS LAW GROUP

*s/ Erica A. Maharg*
ERICA A. MAHARG
Attorneys for Plaintiff CALIFORNIA
SPORTFISHING PROTECTION ALLIANCE