NAVI SINGH DHILLON (SBN 279537)
navidhillon@paulhastings.com
PETER C. MEIER (SBN 179019)
petermeier@paulhastings.com
CHRISTOPHER J. CARR (SBN 184180)
lucasgrunbaum@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000

HARIKLIA KARIS (*admitted pro hac vice*)
hkaris@kirkland.com
ROBERT B. ELLIS (*admitted pro hac vice*)
rellis@kirkland.com
MARK J. NOMELLINI (*admitted pro hac vice*)
mnomellini@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

Attorneys for Defendant
PACIFIC BELL TELEPHONE COMPANY

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC BELL TELEPHONE COMPANY,<br><br>Defendant. | CASE NO. 2:21-cv-00073-JDP<br><br>**DEFENDANT PACIFIC BELL'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL COMPLIANCE BY NON-PARTY BELOW THE BLUE WITH THE COURT'S ORDERS**<br><br>Judge:      Hon. Jeremy D. Peterson<br>Date:        January 25, 2024<br>Time:       10:00 a.m.<br>Courtroom:  9<br><br>Action Filed:  January 14, 2021<br>Trial Date:    None |

Defendant Pacific Bell Telephone Company ("Pacific Bell") respectfully submits this brief in support of its motion for an order compelling non-party Below the Blue ("BtB") to submit to ESI collection and production by an independent third party, consistent with the review protocol attached as Kelley Decl., Exhibit 1, for the purpose of identifying and producing responsive materials that BtB was required to produce under this Court's November 9, 2023 and December 7, 2023 Orders.

## I.  INTRODUCTION

Over four months ago, Pacific Bell served BtB with a subpoena for documents, communications, and information related to its environmental sampling and testing related to lead-clad cables (the "Subpoena"). BtB failed to produce the subpoenaed information or provide a substantive response before the August 23, 2023 deadline.[1] Pacific Bell then made multiple efforts to confer in good faith with BtB, but after BtB refused to engage, Pacific Bell was ultimately forced to file a motion to compel. After a hearing, on November 9, 2023 the Court ordered BtB to produce all documents responsive to the Subpoena by November 30, 2023. After BtB sought an extension, the Court entered a subsequent order, reiterating that BtB must produce "all documents as to which there is no objection" by December 7, 2023. Dkt. 90.

BtB has not done so. After failing to comply with the August 23 subpoena deadline, BtB also failed to comply with the Court-ordered December 7 deadline. In fact, since the Court's orders were entered, BtB has failed to produce numerous documents and communications responsive to the Subpoena that Pacific Bell knows are in BtB's possession based on productions made by other parties. Moreover, BtB's counsel confirmed that various emails and texts as to which there is no objection remain unproduced. And, in violation of the most fundamental principles of e-discovery, what documents BtB has produced did not result from a document review conducted by an attorney. Instead, those documents were self-selected by BtB's principals, Seth Jones and Monique Fortner. Counsel for BtB initially represented that Jones and Fortner selected these documents using "search terms," yet refused to provide those terms and has since walked back those earlier representations. Kelley Decl., Ex. 6. To date, counsel for BtB has not provided any search terms allegedly used for

---

[1] Both Jones and Fortner attempted to evade service of their individual subpoenas for months. *See* Dkt. 63 at 2-4; Dhillon Decl. Exh. 3-6.

1

1   the initial document collection.  This lack of candor and transparency—and failure to produce
2   documents by the Court-ordered deadline—necessitates an order from this Court requiring an
3   independent third party to collect and produce BtB's documents, consistent with the attached
4   protocol.

5   Relatedly, BtB now also claims that both Jones and Fortner may have lost cell-phone data
6   from the relevant period.  These claims are also mired in uncertainty:  BtB's counsel first claimed
7   that the phones "no longer exist," but now claims that Fortner's phone was exposed to water and that
8   Jones's phone was turned over to an office manager and exchanged for credit.  The vague
9   circumstances surrounding BtB's alleged data loss also show why an independent third-party
10  collection and examination is necessary to ensure a timely, complete, and accurate production.  A
11  forensic analyst will be able to minimize data loss by determining whether relevant data is retrievable
12  from other sources.

