# **EXHIBIT 5**

| | |
|---|---|
| **From:** | Kelley, Jon David |
| **To:** | Joshua Koltun; Karis, Hariklia |
| **Cc:** | Nomellini, Mark J.; Meier, Peter C.; *navidhillon@paulhastings.com |
| **Subject:** | RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company |
| **Date:** | Wednesday, December 20, 2023 8:54:54 PM |
| **Attachments:** | image001.png |

Joshua,

We write to memorialize the issues discussed during our meet and confer Monday afternoon, and also to repeat our request for information that we sought during that call but that you were unable to provide.

- **Collection of responsive materials:**
    - We asked you what steps your clients took to collect documents responsive to Pacific Bell's subpoena. You represented that you discussed Pacific Bell's document requests with your clients, described what they should look for, and that your clients were responsible for identifying and pulling documents they deemed in their judgment to be responsive based on your discussions.
    - Accordingly, you acknowledged that you relied on their judgment with regard to identifying documents both for purposes of responsiveness and privilege, and that you did not conduct the responsiveness or privilege review yourself.
    - You confirmed that you did not collect your client's custodial files, nor did you run any searches, yourself, through your client's files.
    - You also mentioned that your clients used certain "search terms" to conduct these searches, but when asked what terms your clients used, you responded that you did not know.  <u>Please provide the search terms</u>.
    - You confirmed that all documents reflecting any communications between your clients and Plaintiff in this case had been given to you.  We asked about your basis for this statement, and you confirmed that this is what your clients had represented to you, that you were relying on their representation, and that you had not reviewed the documents that your clients determined did not reflect communications between them and Plaintiff.
    - We asked whether documents had been collected from any BtB or MTS employee, aside from Jones and Fortner, and you responded that an individual named Robert Mooney may have responsive documents.  <u>Please confirm whether Mr. Mooney has documents responsive to the subpoena</u>.
    - You confirmed that you had taken no steps to confirm whether the videographer involved with the Lake Tahoe cables was in possession of responsive documents, but you were not aware of any others.  <u>Please confirm whether the videographer has documents responsive to the subpoena.</u>

- **Status of information from Jones' and Fortner's phones:**
    - In your e-mail of December 10th, after we inquired why there were no text messages in your client's document production, you wrote that your clients' cell phones "no longer exist" and that your clients were trying to determine "whether any old text messages might still exist."  <u>Please confirm whether Jones' text messages pre-dating the "loss" of his phone exists.</u>
    - We explained to you both via e-mail and during our call today the reasons this is such a significant problem, especially given the importance of your clients' communications during this period.
    - During our call yesterday, you explained that the representations you made on December 10 were incorrect.  You represented that Jones "got rid of his old phone" in or around November of 2022. You further represented that Fortner's phone "got wet" and she was forced to get a new phone, but her phone had retained all old text messages as far as you were aware.
    - You made the following representations in response to our questions concerning the status of Jones' and Fortner's phones:
        - **Jones**:
            - You stated that Jones gave his phone to MTS in or around November of 2022, and as a result he is no longer in possession of the phone, nor does he have access to any of the information that was previously on it.  <u>Please confirm the name of the person at MTS who Jones gave his phones to, what that MTS person did with it, and when.</u>
            - You stated that you did not know whether Jones has photos that were on his phones before November 2022.  <u>Please confirm.</u>
            - You stated that, to your knowledge, this was not his personal phone, but it was owned by MTS.  <u>Please confirm.</u>
            - You stated that MTS no longer has access to the phone, either, but you did not know why, or what happened to it.  <u>Please confirm what happened to the phone.</u>
            - You speculated that MTS may have turned the phone into the phone company "for credit," though you again stated that you were simply not sure what happened to it. <u>Please confirm.</u>
            - You stated that you did not know whether Jones' iPhone information was backed up to the cloud.  <u>Please</u>

- <u>confirm.</u>
  - You stated that Jones used the same phone number before and after the event.  <u>Please confirm.</u>
  - You stated that both Jones and Fortner used AT&T as their carrier.
- **Fortner**:
  - You represented that Ms. Fortner's cell phone "got wet" during a dive, and that she was forced to get a new phone. We asked you when this occurred, and you said you did not know.  <u>Please confirm when and how Ms. Fortner's phone "got wet."</u>
  - You further stated that this new phone still has all of her prior text messages dating back to 2015 or 2016.
  - We asked you to confirm whether Ms. Fortner had all of the photos it had before it got wet.  You said you did not know.  <u>Please confirm.</u>
  - You stated that Fortner used the phone number before and after the phone "got wet."  Please confirm.
  - When we asked you why none of these text messages had been produced, you responded that "none are responsive" as far as you are aware.
  - You again confirmed that your clients did not turn over or provide any text messages to you that would allow you to search for responsive information.
  - You confirmed that you have not seen any of Fortner's text messages, nor have you reviewed any of Fortner's text messages to determine whether any are privileged.
  - You represented that, to ensure collection and production of responsive messages, you had simply "relied on my client who told me she doesn't have anything."

