NAVI SINGH DHILLON (SBN 279537)
navidhillon@paulhastings.com
PETER C. MEIER (SBN 179019)
petermeier@paulhastings.com
CHRISTOPHER J. CARR (SBN 184076)
chriscarr@paulhastings.com
LUCAS V. GRUNBAUM (SBN 314180)
lucasgrunbaum@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000
Fax: (415) 856-7100

HARIKLIA KARIS (*admitted pro hac vice*)
hkaris@kirkland.com
ROBERT B. ELLIS (*admitted pro hac vice*)
rellis@kirkland.com
MARK J. NOMELLINI (*admitted pro hac vice*)
mnomellini@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Fax: (312) 862-2200

Attorneys for Defendant
PACIFIC BELL TELEPHONE COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,

Plaintiff,

vs.

PACIFIC BELL TELEPHONE COMPANY,

Defendant.

CASE NO. 2:21-cv-00073-MCE-JDP

**DEFENDANT PACIFIC BELL'S OPPOSITION TO BELOW THE BLUE'S MOTION RE RECONSIDERATION**

Judge: Hon. Jeremy D. Peterson
Date: January 25, 2024
Time: 10:00 a.m.
Courtroom: 9

Action Filed: January 14, 2021
Trial Date: None

# TABLE OF CONTENTS

Page

INTRODUCTION ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 5

A. BTB Does Not Meet the Requirements For Reconsideration. ........ 5

B. The Motion for Protective Order Is Procedurally Defective ........ 7

1. The Motion Lacks a Privilege Log and Evidentiary Support ........ 7

2. The Purported Motion by MTS, Jones, and Fortner Is Improper ........ 8

C. BTB Cannot Claim Privilege Because It Is a Source, Not a Reporter. ........ 8

D. Regardless, the Documents Are Discoverable. ........ 12

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Sav. Bank, FSB v. UBS Painewebber, Inc.*
No. M8-85, 2002 WL 31833223 (S.D.N.Y. Dec. 16, 2002) .......... 7

*In re Application of Chevron Corp.*
749 F. Supp. 2d 135, 140 (S.D.N.Y. 2010) .......... 7, 8, 12

*Ayala v. Ayers*
668 F. Supp. 2d 1248 (S.D. Cal. 2009) .......... 12

*Beaver Cnty. Employers Ret. Fund v. Tile Shop Holdings, Inc.*
No. 16-MC-80062-JSC, 2016 WL 3162218 (N.D. Cal. June 7, 2016) .......... 10

*Branzburg v. Hayes*
408 U.S. 665 (1972) .......... *passim*

*Bredemus v. Intl. Paper Co.*
No. CV 06-1274 (PJS/RLE), 2008 WL 11348492 (D. Minn. Aug. 22, 2008) .......... 7, 8

*Carroll v. TheStreet.com, Inc.*
No. 11-CV-81173, 2014 WL 5474048 (S.D. Fla. Apr. 10, 2014) .......... 9

*Carroll v. Nakatani*
342 F.3d 934 (9th Cir. 2003) .......... 5

*Cachil Dehe Band of Wintun Indians of Colusa Indian Community v. California*
649 F. Supp. 2d 1063 (E.D. Cal. 2009) .......... 5

*Chevron Corp. v. Berlinger*
629 F.3d 297 (2d Cir. 2011) .......... 10, 11

*Crowe v. Cnty. of San Diego*
242 F. Supp. 2d 740 (S.D. Cal. 2003) .......... 13

*Cusumano v. Microsoft Corp.*
162 F.3d 708 (1st Cir. 1998) .......... 9

*Ecret v. City of Black Diamond*
No. C07-0171RAJ, 2008 WL 11506712 (W.D. Wash. Aug. 5, 2008) .......... 6

*Est. of Klieman v. Palestinian Auth.*
293 F.R.D. 235 (D.D.C. 2013) .......... 12

*In re Eurasian Natural Res. Corp*
No. 18-mc-80041, 2018 WL 1557167 (N.D. Cal. Mar. 30, 2018) .......... 7

*Fed. Deposit Ins. Co. for Butte Community Bank v. Ching*
No. 2:13-CV-01710-KJM-EFB, 2015 WL 13655664 (E.D. Cal. Dec. 1, 2015) .................. 5, 6

*Foltz v. State Farm Mut. Auto. Ins. Co.*
331 F.3d 1122 (9th Cir. 2003)........................................................................................ 7

*F. Marc Schaffel Productions, LLC v. TMZ Productions, Inc.*
No. CV1001306GHKSSX, 2010 WL 11549388 (C.D. Cal. Dec. 16, 2010).......................... 15

*In re Gray Media Group Inc.*
No. MC 22-00592 LEK-RT, 2023 WL 348232 (D. Haw. Jan. 20, 2023) .............................. 15

*Griffith v. Davis*
161 F.R.D. 687 (C.D. Cal. 1995) .................................................................................. 15

*Gonzales v. NBC*
194 F.3d 29 (2d Cir. 1999)........................................................................................... 14

*Kiobel v. Royal Dutch Petroleum Co.*
No. 02CIV7618(KMW)(HBP), 2005 WL 1925656 (S.D.N.Y. Aug. 11, 2005)..................... 12

