NAVI SINGH DHILLON (SBN 279537)
navidhillon@paulhastings.com
PETER C. MEIER (SBN 179019)
petermeier@paulhastings.com
CHRISTOPHER J. CARR (SBN 184180)
lucasgrunbaum@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000

HARIKLIA KARIS (*admitted pro hac vice*)
hkaris@kirkland.com
ROBERT B. ELLIS (*admitted pro hac vice*)
rellis@kirkland.com
MARK J. NOMELLINI (*admitted pro hac vice*)
mnomellini@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

Attorneys for Defendant
PACIFIC BELL TELEPHONE COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC BELL TELEPHONE COMPANY,<br><br>Defendant. | CASE NO. 2:21-cv-00073-JDP<br><br>**DEFENDANT PACIFIC BELL'S REPLY IN SUPPORT OF MOTION TO COMPEL COMPLIANCE BY NON-PARTY BELOW THE BLUE WITH THE COURT'S ORDERS**<br><br>Judge: Hon. Jeremy D. Peterson<br>Date: January 25, 2024<br>Time: 10:00 a.m.<br>Courtroom: 9<br><br>Action Filed: January 14, 2021<br>Trial Date: None |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 2

II. ARGUMENT ....................................................................................................................... 4

    A. BTB's Productions Are Inadequate and Its Status as a Non-Party Is No Excuse ...................................................................................................................... 4

    B. Adoption of the Proposed Protocol Is Appropriate Given That BtB Engaged in Improper Custodian Self-Selection, Refused to Disclose Its Search Terms, and Failed to Comply With Court Orders. ............................................................... 9

    C. The Proposed Protocol Ensures That BtB Will Comply the Court's Orders While Protecting BtB's Privacy Interests. ............................................................ 11

    D. Even If the Court Does Not Adopt the Protocol, It Should Order BtB To Disclose Its Prior and Existing Search Terms, and Complete Its Production Within Seven Days of the Court's Order. ............................................................. 13

III. CONCLUSION .................................................................................................................. 15

Defendant Pacific Bell Telephone Company ("Pacific Bell") respectfully submits this reply brief in support of its motion for an order compelling non-party Below the Blue ("BtB") to submit to ESI collection and production by an independent third party, consistent with the review protocol attached as Exhibit 4 to the Kelley Declaration, for the purpose of identifying and producing responsive materials that BtB was required to produce by December 7, 2023, under this Court's November 9, 2023 and December 7, 2023 Orders.

## I.   INTRODUCTION

This Court ordered BtB to produce "all documents as to which there is no objection" by December 7, 2023. Dkt. 90. BtB now acknowledges that it has violated this Order because it did not, in fact, produce all such documents by December 7. BtB further acknowledges that it still has not produced those Court-ordered documents even as of today, even though more than a month has passed since that deadline. At the very least, emails and texts (not to mention photos and other documents) that BtB was required to produce on December 7 remain outstanding. BtB's incomplete production was the product of a failed process in which Seth Jones and Monique Fortner—who spent months actively evading service and have no known experience with e-discovery—took a slapdash and selective approach to searching for responsive documents. And what BtB did manage to produce before the December 7 deadline bore no resemblance to a professional ESI production, as it was presented as two PDF files that lacked the metadata required by both Pacific Bell's subpoena and the Federal Rules of Civil Procedure.

Although BtB concedes it failed to produce responsive emails and text messages by the Court-ordered December 7 deadline, it has not even offered a new date by which it will comply with this Court's order. Nor has BTB asked the Court for any extension of the Court-ordered December 7 deadline. Instead, BTB presumes that it will be allowed to remain in violation of the Court's orders for as long as it pleases, without consequence. Worse still, BtB refuses to disclose the search terms it has used for its production until some unspecified future date, after Pacific Bell's motion has been decided. *See* Dkt. 109 at 17 ("Once it has rerun the searchers, BTB/MTS is willing to share the search terms that it used.").

Despite its continued failure to comply with the subpoena, the Court's prior Orders, and the Federal Rules, BtB nevertheless insists that Pacific Bell and the Court trust its assurance that it will one day provide these responsive communications. Given BtB's gamesmanship and nonchalance up to this point, there is no reason to take BtB at its word now. That is especially true because even now BtB refuses to commit to any date by which it will do so or even identify in advance to the search terms by which it will identify those communications. As BtB would have it, Pacific Bell and this Court would be left to guess when, if ever, BtB will finally produce the documents that it has long ago been ordered to produce. And only *after* that unknown and uncertain date will BtB clue Pacific Bell in on how BtB went about finding those documents, allowing Pacific Bell only an *ex post* opportunity to assess BtB's procedures, instead of an *ex ante* opportunity to learn the search terms it used.

