1   NAVI DHILLON (SBN 279537)
    navidhillon@paulhastings.com
2   PETER C. MEIER (SBN 179019)
    petermeier@paulhastings.com
3   CHRISTOPHER J. CARR (SBN 184076)
    chriscarr@paulhastings.com
4   LUCAS GRUNBAUM (SBN 314180)
    lucasgrunbaum@paulhastings.com
5   PAUL HASTINGS LLP
    101 California Street, 48th Floor
6   San Francisco, California 94111
    Telephone: (415) 856-7000
7

8   HARIKLIA KARIS (*admitted pro hac vice*)
    hkaris@kirkland.com
9   ROBERT B. ELLIS (*admitted pro hac vice*)
    rellis@kirkland.com
10  MARK J. NOMELLINI (*admitted pro hac vice*)
    mnomellini@kirkland.com
11  KIRKLAND & ELLIS LLP
    300 North LaSalle
12  Chicago, IL 60654
    Telephone: (312) 862-2000
13

14  Attorneys for Defendant
    PACIFIC BELL TELEPHONE COMPANY

15

UNITED STATES DISTRICT COURT

16

EASTERN DISTRICT OF CALIFORNIA

17

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC BELL TELEPHONE COMPANY,<br><br>Defendant. | CASE NO. 2:21-cv-00073-JDP<br><br>**DECLARATION OF JON DAVID KELLEY IN SUPPORT OF PACIFIC BELL'S REPLY IN SUPPORT OF MOTION TO COMPEL COMPLIANCE BY NON-PARTY BELOW THE BLUE WITH THE COURT'S ORDERS**<br><br>Judge Hon. Jeremy D. Peterson<br><br>Complaint Filed:     January 14, 2021 |

18

19

20

21

22

23

24

25

26

27

28

I, Jon David Kelley, hereby declare as follows:

1.      I am a partner at the law firm of Kirkland & Ellis LLP and counsel for Defendant Pacific Bell Telephone Company ("Pacific Bell") in the above-captioned litigation.  I submit this declaration in support of Pacific Bell's Reply in Support of Motion to Compel Below the Blue's ("BtB") Compliance with the Court's November 9 and December 7 Orders.  I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently thereto.

2.      Counsel for BtB introduced himself by email over the Thanksgiving holiday, on November 24, 2023.  Counsel for Pacific Bell responded to Mr. Koltun's email on November 28, which was the earliest counsel could respond to the various issues raised by Mr. Koltun in light of the holiday.

3.      Mr. Koltun's assertion that he sought an informal discovery conference "as soon as possible, preferably before December 7, but AT&T counsel did not make themselves available until December 21" is misleading and inaccurate. Dkt. 110, ¶4.  To the contrary, timing of the parties' discovery conference was determined based on the Court's availability.  On December 1, 2023, Mr. Koltun sent an email to the Courtroom deputy—Mr. Cannarozzi—asking for an informal conference with the Court.  Mr. Cannarozzi responded that the Court's earliest available dates were December 14, 21, and 28.  Counsel for Pacific Bell were unavailable on December 14, and therefore notified Mr. Cannarozzi that they were available for the conference on the Court's next available date—December 21.

4.      The subpoena served by Pacific Bell required production of responsive documents "as they are kept in the usual course of business," and "marked with consecutive document control numbers."  In my experience, these instructions are typical of subpoenas requiring production of documents, and do not require conversion of all files to PDF.

5.      I understand that BtB represents in its opposition to Pacific Bell's Motion to Compel that it has retained Alvarez & Marsal to complete a forensic review of certain of BtB's devices.  Counsel for

1

BtB did not, however, inform Pacific Bell that Alvarez & Marsal had been retained until after Pacific Bell filed its motion to compel.

6.      On January 3, 2024, counsel for Pacific Bell requested via email the name of the vendor whom BtB had allegedly retained to perform a forensic review of the devices of Seth Jones and Monique Fortner.  In response, Mr. Koltun claimed to be "in discussions" with multiple vendors, but did not provide the identity of any such vendor.  A true copy of this email, including Mr. Koltun's response, is attached as Exhibit 1.

7.      Attached as Exhibit 2 is a true copy of an email from Seth Jones to Lindsay Teunis dated January 6, 2022.  This email was produced by SWCA Consulting pursuant to a subpoena served in this action, and a complete copy of the SWCA production was provided to counsel for Plaintiff.

8.      Following BtB's document productions on December 4 and 6, counsel for Pacific Bell met and conferred with counsel for BtB via Zoom on December 18, 2023.  During this meet and confer, Mr. Koltun represented that his clients had completed production of all documents to which they did not object, including (1) all documents and correspondence with plaintiffs, and (2) all documents in his clients' possession that relate to the Lake Tahoe litigation.  Mr. Koltun represented that his clients used certain "search terms" to identify documents, but refused to provide them.  Mr. Koltun also stated that he had relied on his clients' judgment with regard to identifying documents both for purposes of responsiveness and privilege, and that he did not conduct a responsiveness or privilege review himself. Mr. Koltun further represented that he did not collect his client's custodial files, nor did he run any searches through his client's files. A true copy of the email I sent to Mr. Koltun on December 20, 2023 memorializing the terms of our meet and confer is attached as Exhibit 3.

9.      During the parties' December 18 meet and confer, counsel for Below the Blue represented that a "handful" of documents would be produced from the custodial files of Robert Mooney. *See* Ex. 3. To date, no such documents have been produced.

10.     Contrary to counsel for Below the Blue's claim that document production is "underway" (Dkt. 110, ¶10), Below the Blue has not produced a single document since December 6, 2023 or at any time after Alvarez & Marsal was retained.

11.     In a pre-conference statement Pacific Bell filed on December 19, 2023, Pacific Bell identified multiple emails with Plaintiff's counsel and at least 38 separate documents that directly related to Lake Tahoe that BtB had failed to produce. Dkt. 93.  Mr. Koltun did not dispute that documents were missing from its productions and offered no explanation as to why these documents were not produced. To my knowledge, at no time has Mr. Koltun, either during a meet-and-confer with counsel for Pacific Bell or via email, requested that counsel for Pacific Bell provide copies of documents that it has identified as missing.  Nor has counsel for Pacific Bell ever declined any such request.

12.     Counsel for Pacific Bell has repeatedly requested the search terms that BtB allegedly employed in running its searches, including during meet and confers held on December 18 and 22, the discovery conference held with the Court on December 21, 2023, and emails on December 20, 2023 and January 3, 2024.  BtB refused to provide the search terms in response to each of these requests, including most recently in its opposition to Pacific Bell's Motion to Compel.

13.     In his declaration, I understand Mr. Koltun likens his meet-and-confers with counsel for Pacific Bell to "deposition[s]" in which counsel for Pacific Bell "sought to interrogate" him and "trap" him into admissions that he alleges were documented by counsel for Pacific Bell in "self-serving" emails. This representation is grossly erroneous.  Counsel for Pacific Bell conferred with Mr. Koltun in a good-faith effort to discuss, and potentially resolve, their discovery disputes.  Emails sent by counsel for Pacific Bell following each such meet-and-confer provided an accurate factual recounting of the discussions that took place.

14.     I understand Mr. Koltun represents that he asked Jones and Fortner to collect documents potentially responsive to Pacific Bell's requests, and that these documents were posted "on a shared drive

3

so that Koltun could review them and discuss them further," and that "Koltun reviewed these collections of documents" prior to production. Opp. at 3-4.  When the parties met and conferred on December 18, 2023, counsel for Pacific Bell asked Mr. Koltun questions about the specific steps he took to collect and produce documents. In responding to these questions, Mr. Koltun represented only that Mr. Jones and Ms. Fortner "used certain search terms" to collect responsive documents, and after being provided with those documents, "at some level I went through it."  At no point did Mr. Koltun represent that he "reviewed" documents collected by his clients to "discuss them further," or engaged in any process before converting the collected files to PDF and producing to counsel for Pacific Bell. *See* Ex. 3.

15.     Mr. Koltun's suggestion that AT&T should "propose its own list of word searches" ignores the fact that BtB has refused to provide its own search terms, and as a result, Pacific Bell has no way of knowing what terms might be necessary to add or otherwise adjust.  Pacific Bell cannot propose its own search terms unless and until BtB discloses its own, which is why Pacific Bell has repeatedly requested that BtB disclose its terms.

16.     Counsel for Pacific Bell rejected Mr. Koltun's proposal that a vendor provide potentially responsive documents only to BtB—who would then have sole discretion to "review for responsiveness and privilege"—given BtB's track record of failing to produce obviously responsive documents and choice not to be transparent about the search terms it used.  The point of Pacific Bell's proposed protocol was to take responsiveness out of the hands of BtB, given its lack of transparency to date, and to place it under the expertise of an established ESI vendor.

17.     A true copy of Pacific Bell's Amended Review Protocol is attached as Exhibit 4.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed January 18, 2024, in Dallas, Texas.


By: _____
Jon David Kelley

5

# **<u>EXHIBIT 1</u>**

| | |
|---|---|
| **From:** | Joshua Koltun |
| **To:** | Kelley, Jon David |
| **Cc:** | Harrison, Martha K.; Nomellini, Mark J.; Karis, Hariklia; *navidhillon@paulhastings.com; Meier, Peter C. |
| **Subject:** | RE: ESI |
| **Date:** | Wednesday, January 3, 2024 11:45:17 AM |

---

**This message is from an EXTERNAL SENDER**
Be cautious, particularly with links and attachments.

Jon, here are my responses to your questions:

1. Who is the vendor you have begun to engage?

   We are in discussions with two different vendors, with national reputations.  We can confirm once the engagement is finalized.

2. Would the vendor take images of Jones' and Fortner's phones?

   Yes.

3. Would the vendor collect Jones' and Fortner's data to the extent it is maintained in the cloud?

   Yes.

4. What search terms have been used to date by you or your clients?

   My clients have used a number of search terms, and as I've indicated we will consult with the vendor as to whether additional search terms might be useful.  We welcome any suggestions AT&T might have for search terms.

   However, your repeated questions about this seem to indicate a lack of understanding about what is at issue here.  This is not some enormous enterprise, nor is the scope of what is at issue here so enormous, that documents can only be located by way of search terms.  Jones and Rydel-Fortner are the two witnesses/custodians with actual knowledge of the relevant facts at issue here, and have not limited themselves to finding documents by word searches.  They have knowledge of where various documents potentially responsive to the requests were located, quite apart from any word search, and provided access to such potentially documents to me to review.  Word searches were used to supplement that knowledge.

5. What additional search terms would be used by the vendor?

   That is something to be determined in consultation with the vendor once engaged.  As I have indicated I expect the vendor to use data analytics based on the responsive documents already identified to search for similar documents in case any were missed.

6. What methods would be used to gather documents responsive to the subpoena from sources not amenable to search terms (e.g., photos, videos, and texts)?

   See question 4.

7. Under your proposal, would you withhold from production any documents responsive to the subpoena dated before Jones and Fortner's first contact with the Journal?

Not on the basis of Reporter's Privilege.  I would withhold from the production communications relating to BTB/MTS efforts to obtain legal advice and to secure legal representation.  This would include communications with attorneys/firms/nonprofits that did not ultimately agree to represent BTB/MTS in this matter, or to appear in this action.

8. Under your proposal, would you withhold from production any documents responsive to the subpoena dated after the Journal articles were published, but before you were engaged by Below the Blue?

Yes.  See question 7.  Yes, at least potentially, with regard to Reporter's Privilege.

9. When will the remaining documents as to which Below the Blue does not assert privilege be provided, and when will a privilege log be produced?

The answer to this may depend on the speed with which the vendor can perform its tasks.  My understanding is that all custodians can be available for collection as soon as January 8.  I believe that it will be a straightforward matter to separate out the documents as to which privilege is asserted and produce a privilege log quickly.

How large a universe of potentially responsive documents is to be reviewed may in part depend on whether ATT wishes to proffer its own list of search terms, in which case, as I've indicated, the vendor could produce a preliminary "hit list" and we could discuss whether the word-search has produced too many "false positives." Potentially this could be done in two phases, i.e. in which BTB/MTS makes a production and then we run ATT's proposed word searches to see whether, and to what extent, such searches locate additional documents.

I will emphasize again that I do not consider the question of responsiveness to be purely a matter of mechanical word-searches, disconnected from the knowledge my clients have of the relevant facts and circumstances.

I should also note that if we have to engage in motion practice over this that may briefly delay my ability to turn to these tasks, including the production of a privilege log.

10. Was any subpoena-responsive data lost when Fortner's phone got wet or when Jones' phone was turned in? If your answer is that you don't know, what steps have you taken, and what steps will you take, to determine the answer to this question?

As we have discussed, both Jones and Rydel-Fortner's phones have data that pre-dates the dates on which the phones were damaged or turned in.  Insofar as I had previously believed that the data on the phones coincided with the dates the phones were exchanged I was mistaken.  As I have also indicated, neither phone has a complete set of text messages stretching back to the beginning of either party's text messages.  Although some text messages definitely transferred over when each got new phones, it is uncertain whether all text messages transferred over.  As I have told you and told the court, my clients freely and frequently deleted text messages from their phones prior to receiving the subpoenas in this matter.  They were not parties to this litigation and in any event the litigation had settled.

My clients have looked to determine whether text messages were backed up to iCloud or to any other cloud service and have determined that they were not.  We will seek the assistance of the vendor in determining whether there is perhaps some way in which the phones (or cloud) have preserved messages that are not visible to my clients.  Based on the response I got from you this morning, my understanding is

that ATT has not and does not preserve text messages of their users.

Joshua Koltun ATTORNEY

One Sansome Street
Suite 3500, No. 500
San Francisco, CA 94104

415.680.3410
866.462.5959 fax
joshua@koltunattorney.com

**From:** Kelley, Jon David <jon.kelley@kirkland.com>
**Sent:** Wednesday, January 3, 2024 11:20 AM
**To:** Joshua Koltun <joshua@koltunattorney.com>
**Cc:** Harrison, Martha K. <martha.harrison@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>; Karis, Hariklia <hkaris@kirkland.com>; *navidhillon@paulhastings.com <navidhillon@paulhastings.com>; Meier, Peter C. <petermeier@paulhastings.com>
**Subject:** Re: ESI

Joshua,

Please see the below responses to the questions included in your email from yesterday afternoon.

1. AT&T does not retain text messages of its users.
2. AT&T has not accessed or disclosed the content of any BtB/MTS text messages.
3. Please clarify what you mean by "consolidating" the motions transferred from the Southern District.  Are you suggesting the Jones, MTS, and BtB motions to compel be decided in a single hearing?

