1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE,

Case No.  2:21-cv-00073-JDP

12

Plaintiff,

**ORDER AFTER HEARING**

13

14

v.

15

PACIFIC BELL TELEPHONE
COMPANY,

16

Defendant.

17

18          This case was before the court on January 25, 2024, for hearing on plaintiff's motion to

19   modify the scheduling order, ECF No. 85; third party Below the Blue's ("BTB") motion for

20   partial reconsideration of the court's November 13, 2023 order and for a protective order, ECF

21   No. 98; and defendant's motion to compel BTB's compliance with court orders, ECF No. 138.

22   Attorneys Matthew Maclear and Erica Maharg appeared for plaintiff; attorneys Peter Meier,

23   Hariklia Karis, and Jonathan Kelley appeared for defendant; and attorney Joshua Koltun appeared

24   for BTB.  As explained below, the court defers ruling on plaintiff's motion, denies BTB's motion,

25   and grants in part and denies in part defendant's motion.

26   **I.        Plaintiff's Motion to Modify the Scheduling Order**

27          Plaintiff moves to modify the October 10, 2023 scheduling order to extend all deadlines

28   by four to five months.  ECF No. 85.  As discussed at the hearing, plaintiff's motion lacks

sufficient detail to allow the court to assess whether good cause exists to extend any or all deadlines.  Plaintiff was afforded an opportunity to explain the specific bases for the requested modifications, and it has since filed a supplemental declaration.  ECF No. 123.  Defendant shall file a response on or before February 8, 2024.  Upon receipt of defendant's response, plaintiff's motion to modify the scheduling order will stand submitted.

**II.     BTB's Motion for Partial Reconsideration and for a Protective Order**

BTB moves for partial reconsideration of the court's November 13, 2023 order and for a protective order.  ECF No. 98.  The November 13 order granted defendant's motion to compel compliance with a subpoena and required BTB to produce all responsive documents by November 30, 2023.  ECF No. 80.  For the reasons stated on the record, as summarized below, BTB's motion is denied.

     A.     <u>Relevant Background</u>

On August 9, 2023, defendant served BTB with a subpoena demanding that it produce various documents and tangible items for inspection.  ECF No. 65-14 & 65-17.  After BTB failed to timely respond, defendant filed a motion to compel compliance with the subpoena.  Despite being properly served, BTB neither filed a response nor appeared at the November 9 hearing.[1] On November 13, 2023, the court granted defendant's unopposed motion to compel and ordered BTB to produce, by no later than November 30, 2023, all documents demanded by the subpoena. ECF No. 80.  One day before that deadline, BTB filed, through newly retained counsel, a motion for an extension of time to comply with the court's order and to file a motion for reconsideration. ECF No. 87.  BTB asserted that some of the documents that it had been ordered to produce are shielded from disclosure by the journalist's privilege, and that it intended to seek reconsideration of the order requiring it to produce those documents.[2]  The court granted that motion in part, permitting BTB to withhold the disputed documents until resolution of the forthcoming motion

---

[1] Seth Jones, one of BTB's cofounders, appeared at the hearing.  The court informed Mr. Jones, who is not an attorney, that he cannot represent or advocate on behalf of BTB, which can only appear through counsel.  *See* E.D. Cal. L.R. 183(a).

[2] As for the remaining documents, BTB requested, and the court granted, until December 7, 2023, to complete production.

1  for reconsideration.  BTB has since moved for reconsideration of the court's November 13, 2023

2  order.  ECF No. 98.  BTB also seeks a protective order finding that certain categories of

3  documents are protected by the journalist's privilege and so need not be produced.  *Id.*

4       B.    <u>Motion for Reconsideration</u>

5       BTB has failed to demonstrate that reconsideration is appropriate.  District courts may

6  reconsider interlocutory orders "at any time before the entry of a judgment."  Fed. R. Civ. P.

7  54(b).  "'As long as a district court has jurisdiction over the case, then it possesses the inherent

8  procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to

9  be sufficient.'"  *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir.

10  2001) (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981)).  Reconsideration is

11  an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of

12  judicial resources."  *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir.

13  2000).  Motions for reconsideration, while generally disfavored, may be granted "if the district

14  court (1) is presented with newly discovered evidence, (2) committed clear error or the initial

15  decision was manifestly unjust, or (3) if there is an intervening change in controlling law."  *Sch.*

16  *Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

17       A motion seeking reconsideration is "not a vehicle for . . . presenting the case under new

18  theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'"

19  *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).  "[A] party is barred from making

20  for the first time in a motion for reconsideration an argument it could readily have raised when

21  the underlying issue was being briefed but chose not to do so."  *Berg v. Kelly*, 343 F. Supp. 3d

22  419, 424 (S.D.N.Y. 2018) (internal quotations omitted); *see Kona*, 229 F.3d at 890 (holding that a

23  motion for reconsideration "may not be used to raise arguments or present evidence for the first

24  time when they could reasonably have been raised earlier in the litigation").

