1  NAVI SINGH DHILLON (SBN 279537)
   navidhillon@paulhastings.com
2  PETER C. MEIER (SBN 179019)
   petermeier@paulhastings.com
3  CHRISTOPHER J. CARR (SBN 184076)
   chriscarr@paulhastings.com
4  LUCAS V. GRUNBAUM (SBN 314180)
   lucasgrunbaum@paulhastings.com
5  PAUL HASTINGS LLP
   101 California Street, 48th Floor
6  San Francisco, California  94111
   Telephone:  (415) 856-7000
7  Fax: (415) 856-7100

8  HARIKLIA KARIS (*admitted pro hac vice*)
   hkaris@kirkland.com
9  ROBERT B. ELLIS (*admitted pro hac vice*)
   rellis@kirkland.com
10 MARK J. NOMELLINI (*admitted pro hac vice*)
   mnomellini@kirkland.com
11 KIRKLAND & ELLIS LLP
   300 North LaSalle
12 Chicago, IL 60654
   Telephone:  (312) 862-2000
13 Fax: (312) 862-2200

14 Attorneys for Defendant
   PACIFIC BELL TELEPHONE COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>Plaintiff,<br><br>vs.<br><br>PACIFIC BELL TELEPHONE COMPANY,<br><br>Defendant. | CASE NO. 2:21-cv-00073-MCE-JDP<br><br>**PACIFIC BELL'S PRE-CONFERENCE DISCOVERY DISPUTE BRIEF**<br><br>Judge:           Hon. Jeremy D. Peterson<br>Date:             April 25, 2024<br>Time:            10:00 a.m.<br>Courtroom:   9<br><br>Action Filed: January 14, 2021<br>Trial Date:     None |

## THE DISCOVERY DISPUTE

Plaintiff now refuses to coordinate on the collection of split samples, despite previously proposing that both parties be "present together for the collection of samples." Dkt. 56 at 1.

On November 27, 2023, Plaintiff filed a motion to modify the Court's scheduling order. Dkt. 85. During the meet-and-confer process leading to that motion, Plaintiff offered differing justifications for why the schedule should be modified. On reply, Plaintiff shifted to focusing on the need to conduct entirely new environmental sampling. At the hearing on Plaintiff's motion, the Court directed Plaintiff to provide more specifics on the sampling and for counsel to confer. On February 1, Plaintiff filed a declaration with additional information on its planned sampling, which it claimed was expected to occur in April or May 2024. *See* Dkt. 123. Consistent with the parties' meet-and-confer discussions, Pacific Bell filed a statement of non-opposition to Plaintiff's revised, proposed schedule, with the expectation that the parties would continue to work in good faith toward an agreement on a "process for split samples to be collected in the field." Dkt. 125.

On February 18, Pacific Bell wrote Plaintiff "to follow up on our prior discussion to coordinate a site visit so split samples can be exchanged." On February 29, the parties met and conferred by videoconference. Pacific Bell asked that Plaintiff: (1) agree to give it advance notice of its sampling activities and (2) provide it with split samples (which courts and the EPA consider to be a scientifically reliable technique to determine the accuracy of sampling data).[1] On that videoconference, Plaintiff represented it did not know when sampling would occur because the permit had not issued, and that it would consider the request for split samples. Pacific Bell asked Plaintiff to notify it when the permit issued so scheduling discussions could commence.

On April 1, Pacific Bell asked Plaintiff for an update. Plaintiff responded by letter on April

---

[1] As the U.S. Environmental Protection Agency has explained:

> Split sampling is a technique where multiple samples are collected from the same location at the same time and then sent to separate laboratories for analysis. Checking to see if the labs get the same or similar results is a way to determine the accuracy of the data. If there are differences, scientists then know they need to investigate further. These additional steps help to make sure that the best data is used to learn more about our environment. "What is split sampling," EPA Website: https://www.epa.gov/east-palestine-oh-train-derailment/what-split-sampling.

