MATTHEW MACLEAR (State Bar No. 209228)
Email: mcm@atalawgroup.com
JASON FLANDERS (State Bar No. 238007)
Email: jrf@atalawgroup.com
ERICA A. MAHARG (State Bar No. 279396)
Email: eam@atalawgroup.com
J. THOMAS BRETT (State Bar No. 315820)
Email: jtb@atalawgroup.com
AQUA TERRA AERIS LAW GROUP
4030 Martin Luther King Jr Way
Oakland, CA 94609
Tel: (415) 568-5200

[Additional counsel on p. 2]

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC BELL TELEPHONE COMPANY,<br><br>Defendant. | CASE NO. 2:21—CV-00073-JDP<br><br>**NOTICE OF MOTION AND MOTION TO APPROVE SETTLEMENT AND FOR ENTRY OF CONSENT DECREE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEREOF**<br><br>DATE: November 7, 2024<br>TIME: 10:00 a.m.<br>DEPT: 09<br>JUDGE: Hon. Jeremy D. Peterson |

ANDREW L. PACKARD (State Bar No. 168690)
Email: andrew@packardlawoffices.com
LAW OFFICES OF ANDREW L. PACKARD
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062

WILLIAM VERICK (State Bar No. 140972)
Email: wverick@igc.org
KLAMATH ENVIRONMENTAL LAW CENTER
1125 16th Street, Suite 204
Arcata, CA 95521
Tel: (707) 630-5061; Fax: (707) 630-5064

J. KIRK BOYD (State Bar No. 122759)
Email: jkb@drjkb.com
LAW OFFICE OF JOHN KIRK BOYD
548 Market St., Suite 1300
San Francisco, CA 94104-5401
Tel: (415) 440-2500

BRIAN ACREE (State Bar No. 202505)
Email: brian@brianacree.com
LAW OFFICES OF BRIAN ACREE
331 J Street, Suite 200
Sacramento, CA 95814
Tel: (916) 505-6861

WILLIAM CARLON (State Bar No. 305739)
Email: william@carlonlaw.com
LAW OFFICE OF WILLIAM CARLON
437 Post Street
Napa, CA 94559
Tel: (530) 514-4115

**NOTICE OF MOTION**

TO THE COURT, THE PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on November 7, 2024 at 10:00 a.m., or as soon thereafter as the matter be heard, at the United States District Court for the Eastern District of California, Robert S. Matsui Courthouse, Courtroom 9—13th Floor, 501 I Street, Sacramento, CA 95814, before the Honorable Jeremy D. Peterson, Plaintiff California Sportfishing Protection Alliance will and hereby does move to approve the Proposed Consent Decree, executed by the Parties on September 16, 2024.

This Motion is based upon this Notice of Motion of Motion; Memorandum of Points and Authorities in support thereof; the Declaration of Matthew C. Maclear in support thereof; the Declaration of Chris Shutes in support thereof; the Court's file in this matter; and upon any other such argument or evidence as the Court may consider for hearing on this matter.

| | |
|---|---|
| Dated: September 18, 2024 | AQUA TERRA AERIS LAW GROUP |
| | |
| | */s/ Matthew C. Maclear* |
| | Matthew C. Maclear |
| | Attorneys for Plaintiff |
| | CALIFORNIA SPORTFISHING |
| | PROTECTION ALLIANCE |

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  **INTRODUCTION**

In January 2021, Plaintiff California Sportfishing Protection Alliance ("Plaintiff" or "CSPA") filed this action, seeking the removal of two lead-containing telecommunication cables in Lake Tahoe (the "Cables") owned by Defendant Pacific Bell Telephone Company ("Defendant"). The Cables are approximately six to eight miles long, and Plaintiff estimates they contain 120,000 pounds of lead conduit/sheathing. Lake Tahoe is a source of drinking water, an Outstanding National Resource Water, and an iconic national treasure.

