MATTHEW MACLEAR (State Bar No. 209228)
Email: mcm@atalawgroup.com
JASON FLANDERS (State Bar No. 238007)
Email: jrf@atalawgroup.com
ERICA A. MAHARG (State Bar No. 279396)
Email: eam@atalawgroup.com
J. THOMAS BRETT (State Bar No. 315820)
Email: jtb@atalawgroup.com
AQUA TERRA AERIS LAW GROUP
4030 Martin Luther King Jr Way
Oakland, CA 94609
Tel: (415) 568-5200

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>        Plaintiff,<br><br>vs.<br><br>PACIFIC BELL TELEPHONE COMPANY,<br><br>        Defendant. | Case No.: 2:21-cv-00073-JDP<br><br>**DECLARATION OF MATTHEW C. MACLEAR IN SUPPORT OF MOTION TO APPROVE SETTLEMENT AND FOR ENTRY OF CONSENT JUDGMENT**<br><br>**DATE:  November 7, 2024**<br>**TIME:  10:00 a.m.**<br>**DEPT:  09**<br>**JUDGE: Hon. Jeremy D. Peterson** |

I, Matthew C. Maclear, declare:

1.      I am an attorney licensed to practice law before all courts of the State of California and am counsel for plaintiff California Sportfishing Protection Alliance ("CSPA" or "Plaintiff"). I was admitted to practice law in November 2000 and am a partner with Aqua Terra Aeris Law Group. I have personal knowledge of the statements contained herein and would competently testify thereto if called as a witness.

2.      Aqua Terra Aeris Law Group became lead counsel for CSPA in this matter in Fall 2023, after the first consent decree was vacated.

3.      Attached hereto as **Exhibit 1** is a true and correct copy of the Proposed Consent Decree, which has been executed by both parties.

4.      Plaintiff will serve the Proposed Consent Decree and the Motion to Approve the Settlement on the California Attorney General immediately after filing the motion.

5.      Plaintiff has set the hearing on the motion more than 45 days from the filing and service on the Attorney General to provide the adequate time for Attorney General review.

6.      This lawsuit concerns two telecommunications cables in Lake Tahoe (the "Cables"). The Cables are mostly submerged in shallow waters from Baldwin Beach to Rubicon Point, including one in Lake Tahoe's Emerald Bay. One cable lies in the Emerald Bay area of Lake Tahoe and is approximately 2,000 feet in length. The second cable is approximately seven miles in length and is located in shallow waters along the west shore of the Lake. *See* Exhibit 2, Map B. The end of the cable in Emerald Bay is severed completely. Its open end is submerged below the surface, exposing the lead sheathing directly to the water. The seven-mile cable terminates into the lake bottom. However, along its length, it is worn and abraded and in places the tar impregnated jute materials have been broken, exposing the lead sheathing to the open water.

7.      Based on documents received from the State Lands Commission through the California Public Records Act, I am informed and believe that Defendant discontinued use of the Cables while maintaining its rights of easement.

DECLARATION OF MATTHEW C. MACLEAR IN SUPPORT OF MOTION TO APPROVE SETTLEMENT AND FOR ENTRY OF CONSENT JUDGMENT

8.      At the end of 2023, my firm, on behalf of CSPA, contracted with divers to survey and inspect the Cables. I reviewed the video of the survey and observed numerous locations where the Cables were damaged, exposing the lead sheathing that was originally designed to protect the copper strands from contact with water.

9.      In early 2024, Plaintiff's consultants conducted comprehensive sampling of biofilm on the Cables, sediment near the Cables, water samples from around the Cables, and the Cables themselves.

10.      The sampling results showed elevated levels of lead in water very close to the Cable, sediment near the Cables, and especially in biofilm on the Cables, as compared to reference sites.

11.      The Parties engaged in discovery from August 2023 through June 2024. During this period, Plaintiff submitted initial disclosures and responded to Defendant's interrogatories, requests for admission, and requests for production. Plaintiff also served on Defendant interrogatories, requests for production, and requests for admission.

12.      Attached hereto as **Exhibit 2** is a true and correct copy of Plaintiff's First Amended Responses to Defendant's First Set of Interrogatories.

13.      During discovery, Defendant admitted that it owns the Cables. Attached hereto as **Exhibit 3** is a true and correct copy of Defendant Pacific Bell Telephone Company's Amended Responses to Plaintiff's First Set of Requests for Admission.

14.      Moreover, both Parties propounded discovery requests on third parties. Defendant sought and received tens of thousands of documents from various third parties, including Marine Taxonomic Services, Environmental Law Foundation, and others. Plaintiff served document subpoenas to the U.S. Environmental Protection Agency and state agencies.

15.      The Parties restarted settlement negotiations, and such negotiations resulted in the Proposed Consent Decree attached hereto as **Exhibit 1**.

16.      For the purposes of settlement, the Parties agree that Defendant will not pay a civil penalty pursuant to Proposition 65.

DECLARATION OF MATTHEW C. MACLEAR IN SUPPORT OF MOTION TO APPROVE SETTLEMENT AND FOR ENTRY OF CONSENT JUDGMENT

17.     Plaintiff believes settling for no civil penalties is reasonable given the substantial expense of removing the Cables, estimated to be $1.5 million or more.

18.     Defendant did not act unlawfully when it laid the Cables in Lake Tahoe, and it is Plaintiff's understanding that Defendant was authorized to leave the Cables in place when it stopped using them.

19.     Throughout this action, Plaintiff has been represented by counsel with decades of experience litigating under Proposition 65 and federal environmental laws, such as the Resource Conservation and Recovery Act (RCRA).

I declare, under penalty of perjury under the laws of the State of California, that the foregoing is true and correct. This declaration was executed on September 18, 2024 in Oakland, California.

