NAVI DHILLON (SBN 279537)
navidhillon@paulhastings.com
PETER C. MEIER (SBN 179019)
petermeier@paulhastings.com
LUCAS GRUNBAUM (SBN 314180)
lucasgrunbaum@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000
Fax: (415) 856-7100

HARIKLIA KARIS (*admitted pro hac vice*)
hkaris@kirkland.com
ROBERT B. ELLIS (*admitted pro hac vice*)
rellis@kirkland.com
MARK J. NOMELLINI (*admitted pro hac vice*)
mnomellini@kirkland.com
KIRKLAND & ELLIS LLP
333 W. Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Fax: (312) 862-2200

JON DAVID KELLEY (*admitted pro hac vice*)
jon.kelley@kirkland.com
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205

Attorneys for Defendant
PACIFIC BELL TELEPHONE COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC BELL TELEPHONE COMPANY,<br><br>Defendant. | CASE NO. 2:21-cv-00073 -JDP<br><br>**DEFENDANT PACIFIC BELL TELEPHONE COMPANY'S STATEMENT IN SUPPORT OF ENTRY OF FINAL CONSENT DECREE**<br><br>Magistrate Judge: Hon. Jeremy D. Peterson<br><br>Complaint Filed:   January 14, 2021 |

This case involves two underwater telecommunications cables. Pacific Bell installed the cables in Lake Tahoe with approval from both the California State Lands Commission and the U.S. Army Corps of Engineers. Plaintiff filed suit against Pacific Bell in 2021, alleging violations of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), and California's Safe Drinking Water and Toxic Enforcement Act of 1986, commonly known as "Prop. 65," Health & Safety Code § 25249.5, *et seq*. *See* ECF Nos. 1, 12. Pacific Bell denies these allegations. As detailed in the attached reports, multiple experts have concluded that these cables pose no risk to human health or the environment.

In September 2021, Plaintiff moved the Court to approve a consent decree under which Pacific Bell agreed to remove the cables to avoid the distraction and expense of protracted litigation. ECF No. 16. The consent decree was amended in October 2021 (ECF No. 18-1), and the Court approved that amended consent decree in November 2021. ECF No. 22. In July 2023, after a series of Wall Street Journal articles made claims about the safety of lead-clad cables in Lake Tahoe and elsewhere, the consent decree was vacated to permit further investigation, analysis, and testing by environmental scientists to confirm that the cables were not impacting water and sediment quality. ECF No. 49.

Pacific Bell asked nine leading scientists and environmental experts to investigate claims that the lead-clad telecom cables in Lake Tahoe may raise a public health concern. These nine experts have completed their analyses and determined that the cables do not pose any risk to human health or the environment. Now that the claims regarding the cables have been investigated and disproven, Pacific Bell has entered into a proposed Final Consent Decree and is prepared to fulfill its original commitment to remove the cables.

Pacific Bell submits this Statement to provide the Court with the expert reports establishing the safety of the cables and to address unfounded assertions made in Plaintiff's Motion to Approve regarding the impact of the cables on human health and the environment.

**I.   LEADING SCIENTISTS AND ENVIRONMENTAL EXPERTS HAVE CONCLUDED THAT THE CABLES POSE NO RISK TO HUMAN HEALTH OR THE ENVIRONMENT.**

Pacific Bell was prepared to disclose in this litigation nine experts who have analyzed Plaintiff's claims regarding the cables and concluded that they do not pose any risk to human health or the environment. These experts' reports are attached to this Statement in Support, and their conclusions are summarized below:

1. Lead-clad cables are not a significant source of lead exposure to the public, nor are lead-clad cables likely to become such a source of lead exposure in the future. The studies and available data indicate that the potential environmental exposure from lead-clad communications cables, if any, is negligible compared to background levels, and thus the additional risk, if any, is well below that from other common sources of lead in the environment deemed "acceptable" by regulatory agencies such as the United States Food and Drug Administration (FDA) and United States Environmental Protection Agency (US EPA). Meier Decl., Ex. A (Report of Dr. David Eaton, Ph.D., Dean Emeritus of the University of Washington Graduate School, and Emeritus Professor of Environmental and Occupational Health Sciences, School of Public Health, at the University of Washington).

2. The cables do not pose a health risk to people. Exposure to Lake Tahoe water and sediment near the cables does not measurably increase blood-lead levels and would not impact human health. Meier Decl., Ex. B (Report of Dr. Rosalind Schoof, Ph.D., DABT, Fellow ATS, Ramboll US Consulting).

3. There is no ecological risk to animals or plants in Lake Tahoe from the cables. Meier Decl., Ex. C (Report of Dr. Paul Krause, Ph.D., Ramboll Americas Engineering Solutions).

4. The lead cladding in the cables is covered by steel and other strong materials that prevent contact of lead with the water in Lake Tahoe. In the few places where the lead cladding is exposed to water because the cable has been cut, a natural passivating (*i.e.*, protective) layer forms on

the surface of the cable that limits lead release. Meier Decl., Ex. D (Report of Dr. Lawrence Eiselstein, Ph.D., P.E., Exponent).