13  Unfortunately, Seth Jones and Monique Fortner, the principals of BtB who each attempted to
14  evade process servers for several months, have now repeatedly shown that they cannot be trusted to
15  comply with the Court's Orders.  The Court ordered BtB to produce unobjected-to documents by
16  December 7.  But instead of complying with the Court's Order and the Federal Rules, Jones and
17  Fortner (1) self-selected documents instead of having an attorney conduct the review; (2) relied in
18  part on search terms they inexplicably refuse to disclose; (3) claim that they may have lost responsive
19  data from their phones; and (4) failed to produce various responsive, unobjected to texts and emails
20  by the Court-imposed December 7 deadline.  Given BtB's lack of candor and failure to meet Court
21  deadlines, and the need to move this case forward, Pacific Bell respectfully requests that the Court
22  order BtB to comply with the proposed document collection and production protocol attached as
23  Kelley Decl., Exhibit 1.  That protocol provides an equitable balance between the parties' need for a
24  timely, full, and accurate accounting of the facts, while adequately protecting BtB's privacy interests.

25  **II.     BACKGROUND**

26  Given BtB's prominent role in the underlying dispute, Pacific Bell served the Subpoena on
27  BtB on August 4, 2023, requesting that BtB produce, among other things, all documents and
28  communications related to sampling, testing, and analysis performed on lead-clad telecom cables at

2

1  Lake Tahoe and elsewhere. Dkt. 65, Exh. B. The Subpoena requested compliance within 14 days of
2  service. *Id.* That deadline came and went without a response. Pacific Bell then sent BtB a meet-and-
3  confer letter pursuant to Local Rule 251(b) in a good-faith effort to resolve any issues related to the
4  Subpoena. Dkt. 65 at 1. BtB provided no substantive response other than a conclusory statement
5  objecting to the Subpoena and a representation that BtB would be retaining counsel. *Id.*

6  On September 22, 2023, the Court authorized Pacific Bell to file a motion to compel. On
7  November 9, the Court held a hearing that was attended by Pacific Bell and Jones. That day, after
8  ruling that the eighteen categories of documents sought in the Subpoena were "relevant," the Court
9  granted Pacific Bell's motion and gave BtB until November 30 to produce all responsive documents.
10 Dkts. 80, 83.

11 Two days before the deadline, on November 28, BtB's counsel for the first time provided
12 untimely objections and responses to the subpoena. Dkt. 88-3. The next day, BtB's counsel asserted
13 that some of Jones's and Fortner's communications are privileged under the First Amendment
14 because of a purported "oral agreement" between BtB and the *Wall Street Journal* (the "*Journal*"),
15 whereby BtB agreed to act as "reporters." For the reasons set out in Pacific Bell's Opposition to
16 BtB's Motion for Extension, any such privilege has been waived in this case. *See* Dkt. 87. Moreover,
17 BtB's counsel has not provided any evidence to support this claim. In fact, BtB's counsel has not
18 disclosed (a) when this alleged oral agreement was made, (b) with whom at the *Journal* it was made,
19 or (c) the scope of the purported agreement. Dkt. 88-1, ¶¶ 6-7. Indeed, BtB does not even hold itself
20 out to the public as reporters. Its website says it "is a registered 501(c)(3) nonprofit dedicated to
21 removing debris from water bodies," and whose members individually are "scientists, artists,
22 entrepreneurs, lawyers, and teachers." *See* https://belowtheblue.org/. Similarly, the mission
23 statement of Marine Taxonomic Services (MTS)—an associated entity operated by Jones and
24 Fortner—says that MTS is "an environmental consulting firm committed to providing innovative
25 solutions to help [its] clients create valuable scientific knowledge . . . . [P]rojects are selected and
26 implemented to manage the condition of our natural resources through the procurement of scientific
27 data." https://marinetaxonomicservices.com/. Thus, neither BtB nor MTS has any evident
28 journalistic functions.