- **Status of production:**
  - We asked you whether your clients had completed their productions. You responded that your clients had completed production of all documents to which they did not object, including (1) all documents and correspondence with plaintiffs, and (2) all documents in your clients' possession that relate to the Lake Tahoe litigation.
  - You also mentioned that a small additional production of a "handful" of documents was forthcoming, based on information you received just before our call from your clients. You did not (or could not) identify the size of this production, and you did not offer any reason these documents had not been previously produced.
  - You identified the source of this forthcoming production as being an employee of MTS named Robert Mooney.

- **Format of production:**
  - You represented that you produced your clients' documents in PDF format because you believed this was the only way to bates-label emails.
  - We informed you that emails and other documents are routinely produced in litigation with bates-labels and metadata.
  - You explained that you were unsure how to make such a production given your "limited resources" as a solo practitioner, and we agreed to provide you with tips and instructions concerning how such a production could be made.
  - At the end of this e-mail, we have provided instructions and tips concerning how emails and other documents can be produced as they are stored in the ordinary course without losing metadata.
  - You also represented that it might "take time" for you to produce documents with metadata, and suggested that narrowing the scope of the documents would speed up the process.
  - We explained that production as these documents are kept in the ordinary course was required under the rules, and Pacific Bell would not prejudice itself by agreeing to a delayed production, or to narrowing the scope of documents it is willing to receive with metadata.
  - We again explained that Pacific Bell will pay for an independent third-party eDiscovery vendor to handle all data collection and production for your clients.

- **Privilege assertion:**
  - We asked you to describe the nature of the privilege you claim that forms the basis of your client's refusal to produce a majority of the responsive documents requested in the subpoena.
  - You again claimed that your clients entered into an oral agreement with the Wall Street Journal to act as reporters, and that as a result, all documents and communications relating to that investigation were privileged.
  - You admitted that the reporters' privilege can be waived, but again insisted that EDF's production of the very documents you claim are privileged somehow does not wave privilege as to your clients.
  - We asked you to provide the basic details of this alleged agreement between your clients and the Journal, and you were unable to provide any of the information requested, including:
    - When the agreement was entered between your clients and the Wall Street Journal;
    - Who at the Wall Street Journal entered into the agreement with your clients; or
    - The scope of the agreement between your clients and the Wall Street Journal, and what was covered.

- **Privilege log:**
  - You confirmed that your clients refuse to produce a privilege log.

**Methods of Production that Comply with the Federal Rules and Pacific Bell's subpoena:**

Finally, as discussed, it is a standard (and required) practice in litigation to bates label and produce emails and other documents without losing or otherwise altering metadata.

The following are key steps you can and should take to comply with your production obligations.  We again reiterate our willingness to pay for a vendor to simply conduct the collection and handle bates-labeling and production for you.

- The process for labeling and producing varies depending on the technology being employed to collect and review documents.
- As an example, discovery software called Relativity is the most widely used, and it is used by a variety of e-discovery vendors and law firms that can collect data from most enterprise platforms and makes it possible to review the data and create productions with both automated and custom workflows while allowing bates stamping and redaction without altering or otherwise removing metadata.
- If you do not have access to this or similar software, an e-discovery vendor can assist without requiring familiarity with the technological requirements to produce documents in a manner that meets the requirements of the FRCP.
- In the absence of such a tool, you could simply produce documents in their native form as we requested in our earlier correspondence, and we would be willing to bates label the documents for you.
- If the documents are located in Outlook, you can drag the messages out of Outlook into a folder where they will be saved as MSG files, which can be exported via FTP to allow preservation of the documents' metadata.

Please provide answers to the identified questions prior to our conference with the Court on December 21, and let us know whether your clients agree to produce its documents in a form that complies with the federal rules.

Thanks,

Jon

**Jon David Kelley**

---

**KIRKLAND & ELLIS LLP**
4550 Travis Street, Dallas, TX 75205
**T** +1 214 972 1755   **M** +1 480 225 9934
**F** +1 214 972 1771

---

jon.kelley@kirkland.com

---

**From:** Joshua Koltun <joshua@koltunattorney.com>
**Sent:** Friday, December 15, 2023 2:38 PM
**To:** Karis, Hariklia <hkaris@kirkland.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>; Meier, Peter C. <petermeier@paulhastings.com>; *navidhillon@paulhastings.com <navidhillon@paulhastings.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

---

**This message is from an EXTERNAL SENDER**
Be cautious, particularly with links and attachments.

---

Lets talk at 10 am Pacific Monday

**Joshua Koltun** ATTORNEY

One Sansome Street
Suite 3500, No. 500
San Francisco, CA 94104

415.680.3410
866.462.5959 fax