*Kona Enterprises, Inc. v. Est. of Bishop*
229 F.3d 877 (9th Cir. 2000)................................................................................... 1, 5, 6

*Kristensen v. Credit Payment Services Inc.*
No. 2:12-CV-00528-APG-PAL, 2015 WL 12966283 (D. Nev. Mar. 17, 2015) ...................... 6

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*
571 F.3d 873 (9th Cir. 2009)........................................................................................ 5

*McCurdy v. Kernan*
No. 1:17CV01356SABPC, 2021 WL 5822868 (E.D. Cal. Dec. 8, 2021) ............................ 1, 6

*Montesa v. Schwartz*
No. 12CIV6057CSJCM, 2016 WL 3476431 (S.D.N.Y. June 20, 2016) .......................... 10, 17

*Mosley v. City of Chicago*
252 F.R.D. 445 (N.D.Ill., 2008)................................................................................ 2, 7, 9

*Relevant Group, LLC v. Nourmand*
No. CV 19-5019-ODW (KSX), 2021 WL 9696765 (C.D. Cal. July 26, 2021)........................ 7

*Shoen v. Shoen* (*Shoen I*)
5 F.3d 1289 (9th Cir. 1993)...................................................................................... 10, 11

*Shoen v. Shoen* (*Shoen II*)
48 F.3d 412 (9th Cir. 1995)......................................................................................... 12

*Sony Computer Ent. Am., Inc. v. Great Am. Ins. Co.*
229 F.R.D. 632 (N.D. Cal. 2005) .................................................................................. 12

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, No. CIV. S-06-2845LKKJFM, 2009 WL 1288047, at *3 (E.D. Cal. May 6, 2009). .......... 6

*Taser Intern., Inc. v. Stinger Sys., Inc* No. CV07-00042-PHX-MHM, 2010 WL 2266739 (D. Ariz. June 4, 2010) .......... 6

*In re: Terrorist Attacks On September 11, 2001* No. 03-MD-1570, 2021 WL 4319428 (S.D.N.Y. Sept. 23, 2021) .......... 9

*U.S. v. Eghbal* No. CV061091JFWFMOX, 2009 WL 10671386 (C.D. Cal. June 4, 2009) .......... 12

*U.S. v. Treacy* 639 F.3d 32 (2d Cir. 2011) .......... 13

*von Bulow by Auersperg v. von Bulow* 811 F.2d 136 (2d Cir. 1987) .......... 10, 11, 13

**Statutes and Rules**

Proc. for Civ. Matters Before JDP, Section I.C .......... 8

E.D. Cal. L.R. 230 .......... 6

Fed. R. Evid. 602 .......... 12

Fed. R. Evid. 802 .......... 12

Pacific Bell respectfully submits this opposition to Below the Blue (BTB)'s motion for partial reconsideration of this Court's order directing it to comply with Pacific Bell's subpoena and a protective order.[1]

## INTRODUCTION

BTB has been behind this litigation since day one. After scuba divers from BTB sawed off a portion of a lead-clad cable in Lake Tahoe, they sought out Plaintiff's counsel. These same scuba divers from BTB later agreed to provide consulting services and information to another organization that, in turn, was a source for the *Wall Street Journal*. Pacific Bell reasonably seeks information regarding BTB's activities to aid trial preparation. After months of delay tactics and with this Court having already ordered production, BTB now improperly asserts a qualified privilege designed to protect independent, dispassionate reporters, not those reporter's *sources*. BTB's motion, if granted, would expand that the reporter's privilege far beyond the narrow parameters set by the Supreme Court and the Ninth Circuit. The Court should deny the motion for reasons that include:

*First*, BTB falls far short of showing the "extraordinary remedy" of reconsideration is warranted. *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). BTB does not meaningfully discuss the requirements for reconsideration, much less apply them. BTB claims the retention of new counsel supports reconsideration. Court in this District disagree. BTB "does not get the proverbial second bite at the apple simply because it obtains new counsel during the course of the litigation." *McCurdy v. Kernan*, No. 117-cv-01356, 2021 WL 5822868, at *1 (E.D. Cal. Dec. 8, 2021). The Court's analysis can end here.

*Second*, BTB failed to meet its evidentiary burden to show with particularity that the reporter's privilege applies. At the informal discovery conference, the Court raised the issue of a privilege log and BTB countered the law does not require a log. BTB is wrong. Rule 45 requires

---

[1] The Court only granted BTB leave to file its motion. Dkt. 95. As explained below, the Notice of Motion improperly lists Marine Taxonomic Services, Ltd. (MTS), Seth Jones, and Monique Fortner as parties moving for a protective order even though none complied with this Court's Procedures related to filing discovery motions. For that reason, Pacific Bell focuses its opposition on BTB's motion, although its arguments apply with equal force to the improper protective-order motion that the other non-parties have purported to file.

a privilege log whenever a party asserts privilege, and it contains no exception for the reporter's privilege. Indeed, a legion of courts have required production of a privilege log to invoke the reporter's privilege and have held that any such privilege is waived if one fails to do so. *See e.g.*, *Mosley v. City of Chicago*, 252 F.R.D. 445, 448-49 (N.D. Ill. 2008). Because BTB's motion is unaccompanied by a privilege log—and because BTB's sole declaration from Seth Jones is no substitute for such a log—its claim of privilege necessarily fails.