BtB's conduct to date does not warrant giving it the benefit of the doubt. BtB has repeatedly evaded service, delayed compliance with a straightforward subpoena by several months, refused to produce a trove of documents based on spurious privilege claims, and failed to preserve relevant evidence.[1] To ensure this behavior is neither rewarded nor compounded going forward, this Court should adopt the document-production protocol proposed by Pacific Bell. Under these unusual circumstances, that proposal—which would entrust BtB's production to an independent ESI expert— is the only way to ensure that BtB will timely produce all relevant documents. And, contrary to BtB's baseless assertions otherwise, that protocol not only pursues Pacific Bell's interest in a prompt and complete production, but also protects BtB's interest in not producing irrelevant documents or communications covered by attorney-client privilege.

If the Court does not ultimately adopt Pacific Bell's protocol, it should order that BtB engage in a transparent and timely process going forward and also make clear that any further failure to comply with this Court's orders will result in sanctions. Specifically, Pacific Bell asks that, as an

---

[1] Given BtB's track record in failing to produce obviously responsive documents and in failing to be transparent about the search terms it used, it was therefore entirely reasonable for Pacific Bell to reject BtB's proposal that it be given unfettered authority to "review for responsiveness" any documents already deemed responsive by the independent expert. Dkt. 109 at 5. In fact, the entire point of Pacific Bell's proposed protocol was to take responsiveness out of the hands of BtB and to place it under the expertise of an established ESI vendor.

3

alternative and at a minimum, the Court order that BtB (1) disclose the search terms it has used now, not at the end of the process; and (2) show cause why it should not be held in contempt under Federal Rule of Civil Procedure 45(g) if it cannot complete its production within seven days of the Court's order. Anything less would effectively bless BtB's evasive and irresponsible discovery practices and incentivize more of the same.

## II.   ARGUMENT

### A.   BTB's Productions Are Inadequate and Its Status as a Non-Party Is No Excuse

Before addressing BtB's legal arguments, it is important to note the facts that BtB effectively admits to:

*First*, BtB does not dispute that its principals—Seth Jones and Monique Fortner—evaded service of Pacific Bell's subpoenas for several weeks. *See* Dkt. 63, 64, 68.

*Second*, BtB does not dispute that it was required to produce "all documents as to which there is no objection" by December 7, 2023. Dkt. 90.

*Third*, BtB does not dispute that its existing productions violate the Court's orders in that BtB is aware of emails and texts that it did not produce by December 7, has not produced to this day, and has not offered to produce by any date in the future.

*Fourth*, BTB does not dispute that its prior productions lack metadata—even though both Pacific Bell's subpoena[2] and "Rule 34 … provides that metadata must be produced as it is kept in the usual course of business." *Javo Beverage Co. v. California Extraction Ventures, Inc.*, No. 19-CV-1859-CAB-WVG, 2020 WL 2062146, at *7 (S.D. Cal. Apr. 29, 2020) (internal quotations omitted).[3]

---

[2] BtB claims that the subpoena did not itself require the production of metadata, *see* BtB Br. 14, but that is clearly erroneous. The subpoena required BtB "to produce … the original or an exact copy of the original of all Documents and Communications responsive to any of the Requests" and "in complete form" "as they are kept in the usual course of business." Dkt. 65-14. If BtB's ESI had been "produced as kept in the usual course of business"—as the subpoena required—it would have included "basic identifying metadata fields." *City of Colton v. Am. Promotional Events, Inc.*, 277 F.R.D. 578, 585 (C.D. Cal. 2011); *see also McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 322 F.R.D. 235, 250 (N.D. Tex. 2016) ("A file that is converted to another format solely for production, or for which the application metadata has been scrubbed or altered, is not produced as kept in the ordinary course of business.").

[3] Rule 45(e)(1)(A) uses substantively identical language as Rule 34(b)(2)(E)(i) in that both require parties and non-parties alike to produce responsive documents "as they are kept in the usual course of business." *See also* Fed. R. Civ. P. 45, advisory committee notes (1970) ("[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules.").