Thanks,

Jon

Jon David Kelley
----------------------------------------------------------
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
T +1 214 972 1755   M +1 480 225 9934
F +1 214 972 1771
----------------------------------------------------------
jon.kelley@kirkland.com

On Jan 3, 2024, at 8:41 AM, Kelley, Jon David <jon.kelley@kirkland.com> wrote:

Joshua,

Thank you for your message.  We do not agree with the characterizations in your email.

To help us begin to evaluate your proposal, please answer the following questions:

1. Who is the vendor you have begun to engage?
2. Would the vendor take images of Jones' and Fortner's phones?
3. Would the vendor collect Jones' and Fortner's data to the extent it is maintained in the cloud?
4. What search terms have been used to date by you or your clients?
5. What additional search terms would be used by the vendor?
6. What methods would be used to gather documents responsive to the subpoena from sources not amenable to search terms (e.g., photos, videos, and texts)?
7. Under your proposal, would you withhold from production any documents responsive to the subpoena dated before Jones and Fortner's first contact with the Journal?
8. Under your proposal, would you withhold from production any documents responsive to the subpoena dated after the Journal articles were published, but before you were engaged by Below the Blue?
9. When will the remaining documents as to which Below the Blue does not assert privilege be provided, and when will a privilege log be produced?
10. Was any subpoena-responsive data lost when Fortner's phone got wet or when Jones' phone was turned in?  If your answer is

that you don't know, what steps have you taken, and what steps will you take, to determine the answer to this question?

We can be available today for a call to discuss, if helpful.

Thanks,

Jon

**Jon David Kelley**
------------------------------------------------
**KIRKLAND & ELLIS LLP**
4550 Travis Street, Dallas, TX 75205
**T** +1 214 972 1755   **M** +1 480 225 9934
**F** +1 214 972 1771
------------------------------------------------
jon.kelley@kirkland.com
------------------------------------------------

**From:** Joshua Koltun <joshua@koltunattorney.com>
**Sent:** Tuesday, January 2, 2024 1:46 PM
**To:** Kelley, Jon David <jon.kelley@kirkland.com>
**Cc:** Harrison, Martha K. <martha.harrison@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>; Karis, Hariklia <hkaris@kirkland.com>
**Subject:** RE: ESI

Dear Mr. Kelley:

Happy new year.  Thank you for sending me AT&T's proposed protocol.

When we discussed this matter on December 22, we discussed some of the interim methods of dealing with ESI that you had suggested in your email to me of December 20, and I mentioned some of the technical difficulties that they apparently presented.  (I should note in passing that I don't agree with all of your characterizations in that email but I think we are past all that at this point.)  As I represented to the Court, my clients have conducted a further search and had located some further responsive documents.  Rather than produce such documents in a technically deficient manner, we will produce them as discussed below.

Mr. Nomellini indicated, and I agree, that from a technical point of view it would be preferable to have a vendor handle the issues of collection and preservation of ESI.   Mr. Nomellini sketched out a proposed protocol whereby (i) AT&T would hire a vendor that would collect the devices from BTB/MTS and perform searches, (ii) the fruits of those searches would be disclosed to both parties, with (iii) some sort of measure being taken to hold back documents subject to BTB/MTS claim of privilege.

I suggested that such a protocol might be acceptable to BTB/MTS if the documents were provided directly only to BTB/MTS, which would then review for responsiveness and privilege before producing.  Mr. Nomellini responded that that would be unacceptable to AT&T because AT&T would be paying for the vendor.  I then suggested that although the parties might disagree about that issue, and present it to the court for resolution, in the meantime it would speed up the production adopted my proposal as an interim measure and began the process, with AT&T reserving its rights to ask for the court to impose its proposal.  Mr. Nomellini declined to accept such an interim solution.

You sent me AT&T's proposed protocol on December 28.  I have reviewed it, and on behalf of my clients I accept the technical protocol (Exhibit C), as to the specifications for the production of documents/ESI.  But the highly unusual Stipulation and Agreement  that you propose is not acceptable.

In order not to unnecessarily delay production in this matter, BTB/MTS has taken the following steps.  We are in the process of engaging a third  party vendor to assist with this document production.   It is our position that the costs of using this vendor should be borne by AT&T under Fed.R.Civ.P. 45(d)(2)(B)(ii).

BTB/MTS also reserves the right to argue that at least some portion of attorney fees may also be so compensable.  It would make the most sense to adjudicate such cost-shifting issues once the production is concluded and there is a full record of expenses.  At that point I would hope we could meet and confer to avoid BTB/MTS having to file a cost-shifting motion.  If AT&T wishes to contest the general question whether such costs should be shifted it may wish to present that issue in the current round of motion practice.

The vendor will take images of devices from the following custodians, which include the ones we have discussed:  Seth Jones, Monique Rydel-Fortner, Robert Mooney, Rachel Ostrander, Kiera Colloruso, Robin Jones, Emma Redulovic, as well as material maintained by BTB/MTS in the cloud.  The vendor will conduct word searches, including all word searches BTB/MTS has already made use of in its efforts to find all responsive documents, and will also advise BTB/MTS on additional word searches that might be fruitful. In addition, the vendor may  make use of data analytics  to review the documents BTB/MTS have determined were responsive, in order to search for other similar documents that might be responsive and might not have been located through word searches.

If AT&T wishes to propose its own list of word searches, the vendor can run those word searches.  After running word searches, the vendor can generate a preliminary "hit list," which would help determine whether a given word has created an overly expansive universe of documents to review.  We can meet and confer over that.  An overly expansive universe will take longer to review for responsiveness, and such review may also constitute an added expense that BTB/MTS may seek to shift to AT&T.

My expectation is that the vendor would be able to quickly locate those documents that have already been produced so that they may be produced  again under the technical ESI protocol (Exhibit C) on which we have agreed.  To the extent that the above process locates additional documents that have not previously been produced,  BTB/MTS and I  will review them for  responsiveness and privilege.  We will create a privilege log pursuant to Fed.R.Civ.P. 45(e )(2)(A) both as to the First Amendment privilege and attorney-client/work product.   With respect to the latter, we will log BTB/MTS communications seeking legal advice and legal representation.  We do not agree to provide a log of BTB/MTS communications with me after I was retained to represent them in this matter.

A few remaining items.  Mr. Nomellini agreed to get back to me on a number of issues:
1. Does AT&T in fact retain text messages of its users and if so, going back how far in time?
2. Has AT&T or its counsel accessed or disclosed any contents of any of BTB/MTS text messages?
3. Will AT&T stipulate to consolidating the motion transferred from the Southern District into the present motion practice.

Let me know if you have any questions.

Best regards,

Joshua Koltun ATTORNEY

One Sansome Street
Suite 3500, No. 500
San Francisco, CA 94104

415.680.3410
866.462.5959 fax
joshua@koltunattorney.com

**From:** Kelley, Jon David <jon.kelley@kirkland.com>
**Sent:** Thursday, December 28, 2023 11:06 AM

**To:** Joshua Koltun <joshua@koltunattorney.com>
**Cc:** Harrison, Martha K. <martha.harrison@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>; Karis, Hariklia <hkaris@kirkland.com>
**Subject:** RE: ESI

Joshua,

Following up on our December 22 discussion, and without waiver of any of Pacific Bell's positions or rights, attached is a proposed Below the Blue ESI protocol.

The protocol includes relevant date ranges based on our understanding of your position as to when Below the Blue started work with the Journal (March 2022), when the Journal's articles were published (July 9, 2023), and when we understand you were engaged to represent your clients in this case (November 22, 2023).

Please let us know if you agree to this, and also if you would like to schedule a call to discuss.

Jon

**Jon David Kelley**

--------------------------------------------------------------

**KIRKLAND & ELLIS LLP**
4550 Travis Street, Dallas, TX 75205
**T** +1 214 972 1755   **M** +1 480 225 9934
**F** +1 214 972 1771

--------------------------------------------------------------

jon.kelley@kirkland.com

---

**From:** Joshua Koltun <joshua@koltunattorney.com>
**Sent:** Friday, December 22, 2023 11:09 AM
**To:** Kelley, Jon David <jon.kelley@kirkland.com>
**Cc:** Harrison, Martha K. <martha.harrison@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>
**Subject:** RE: ESI

Thanks.  Lets talk at 2 ET/11 PT

**Joshua Koltun** ATTORNEY

One Sansome Street
Suite 3500, No. 500
San Francisco, CA 94104

415.680.3410
866.462.5959 fax
joshua@koltunattorney.com

---

**From:** Kelley, Jon David <jon.kelley@kirkland.com>
**Sent:** Thursday, December 21, 2023 7:00 PM
**To:** Joshua Koltun <joshua@koltunattorney.com>
**Cc:** Harrison, Martha K. <martha.harrison@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>
**Subject:** Re: ESI

Hi Joshua,

Yes, we are free to discuss tomorrow between 1-3pm ET.  Please let us know what works best for you.

Jon David Kelley
--------------------------------------------------------------
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
T +1 214 972 1755
M +1 480 225 9934
--------------------------------------------------------------
jon.kelley@kirkland.com

On Dec 21, 2023, at 7:29 PM, Joshua Koltun <joshua@koltunattorney.com> wrote:

Jon,

Would you have any time tomorrow to discuss the various options you list at the end of your email.

**Joshua Koltun** ATTORNEY

One Sansome Street
Suite 3500, No. 500
San Francisco, CA 94104

415.680.3410
866.462.5959 fax
joshua@koltunattorney.com

---

**From:** Kelley, Jon David <jon.kelley@kirkland.com>
**Sent:** Wednesday, December 20, 2023 8:55 PM
**To:** Joshua Koltun <joshua@koltunattorney.com>; Karis, Hariklia <hkaris@kirkland.com>
**Cc:** Nomellini, Mark J. <mnomellini@kirkland.com>; Meier, Peter C. <petermeier@paulhastings.com>;
*navidhillon@paulhastings.com <navidhillon@paulhastings.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

Joshua,

We write to memorialize the issues discussed during our meet and confer Monday afternoon, and also to repeat our request for information that we sought during that call but that you were unable to provide.

1. **Collection of responsive materials:**
   1. We asked you what steps your clients took to collect documents responsive to Pacific Bell's subpoena. You represented that you discussed Pacific Bell's document requests with your clients, described what they should look for, and that your clients were responsible for identifying and pulling documents they deemed in their judgment to be responsive based on your discussions.
   2. Accordingly, you acknowledged that you relied on their judgment with regard to identifying documents both for purposes of responsiveness and privilege, and that you did not conduct the responsiveness or privilege review yourself.
   3. You confirmed that you did not collect your client's custodial files, nor did you run any searches, yourself, through your client's files.
   4. You also mentioned that your clients used certain "search terms" to conduct these searches, but when asked what terms your clients used, you responded that you did not know.  Please provide the search terms.
   5. You confirmed that all documents reflecting any communications between your clients and Plaintiff in this case had been given to you.  We asked about your basis for this statement, and you confirmed that this is what your clients had represented to you, that you were relying on their representation, and that you had not reviewed the documents that your clients determined did not reflect communications between them and Plaintiff.
   6. We asked whether documents had been collected from any BtB or MTS employee, aside from Jones and Fortner, and you responded that an individual named Robert Mooney may have responsive documents. Please confirm whether Mr. Mooney has documents responsive to the subpoena.
   7. You confirmed that you had taken no steps to confirm whether the videographer involved with the Lake Tahoe cables was in possession of responsive documents, but you were not aware of any others.  Please confirm whether the videographer has documents responsive to the subpoena.

2. **Status of information from Jones' and Fortner's phones:**
   1. In your e-mail of December 10th, after we inquired why there were no text messages in your client's document production, you wrote that your clients' cell phones "no longer exist" and that your clients were trying to determine "whether any old text messages might still exist."  Please confirm whether Jones' text messages pre-dating the "loss" of his phone exists.
   2. We explained to you both via e-mail and during our call today the reasons this is such a significant problem, especially given the importance of your clients' communications during this period.
   3. During our call yesterday, you explained that the representations you made on December 10th were incorrect.  You represented that Jones "got rid of his old phone" in or around November of 2022. You further represented that Fortner's phone "got wet" and she was forced to get a new phone, but her phone

had retained all old text messages as far as you were aware.

4. You made the following representations in response to our questions concerning the status of Jones' and Fortner's phones:

   1. **Jones**:

      1. You stated that Jones gave his phone to MTS in or around November of 2022, and as a result he is no longer in possession of the phone, nor does he have access to any of the information that was previously on it.  <u>Please confirm the name of the person at MTS who Jones gave his phones to, what that MTS person did with it, and when.</u>

      2. You stated that you did not know whether Jones has photos that were on his phones before November 2022.  <u>Please confirm.</u>

      3. You stated that, to your knowledge, this was not his personal phone, but it was owned by MTS.  <u>Please confirm.</u>

      4. You stated that MTS no longer has access to the phone, either, but you did not know why, or what happened to it.  <u>Please confirm what happened to the phone.</u>

      5. You speculated that MTS may have turned the phone into the phone company "for credit," though you again stated that you were simply not sure what happened to it. <u>Please confirm.</u>

      6. You stated that you did not know whether Jones' iPhone information was backed up to the cloud.  <u>Please confirm.</u>

      7. You stated that Jones used the same phone number before and after the event.  <u>Please confirm.</u>

      8. You stated that both Jones and Fortner used AT&T as their carrier.

   2. **Fortner**:

      1. You represented that Ms. Fortner's cell phone "got wet" during a dive, and that she was forced to get a new phone. We asked you when this occurred, and you said you did not know.  <u>Please confirm when and how Ms. Fortner's phone "got wet."</u>

      2. You further stated that this new phone still has all of her prior text messages dating back to 2015 or 2016.

      3. We asked you to confirm whether Ms. Fortner had all of the photos it had before it got wet. You said you did not know.  <u>Please confirm.</u>

      4. You stated that Fortner used the phone number before and after the phone "got wet." Please confirm.

      5. When we asked you why none of these text messages had been produced, you responded that "none are responsive" as far as you are aware.

      6. You again confirmed that your clients did not turn over or provide any text messages to you that would allow you to search for responsive information.

      7. You confirmed that you have not seen any of Fortner's text messages, nor have you reviewed any of Fortner's text messages to determine whether any are privileged.

      8. You represented that, to ensure collection and production of responsive messages, you had simply "relied on my client who told me she doesn't have anything."

3. **<u>Status of production:</u>**

   1. We asked you whether your clients had completed their productions. You responded that your clients had completed production of all documents to which they did not object, including (1) all documents and correspondence with plaintiffs, and (2) all documents in your clients' possession that relate to the Lake Tahoe litigation.

   2. You also mentioned that a small additional production of a "handful" of documents was forthcoming, based on information you received just before our call from your clients. You did not (or could not) identify the size of this production, and you did not offer any reason these documents had not been previously produced.