25       Under the court's local rules, a motion for reconsideration must specify "what new or

26  different facts or circumstances are claimed to exist which did not exist or were not shown upon

27  such prior motion, or what other grounds exist for the motion," and "why the facts or

28  circumstances were not shown at the time of the prior motion."  E.D. Cal. L.R. 230(j)(3)-(4).

BTB has failed to demonstrate that reconsideration is warranted.  It has not identified new facts or argued that there has been a change in controlling law.  Instead, BTB argues that because it had not yet retained counsel, it was "legally barred" from presenting the facts and legal arguments supporting its claim of privilege prior to the November 9 hearing on defendant's motion to compel.  ECF No. 114 at 6.  BTB's failure to promptly retain counsel after receipt of the subpoena cannot be fairly characterized as a "legal bar" to opposing defendant's motion to compel.  BTB could have either opposed defendant's motion to compel or timely moved for a protective order; it simply needed to do so through counsel.[3]  BTB's failure to diligently seek and obtain legal representation neither excuses its failure to oppose defendant's motion to compel nor warrants the granting of a proverbial second bite at the apple—with the concomitant costs and delays.  The court finds that BTB has forfeited its argument that certain documents are privileged by raising it for the first time in its motion for reconsideration.  *See Nat'l Urban League v. Ross*, No. 20-CV-05799-LHK, 2020 WL 7488068, *4 (N.D. Cal. Dec. 13, 2020) ("Defendants raise privilege for the first time in their emergency motion for reconsideration.  Defendants thus forfeited their argument."); *see also Connecticut Gen. Life Ins. Co. v. Zilka*, 56 F. App'x 828, 829 (9th Cir. 2003) ("A party does not properly preserve an issue for appeal by raising it for the first

---

[3] BTB argues that "—through no fault of its own—it was unable until after the hearing to secure counsel that could litigate the issue." ECF No. 99 at 13.  In his declaration, Seth Jones states that on August 26, 2023, he retained the Vance Center for International Justice ("Vance Center") for the limited purpose of helping find counsel to represent BTB in this case.  ECF No. 100 at 4.  He further states that "[o]n more than one occasion [he] understood . . . that law firms had agreed to [represent BTB], only to later learn that they had withdrawn or declined such representation."  Mr. Jones's vague statement fails to show that BTB could not secure counsel prior to the November 9 hearing.  Notably, he identifies neither the law firms that purportedly agreed to represent BTB nor the times when such agreements were made and rescinded.  The failure to do so is notable given that the subpoena was served on August 9, 2023, more than three months before the court granted defendant's motion to compel.  More significantly, Jones's declaration suggests that BTB's attempts to obtain legal representation consisted of retaining the Vance Center for the limited purpose of securing pro bono legal representation.  *Id*.; *see* ECF No. 100-1 (letter from the Vance Center stating that representation is being provided through the Lawyers for Reporters program and that the center "will provide the Engagement on a pro bono basis"); *see also* https://www.vancecenter.org/lawyers-for-reporters/.  There is no indication that BTB sought legal assistance from local attorneys licensed to practice in this court or pursued other avenues to retain counsel.  Accordingly, the court is unconvinced that BTB was unable to promptly secure counsel "through no failure of its own."

1   time in a motion for reconsideration.") (quoting *Self Realization Fellowship Church v. Ananda*

2   *Church of Self-Realization*, 59 F.3d 902, 912 (9th Cir. 1995)).

3       C.      Motion for a Protective Order

4       Even if reconsideration were appropriate, BTB's motion for a protective order would fail

5   on the merits, since BTB has not demonstrated that the journalist's privilege shields from

6   disclosure specific documents demanded by defendant's subpoena.  "Rooted in the First

7   Amendment, the [journalist's] privilege is a recognition that society's interest in protecting the

8   integrity of the newsgathering process, and in ensuring the free flow of information to the public,

9   is an interest of sufficient social importance to justify some incidental sacrifice of sources of facts

10  needed in the administration of justice."  *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993)

11  ("*Shoen I*").  The privilege can operate to shield "journalists against compelled disclosure in all

12  judicial proceedings, civil and criminal alike."  *Id*.  The privilege, however, is not absolute and

13  can be overcome if the requesting party demonstrates that the need for disclosure outweighs the

14  public's interest in ensuring the free flow of information.  *Id*. at 1292-93.