-1-

3, stating it was "willing to discuss the possibility of coordinating" on sampling but was unavailable for a call until the week of April 8. Plaintiff also asked Pacific Bell to provide a "specific proposal" on how to coordinate the timing and procedures of the joint site visit. In a letter sent on April 9, Pacific Bell provided the requested information:

> As we have discussed previously we can arrange for a separate vessel for our consultants assuming you would prefer that. The attendees on our part will depend on the dates and availability, as well as the type of sampling that you have planned on the particular date. We suggest as a protocol that notice of any site visits for collection of samples be provided as soon as practicable and no later than 72 hours in advance, that contemporaneous access to sampling locations be permitted, and that split samples be provided for all types of sampling. If you would like to restrict communications with Plaintiff's experts and consultants during sampling events that would be fine with us. We would be happy to consider any proposals on your part with regard to sampling logistics. [Apr. 9, 2024 Letter to Plaintiff's Counsel].

On April 12, Plaintiff informed Pacific Bell it is not willing to coordinate sampling efforts. Plaintiff argued that the Court does not have authority to require split sampling. Plaintiff also declined to coordinate because "Defendants refuse to stipulate to the admissibility of the evidence collected during the proposed coordinated sampling event." As discussed below, these arguments are mistaken on the law (the Court has discretion to require split sampling), and on the rules of evidence (one purpose of split sampling is to aid the Court's determination of whether the data is admissible). The parties conferred a final time via Zoom on April 17. No agreement was reached.[2]

## COORDINATION OF SPLIT SAMPLING IS ROUTINE

Parties in environmental litigation regularly coordinate on joint site visits for purposes of collecting field data. Courts likewise have recognized the wisdom of parties working together to coordinate sampling. For example, in *Andres v. Town of Wheatfield*, 2017 WL 4484347, at *4 (W.D.N.Y. Oct. 6, 2017), the plaintiffs refused to cooperate on the joint collection of field data, including in public areas. The court rejected the plaintiffs' argument that they should not have to coordinate with the defendants, noting that split sampling is a "routine practice." *Id*. (collecting other cases where split sampling occurred). Ultimately, the *Andres* court ordered the plaintiffs to

---

[2] Plaintiff's resistance to cooperating with Pacific Bell is further undermined by the fact California State Parks is requiring Plaintiff to allow "on-site monitor(s) during proposed sampling…including Sierra District Dive Team members and tribal monitor(s) from the Washoe Tribe of Nevada and California to observe sampling operations…." (Mar. 1, 2004 email to M. Maclear).

give advance notice of sampling and imposed other requirements to facilitate an orderly process and avoid any undue prejudice (specifying number of attendees, communications protocol, etc.). The court noted that providing "[c]ontemporaneous access [to sampling] furthers the court's interest in reliable evidence and enhances the likelihood that competing expert results will present an 'apples to apples' comparison." *Id.* at *4.

Although Pacific Bell cited *Andres* to Plaintiff and Plaintiff provided no contrary authority, Plaintiff continues to assert that this Court cannot require cooperation on split sampling under the federal discovery rules. Not so.[3] This Court has ample authority to order split sampling under both FRCP 16 and FRCP 26. Indeed, the *Andres* court relied in part on the federal discovery standard when requiring split sampling. *See* 2017 WL 44843476, at *7 (finding burdens imposed by split sampling and contemporaneous access were proportionate to the value of ensuring that reliable evidence will be presented at trial) (citing Fed. R. Civ. P. 26(b)(1)).

In sum, Pacific Bell has made every effort to work with Plaintiff to ensure there is no added delay or costs due to split sampling. And Pacific Bell has made a proposal that mirrors what was ordered in *Andres*, while Plaintiff has not made any alternative proposal.

**CONCLUSION**

Pacific Bell asks that the Court direct the parties to coordinate on split sampling. Pacific Bell also would support a judicial site visit so the Court and its staff can observe the cables in their natural setting within the vastness of Lake Tahoe. Pacific Bell looks forward to the Court's guidance at the informal conference.

April 23, 2024                           PAUL HASTINGS LLP

By: /s/ Navi Singh Dhillon
    NAVI S. DHILLON

Attorneys for Defendant
PACIFIC BELL TELEPHONE COMPANY

---

[3] Plaintiff's position that the current dispute over split sampling is not a "discovery" matter is meritless. Plaintiff sought its own fact discovery into Pacific Bell's environmental sampling in this action, and Pacific Bell complied. Plaintiff also resists split sampling because it claims it would be "unfair" because Plaintiff did not join in Pacific Bell's sampling efforts. But Plaintiff never asked to coordinate on split sampling and had it done so Pacific Bell would have agreed.