CSPA alleges that lead is and has been discharging into Lake Tahoe as the Cables degrade. Dkt. No. 1 ("Complaint"), ¶ 2. Plaintiff alleges the Cables are a solid waste posing an imminent and substantial endangerment to human health or the environment, in violation of the Resource Conservation and Recovery Act ("RCRA") (42 U.S.C. § 7002(a)(1)(B)). Plaintiff also alleges the ongoing discharge of lead from the Cables into Lake Tahoe violates the California Safe Drinking Water and Toxic Enforcement Act (Cal. Health & Safety Code § 25249.5 *et seq.*) ("Proposition 65"). In addition to removing the Cables, the action seeks an award of penalties under Proposition 65 and recovery of attorney's fees and costs under RCRA (42 U.S.C. § 6972(e)) and state law (Cal. Code Civ. Proc. § 1021.5). Defendant denies all claims. Dkt. No. 8 at 2.

On September 16, 2024, the Parties executed a Proposed Consent Decree, which settles Plaintiff's claims for injunctive relief and penalties, but not Plaintiff's claim for fees and costs. Defendant commits to remove the Cables, and Plaintiff has agreed to settle without penalties, as previously agreed to and approved by the Court. Under Proposition 65, a consent decree must be presented for judicial review, pursuant to a noticed motion, which has been served upon the California Attorney General at least forty-five (45) days prior to the hearing on the motion. Cal. Health & Safety Code § 25249.7(f)(4).[1] Plaintiff will serve this motion and the supporting documents on the California Attorney General immediately after filing. Declaration of Matthew C. Maclear in Support of Motion

---

[1] Pursuant to Title 11, California Code of Regulations § 3003(a), the Court is advised that the fact that the Attorney General does not object or otherwise respond to a settlement shall not be construed as endorsement of such settlement.

to Approve Settlement and for Entry of Consent Judgment ("Maclear Decl."), ¶¶ 4-5. After the 45-day Attorney General review, Plaintiff respectfully requests that this Court approve and enter the Proposed Consent Decree.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties

CSPA is a non-profit public benefit corporation organized under the laws of California and based in Berkeley, California. Declaration of Matthew C. Maclear in Support of Motion to Approve Settlement and for Entry of Consent Judgment ("Shutes Decl."), ¶ 2. CSPA is dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of California waters, including the waters of Lake Tahoe. *Id.* To further its goals, CSPA actively seeks implementation of state and federal laws that protect the integrity of California waters, and as necessary, directly initiates enforcement actions on behalf of itself and its members. *Id.*, ¶¶ 4

CSPA's members fish, swim, and otherwise recreate in Lake Tahoe, and drink water from the Lake. Shutes Decl., ¶ 3; *see also* Maclear Decl., ¶ 12, Ex. 2 (Plaintiff's First Amended Responses to Defendant's First Set of Interrogatories at 5-9). These members have concerns about lead impacting Lake Tahoe and its natural resources, and the knowledge that the Cables are discharging into Lake Tahoe reduces their enjoyment of the Lake and their recreational interests. *Id*.

Defendant is a corporation that provides telecommunications services in California. Doc. No. 16-2, Declaration of Brian Acree in Support of Motion to Approve Settlement and for Entry of Consent Decree ("Acree Decl."), at ¶ 8. Defendant owns the Cables at issue in this litigation. *See* Maclear Decl., ¶ 13, Ex. 3 (Defendant Pacific Bell Telephone Company's Amended Responses to Plaintiff's First Set of Requests for Admission) at 4.

### B. The Cables and their Impacts on Lake Tahoe

The Cables lie on the lakebed in the waters along the western edge of Lake Tahoe. *See* Doc. No. 16-2, Acree Decl., ¶¶ 9-10. One Cable is approximately two thousand (2,000) feet in length and is located in Emerald Bay. Maclear Decl., ¶ 6. This Emerald Bay cable has cut ends that are

submerged below the surface of the water. *Id*. The second Cable is located along the west shoreline of the Lake from Baldwin Beach to the south and beyond Rubicon Point to the north. *Id*.