*/s/ Matthew C. Maclear*
Matthew C. Maclear
Attorney for Plaintiff
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

DECLARATION OF MATTHEW C. MACLEAR IN SUPPORT OF MOTION TO APPROVE SETTLEMENT AND FOR ENTRY OF CONSENT JUDGMENT

# EXHIBIT 1

1  MATTHEW MACLEAR (State Bar No. 209228)
   Email: mcm@atalawgroup.com
2  JASON FLANDERS (State Bar No. 238007)
   Email: jrf@atalawgroup.com
3  ERICA A. MAHARG (State Bar No. 279396)
   Email: eam@atalawgroup.com
4  J. THOMAS BRETT (State Bar No. 315820)
   Email: jtb@atalawgroup.com
5  AQUA TERRA AERIS LAW GROUP
   4030 Martin Luther King Jr Way
6  Oakland, CA 94609
   Telephone: (415) 568-5200
7

8

9  [Additional counsel on p. 2]

10 Attorneys for Plaintiff
   CALIFORNIA SPORTFISHING
11 PROTECTION ALLIANCE

12
                    **UNITED STATES DISTRICT COURT**
13
                    **EASTERN DISTRICT OF CALIFORNIA**
14

15 CALIFORNIA SPORTFISHING              Case No.: 2:21-cv-00073-MCE-JDP
   PROTECTION ALLIANCE, a non-profit
16 corporation,                        **[PROPOSED] CONSENT DECREE**

17                Plaintiff,           **(Federal Resource Conservation and
                                       Recovery Act, 42 U.S.C. § 6972(a)(1)(B)
18      vs.                            and California Safe Drinking Water and
                                       Toxic Enforcement Act, Cal. Health &
19                                     Safety Code § 25249.5)**
   PACIFIC BELL TELEPHONE
20 COMPANY,
                Defendant.
21

22

23

24

25

26

27

28

ANDREW L. PACKARD (State Bar No. 168690)
Email: andrew@packardlawoffices.com
LAW OFFICES OF ANDREW L. PACKARD
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062

WILLIAM VERICK (State Bar No. 140972)
Email: wverick@igc.org
KLAMATH ENVIRONMENTAL LAW CENTER
1125 16th Street, Suite 204
Arcata, CA 95521
Tel: (707) 630-5061; Fax: (707) 630-5064

J. KIRK BOYD (State Bar No. 122759)
Email: jkb@drjkb.com
LAW OFFICE OF JOHN KIRK BOYD
548 Market St., Suite 1300
San Francisco, CA 94104-5401
Tel: (415) 440-2500

BRIAN ACREE (State Bar No. 202505)
Email: brian@brianacree.com
LAW OFFICES OF BRIAN ACREE
331 J Street, Suite 200
Sacramento, CA 95814
Tel: (916) 505-6861

WILLIAM CARLON (State Bar No. 305739)
Email: william@carlonlaw.com
LAW OFFICE OF WILLIAM CARLON
437 Post Street
Napa, CA 94559
Tel: (530) 514-4115

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

2

1       **WHEREAS**, Plaintiff California Sportfishing Protection Alliance ("Plaintiff") filed the

2  above-captioned action (the "Action") against Defendant Pacific Bell Telephone Company

3  ("Defendant"), alleging violations of the federal Resource Conservation and Recovery Act ("RCRA")

4  42 U.S.C. 6901 *et seq.*, and the Safe Drinking Water and Toxic Enforcement Act of 1986

5  ("Proposition 65"), Cal. Health & Safety Code section 25249.5, *et seq.*;

6       **WHEREAS**, Plaintiff contends it is a non-profit public benefit corporation dedicated to the

7  preservation, protection, and defense of the environment, wildlife, and natural resources of

8  California's waters;

9       **WHEREAS**, Plaintiff contends that Defendant obtained licenses, easements or other

10  approvals from the California State Lands Commission for the purpose of installing and operating

11  submarine telecommunications cables along the bottom of the western side of Lake Tahoe (the

12  "Easements");

13       **WHEREAS**, two telecommunications cables have been installed in the Lake waters pursuant

14  to the Easements that, when taken together, are approximately 8 miles long ("the Cables") (A map

15  identifying the approximate current locations of the Cables in the Lake is attached as **Exhibit A**);

16       **WHEREAS**, Plaintiff alleges the Cables violate RCRA and Proposition 65.

17       **WHEREAS,** the State of California has listed Lake Tahoe as a source of drinking water within

18  the meaning of Proposition 65;

19       **WHEREAS**, Plaintiff provided Defendant with a written Notice of Violation of RCRA and

20  Proposition 65 ("Notice Letter"), and Plaintiff further contends that the Notice Letter was provided

21  by certified mail return receipt requested to Defendant's Chief Executive Officer and agent for service

22  of process; the Administrator of the United States Environmental Protection Agency ("EPA"); the

23  Regional Administrator of EPA Region IX; the California Attorney General; the Acting Director of

24  the California Department of Resources, Recycling and Recovery; and the District Attorneys for the

25  California counties of Placer and El Dorado, all in accordance with 40 C.F.R. section 254.2 and Cal.

26  Health & Safety Code section 25249.7 (A true copy of the Notice Letter is attached as **Exhibit A** to

27  ECF No. 1);

28       **WHEREAS**, Defendant disputes Plaintiff's allegations set forth in the Notice Letter and in

[PROPOSED] CONSENT DECREE

1  Plaintiff's original and amended Complaints and contends Plaintiff's claims lack merit;

2    **WHEREAS**, Defendant has obtained permits and other regulatory approvals ("Regulatory

3  Approvals") needed under applicable law to remove the Cables, which are identified in ECF No. 33;

4    **WHEREAS**, in an effort to reduce the cost and expense associated with litigation, the Parties

5  wish to resolve this matter pursuant to the terms of this Consent Decree (the "Final Consent Decree"),

6  which entails the removal of the Cables pursuant to the terms of the Final Consent Decree;

7    **WHEREAS**, the Parties agree that Defendant, in entering into this Final Consent Decree,

8  makes no admission of liability or of any issue of law or fact whatsoever regarding the claims made

9  by Plaintiff in the Action or the Notice Letter;

10    **WHEREAS**, for the purposes of this Final Consent Decree, the Parties agree that: (i) the Court

11  has personal jurisdiction over the Parties and subject matter jurisdiction under 28 U.S.C. sections

12  1331 and 1367, and RCRA (42 U.S.C.§ 6972(a)(1)(B)); (ii) venue is proper in this Court under 28

13  U.S.C. section 1391(b) and RCRA (42 U.S.C. § 6972(a)), because a substantial part of the events or

14  omissions giving rise to Plaintiff's claims occurred in this District.  Intra-district venue is proper in