5.  Under the geochemical conditions in Lake Tahoe, lead that is exposed to water is naturally bound to the surface of the cables, and dissolved lead would be adsorbed onto the cables' surface, limiting lead mobility. Further, the steel armor and, therefore, the internal jute-bitumen layers were predominantly intact along the length of cables visually observed during field activities undertaken in 2021 by Haley & Aldrich, and in 2023 by Ramboll. Visual inspections of Cable A and Cable B revealed that a small portion of the cables had sustained damage and lacked the jute-bitumen layers and steel armor. Relative to the total area of the cables surveyed, minimal lead surface area of the cables is exposed and in direct contact with Lake water, limiting the interaction of Lake surface water with the lead surface and, therefore, the potential for releasing lead. Meier Decl., Ex. E (Report of Dr. Tiffany Thomas, Ph.D., Haley & Aldrich).

6.  Lead is released into Lake Tahoe from many human-caused and natural sources, resulting in background levels of lead unrelated to the cables. Meier Decl., Ex. F (Report of Dr. Andrew Nicholson, Ph.D., Integral Consulting).

7.  Any lead released from the cables would immediately reduce to non-detectable levels that remain below or consistent with normal background concentrations of lead in Lake Tahoe. Meier Decl., Ex. G (Report of Dr. Craig Jones, Ph.D., Integral Consulting).

8.  Water system test data show that the cables in Lake Tahoe have not impacted drinking water systems. Separate sampling of water from Lake Tahoe by the State of California at the intake of the water system closest to the cables confirms lead was not detectable. Meier Decl., Ex. H (Report of Alex Revchuk, D.Env., P.E., BCES, Exponent).

9.  Multiple other tests of water and sediment in Lake Tahoe demonstrate the cables are not adversely impacting water or sediment quality. Meier Decl., Ex. I (Report of Dr. Brian Drollette, Ph.D., Ramboll Americas Engineering Solutions). In 2021, the Haley & Aldrich firm conducted a field investigation of Lake Tahoe water quality. The Haley & Aldrich team collected water samples

within a few inches of the cables in Lake Tahoe, and from locations farther away. The Haley & Aldrich team concluded:

- The cables are not adversely impacting Lake Tahoe's water quality. (Haley & Aldrich Report (ECF No. 33-1, Ex. A)).
- Lead was not detected in the samples collected nearest to the cables.
- The highest concentration of total lead was found in a reference location 3.5 miles away from the cables, which was tested to determine background levels of lead in the Lake.

10.   In June 2023, the Ramboll consulting firm conducted a field investigation of Lake Tahoe water quality. The Ramboll team concluded:

- The cables are not adversely impacting Lake Tahoe's water quality. (Ramboll Water Study (ECF No. 57-1, Ex. A)).
- The concentration of lead near the cables nearly matched background levels of lead in Lake Tahoe.
- The highest concentration levels of lead detected near the cables was more than 200 times lower than the EPA's action level for lead in drinking water.

11.   In July 2023, Ramboll investigated the concentration of lead in Lake Tahoe's sediment. The Ramboll study concluded:

- The cables are not adversely impacting Lake Tahoe's sediment. (Ramboll Sediment Study (ECF 125-1, Ex. A)).
- All lead measurements were within or below background levels of lead in freshwater sediment.

**II.   THE PROPOSED SETTLEMENT IS FAIR AND REASONABLE.**

Pacific Bell respectfully requests that the Court approve the parties' proposed Final Consent Decree. The proposed Final Consent Decree is fair and reasonable, it will avoid additional unnecessary costs of litigation, and it allows Pacific Bell to fulfill its original commitment to remove the cables in Lake Tahoe:

- Pacific Bell agrees to remove the cables as soon as practicable following Court approval.
- The target is to complete removal by November 30, 2024 or in spring 2025 based on weather conditions, permitting, and the regulatory approval process.
- Pacific Bell will work with licensed professionals to remove the cables and will obtain all necessary permits and other regulatory approvals needed to remove the cables in an appropriate manner. The cables will be removed in accordance with those permits and approvals.
- The parties entered the proposed Final Consent Decree to avoid prolonged and costly litigation. The parties agree that nothing in the Final Consent Decree shall be construed as an admission as to any fact, finding, conclusion, or violation of law.
- The parties have reached no agreements regarding legal fees and costs, and any award of legal fees and costs shall be determined by the Court. Plaintiff's motion seeking its fees and costs is due October 31, 2024.

The Parties agree that no civil penalties should be paid under Prop. 65. This no-penalty resolution is appropriate given that: (1) testing and analysis by leading scientists and environmental experts demonstrates that the cables do not pose any risk to human health or to the environment; and (2) Pacific Bell has agreed to remove the cables.

## CONCLUSION

For the foregoing reasons, Pacific Bell respectfully asks that the Court enter the Final Consent Decree.

DATED: September 18, 2024

Respectfully submitted,

*/s/ Navi S. Dhillon*

NAVI S. DHILLON (SBN 279537)
navidhillon@paulhastings.com
DEBORAH SCHMALL (SBN 112052)
deborahschmall@paulhastings.com
LUCAS GRUNBAUM (SBN 314180)
lucasgrunbaum@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000
Fax: (415) 856-7100

HARIKLIA KARIS (*admitted pro hac vice*)
hkaris@kirkland.com
ROBERT B. ELLIS (*admitted pro hac vice*)
rellis@kirkland.com
MARK J. NOMELLINI (*admitted pro hac vice*)
mnomellini@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Fax: (312) 862-2200

Attorneys for Defendant
PACIFIC BELL TELEPHONE COMPANY