Despite the paucity of evidence supporting its waived privilege claim, BtB eventually filed a motion for an extension of time to both respond to the Subpoena and file a motion for reconsideration on the privilege issue. Dkt. 87. The Court gave BtB until December 7 to produce documents to which it had no objections and deferred resolution of BtB's other requests until a December 21 discovery conference. Dkt. 90.

BtB and MTS made two productions before the December 7 deadline, neither of which complied with the Subpoena or the Federal Rules of Civil Procedure. On December 4, BtB produced a single, 2,270-page PDF file that was stripped of all metadata, and on December 6, it produced a 173-page PDF file, again with all metadata removed. Aside from the fact that BtB's failure to include metadata violated Rule 34, *see Javo Beverage Co. Inc. v. Cal. Extraction Ventures, Inc.*, No. 19-CV-1859-CAB-WVG, 2020 WL 2062146, at *7 (S.D. Cal. Apr. 29, 2020); *Nat'l Urban League v. Ross*, No. 20-CV-05799-LHK, 2020 WL 7319403, at *3 (N.D. Cal. Dec. 10, 2020), there were several other serious problems with BtB's productions. First, Jones and Fortner themselves—not their counsel—generated the production, in part by using certain "search terms," but BtB has repeatedly refused to disclose those terms. Second, BtB failed to produce responsive documents Pacific Bell knows exist based on other productions, such as multiple communications with Plaintiff's counsel and at least 38 separate documents that directly relate to Lake Tahoe. Third, absent from the production were any text messages drawn from Jones's or Fortner's cell phones, which BtB attempted to explain away by perfunctorily asserting that Jones's and Fortner's cell phones from the relevant period simply "no longer exist." Dkt. 93, FN 2. As noted below, this statement by BtB was not true, and such an unsubstantiated claim only highlights the need for an independent examination in accordance with Pacific Bell's proposed protocol. *See, e.g.*, *Laub v. Horbaczewski*, No. LACV1706210JAKKSX, 2019 WL 3492402, at *25 (C.D. Cal. July 30, 2019) ("Plaintiffs cannot evade their discovery obligations with unsubstantiated assertions that relevant text messages were lost when Plaintiffs' replaced their phones.").

On December 15, counsel for Pacific Bell followed up to (1) again ask that BtB's counsel produce the relevant documents as they were stored in the ordinary course of business with the related metadata; (2) seek further information regarding how and when relevant cell phones were destroyed;

4

and (3) request the production of a privilege log pursuant to Rule 45. Kelley Decl., Ex. 4 (December 15, Karis Email). In an attempt to resolve these issues, the parties met and conferred on December 18. At the meet-and-confer, BtB's counsel admitted that he had left the document review to Jones and Fortner, rather than collecting the computers and electronic devices and conducting the review himself. Moreover, BtB's counsel acknowledged that its prior representation that the relevant cell phones "no longer exist" was incorrect because Fortner's phone still exists but got wet during a dive, and Jones gave his phone to MTS around November 2022 and its fate is uncertain. Finally, counsel for BtB represented that he intended to produce more responsive documents that had been discovered since the initial productions. Kelley Decl., Ex. 5 (December 20, Kelley Email). Pacific Bell has thus far received no such supplemental production.