*Third*, BTB's motion should be denied because neither BTB nor the other non-parties (MTS, Jones, Fortner) come close to showing they are reporters. They were *sources* of factual information. This distinction is critical because the reporter's privilege belongs to a reporter, *not* the source. *See Branzburg v. Hayes*, 408 U.S. 665, 695 (1972) (privilege "is that of the reporter," not the source). Allowing BTB to invoke the reporter's privilege would erase any distinction between a reporter and her source and frustrate the civil discovery process.

*Fourth*, even if the qualified privilege were to apply (and it does not), Pacific Bell has satisfied all the criteria to overcome it in any event. First, for purposes of discovery, the information is relevant, as this Court has already held. It relates to alleged claims of public harm by individuals and entities who are likely to be trial witnesses and were the catalyst of this litigation. Indeed, BTB, MTS, Jones, and Fortner collected information and have selectively shared some of it with Plaintiff and others. Second, there is no alternative source for the requested information. Third, the information is not cumulative because it relates to unique and specific environmental sampling activities conducted by BTB, MTS, Jones, and Fortner, and no one else.

BTB should not be permitted to hide facts based on a meritless claim that it is a reporter and not a source, especially when it is the catalyst of this very lawsuit. We ask that the Court deny the motion.

**BACKGROUND**

According to its website, BTB "is a registered 501(c)(3) nonprofit dedicated to removing debris from water bodies and educating the public about pollution." *See* https://belowtheblue.org/. From the filing of the Complaint in this case in 2021, BTB served as a litigation consultant. According to Plaintiff's counsel, BTB scuba divers dove into Lake Tahoe, cut a cable, and served

this case to Plaintiff "on a platter." Meier Decl., Ex. 1, at 6; Dkt. 100, ¶ 3. Thus, from the "inception" of its involvement (BTB Br. at 10), BTB's intent was to support the Plaintiff's case, not to report the news.

On April 14, 2022, MTS,[2] an entity like BTB that is affiliated with Jones and Fortner, entered into a contract with the EDF. The documents at issue in this motion were generated as part of Jones's and Fortner's work under that contract, which provides in part:

> EDF seeks to understand the extent to which power and telecom cables running through rivers, lakes and drinking water sources may have been constructed using lead pipe and which now may pose a public health that needs to be addressed. The Consultant has particular expertise and experience conducting investigation in bodies of water. It also shares EDF's interest in protecting public health should a risk be identified and, therefore, an interest in making any finding from its work publicly available. Consultant will investigate six regions across the United States and will perform research including but not limited to determining the composition of decommissioned power and telecom cables running through rivers, streams, and lakes and evaluating the water around identified lead cables for the presence of lead. The regions include the West (California), Northwest (Oregon), Midwest (Michigan), New England (Massachusetts), Mid-Atlantic (Pennsylvania), and South (Georgia). [Meier Decl., Ex. 3, at 1]

EDF agreed to pay MTS $85,000 for its services. As EDF later admitted in a report it published of MTS' findings (the EDF Report), Jones and Fortner cherry-picked sites for sampling, based on the likelihood of finding high lead levels. Meier Decl., Ex. 2, at 5 ("Sampling locations were chosen in part by their likelihood to show high lead levels."). Jones and Fortner then gathered samples, and provided them to companies engaged by EDF and the *Journal* for testing, such as EHS and Pace Laboratories. *Id.* Those testing companies, which have not claimed privilege (Meier Decl., ¶ 6), then provided the results to EDF and the *Journal*. In July 2023, reporters with the *Journal* published a series of articles on lead-clad cables that extensively cited the work of BTB, Jones, Fortner, and MTS as sources regarding the alleged levels of lead in water, sediment, and soils near lead-clad cables, including in Lake Tahoe.

In light of BTB's role in initiating this litigation, and its EDF-funded environmental sampling near lead-clad cables, including in Lake Tahoe, Pacific Bell sought the production of BTB's relevant documents. To that end, Pacific Bell served a subpoena on BTB on August 9, 2023. On August 15, the General Counsel of EDF, Tokë Vandervoort, requested that BTB "not share any

[2]MTS is owned by the principals of BTB, Jones and Fortner.

documents at this time." Meier Decl., Ex. 4. BTB, acting through Jones and Fortner, complied with this instruction. Indeed, to avoid having to share any responsive documents, Jones and Fortner attempted to evade service of Pacific Bell's subpoenas for several weeks (Dkt. 63, Dkt. 64, Dkt. 68).

Meanwhile, on August 26, BTB—acting through Jones—signed an engagement agreement with the Vance Center for International Justice and Alexander Papachristou, Esq. for legal representation in this matter. Dkt. 87, at 1; Dkt. 87-1 (Jones Decl.), at 2. Mr. Papachristou is a sophisticated attorney who has appeared in major litigation. *See, e.g.*, *Am. Ass'n of Cruise Passengers v. Cunard Line, Ltd.*, 691 F. Supp. 379, 380 (D.D.C. 1987) (listing Mr. Papachristou as counsel of record). And BTB's retention of the Vance Center and Mr. Papachristou is of a piece with its acknowledged practice of collaborating with a host of sophisticated and well-funded entities and of "work[ing] closely with a team of environmental lawyers."[3]

Pacific Bell again sought to meet and confer with BTB and its attorneys on September 5, 11, 14, and 18. *See* Dkt. 65-16. After BTB stalled for time and refused to participate, Pacific Bell filed its motion to compel on September 26. Dkt. 65. The Court conducted a hearing on the motion on November 9. Dkt. 78. During the hearing, Jones claimed that he and BTB were not represented by counsel, concealing the fact that he had engaged the Vance Center as legal counsel in August. Dkt. 87-1 at 2. The Court issued the Order granting Pacific Bell's motion on November 13 and gave BTB until November 30 to produce all responsive documents. Dkt. 80.