4

*Fifth*, BtB does not dispute that since it first ginned up its belated "reporter's privilege" claim, it has adamantly refused to produce a privilege log allowing Pacific Bell (and the Court) to test BtB's claim of privilege—despite Rule 45's "mandatory" requirement that a party invoking privilege produce a privilege log. *Mosley v. City of Chicago*, 252 F.R.D. 445, 448-49 (N.D. Ill. 2008).[4] As Pacific Bell has explained elsewhere, BtB's failure to provide a privilege log at this stage, more than four months after its subpoena responses were due, means its reporter privilege claims are now waived. Dkt. 113 at 2, 7-8. While the protocol that Pacific Bell proposed last month offered BtB an opportunity to review responsive documents for whether they were potentially covered by the reporter's privilege, *see* Dkt. 104-3 at 3, BtB's waiver has obviated the need for any such provisions. A revised protocol reflecting BtB's reporter's privilege waiver – which allows BtB to continue to assert attorney-client privilege - is attached to the Kelley Declaration as Exhibit 4.[5]

*Sixth*, BtB does not dispute that while Jones and Fortner compiled the materials in prior productions in part by "conduct[ing] word searches for documents and emails," Dkt. 109, at 4, BtB has never disclosed what search terms were used despite Pacific Bell's repeated requests that it do so. *See* Kelley Decl., at ¶ 12. And even going forward with a third-party ESI vendor (which BtB engaged only *after* Pacific Bell filed the pending motion to compel), BtB *still* refuses to disclose its search terms to Pacific Bell in advance of any production, and instead claims that it will disclose its search terms only *after* it has produced all documents it unilaterally deems relevant—a position that

---

[4] Although BtB has finally relented on its mistaken refusal to provide a privilege log, it still maintains that it is not required by the Federal Rules to do so. *See* BtB Br. 18 ("[N]ews media generally don't, and are not expected to, produce privilege logs concerning the Reporter's Privilege…"). That is not true, as reflected by the legion of cases Pacific Bell has already invoked in its opposition to BtB's motion to reconsider. *See* Dkt. 113 at 7-8 & n.5. Meanwhile, BtB invokes a single case—*Chestnut v. Kincaid*, No. CV LKG-20-2342, 2022 WL 350117 (D. Md. Feb. 4, 2022)—which does nothing to support BtB's prior refusal. *Chestnut* held only that a privilege log might not be required when a non-party invokes the reporter's privilege to quash a subpoena *in its entirety* because the assertion of privilege "applied to the full request," and when the assertion of the privilege covered "the identity of those involved in the recordings" in order to protect the confidentiality of the reporter's sources. *Id.* at *3. Here, BtB has never opposed Pacific Bell's subpoena in its entirety, but has instead selectively produced responsive documents. Moreover, because BtB is itself the *source* of the information at issue here, rather than a reporter, it is not invoking privilege to protect the identity of any sources. Indeed, BtB has never explained *why* producing a privilege log would itself divulge privileged information.

[5] While the revised protocol no longer demands a privilege log with respect to BtB's waived reporter's privilege claims, it still provides BtB an opportunity to review responsive documents for purposes of withholding documents covered by attorney-client privilege.

5

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO COMPEL                                        CASE NO. 2:21-cv-0073-MCE-JDP

conveniently defers the disclosure of search terms until *after* the scheduled hearing on this matter. Dkt 109 at 17.  BtB's refusal to disclose its original search terms and its intention to disclose any new search terms only after its production are both unexplained and inexplicable.

Indeed, BtB's evasiveness regarding its search terms suggests that BtB has something to hide—why else would it object to providing basic information about its past discovery conduct until after the Court has conducted a hearing? *See Computer Acceleration Corp. v. Microsoft Corp.*, No. 9:06-CV-140, 2007 WL 2584827, at *1 (E.D. Tex. Aug. 28, 2007) ("Discovery is not a game in which each party plays a card and waits for the opponent's and the court's response before deigning to release another.").  BtB also attempts to confuse the issue by suggesting that Pacific Bell should propose *new* search terms. Dkt. 109 at 6.  But why wouldn't BtB first disclose the search terms it has *already* used before adding *new* search terms?

Rather than address these clear inadequacies in its existing production, BtB instead falls back on the incorrect claim that it is not a party to this litigation and must therefore be held to a lower discovery standard than would be applicable to a party.  Through this argument, BtB urges the Court to turn a blind eye to its failure to include metadata with its initial productions, its refusal to produce a privilege log, and its various excuses—including that somehow *both* Jones and Fortner lost access to most of their cell phones' text messages from 2020 until 2022, which conveniently includes any messages reflecting when, how, and why Jones and Fortner asked Plaintiff to bring this case in 2020. This argument has no merit.