   3. You identified the source of this forthcoming production as being an employee of MTS named Robert Mooney.

4. **<u>Format of production:</u>**

   1. You represented that you produced your clients' documents in PDF format because you believed this was the only way to bates-label emails.

   2. We informed you that emails and other documents are routinely produced in litigation with bates-labels and metadata.

   3. You explained that you were unsure how to make such a production given your "limited resources" as a solo practitioner, and we agreed to provide you with tips and instructions concerning how such a production could be made.

   4. At the end of this e-mail, we have provided instructions and tips concerning how emails and other documents can be produced as they are stored in the ordinary course without losing metadata.

   5. You also represented that it might "take time" for you to produce documents with metadata, and suggested that narrowing the scope of the documents would speed up the process.

   6. We explained that production as these documents are kept in the ordinary course was required under the rules, and Pacific Bell would not prejudice itself by agreeing to a delayed production, or to narrowing the

scope of documents it is willing to receive with metadata.

7. We again explained that Pacific Bell will pay for an independent third-party eDiscovery vendor to handle all data collection and production for your clients.

5. **Privilege assertion:**

   1. We asked you to describe the nature of the privilege you claim that forms the basis of your client's refusal to produce a majority of the responsive documents requested in the subpoena.
   2. You again claimed that your clients entered into an oral agreement with the Wall Street Journal to act as reporters, and that as a result, all documents and communications relating to that investigation were privileged.
   3. You admitted that the reporters' privilege can be waived, but again insisted that EDF's production of the very documents you claim are privileged somehow does not wave privilege as to your clients.
   4. We asked you to provide the basic details of this alleged agreement between your clients and the Journal, and you were unable to provide any of the information requested, including:
      1. When the agreement was entered between your clients and the Wall Street Journal;
      2. Who at the Wall Street Journal entered into the agreement with your clients; or
      3. The scope of the agreement between your clients and the Wall Street Journal, and what was covered.

6. **Privilege log:**

   1. You confirmed that your clients refuse to produce a privilege log.


**Methods of Production that Comply with the Federal Rules and Pacific Bell's subpoena:**

Finally, as discussed, it is a standard (and required) practice in litigation to bates label and produce emails and other documents without losing or otherwise altering metadata.

The following are key steps you can and should take to comply with your production obligations. We again reiterate our willingness to pay for a vendor to simply conduct the collection and handle bates-labeling and production for you.

1. The process for labeling and producing varies depending on the technology being employed to collect and review documents.
2. As an example, discovery software called Relativity is the most widely used, and it is used by a variety of e-discovery vendors and law firms that can collect data from most enterprise platforms and makes it possible to review the data and create productions with both automated and custom workflows while allowing bates stamping and redaction without altering or otherwise removing metadata.
3. If you do not have access to this or similar software, an e-discovery vendor can assist without requiring familiarity with the technological requirements to produce documents in a manner that meets the requirements of the FRCP.
4. In the absence of a tool, you could simply produce documents in their native form as we requested in our earlier correspondence, and we would be willing to bates label the documents for you.
5. If the documents are located in Outlook, you can drag the messages out of Outlook into a folder where they will be saved as MSG files, which can be exported via FTP to allow preservation of the documents' metadata.

Please provide answers to the identified questions prior to our conference with the Court on December 21, and let us know whether your clients agree to produce its documents in a form that complies with the federal rules.

Thanks,

Jon

**Jon David Kelley**
-------------------------------------------------
**KIRKLAND & ELLIS LLP**
4550 Travis Street, Dallas, TX 75205
**T** +1 214 972 1755   **M** +1 480 225 9934
**F** +1 214 972 1771
-------------------------------------------------
jon.kelley@kirkland.com

---

**From:** Joshua Koltun <joshua@koltunattorney.com>
**Sent:** Friday, December 15, 2023 2:38 PM
**To:** Karis, Hariklia <hkaris@kirkland.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>; Meier, Peter C. <petermeier@paulhastings.com>; *navidhillon@paulhastings.com <navidhillon@paulhastings.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportsfishing Protection Alliance v. Pacific Bell

Telephone Company

Lets talk at 10 am Pacific Monday

**Joshua Koltun** ATTORNEY

One Sansome Street
Suite 3500, No. 500
San Francisco, CA 94104

415.680.3410
866.462.5959 fax
joshua@koltunattorney.com

---

**From:** Karis, Hariklia <hkaris@kirkland.com>
**Sent:** Friday, December 15, 2023 4:47 AM
**To:** Joshua Koltun <joshua@koltunattorney.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>; Meier, Peter C. <petermeier@paulhastings.com>; *navidhillon@paulhastings.com <navidhillon@paulhastings.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

Joshua,

Thank you for your email seeking to respond to the issues I raised with your clients' document production. Unfortunately, the description of the reason you chose to convert the produced files into a single PDF does not resolve the issue and, on its face, does not comply with the requirement contained in the Federal Rules and Pacific Bell's subpoena that BtB produce responsive documents as they are stored in the ordinary course.

The admission that you altered the format of every document produced—and in a way that *removed* all metadata and other necessary information from those documents—only confirms that you have not complied with these requirements. As you are undoubtedly aware, counsel for a party cannot unilaterally alter the format of documents prior to production, which is precisely why courts have found that producing emails and other electronics documents as PDFs (let alone as a single PDF, thousands of pages long) is not permitted. Respectfully, we do not need the "roadmap of the file structure and contents of this production" you say you are working to create. Instead, you need only simply produce the files in their native format, which will enable us to run searches using metadata and other information already included in the native versions of the files themselves. For these reasons, we again request that BtB's production be immediately provided in the native format in which these documents are ordinarily maintained with their associated metadata.

Your email also raises new and equally significant concerns about data preservation and potential spoliation issues.

First, please explain what you mean by "the cellphones from the relevant time period . . . no longer exist." What happened to the phones to cause them to "no longer exist"? Were the phones destroyed, and if so, by whom and when? Why were they destroyed, if that's what happened? Did anyone give your clients permission to discard or destroy the phones and if so, who gave such permission?

Second, to what time period are you referring? Are you suggesting no phone records exist between 2020 and early 2022? As you can imagine, this is a critical timeframe in the lifespan of a case that your clients are in large part responsible for instigating, and any records in your clients' possession from that period are highly relevant and important to obtain.

Third, in whose name, specifically, were the phones at issue? Given your representation of multiple clients in this case, it is unclear to whom you are referring.

Fourth, were the phone numbers for these individuals abandoned, or was the phone changed and the number transferred to a different phone? The attached documents produced by the Environmental Defense Fund reflect text messages sent from the cell phones of Mr. Jones (+1-858-232-1958) and Ms. Fortner (+1-858-349-4503) to Tom Neltner in July of this year. We are also aware that Mr. Jones and Ms. Fortner had the same phone numbers at least as early as January 2021. Given that these numbers were being used by Jones and Fortner as recently as July, are you alleging that these cell phones are now among those that "no longer exist"?

Given that potentially critical evidence located on the phones that you contend no longer exists, please confirm that your clients will consent to Pacific Bell serving a subpoena for the relevant phone company (or companies) seeking relevant evidence and related information.

Fifth, you also haven't responded to the other questions posed in my email, namely:
1. Who collected these documents and who determined what documents were responsive?

2. What is the universe of sources and custodians searched, including specific email addresses and phone numbers?

3. Were hard-copy documents collected and searched?

Finally, Pacific Bell's subpoena included a request that BtB provide a privilege log for any documents it claims are privileged. You have made clear that BtB has withheld a significant volume of documents based on the purported "reporters privilege." When will BtB provide its privilege log?

We are available to confer this weekend or Monday between 10 a.m. to 1 p.m. Please confirm if the proposed times work.

Carrie

**Carrie Karis, P.C.**
------------------------------------------------------
**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2330 **M** +1 847 525 6908
**F** +1 312 862 2200

hkaris@kirkland.com

**From:** Joshua Koltun <joshua@koltunattorney.com>
**Sent:** Sunday, December 10, 2023 1:29 PM
**To:** Karis, Hariklia <hkaris@kirkland.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>;
*navidhillon@paulhastings.com <navidhillon@paulhastings.com>; Meier, Peter C. <petermeier@paulhastings.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

Dear Carrie:

I converted those documents that could be converted into PDFs, so that we could make a bates stamped production of documents. This created an easily searchable document and will enable us to specify documents in any discussion we may have. We are working on creating a roadmap of the file structure and contents of this production that will assist defense counsel in reviewing documents and in any discussion we may have concerning this production. My understanding is that the cellphones from the relevant time period (i.e. excluding the time during which my clients were working with the Journal and EDF, as to which we claim privilege) no longer exist. My clients are trying to determine whether there is any place were such old text messages might still exist.

I can generally be available this week from Wednesday to Friday, although I'd appreciate if you would offer me more than one time because something may come up.

Best regards,

Joshua Koltun ATTORNEY

One Sansome Street
Suite 3500, No. 500
San Francisco, CA 94104

415.680.3410
866.462.5959 fax
joshua@koltunattorney.com

**From:** Karis, Hariklia <hkaris@kirkland.com>
**Sent:** Wednesday, December 6, 2023 8:33 PM
**To:** Joshua Koltun <joshua@koltunattorney.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>;
*navidhillon@paulhastings.com <navidhillon@paulhastings.com>; Meier, Peter C. <petermeier@paulhastings.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

Joshua,

First, I don't think it is worth debating what relief you requested from the Court and what orders remain in effect. The Court will ultimately decide.

Second, the Court's November 9 Order is clear: BtB was required to "produce all documents called for by the Subpoena" by no later than November 30. That did not happen even though the Order is still in effect, and we made clear during our call that Pacific Bell was not agreeing to an extension. As a result, BtB is in violation of the Order. The documents and other responsive material you refer to as "privileged" and "irrelevant," and that you refuse to produce, are the same documents the Court Ordered BtB to produce by November 30.

Third, even the limited production made by BtB and MTS violates the Federal Rules. Not only was this initial production untimely -- made five days *after* the deadline imposed by the court -- but the produced materials were inexplicably produced as a single PDF, disregarding the format specified in the subpoena as well as the standard required by the Federal Rules of Civil Procedure. The subpoena specified that responsive documents were to be produced "as they are kept in the usual course of business." Rule 45 provides that "[i]f a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. Pro 45 (e)(1)(B).

A single PDF combining multiple unrelated pages is not the way documents are maintained in the ordinary course of business and creates significant problems that the instructions in the subpoena and the Federal Rules were meant to avoid. As an example, the production of multiple unrelated pages together in one PDF removes any ability to determine relationship, order, and sequencing of any of the documents contained within the PDF. Loading a large PDF into a database and then searching for information is also cumbersome. Further, documents produced in one large PDF have no useable metadata pertaining to the underlying documents contained within the PDF. Courts have repeatedly found that producing emails and other electronics documents as PDFs (let alone as a single PDF, thousands of pages long) is not permitted. *See, e.g.*, *Abbott Labs. v. Adelphia Supply USA*, 2019 WL 3281324 (E.D.N.Y. 2019) (recommending sanctions and a default judgment against a party in part because they produced emails and invoices in a single, unusable, 1,941 page PDF file); *Johnson v. Italian Shoemakers, Inc.*, 2018 WL 5266853, at *2 (W.D.N.C. Oct. 23, 2018) (granting motion for sanctions after plaintiff repeatedly produced emails in PDF format, which "is not how emails are kept in the ordinary course of business"). BtB's production should be immediately provided in the native format in which these documents are ordinarily maintained with their associated metadata.

Moreover, we have significant concerns about the selection and production process of even the narrow subset of documents BtB unilaterally selected for its untimely production. The following is a non-exhaustive list of basic questions:
1. Who collected these documents and who determined what documents were responsive?
2. What is the universe of sources searched, including specific email addresses and phone numbers?
3. Why are no text messages included?
4. Where hard-copy documents collected and searched?
5. Who compiled the collected documents into a PDF and why?

Please provide a time you are available to meet and confer concerning these issues.

Regards,

Carrie

**Hariklia ("Carrie") Karis, P.C.**
--------------------------------------------------------------
**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2330  **M** +1 847 525 6908
**F** +1 312 862 2200

hkaris@kirkland.com

**From:** Joshua Koltun <joshua@koltunattorney.com>
**Sent:** Tuesday, December 5, 2023 5:53 PM
**To:** Karis, Hariklia <hkaris@kirkland.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>;
*navidhillon@paulhastings.com <navidhillon@paulhastings.com>; Meier, Peter C. <petermeier@paulhastings.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

Dear Carrie:

I find your email both mystifying and offensive. I don't understand how you can contend that "your papers with the Court do not seek relief for the production obligations that the Court required."

In any event, my clients have been making their best efforts to collect and produce documents in an orderly fashion, subject to their efforts to obtain an adjudication of their objections.  Defendant's cursory reference in its opposition to the fact "a few documents" were produced (DE 88 at 4) is highly misleading.  Thousands of pages of documents were produced, as well as extensive geolocation information, and some additional such data will be produced tomorrow.  Defendant will be fully able to conduct the independent investigation of lead-clad cables in Lake Tahoe that it claims it wishes to conduct.

The remainder of what Defendant is now seeking is not only privileged but irrelevant to the case before the Court.  Please let me know whether you wish to proceed with your efforts to have a third party vendor gain access to that material.  My clients will oppose.

**Joshua Koltun** ATTORNEY

One Sansome Street
Suite 3500, No. 500
San Francisco, CA 94104

415.680.3410
866.462.5959 fax
joshua@koltunattorney.com

---

**From:** Karis, Hariklia <hkaris@kirkland.com>
**Sent:** Saturday, December 2, 2023 4:56 AM
**To:** Joshua Koltun <joshua@koltunattorney.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>; *navidhillon@paulhastings.com <navidhillon@paulhastings.com>; Meier, Peter C. <petermeier@paulhastings.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

Joshua,

Following up on our discussion earlier this week, as you are aware, the Court's November 9 Order required Below the Blue ("BtB") to produce "all documents called for by the Subpoena by no later than November 30, 2023."  BtB has not produced any documents by this Court-imposed deadline.  No stay of the Order has been entered and during our call, we were very clear that we did not and would not agree to an extension. Why Mr. Jones had still not provided the documents to you when we spoke on Tuesday remains of concern and a topic for discussion with the Court at the appropriate time. In short, BtB is currently in violation of the Order. Moreover, your papers with the Court do not seek relief for the production obligations that the Court required – in addition to misstating some key facts that we will address in due course.

Please be advised that, as a result of the initial delay and now violation of the Court's order, we intend to ask the Court to permit collection of BtB's files by an independent third-party e-discovery vendor to facilitate compliance with the Order.  Pacific Bell is willing to pay for this collection service.

We suggest four independent companies that specialize in document collection, below.  As soon as possible, but no later than COB on December 5, please let us know which of these companies BtB agrees on to conduct the collection for purposes of compliance with the Order.