15      "The journalist's privilege is designed to protect investigative reporting, regardless of the

16  medium used to report the news to the public."  *Id*. at 1293.  Thus, for the privilege to apply, the

17  person invoking the privilege must have "had 'the intent to use material—sought, gathered or

18  received—to disseminate information to the public and such intent existed at the inception of the

19  newsgathering process.'"  *Id*. (quoting *von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir.

20  1987)).  Both conditions must be satisfied for the privilege to apply.  *Id*.

21      BTB argues that anyone who intends to publish information to the public may invoke the

22  journalist's privilege.  ECF No. 99 at 13-14.  It argues that when the relevant information was

23  gathered, Jones and Fortner were acting as consultants for the Wall Street Journal.  It further

24  contends that it was always Jones and Fortner's intention that the information gathered would be

25  published in publicly available reports.  In that regard, Jones states in his declaration as follows:

26          Starting in January 2022, BTB/MTS began assisting [The Wall
           Street] Journal on its investigation of lead-clad cables.  The Journal
27         had already begun a complex investigation into documents that
           would show the possible location of long-forgotten lead-clad
28         cables.  Later, EDF funded BTB/MTS's work on the investigation,

while the Journal funded the testing.  BTB/MTS also conducted a separate related investigation at the same time for EDF.  It was the expectation of all of us participants in each of these two separate investigations that they would conclude with the publication of public reports.

ECF No. 100 at 3.

Jones's statement, which is notably lacking in specifics, does not demonstrate that BTB or its agents were acting as journalists.  Instead, it reflects that BTB, Jones, and Fortner were *sources* of information potentially relied upon by The Wall Street Journal.  The privilege belongs to journalists, not their sources.  *See, e.g.*, *Branzburg v. Hayes*, 408 U.S. 665, 695 (1972) ("We note first that the privilege claimed is that of the reporter, not the informant, and that if the authorities independently identify the informant, neither his own reluctance to testify nor the objection of the newsman would shield him from grand jury inquiry, whatever the impact on the flow of news or on his future usefulness as a secret source of information."); *Gonzales v. Nat'l Bd. Co.*, 194 F.3d 29, 35 (2d Cir. 1999) (holding that the journalist's privilege provides "a qualified privilege that may be invoked when "information [is] sought from the press . . . ."); *In re Terrorist Attack on Sept. 11, 2021*, 2021 WL 4319428, *5 (S.D.N.Y. Sept. 23, 2021) (discussing relevant authority and concluding that "[t]hese cases make clear that the entity holding the reporter's privilege is the reporter, who cannot invoke it on behalf of a third party").  Although BTB may have intended or expected the information it gathered to be used by a journalist, that intention does not transform BTB into a reporter.

BTB suggests that it worked more closely with the Wall Street Journal than would a typical source, completing tasks and gathering information for the Journal rather than just supplying information already known to BTB.  The court declines to hold that BTB may invoke the journalist's privilege because it completed certain work at the suggestion or request of the Journal.  As discussed at the hearing, no court has held that such activity would give a source the right to invoke the journalist's privilege, or, put differently, that a cooperating source privilege exists.  Such a holding could significantly expand the journalist's privilege, and this court does not find it appropriate to do so here.  For these reasons, as well as those stated at the January 25 hearing, the court finds that BTB lacks standing to invoke the journalist's privilege.

**III.     Defendant's Motion to Compel Compliance with Court Orders**

Defendant moves to compel BTB's compliance with the court orders requiring BTB to produce documents demanded by the August 9, 2023 subpoena.  ECF No. 104.  Defendant argues BTB has failed to produce all electronically stored information, and therefore that the court should order BTB "to submit to ESI collection and production by an independent third party, consistent with" a review protocol.  ECF No. 104-1.

For the reasons stated on the record at the January 25 hearing, defendant's motion to compel compliance with court orders is granted in part and denied in part.  By no later than February 8, 2024, BTB shall comply with the court's November 13 and December 7, 2023 orders, ECF Nos. 80 & 90, requiring it produce all documents called for by the August 9, 2023 subpoena. Defendant's motion is denied in all other respects.

Accordingly, it is hereby ORDERED that:

1.  Defendant shall file a response to plaintiff's supplemental filing, ECF No. 123, by no later than February 8, 2024.

2.  Third-party Below the Blue's motion for partial reconsideration and for a protective order, ECF No. 98, is denied.

3.  Defendant's motion to compel compliance with court orders is granted in part and denied in part as follows:

a.  Below the Blue shall comply with the court's November 13, 2023 and December 7, 2023 orders requiring it produce all documents called for by the subpoena defendant served on August 9, 2023; and

b. the balance of the motion is denied.

IT IS SO ORDERED.


Dated:     February 2, 2024                          _____
                                                     JEREMY D. PETERSON
                                                     UNITED STATES MAGISTRATE JUDGE

7