The Cables are composed of several concentric layers of materials, including jute material containing a bitumen, tar-like substance; a ring of steel cables one quarter inch in diameter; a thick lead conduit/sheathing; and then the copper telecommunication wires wrapped in paper. Doc. No. 16-2, Acree Decl., ¶ 9. It is Plaintiff's understanding that each foot of Cable is made up of approximately 0.7 pounds jute, 4.15 pounds of steel, 3.39 pounds of lead, and 0.77 pounds of copper. *Id*.

Defendant no longer uses the Cables. The Cables have been damaged over time, and the lead sheathing has become exposed in numerous locations. Maclear Decl., ¶ 8.

Lead has long been known to cause neurotoxicity. Several federal agencies have found that lead is especially toxic to the developing nervous system and can impair short-term memory and executive function. The Environmental Protection Agency has determined there is no level of lead exposure that has been shown not to cause neurodevelopmental toxicity. Moreover, many compounds of lead are soluble in water, and humans, birds, mammals, and fish may be exposed to lead in Lake Tahoe.

**C.     Initiation of This Litigation and the First Consent Decree**

Plaintiff learned of the existence of the Cables and conducted an initial investigation before sending a pre-filing notice letter. Dkt. No. 16-2, Acree Decl., ¶ 11; *see also* Dkt. No. 1 at 14-22. Based on this initial investigation, Plaintiff prepared and sent a notice of violation letter on August 20, 2020 in accordance with the RCRA and Proposition 65. Dkt. No. 1 at 14-22.

Settlement negotiations began early in the action. Dkt. No. 16-2, ¶ 21. In September 2021, the parties settled all claims. Dkt. No. 16-1, Memorandum of Points and Authorities in Support of Motion to Approve Settlement and Entry of Consent Decree, at 1. This Court approved the Consent Decree on November 5, 2021. Dkt. No. 22, Amended Consent Decree ("First Consent Decree"). In the First Consent Decree, Defendant agreed to remove the Cables, subject to certain preconditions. *Id*., ¶ 2. The First Consent Decree allowed either party to move to vacate the agreement if the Cables were

not removed within the specified time period and the parties could not agree on an amended schedule. *Id*.

Defendant obtained permits and approvals to remove the Cables by the end of April 2023. Dkt. No. 33, Defendant's Status Report, at 3:13-14. Defendant sought to vacate the First Consent Decree and reinitiate litigation after the Wall Street Journal published a series of articles concerning the Lake Tahoe Cables and similar cables around the country. *See* Dkt. No. 49, Notice of Election to Vacate Consent Decree. The Court approved the request and vacated the First Consent Decree in August 2023. *See* Dkt. No. 55, Order Vacating Consent Decree.

### D. Litigation after First Consent Decree Vacatur

After vacatur of the First Consent Decree, the Parties engaged in discovery. Maclear Decl. ¶ 12. Plaintiff conducted an underwater Cables survey and comprehensive sampling of biofilm on the Cables, sediment near the Cables, water samples from around the Cables, and the Cables themselves. *Id*. ¶¶ 8-11. Plaintiff's sampling and investigation coincided with extensive document production, written discovery, and third-party discovery. *Id*. ¶¶ 12-15.

## III. THE PROPOSED CONSENT DECREE

The Parties reinitiated settlement negotiations, resulting in the Proposed Consent Decree, which Plaintiff now, respectfully, requests this Court approve ("Proposed Consent Decree"). Maclear Decl., ¶¶ 3, 15, Ex. 1. Pursuant to the Proposed Consent Decree, Defendant will "use diligent and commercially reasonable efforts to remove the Cables by the Target Removal Period." Proposed Consent Decree ¶ 2. The Target Removal Period is defined as "by November 30, 2024, or the next date in 2025 that is available before May 26, 2025 (Memorial Day), based on weather conditions and consistency with permitting procedures." *Id*. at p.5. Defendant agrees to use diligent and commercially reasonable efforts to promptly seek all necessary permits and authorizations needed to remove the Cables from Lake Tahoe. *Id*., ¶ 1. If Defendant cannot complete removal and/or disposal of the Cables by the end of the Target Removal Period, Defendant must "notify Plaintiff in writing within five (5) business days before the end of the Target Removal Period. Defendant agrees to provide Plaintiff with an update on the status of the Authorizations, the efforts Defendant has made