15  Sacramento, California, because the sources of the alleged violations are located in El Dorado and

16  Placer Counties, and Plaintiff contends it has standing under Article III of the U.S. Constitution to

17  bring this Action;

18    **WHEREAS**, the Parties agree that the Court should retain jurisdiction over this matter for

19  purposes of interpreting, modifying, or enforcing the terms of this Final Consent Decree for the life

20  of the Final Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion

21  to enforce this Final Consent Decree;

22    **WHEREAS**, promptly after the mutual execution of this Final Consent Decree (the

23  "Execution Date"), Plaintiff shall file a motion to approve entry of this Final Consent Decree, and

24  shall serve a copy of the motion on the California Attorney General for the 45-day statutory review

25  period specified in Proposition 65 (Health & Safety Code § 25249.7(f)), and California Code of

26  Regulations, title 11, section 3003;

27    **WHEREAS,** the Parties agree to work together to secure prompt judicial approval of the Final

28  Consent Decree, regardless of any objections from any interested party;

1    **WHEREAS**, consistent with the Regulatory Approvals, the Parties' shared goal is to work in

2    a cooperative fashion to effectuate the removal of the Cables as soon as practicable, and therefore

3    have mutually set a target period to complete removal by November 30, 2024 or the next date in 2025

4    that is available before May 26, 2025 (Memorial Day), based on weather conditions and consistency

5    with the permitting process ("Target Removal Period");

6    **WHEREAS**, in the event that the Court for any reason denies the motion to approve the

7    Decree in the form submitted with the motion to approve, this Decree shall become null and void;

8    and

9    **WHEREAS**, the date this Final Consent Decree is entered by the Court shall be the "Court

10    Entry Date."

11    **NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE PARTIES,**

12    **AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

13    1.   **Defendant Shall Promptly and Diligently Seek To Secure Any Additional**

14    **Authorizations Needed To Remove the Cables**. Starting no later than five (5) business days after

15    the Execution Date, Defendant shall use diligent and commercially reasonable efforts to promptly

16    pursue any permits or other governmental authorizations beyond the existing Regulatory Approvals

17    necessary for lawful removal and off-site transport for disposal or recycling of the Cables (the

18    "Authorizations"). Upon receiving all the Authorizations, Defendant shall notify Plaintiff in writing

19    within five (5) business days.

20    2.   **Removal of the Cables**. Consistent with the scope of work set forth in the existing

21    Regulatory Approvals and after the Court Entry Date, Defendant shall remove the Cables from the

22    waters of Lake Tahoe and transport them for lawful off-site disposal or to a cable recycler promptly

23    after receipt of all Authorizations, subject to compliance with all Authorizations and applicable

24    laws, rules and regulations. Defendant has agreed to use diligent and commercially reasonable

25    efforts to remove the Cables by the Target Removal Period. Defendant shall notify Plaintiff in

26    writing within five (5) business days of having completed removal of the Cables from Lake Tahoe.

27    3.   **Notice of Inability To Meet Target Removal Period**. If Defendant cannot complete

28    removal and disposal/recycling of the Cables by the end of the Target Removal Period, in

1    accordance with Paragraph 2, Defendant shall notify Plaintiff in writing within five (5) business

2    days before the end of the Target Removal Period.  Defendant agrees to provide Plaintiff with an

3    update on the status of the Authorizations, the efforts Defendant has made to obtain required

4    Authorizations and to complete removal by the end of the Target Removal Period, and Defendant's

5    plan and contemplated timeline to remove the Cables.

6        4.    **Dispute Resolution**.  If a dispute under this Final Consent Decree arises, or either

7    Party believes in good faith that a breach of this Final Consent Decree has occurred, the Parties

8    shall meet and confer within fourteen (14) days of receiving written notification from the other

9    Party of a request to confer about the matter.  If either Party fails to meet and confer in good faith,

10   or the meet-and-confer process is unsuccessful, and after seven (7) days have elapsed from the date

11   the meet-and-confer occurred or should have occurred, then either Party shall be entitled to all

12   rights and remedies under the law, including filing a motion with the Court.  Notwithstanding any

13   other provision of this Final Consent Decree, the Court shall retain jurisdiction over the Action for

14   the limited purposes of enforcement of the terms of this Final Consent Decree or for adjusting upon

15   a showing of good cause any deadlines or time limits set forth in this Final Consent Decree.

16       5.    **Plaintiff's Release and Waiver**.  Upon the Court Entry Date of this Final Consent

17   Decree, Plaintiff, on its own behalf and on behalf of its members, subsidiaries, successors, assigns,

18   directors, officers, agents, attorneys, representatives, and employees, releases and forever

19   discharges Defendant and its officers, directors, employees, shareholders, parents, subsidiaries, and

20   affiliates, and each of their predecessors, successors and assigns, and each of their agents, attorneys,

21   consultants, and other representatives (each a "Released Defendant Party") from any and all claims

22   or causes of action (i) arising from or pertaining to claims asserted in the Action or the Notice

23   Letter, including, without limitation, all claims for injunctive relief, damages, losses, penalties,

24   fines, sanctions, mitigation, or any other sum incurred or claimed or which could have been claimed

25   under RCRA or Proposition 65, for the alleged failure of Defendant to comply with RCRA and/or

26   Proposition 65, up to the Court Entry Date, except for claims for payment of Plaintiff's legal fees

27   and costs in this Action; and (ii) any other claims (a) relating to the Cables or (b) that could have

28   been brought against Defendant based on the facts alleged in the Second Amended Complaint or

1  otherwise known to Plaintiff.

2       Plaintiff, on behalf of the public interest, hereby waives, releases, and forever discharges all

3  Proposition 65 claims that are the subject of the Notice Letter.

4       6.   **Defendant's Release and Waiver**.  Defendant, on its own behalf and on behalf of any

5  Released Defendant Party under its control, releases Plaintiff (and its officers, directors, employees,

6  members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its

7  agents, attorneys, and other representative) from, and waives all claims which arise from or pertain

8  to the Action, including all claims for fees (including fees of attorneys, experts, and others), costs,

9  expenses, or any other similar sums incurred or claimed or which could have been claimed for

10  matters associated with or related to the Action.