Counsel for BtB further represented that he was unsure how to produce documents in native format with bates labels and metadata given his "limited resources" as a solo practitioner. He also reaffirmed BtB's "refus[al] to produce the majority of the responsive documents requested in the subpoena" because they purportedly fell under the reporter's privilege, but counsel was unable to provide even basic details regarding the purported agreement between BtB and the *Journal*, including when the agreement was entered into, who at the *Journal* entered into the agreement, and what communications were covered by the agreement. *Id.*[2]

At the December 21 discovery conference, counsel for BtB again acknowledged that BtB's productions remain incomplete and that BtB continues to uncover responsive documents. For instance, counsel admitted that responsive documents were discovered after BtB was alerted of emails produced by other third parties addressed to or from BtB. In fact, counsel for BtB stated that as of the night before the hearing, he had "hear[d] that . . . there seemed to be [] some more e-mails that [BtB] should be able to produce." Dec. 21, 2023 Hearing Tr. at 10:22-25. Additionally, counsel for BtB indicated that Jones and Fortner did not conduct any searches for the alternate email of an

---

[2] As noted below, BtB now says it is willing to comply with Federal Rule of Civil Procedure 45 and produce a privilege log. But—as Pacific Bell will argue in its response to BtB's motion for reconsideration—BtB's privilege claims based on the above-described "oral agreement" with the *Journal* are wholly without merit. In any event, the Environmental Defense Fund ("EDF") has waived any such reporter's privilege (as BtB has acknowledged, *see* Dkt. 88-1 at 2), and BtB's claim of privilege is derivative of EDF's privilege based on Jones's and Fortner's written contract with EDF to gather environmental samples at various sites around the country.

5

individual that they had communicated with consistently about the Lake Tahoe cables. *Id*. at 11:1-6. Counsel also noted that although the deadline to produce all unobjected to documents was December 7, he was still working on producing relevant text messages and had not determined how to produce them. *Id.* at 11:7-12:3. The Court ordered Pacific Bell and BtB to meet and confer one last time and, if they could not resolve the remaining disputes, file motions no later than January 4, 2024.

On December 22, consistent with the Court's order, counsel for Pacific Bell and BtB met and conferred. Kelley Decl. at ¶ 8. During the call, BtB's counsel declined to provide the search terms used in part by Jones and Fortner to self-select documents. *Id.* BtB's counsel also acknowledged that additional emails required to be produced by December 7 still had not been produced. *Id.* Pacific Bell orally described a third-party document collection and review protocol. *Id.* Counsel for BtB objected that such a proposal would only be acceptable if BtB—and not the third-party vendor—had discretion to conduct a "responsiveness" review without involvement of the independent third party. *Id.* Counsel for Pacific Bell responded that, given BtB's track record of failing to provide productions by Court-ordered deadlines, BtB's omission of emails and text messages from prior productions, and BtB's failure to be transparent about the "search terms" it used, an independent expert should conduct the responsiveness review and production, and Pacific Bell would be willing to bear the cost. *Id.*

On December 28, Pacific Bell provided BtB's counsel with a written document-review protocol, pursuant to which BtB would submit to an independent collection and production from its computers and mobile devices, along with any email and cloud-based electronic storage accounts accessible from those computers and mobile devices. Kelley Decl., Exhibit 1. The protocol provides, in relevant part, that the parties will jointly select an independent expert and that BtB will make available to the expert all computers and mobile devices used by Seth Jones or Monique Fortner for work related to BtB and MTS at any time between January 1, 2020 to the present. *Id.*, ¶ 2. The independent expert will be granted access to cloud-based information and emails accessible through the devices. *Id.*, ¶ 2. The independent expert will determine what documents are responsive to the Subpoena. *Id.* The independent expert will immediately produce to the parties all Subpoena-responsive documents (1) dated before the *Journal* investigation began, which is the earliest the journalistic privilege could conceivably arise; and (2) dated after the *Journal* articles were published

6

but before the date Mr. Koltun was retained (*i.e.*, the date BtB may conceivably begin to assert attorney-client privilege). The production would include the metadata fields that BtB was previously unable to produce. *Id.*, ¶ 5. Responsive documents falling within the potentially privileged time frames will be provided to BtB's counsel for review. *Id.*, ¶ 6. Then, within seven days, BtB's counsel will provide a privilege log with information agreed to by the parties for any documents claimed to be privileged. *Id.*, ¶ 6.