On November 24, Pacific Bell's counsel received an email from Joshua Koltun indicating that he—like the Vance Center and Mr. Papachristou before him—had been engaged as BTB's counsel. Meier Decl., Ex. 5. The parties met and conferred on November 29. Decl. at ¶9. During that call, Mr. Koltun claimed for the first time that BTB had entered into an "oral agreement" with the *Journal*, whereby BTB agreed to act as "reporters" for the *Journal*, and therefore were entitled to assert the reporter's privilege. *Id.* at Decl. ¶9. He refused, however, to provide any information about the alleged "oral agreement," including (a) when the purported oral agreement was made, (b) with whom at the *Journal* it was made, or (c) the scope of the agreement. BTB's motion does not

[3] https://belowtheblue.org/about-us-1 (emphasis added).

include *any* actual evidence suggesting there was any agreement between any of the non-parties and the *Journal*.

Instead, Jones merely declares in conclusory fashion that BTB and MTS "assist[ed] the Journal on its investigation of lead-clad cables" starting in January 2022, and that it was BTB's "expectation" that the combined efforts of BTB/MTS, EDF, and the *Journal* "would conclude with the publication of public reports." Dkt. 100, at ¶ 6. EDF, however, was separately subpoenaed by Pacific Bell, and it did not assert that the reporter's privilege applied to any of its work, including the work performed by Jones and Fortner under its contract with MTS. Therefore, the sole basis for BTB's claim of privilege is the conclusory statement by Jones regarding his "expectation" that the results of BTB's work would be published.

## ARGUMENT

### A. BTB Does Not Meet the Requirements For Reconsideration.

BTB seeks reconsideration of this Court's order compelling it to respond to Pacific Bell's subpoena. Reconsideration is an "extraordinary remedy" that should be used "sparingly in the interests of finality and the conservation of judicial resources." *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *see also Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) ("[A] motion for reconsideration should not be granted, absent highly unusual circumstances.").[4] It is well established that a party may not use a motion to reconsider "to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009); *see also Fed. Deposit Ins. Co. for Butte Cmty. Bank v. Ching*, No. 2:13-CV-01710-KJM-EFB, 2015 WL 13655664, at *1 (E.D. Cal. Dec. 1, 2015). Put simply, "[i]n the absence of new evidence or a change in the law, a party may not use a motion for reconsideration to raise arguments or present new evidence for the first time when it could reasonably have been raised earlier in the litigation." *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*, 649 F. Supp. 2d 1063, 1069 (E.D. Cal. 2009).

[4] Denial of a motion for reconsideration is reviewed only for abuse of discretion. *See Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000).

"[T]he Local Rules of this District also impose specific requirements on motions for reconsideration." *Fed. Deposit Ins. Co. for Butte Cmty. Bank*, 2015 WL 13655664, at *1.  Those requirements include that the moving party identify any "new or different facts or circumstances that are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion" and "why the facts or circumstances were not shown at the time of the prior motion." E.D. Cal. L.R. 230(j).  If a party moves for reconsideration and fails to satisfy Local Rule 230(j), that alone is sufficient to deny the motion.  *See, e.g.*, *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, No. CIV. S-06-2845 LKK/JFM, 2009 WL 1288047, at *3 (E.D. Cal. May 6, 2009).

BTB's motion fails under these standards.  Everything BTB argues now it could have argued before the Court ruled on Pacific Bell's motion to compel.  BTB presents no evidence that was unavailable before the Court's Order, nor does BTB invoke any "intervening change in the controlling law" concerning the contours of the reporter's privilege.  *Kona Enters.*, 229 F.3d at 890.  To the contrary, it asks the Court for the first time to embrace a novel *expansion* of the reporter's privilege—an undertaking wholly inappropriate on a motion for reconsideration.

BTB relies solely on its purported failure to retain competent counsel before the last hearing.  *See* Dkt. 99 at 9-11.  But as Jones has admitted, he had retained the services of counsel through the Vance Center by the time of the November 9 hearing, and the retention of a new lawyer is not a valid basis for reconsideration.  As noted above, a "party does not get the proverbial second bite at the apple simply because it obtains new counsel during the course of the litigation." *McCurdy v. Kernan*, No. 117-cv-01356, 2021 WL 5822868, at *1 (E.D. Cal. Dec. 8, 2021).  The Eastern District is not alone in strictly enforcing this rule: *Kristensen v. Credit Payment Servs. Inc.*, No. 2:12-CV-00528-APG-PAL, 2015 WL 12966283 at *1 (D. Nev. Mar. 17, 2015) (substitution of new counsel not grounds for reconsideration); *Ecret v. City of Black Diamond*, No. C07-0171RAJ, 2008 WL 11506712, at *1 (W.D. Wash. Aug. 5, 2008) (same); *Taser Int'l, Inc. v. Stinger Sys., Inc.*, No. CV07-00042-PHX-MHM, 2010 WL 2266739, at *3 (D. Ariz. June 4, 2010) (same).