To begin, BtB's attempt to invoke its non-party status to evade its basic discovery obligations is meritless at best, and disingenuous at worst.  While BtB is right that non-parties generally are not subject to the same preservation and spoliation rules applicable to parties, the duty to preserve "may extend to a non-party to a proceeding when there is a special relationship involving the non-party or when the non-party enters into an agreement to preserve the evidence sought to be obtained." *Tassin v. Bob Barker Co., Inc.*, No. CV 16-0382-JWD-EWD, 2017 WL 9963365, at *1 (M.D. La. Sept. 28, 2017); *accord Rollins v. Banker Lopez & Gassler*, No. 8:19-CV-2336-T-33SPF, 2020 WL 1939396, at *3 (M.D. Fla. Apr. 22, 2020) ("While there is no general duty in the common law for an independent non-party to preserve evidence, the duty may extend to a non-party when there is a special relationship

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO COMPEL                                                                                    CASE NO. 2:21-cv-0073-MCE-JDP

involving the non-party."); *Pettit v. Smith*, 45 F. Supp. 3d 1099, 1106 (D. Ariz. 2014) (same); *Johns v. Gwinn*, 503 F. Supp. 3d 452, 462–63 (W.D. Va. 2020) (same).

Here, BtB clearly occupies a "special relationship" to this litigation because BTB, acting through Jones and Fortner, brought this case to Plaintiff's counsel and provided *the* factual basis for Plaintiff's claims as the first step of their broader effort to force AT&T to remove lead cables on a nationwide basis. Indeed, as Jones admitted in an email dated January 6, 2022, BtB brought this case to Plaintiff's counsel in 2020 to "set the path forward and pave the way to push for removal across the US . . . through our non profit – Below the Blue." Kelley Decl., Ex. 2. Jones admitted that, in deciding where to first pursue litigation, BtB chose "Tahoe because we love it and it was the easiest place to win a case like this since it's a pristine California drinking water source." *Id*. Jones referred to this plan as "the long game" and stated plainly that the cables would be "coming out one way or another…we will make sure of it." *Id*. This is precisely the reason Jones and Fortner served this case to Plaintiff "on a platter" and attorneys for Plaintiff have described BtB, Marine Taxonomic Services (MTS), Jones, and Fortner as "indispensable" to their case. Dkt. 57-1, Ex. B. Moreover, BtB's collaboration with Plaintiff's counsel is consistent with its general practice of working with lawyers to enforce environmental regulations, specifically through civil litigation. Indeed, BtB's website states that the organization "collect[s] data that will help facilitate policy change *and enforcement*" and that they "work closely with a *team of environmental lawyers*." https://belowtheblue.org/about-us-1 (emphasis added). It further states that "Below the Blue is here to stay and not afraid to use the strength of the law." *Id*.

Thus, BtB bears no resemblance to the "disinterested third party with no duty to preserve evidence" because he unsuspectedly becomes wrapped up in litigation that he had no reason to be aware of prior to being served a subpoena. *Pettit*, 45 F. Supp. 3d at 1106; *see also Dykes v. BNSF Ry. Co.*, No. C17-1549-JCC, 2019 WL 1128521, at *6 (W.D. Wash. Mar. 12, 2019) ("Courts in the Ninth Circuit have held that a non-party can have a duty to preserve evidence, when it is not merely a disinterested third-party."); *Martin v. Johnson*, No. 2:20-CV-11342-SB-SHK, 2022 WL 17224707, at *2 (C.D. Cal. Jan. 19, 2022) (holding that third parties who are "not disinterested non-parties … should reasonably know that the evidence will be relevant to [the] litigation" and therefore should

also "be aware of their duty to preserve … evidence relevant to th[e] litigation"). Rather, like other third parties who bear a duty to preserve relevant evidence, BtB initiated this lawsuit as part of a deliberate strategy, and "possessed and controlled a key piece of evidence"—including the cable and water samples that formed the basis of Plaintiff's claims—and therefore "was on notice that litigation involving that evidence would likely ensue." *Dykes*, 2019 WL 1128521, at *6. "Given these special circumstances," the Court should find that BtB "had a duty to preserve evidence relevant to this case once it knew that litigation was reasonably likely," *Pettit*, 45 F. Supp. 3d at 1106—*i.e.*, from the time it provided a piece of the Lake Tahoe cables to Plaintiff's counsel with the intent of spurring litigation, *see, e.g.*, Dkt. 100, at ¶3 ("In 2020, we brought the matter to the attention of Plaintiff's counsel, and gave them the cable section").