1. Alvarez & Marsal
2. Deloitte
3. AlixPartners
4. Ankura

Absent agreement by that date, we will request that Alix Partners conduct the collection.  We intend to ask the Court to order this collection as soon as possible. Please advise if you wish to discuss this matter any further. We too will make ourselves available over the weekend, if that is necessary, to advance this critical discovery issue.

Regards,

Carrie

**Hariklia ("Carrie") Karis, P.C.**
----------------------------------------------
**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2330  **M** +1 847 525 6908
**F** +1 312 862 2200

hkaris@kirkland.com

**From:** Joshua Koltun <joshua@koltunattorney.com>
**Sent:** Friday, December 1, 2023 7:11 PM
**To:** *navidhillon@paulhastings.com <navidhillon@paulhastings.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Karis, Hariklia <hkaris@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

Counsel, if you wish to talk over the weekend let me know and I will make myself available.
Have a good weekend

Joshua Koltun ATTORNEY

One Sansome Street
Suite 3500, No. 500
San Francisco, CA 94104

415.680.3410
866.462.5959 fax
joshua@koltunattorney.com

**From:** Dhillon, Navi <navidhillon@paulhastings.com>
**Sent:** Friday, December 1, 2023 3:51 PM
**To:** Nicholas Cannarozzi <NCannarozzi@caed.uscourts.gov>; Joshua Koltun <joshua@koltunattorney.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Karis, Hariklia <hkaris@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

Hi Nic

On 1, defense counsel will confer with Mr. Koltun on scheduling on the pre-discovery conference.

On 2, defense counsel will be filing an opposition to the extension request.

Thank you and have a nice weekend.

Best regards

<image001.png>    **Navi Dhillon | Partner**
O: 415.856.7080 | M: 415.203.8805

**From:** Nicholas Cannarozzi <NCannarozzi@caed.uscourts.gov>
**Sent:** Friday, December 1, 2023 3:44 PM
**To:** Joshua Koltun <joshua@koltunattorney.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Karis, Hariklia <hkaris@kirkland.com>; Dhillon, Navi <navidhillon@paulhastings.com>; Nomellini, Mark J. <mnomellini@kirkland.com>
**Subject:** [EXT] RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

Good afternoon,

Are the parties requesting the matter be set for another pre-discovery motion conference?  If so, we would have 12/14, 12/21 and 12/28 as our next three available.  All at 10:00 a.m. via Zoom.  As to your ex parte motion for an extension of time, will defense counsel be filing a response to that request?  Thanks.

Nic Cannarozzi
Courtroom Deputy to the
Honorable Jeremy D. Peterson and

the Honorable Edmund F. Brennan
United States District Court
501 I Street, Suite 4-200
Sacramento, CA 95814
916.930.4172

---

**From:** Joshua Koltun <joshua@koltunattorney.com>
**Sent:** Friday, December 1, 2023 12:08 PM
**To:** Nicholas Cannarozzi <NCannarozzi@caed.uscourts.gov>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Karis, Hariklia <hkaris@kirkland.com>; *navidhillon@paulhastings.com <navidhillon@paulhastings.com>; Nomellini, Mark J. <mnomellini@kirkland.com>
**Subject:** Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

<mark>CAUTION - EXTERNAL:</mark>

Dear Mr. Cannarozzi:

I am newly-engaged counsel, (as of 11/22) for Third Party Witnesses Below the Blue, who has previously been unrepresented in this action.  On 11/24 I emailed counsel for defendants in this matter asking to meet and confer.  (Note that this was during the Thanksgiving holiday).  On 11/28 I received a response and we scheduled a meet and confer Zoom call the morning of 11/29 (8 am), on a variety of issues and deadlines. Later that day I filed with the court an Administrative Motion for Extensions of Time; that filing contains more details about the meet and confer session.  Dkt 87 at 2-3.

One upshot of the meet and confer is that Beyond the Blue wishes to file a motion to reconsider (in part) this Court's Order granting motion to compel (Dkt 80).  That motion to reconsider will be due on December 7 (unless the Court grants the requested extension) The Zoom call ended after an hour, and I understood that we would be exchanging potential times to propose for the informal conference with the Court pursuant to its procedures for discovery motions.  Later on the morning of 11/29 I sent defense counsel proposed times for such a conference but I have not heard back from them.   I am copying them on this email.

Speaking for myself, I can make myself available anytime next week, although I note that, in the absence of an extension of time my date to file the motion is December 7.

Thank you for your assistance with scheduling such a conference.

**Joshua Koltun** ATTORNEY

One Sansome Street
Suite 3500, No. 500
San Francisco, CA 94104

415.680.3410
866.462.5959 fax
joshua@koltunattorney.com

<mark>**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.</mark>

**************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# **EXHIBIT 2**

**To:**       Robert Mooney[robert@consultmts.com]; Seth Jones[seth@consultmts.com]
**Cc:**       Lindsay Teunis[Lindsay.Teunis@swca.com]; Will Norman[Will.Norman@swca.com]
**From:**     John Dietler[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=C9A8231BFCF84A528E278236EDBC806D-JOHN
DIETLE]
**Sent:**     Mon 2/28/2022 12:38:12 PM (UTC-06:00)
**Subject:**  RE: Get to know each other (MTS and SWCA)

Hi Robert and Seth,

I wanted to send a belated thank you for the hat and shirt! I didn't come to the office for several weeks
due to the holidays and the pandemic, and was happy to find the package waiting for me when I
eventually returned. Love them both!

On an unrelated note, I see that MTS is sponsoring the EBJ Environmental Summit in mid-March.
Looking forward to seeing you there in person!

Best,
John

John Dietler, Ph.D., RPA
Vice President, Southern California & Pacific Islands

SWCA Environmental Consultants
P 626-489-4068 | C 310-795-6693
jdietler@swca.com


-----Original Message-----
From: Will Norman <Will.Norman@swca.com>
Sent: Tuesday, February 1, 2022 2:10 PM
To: Robert Mooney <robert@consultmts.com>; Seth Jones <seth@consultmts.com>
Cc: Lindsay Teunis <Lindsay.Teunis@swca.com>; John Dietler <jdietler@swca.com>; Kenny Carothers
<carotherskenny@gmail.com>
Subject: RE: Get to know each other (MTS and SWCA)

Perfect and Thanks!  Really appreciate it Robert!

Will Norman
Sr. Business Development Lead
SWCA
225.636.0114

-----Original Message-----
From: Robert Mooney <robert@consultmts.com>
Sent: Tuesday, February 1, 2022 3:44 PM
To: Will Norman <Will.Norman@swca.com>; Seth Jones <seth@consultmts.com>
Cc: Lindsay Teunis <Lindsay.Teunis@swca.com>; John Dietler <jdietler@swca.com>; Kenny Carothers
<carotherskenny@gmail.com>
Subject: RE: Get to know each other (MTS and SWCA)

EXTERNAL: This email originated from outside SWCA. Please use caution when replying.

Hi Will,
Glad you got the package.  In So Cal we seew some senescence of eelgrass in the winter.  Somewhat hit
or miss.  I'd say areas with more estuarine influence may get a bit more impacted over winter due to

increased turbidity, short photoperiod, and depressed salinity.  Best would be to perform some sort of quick verification survey to look at density.  Outside of that, I'd recommend waiting until mid-spring.  Hard to say a lot without being familiar with the site but that's my quick armchair quarterbacking.

Cheers,
Robert

Robert Mooney, PhD, Principal Marine Scientist :: MARINE TAXONOMIC SERVICES, LTD.
San Diego | Oregon | South Lake Tahoe
(C) 760.331.7897 (O) 760.410.8392 (F) 760.738.1802 (W) www.marinetaxonomicservices.com


-----Original Message-----
From: Will Norman <Will.Norman@swca.com>
Sent: Tuesday, February 1, 2022 12:20 PM
To: Robert Mooney <robert@consultmts.com>; Seth Jones <seth@consultmts.com>
Cc: Lindsay Teunis <Lindsay.Teunis@swca.com>; John Dietler <jdietler@swca.com>; Kenny Carothers <carotherskenny@gmail.com>
Subject: RE: Get to know each other (MTS and SWCA)

I just got a kick ass care package in the mail.  Thanks so much amigos!

Robert, I had a quick question that I just shot Lindsay and our other lead, but they are out today so I thought I would ask your thoughts.  No worries if your tied up, etc.  Anyway, the aerial survey team for Chandeleur was looking at late a schedule of February for ideal sun-angle for Lidar water penetration for the aerial survey.  Question came up if water temperatures would make that maybe not an ideal time for an aerial survey of seagrasses if their growth would be stunted in any way.  That seems to make sense but wanted to know if you had any thoughts on that, if you have a second.

Thanks again guys, looking forward to continuing this conversation!

Will Norman
Sr. Business Development Lead
SWCA
225.636.0114

-----Original Message-----
From: Robert Mooney <robert@consultmts.com>
Sent: Thursday, January 27, 2022 4:20 PM
To: Kenny Carothers <KCarothers@swca.com>
Cc: Will Norman <Will.Norman@swca.com>; Seth Jones <seth@consultmts.com>; Lindsay Teunis <Lindsay.Teunis@swca.com>; John Dietler <jdietler@swca.com>
Subject: RE: Get to know each other (MTS and SWCA)

EXTERNAL: This email originated from outside SWCA. Please use caution when replying.

I'm slow but not forgetful.  I just asked on my end to have shirts sent out to you guys.
Cheers,
Robert

Robert Mooney, PhD, Principal Marine Scientist :: MARINE TAXONOMIC SERVICES, LTD.
San Diego | Oregon | South Lake Tahoe
(C) 760.331.7897 (O) 760.410.8392 (F) 760.738.1802 (W) www.marinetaxonomicservices.com


-----Original Message-----

From: Kenny Carothers <KCarothers@swca.com>
Sent: Friday, January 7, 2022 9:11 AM
To: Robert Mooney <robert@consultmts.com>
Cc: Will Norman <Will.Norman@swca.com>; Seth Jones <seth@consultmts.com>; Lindsay Teunis
<Lindsay.Teunis@swca.com>; John Dietler <jdietler@swca.com>
Subject: Re: Get to know each other (MTS and SWCA)

That would be awesome! I can return the favor and get y'all some SWCA swag, although we don't have
any as cool as those. I wear a men's L

8412 Etienne Cove
Austin TX 78759

Thanks!


Kc

Kenny Carothers
512-800-9895

Sent from my mobile device
Please excuse any typos

> On Jan 7, 2022, at 10:47 AM, Robert Mooney <robert@consultmts.com> wrote:
>
> EXTERNAL: This email originated from outside SWCA. Please use caution when replying.
>
> Hi All,
> Great meeting.  I'll have our intern send you all shirts.  Just give me address and size for each of you.  I
think we have the We Do Cool Sh@t! Ones right now.
> Cheers,
> Robert
>
> Robert Mooney, PhD, Principal Marine Scientist :: MARINE TAXONOMIC SERVICES, LTD.
> San Diego | Oregon | South Lake Tahoe
> (C) 760.331.7897 (O) 760.410.8392 (F) 760.738.1802 (W)
> www.marinetaxonomicservices.com
>
>
> -----Original Message-----
> From: Will Norman <Will.Norman@swca.com>
> Sent: Thursday, January 6, 2022 2:34 PM
> To: Seth Jones <seth@consultmts.com>; Lindsay Teunis
> <Lindsay.Teunis@swca.com>
> Cc: John Dietler <jdietler@swca.com>; Robert Mooney
> <robert@consultmts.com>; Kenny Carothers <KCarothers@swca.com>
> Subject: RE: Get to know each other (MTS and SWCA)
>
> Seth, It was a real pleasure getting to meet you and Robert today, and I really look forward to
continuing this conversation.  Robert, as we flesh out the Chandeleur Restoration project, I'll keep you
posted.
>
> Attached is a marketing piece we put together for the TX FW Mussel work last year and really started
marketing it 3rd/4th QTR.  Provides a little overview of the market and what we are pushing.
>

> Seth, I really appreciate your and Robert's openness about where how ya'll feel about the M&A space. I think that is so cool and smart.  Kenny is your point on all things M&A, but I'd like to suggest KC introducing ya'll to Janet Herrick down the road.  She just went through an acquisition by SWCA at the end of last year.  Her company is about the same size as MTS and she had a lot of the same concerns. While she made a decision ya'll may ultimately decide against, while it's this fresh in her mind I bet she would have an awesome perspective to share with you.
>
> Lastly, and most importantly, if ya'll allow it outside of the company, I would love to venmo you the cost for purchase and shipping of a Medium long-sleeve MTS "getting Sh@T Done"  T-shirt.  If you could ship it when ever you have time (no rush at all) to the address below, that would just be fantastic.  Hope ya'll have a great rest of your week, and happy new year!
>
>
> Will Norman
> Sr. Business Development Lead
>
> SWCA Environmental Consultants
> 1651 Lobdell Ave, Bldg. A
> Baton Rouge, LA 70806
> P 225.320.5896 | C 225.636.0114
>
>
> The contents of this email and any associated emails, information, and attachments are CONFIDENTIAL. Use or disclosure without sender's authorization is prohibited. If you are not an authorized recipient, please notify the sender and then immediately delete the email and any attachments.
>
> Will Norman
> Sr. Business Development Lead
> SWCA
> 225.636.0114
>
> -----Original Message-----
> From: Seth Jones <seth@consultmts.com>
> Sent: Thursday, January 6, 2022 2:25 PM
> To: Lindsay Teunis <Lindsay.Teunis@swca.com>
> Cc: John Dietler <jdietler@swca.com>; Robert Mooney
> <robert@consultmts.com>; Kenny Carothers <KCarothers@swca.com>; Will
> Norman <Will.Norman@swca.com>
> Subject: Re: Get to know each other (MTS and SWCA)
>
> EXTERNAL: This email originated from outside SWCA. Please use caution when replying.
>
> Hi all!
>
> Great to connect this am. I look forward to continuing to work with Lindsay and others down the road at SWCA. I feel like our values and outlook line up.
>
> Lindsay, can I get your current rates and let me know what I should plug in for this upcoming ATT work. Also let's touch base with others at your Reno office that should be looped into the process.  This project will be multi faceted… it's a little bit of a sore spot for ATT, But this will set the path forward and pave the way to push for removal across the US…  though our non profit - Below the Blue - we used Tahoe because we love it and it was the easiest place to win a case like this since it's a pristine California drinking water source.   It's the long game… but 1000's of miles of these cables that contain 20,000 lbs of leaching lead per mile that very few know about will be coming out one way or the other… we will make sure of it.