to obtain required Authorizations and to complete removal by the end of the Target Removal Period, and Defendant's plan and contemplated timeline to remove the Cables." *Id*., ¶ 3.

The Proposed Consent Decree also includes a dispute resolution provision. *Id.,* ¶ 4. If a dispute arises or breach is alleged, the Parties agree to meet and confer within fourteen (14) days. *Id*. After seven (7) days have elapsed from the date of the meet-and-confer, either Party may seek any remedy entitled by law, including by filing a motion with this Court for enforcement of this Proposed Consent Decree. *Id*. The Parties, for the purposes of a negotiated settlement in this action and consistent with the previously entered First Consent Decree (Dkt. 22), agree that no civil penalty will be paid pursuant to Proposition 65. Maclear Decl. ¶ 16.

Although the Parties have agreed on the substantive issues at stake in the matter (*i.e*., the removal of the Cables), the Proposed Consent Decree does not settle Plaintiff's claims for reimbursement of its attorneys' fees and costs. Proposed Consent Decree, ¶ 8. Instead, the Parties agree Plaintiff will file a separate, forthcoming motion for attorneys' fees and costs, no later than October 31, 2024. *Id*.

## IV.     LEGAL BACKGROUND

### A.     Federal Standards for Approval of a Proposed Consent Decree

"Approval of a consent decree is within the discretion of the Court." *United States v. Pacific Gas & Electric*, 776 F.Supp.2d 1007, 1024 (N.D. Cal 2011). The purpose of judicial review of consent decrees is to "determine whether [the proposed consent decree] is 'fundamentally fair, adequate and reasonable.'" *Id.* The review is of both procedural and substantive fairness. *Id.* "With regard to procedural fairness, courts determine whether the negotiation process was 'fair and full of adversarial vigor.'" *Id*. at 1025 (citations omitted). "If the decree was the product of 'good faith, arms-length negotiations' it is 'presumptively valid....'" *Id*. (citations omitted). "With respect to substantive fairness, the Court does not determine whether 'the settlement is one which the court itself might have fashioned or considers ideal.'" *Id*. Rather, "[t]he Court need only be satisfied that the decree represents a reasonable factual and legal determination." *Id*. (citation omitted). "In addition, while a

consent decree 'must conform to applicable laws[, it] need not impose all the obligations authorized by law." *Id*. (citation omitted).

### B. California Standard for Approval of a Proposition 65 Settlement

Entry of a settlement as a judgment by a court is expressly addressed and authorized by California Code Civil Procedure section 664.6, which provides that "if the parties to pending litigation stipulate, in a writing ... for settlement of the case ... the court, upon motion, may enter judgment pursuant to the terms of the settlement." Cal. Code Civ. Proc. § 664.6. This statute gives expression to the strong policy favoring settlement of pending litigation. *Viejo Bancorp, Inc. v. Wood*, 217 Cal.App.3d 200, 208 (1989). Accordingly, a court may approve a settlement provided the terms of the settlement are not contrary to law or in violation of some other public policy. *Rich Vision Centers, Inc. v. Board of Medical Examiners*, 144 Cal.App.3d 110, 115 (1983); *Stermer v. Board of Dental Examiners*, 95 Cal.App.4th 128, 133 (2002). In addition, Section 25249.7(f)(4) of Proposition 65 requires courts to make three findings prior to approving a settlement of claims under the Act: "(A) The warning required by the settlement complies with [Proposition 65]; (B) The award of attorney's fees award is reasonable under California law; and (C) The penalty amount is reasonable based upon criteria set forth in paragraph (2) of subdivision (b)."