11       7.   T**he Parties' Waiver of California Civil Code Section 1542**.  Each Party

12  acknowledges that it is familiar with California Civil Code section 1542, which provides as follows:

13

14  > A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor or released party.

15

16

17       Each Party waives and relinquishes any right or benefit it has or may have under California

18  Civil Code section 1542 or any similar provision under statutory or non-statutory law.  The Parties

19  acknowledge that each may subsequently discover facts in addition to, or different from, those that it

20  believes to be true with respect to the claims released herein.  The Parties agree that this Decree and

21  the releases contained herein shall be and remain effective in all respects notwithstanding the

22  discovery of such additional or different facts.

23       8.   **Plaintiff's Fees & Costs**.  The amount of any award of legal fees and costs to Plaintiff

24  in this Action shall be determined by the Court.  Plaintiff shall file any motion seeking any legal

25  fees and costs by October 31, 2024, and shall notice any such motion for a hearing date that is 45

26  days after the filing date.

27       9.   **No Admission of Liability**.  The Parties enter into this Final Consent Decree for the

28  purpose of avoiding prolonged and costly litigation of the claims in the Action.  Nothing in this

1  Final Consent Decree shall be construed as, and Defendant expressly does not intend to imply, an

2  admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this

3  Final Consent Decree constitute or be construed as an admission by Defendant of any fact, finding,

4  conclusion, issue of law, or violation of law.  However, this paragraph shall not diminish or

5  otherwise affect the obligation, responsibilities, and duties of the Parties under this Final Consent

6  Decree.

7      10.  **Execution**.  This Final Consent Decree may be executed in one or more counterparts

8  which, taken together, shall be deemed to constitute one and the same document.  An executed copy

9  of this Final Consent Decree shall be valid as an original.

10      11.  **Cooperation**.  Both Parties shall support entry of this Final Consent Decree and shall

11  waive any right to appeal it if entered.  If the Court approves and enters this Final Consent Decree,

12  but such Final Consent Decree is reversed and vacated by an appellate court, or if the Court does

13  not approve and enter this Final Consent Decree within ninety (90) days of the Parties having

14  submitted it to the Court for approval and entry, the Parties shall meet and confer as to whether to

15  modify the terms of this Final Consent Decree.  If the Parties do not jointly agree on a course of

16  action to take, the Action shall proceed on its normal course on the Court's calendar.

17      12.  **Choice of Law**.  The terms of this Final Consent Decree shall be interpreted pursuant

18  to the laws of California.

19      13.  **Authority**.  The undersigned are authorized to execute this Final Consent Decree on

20  behalf of their respective Parties and have read, understood and agreed to be bound by all of the

21  terms and conditions of this Final Consent Decree.

22      14.  **Integration and Non-Assignment**.  This Final Consent Decree contains all of the

23  terms and conditions agreed upon by the Parties relating to the matters covered by the Final Consent

24  Decree, and supersedes any and all prior and contemporaneous agreements, negotiations,

25  correspondence, understandings, and communications of the Parties, whether oral or written,

26  respecting the matters covered by this Final Consent Decree.  This Final Consent Decree is made

27  for the sole benefit of the Parties, and no other person or entity shall have any rights or remedies

28  under or by reason of this Final Consent Decree, unless otherwise expressly provided for therein.

15. **Notices**. Any notices or documents required or provided for by this Final Consent Decree or related thereto that are to be provided to Plaintiff shall be sent by electronic mail transmission to the email addresses listed below:

Chris Shutes, Executive Director, CSPA - E-mail: blancapaloma@msn.com

With copies sent to:

Matthew C. Maclear - E-mail: mcm@atalawgroup.com

Erica A. Maharg - E-mail: eam@atalawgroup.com

Any notices or documents required or provided for by this Final Consent Decree or related thereto that are to be provided to Defendant shall be sent by electronic mail transmission to the email addresses listed below:

Sarah Teachout (sarah.teachout@att.com)
Senior Vice President and Assistant General Counsel
AT&T Services, Inc.
208 S. Akard Street
Dallas, Texas 75202

With copies sent to:

Navi Dhillon (navidhillon@paulhastings.com)
Deborah Schmall (deborahschmall@paulhastings.com)
Paul Hastings LLP
101 California Street, 48th floor
San Francisco, CA 94111

Hariklia Karis (hariklia.karis@kirkland.com)
Mark Nomellini (mark.nomellini@kirkland.com)
Kirkland & Ellis LLP
333 West Wolf Point Plaza
Chicago, IL 60654

Each Party shall promptly notify the other of any change in the above listed contact information. Signatures of the Parties transmitted by facsimile or email shall be deemed binding.

16. **Mutually Drafted**. This Final Consent Decree shall be deemed to have been drafted equally by the Parties, and shall not be interpreted for or against any Party on the ground that any such Party drafted it.

17. **Amendments**. This Final Consent Decree may be amended or modified only by a

1  writing signed by the Parties or their authorized representatives with a courtesy copy to the

2  California Attorney General.

3       18. **Dismissal**.  Concurrent with the entry of this Final Consent Decree, the Parties agree

4  that this Action shall be deemed dismissed with prejudice by the Court.  Notwithstanding the

5  dismissal of this Action, the Parties agree that the Court retains jurisdiction to resolve any disputes

6  or enforce any terms of this Final Consent Decree.