The protocol further provides that Pacific Bell will pay for all fees and costs reasonably necessary for the independent expert to perform his work, at least up to $100,000, *Id.* ¶¶ 12-13, and that the expert will sign a nondisclosure agreement approved by Pacific Bell and BtB, *Id.* ¶ 1, to protect against any privacy or confidentiality concerns.

On January 2, 2024, counsel for BtB rejected Pacific Bell's proposed protocol. Kelley Decl., Ex. 6. While BtB's counsel now concedes that BtB needs a third-party vendor to handle the technical issues related to collection and preservation of ESI required by the Subpoena—and insisted that Pacific Bell pay for a third-party vendor to correct the deficiencies that BtB's counsel created—he nevertheless rejected Pacific Bell's protocol without any reasoned justification. *Id.* BtB's counsel stated only that Pacific Bell's protocol is "highly unusual" and "not acceptable." *Id.* Counsel for BtB sent a follow-up email on January 3, 2024, walking back earlier representations that Jones and Fortner had previously used search terms and instead representing for the first time that search terms were only "used to supplement" the searches performed by Jones and Fortner. *Id.*

That said, counsel for BtB did agree with Pacific Bell on several important issues. First, BtB's counsel agreed to accept the technical specifications for the production of documents outlined in Exhibit C of the protocol, which would guarantee that BtB produce all documents in their native format with the appropriate metadata, as has always been required under the Subpoena and by Rule 34. Kelley Decl., Ex. 6. Indeed, by specifically contemplating "that the vendor would be able to quickly locate those documents that have already been produced so that they may be produced again under the technical ESI protocol (Exhibit C)," BtB's counsel all but acknowledged that BtB's prior productions lacking metadata were deficient and required correction. *Id.* Second, BtB's counsel conceded that files from several additional custodians should be included in BtB's productions in

7

response to the Subpoena. *Id.* Finally, BtB relented in its prior refusal to produce a privilege log, agreeing to provide one as required under Rule 45.[3]

### III.   ARGUMENT

BtB's existing production fails to comply with this Court's November 9 and December 7 orders, as well as the Federal Rules. In light of these reoccurring deficiencies and BtB's lack of transparency, the Court should order BtB to submit its electronic devices and cloud-based accounts to an independent third party for collection and production consistent with the protocol attached as Kelley Decl., Exhibit 1.

Chief among the reasons why BtB has failed to satisfy its discovery obligations is that Jones and Fortner—who have no known experience with sophisticated e-discovery practices—self-selected documents to produce based (at least in part) on undisclosed "search terms" that have proven to be incomplete and inadequate. Indeed, as noted above, counsel for BtB confirmed during the December 21 hearing that he allowed Jones and Fortner to review their own computers and devices to collect documents they determined to be relevant for production.

The kind of custodian "self-collection" that BtB has practiced here is "strongly disfavored" by the federal courts. *Poe v. Nw. Mut. Life Ins. Co.*, No. SA CV 21-2065-SPG (Ex), 2023 WL 4155378, at *1 (C.D. Cal. Apr. 24, 2023).[4] And for good reason. "Parties and counsel that embark

---

[3] *See Relevant Grp., LLC v. Nourmand*, No. CV 19-5019-ODW (KSX), 2021 WL 9696765, at *4 (C.D. Cal. July 26, 2021) ("Cases in this Circuit and beyond consistently hold that a subpoenaed non-party must provide a privilege log when withholding responsive documents based on privilege."); *see also In re Grand Jury Subpoena*, 274 F.3d 563, 575 (1st Cir. Nov. 8, 2001); *Mosley v. City of Chicago*, 252 F.R.D. 445, 449 (N.D. Ill. Sept. 8, 2008).