BTB did not satisfy the requirements for reconsideration.  The Court can (and should) deny the motion on this basis alone.

**B. The Motion for Protective Order Is Procedurally Defective.**

The Court should deny the motion for a protective order because it is procedurally deficient in at least two respects. First, BTB failed to produce a privilege log or any other document-by-document discussion. Second, the motion purports to cover MTS, Jones, and Fortner, in addition to BTB, even though those non-parties did not comply with any of this Court's procedures for filing a motion for a protective order.

**1. The Motion Lacks a Privilege Log and Evidentiary Support.**

As the moving party, BTB "bears the burden, for *each* particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) (emphasis added). That requires BTB to establish its claim of privilege on a document-by-document basis. Moreover, under this Court's Procedures, the moving party on a discovery motion must "quote in full each interrogatory, deposition question, request for admission, or request for production that is in dispute, and state the response or objection and grounds therefor as articulated by the opposing party." Proc. for Civ. Matters Before JDP, Section I.C.

As noted, BTB's motion is unaccompanied by a privilege log or an analogous recounting of the materials that it is attempting to withhold under the privilege. BTB argued to the Court during the December 21 discovery conference that courts do not require logs when the reporter's privilege is asserted. Again, BTB is wrong. *See Mosley*, 252 F.R.D. at 448-49 (holding that a third party had "waived any claim of privilege" by failing to comply with Rule 45's "mandatory" requirement to produce a privilege log when invoking the reporter's privilege); *see also Relevant Grp., LLC v. Nourmand*, No. CV 19-5019-ODW (KSX), 2021 WL 9696765, at *4 (C.D. Cal. July 26, 2021) ("Cases in this Circuit and beyond consistently hold that a subpoenaed non-party must provide a privilege log when withholding responsive documents based on privilege.").[5] In the

[5] Other courts are in accord. *See In re Eurasian Natural Res. Corp.*, 2018 WL 1557167, at *4-5 (N.D. Cal. Mar. 30, 2018) (granting application under 28 U.S.C. § 1782 to serve subpoena on a reporter for *The Sunday Times* (U.K.) and directing production of a log of any withheld documents); *In re Application of Chevron Corp.*, 736 F. Supp. 2d 773 (S.D.N.Y. 2010) (requiring documentary filmmaker to produce log); *Am. Sav. Bank, FSB v. UBS Painewebber, Inc.*, 2002 WL 31833223, at *1–2 (S.D.N.Y. Dec. 16, 2002) (finding third-party credit rating agency's "wholesale refusal to produce a log and assertion of a blanket privilege [was] an unreasonable course of action");

absence of a log, Pacific Bell has no means to challenge the assertion of privilege as to specific documents, to evaluate whether BTB waived the privilege by communicating with third parties other than the *Journal*, or to determine whether there are alternative sources from which it could pursue the documents. *See In re Application of Chevron Corp.*, 749 F. Supp. 2d 135, 140 (S.D.N.Y. 2010).

This failure of proof supports denying the motion.

**2. The Purported Motion by MTS, Jones, and Fortner Is Improper.**

By purportedly moving along with BTB for a protective order, MTS, Jones, and Fortner have filed a discovery-related motion without complying with this Court's procedural requirements governing the ability to file such motions. This Court's procedures provide that "*[n]o discovery motion* will be set for hearing before Judge Peterson without his prior approval obtained in accordance with the following procedures," which include: (1) conducting a conference "with the opposing party in a good faith effort to resolve the dispute without court action"; (2) "[i]f such effort fails," "contact[ing] the Courtroom Deputy to request a pre-motion telephone conference with Judge Peterson;" (3) filing an informal brief outlining the dispute; and (4) participating in a conference with the Court. Proc. for Civ. Matters Before JDP, Section I.C (emphasis added).

MTS, Jones, and Fortner did none of this. They did not meet and confer with Pacific Bell regarding the entry of a protective order limiting their obligations to produce their responsive documents. They did not request a conference for such a motion. The December 21 discovery conference was focused on BTB and its request for reconsideration. The Court did not grant permission to MTS, Jones, or Fortner to file any motion. This procedural defect likewise warrants denying their motion.

**C. BTB Cannot Claim Privilege Because It Is a Source, Not a Reporter.**

The Supreme Court has held that *sources* do not hold the reporter's privilege. *See Branzburg*, 408 U.S. at 695. BTB fails to cite a single case in the five decades since *Branzburg* holding otherwise. Yet BTB's motion seeks a dramatic expansion of the privilege to cover not only

---

*Bredemus v. Int'l Paper Co.*, No. CV 06-1274 (PJS/RLE), 2008 WL 11348492, at *6 (D. Minn. Aug. 22, 2008).

reporters but sources, so long as the sources vaguely "intend" that the information they gather would be made public. (BTB Br. at 10). If accepted, BTB's position would mean that every source who provides information to a reporter can claim privilege over its documents, so long as "at the time she was gathering the information subject to the subpoena," the source generally knew a reporter would "disseminate information to the public." (BTB Br. at 10)  Given that sources generally know when speaking to reporters that at least some of the information they share will likely be conveyed to the public, the upshot of BTB's argument is to effectively ask this Court to erase the line that *Branzburg* drew. The Court should decline the invitation.