Regardless of how the Court treats BtB, its productions thus far do not comply with the Court-ordered December 7 deadline, as BtB now admits. Moreover, while its agreement to belatedly enlist the aid of a third-party vendor addresses some of BtB's failures to date, it alone is insufficient. BtB simply has not explained why it has refused to produce responsive materials that wholly unrelated to any alleged privilege, or why it has refused to disclose the search terms that guided its production. Nor has it given any assurances it will stop the gamesmanship it has deployed thus far to delay discovery in this case.

In short, BtB has provided this Court no assurance that it is willing and able to produce in a timely manner all of the relevant documents in its possession. Its primary excuse—that it had no obligation to comply fully with Pacific Bell's subpoena or preserve relevant evidence because it is a non-party—does nothing to address its failure to comply with this Court's orders. And, in any event, BtB's purported excuse fails on its own terms because unlike a typical non-party responding to a subpoena, from the moment BtB served the entire case to Plaintiff's counsel "on a platter" BtB was no longer disinterested in this litigation and took upon itself the duty to preserve relevant evidence. Because the protocol proposed by Pacific Bell would finally ensure that BtB live up to its discovery obligations on fair and reasonable terms, the Court should adopt it.

**B.      Adoption of the Proposed Protocol Is Appropriate Given That BtB Engaged in Improper Custodian Self-Selection, Refused to Disclose Its Search Terms, and Failed to Comply With Court Orders.**

BtB's untimely, haphazard, and incomplete production carries all of the hallmarks of custodian self-collection—in which the entity responding to discovery by itself dictates the methods for collecting and producing responsive documents. *See* Dkt. 104 at 8-11. As BtB admitted in its brief, its self-collection resulted in gaps in its production that it has still not remedied, more than a month after the Court's second deadline for BtB to produce all relevant documents. The proposed protocol is therefore warranted because it would guarantee an orderly collection under the supervision of a professional ESI vendor.

And, in this particular case, it is not relevant that BtB now is working with Mr. Koltun as its counsel. In fact, BtB's response only confirms that Mr. Koltun's participation in BtB's productions fell well short of that needed to ensure a complete and accurate production. In particular, Mr. Koltun avers that "Jones and Rydel-Fortner collected documents potentially responsive to the requests," which Koltun then claims to have "reviewed" before BtB made its production. Dkt 110 at ¶4. Koltun's declaration includes only conclusory assertions that he has "work[ed] diligently … to produce all responsive nonprivileged documents" and he "worked with" BtB to make the prior production of documents. *Id.* at 2-3. Those detail-free averments in no way demonstrate that Mr. Koltun meaningfully supervised BtB's custodians in the collection and review of ESI. *See, e.g., Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 629-30 (D. Colo. 2007) ("counsel was responsible for coordinating and overseeing the client's discovery efforts."); *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) ("Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched."). And although Mr. Koltun now implies that his "review" provided meaningful supervision, his prior characterization of his involvement during the parties' meet-and-confer—stating only that he looked at the documents Jones and Fortner "at some level"—clearly implied that Koltun's "level" of involvement was minimal. *See* Kelley Decl. at ¶ 14.

In simply "reviewing," "at some level," documents selected and sent to him by Jones and

Fortner—neither of whom are lawyers or have any experience with sophisticated e-discovery—Mr. Koltun did not provide adequate supervision. While BtB's opposition confirms that Mr. Koltun generally had discussions with Jones and Fortner, it was "*they*"—Jones and Fortner—who "searched for and collected documents, which they posted to a shared drive" for Koltun to review. Dkt. 109 at 15 (emphasis added). This is not enough: attorneys must *actively play* a role in the search for and identification of documents to be produced in discovery, not just review a limited universe of documents that their clients unilaterally searched for and compiled, as occurred here. *See, e.g., Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 92 (D.N.J. 2006) (counsel's "process for responding to discovery requests was utterly inadequate" where counsel "relied on the specified business people within the company to search and turn over whatever documents they thought were responsive"); *Cache La Poudre Feeds*, 244 F.R.D. at 630 (counsel "failed ... to discharge their obligations to coordinate and oversee discovery" by taking "no independent action to verify the completeness of the employees' document production"); *Zubulake*, 229 F.R.D. at 435 ("counsel failed to properly oversee [the client] in a number of important ways" including in "its duty to locate relevant information"); *Bratka v. Anheuser-Busch Co., Inc.*, 164 F.R.D. 448, 461 (S.D. Ohio 1995) (delegating responsibility for obtaining responsive documents to a non-lawyer, without specific instructions and supervision, was a "grossly deficient . . . effort[] to obtain all of the documents responsive to ... the Court's order").