>
> On the company side - We have been very conservative in our growth as a company and really I think over analyze our hiring. We need to find the right people and sometimes we don't know what or who that is. Being so small it's hard. I have wanted to do it all for a long time and more recently realized I do not personally have what it takes to grow MTS into what it could become. We need to team up with the right people so we can grow exponentially together… we have looked at a lot of options… bringing in more executive management, spitting the company up, just hiring more seniors and pushing ahead… and more. We have been extremely lucky to have the ear of different M/A advisers as well as executives at a lot of other firms since going to the EBI events. We have been "putting more meat on our bones" to become enticing for a larger firm to have interest. We are finally barely at that point. We understand the risks with field work as well as diving and the perception some firms have with not wanting to grow in certain areas. We are open to limiting work in some areas as needed with a new firm. But do really enjoy what we are doing. We do not want to rush anything and need to make sure we find a group that's compatible.  Also we can keep running at the state we are in. We are profitable and really enjoy what we are doing… just trying to make the right decision for MTS.   We have averaged 18% growth since taking over in 2009 and did 42% last year. 2020 was flat.
>
> Taking MTS to market is not something we have bandwidth for. While that could get us the most money… we are in this for the long haul and that isn't the most important part of the process. I can't spend the time doing meetings across the country courting 10 different firms while running our current project load and everything in the pipes. We are at a point we need help and love guidance from groups like yourselves even if M/A isn't on the table from either end. Advise on growth strategies is appreciated on all levels.
>
>
> Thanks again and take care,
>
> Seth
>
> Sent from my iPhone

>> On Dec 21, 2021, at 10:05 AM, Lindsay Teunis <Lindsay.Teunis@swca.com> wrote:
>>
>> Hi all – I would like to have a call to formally introduce SWCA to MTS (Marine Taxonomic Services, Environmental Consulting - Marine Taxonomic Services<https://marinetaxonomicservices.com/>), some of my favorite smart people. With SWCA's growing coastal work I think there may be a lot of good opportunities to work together. I would love to have MTS share their current capacity, skills, geography, etc… and better understand your short-term and long-term goals for the company. I am hoping to hear more about your interest in continuing to work along the west coast but also your interest in working in the Gulf and other parts of the Country.
>>
>> Please let me know if this time doesn't work.
>>
>> Have a wonderful holiday!
>>
>> Lindsay
>>
>>
>> Lindsay Teunis is inviting you to a scheduled Zoom meeting.
>>
>> Join Zoom Meeting
>> https://swca.zoom.us/j/94844803678
>>
>> Meeting ID: 948 4480 3678
>> One tap mobile
>> +17209289299,,94844803678# US (Denver) 16699006833,,94844803678# US

```
>> +(San Jose)
>>
>> Dial by your location
>>      +1 720 928 9299 US (Denver)
>>      +1 669 900 6833 US (San Jose)
>>      +1 971 247 1195 US (Portland)
>>      +1 213 338 8477 US (Los Angeles)
>>      +1 253 215 8782 US (Tacoma)
>>      +1 346 248 7799 US (Houston)
>>      +1 602 753 0140 US (Phoenix)
>>      +1 669 219 2599 US (San Jose)
>>      +1 312 626 6799 US (Chicago)
>>      +1 470 250 9358 US (Atlanta)
>>      +1 470 381 2552 US (Atlanta)
>>      +1 646 518 9805 US (New York)
>>      +1 651 372 8299 US (Minnesota)
>>      +1 786 635 1003 US (Miami)
>>      +1 929 205 6099 US (New York)
>>      +1 267 831 0333 US (Philadelphia)
>>      +1 301 715 8592 US (Washington DC)
>>      888 475 4499 US Toll-free
>> Meeting ID: 948 4480 3678
>> Find your local number: https://swca.zoom.us/u/abgUdowoC8
>>
>>
>> <meeting.ics>
```

# **<u>EXHIBIT 3</u>**

| | |
|---|---|
| **From:** | Kelley, Jon David |
| **To:** | Joshua Koltun; Karis, Hariklia |
| **Cc:** | Nomellini, Mark J.; Meier, Peter C.; *navidhillon@paulhastings.com |
| **Subject:** | RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company |
| **Date:** | Wednesday, December 20, 2023 8:54:54 PM |
| **Attachments:** | image001.png |

Joshua,

We write to memorialize the issues discussed during our meet and confer Monday afternoon, and also to repeat our request for information that we sought during that call but that you were unable to provide.

- **Collection of responsive materials:**
  - We asked you what steps your clients took to collect documents responsive to Pacific Bell's subpoena. You represented that you discussed Pacific Bell's document requests with your clients, described what they should look for, and that your clients were responsible for identifying and pulling documents they deemed in their judgment to be responsive based on your discussions.
  - Accordingly, you acknowledged that you relied on their judgment with regard to identifying documents both for purposes of responsiveness and privilege, and that you did not conduct the responsiveness or privilege review yourself.
  - You confirmed that you did not collect your client's custodial files, nor did you run any searches, yourself, through your client's files.
  - You also mentioned that your clients used certain "search terms" to conduct these searches, but when asked what terms your clients used, you responded that you did not know.  <u>Please provide the search terms</u>.
  - You confirmed that all documents reflecting any communications between your clients and Plaintiff in this case had been given to you.  We asked about your basis for this statement, and you confirmed that this is what your clients had represented to you, that you were relying on their representation, and that you had not reviewed the documents that your clients determined did not reflect communications between them and Plaintiff.
  - We asked whether documents had been collected from any BtB or MTS employee, aside from Jones and Fortner, and you responded that an individual named Robert Mooney may have responsive documents.  <u>Please confirm whether Mr. Mooney has documents responsive to the subpoena.</u>
  - You confirmed that you had taken no steps to confirm whether the videographer involved with the Lake Tahoe cables was in possession of responsive documents, but you were not aware of any others.  <u>Please confirm whether the videographer has documents responsive to the subpoena.</u>

- **Status of information from Jones' and Fortner's phones:**
  - In your e-mail of December 10th, after we inquired why there were no text messages in your client's document production, you wrote that your clients' cell phones "no longer exist" and that your clients were trying to determine "whether any old text messages might still exist."  <u>Please confirm whether Jones' text messages pre-dating the "loss" of his phone exists.</u>
  - We explained to you both via e-mail and during our call today the reasons this is such a significant problem, especially given the importance of your clients' communications during this period.
  - During our call yesterday, you explained that the representations you made on December 10 were incorrect.  You represented that Jones "got rid of his old phone" in or around November of 2022. You further represented that Fortner's phone "got wet" and she was forced to get a new phone, but her phone had retained all old text messages as far as you were aware.
  - You made the following representations in response to our questions concerning the status of Jones' and Fortner's phones:
    - **Jones**:
      - You stated that Jones gave his phone to MTS in or around November of 2022, and as a result he is no longer in possession of the phone, nor does he have access to any of the information that was previously on it.  <u>Please confirm the name of the person at MTS who Jones gave his phones to, what that MTS person did with it, and when.</u>
      - You stated that you did not know whether Jones has photos that were on his phones before November 2022.  <u>Please confirm.</u>
      - You stated that, to your knowledge, this was not his personal phone, but it was owned by MTS.  <u>Please confirm.</u>
      - You stated that MTS no longer has access to the phone, either, but you did not know why, or what happened to it.  <u>Please confirm what happened to the phone.</u>
      - You speculated that MTS may have turned the phone into the phone company "for credit," though you again stated that you were simply not sure what happened to it. <u>Please confirm.</u>
      - You stated that you did not know whether Jones' iPhone information was backed up to the cloud.  <u>Please</u>

<u>confirm.</u>
- You stated that Jones used the same phone number before and after the event.   <u>Please confirm.</u>
- You stated that both Jones and Fortner used AT&T as their carrier.
  - **Fortner**:
    - You represented that Ms. Fortner's cell phone "got wet" during a dive, and that she was forced to get a new phone. We asked you when this occurred, and you said you did not know.  <u>Please confirm when and how Ms. Fortner's phone "got wet."</u>
    - You further stated that this new phone still has all of her prior text messages dating back to 2015 or 2016.
    - We asked you to confirm whether Ms. Fortner had all of the photos it had before it got wet.  You said you did not know.  <u>Please confirm.</u>
    - You stated that Fortner used the phone number before and after the phone "got wet."  Please confirm.
    - When we asked you why none of these text messages had been produced, you responded that "none are responsive" as far as you are aware.
    - You again confirmed that your clients did not turn over or provide any text messages to you that would allow you to search for responsive information.
    - You confirmed that you have not seen any of Fortner's text messages, nor have you reviewed any of Fortner's text messages to determine whether any are privileged.
    - You represented that, to ensure collection and production of responsive messages, you had simply "relied on my client who told me she doesn't have anything."

- **<u>Status of production:</u>**
  - We asked you whether your clients had completed their productions. You responded that your clients had completed production of all documents to which they did not object, including (1) all documents and correspondence with plaintiffs, and (2) all documents in your clients' possession that relate to the Lake Tahoe litigation.
  - You also mentioned that a small additional production of a "handful" of documents was forthcoming, based on information you received just before our call from your clients. You did not (or could not) identify the size of this production, and you did not offer any reason these documents had not been previously produced.
  - You identified the source of this forthcoming production as being an employee of MTS named Robert Mooney.

- **<u>Format of production:</u>**
  - You represented that you produced your clients' documents in PDF format because you believed this was the only way to bates-label emails.
  - We informed you that emails and other documents are routinely produced in litigation with bates-labels and metadata.
  - You explained that you were unsure how to make such a production given your "limited resources" as a solo practitioner, and we agreed to provide you with tips and instructions concerning how such a production could be made.
  - At the end of this e-mail, we have provided instructions and tips concerning how emails and other documents can be produced as they are stored in the ordinary course without losing metadata.
  - You also represented that it might "take time" for you to produce documents with metadata, and suggested that narrowing the scope of the documents would speed up the process.
  - We explained that production as these documents are kept in the ordinary course was required under the rules, and Pacific Bell would not prejudice itself by agreeing to a delayed production, or to narrowing the scope of documents it is willing to receive with metadata.
  - We again explained that Pacific Bell will pay for an independent third-party eDiscovery vendor to handle all data collection and production for your clients.

- **<u>Privilege assertion:</u>**
  - We asked you to describe the nature of the privilege you claim that forms the basis of your client's refusal to produce a majority of the responsive documents requested in the subpoena.
  - You again claimed that your clients entered into an oral agreement with the Wall Street Journal to act as reporters, and that as a result, all documents and communications relating to that investigation were privileged.
  - You admitted that the reporters' privilege can be waived, but again insisted that EDF's production of the very documents you claim are privileged somehow does not wave privilege as to your clients.
  - We asked you to provide the basic details of this alleged agreement between your clients and the Journal, and you were unable to provide any of the information requested, including:
    - When the agreement was entered between your clients and the Wall Street Journal;
    - Who at the Wall Street Journal entered into the agreement with your clients; or
    - The scope of the agreement between your clients and the Wall Street Journal, and what was covered.

- **<u>Privilege log:</u>**
  - You confirmed that your clients refuse to produce a privilege log.

**Methods of Production that Comply with the Federal Rules and Pacific Bell's subpoena:**

Finally, as discussed, it is a standard (and required) practice in litigation to bates label and produce emails and other documents without losing or otherwise altering metadata.

The following are key steps you can and should take to comply with your production obligations.  We again reiterate our willingness to pay for a vendor to simply conduct the collection and handle bates-labeling and production for you.

- The process for labeling and producing varies depending on the technology being employed to collect and review documents.
- As an example, discovery software called Relativity is the most widely used, and it is used by a variety of e-discovery vendors and law firms that can collect data from most enterprise platforms and makes it possible to review the data and create productions with both automated and custom workflows while allowing bates stamping and redaction without altering or otherwise removing metadata.
- If you do not have access to this or similar software, an e-discovery vendor can assist without requiring familiarity with the technological requirements to produce documents in a manner that meets the requirements of the FRCP.
- In the absence of such a tool, you could simply produce documents in their native form as we requested in our earlier correspondence, and we would be willing to bates label the documents for you.
- If the documents are located in Outlook, you can drag the messages out of Outlook into a folder where they will be saved as MSG files, which can be exported via FTP to allow preservation of the documents' metadata.

Please provide answers to the identified questions prior to our conference with the Court on December 21, and let us know whether your clients agree to produce its documents in a form that complies with the federal rules.

Thanks,

Jon

Jon David Kelley

-----------------------------------------------------
**KIRKLAND & ELLIS LLP**
4550 Travis Street, Dallas, TX 75205
**T** +1 214 972 1755  **M** +1 480 225 9934
**F** +1 214 972 1771
-----------------------------------------------------
jon.kelley@kirkland.com

---

**From:** Joshua Koltun <joshua@koltunattorney.com>
**Sent:** Friday, December 15, 2023 2:38 PM
**To:** Karis, Hariklia <hkaris@kirkland.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>; Meier, Peter C. <petermeier@paulhastings.com>; *navidhillon@paulhastings.com <navidhillon@paulhastings.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

---

**This message is from an EXTERNAL SENDER**
Be cautious, particularly with links and attachments.

Lets talk at 10 am Pacific Monday

Joshua Koltun ATTORNEY

One Sansome Street
Suite 3500, No. 500
San Francisco, CA 94104

415.680.3410
866.462.5959 fax

joshua@koltunattorney.com

---

**From:** Karis, Hariklia <hkaris@kirkland.com>
**Sent:** Friday, December 15, 2023 4:47 AM
**To:** Joshua Koltun <joshua@koltunattorney.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>; Meier, Peter C. <petermeier@paulhastings.com>; *navidhillon@paulhastings.com <navidhillon@paulhastings.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

Joshua,

Thank you for your email seeking to respond to the issues I raised with your clients' document production. Unfortunately, the description of the reason you chose to convert the produced files into a single PDF does not resolve the issue and, on its face, does not comply with the requirement contained in the Federal Rules and Pacific Bell's subpoena that BtB produce responsive documents as they are stored in the ordinary course.

The admission that you altered the format of every document produced—and in a way that *removed* all metadata and other necessary information from those documents—only confirms that you have not complied with these requirements.  As you are undoubtedly aware, counsel for a party cannot unilaterally alter the format of documents prior to production, which is precisely why courts have found that producing emails and other electronics documents as PDFs (let alone as a single PDF, thousands of pages long) is not permitted.  Respectfully, we do not need the "roadmap of the file structure and contents of this production" you say you are working to create.  Instead, you need only simply produce the files in their native format, which will enable us to run searches using metadata and other information already included in the native versions of the files themselves.  For these reasons, we again request that BtB's production be immediately provided in the native format in which these documents are ordinarily maintained with their associated metadata.

Your email also raises new and equally significant concerns about data preservation and potential spoliation issues.

First, please explain what you mean by "the cellphones from the relevant time period . . . no longer exist."  What happened to the phones to cause them to "no longer exist"? Were the phones destroyed, and if so, by whom and when? Why were they destroyed, if that's what happened? Did anyone give your clients permission to discard or destroy the phones and if so, who gave such permission?