## V. **DISCUSSION**

As explained below, the Proposed Consent Decree should be entered pursuant to the federal and state standards.

### A. The Federal Standard for Approving a Consent Decree Has Been Met.

The Proposed Consent Decree meets the federal standard of being procedurally and substantively fair. *Pacific Gas & Electric*, 776 F.Supp.2d at 1024. The Proposed Consent Decree resulted from negotiations characterized by "adversarial vigor." *Id.* (holding settlements are procedurally fair where the underlying negotiation process was "fully of adversarial vigor" and the product of "good faith, arms-length negotiations"). Plaintiff has established itself, through its actions over many years, as a zealous advocate for the environment, and Plaintiff was represented by attorneys with decades of experience litigating environmental cases. *See* Dkt. No. 16-2, Acree Decl.,

¶¶ 12-18; Maclear Decl. ¶ 19; Shutes Decl., ¶¶ 2, 4. Defendant has also been represented by competent and experienced counsel at the Paul Hastings and Kirkland & Ellis law firms. Thus, because the Parties were represented by experienced counsel, and the settlement was reached as a result of arms-length negotiations, the settlement is procedurally fair. *Pacific Gas & Electric*, 776 F.Supp.2d at 1024.

The Proposed Consent Decree is also substantively fair because it requires Defendant to remove the Cables. Proposed Consent Decree, ¶ 2; *see also Pacific Gas & Electric*, 776 F.Supp.2d at 1024. Removal of the Cables is the primary remedy Plaintiff has sought throughout this litigation. *See* Dkt. No. 1, at p. 11 (& 40), p. 17. Thus, the settlement achieves Plaintiff's primary remedy, allows this Court and the Parties to avoid spending time and resources on protracted litigation, and serves the public interest by removing the Cables. *Pacific Gas & Electric*, 776 F.Supp.2d at 1024.

Federal standards also require that the conditions of a consent decree must "conform to applicable laws." *Id*. The Proposed Consent Decree requires that Defendant acquire all necessary authorizations before removing the Cables. Proposed Consent Decree, ¶ 1. Thus, this federal standard has been met.

**B.     The Proposed Consent Decree Meets Proposition 65's Requirements.**

Per Proposition 65, a court may approve a settlement provided it finds (1) the terms of the settlement are not contrary to law or in violation of some other public policy, including Proposition 65; (2) the award of attorney's fees is reasonable; and (3) the penalty amount is reasonable under the circumstances. *Rich Vision Centers, Inc.*, 144 Cal.App.3d at 115. Here, for the following reasons, these standards are met.

   **i.     The Settlement Does Not Violate the Law and Furthers the Policy and Purposes of Proposition 65 and the Public Interest.**

This Proposed Consent Decree promotes the public interest in the health and wellbeing of Lake Tahoe. The Proposed Consent Decree requires Defendant to remove six to eight miles long Cables that contain lead and that Plaintiff alleges discharges into Lake Tahoe. Proposed Consent Decree, ¶ 2; *see also* Dkt. No. 16-2, Acree Decl., ¶9; Maclear Decl., ¶ 6. Removing the Cables directly

serves the public policy underlying Proposition 65. As noted in the Preamble of Proposition 65, "[t]he people of California ... declare their rights (a) To protect themselves and the water they drink against chemicals that cause cancer, birth defects, or other reproductive harm." *Environmental Health Advocates, Inc. v. Sream Inc*. (2022) 83 Cal.App.5th 721, 731 (quoting Proposition 65). Plaintiff asserts that removal of the Cables also serves to preserve important habitat for aquatic species and recreation opportunities for Californians who swim, boat, and fish in those waters.[2]

As noted, California law favors settlements so long as they do not violate an applicable law or public policy. *Id.* at 457. Here, the settlement violates no laws, including Proposition 65, and was reached after arms-length negotiations by experienced counsel who possessed sufficient information to evaluate the case and the terms of the Proposed Consent Decree. *See Dunk v. Ford Motor Co.*, 48 Cal.App.4th 1794, 1802 (1996). Plaintiff has set the hearing for this motion more than 45 days from the date of filing, which allows the California Attorney General the required opportunity to review and comment on the settlement. Maclear Decl. ¶ 5.