7

8  Dated: September 5___, 2024          CALIFORNIA SPORTFISHING PROTECTION

9                                      ALLIANCE

10                                     By: _Chris Shutes_____

11                                          Signature

12                                     Chris Shutes, Executive Director

13

14  Dated: September 16, 2024           PACIFIC BELL TELEPHONE COMPANY

15

16                                     By: _____

17                                          Signature

18                                     Sarah Teachout, Senior Vice President and Assistant
                                       General Counsel

19

20  Good cause appearing,

21  **IT IS SO ORDERED AND THIS ACTION IS HEREBY DISMISSED WITH**

22  **PREJUDICE.**

23

24  Dated: _____, 2024

                                       By: _____
25                                          United States District Court
                                            Eastern District of California
26

27  Exhibits:
    A-Map of Cables
28

Docusign Envelope ID: AB846515-8091-4CAE-A079-7C3538F984C6

# EXHIBIT  A

Docusign Envelope ID: AB846515-8091-4CAE-A079-7C3538F984C6



APPROXIMATE LOCATION
OF CABLE A

JULY 2021                                     FIGURE 1

Docusign Envelope ID: AB846515-8091-4CAE-A079-7C3538F984C6



APPROXIMATE LOCATION
OF CABLE B

JULY 2021

FIGURE 2

# EXHIBIT 2

ANDREW L. PACKARD (State Bar No. 168690)
Email: andrew@packardlawoffices.com
LAW OFFICES OF ANDREW L. PACKARD
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062

[Additional counsel on p. 2]

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, | Case No: 2:21-cv-00073-JDP |
| Plaintiff, | |
| v. | **PLAINTIFF'S FIRST AMENDED RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES** |
| PACIFIC BELL TELEPHONE COMPANY | |
| Defendant. | |

PLAINTIFF'S FIRST AMENDED RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

MATTHEW MACLEAR (State Bar No. 209228)
Email: mcm@atalawgroup.com
JASON FLANDERS (State Bar No. 238007)
Email: jrf@atalawgroup.com
ERICA A. MAHARG (State Bar No. 279396)
Email: eam@atalawgroup.com
J. THOMAS BRETT (State Bar No. 315820)
Email: jtb@atalawgroup.com
AQUA TERRA AERIS LAW GROUP
4030 Martin Luther King Jr Way
Oakland, CA 94609
Tel: (415) 568-5200

WILLIAM VERICK (State Bar No. 140972)
Email: wverick@igc.org
KLAMATH ENVIRONMENTAL LAW CENTER
1125 16th Street, Suite 204
Arcata, CA  95521
Tel: (707) 630-5061; Fax: (707) 630-5064

J. KIRK BOYD (State Bar No. 122759)
Email: jkb@drjkb.com
LAW OFFICE OF JOHN KIRK BOYD
548 Market St., Suite 1300
San Francisco, CA 94104-5401
Tel: (415) 440-2500

BRIAN ACREE (State Bar No. 202505)
Email: brian@brianacree.com
LAW OFFICES OF BRIAN ACREE
331 J Street, Suite 200
Sacramento, CA 95814
Tel: (916) 505-6861

WILLIAM CARLON (State Bar No. 305739)
Email: william@carlonlaw.com
LAW OFFICE OF WILLIAM CARLON
437 Post Street
Napa, CA 94559
Tel: (530) 514-4115

PLAINTIFF'S FIRST AMENDED RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

PROPOUNDING PARTY:          DEFENDANT PACIFIC BELL TELEPHONE COMPANY

RESPONDING PARTY:           PLAINTIFF CALIFORNIA SPORTFISHING PROTECTION

                            ALLIANCE

SET NUMBER:                 ONE

## PRELIMINARY STATEMENT

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff California Sportfishing Protection Alliance ("CSPA" or "Plaintiff") makes the following amended responses to the First Set of Interrogatories ("Interrogatories"), Interrogatory Numbers 1, 2, 3, and 12, propounded by Defendant Pacific Bell Telephone Company ("Defendant"). CSPA's responses to all other Interrogatories included in Plaintiff's to Defendant's First Set of Interrogatories to Plaintiff, served September 20, 2023, remain unchanged.

CSPA has not yet completed its investigation, discovery, or trial preparation for this matter. These responses are based only upon such information and documents which are presently available and specifically known to CSPA. It is anticipated that further discovery, independent investigation, and analysis will reveal additional documents or facts, add meaning to the known facts or documents, as well as establish entirely new factual conclusions and legal contentions, all of which might lead to substantial additions, variations and changes to the responses set forth herein. CSPA reserves the right to produce evidence of any subsequently discovered documents or facts which CSPA may later recall, locate, or discover. Accordingly, CSPA reserves the right to change these responses as additional facts are ascertained, analyses are made, legal research is completed, documents are discovered, and contentions are made. These responses should in no way prejudice CSPA in relation to further discovery, research, or analysis.

**INTERROGATORY NO. 1:**

Describe in detail all testing conducted by YOU concerning the CABLES.

**RESPONSE TO INTERROGATORY NO. 1:**

Plaintiff objects to the extent that the request seeks information protected by an attorney client privilege or constitutes attorney work product. Plaintiff further objects that the request is vague and ambiguous in its use of the undefined word "testing," as the term is undefined and unclear. Plaintiff

1  further objects that the subject of this request or interrogatory is properly the subject of expert

2  testimony, calls for premature disclosure of expert opinions, and responses will be provided to

3  properly promulgated expert discovery. Without waiving these objections and subject to them,

4  Plaintiff responds as follows:

5          Prior to this action being filed, attorneys for Plaintiff obtained a piece of cable which attorneys

6  for Plaintiff are informed and believe was removed from the disconnected end of Defendant's cable

7  in Lake Tahoe some years before. The water that was used for testing the discharge of lead was taken

8  directly from Lake Tahoe. A piece of the Cable approximately 40 centimeters in length was

9  submerged in a plastic container of Lake Tahoe water. A sample was taken of the water after one day.

10  A second sample of the water was taken after seven days. These samples, as well as a sample blank

11  of the Lake Tahoe water prior to the placement of the Cable, were provided to a certified lab for

12  analysis of lead content. The analysis of sample blank showed no detection of lead in the water. The

13  analysis of the sample taken after the cable had been submerged in the Lake Tahoe water for one day

14  showed a concentration of 650 micrograms of lead per liter of water, and analysis of the sample after

15  one week showed that enough lead had continued to be dissolved from the Cable to raise the

16  concentration of lead in the water to 1,500 micrograms per liter. A copy of the laboratory report of

17  this concentration has been or will be provided as part of the document production requested by

18  Defendant. A second test was performed on the length of Cable.  The cut ends of the length of Cable

19  were immersed in melted paraffin which was allowed to harden and seal the Cable ends. The length

20  of Cable was placed in a plastic tub, immersed in Walnut Creek tap water for an undetermined length

21  of time. A sample was taken of the water in which the length of Cable was immersed. This water

22  sample was sent to the same laboratory as performed the first water sample taken of water in which

23  the length of Cable was immersed (described above). Analysis of the water sample taken in this

24  second test showed that the water contained a concentration of 29 micrograms of lead per liter of

25  water.  The protocol the laboratory used to analyze the above-described samples is described in the

26  laboratory reports, all of which will be produced.  In addition, a photograph of the paraffin end-sealed

27  length of cable, sitting in the plastic tub, will also be produced. The length of Cable and plastic

28

1  container used in this sample collection are in the custody of counsel for Plaintiff and can be arranged

2  so that Defendant can inspect them.