[4] Federal Rule of Civil Procedure 26(g) also requires that every discovery response and objection be signed by at least one attorney of record; signing the responses and objections certifies that the attorney has undertaken a reasonable inquiry to ensure that disclosures are complete and correct, and that the client has provided all information and documents responsive to the discovery demand. *See* Fed. R. Civ. P. 26(g). Rule 26(g) thus requires counsel to be "proactive in ensuring that his clients are conducting thorough and appropriate document searches, especially in light of obvious gaps and underproduction." *Logtale, Ltd. v. IKOR, Inc.*, No. 4:11-cv-05452 CW (DMR), 2013 WL 3967750, at *2 (N.D. Cal. 2013); *see also Perkins v. City of Modesto*, No. 1:19-cv-00126-LJO-EPG, 2020 WL 1333109, at *4 (E.D. Cal. Mar. 23, 2020); *Collins-Williams v. Contour Eastwyck LLC*, No. 1:20-CV-3129-CAP, 2022 WL 17828934, at *93 (N.D. Ga. Dec. 15, 2022) ("[T]he case law applying Rule 26(g) to electronic discovery sets a high bar for attorneys. It is now generally understood that an attorney must take an active role in the investigation of his or her client's ESI."). When an attorney fails to comply with Rule 26(g), this Court may order sanctions against the attorney, his client, or both. *See* Fed. R. Civ. P. 26(g)(3). Moreover, a Court may order a "forensic review" above and beyond what might be required by Rule 26(g) when a party's "abject failure to make efforts responsive to the questions necessitated a more-thorough review." *Stolz v. Travelers Com. Ins. Co.*, No. 2:18-CV-1923-KJM-KJN, 2020 WL 2038990, at *12 (E.D. Cal. Apr. 28, 2020), *report and recommendation adopted*, 2020 WL 4895706 (E.D. Cal. Aug. 20, 2020).

on self-collection can soon encounter multiple pitfalls that can sidetrack the litigation and lead to motions to compel, spoliated evidence, and even sanctions," including "failure (1) to identify all sources of responsive information; (2) to preserve evidence, (3) to find or provide to counsel all responsive documents and ESI, or (4) to fully document how they conducted their searches." *Benanav v. Healthy Paws Pet Ins. LLC*, No. C20-00421-LK, 2022 WL 3587982, at *4 (W.D. Wash. Aug. 22, 2022) (internal citations omitted); *see also Tera II, LLC v. Rice Drilling D LLC*, No. 2:19-cv-2221, 2022 WL 1114943, at *4–5 (S.D. Ohio Apr. 14, 2022) (self-collection by document custodians tends to give rise to "questions regarding the accuracy and completeness of collections if directions and oversight by legal counsel or forensics experts are poor or non-existent") (quoting *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 167 (2018)).

BtB's deficient productions thus far epitomize these pitfalls. Those productions are concededly incomplete—productions by other parties have confirmed as much; BtB's counsel continues to "discover" new responsive documents that should have been disclosed earlier; and Pacific Bell is aware of numerous custodians whose documents have not been collected, as well as dozens of directly responsive documents that have not been produced.  Likewise, because BtB has failed to engage in a transparent, systematic document-collection process, it has given neither this Court nor Pacific Bell any hint of just how incomplete its existing productions are.  Indeed, BtB's counsel acknowledged on December 18 that "search terms" were used by Jones and Fortner, but on December 22 and January 3 refused to disclose those "search terms," and represented for the first time that search terms were only "used to supplement" the searches performed by Jones and Fortner. *Contra Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, No. SA CV 15-00246-DOC (DFMx), 2016 WL 6246384, at *1 (C.D. Cal. Feb. 23, 2016) ("At a minimum, parties must share some information about the protocol used to ensure that responsive documents are collected and produced.").  Moreover, counsel for BtB has indicated that the primary reason for BtB's failure to produce metadata associated with each document is largely based on his and his client's unfamiliarity with basic e-discovery procedures.  That is no excuse. *See DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 942 (N.D. Ill. Jan. 19, 2021) ("It is no longer amateur hour.  It is way too late in the day for

lawyers to expect to catch a break on e-discovery compliance because it is technically complex and resource-demanding.").