To invoke the reporter's privilege, one must naturally be a reporter and not a source. In the years since *Branzburg*, courts have regularly concluded that *sources* of information are not themselves reporters entitled to invoke the reporter's privilege. For example, in *In re: Terrorist Attacks on September 11, 2001*, No. 03-MD-1570, 2021 WL 4319428 (S.D.N.Y. Sept. 23, 2021), Yahoo! News attempted to intervene in a case to protect the anonymity of one of its sources. The court disagreed, holding "that the entity holding the reporter's privilege is the reporter, who cannot invoke it on behalf of a third party[.]" *Id.* at *5; *see also Carroll v. TheStreet.com, Inc.*, No. 11-CV-81173, 2014 WL 5474048 (S.D. Fla. Apr. 10, 2014) (the "privilege against the disclosure of the Journalists' sources may be invoked only by the Journalists and not by its sources"). In fact, Yahoo! News' position was irreconcilable with the settled rule that "faced with the possibility that a reporter has information relevant to litigation, a party must first exhaust other available sources before turning to a journalist." 2021 WL 4319428, at *5.

Courts recognize that if the underlying *source* of the reporter's information can be identified, the source can be asked for the information directly. For example, in *Cusumano v. Microsoft Corp.*, 162 F.3d 708 (1st Cir. 1998), the Court of Appeals upheld a claim of privilege in part because the requesting party "could have obtained that information *directly from the sources.*" *Id.* at 712 (emphasis added); *see also Montesa v. Schwartz*, No. 12-CV- 6057, 2016 WL 3476431, at *14 (S.D.N.Y. June 20, 2016) ("the investigative reporter privilege does not apply" when the materials in dispute "were not being withheld in response to a subpoena served directly on [the reporter]"). Again, that is precisely what Pacific Bell is doing here.

None of these holdings or explanations would make any sense if the category of "reporters" were so broad as to include anyone who provided information to actual journalists with the expectation that it would be published. The independence of a reporter is an essential feature that separates a reporter from a mere source of factual information. *See Chevron Corp. v. Berlinger*, 629 F.3d 297, 309 (2d Cir. 2011) (noting "a journalist who has been solicited to investigate an issue" must establish "the independence of [their] journalistic process" in order to claim the privilege); *Beaver Cnty. Emps. Ret. Fund v. Tile Shop Holdings, Inc.*, No. 16-MC-80062 2016 WL 3162218, at *3 (N.D. Cal. June 7, 2016) (holding that an entity cannot invoke the reporter's privilege when it "chooses which reports to publish based on its own trading needs . . . and not on whether the report is newsworthy."). There is no evidentiary showing that BTB or the other non-parties had the requisite degree of independence required by law to be a reporter.

Failing to grasp the distinction between a source and a reporter, BTB suggests that any source can be transformed into a reporter by asserting that it had an abstract desire to make the information public. Dkt. 99 at 12:14-15. If BTB were correct, *every source* could withhold information they admittedly possess by simply claiming some general desire that the information they gave the reporter would become public. And they could do so by submitting a generic, post hoc declaration that asserts in a conclusory manner—without any independent evidentiary support—that they intended the information to become public. That is and cannot be the law. Simply caring about a subject matter is not enough. As *Branzburg* itself noted, "quite often, such [sources to the press] are members of a minority political or cultural group that relies heavily on the media to propagate its views, publicize its aims, and magnify its exposure to the public." 408 U.S. at 694–95. But they are still just sources.

Rather than address these precedents, BTB relies on *Shoen v Shoen*, 5 F.3d 1289 (9th Cir. 1993) (*Shoen I*). There, the Ninth Circuit looked at "whether the person seeking to invoke the privilege had 'the intent to use material—sought, gathered or received—to disseminate information to the public and [whether] such intent existed at the inception of the newsgathering process.'" *Shoen I,* 5 F.3d at 1293. (quoting *von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987)). Only "[i]f *both* conditions are satisfied," may the privilege be invoked. *Id.* at 1294 (emphasis added).

BTB's reliance on *Shoen I* is misplaced. In *Shoen I*, the only question was whether a book author was a reporter, not whether a source of information was a reporter. Indeed, it was conceded in *Shoen I* that the author was *not* a source. *See Shoen I*, 5 F.3d at 1290 (framing the question presented as "whether an investigative author, at work on a forthcoming book, may be compelled to testify and produce notes and tape recordings of interviews he conducted *with a source* who happens to be a defendant in a defamation action (emphasis added)). *Shoen I* did not purport to be addressing the reporter/source distinction that was addressed squarely by the Supreme Court in *Branzburg*. *See Branzburg*, 408 U.S. at 695 (explaining that if a source is called to testify "neither his own reluctance to testify nor the objection of the newsman would shield him from [judicial] inquiry, whatever the impact on the flow of news").

Moreover, the non-parties have not carried their burden to show that they possessed an intent "at the inception" of their conduct to use their personal experiences "to disseminate information to the public." *Shoen I,* 5 F.3d at 1293; *von Bulow*, 811 F.2d at 144. To the contrary, Jones admits that his original intent was to "interest government environmental regulators in the lead cables at the bottom of the lake" and to do that he "brought the matter to the attention of Plaintiff's counsel, and gave them the cable section [he] had taken." Dkt. 100, at 1:18-19.