If Mr. Koltun's own description of his role were not enough, the proof is in the pudding: the very incompleteness and inadequacy of BtB's prior production is itself evidence that Mr. Koltun did not provide adequate supervision. Indeed, if an "experienced … litigator" like Mr. Koltun *had* actually overseen BtB's prior production, BtB's existing production would not be so radically deficient, with emails and texts still outstanding for an indefinite period after the Court-ordered December 7 deadline. Moreover, given the timing of Mr. Koltun's retention as counsel and BtB's initial productions, it is hard to imagine how Koltun could possibly have supervised the production beyond the cursory "review" he describes in his declaration, or the involvement "at some level" described during the parties' meet-and-confer. As Koltun himself describes it, BtB first contacted Koltun on November 22, the day before Thanksgiving, and was tasked with attempting "to get on top

of a veritable fire-hose of information" over the holiday with only *six days* before BtB's production was due on November 30. *Id.* Even though BtB blew past that deadline, it did ultimately produce more than two-thousand pages of responsive documents only two weeks after Koltun—a "solo practitioner" with "no associates or paralegals"—first learned of the matter. *Id.* It strains credulity to maintain that Koltun's "review" of BtB's materials during that abbreviated timeline was anything more than superficial.

### C. The Proposed Protocol Ensures That BtB Will Comply the Court's Orders While Protecting BtB's Privacy Interests.

In light of BtB's repeated failure to timely comply with this Court's orders, the Court should order BtB to abide by Pacific Bell's proposed document-production protocol. As Pacific Bell explained in its motion, that protocol is designed precisely to remedy BtB's failures by ensuring that responsive information is produced according to sound principles of ESI collection, all while protecting BtB's privacy interests.[6] The protocol allows the parties to jointly select an independent expert who will (1) search all computers, mobile devices and cloud-based storage accounts[7] used by Seth Jones or Monique Fortner for work related to BtB and MTS at any time between January 1, 2020 to the present; (2) determine which documents are responsive to Pacific Bell's subpoena; and (3) immediately produce to the parties all such documents. This is a fair and reasonable procedure that ensures the timely production of all responsive documents in BtB's possession in an acceptable format with the required metadata, while still protecting non-responsive, irrelevant materials.

In resisting the proposed protocol, BtB resorts to fundamentally misrepresenting the protocol's terms. For instance, BtB pejoratively characterizes the independent expert as a "special master" with "plenary unreviewable authority to determine what documents are responsive, and produce them to AT&T." Dkt. 109 at 1. That is not true. While the point of securing a third-party

---

[6] The protocol also ensures that any document production would not place an unduly financial burden on BtB. Under the protocol, Pacific Bell would pay for all fees and costs reasonably necessary for the third-party ESI expert to perform his work, at least up to $100,000. Ex. 4 ¶¶ 12-13. Given Pacific Bell's willingness to shoulder the financial burden of BtB's production, it's baffling that BtB insists on litigating whether Pacific Bell *must* do so. *See* Dkt. 109 19-20.
[7] Tellingly, in none of its production proposals has BtB ever accounted for Jones and Fortner's email accounts, or any of their cloud-based storage accounts—further highlighting that BtB has no plans to make a complete production absent being bound by Pacific Bell's proposed protocol.

e-discovery specialist to oversee BtB's production is surely to leverage the expert's independent expertise, that in no way means that the "independent expert" wields "plenary unreviewable authority" that is somehow independent of this Court's ultimate supervision. Third-party e-discovery services are nothing new, and Pacific Bell's proposal to use an established ESI vendor is not an attempt to reinvent the wheel.

BtB's other misrepresentations of the proposed protocol are equally meritless.