Second, to what time period are you referring?  Are you suggesting no phone records exist between 2020 and early 2022?  As you can imagine, this is a critical timeframe in the lifespan of a case that your clients are in large part responsible for instigating, and any records in your clients' possession from that period are highly relevant and important to obtain.

Third, in whose name, specifically, were the phones at issue?  Given your representation of multiple clients in this case, it is unclear to whom you are referring.

Fourth, were the phone numbers for these individuals abandoned, or was the phone changed and the number transferred to a different phone?  The attached documents produced by the Environmental Defense Fund reflect text messages sent from the cell phones of Mr. Jones (+1-858-232-1958) and Ms. Fortner (+1-858-349-4503) to Tom Neltner in July of this year.  We are also aware that Mr. Jones and Ms. Fortner had the same phone numbers at least as early as January 2021.  Given that these numbers were being used by Jones and Fortner as recently as July, are you alleging that these cell phones are now among those that "no longer exist"?

Given that potentially critical evidence located on the phones that you contend no longer exists, please confirm that your clients will consent to Pacific Bell serving a subpoena for the relevant phone company (or companies) seeking relevant evidence and related information.

Fifth, you also haven't responded to the other questions posed in my email, namely:
1. Who collected these documents and who determined what documents were responsive?
2. What is the universe of sources and custodians searched, including specific email addresses and phone numbers?
3. Were hard-copy documents collected and searched?

Finally, Pacific Bell's subpoena included a request that BtB provide a privilege log for any documents it claims are privileged.  You have made clear that BtB has withheld a significant volume of documents based on the purported "reporters privilege."  When will BtB provide its privilege log?

We are available to confer this weekend or Monday between 10 a.m. to 1 p.m. Please confirm if the proposed times work.

Carrie

**Carrie Karis, P.C.**

-------------------------------------------------
**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2330  **M** +1 847 525 6908
**F** +1 312 862 2200

hkaris@kirkland.com

---

**From:** Joshua Koltun <joshua@koltunattorney.com>
**Sent:** Sunday, December 10, 2023 1:29 PM
**To:** Karis, Hariklia <hkaris@kirkland.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>; *navidhillon@paulhastings.com <navidhillon@paulhastings.com>; Meier, Peter C. <petermeier@paulhastings.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

Dear Carrie:

I converted those documents that could be converted into PDFs, so that we could make a bates stamped production of documents.  This created an easily searchable document and will enable us to specify documents in any discussion we may have.  We are working on creating a roadmap of the file structure and contents of this production that will assist defense counsel in reviewing documents and in any discussion we may have concerning this production.  My understanding is that the cellphones from the relevant time period (i.e. excluding the time during which my clients were working with the Journal and EDF, as to which we claim privilege) no longer exist.  My clients are trying to determine whether there is any place were such old text messages might still exist.

I can generally be available this week from Wednesday to Friday, although I'd appreciate if you would offer me more than one time because something may come up.

Best regards,


Joshua Koltun ATTORNEY

One Sansome Street
Suite 3500, No. 500
San Francisco, CA 94104

415.680.3410
866.462.5959 fax
joshua@koltunattorney.com

---

**From:** Karis, Hariklia <hkaris@kirkland.com>
**Sent:** Wednesday, December 6, 2023 8:33 PM
**To:** Joshua Koltun <joshua@koltunattorney.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>; *navidhillon@paulhastings.com <navidhillon@paulhastings.com>; Meier, Peter C. <petermeier@paulhastings.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

Joshua,

First, I don't think it is worth debating what relief you requested from the Court and what orders remain in effect. The Court will ultimately decide.

Second, the Court's November 9 Order is clear: BtB was required to "produce all documents called for by the Subpoena" by no later than November 30.  That did not happen even though the Order is still in effect, and we made clear during our call that Pacific Bell was not agreeing to an extension. As a result, BtB is in violation of the Order.  The documents and other responsive material you refer to as "privileged" and "irrelevant," and that you refuse to produce, are the same documents the

Court Ordered BtB to produce by November 30.

Third, even the limited production made by BtB and MTS violates the Federal Rules. Not only was this initial production untimely -- made five days *after* the deadline imposed by the court -- but the produced materials were inexplicably produced as a single PDF, disregarding the format specified in the subpoena as well as the standard required by the Federal Rules of Civil Procedure. The subpoena specified that responsive documents were to be produced "as they are kept in the usual course of business." Rule 45 provides that "[i]f a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. Pro 45 (e)(1)(B).

A single PDF combining multiple unrelated pages is not the way documents are maintained in the ordinary course of business and creates significant problems that the instructions in the subpoena and the Federal Rules were meant to avoid. As an example, the production of multiple unrelated pages together in one PDF removes any ability to determine relationship, order, and sequencing of any of the documents contained within the PDF. Loading a large PDF into a database and then searching for information is also cumbersome. Further, documents produced in one large PDF have no useable metadata pertaining to the underlying documents contained within the PDF. Courts have repeatedly found that producing emails and other electronics documents as PDFs (let alone as a single PDF, thousands of pages long) is not permitted. *See, e.g.*, *Abbott Labs. v. Adelphia Supply USA,* 2019 WL 3281324 (E.D.N.Y. 2019) (recommending sanctions and a default judgment against a party in part because they produced emails and invoices in a single, unusable, 1,941 page PDF file); *Johnson v. Italian Shoemakers, Inc.*, 2018 WL 5266853, at *2 (W.D.N.C. Oct. 23, 2018) (granting motion for sanctions after plaintiff repeatedly produced emails in PDF format, which "is not how emails are kept in the ordinary course of business"). BtB's production should be immediately provided in the native format in which these documents are ordinarily maintained with their associated metadata.

Moreover, we have significant concerns about the selection and production process of even the narrow subset of documents BtB unilaterally selected for its untimely production. The following is a non-exhaustive list of basic questions:

1. Who collected these documents and who determined what documents were responsive?
2. What is the universe of sources searched, including specific email addresses and phone numbers?
3. Why are no text messages included?
4. Where hard-copy documents collected and searched?
5. Who compiled the collected documents into a PDF and why?

Please provide a time you are available to meet and confer concerning these issues.

Regards,

Carrie

**Hariklia ("Carrie") Karis, P.C.**
---------------------------------------------------
**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2330  **M** +1 847 525 6908
**F** +1 312 862 2200

hkaris@kirkland.com

---

**From:** Joshua Koltun <joshua@koltunattorney.com>
**Sent:** Tuesday, December 5, 2023 5:53 PM
**To:** Karis, Hariklia <hkaris@kirkland.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>; *navidhillon@paulhastings.com <navidhillon@paulhastings.com>; Meier, Peter C. <petermeier@paulhastings.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

Dear Carrie:

I find your email both mystifying and offensive. I don't understand how you can contend that "your papers with the Court do not seek relief for the production obligations that the Court required."

In any event, my clients have been making their best efforts to collect and produce documents in an orderly fashion, subject to their efforts to obtain an adjudication of their objections. Defendant's cursory reference in its opposition to the fact "a few documents" were produced (DE 88 at 4) is highly misleading. Thousands of pages of documents were produced, as well

as extensive geolocation information, and some additional such data will be produced tomorrow.  Defendant will be fully able to conduct the independent investigation of lead-clad cables in Lake Tahoe that it claims it wishes to conduct.

The remainder of what Defendant is now seeking is not only privileged but irrelevant to the case before the Court.  Please let me know whether you wish to proceed with your efforts to have a third party vendor gain access to that material.  My clients will oppose.

Joshua Koltun ATTORNEY

One Sansome Street
Suite 3500, No. 500
San Francisco, CA 94104

415.680.3410
866.462.5959 fax
joshua@koltunattorney.com

---

**From:** Karis, Hariklia <hkaris@kirkland.com>
**Sent:** Saturday, December 2, 2023 4:56 AM
**To:** Joshua Koltun <joshua@koltunattorney.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>; *navidhillon@paulhastings.com <navidhillon@paulhastings.com>; Meier, Peter C. <petermeier@paulhastings.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

Joshua,

Following up on our discussion earlier this week, as you are aware, the Court's November 9 Order required Below the Blue ("BtB") to produce "all documents called for by the Subpoena by no later than November 30, 2023."  BtB has not produced any documents by this Court-imposed deadline.  No stay of the Order has been entered and during our call, we were very clear that we did not and would not agree to an extension. Why Mr. Jones had still not provided the documents to you when we spoke on Tuesday remains of concern and a topic for discussion with the Court at the appropriate time. In short, BtB is currently in violation of the Order. Moreover, your papers with the Court do not seek relief for the production obligations that the Court required – in addition to misstating some key facts that we will address in due course.

Please be advised that, as a result of the initial delay and now violation of the Court's order, we intend to ask the Court to permit collection of BtB's files by an independent third-party e-discovery vendor to facilitate compliance with the Order. Pacific Bell is willing to pay for this collection service.

We suggest four independent companies that specialize in document collection, below.  As soon as possible, but no later than COB on December 5, please let us know which of these companies BtB agrees on to conduct the collection for purposes of compliance with the Order.

1. Alvarez & Marsal
2. Deloitte
3. AlixPartners
4. Ankura

Absent agreement by that date, we will request that Alix Partners conduct the collection.  We intend to ask the Court to order this collection as soon as possible. Please advise if you wish to discuss this matter any further. We too will make ourselves available over the weekend, if that is necessary, to advance this critical discovery issue.

Regards,

Carrie

Hariklia ("Carrie") Karis, P.C.
-------------------------------------------------
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
T +1 312 862 2330  M +1 847 525 6908
F +1 312 862 2200

hkaris@kirkland.com

---

**From:** Joshua Koltun <joshua@koltunattorney.com>
**Sent:** Friday, December 1, 2023 7:11 PM
**To:** *navidhillon@paulhastings.com <navidhillon@paulhastings.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Karis, Hariklia <hkaris@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

Counsel, if you wish to talk over the weekend let me know and I will make myself available.  Have a good weekend

Joshua Koltun ATTORNEY

One Sansome Street
Suite 3500, No. 500
San Francisco, CA 94104

415.680.3410
866.462.5959 fax
joshua@koltunattorney.com

---

**From:** Dhillon, Navi <navidhillon@paulhastings.com>
**Sent:** Friday, December 1, 2023 3:51 PM
**To:** Nicholas Cannarozzi <NCannarozzi@caed.uscourts.gov>; Joshua Koltun <joshua@koltunattorney.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Karis, Hariklia <hkaris@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

Hi Nic

On 1, defense counsel will confer with Mr. Koltun on scheduling on the pre-discovery conference.

On 2, defense counsel will be filing an opposition to the extension request.

Thank you and have a nice weekend.

Best regards

 **Navi Dhillon | Partner**
O: 415.856.7080 | M: 415.203.8805

---

**From:** Nicholas Cannarozzi <NCannarozzi@caed.uscourts.gov>
**Sent:** Friday, December 1, 2023 3:44 PM
**To:** Joshua Koltun <joshua@koltunattorney.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Karis, Hariklia <hkaris@kirkland.com>; Dhillon, Navi <navidhillon@paulhastings.com>; Nomellini, Mark J. <mnomellini@kirkland.com>
**Subject:** [EXT] RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

Good afternoon,

Are the parties requesting the matter be set for another pre-discovery conference?  If so, we would have 12/14, 12/21 and 12/28 as our next three available.  All at 10:00 a.m. via Zoom.  As to your ex parte motion for an extension of time, will defense counsel be filing a response to that request?  Thanks.

## Nic Cannarozzi

Courtroom Deputy to the
Honorable Jeremy D. Peterson and
the Honorable Edmund F. Brennan
United States District Court
501 I Street, Suite 4-200
Sacramento, CA 95814
916.930.4172

---

**From:** Joshua Koltun <joshua@koltunattorney.com>
**Sent:** Friday, December 1, 2023 12:08 PM
**To:** Nicholas Cannarozzi <NCannarozzi@caed.uscourts.gov>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Karis, Hariklia <hkaris@kirkland.com>; *navidhillon@paulhastings.com <navidhillon@paulhastings.com>; Nomellini, Mark J. <mnomellini@kirkland.com>
**Subject:** Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

<mark>CAUTION - EXTERNAL:</mark>

Dear Mr. Cannarozzi:

I am newly-engaged counsel, (as of 11/22) for Third Party Witnesses Below the Blue, who has previously been unrepresented in this action.  On 11/24 I emailed counsel for defendants in this matter asking to meet and confer.  (Note that this was during the Thanksgiving holiday).  On 11/28 I received a response and we scheduled a meet and confer Zoom call the morning of 11/29 (8 am), on a variety of issues and deadlines. Later that day I filed with the court an Administrative Motion for Extensions of Time; that filing contains more details about the meet and confer session.  Dkt 87 at 2-3.

One upshot of the meet and confer is that Beyond the Blue wishes to file a motion to reconsider (in part) this Court's Order granting motion to compel (Dkt 80).  That motion to reconsider will be due on December 7 (unless the Court grants the requested extension) The Zoom call ended after an hour, and I understood that we would be exchanging potential times to propose for the informal conference with the Court pursuant to its procedures for discovery motions.  Later on the morning of 11/29 I sent defense counsel proposed times for such a conference but I have not heard back from them.   I am copying them on this email.

Speaking for myself, I can make myself available anytime next week, although I note that, in the absence of an extension of time my date to file the motion is December 7.

Thank you for your assistance with scheduling such a conference.

## Joshua Koltun ATTORNEY

One Sansome Street
Suite 3500, No. 500
San Francisco, CA 94104

415.680.3410
866.462.5959 fax
joshua@koltunattorney.com

<mark>CAUTION - EXTERNAL EMAIL:</mark> This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

*************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT 4

**STIPULATION AND AGREEMENT BETWEEN AND AMONG
PACIFIC BELL TELEPHONE COMPANY, BELOW THE BLUE, MARINE TAXONOMIC
SERVICES, INC., SETH JONES, AND MONIQUE FORTNER REGARDING INSPECTION,
REVIEW AND PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

On this ___ day of January 2024, Pacific Bell Telephone Company ("Pacific Bell"), Below the Blue, Marine Taxonomic Services, Inc., Seth Jones, and Monique Fortner (collectively, "Below the Blue" and together with Pacific Bell, the "Parties"), by and through their respective authorized counsel, hereby stipulate and agree to the following terms and conditions to govern and facilitate the inspection, review, and production of Below the Blue's electronically stored information (the "Protocol"):

1.  No later than 3 days after the Court's Order, the Parties shall jointly select an Independent Expert.  The Independent Expert shall sign a Nondisclosure Agreement in the form attached to this Protocol as Exhibit A, or a substantially similar form.