### ii.   The Provision of Section 25249.7 Regarding Attorney's Fees is Inapplicable.

The Proposed Consent Decree does not settle Plaintiff's claims for attorneys' fees. Proposed Consent Decree, ¶ 8. Accordingly, the provision of section 25249.7 regarding the reasonableness of attorneys' fees does not apply to the instant motion.

### iii.   Approval of the Proposed Consent Decree without a Civil Penalty Is Warranted in this Case.

Pursuant to Proposition 65, a court may approve a settlement provided it finds the penalty amount is reasonable under the circumstances. *Rich Vision Centers, Inc.*, 144 Cal.App.3d at 115. Proposition 65 provides a non-exclusive list of factors that must be considered in assessing whether a civil penalty is reasonable. Cal. Health & Safety Code § 25249.7(b)(2), (f). These factors are: (a)

---

[2] Proposition 65 is divided into a prohibition against the discharge of a listed chemical into drinking water, section 25249.5, and a prohibition against the exposure of consumers to listed chemicals without a clear and reasonable warning, section 25249.6. This action is brought under the prohibition against discharge section and, accordingly, warning is not an available remedy for violation of section 25249.5; the remedy at issue here is an injunction to stop the discharge.

the number and extent of the violations; (b) the severity of the violations; (c) the economic effect of the penalty on the violator; (d) whether the violator took good faith measures to comply with this chapter and the time these measures were taken; (e) the willfulness of the violator's misconduct; and (f) the deterrent effect that the imposition of the penalty would have on both the violator and the regulated community as a whole. *Id.*

Here, per the terms of the Proposed Consent Decree, no civil penalty is to be assessed against Defendant. Maclear Decl. ¶ 16. Plaintiff believes this is reasonable given the substantial expense of removing the Cables, estimated to be $1.5 million or more. Maclear Decl., ¶ 17.

Although Plaintiff is confident of its claims, Plaintiff recognizes the inherent uncertainty of the trial, and this settlement guarantees the public interest is served by removing the Cables and avoiding threatened or actual harm to the iconic Lake Tahoe.

Moreover, Defendant did not act unlawfully when it laid the Cables in Lake Tahoe, and it is Plaintiff's understanding that Defendant was authorized to leave the Cables in place when it stopped using them. Maclear Decl., ¶ 18. Thus, although Plaintiff alleges the Cables discharged lead and caused an imminent and substantial endangerment to Lake Tahoe as a result of degradation and damage to the Cables over time, Defendant's initial actions related to the Cables were not unlawful. Defendant has and continues to deny all of Plaintiff's claims.

Given this and that Defendant has agreed to spend significant resources to remove the Cables, which serves the public interest, a settlement that does not impose a civil penalty is warranted in this circumstance. *See Steinman v. P&G*, 2010 Cal. Super. LEXIS 10517 (2010), at *1 (approving Proposition 65 settlement without a civil penalty).

## VI. **CONCLUSION**

The Proposed Consent Decree meets the criteria established under both RCRA and Proposition 65 and is manifestly reasonable, fair, and in the public interest. For the reasons set forth above, this Court should approve and enter the Proposed Consent Decree.

Dated: September 18, 2024

                        */s/ Matthew C. Maclear*
                        MATTHEW C. MACLEAR
                        Aqua Terra Aeris Law Group
                        Attorneys for Plaintiff
                        CALIFORNIA SPORTFISHING
                        PROTECTION ALLIANCE