3  **INTERROGATORY NO. 2:**

4      IDENTIFY each of YOUR members who YOU contend has been injured due to the CABLES,

5  and for each member identified, describe the nature, extent, and alleged cause of the injury.

6  **RESPONSE TO INTERROGATORY NO. 2:**

7      Plaintiff objects to the extent that the request seeks information protected by an attorney client

8  privilege or constitutes attorney work product. Plaintiff further objects that the request is vague and

9  ambiguous in its use of the undefined phrase "has been injured," and Plaintiff interprets this phrase

10  to include all injuries recognized for the purposes of Article III standing and answers accordingly.

11  Plaintiff further objects to this Interrogatory as it is compound, seeking both the identities of certain

12  members and their alleged injuries. Without waiving these objections and subject to them, Plaintiff

13  responds as follows:

14      CSPA contends the following members have suffered injuries sufficient to demonstrate

15  Article III standing:

16      • Richard Izmirian

17      • Alan Wilhelmy

18      • Harry Petrakis

19      • William Uyeki

20      • Chris Shutes

21      Richard Izmirian is currently a member of CSPA and has been since 1985. Over the years, he

22  has made numerous monetary donations to CSPA. He is currently a member of CSPA's Board of

23  Directors and has served in that capacity for decades. Mr. Izmirian's family vacationed at Lake Tahoe

24  at least every other summer while he was growing up.  He and his family swam, fished, and played

25  in Lake Tahoe, and currently he has family members that have a residence at Lake Tahoe. As an adult,

26  Mr. Izmirian has fished extensively in the Truckee River and Pyramid Lake downstream from Lake

27  Tahoe. He has organized and managed a number of fly-fishing events at Lake Tahoe that have brought

28  hundreds of people to the Lake.

PLAINTIFF'S FIRST AMENDED RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

1    Alan Wilhelmy is currently a member of CSPA and has been since approximately 2010. Mr.

2    Wilhelmy has donated to CSPA several times over the past ten to twelve years, and his last donation

3    to CSPA was in December 2023. Mr. Wilhelmy has vacationed at a friend's home on Lake Tahoe in

4    Tahoe City a number of times. When he visits, he often fly fishes the Truckee River and the Little

5    Truckee. He also swims and paddle boards in the Lake.

6    Harry Petrakis is a current member of CSPA and has been for approximately ten years. He

7    has made three to four donations to CSPA since becoming a member, totally less than $400. Mr.

8    Petrakis is also a member of the Santa Cruz Flyfishing Club and the Granite Bay Flycasters. I have

9    had a vacation home near Tahoe City since 2017.  For over fifty years, Mr. Petrakis and his wife have

10    enjoyed swimming, picnicking, hiking, fishing, and boating on and in Lake Tahoe. Lake Tahoe is of

11    particular interest to Mr. Petrakis because his wife Linda was raised on the south shore of Lake Tahoe

12    and has many fond memories of the Lake. Mr. Petrakis and his wife raised their children enjoying

13    activities on and in the Lake as well. Mr. Petrakis' family drinks water that comes from Lake Tahoe,

14    and/or wells near the lake. He also enjoys viewing the flora and fauna in and around the lake and our

15    activities in Lake Tahoe's relatively pristine environs. Lake Tahoe's pristine environment, pure water,

16    and flora and fauna instill a sense of wonder and renewal in Mr. Petrakis, as well as his family.  As a

17    result, Mr. Petrakis looks forward to going and make trips to the Lake frequently. Mr. Petrakis

18    believes that Lake Tahoe is one of the most pure bodies of water in the world and that it should remain

19    that way.

20    William Uyeki is currently a member and has been a member of CSPA since at least 2017.

21    He has donated to CSPA approximately two times over the last six years. He is a past president and

22    has served on the Board of Directors for Peninsula Fly Fishers, a recreational fly fishing nonprofit

23    club in Redwood City, CA. He is also a current member and donor for the following additional

24    conservation organizations: California Trout, Trout Unlimited, Fly Fishers International, and The

25    Wild Salmon Center. He has performed volunteer work for the California Department of Fish and

26    Wildlife (CDFW) at Pescadero Creek on the San Mateo County coast, which consisted of assisting

27    with fish sampling surveys and conducting angler surveys on behalf of CDFW. Since 2009, Mr. Uyeki

28    has fly-fished near Sutcliffe, Nevada, at Pyramid Lake which is fed by the Truckee River, downstream

of Lake Tahoe. He has fished Pyramid Lake annually since 2018 (and sometimes 2-3 times a year) from personal watercraft and from ladders, so his hands are in constant contact with the Lake's water. Mr. Uyeki has also fished in the Truckee River periodically since the late 1990s, including wading in the Truckee River downstream from Lake Tahoe near Alpine Meadows (where Bear Creek flows into the Truckee) and further downstream near Boca and at Floriston. He expects to continue fishing both Pyramid Lake annually and the Truckee River frequently in future years.  He enjoys fishing those pristine waters, and it's extremely important to him that these waters are safe and do not contain toxins that would harm the micro-organisms and aquatic life upon which the fish populations are highly dependent. It's also important to Mr. Uyeki that these waters are safe for human beings.