While BtB's newfound recognition that it requires third-party e-discovery assistance is commendable, its refusal to agree to the proposed protocol demonstrates why its bare agreement to using a third-party vendor is cold comfort to Pacific Bell: based on Jones's and Fortner's conduct to date, Pacific Bell has no reason to believe that BtB will ultimately provide complete, accurate, or timely productions necessary to keep this case moving.

Given the multiple attempts Pacific Bell has made to address BtB's discovery deficiencies, the appropriate remedy at this point is for BtB to retain a third-party vendor to collect and produce responsive documents in strict accordance with the terms of the protocol attached as Kelley Decl., Exhibit 1. BtB has "both unreasonably delayed and also prevented the completion of full discovery by, among other things, initially attempting and failing to complete e-discovery on its own without a proficient e-discovery vendor." *Optrics Inc. v. Barracuda Networks Inc.*, No. 17-CV-04977-RS (TSH), 2021 WL 411349, at *7 (N.D. Cal. Feb. 4, 2021). "A client-led search like the one here, where [BtB] had no experience with electronic discovery, was not reasonable." *Id.* In light of BtB's repeated and deliberate failures to comply with the Court's prior discovery orders, it has shown itself incapable of independently respecting its discovery obligations. The Court should therefore order BtB to submit its electronic devices and cloud-based email and storage accounts to a neutral third-party vendor for collection and production in accordance with the protocol attached as Kelley Decl., Exhibit 1. *See, e.g.*, *Tera II, LLC*, 2022 WL 1114943, at *4 ("find[ing] that compelling collection by a third-party vendor is necessary to ensure proper responses to [] requests for production" after the party performed deficient self-collection); *Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2014 WL 800468, at *3 (S.D. Fla. Feb. 28, 2014) (ordering a third-party forensic examination after a party's self-collection resulted in obvious discovery deficiencies), *amended*, 2014 WL 11878435 (S.D. Fla. May 5, 2014); *Thomas v. Marshall Pub. Sch.*, No. 21-CV-2581 (PJS/DJF), 2023 WL 5743611, at *14 (D. Minn. Sept. 6, 2023) (ordering forensic examination when the defendants had never "even intimated that they attempted to collect ESI from the Defendants' personal devices in a forensically sound manner"); *see also Weinstein v. Katapult Grp., Inc.*, No. 21-cv-05175-PJH, 2022 WL 4548798,

at *2 (N.D. Cal. Sept. 29, 2022) (a party's self-collection was insufficient and rectified only when third-party vendor was retained to collect materials and run searches for relevant documents).

Pacific Bell's proposed document-review protocol is designed precisely to remedy BtB's failures in a way that reasonably protects the interests of both the parties and BtB: it proposes to employ an independent expert (at Pacific Bell's expense) to ensure that responsive information is preserved in a forensically sound manner while protecting any of BtB's preserved privacy interests. The Court should therefore order BtB's compliance with the protocol.

## IV.   CONCLUSION

For the foregoing reasons, Pacific Bell respectfully requests that the Court grant its Motion to Compel Compliance With the Court's November 9 and December 7 Orders, and enter a new order requiring BtB and its principals, Seth Jones and Monique Fortner, to provide all computers, mobile or other devices, and electronic cloud-based accounts used by Seth Jones or Monique Fortner for, in connection with, or related to any work for Below the Blue or Marine Taxonomic Services at any time between January 1, 2020 to the present, or belonging to Seth Jones and Monique Fortner at any time between January 1, 2020 and the present to an independent third-party forensic expert for examination, consistent with the document-review protocol attached as Kelley Decl., Exhibit 1.

Dated: January 4, 2024

Respectfully submitted,

KIRKLAND & ELLIS LLP

*/s/ Hariklia Karis*
HARIKLIA "CARRIE" KARIS
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Email: hkaris@kirkland.com

Attorney for Defendant
PACIFIC BELL TELEPHONE COMPANY

11