Consistent with this stated interest in advocacy and litigation, BTB has never publicly claimed the mantle of a reporter. On the contrary, its website says that it "is a registered 501(c)(3) nonprofit dedicated to removing debris from water bodies and educating the public about pollution." *See* https://belowtheblue.org/; *see also* Dkt. 100, at ¶ 1. It also "collects hands-on data that helps facilitate policy change and enforcement." Dkt. 100, at ¶ 1. Removing debris from bodies of water and collecting data to change public policy come nowhere close to gathering information for the purpose of disseminating it to the public. MTS's mission is even further removed from independent journalism. Far from holding itself out as a reporter, MTS's website describes itself as an "environmental consulting firm," https://marinetaxonomicservices.com/, and Jones concedes that it is a for-profit entity for hire, Dkt. 100, at ¶ 1.

Instead, BTB's conduct before and throughout these proceedings shows the non-parties here lack any independent, dispassionate interest in newsgathering. *See Chevron Corp.*, 629 F.3d at

309. Again, BTB, MTS, Jones, and Fortner *prompted* this very lawsuit by affirmatively seeking out the Plaintiff's lawyers and handing them this case "on a platter." Meier Decl., Ex 1, at 6. When a source deliberately hands over information to a litigant, it is "unfair and improper to allow [the source] to invoke the journalist's privilege with respect to this same material" simply because the opposing party "now … wants to see it." *Ayala v. Ayers*, 668 F. Supp. 2d 1248, 1250 (S.D. Cal. 2009). Importantly, Plaintiff now acknowledges that it intends to rely on the environmental data collected by BTB and the other non-parties. Meier Decl., Ex. 9, at 11. It is therefore likely that the non-parties here will be called as witnesses during the trial—and they will be called as witnesses precisely because they will have first-hand testimony regarding their data-collection efforts.[6]

In sum, BTB falls well short of establishing that its principals acted as "reporters," as opposed to "sources," when engaging in the communications that Pacific Bell seeks to discover. *Est. of Klieman v. Palestinian Auth.*, 293 F.R.D. 235, 241 (D.D.C. 2013) ("The party asserting the reporter's privilege bears the burden of showing that the privilege applies in the particular case.").

**D. Regardless, the Documents Are Discoverable.**

BTB concedes the reporter's privilege is only a qualified privilege that may be overcome. Dkt. 99 at 14:18-23 (citing *Shoen v. Shoen* 48 F.3d 412 (9th Cir. 1995) (*Shoen II*). In the first instance, before the burden shifts, the party showing a privilege *might* apply must still present evidence showing it has not waived it by sharing the information with others or impliedly allowed

[6] BTB argues that the reporter's privilege applies not only to it but also to MTS, Jones, and Fortner. Thus, each of these non-parties bears a burden to prove that the privilege applies to them specifically, so each non-party must separately present competent evidence. *See United States v. Eghbal*, No. CV061091JFWFMOX, 2009 WL 10671386, at *3 (C.D. Cal. June 4, 2009); *Sony Computer Ent. Am., Inc. v. Great Am. Ins. Co.*, 229 F.R.D. 632, 634 (N.D. Cal. 2005). Competent evidence includes "the admission of affidavits, deposition testimony or other admissible evidence." *Kiobel v. Royal Dutch Petroleum Co.*, No. 02CIV7618(KMW)(HBP), 2005 WL 1925656, at *3 (S.D.N.Y. Aug. 11, 2005) (internal citations omitted). Yet, BTB submitted a lone declaration from Jones that implausibly purports to speak on behalf of all four entities and individuals without differentiation. Dkt. 100, at 1:8-9. Although Jones's declaration cannot substantiate even Jones's own claim of privilege, it certainly does not proffer the kind of "competent evidence" necessary to sustain BTB's and Fortner's privilege claims. First, although Jones identifies himself as the President of MTS (*id.* at 1:2-3), he offers no basis to speak on behalf of BTB aside from noting he was at one time its co-founder and that BTB is affiliated with MTS. *Id.* at 1:7-9. Second, Jones does not explain how he can speak for Fortner, so his declaration on that score consequently lacks foundation and is based on hearsay. *See* Fed. R. Evid. 602, 802.

another to do so. *See, e.g., In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987) ("A client may [] by his actions impliedly waive the privilege or consent to disclosure."); *Griffith v. Davis*, 161 F.R.D. 687, 698 (C.D. Cal. 1995) (same).  BTB did not meet that burden.

Here, the record shows that at least some of the information the moving parties possess has been shared with Plaintiff and that BTB has taken no steps to stop such sharing of information.  For example, Plaintiff hired Dr. Gordon Binkhorst to serve as an expert for the "assessment of evidence and presentation of that info throughout this case."  Meier Decl. Ex. 6.  On September 12, 2023, Dr. Binkhorst sent Plaintiff's counsel a copy of the EDF Report and the data from Lake Tahoe, noting that the report "summariz[ed] the investigation into the lead sheathed cables done by Marine Taxonomic Services/Beyond the Blue for the EDF, including their work on Lake Tahoe."  Meier Decl. Ex. 7.  Dr. Binkhorst then sent Plaintiff's counsel tabulations of the Pace testing results in the EDF Report "at [Plaintiff's counsel's] request."  Meier Decl. Ex. 8.  Thus, even before Pacific Bell would need to overcome any privilege, the moving parties would need to show that they preserved the information.  They do not make any such showing.