First, BtB claims, without evidence, that the protocol might result in the production of documents that "are commercially sensitive or invade the privacy of the individuals whose devices have been imaged." Dkt. 109 at 1. But BtB never actually identifies any documents containing confidential information that might be tagged for production. Nor has BtB ever described—even in general terms—the nature of any potentially commercially sensitive trade secrets that may be inadvertently produced. Given that BtB has made precisely zero redactions in the entirety of its existing production, its generic and conclusory appeal to "personal" and "sensitive" data is nothing more than a smokescreen designed to distract the Court from its deficient production.[8] In any event, to the extent BtB raises genuine concerns regarding the potential disclosure of confidential information, Pacific Bell is willing to meet and confer with Mr. Koltun to discuss additional procedures that can be implemented by the e-discovery specialist to ensure that any personal data and trade secrets are redacted prior to production.

Second, while BtB claims that the independent expert has authority to unilaterally designate search terms without any input from BtB, that again mischaracterizes the clear terms of the protocol, which advises that the independent expert "use search terms agreed to by the Parties." *Id.* at 1. Only "[a]bsent agreement between the Parties on search terms" does the protocol authorize the independent expert to designate reasonable search terms itself based on the subpoena. *Id.* BtB is thus free to confer with Pacific Bell and agree to a single set of search terms that would obviate delegating any discretion to the independent expert. That said, BtB has proven itself unwilling to confer in good

---

[8] Moreover, BtB's privacy interests are also protected by the proposed protocol's provisions that (1) require the independent expert and its employees to sign a non-disclosure agreement protecting BtB's confidential information, *see* Kelley Decl., Ex. 4 at ¶1; and (2) provide that copies of any privileged documents that are inadvertently disclosed must be promptly "return[ed], sequester[ed], or destroy[ed]." *Id.* at ¶10.

faith regarding search terms.  Pacific Bell has repeatedly requested BtB's original search terms, but BtB has refused to provide them.  Worse still, BtB has also confirmed that it will not reveal its current search terms until it has "rerun" its own searches apart from Pacific Bell's involvement.  *See* Dkt. 109 at 17.  BtB also claims to now want Pacific Bell to provide a *new* list of search terms, which makes no sense until it discloses what terms it has already used.  In short, BtB wants this Court to effectively ignore its past failures and grant it unbridled discretion when running search terms going forward.  But BtB has already proven that it is not entitled such a benefit of the doubt.

Third, BtB claims that the protocol is objectionable because it demands a "running" log of BtB's privileged communications with Mr. Koltun.  That is incorrect.  Pacific Bell does not seek, nor has it ever sought, a privilege log covering BtB's ongoing communications with its counsel.  For the sake of clarity, Pacific Bell confirms now that any privilege log produced by BtB should not identify or describe its ongoing communications with Mr. Koltun in this case.  *See* Kelley Decl., Ex. 4 at ¶6.  Moreover, Pacific Bell agrees (and the protocol reflects) that BtB need not provide a privilege log detailing any correspondence with Alexander Papachristou, the Vance Center,[9] or any other attorneys that BtB retained or attempted to retain since being served with Pacific Bell's subpoena.  *Id.*

### D.  Even If the Court Does Not Adopt the Protocol, It Should Order BtB To Disclose Its Prior and Existing Search Terms, and Complete Its Production Within Seven Days of the Court's Order.

More than five months have passed since BtB was served with Pacific Bell's subpoena.  In that time, BtB has failed to comply with multiple orders from this Court to produce responsive documents, and the fact discovery deadline is quickly approaching.  At a minimum, Pacific Bell asks the Court to order BtB to engage in a transparent and timely production process, and make clear that BtB will be held accountable if it fails to comply with the Court's orders.

---

[9] Pacific Bell has consistently maintained that BtB was represented by Papachristou and the Vance Center prior to retaining Mr. Koltun—consistent with Jones's own averment that he previously signed an engagement letter with the same. Dkt. 87, at 1; Dkt. 87-1 (Jones Decl.), at 2; *see also* Dkts. 88 at 1; 113 at 4.  It is BtB, not Pacific Bell, who has tried to suggest, without factual support, that Mr. Papachristou's representation of BtB is somehow limited in scope.  And, regardless of any ambiguity, BtB's revised protocol expressly provides that the independent expert shall "identify and provide to counsel for Below the Blue any Below the Blue Responsive ESI for purposes of reviewing for attorney-client privilege," which covers "any communications with attorneys that BtB retained or attempted to retain for representation in this matter, including communications with Mr. Joshua Koltun *or Mr. Alexander Papachristou*." Kelley Decl., Ex. 4 at ¶6 (emphasis added).