2.  No later than 7 days after the Court's Order, Below the Blue shall make available to the Independent Expert for inspection and forensic imaging all computers and mobile devices used by Seth Jones or Monique Fortner for, in connection with, or related to any work for Below the Blue or Marine Taxonomic Services at any time between January 1, 2020 to the present, or belonging to Seth Jones and Monique Fortner at any time between January 1, 2020 and the present (collectively, the "Below the Blue Devices"). All information stored on or accessible through the Below the Blue Devices shall be known as the Below the Blue ESI.  Below the Blue shall cooperate with the Independent Expert to facilitate access to the Below the Blue ESI.

3.  The Independent Expert shall create forensic mirror images of the computers and mobile devices referenced in paragraph 2.  Once the mirror images are created, the Independent Expert shall return the original computers and mobile phones to the individuals or entities who provided them.

4.  On August 4, 2023, Pacific Bell issued a subpoena to Below the Blue, attached as Exhibit B hereto, requesting certain information.  The Independent Expert shall examine the mirror images of the computers and mobile phones referenced in paragraph 3 and shall determine what documents are responsive to the Subpoena ("Below the Blue Responsive ESI").  Below the Blue ESI determined not to be responsive to the subpoena shall be referred to as "Below the Blue Non-Responsive ESI."  The Independent Expert may use search terms agreed to by the Parties to identify Below the Blue Responsive ESI.  Absent agreement between the Parties on search terms, the Independent Expert may independently select any methods they deem appropriate to identify Below the Blue Responsive ESI.  For categories of information not amenable to search terms (including but not limited to photos), the Independent Expert may independently select any methods it deems appropriate to identify Below the Blue Responsive ESI.  Any Party may suggest additional searches to the Independent Expert, provided that the requested information falls within the scope of Exhibit B.

5.  The Independent Expert shall identify and produce to the Parties Below the Blue Responsive ESI dated between January 1, 2020 and August 26, 2023 ("Below the Blue Responsive Non-Privileged ESI").  The Below the Blue Responsive Non-Privileged ESI shall be immediately produced by the Independent Expert to the Parties, with the metadata fields and other information required in the Specifications for the Production of Documents, attached as Exhibit C.

6.  Below the Blue has waived any claim to the Reporter's Privilege and thus may not assert that any Below the Blue Responsive ESI is covered by such privilege.  The Independent Expert shall, however, identify and provide to counsel for Below the Blue any Below the Blue Responsive ESI dated between August 26, 2023 and the present for purposes of reviewing for attorney-client privilege ("Below the Blue Responsive Allegedly Privileged ESI").  Below the Blue shall not be required to provide a privilege log for any communications solely with attorneys that BtB retained or attempted to retain for representation in this matter, including communications solely with Mr. Joshua Koltun or Mr. Alexander Papachristou.

7.  Only employees of the Independent Expert who sign the Non-Disclosure Agreement attached as Exhibit A may view Below the Blue Non-Responsive ESI.

8.  Only employees of the Independent Expert who sign the Non-Disclosure Agreement attached as Exhibit A may view Below the Blue Responsive Allegedly Privileged ESI, unless and until those documents are ordered by a Court to be produced.

9.  No such employee of the Independent Expert shall view any of the Below the Blue ESI, however, until and unless that employee has been provided a copy of this Protocol and executes in writing a Non-Disclosure Agreement in the form attached hereto as Exhibit A or a substantially similar form, evidencing such person's understanding of and agreement to be bound by the terms and conditions of this Protocol and the Non-Disclosure Agreement. Executed copies of this Protocol and the Non-Disclosure Agreements shall be maintained by the Independent Expert and counsel for the Parties.

10. The Parties agree that inadvertent production of documents or information subject to any applicable privilege, including but not limited to the journalistic privilege, the attorney-client privilege or the work product doctrine, despite reasonable efforts to screen such documents and information prior to production, does not waive such applicable privilege or protection, provided a request for return of such documents or information is made promptly upon learning of such inadvertent production.  Upon being notified by either the producing party or the party that holds the privilege of such inadvertent disclosure, counsel for the receiving party shall promptly request in writing that all other parties return, destroy, or sequester the documents and all summaries or related documents that contain any of the information in the inadvertently produced documents.  The receiving party shall return, sequester, or destroy all copies of such documents within five (5) business days of such notice and certify such return, sequestration, or destruction in writing to the producing party.  If the claimed privilege or doctrinal protection is challenged by the receiving party, a meet and confer shall occur between the parties before such dispute is brought before the Court.  At a minimum, the contested documents will be treated as though privileged (i.e., the contested documents shall be sequestered and shall not be read or used in this proceeding or otherwise except as part of a sealed, in camera submission

to the Court to resolve any good faith disputes regarding whether the materials are in fact privileged) by all parties until a determination is made by the Court. Such in camera filing may be initiated either by the party asserting the privilege or at the request of the party challenging the privilege, but in either instance, the contested documents shall be provided to the Court for the in-camera review by the party asserting the privilege.

11. The Independent Expert shall serve as an officer of the Court. Thus, to the extent the Independent Expert has direct or indirect access to information protected by the journalistic privilege, the attorney-client privilege or the attorney work product doctrine, such disclosure will not result in any waiver of the privilege or protection.

12. Except as provided in paragraph 13, Pacific Bell shall pay 100% of all fees and costs reasonably necessary for the Independent Expert to perform the services described herein.

13. Any fees and costs above $100,000, total, must be approved in advance by Pacific Bell.

14. For purposes of enforcement of this Protocol, the parties submit to the jurisdiction of Judge Jeremy D. Peterson of the United States District Court for the Eastern District of California, in *California Sportfishing Protection Alliance v. Pacific Bell Telephone Company*, Case No. 2:21-cv-00073.

15. This Protocol shall continue in effect until otherwise agreed to by the parties in writing or ordered by the Court. This Protocol may be modified in part or entirely by written agreement of the Parties hereto or upon application to and entry of an order by the Court.

16. Each of the undersigned represents that he or she has been duly authorized to execute this Protocol on behalf of his or her respective clients.

# **<u>EXHIBIT A</u>**

**EXHIBIT A**

CALIFORNIA SPORTFISHING             Case No. 2:21-cv-00073-JDP
PROTECTION ALLIANCE,
                                    Magistrate Judge Jeremy D. Peterson
                  Plaintiff,

         v.

PACIFIC BELL TELEPHONE COMPANY,

                  Defendant.

I, _____, declare that:

    1.     My address is _____, and the name and address of my present

employer is _____.

    2.     My title is _____.

    3.     I have received a copy of the Stipulation and Agreement Between and Among

Pacific Bell Telephone Company, Below the Blue, Marine Taxonomic Services, Inc., Seth

Jones, and Monique Fortner Regarding Inspection, Review and Production of Electronically

Stored Information (the "Protocol") in this action.

    4.     I have carefully read and understand the provisions of the Protocol, agree to be

bound by them, and specifically agree I will not use or disclose to anyone any of the contents

of any Below the Blue ESI in violation thereof.

    5.     I will not use or disclose to anyone any of the contents of Below the Blue Non-

Responsive ESI.

    6.     I will not use or disclose to anyone any of the contents of Below the Blue

Responsive Allegedly Privileged ESI, unless and until those documents are ordered by a

Court to be produced or are not included on a privilege log within 7 days of being identified

to counsel for Below the Blue, as described in the Protocol.

7.      I consent to the exercise of personal jurisdiction by this Court in connection with this Agreement and my obligations thereunder.

8.      I declare under penalty of perjury that the foregoing is true and correct.

Executed this ____ day of _____ 20____ at _____ in the State of _____

_____.


By:_____
(SIGNATURE)

# **<u>EXHIBIT B</u>**

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| California Sportfishing Protection Alliance | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   2:21-cv-00073 |
| Pacific Bell Telephone Company | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Below the Blue, 1155 Golden Bear Trail, South Lake Tahoe, CA 96150

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: The materials described in Schedule A

| Place: Veritext (Job #6034526)<br>    1 Capital Mall Suite 240<br>    Sacramento, CA 95814 | Date and Time:<br><br>    14 days from service |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 8/4/23

       *CLERK OF COURT*

                           OR

     *Signature of Clerk or Deputy Clerk*                   *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Defendant Pacific Bell Telephone Company _____, who issues or requests this subpoena, are:

Navi Dhillon, Paul Hastings LLP, 101 California Street, 48th Fl, San Francisco, CA 94111; Ph: 415-856-7000

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. ___2:21-cv-00073___

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____  on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## PACIFIC BELL TELEPHONE COMPANY'S
## REQUESTS TO BELOW THE BLUE TO PRODUCE DOCUMENTS

In accordance with Federal Rule of Civil Procedure 45, You are requested to produce the following documents and tangible items for inspection.

## DOCUMENTS TO PRODUCE

1.     All Documents related to Your experience or qualifications to perform sampling, testing, or analysis of lead-clad cables in water, soil, or aerial environments.

2.     All Documents and Communications, including pictures and videos, concerning any sections of lead-clad cables removed from Lake Tahoe by You or other persons acting on Your behalf, including but not limited to Seth Jones and Monique Rydel Fortner.

3.     All Documents and Communications concerning or discussing sampling, testing, data, analysis, research, permits, maps, or Studies relating to lead-clad cables at Lake Tahoe or elsewhere.

4.     All Documents and Communications concerning or discussing permits requested or obtained by You or other persons acting on Your behalf, including but not limited to Seth Jones and Monique Rydel Fortner, to test, cut or remove any sections of lead-clad cables in or from Lake Tahoe.

5.     All Documents and Communications, including but not limited to any pictures, videos, or test results, relating to any "kiddie pool" used by You or other persons acting on Your behalf, including but not limited to Seth Jones and Monique Rydel Fortner, to test lead-clad cables removed from Lake Tahoe or elsewhere.

6.     All Documents related to and Communications between You and any party described or otherwise referenced in the WSJ Articles, or Plaintiff or Plaintiff's counsel in the Lawsuit, concerning or discussing the WSJ Articles, the WSJ Investigation, any testing or analysis of lead-clad cables (including any draft reports) or the Lawsuit, including but not limited to the Environmental Defense Fund, Marine Taxonomic Services, Ltd., Wall Street Journal, Pace Analytical Services, Environmental Systems Research Institute, MCH Strategic Data, Quest Diagnostics, Pure Earth; Environmental Council of the State, Altec Testing & Engineering, Inc., RTI International, ALTA Environmental Corporation, Seth Jones, Monique Fortner, Jack Caravanos, Tom Neltner, Ben Grumbels, Bruce Nelson, Bryan Stolte, Jennifer Redmon, Braden Allenby, Gordon Binkhorst, James Winn, Dr. Phillip Landrigan, or any "environmental researchers."

7.     All invoices for worked performed relating to the Lawsuit, the WSJ Articles, the WSJ Investigation, or lead-clad cables, including but not limited to work performed for any individuals or entities listed in Request No. 6.

8.  All Documents and Communications concerning or discussing the Lawsuit, the WSJ Investigation, the WSJ Articles or lead-clad cables at Lake Tahoe or elsewhere, including research, sampling, testing, data, analysis, drafts, reports, or Studies.

9.  All Documents and Communications concerning the Marine Taxonomic Services and Below the Blue Lead Cable Investigation Report, available at https://belowtheblue.org/edf-report (the "EDF Report").

10. All Documents and Communications concerning the method by which sampling locations were selected at Lake Tahoe or other locations referenced in the WSJ Articles, including Documents and Communications relating to the statement in the EDF Report that "[s]ampling locations were chosen in part by their likelihood to show high lead levels."

11. All Documents and Communications related to any research, sampling, testing, data, analysis, drafts, reports, or Studies You performed or collected for or on behalf of the Wall Street Journal or the Environmental Defense Fund, relating to lead, Lake Tahoe, the WSJ Articles, the WSJ Investigation, or the Lawsuit.

12. All Documents or Communications related to statements about AT&T, Inc., any of its subsidiaries, or any current or former telecommunications company, referenced in the WSJ Articles.

13. All Documents and Communications exchanged between You and any current or former employee of Defendant or AT&T, Inc. related to lead-clad cables.

14. All Documents and Communications concerning or discussing any agreement between You and any party relating to the Lawsuit, the WSJ Articles, the WSJ Investigation, or lead-clad cables, including Plaintiff or any of Plaintiff's counsel in the Lawsuit, and any individuals or entities listed in Request No. 6.

15. All Communications between You and any federal, state, or local governmental or regulatory agency related to or otherwise referencing the following:

    (i)    the Lawsuit;

    (ii)   the WSJ Articles;

    (iii)  the WSJ Investigation; or

    (iv)   lead-clad cables, including but not limited to their location, potential removal, environmental impact, or health effects.

16. All Documents or writings of any nature You have disseminated to any News Outlet regarding lead-clad cables.

17. All Documents prepared by You, for the benefit of You, or provided to You concerning any Study, research or investigation on the possible or actual adverse effects of lead-clad cables.

18.     All Documents and Communications relating to Your participation in or funding of any test or Study related to or otherwise concerning lead-clad cables.

## TANGIBLE ITEMS FOR INSPECTION

1.     All samples or other tangible items on which You or any party acting at Your direction conducted any testing, analysis, evaluation, or investigation in connection with the WSJ Articles, the WSJ Investigation, or lead-clad cables.

2.     Any sections of lead-clad cable removed from Lake Tahoe or any other location by You or anyone acting on Your behalf, including but not limited to Seth Jones and Monique Rydel Fortner.

3.     Any "kiddie pool," or other container, used by You or anyone acting on Your behalf, including but not limited to Seth Jones and Monique Rydel Fortner, to test lead-clad cable.

## DEFINITIONS

1.     "**Communications**" means, without limitation, any oral communication, whether transmitted in meetings, by telephone, tape recordings, voice-mail or otherwise, and all written communications, including communications by e-mail or other electronic- or internet-based communications system.  For the sake of clarity, Communications shall include internal and external communications.

2.     "**Defendant**" means Defendant Pacific Bell Telephone Company.

3.     "**Document**" means all materials within the full scope of Federal Rule of Civil Procedure 34, including: all writings and recordings, including the originals and all non-identical copies (including, without limitation, e-mail and attachments, correspondence, memoranda, notes, diaries, minutes, statistics, letters, minutes, receipts, summaries, pamphlets, books, interoffice and intraoffice communications, photographs, charts, videotape, recordings, motion pictures, plans, drawings, surveys, and electronic, mechanical, magnetic, optical, or electronic records or representations of any kind. For the sake of clarity, Documents shall include internal and external Communications.

4.     "**Lawsuit**" means the case captioned *California Sportfishing Protection Alliance v. Pacific Bell Telephone Co.*, 2:21-cv-00073-JDP, currently pending in the Eastern District of California.