Chris Shutes is the Executive Director of CSPA and has worked for the organization for eighteen years. As Executive Director of CSPA, he is extremely concerned about water quality and quantity issues across the State of California and has dedicated many years of his life to ensuring that his daughter and grandchildren can enjoy these natural resources as much as he has. Mr. Shutes is a lifelong California fisherman. He first fished in Lake Tahoe and one of its tributaries when he was about ten years old, when he camped with his father and sister at Meeks Bay. As a teenager, Mr. Shutes spent a week or more over several summers at summer homes of schoolmates at the north end of Lake Tahoe. He fished in Lake Tahoe itself, in one of its tributaries, and in the Truckee River downstream of Lake Tahoe. He also boated in the Truckee River. As a teenager, Mr Shutes also spent two summers with his mother and sister at the cabin of a family friend at Echo Summit on Highway 50. Going and coming to that cabin, he enjoyed breathtaking views of Lake Tahoe and the surrounding mountains. He also enjoyed the views travelling to South Lake Tahoe, over Luther Pass south of Lake Tahoe, and driving along the west shore of Lake Tahoe to Fallen Leaf Lake, Emerald Bay, and Tahoe City. As a young adult, Mr. Shutes hiked in Desolation Valley Wilderness Area near the southwest flank of Lake Tahoe. The hike out of Rockbound Valley over to Emerald Bay afforded Mr. Shutes one of the most magnificent visual experiences of his life, cresting the ridge to see Emerald Bay and Lake Tahoe below. As an adult, Mr. Shutes returned to some of the areas around Lake Tahoe that he fished as a child, as much to see the Lake as for the fishing. He has also driven along the Lake and along the lower Truckee River at various times traveling to and from other locations.

1    As part of his work with CSPA, Mr. Shutes worked on the El Dorado National Forest's and

2    El Dorado County's planning for Off-Highway Vehicle use. Part of that work sought to limit erosion

3    along one of the tributaries to Lake Tahoe that he fished as a child. On behalf of CSPA, he has also

4    worked to assure adequate inflow to the upper Truckee River, Lake Tahoe's biggest tributary, from

5    Echo Creek. Echo Creek provides juvenile rearing habitat for trout that are the progeny of spawners

6    that move upstream from Lake Tahoe. He is also a client representative in litigation against the

7    Lahontan Regional Water Quality Control Board concerning excessive nutrient discharges into Lake

8    Tahoe from a development at the mouth of the Upper Truckee River, as well as the client

9    representative for CSPA for this litigation.

10   All of these members are aware of the lead-containing cables in Lake Tahoe they understand

11   are or were owned and operated by Defendant. They are concerned that the lead in the cables is

12   discharging into the Lake and that these pollutants will harm the health of the lake, the Truckee River,

13   and all downstream tributaries, which they use and enjoy. They are also concerned that the pollutants

14   will endanger the health of themselves, family, friends, and the others, as well as animals, that use the

15   Lake for drinking and/or swimming. They are concerned that the pollution will cause the Lake to

16   suffer harm to its reputation and potentially diminish the tourism economy upon which the region

17   relies. The members' knowledge of the discharges of lead from the cables prevents them from fully

18   enjoying their recreational, aesthetic, and other activities at Lake Tahoe.

19   **INTERROGATORY NO. 3:**

20   State all facts supporting any injuries YOU contend YOU have suffered due to the CABLES.

21   **RESPONSE TO INTERROGATORY NO. 3:**

22   Plaintiff objects to the extent that the request seeks information protected by an attorney client

23   privilege or constitutes attorney work product. Plaintiff further objects that the request is vague and

24   ambiguous in use of the phrase "injuries", also in its lack of time specification. Plaintiff interprets this

25   phrase to include all injuries recognized for the purposes of Article III standing and answers

26   accordingly. To the extent this Interrogatory seeks information regarding Plaintiff's members, other

27   than the members that Plaintiff has identified in Interrogatory No. 2, Plaintiff objects to the

28   Interrogatory as irrelevant and the information is protected under the First Amendment of the U.S.

Constitution. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1126 (9th Cir. 2010); *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, 2018 WL 2441518, at *8-11 (N.D. Cal. May 31, 2018). Plaintiff further objects to the extent the information requested is properly the subject of expert testimony and responses will be provided to properly promulgated expert discovery.

Without waiving these objections and subject to them, Plaintiff fully incorporates its response from Interrogatory No. 2 herein.

**INTERROGATORY NO. 12:**

Describe in detail all standards that YOU followed in testing lead-clad cables.

**RESPONSE TO INTERROGATORY NO. 12:**

Plaintiff objects to the extent the request seeks information protected by an attorney client privilege or constitutes attorney work product. Plaintiff further objects that the request is vague and ambiguous in use of the word "tests" and "standards.". Plaintiff further objects that the subject of this request or interrogatory is properly the subject of expert testimony and responses will be provided to properly promulgated expert discovery. Without waiving these objections and subject to them, Plaintiff incorporates its response to Interrogatory No. 1 herein. Plaintiff also points Defendant to Bates Nos. CSPA000002-13 and CSPA003079-3086.

Dated: February 5, 2024                              AQUA TERRA AERIS LAW GROUP


                                                     /s Erica A. Maharg
                                                     Erica A. Maharg
                                                     Attorneys for Plaintiff CALIFORNIA
                                                     SPORTFISHING PROTECTION ALLIANCE

PLAINTIFF'S FIRST AMENDED RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

## PROOF OF SERVICE

I am a citizen of the United States, employed in the County of Alameda. My business address is 4030 Martin Luther King Jr. Way, Oakland, California 94609. I am over the age of 18 years and not a party to the above-entitled action. Document(s) served:

- **PLAINTIFF'S FIRST AMENDED RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

On February 5, 2024, I served the foregoing document(s) on the parties in this action, located on the **attached service list,** by placing copies thereof in sealed envelopes addressed as shown below for service as designated below:

| | | |
|---|---|---|
| ( ) | By First Class Mail: | Deposited the sealed envelope with the United States Postal Service, with the postage fully paid. |
| ( ) | By Personal Service: | I personally delivered each such envelope to the office of the address on the date last written below. |
| ( ) | By Overnight Mail: | I caused each such envelope to be placed in a box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express service carrier to receive documents, in an envelope or package designated by the express service carrier with delivery fees paid or provided for. |
| (xx) | By Electronic Transmission: | Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the person(s) at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful. |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on February 5, 2024, in Hayward, California.