In any event, a party seeking to overcome any proven privilege must show that the requested materials are "(1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant to an important issue in the case." *Shoen II*, 48 F.3d at 415-16.  Each requirement is met here.

**1.    The Information Is Unavailable From Other Sources.**

As a matter of law, if *only* journalists hold the information, then information is not available from other sources.  *See Crowe v. County of San Diego*, 242 F. Supp. 2d 740, 751 (S.D. Cal. 2003); *United States v. Treacy*, 639 F.3d 32, 43 (2d Cir. 2011).  BTB cannot reasonably dispute that the requested materials are unavailable from other sources.  Pacific Bell seeks BTB's documents.  BTB attempts to escape this conclusion by mischaracterizing the information Pacific Bell seeks. Contrary to BTB's assertions otherwise, Pacific Bell does not simply seek the locations BTB investigated to conduct its own independent testing.  (BTB Memo Supporting Motion to Reconsider (MPA), at 15:14-16:5).  Instead, Pacific Bell seeks *all* of BTB's relevant information, including for example documents and communications regarding the non-parties' sampling methodologies, how

they chose where and when to sample, what they used to collect and maintain samples, the conditions under which they collected samples, chain of custody information, and their interpretation of the results of their testing.

**2. The Information Is Not Cumulative.**

For the same reasons that the information Pacific Bell seeks is not available from other sources, the information is not "cumulative." That Pacific Bell may be able to independently test water at the same locations BTB visited and tested misses the point. Pacific Bell is entitled to ask about the witness-specific information (and the actors) that prompted this lawsuit. As noted above, in this case, BTB and the other non-parties are likely to be trial witnesses and Pacific Bell has a right to gather evidence so it can fairly prepare for trial, including taking depositions.

BTB's contention that the information it and the other non-parties hold is cumulative is incorrect. The fact that Pacific Bell may ask consultants to perform its own environmental sampling does not mean that the sampling performed by the non-parties—under different conditions, using a different methodology, and reaching different results—is somehow cumulative. Each sample taken and the results reported therefrom, is unique. Further, the results reported from the sampling conducted by the non-parties differed dramatically from the results that consultants retained by Pacific Bell have found. It has been reported that MTS "tested water samples from Lake Tahoe and found high levels of lead in several locations," up to "5,510 parts per billion and 38,000 parts per billion[,]" which the *Journal* noted exceeded the EPA's threshold at which chronic exposure "poses risks to aquatic life."[7] In contrast, leading environmental consulting firms retained by Pacific Bell have found that the water near the cables is either non-detectable for lead or consistent with background (normal levels). Information is not cumulative if it differs from information in the record. *See Gonzales v. Nat'l. Broad. Co., Inc.*, 194 F.3d 29, 31, 32–36 (2d Cir. 1999) (finding information sought in discovery was "unimpeachably objective evidence" as to the conduct at issue that was not reasonably obtainable from other sources).

BTB further gets it wrong when it claims that "even if there were differences between the documents in BTB/MTS possession, it would be Pacific Bell's burden to show that such differences

[7] https://www.wsj.com/articles/lead-cables-telecoms-att-toxic-5b34408b.

are substantial enough to render them noncumulative." (MPA, at 16:25-27). Such a burden would be impossible to meet because it would require Pacific Bell to know exactly what information the non-parties' documents contain *before* receiving them or a privilege log. The single case BTB cites in support, *In re Gray Media Grp.*, No. MC 22-00592, 2023 WL 348232 (D. Haw. Jan. 20, 2023), does not support its position. *Gray* found as a factual matter that "[t]he County already has the recording and the text message conversation" sought in discovery. 2023 WL 348232, at *5. Here, there can be no such finding. Pacific Bell is seeking BTB's information directly from BTB.[8]

**3. The Information Sought Is Relevant.**

Finally, the facts discussed above also show that the information is relevant for purposes here. The Court already found the same when granting Pacific Bell's motion to compel. As noted, the information Pacific Bell seeks would allow it to explore the origins of this litigation and test the veracity of testimony of identified witnesses, among other things. Those are classic instances of relevance. *See, e.g.*, *F. Marc Schaffel Productions v. TMZ Productions*, No. CV1001306, 2010 WL 11549388 at *3-4 (C.D. Cal. 2010) (holding that the identity of who provided defendants with the plaintiff's footage was relevant).

**CONCLUSION**

We ask that the motion be denied. A proposed order has been submitted for the Court's consideration.

Respectfully submitted,

DATED: January 11, 2024

PAUL HASTINGS LLP

By: */s/ Navi Singh Dhillon*
NAVI S. DHILLON

Attorneys for Defendant
PACIFIC BELL TELEPHONE COMPANY

---

[8] BTB's pointing to EDF's production does not change that analysis. BTB concedes it was talking to *lot* of people – including EDF, the *Journal*, and the League to Save Lake Tahoe. *See, e.g.,* Dkt. 100, at ¶¶ 5-6. By definition, the information sought is not cumulative to entities other than EDF, and as to EDF, there is no way to know whether what has been produced is cumulative until BTB actually produces it.