13

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO COMPEL                                                                                      CASE NO. 2:21-cv-0073-MCE-JDP

1. ***Transparency.*** As explained above, BtB has declined to disclose the search terms it used when compiling its initial productions and it still refuses to tell Pacific Bell the search terms or other review criteria it has employed (or that Alvarez & Marsal has employed on its behalf) to identify responsive documents for future productions. This stonewalling has made it impossible for Pacific Bell to negotiate a mutually agreeable set of search terms that the independent expert (or Alvarez & Marsal) can use going forward. In light of BtB's intransigence and the closing window for fact discovery, Pacific Bell submits that the Court should order BtB to immediately disclose the search terms it has used to date so that Pacific Bell can adequately examine BtB's discovery responses. Of course, search terms will not be adequate for videos, photos, and texts, and a thorough search of these documents should also be required.

2. ***Timeliness.*** As the Court is aware, BtB still has not produced responsive documents that the Court has already *twice* ordered BtB to produce.[10] BtB's failure to timely complete its production is attributable in part to Jones's Fortner's self-selection of documents without the requisite level of involvement and supervision of counsel—a process that was destined to result in an incomplete and disorganized production. BtB should not be permitted to continue dragging its feet in completing its production. Pacific Bell therefore requests that, if Pacific Bell's requested protocol is not adopted, the Court nonetheless order BtB to complete its production within seven days of the Court's order.

3. ***Accountability.*** Finally, given BtB's history of disregarding this Court's prior discovery orders, Pacific Bell respectfully requests that the Court make clear in its order that BtB's failure to comply will have consequences. In particular, the Court should note in its order that if BtB fails to make a complete production by the Court's deadline, BtB must show cause why the Court should not hold it in contempt. *See* Fed. R. Civ. P. 45(g) ("The court … may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it."); *In re Motion to Compel Leslie Westmoreland's Compliance with Non-party Subpoena*, No. 1:22-MC-00043-EPG, 2022 WL 2354757, at *4 (E.D. Cal. June 30, 2022) (example of a court order providing expressly that "[a] failure by Non-Party Witness Leslie Westmoreland to comply with this Order may

---

[10] Although BtB claims that its "review and production is underway," BtB Opp. 1, that is not true. No "production" is "underway." Pacific Bell has not received ESI from BtB since December 6, 2023. Kelley Decl., ¶ 10.

subject him to contempt sanctions pursuant to Federal Rule of Civil Procedure 45(g)"), *report and recommendation adopted*, No. 122MC00043JLTEPG, 2022 WL 3030272 (E.D. Cal. Aug. 1, 2022); *see also Chaudhry v. Angell*, No. 1:16-CV-01243-SAB, 2021 WL 1711101, at *3 (E.D. Cal. Apr. 29, 2021) ("Civil contempt 'consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply. The contempt need not be willful, and there is no good faith exception to the requirement of obedience to a court order.'" (quoting *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)).

### III.  CONCLUSION

For the foregoing reasons, Pacific Bell respectfully requests that the Court grant its Motion to Compel Compliance with the Court's Orders and enter a new order adopting the revised document-production protocol attached to the Kelley Declaration as Exhibit 4.

Alternatively, the Court should (1) order BtB to immediately disclose its search terms; (2) require that BtB complete its production within seven days of the Court's order, including responsive videos, photos, and texts and other documents not amenable to being located using search terms, and (3) provide that BtB must show cause why the Court should not hold it in contempt under Rule 45(g) if it fails to meet these requirements.

Dated: January 18, 2024

                Respectfully submitted,

                */s/ Hariklia Karis*
                HARIKLIA KARIS (*admitted pro hac vice*)
                hkaris@kirkland.com
                ROBERT B. ELLIS (*admitted pro hac vice*)
                rellis@kirkland.com
                MARK J. NOMELLINI (*admitted pro hac vice*)
                mnomellini@kirkland.com
                **KIRKLAND & ELLIS LLP**
                300 North LaSalle
                Chicago, IL 60654
                Telephone: (312) 862-2000

15

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO COMPEL                           CASE NO. 2:21-cv-0073-MCE-JDP

NAVI SINGH DHILLON (SBN 279537)
navidhillon@paulhastings.com
PETER C. MEIER (SBN 179019)
petermeier@paulhastings.com
CHRISTOPHER J. CARR (SBN 184180)
lucasgrunbaum@paulhastings.com
**PAUL HASTINGS LLP**
101 California Street, 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000

Attorney for Movant
PACIFIC BELL TELEPHONE COMPANY

DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO COMPEL

CASE NO. 2:21-cv-0073-MCE-JDP