5.     "**News Outlet**" means any persons or entities engaged in the act of reporting news whether orally, in print, televised, via mail or e-mail, or on the internet, including all newspapers, magazines, periodicals, documentaries, television shows, list-servs, forums, blogs, vlogs, tweets, and posts.

6.     "**Study**" or "**Studies**" means any published or unpublished, reported or unreported, final or draft, performed or abandoned, planned, or proposed analysis, assessment, peer reviewed or non-peer reviewed, data collection, experiment, research, survey, test, or trial.

3

7.   "**WSJ Articles**" means the following Wall Street Journal articles, and any forthcoming articles related to the same subject matter: S. Pulliam *et al.*, *America is Wrapped in Miles of Toxic Lead Cables*, THE WALL STREET JOURNAL (July 9, 2023), available at https://www.wsj.com/articles/lead-cables-telecoms-att-toxic-5b34408b; J. West *et al.*, *How the Journal Investigated Hidden Lead Cables Circling the U.S.*, THE WALL STREET JOURNAL (July 9, 2023), available at https://www.wsj.com/articles/lead-cables-investigation-att-methodology-1703dbb0; S. Ramachandran *et al.*, *What AT&T and Verizon Knew About Toxic Lead Cables*, THE WALL STREET JOURNAL (July 12, 2023), available at https://www.wsj.com/articles/att-verizon-lead-cables-telecom-5e329f9; S. Ramachandran *et al.*, *I Was Really Sick, and I Didn't Know From What*, THE WALL STREET JOURNAL (July 14, 2023), available at https://www.wsj.com/articles/lead-cables-exposure-workers-ca6d67f0; J. West *et al.*, *Bayou Teche is an Epicenter of America's Lead Cable Problem*, THE WALL STREET JOURNAL (July 10, 2023), available at https://www.wsj.com/articles/lead-cables-louisiana-telecoms-59f36ffe.

8.   "**WSJ Investigation**" means any investigation, research, sampling, testing, analysis, fact-finding, or diligence that the WSJ conducted, gathered, commissioned, or requested, relating to cables (of any type) or lead, leading up to, in connection with, or following the WSJ Articles.

9.   "**You**" or "**Your**" means Below the Blue and any of its representatives, agents, employees, administrators, boards, vendors and other persons or entities acting on its behalf.

## INSTRUCTIONS

1.   The terms "or" and "and" shall be interpreted either conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

2.   "All," "any," "each," and "every" shall each be construed as both "each" and "every" to bring within the scope of the request all responses that might otherwise be construed to be outside its scope.

3.   "Concerning" shall be construed to bring within the scope of the Request all documents that comprise, evidence, constitute, describe, refer to, were reviewed in conjunction with, or were generated as a result of the subject matter of the Request.

4.   "Including" shall be construed to mean "including but not limited to."

5.   This Subpoena requests Documents and Communications in Your possession, custody, or control.

6.   All definitions set forth above are in addition to the defined words' standard meanings.  If You contend that You do not understand the definition of the term or phrase used in any Request, then You should respond to that portion of the Request that You do understand and explain what it is that You do not understand with regard to the remainder of the Request. If You believe that any Request is overbroad in part, then You should respond to

that portion of the Request that You do not consider overbroad and explain why You believe the remainder is overbroad.

7.      You are required to produce not only the original or an exact copy of the original of all Documents and Communications responsive to any of the Requests listed below, but also all copies of such Documents and Communications which bear any notes or markings not found on the original and all preliminary, intermediate, final, and revised drafts or embodiments of such Documents and Communications.  You are required to produce all versions of such Documents and Communications.

8.      Produce all Documents in complete form, with each page marked with consecutive document control numbers, and with no redactions unless necessary to avoid producing privileged information (in which case the redaction should be reflected on a privilege log).

9.      Produce Documents as they are kept in the usual course of business, or organize and label them to correspond to the categories in the request.

10.     If any document requested herein is withheld or redacted on the basis of any claim of attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity, You shall provide a written statement: (a) describing the nature of the document (e.g., letter, memorandum, minutes, telegram, notes, etc.); (b) specifying the date on which the document was prepared; (c) identifying the Person(s) who prepared or authored the document; (d) identifying the Person(s) to whom the document was sent, copied, or shown; (e) stating the privilege or other doctrine pursuant to which the document is being withheld from production and setting forth the basis for such claim of privilege or immunity from production; and (f) setting forth the subject matter of the document in a manner that, without revealing the information claimed to be privileged or protected, will enable Pacific Bell Telephone Company to assess the merit of that claim.

11.     If You are unable to produce a Document or Communication requested, please state in writing why You cannot produce the Document or Communication, including whether: (a) it is missing or lost; (b) it has been destroyed; (c) it has been transferred voluntarily or involuntarily to others; or (d) it has been disposed of otherwise.  In each instance, explain the circumstances surrounding such disposition and identify the Person(s) directing or authorizing the same and the date(s) thereof.  If Your inability to produce the Document or the property is because it is not in Your possession or the possession of a Person or entity from whom You could reasonably obtain it, state the name, address, and telephone number of any Person You believe may have the original or a copy of any such Document or property.

12.     These requests are continuing in nature.  If, after responding to the Requests, You obtain or become aware of any erroneous information that has been provided or any further responsive information, either directly or indirectly, a supplemental answer is required. You are under a duty to amend a prior response upon learning that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not been made known to Pacific Bell Telephone Company during the discovery process or in writing.

# **<u>EXHIBIT C</u>**

**Exhibit C: Specifications for the Production of Documents**

### 1. Cover Letter and Delivery Media

Each production shall include a cover letter or cover email with information sufficient to: (i) identify all accompanying delivery media; (ii) identify the production on such media by  assigning a Volume ID; and (iii) include the Bates range for the documents produced in each  volume. Delivery media shall comply with the specifications below.

| | a)        Requirement: |
|---|---|
| **Delivery Media:** | USB hard drive, DVD and/ or CD-R (ISO9660 format) or a secure FTP site |
| **Encryption:** | All media should be encrypted |
| **Volume ID:** | CD set number, e.g. VOL1 |
| **Physical Media Label:** | TOP: <production name, volume number><br>MIDDLE: <Bates range><br>BOTTOM: <date> |
| **Number of Copies:** | 1 |

### 2.        Deliverables Include

| Item: | Requirement: |
|---|---|
| **a) Load File (Metadata file)** | Concordance (.dat) |
| **b) Image File** | Opticon (.opt) |
| **c) Images** | • Group IV TIFF, 300 DPI, single-page TIFF images<br>• Color documents should be produced in black & white, with color copies to be provided as the Receiving Party's request so long as reasonable and proportional to the needs of the litigation.<br>• All black/white images must be in 1-bit TIFF images and color documents must be in 24-bit JPEG files<br>• All documents referenced in a production image load file shall have all corresponding images, text, and data<br>• All images in the delivery volume shall be contained in the image load file<br>• The image key shall be named the same as the Bates number of the page<br>• Every image will contain a unique Bates number, and a prefix that identifies the party producing the document<br>• The Bates numbers shall be sequential, and in a consistent font type, size, and spacing.<br>• Image file names cannot contain spaces, (e.g., the correct format would be AB00000001 not AB 00000001).<br>• If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production. |

| Item: | Requirement: |
|---|---|
| **d) Text Files** | • Extracted text of a document must be delivered on a document level<br>• A text file will be provided for every document<br>• For any document without extracted text or OCR, a text placeholder file will be inserted<br>• All text for a single document should be contained within one file with subfolders<br>• OCR shall be performed:<br> o For all redacted images<br> o For all non-searchable electronic documents (including scanned hard copy documents) for which the text cannot be extracted.<br> o Branding and endorsement shall be performed **after** OCR in the format agreed to by the parties.<br>• All text files should be named after the beginning Bates number of the document (ProdBatesBeg.txt) |
| **e) Native Files** | • Native file format for:<br> o Spreadsheets (e.g., MS Excel, Lotus 123, etc.)<br> o Presentations (e.g., MS PowerPoint, etc.)<br> o Database (e.g., MS Access, QuickBooks, etc.)<br> o Drawing (e.g., Visio, CAD, etc.)<br> o Audio and Video (e.g., QuickTime Movie, Windows Media Video Voicemails)<br> o Other file types that cannot practicably be converted to image format.<br>• All Native files should be named after the beginning Bates number of the document (BEGDOC.xls).<br>• Documents produce in native format should be produced with a single page TIFF placeholder endorsed the Prod Beg Bates and the following language on the placeholder: "Document produced in native format."<br>• Documents produced in native format should have a file path value for the native file in the "Native Link" metadata field. |
| **f) Exception Handling** | A single-page TIFF placeholder should be used for each document within a family that was not converted and endorsed with the Prod Bates Beg and exception reason. |
| **g) Display Hidden Text** | Maintain and display hidden text (i.e., force on all hidden data). For example, track changes in MS Word, speaker notes in MS PowerPoint, and hidden rows in MS Excel. |
| **h) Maintain Date and Time** | Maintains the date/time of the document as it was last saved, edited, etc., not the date of collection or processing (I.e., force off auto data). |

### 3.     Directory Structure

The directory structure will contain the following main folders: DATA, NATIVE, TEXT, and IMAGES. Ex: Vol1\ NATIVE\000X\

| | Requirement: |
|---|---|
| **DAT File Location** | In subfolder: \DATA |

| OPT File Location | In subfolder: \DATA |
|---|---|
| Images | In subfolder: \IMAGES<br>In sequentially numbered subfolders containing approximately 1000 images each (i.e. ..\Images\001 ) |
| Text Files | In subfolder: \TEXT |
| Native Files | In subfolder. i.e. \NATIVE |

**4.    Delimiters**

| | Requirement | | |
|---|---|---|---|
| Field Separator | ASCII Code 20 ( ) | Separates load file columns | |
| Field Values | ASCII Code 254 (þ) | Marks the beginning and end of each load file field (also known as a text qualifier) | |
| Multi-value | ASCII Code 059 (;) | Separates distinct values in a column. This delimiter is only used when importing into a Relativity multi-choice field | |
| Newline | ASCII 174 Code (®) | Marks the end of a line in any extracted or long text field | |
| Null Fields | | If a Field has no value, leave blank | |

**5.    Metadata**

| Field Name | Field Description | Format | File Type | Hard Copy |
|---|---|---|---|---|
| AttachCount | Number of attachment(s) | NUMERICAL | Populated for messages and attachments only. | Populated |
| Author | Original composer of document. | TEXT | Populated attachments and loose files. | |
| Confidentiality | Confidential status of document. | TEXT | Populated for messages, attachments and loose files. | Populated |
| Conversation ID | Email thread created by the email system. This is a 44-character string of numbers and letters that is created in the initial email and has 10 characters added for each reply or forward of an email. | TEXT | Populated for messages only. | |
| Custodian or Source | Name of custodian who possessed the document. | TEXT | Populated for messages, | Populated |

| Field Name | Field Description | Format | File Type | Hard Copy |
|---|---|---|---|---|
| | | | attachments and loose files. | |
| **All Custodians** | Name of all custodians who possessed (i.e., To, From, BCC, CC) the document, prior to de-duplication. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **All File Paths** | The location of each file, for duplicate custodians, prior to de-duplication. | TEXT | Populated for messages, attachments and loose files | Populated |
| **Date Created** | Date from the date created property extracted from the original file or email message. | DATE (MM-DD-YYYY) | Populated for attachments and loose files. | |
| **Date Last Modified** | Date from the modified property of a document, representing the date and time that changes to the document were last saved. | DATE (MM-DD-YYYY) | Populated for attachments and loose files. | |
| **Date Received** | Date that the email message was received (according to original time zones). | DATE (MM-DD-YYYY) | Populated for messages. Attachments will inherit from the parent message. | |
| **Date Sent** | Date that the email message was sent (according to original time zones). | DATE (MM-DD-YYYY) | Populated for messages. Attachments will inherit from the parent message. | |
| **DocType** | Populated with: Email, Attachment, eDocPaper | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Email BCC** | Recipients of 'blind carbon copies' of the email message. | TEXT | Populated for messages only. | |
| **Email CC** | Recipients of 'carbon copies' of the email message. | TEXT | Populated for messages only. | |
| **Email From** | Originator of the email message. | TEXT | Populated for messages only. | |
| **Email Subject** | Subject of the email message | TEXT | Populated for messages only. | |

| Field Name | Field Description | Format | File Type | Hard Copy |
|---|---|---|---|---|
| **Email To** | List of recipients or addressees of the email message. | TEXT | Populated for messages only. | |
| **File Extension** | Three (or more) character extension of the document that represents the file type to the Windows Operating System. Examples are PDF, DOC, or DOCX. The file extension is identified by the file header vs. the file extension of the file name itself. | TEXT | Populated for messages, attachments, and loose files. | |
| **File Name** | Original name of the file. | TEXT | Populated for messages, attachments, and loose files. | |
| **File Size** | File size in kilobytes of native document. | DECIMAL | Populated for messages, attachments, and loose files. | |
| **MD5 Hash Value** | Identifying value of an electronic record that can be used for deduplication and authentication generated using the MD5 hash algorithm | TEXT | Populated for messages, attachments and loose files. | |
| **Original Folder Path** | Original folder path of file or folder name for paper documents. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Prod Bates Beg** | Beginning Bates number, or production number, on first page of document. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Prod Bates Beg Attach** | First Bates number in family group. | TEXT | Populated for messages and attachments. | Populated |
| **Prod Bates End** | Bates number, or production number, on last page of document. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Prod Bates End Attach** | Last Bates number in family group. | TEXT | Populated for messages and attachments. | Populated |

| Field Name | Field Description | Format | File Type | Hard Copy |
|---|---|---|---|---|
| **Redactions** | Redaction status of document. | TEXT | Populated for messages, attachments and loose files. | Populated |
| **Time Created** | Time from the Date Created property extracted from the original file or email message. | TEXT (hh:mm:ss) | Populated for attachments and loose files. | |
| **Time Last Modified** | Time from the Modified property of a document, representing the date and time that changes to the document were last saved. | TEXT (hh:mm:ss) | Populated for attachments and loose files. | |
| **Time Received** | Time that the email message was received (according to original time zones). | TEXT (hh:mm:ss) | Populated for messages. Attachments will inherit from the parent message. | |
| **Time Sent** | Time that the email message was sent (according to original time zones). | TEXT (hh:mm:ss) | Populated for messages. Attachments will inherit from the parent message. | |
| **Title** | Title information saved in metadata with document. | TEXT | Populated for attachments and loose files. | |
| **Native Link** | Link to Native File. Native files should be named the same as the beg doc and delivered in the same folder as the images (e.g., ABC0000001.xls). | TEXT | Populated for attachments and loose files. | Populated |
| **Text Link** | Link to Text Files. Text files should be named the same as the beg doc and delivered in the same folder as the images (e.g., ABC0000001.txt). | TEXT | Populated for attachments and loose files. | |