*Esmeralda Bustos*
Esmeralda Bustos

## SERVICE LIST

NAVI DHILLON
Email : navidhillon@paulhastings.com
PETER C. MEIER
Email : petermeier@paulhastings.com
LUCAS GRUNBAUM
Email : lucasgrunbaum@paulhastings.com
PAUL HASTINGS, LLP
101 California Street, 48th Floor
San Francisco, CA  94111

HARIKLIA KARIS
Email: hkaris@kirkland.com
ROBERT B. ELLIS
Email: rellis@kirkland.com
MARK J. NOMELLINI
Email: mnomellini@kirkland.com
KIRKLAND & ELLIS, LLP
300 North LaSalle
Chicago, IL  60654

JONATHAN D. KELLEY
Email: jon.kelley@kirkland.com
KIRKLAND & ELLIS, LLP
4550 Travis Street
Dallas, TX 75205

*Attorneys for Pacific Bell Telephone Company*

PLAINTIFF'S FIRST AMENDED RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

# EXHIBIT 3

NAVI DHILLON (SBN 279537)
navidhillon@paulhastings.com
PETER C. MEIER (SBN 179019)
petermeier@paulhastings.com
CHRISTOPHER J. CARR (SBN 184076)
chriscarr@paulhastings.com
LUCAS GRUNBAUM (SBN 314180)
lucasgrunbaum@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000
Fax: (415) 856-7100

HARIKLIA KARIS (*admitted pro hac vice*)
hkaris@kirkland.com
ROBERT B. ELLIS (*admitted pro hac vice*)
rellis@kirkland.com
MARK J. NOMELLINI (*admitted pro hac vice*)
mnomellini@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Fax: (312) 862-2200

Attorneys for Defendant
PACIFIC BELL TELEPHONE COMPANY

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC BELL TELEPHONE COMPANY,<br><br>Defendant. | CASE NO. 2:21-cv-00073-MCE-JDP<br><br>**DEFENDANT PACIFIC BELL TELEPHONE COMPANY'S AMENDED RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION** |

PROPOUNDING PARTY:   PLAINTIFF California Sportfishing Protection Alliance

RESPONDING PARTY:    DEFENDANT Pacific Bell Telephone Company

SET NUMBER:          ONE

Pursuant to the Federal Rules of Civil Procedure (FRCP) and the Local Rules for the United States District Court for the Eastern District of California (Local Rules), Defendant Pacific Bell Telephone Company (Defendant) hereby provides its amended responses to Plaintiff California Sportfishing Protection Alliance's (Plaintiff) first set of Requests for Admission (Request or Requests).

**PRELIMINARY STATEMENT**

Defendant is presently pursuing its investigation and analysis of the facts and law relating to this case and has not completed its discovery or preparation for trial.  Therefore, the amended responses set forth herein are given without prejudice to Defendant's right to produce evidence of any subsequently discovered facts, writings or interpretations thereof, or to modify, change or otherwise amend these responses.  The information set forth herein is true and correct to the best knowledge of Defendant as of this date, and is subject to correction for errors, or omissions.

These amended responses are based upon records and information presently available to Defendant.  Defendant undertakes no affirmative duty to supplement these responses based upon further discovery and investigation, other than as required by Rule 26(e).  References in a response to a preceding or subsequent response incorporate the information and objections stated in the referenced response.

**GENERAL OBJECTIONS**

Defendant makes the following General Objections and Objections to Definitions and Instructions and incorporates them into its response to each and every Request, whether or not specifically stated in an individual response.  An assertion of the same, similar, or additional objections in response to a specific Request does not waive any General Objections as to that or any Request.  Defendant's failure to object to a specific Request on a particular ground shall not be construed as a waiver of its right to object on any ground.

1.      Defendant objects to each Request, including any applicable Definition or Instruction, to the extent it purports to impose obligations that exceed the permissible scope of discovery as set forth in Rule 26(b).

DEFENDANT'S AMENDED RESPONSES TO
PLAINTIFF'S REQUESTS FOR ADMISSION (SET
ONE)

CASE NO. 2:21-cv-00073-MCE-JDP

2.      Defendant objects to each Request to the extent it seeks information and/or documents protected by any applicable privilege, including without limitation, the attorney-client privilege, the attorney work-product doctrine, the right to privacy, the confidentiality of statements made and conduct engaged in for settlement purposes, and any and all other rights and privileges which protect such information from disclosure.

3.      Defendant objects to each Request to the extent that it: (a) conflicts with any schedule entered by the Court; (b) conflicts with obligations that are imposed by the FRCP, the Local Rules, or any other applicable rules; (c) seeks information that is the subject of expert testimony; or (d) seeks information or responses that are dependent on depositions and documents that have not been taken or produced.

4.      Defendant objects to the definitions of "You," or "Your" as vague, ambiguous, overbroad, and unduly burdensome because it broadly includes "all past and present names of the corporation and/or limited liability company, all predecessors and successors, and to all of its employees, agents, officers, directors, and representatives, INCLUDING any PERSON who has served in any such capacity at any time, and/or anyone purporting to act on YOUR behalf, or at YOUR request with YOUR authorization."

5.      Defendant objects to each Request to the extent it calls for a legal conclusion.

6.      Defendant objects to each Request to the extent that it calls for supporting facts that are not reasonably ascertainable or available at this stage of the litigation.  Defendant objects to such Requests on the grounds that they are overbroad, unduly burdensome, or premature.

7.      Defendant objects to each Request to the extent that it seeks information protected by any constitutional, statutory, or common-law right of privacy, as to which right Defendant has a duty to protect.

8.      Defendant objects to each Request to the extent that it calls for any confidential, proprietary, and/or trade secret information.

- 3 -

1    **AMENDED RESPONSES TO REQUESTS FOR ADMISSIONS**

2    **REQUEST FOR ADMISSION NO. 19:**

3          Admit that YOU currently own the CABLES.

4    **AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

5          Defendant objects to this Request to the extent it seeks privileged information or

6    information protected by the work-product doctrine or any other applicable privilege or protection.

7    Defendant further objects to this Request because it improperly calls for a legal conclusion.

8          Subject to the above general and specific objections, Defendant responds as follows:

9    Admit.

10

11    DATED: May 27, 2024                    Respectfully submitted,

12

13                                           */s/ Hariklia Karis*
                                             Hariklia Karis
14                                           Attorney for Defendant
                                             PACIFIC BELL TELEPHONE COMPANY
15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                           - 4 -