MATTHEW MACLEAR (State Bar No. 209228)
Email: mcm@atalawgroup.com
JASON FLANDERS (State Bar No. 238007)
Email: jrf@atalawgroup.com
ERICA A. MAHARG (State Bar No. 279396)
Email: eam@atalawgroup.com
J. THOMAS BRETT (State Bar No. 315820)
Email: jtb@atalawgroup.com
AQUA TERRA AERIS LAW GROUP
8 Rio Vista Ave.
Oakland, CA 94611
Tel: (415) 568-5200

[Additional counsel on p. 2]

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, <br><br> Plaintiff, <br><br> v. <br><br> PACIFIC BELL TELEPHONE COMPANY, <br><br> Defendant. | Case No.: 2:21-cv-00073-JDP <br><br> **MOTION FOR ATTORNEYS' FEES AND COSTS UNDER THE RESOURCE CONSERVATION AND RECOVERY ACT (42 U.S.C. § 6972(e)) AND CODE OF CIVIL PROCEDURE SECTION 1021.5** <br><br> Date: December 19, 2024 <br> Time: 9:00 am <br> Judge: Hon. Jeremy D. Peterson <br> Courtroom: 9, 13th Floor |

ANDREW L. PACKARD (State Bar No. 168690)
Email: andrew@packardlawoffices.com
LAW OFFICES OF ANDREW L. PACKARD
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062

WILLIAM VERICK (State Bar No. 140972)
Email: wverick@igc.org
KLAMATH ENVIRONMENTAL LAW CENTER
1125 16th Street, Suite 204
Arcata, CA 95521
Tel: (707) 630-5061; Fax: (707) 630-5064

J. KIRK BOYD (State Bar No. 122759)
Email: jkb@drjkb.com
LAW OFFICE OF JOHN KIRK BOYD
548 Market St., Suite 1300
San Francisco, CA 94104-5401
Tel: (415) 440-2500

BRIAN ACREE (State Bar No. 202505)
Email: brian@brianacree.com
LAW OFFICES OF BRIAN ACREE
331 J Street, Suite 200
Sacramento, CA 95814
Tel: (916) 505-6861

WILLIAM CARLON (State Bar No. 305739)
Email: william@carlonlaw.com
LAW OFFICE OF WILLIAM CARLON
437 Post Street
Napa, CA 94559
Tel: (530) 514-4115

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................... 1

II.   STATEMENT OF FACTS ..................................................................................... 2

    A.    THE CABLES AND DISCHARGES THEREFROM ............................................. 2

    B.    THE INSTANT LAWSUIT ................................................................................. 3

    C.    The First Consent Decree and the Vacatur Thereof ..................................... 3

    D.    Subsequent Litigation and the Second Consent Decree. ............................. 4

    E.    Time Spent Litigating this Action and the Proposed Fee and Cost Award ...... 4

III.  FEDERAL AND STATE LEGAL STANDARDS FOR FEE AWARD ............................ 10

    A.    FEDERAL STANDARDS ................................................................................. 10

    B.    STATE STANDARDS ..................................................................................... 12

    C.    Fee Multipliers ........................................................................................... 13

    D.    Eastern District Local Rules for Fee Awards ............................................... 13

IV.   ARGUMENT ....................................................................................................... 14

    A.    Federal and State Law Entitle Plaintiff to Fee and Cost Recovery .................. 14

    B.    Plaintiff's Proposed Fee and Cost Award is Reasonable. ............................... 15

        i.    Plaintiff's counsel's hours were reasonable. .......................................... 16

        ii.   Plaintiff achieved excellent results. ....................................................... 18

        iii.  The requested fee award is reasonable under the Eastern District's Rules. ............. 19

        iv.   Plaintiff's hourly rates are reasonable. .................................................. 19

        v.    Application of a fee multiplier is appropriate. ......... **Error! Bookmark not defined.**

    C.    Plaintiff's Requested Costs are Also Reasonable. ........................................ 24

V.    CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

**Federal Cases**

*Amazon.com, Inc. v. Personalweb Techs., LLC,*
  2021 U.S. Dist. LEXIS 39062 (N.D. Cal. 2021) ........................................................ 17

*Asberry v. City of Sacramento/Sanitation Dep't,*
  2004 U.S. Dist. LEXIS 29138 (E.D. Cal. Apr. 5, 2004)............................................. 23

*Ballen v. City of Redmond,*
  466 F.3d 736 (9th Cir. 2006) ..................................................................................... 11

*Banas v. Volcano Corp.,*
  47 F. Supp. 3d 957 (N.D. Cal. 2014) ................................................................... 12, 25

*Barbosa v. Cargill Meat Sols. Corp.,*
  297 F.R.D. 431 (E.D. Cal. 2013) ............................................................................... 20

*Barjon v. Dalton,*
  132 F.3d 496 (9th Cir. 1997) ..................................................................................... 12

*Blum v. Stenson,*
  465 U.S. 886 (1984).................................................................................... 11, 12, 19

*Bond v. Ferguson Enters.,*
  2011 U.S. Dist. LEXIS 70390 (E.D. Cal. 2011).......................................................... 20

*Bouman v. Block,*
  940 F.2d 1211 (9th Cir. 1991) ................................................................................... 23

*Cal. Sportfishing Prot. Alliance v. Chico Scrap Metal, Inc.,*
  2016 U.S. Dist. LEXIS 2511 (E.D. Cal. 2016)...................................................... 12, 25

*Camacho v. Bridgeport Fin., Inc.,*
  523 F.3d 973 (9th Cir. 2008) ..................................................................................... 17

*Chalmers v. City of Los Angeles,*
  796 F.2d 1205 (9th Cir. 1986) ................................................................................... 11

*City of Burlington v. Dague,*
  505 U.S. 557 (1992).................................................................................................. 12

*Community Ass'n for Restoration of the Env't v. Henry Bosma Dairy,*
  2001 U.S. Dist. LEXIS 3579 (E.D. Wash. 2001) ....................................................... 25

*Crommie v. Pub. Utils. Comm'n,*
  840 F. Supp. 719 (N.D. Cal. 1994) ............................................................................ 24

*Davis v. City and County of San Francisco*,
  976 F.2d 1536 (9th Cir. 1992) ................................................................................ 12

*DiPirro v. Bondo Corp.*,
  153 Cal.App.4th 150 (2007) ........................................................................... 12, 15

*Doe v. Cty. of Sacramento*,
  No. 2:21-cv-01438-MCE-CKD, 2024 U.S. Dist. LEXIS 83141 (E.D. Cal. 2024)...................... 20

*Ecological Rights Found. v. Hot Line Constr., Inc.*,
  No. 5:20-cv-01108-AB-kk, 2024 U.S. Dist. LEXIS 129282 (C.D. Cal. 2024)........... 17, 18, 19, 21

*Ecological Rights Foundation v. Pacific Gas and Electric*,
  713 F.3d 502 (9th Cir. 2013) ................................................................................... 6

*Farrar v. Hobby*,
  506 U.S. 103, 114 (1992)....................................................................................... 24

*Fleming v. Kemper Nat'l Servs.*,
  373 F. Supp. 2d 1000 (N.D. Cal. 2005) ..................................................................... 17

*Franco v. Ruiz Food Prods.*,
  2012 U.S. Dist. LEXIS 169057 (E.D. Cal. 2012) ........................................................ 20

*Garcia v. Gordon Trucking, Inc.*,
  2012 U.S. Dist. LEXIS 160052 (E.D. Cal. 2012) ........................................................ 20

*Gonzalez v. City of Maywood*,
  729 F.3d 1196 (9th Cir. 2013) ........................................................................... 11, 16

*Graham v DaimlerChrysler Corp.*,
  34 Cal.4th 553 (2004) ........................................................................................... 20

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)........................................................................................passim

*Idaho Conservation League v. Magar*,
  No. 3:12-cv-00337-CWD, 2015 U.S. Dist. LEXIS 124576 (D. Idaho Sep. 17, 2015)................. 24

*In re Immune Responses Secs. Litigation*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007)..................................................................... 25

*In re Nucorp Energy, Inc.*,
  764 F.2d 655 (9th Cir. 1985) ................................................................................. 11

*Ingram v. Oroudjian*,
  647 F.3d 925 (9th Cir. 2011) ................................................................................. 11

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975) ......................................................................... 12, 18, 19

MOTION FOR ATTORNEYS' FEES AND COSTS UNDER RCRA AND C.C.P. § 1021.5

*MacDonald v. Ford Motor Co.,*
   2016 U.S. Dist. LEXIS 70809,  (N.D. Cal. 2016) ........................................................ 17

*Mangold v. California Pub. Utils. Comm'n,*
   67 F.3d 1470  (9th Cir. 1995) ............................................................................... 13, 23

*Martinez v. Comm'r of Soc. Sec.,*
   No. 1:21-cv-00431-GSA, 2024 U.S. Dist. LEXIS 112705 (E.D. Cal. June 25, 2024) ................. 23

*Missouri v Jenkins,*
   491 U.S. 274 (1989) ............................................................................................. 20

*Moreno v. City of Sacramento,*
   534 F.3d 1106 (9th Cir. 2008) ........................................................................ 11, 18, 20

*Perdue v. Kenny A. ex rel. Winn,*
   559 U.S. 542 (2010) ........................................................................................ 11, 20

*Resurrection Bay Conservation All. v. City of Seward,*
   640 F.3d 1087 (9th Cir. 2011) ................................................................................ 10

*Richard S. v. Dep't of Developmental Servs.,*
   317 F.3d 1080 (9th Cir. 2003) ........................................................................... 11, 14

*Ridgeway v. Wal-Mart Stores Inc.,*
   269 F. Supp. 3d 975 (N.D. Cal. 2017) ........................................................................ 17

*Saint John's Organic Farm v. Gem Cty. Mosquito Abatement Dist.,*
   574 F.3d 1054 (9th Cir. 2009) ........................................................................... 10, 14

*Sierra Club v. EPA,*
   75 F. Supp. 3d 1125 (N.D. Cal. 2014) ........................................................................ 25

*Sierra Club v. U.S. Envt'l Prot. Agency,*
   625 F. Supp. 2d 863 (N.D. Cal. 2007) ........................................................................ 17

*Sorenson v. Mink,*
   239 F.3d 1140 (9th Cir. 2001) ................................................................................ 11

*Stetson v. Grissom,*
    821 F.3d 1157 (9th Cir. 2016) ........................................................................... 12, 18

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
   896 F.2d 403 (9th Cir. 1990) ................................................................................ 19

*Valdivia v Brown,*
   848 F. Supp. 2d 1141 (E.D. Cal. 2011) ........................................................................ 20

*Webb v. Cnty. Bd. of Educ.,*
   471 U.S. 234 (1985) ............................................................................................. 16

*Widrig v. Apfel*,
   140 F.3d 1207 (9th Cir. 1998) ............................................................ 12

**Federal Statutes**

28 U.S.C. § 1924 ................................................................................... 14

42 U.S.C. § 6972(e) ........................................................................ passim

42 U.S.C. § 7002(a)(1)(B) ................................................................ passim

**Federal Regulations**

40 C.F.R. § 131.12 .................................................................................. 1

**State Cases**

*Amaro v. Anaheim Mgmt., LLC*,
   69 Cal. App. 5th 521 (2021) .............................................................. 17

*Kennedy Comm'n v. City of Huntington Beach*,
   91 Cal.App.5th 436 (2023) ........................................................... 13, 24

*Kern River Pub. Access Comm. v. City of Bakersfield*,
   170 Cal.App.3d 1205 (1985) ........................................................ 13, 24

*Krumme v. Mercury Ins. Co.*,
   123 Cal. App. 4th 924 (2004) ........................................................... 23

*People ex rel. Lungren v. Superior Court*,
   14 Cal. 4th 294 (1996) ................................................................... 6, 18

*San Bernardino Valley Audubon Soc'y v. County of San Bernardino*,
   155 Cal.App.3d 738 (1984) .......................................................... 13, 24

*Yes in My Back Yard v. City of Culver City*,
   96 Cal.App.5th 1103 (2023) .............................................................. 13

**State Statutes**

Cal. Civ. Proc. Code § 1033.5 ................................................................ 1

Cal. Civ. Proc. Code§ 1021.5 ............................................ 1, 12, 13, 15

Cal. Health & Safety Code § 25249.5 *et seq.* ................................. passim

Cal. Health and Safety Code, § 25249.5 .............................................. 15

**Eastern District of California Local Rules**

E.D. Cal. L.R. 292 .............................................................................. 14

MOTION FOR ATTORNEYS' FEES AND COSTS UNDER RCRA AND C.C.P. § 1021.5

E.D. Cal. L.R. 292(f) .................................................................................................... 25

E.D. Cal. L.R. 292(f)(11) ............................................................................................. 25

E.D. Cal. L.R. 293 ................................................................................................. 13, 16

E.D. Cal. L.R. 293(b) ............................................................................................ 14, 19

E.D. Cal. L.R. 293(c) .................................................................................................. 14

E.D. Cal. L.R. 293(c)(1) ............................................................................................. 16

E.D. Cal. L.R. 293(f) .................................................................................................. 19

**State Regulations**

Cal. Code Regs., tit. 11, § 3201 .......................................................................... 13, 15

Cal. Code Regs., tit. 11, § 3201(b)(3) ........................................................................ 15

Cal. Code Regs., tit. 11, § 3201(c) ............................................................................. 15

**Other Authorities**

California Attorney Fee Awards (Cont. Ed. Bar. 2024) § 8.1 ...................................... 15

MOTION FOR ATTORNEYS' FEES AND COSTS UNDER RCRA AND C.C.P. § 1021.5

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiff California Sportfishing Protection Alliance ("Plaintiff" or "CSPA") filed suit in January 2021 seeking removal of two abandoned telecommunication cables in Lake Tahoe (the "Cables"). ECF. No. 1 ("Complaint") ¶ 2. Defendant Pacific Bell Telephone Company ("Defendant") abandoned the Cables in place decades ago. Maclear Decl. ¶ 32. The Cables are approximately six miles long and contain over 107,000 pounds of lead. *Id.* ¶ 27. Lake Tahoe is a source of drinking water, an Outstanding National Resource Water, and an iconic national treasure. *Id.* ¶ 33; 40 C.F.R. § 131.12.

Plaintiff alleges that lead (Pb) is, has been, and will continue to discharge into Lake Tahoe as the Cables degrade. Complaint ¶ 2. As a result, Plaintiff alleges that the Cables are a solid waste posing an imminent and substantial endangerment to human health or the environment in violation of the Resource Conservation and Recovery Act ("RCRA") (42 U.S.C. § 7002(a)(1)(B)). The threatened and ongoing discharge of lead from the Cables into Lake Tahoe violates the California Safe Drinking Water and Toxic Enforcement Act of 1986 (Cal. Health & Safety Code § 25249.5 *et seq.*) ("Proposition 65"). Plaintiff thus sought removal of the Cables, an award of penalties under Proposition 65, and recovery of attorneys' fees and costs (42 U.S.C. § 6972(e), Cal. Code Civ. Proc. §§ 1021.5 and 1033.5). Defendant denies all claims. ECF. No. 8 at 2.

After months of negotiations, in September 2021, the parties reached a settlement agreement that included removal of the Cables. ECF. No. 16-1 at 1. This Court approved that first Consent Decree ("First Consent Decree"). ECF. No. 22 at 1. In the First Consent Decree, Defendant agreed to pursue any necessary approvals required for the removal of the Cables and to remove them. *Id.* at 5-6. And, pursuant to that First Consent Decree, Defendant obtained permits and approvals to remove the Cables by June 2023. ECF. No. 85 ("Scheduling Motion") at 6.

The First Consent Decree allowed for Defendant to move to vacate the agreement if it was unable to remove the Cables within a specified time period and the parties could not agree on an amended schedule. ECF. No. 49 at 3. Despite having obtained all the required permit approvals to remove the Cables, Defendant moved to vacate the First Consent Decree and reinitiate litigation

1   after the Wall Street Journal published articles concerning the Lake Tahoe Cables and other similar

2   cables around the country. ECF. No. 57 at 2-3 ("AT&T exercised its right to terminate the Consent

3   Decree to allow development of a further record regarding the safety of the Cables in cooperation

4   with the U.S. Environmental Protection Agency and other regulators.").

5        After the vacatur of the First Consent Decree in August 2023, Plaintiff determined it needed

6   additional legal support and retained the Aqua Terra Aeris Law Group as lead counsel. ECF. No. 85

7   at 8. Extensive third-party and party discovery ensued, and Plaintiff conducted additional

8   comprehensive water quality sampling and analytical investigations into the Cables and procured

9   expert reports supporting its legal and factual theories. Maclear Decl. ¶¶ 53-55, 74. After

10   depositions were planned and expert report preparation was almost complete, subsequent settlement

11   negotiations began in early June 2024, yielding a Final Amended Consent Decree ("Second Consent

12   Decree"). *Id*. ¶ 58. The parties were able to resolve all substantive issues for Defendant to remove

13   the Cables, but the parties could not resolve Plaintiff's claims for cost and attorneys' fees

14   reimbursement, bifurcating those issues from the settlement. *Id*. ¶ 63; ECF. No. 147. This Motion

15   now seeks reimbursement for Plaintiff's reasonably incurred fees and costs. Maclear Decl. ¶¶ 64-97.

16   **II.   STATEMENT OF FACTS**

17      **A.   THE CABLES AND DISCHARGES THEREFROM**

18        Plaintiff is a non-profit public benefit corporation organized under the laws of California,

19   dedicated to the preservation, protection, and defense of the environment, wildlife, and natural

20   resources of California waters, including the waters of Lake Tahoe. *Id*. ¶ 25. Defendant is a

21   corporation that provides telecommunications services in California and that owns the Cables at

22   issue in this litigation. *Id*. ¶ 26. The Cables at issue in this action are located in the shallow waters

23   along the western edge of Lake Tahoe. *Id*. ¶ 28. The short Cable is approximately two thousand

24   (2,000) feet in length and is located in Emerald Bay. Complaint (ECF. No. 1) ¶ 7. This Emerald Bay

25   cable has cut ends that are submerged below the surface of the water. *Id*. The long cable,

26   approximately six miles in length, is located along the west shoreline of the Lake. Defendant no

27   longer uses the Cables and does not maintain them. *Id*.

28        Federal agencies have found that exposure to lead in developing humans impairs short-term

1   memory and executive functioning. *Id*. The U.S. Environmental Protection Agency ("EPA")

2   determined that there is no safe level of lead exposure that does not result in neurodevelopmental

3   toxicity. *Id*. Many compounds of lead are soluble in water. *Id.* As a result, humans, birds, mammals,

4   and fish are exposed to the lead that leaches off the Cables into Lake Tahoe through physical

5   contact or ingesting the water or aquatic organisms. *Id*. ¶¶ 12-13; Wren Decl. ¶¶ 13-20. Once

6   ingested, lead is absorbed into the organs, bones, and teeth of the exposed animal. Complaint (ECF.

7   No. 1) ¶ 13.

8   **B.   THE INSTANT LAWSUIT**

9   Plaintiff learned of the existence of the Cables and conducted an initial investigation before

10   sending a pre-filing notice letter. *Id*. ¶¶ 14-22. The initial investigation consisted of extensive

11   research into the placement, ownership, and abandonment of the Cables. Acree Decl. (ECF. No. 16-

12   2) ¶ 14. Plaintiff's counsel also researched potential legal theories of liability before filing and again

13   after Defendant re-initiated this litigation. *Id.* Based on this initial investigation, Plaintiff's counsel

14   determined the Cables were violating federal and California law (*id*. ¶¶ 15-19) and prepared and

15   served a notice of violation letter on August 20, 2020, in accordance with RCRA and Proposition

16   65. Complaint (ECF. No. 1), Exhibit A.

17   Defendant retained counsel at Paul Hastings LLP, principally through attorneys Navi

18   Dhillon and Deborah Schmall, both of whom are partners and are highly experienced in RCRA and

19   Proposition 65. Acree Decl. (ECF. No. 16-2) ¶ 21. Settlement negotiations began early in the action

20   and resulted in the First Consent Decree discussed below. ECF. No. 55 at 2.

21   **C.   THE FIRST CONSENT DECREE AND THE VACATUR THEREOF**

22   Pursuant to the First Consent Decree, Defendant agreed to acquire any approvals required

23   for the removal of the Cables and to remove them. ECF. No. 16 ("First Motion to Approve") at 5.

24   And Defendant actually obtained all of the permits and approvals necessary to remove the Cables

25   by June 2023. ECF. No. 85 at 6. Ultimately, however, Defendant sought leave to vacate the First

26   Consent Decree and to reinitiate litigation after news articles regarding the Cables and other, similar

27   cables around the country were published by the Wall Street Journal. ECF. No. 49 at 3; *see also*

28   ECF. No. 41 (discussing Defendant's interest in researching whether removing the Cables may also

pose health risks for the Lake, in part as a result of an Environmental Defense Fund letter to the EPA about that issue). This Court approved that request and vacated the First Consent Decree. ECF. No. 55 at 2. Notably, because the payment of attorney's fees related to the First Consent Decree was contingent on the Cables being removed, Defendant's decision to vacate the First Consent Decree made it such that the ordered fee and cost recovery never actually occurred. This is particularly significant because that settlement involved a negotiated recovery amount – $220,000 – which was less than Plaintiff's total fees and costs to date at that time of $290,021.90. Maclear Decl. ¶ 47.

**D.   SUBSEQUENT LITIGATION AND THE SECOND CONSENT DECREE.**

Upon restarting litigation, Defendant retained Kirkland Ellis, principally through attorneys Hariklia ("Carrie") Karis and Peter C. Meier, in addition to existing lead counsel at Paul Hastings. ECF. No. 58 at 1; ECF. No. 59 at 1. And Defendant retained a third firm, Crowell & Moring LLP, to manage discovery-related matters. Maclear Decl. ¶ 53.

Plaintiff conducted an extensive underwater Cables survey with comprehensive sampling of biofilm/algae on the Cables, sediment from near and away from the Cables, water samples at and away from the Cables, biota samples of tissue from mollusks, snails, and crawdads from near the Cables, and of the bitumen and lead from Cables themselves, all of which were slated for isotopic analyses to fingerprint the lead from the Cables. *Id*. ¶ 73 This investigation confirmed that the Cables are discharging lead into Lake Tahoe. *Id*.; Wren Decl. ¶¶ 13-20.

The Second Consent Decree sets forth a process for Defendant to remove the Cables from Lake Tahoe by a Target Removal Date, November 30, 2024, and, at the latest, Memorial Day, 2025 based on weather conditions and consistency with the permitting process. Maclear Decl. ¶ 61.

**E.   TIME SPENT LITIGATING THIS ACTION AND THE PROPOSED FEE AND COST AWARD**

To prevail in this action, Plaintiff had to conduct extensive work to investigate, file, and prosecute the claims at issue, propound and respond to myriad discovery requests, including third-party discovery requests, and engage in multiple settlement negotiations. Plaintiff's work to prevail in this matter can be divided into seven categories: (1) pre-filing factual investigations; (2) research, drafting, serving, and filing the notice letter and complaints; (3) case management and analysis; (4) post-filing factual investigations; (5) discovery; (6) settlement negotiations and work necessary to

1   obtain this Court's approval of the two settlements; and (7) and preparing and arguing this fee

2   motion. Maclear Decl. ¶ 66. The time spent by Plaintiff's counsel on each category is discussed in

3   detail below, and in declarations submitted herewith on behalf of each timekeeper involved with

4   this matter. Timeslips are included as Exhibit 2 to the Maclear Declaration.

5       Category 1 (Pre-filing Factual Investigations): This case involved significant factual

6   investigation to determine if a toxic discharge of lead or other chemicals from the Cables had

7   occurred and would continue to occur. Acree Decl. (ECF. No. 16-2) ¶¶ 41-45. Initial investigations

8   included discussions and meetings with the divers who discovered the Cables and review of the

9   evidence that the divers had obtained. *Id*. It also involved securing a piece of one cable, the end of

10  which was already cut off and lying underwater, and testing that sample in water taken from Lake

11  Tahoe to assess the leaching from the Cables. *Id*. ¶ 43. A substantial amount of attorney time was

12  also spent searching for, securing, and reviewing government agency records concerning the

13  Cables, including the history of the use and abandonment of the Cables, their ownership, and any

14  testing or regulatory activity concerning the Cables that had already occurred. *Id*. ¶ 44. This work

15  involved review of online records from state agencies as well as the drafting and sending of

16  California Public Records Act ("PRA") requests to the State Lands Commission, Tahoe Resource

17  Planning Authority, and other entities. *Id*. Likewise, Plaintiff's counsel spent considerable time

18  investigating the area surrounding the Cables to evaluate issues concerning the cost of removal and

19  to identify standing witnesses impacted by the Cables. *Id*. ¶ 45. Notably, the Court already approved

20  most of these hours as reasonably incurred. ECF. No. 22 at 2. A total of 224.6 hours of attorney and

21  legal support staff time were spent on Category 1 activities. Maclear Decl. ¶ 6, Exhibit 2.After a

22  19.9% reduction for billing judgment, Plaintiff seeks recovery for 179.9 hours for Category 1. *Id*.

23      Category 2 (Case Evaluation and Drafting and Filing the Notice Letter and Complaints):

24  Plaintiff's counsel conducted legal research to evaluate potential claims and drafted the notice letter

25  and complaints accordingly. Acree Decl. (ECF. No. 16-2) ¶ 46. It took counsel longer than usual to

26  achieve this step in the litigation because the claims raised involve a novel application of these

27  statutes to *in-situ* telecommunications cables. Acree Decl. (ECF. No. 16-2) ¶ 46. For example,

28  although RCRA has been found to apply to discharges of hazardous waste from telephone poles,

1   *see, e.g., Ecological Rights Foundation v. Pacific Gas and Electric*, 713 F.3d 502 (9th Cir. 2013),

2   none of Plaintiff's counsel found any prior case that applied RCRA to *in situ* telephone cables. ECF.

3   No. 16-1 at 14 (Memorandum of Points and Authorities in Support of Motion to Approve

4   Settlement for Entry of Consent Decree). Similarly, although Proposition 65 has been applied to

5   discharges of lead into drinking water, *see, e.g., People ex rel. Lungren v. Superior Court*, 14

6   Cal.4th 294 (1996), Plaintiff's counsels identified no case that alleged a discharge to drinking water

7   in violation of Proposition 65 from an underwater *in situ* telephone cables. ECF. No. 16-1 at 14. It

8   was accordingly necessary for Plaintiff's counsel to conduct independent research and analyze the

9   strengths and weaknesses of the legal theories with Plaintiff prior to filing this lawsuit or serving the

10  notice letter. Notably, most of this time was also already approved as reasonably incurred by this

11  Court. ECF. No. 22 at 2. A total of 142.9 hours of attorney and legal support staff time were spent

12  on Category 2 activities. Maclear Decl. ¶ 6, Exhibit 2. After an 18.61% reduction for billing

13  judgment, Plaintiff seeks recovery for 116.3 hours for Category 2. *Id.*

14      Category 3 (Case Management and Handling): The third category of time spent covers case

15  management activities and the evaluation of additional legal claims to add to this case. *Id.* ¶ 72. This

16  category of time spent occurred after the First Consent Decree was vacated. *Id.* This lawsuit

17  involved coordination between attorneys at several firms and several sole practitioners. *Id.*

18  Specifically, and as noted, in evaluating and filing this case and negotiating the First Consent

19  Decree, Plaintiff was represented by several attorneys acting as co-counsel. Acree Decl. (ECF. No.

20  16-2) ¶¶ 28-47. Attorneys J. Kirk Boyd, David Williams, William Verick, and Brian Acree are all

21  sole practitioners and attorneys Andrew Packard and William Carlon worked together under the

22  umbrella of Mr. Packard's firm during the first phase of this litigation (leading to the First Consent

23  Decree and vacatur thereof). Maclear Decl. ¶ 72. (Since January 2024, Mr. Carlon has also been a

24  sole practitioner and is no longer affiliated with Mr. Packard's office.) Since shortly after the

25  vacatur of the First Consent Decree, Aqua Terra Aeris Law Group has served as lead counsel, and

26  has coordinated with co-counsels Mr. Boyd, Mr. Williams, Mr. Verick, Mr. Acree, Mr. Packard,

27  and Mr. Carlon. *Id.*

28

Given the complexity of the issues involved in this suit and the hard-fought nature of this case post vacatur, managing this case took a significant amount of time. Regular meetings between the Aqua Terra Aeris Law Group and the other co-counsel who had been litigating the matter beforehand were necessary in order to provide updates regarding the status of litigation tasks, assign additional litigation tasks, and strategize as a group. Maharg Decl. ¶ 19. These meetings increased efficiency and reduced duplication early in the renewed litigation by providing one forum for the attorneys to have discussions rather than having multiple discussions via telephone or email among sub-groups of attorneys. *Id.* As soon as the team meetings were no longer maximizing efficiencies, co-counsel ceased meeting regularly. *Id.* Much of the time spent on multi-attorney calls was written off during the billing judgment process. *Id.*; *see also* Maclear Decl. ¶¶ 93-97

Case management and handling also accounts for time spent evaluating potential additional legal claims to add to this case that were ultimately not added (for strategic reasons) and the evaluation of potential legal motions and mechanisms, including a motion for summary judgment that was in the drafting process when Defendant agreed to a Second Consent Decree. Time was also spent on a motion regarding the scheduling of this matter. *Id.* ¶ 72; Scheduling Motion (ECF. No. 85) at 1. Plaintiff's Motion to Amend the Scheduling Order was necessary as a result of unforeseen delays in conducting the sampling and analysis necessary to demonstrate that the Cables have been and are discharging lead to Lake Tahoe. Scheduling Motion (ECF. No. 85) at 6. A total of 520.3 hours of attorney and legal staff time were spent on Category 3 activities. Maclear Decl. ¶ 6, Exhibit 2. After a 21.51% reduction for billing judgment, Plaintiff seeks recovery for 408.4 hours for Category 3. *Id.*

Category 4 (Post-filing Investigations): The fourth category of time spent accounts for time spent on post-filing factual investigations and expert analysis managed by Plaintiff's counsel and conducted by scientific experts and commercial divers in consultation with other experts, in order to collect further evidence that the Cables were and are discharging lead into Lake Tahoe and that lead threatens humans and animals in and around the Lake. *Id.* ¶ 73. Some of the work in this category occurred before new lead counsel was added, but most was done after new lead counsel joined. *Id.* Specifically, Plaintiff's counsel retained divers to sample sediment, water, algae, and bitumen tar on

MOTION FOR ATTORNEYS' FEES AND COSTS UNDER RCRA AND C.C.P. § 1021.5

1    and nearby to the Cables, and also retained experts and laboratories to evaluate those samples and

2    prepare reports. *Id.*; Wren Decl. ¶¶ 10-20. There were a total of forty-three (43) water samples,

3    thirty-four (34) sediment samples, twenty-one (21) biofilm/algae samples, and seven (7) soil

4    samples. Seven (7) samples of jute/bitumen tar coating, twenty (20) biota samples, and five (5) lead

5    conduit samples taken over the course of four (4) days. Wren Decl. ¶ 13. Plaintiff's counsel worked

6    closely with the divers to prepare and implement Quality Assurance Project Plans and Sampling and

7    Analysis Plans. *Id.* ¶¶ 13-20; Maclear Decl. ¶ 73. This work also required liaising with relevant

8    agencies to obtain the requisite authorizations to undertake the sampling. Maclear Decl. ¶ 73. And,

9    before any samples were taken, the entirety of the six (6) miles of Cables was surveyed using a

10   remotely operated underwater vehicle to inform a comprehensive sampling plan. *Id.*; Wren Decl. ¶

11   11. Post-vacatur investigations confirmed elevated levels of lead in water, sediment, algae, bitumen,

12   clams, and crawdads at and adjacent to the Cables. Wren Decl. ¶¶ 13-20; Maclear Decl. ¶ 9, Ex. 5 at

13   1. These activities were necessary to evaluate the extent, scope, and severity of the discharges from

14   the Cables in order to prove liability under both RCRA and Proposition 65. Maclear Decl. ¶ 73. A

15   total of 489.3 hours of time were spent on Category 4 activities. *Id.* ¶ 6, Exhibit 2. After a 12.63%

16   reduction for billing judgment, Plaintiff seeks recovery for 427.5 hours for Category 4. *Id.*

17       Category 5 (Discovery): This category covers discovery-related matters. *Id.* ¶ 74. Plaintiff's

18   counsel drafted and served on Defendant one set of requests for admission ("RFAs"), one set of

19   requests for production ("RFPs"), and two sets of interrogatories, responded to several discovery

20   requests from Defendant, and reviewed, organized, and evaluated Defendant's responses to Plaintiff's

21   discovery requests. *Id.* Similarly, Plaintiff spent time responding to discovery. Defendant did not

22   make the discovery process easy. Plaintiff's counsel were obligated to meet and confer with

23   Defendant's counsel several times to obtain legally sufficient discovery responses. *Id.* For example,

24   the Parties met and conferred regarding Defendant's designation of custodians and search terms,

25   limitation to specific time periods, documents related to Defendant's voluntarily disclosed sampling

26   reports, samples from outside Lake Tahoe, and internal discussions, including Board meeting

27   minutes, discussing the abandonment and/or harm from the Cables. Maharg Decl. ¶ 20. As a result of

28   this extensive meet and confer processes, Defendant produced additional documents and amended

both its RFA and interrogatory responses. *Id*. Plaintiff's counsel also noticed several depositions and began to prepare for those depositions (which never occurred, due to settlement). Maclear Decl., ¶ 74.

Moreover, Plaintiff propounded third-party discovery requests on non-parties, including the EPA, the Lahontan Regional Water Quality Control Board, the State Water Resources Control Board's Division of Drinking Water, several of Defendant's investigating consultants, and others. *Id*. And Plaintiff's counsel tracked, evaluated, and at times participated in third-party discovery requests submitted by Defendant to non-party entities, including approximately fifteen (15) third-party subpoenas. *Id*. A total of 852.0 hours of time was spent on Category 5 activities. *Id*. ¶ 6, Exhibit 2. After a 12.93% reduction for billing judgment, Plaintiff seeks recovery for 741.8 hours for Category 5. *Id*.

Category 6 (Settlement-Related Activities): This category can be divided into two subcategories: (1) time spent negotiating the First Consent Decree, ensuring the implementation of the First Consent Decree, and participating in the vacatur process thereof, including preparing for and attending Case Status Conferences, and (2) time spent negotiating the Second Consent Decree. A total of 174.6 hours of attorney time was spent negotiating the First Consent Decree. *Id*. ¶ 75. A total of approximately 192 hours were spent on during the vacatur process, as detailed consultation with experts and others to determine how long it would reasonably take to remove the Cables was required (to assess and respond to Defendant's assertions that removal could not be done within the agreed-upon time frame). *Id*. Dozens of hours have been written off by Plaintiff's counsel as part of billing judgment. Beginning in June 2024, the parties negotiated the terms of the Second Consent Decree until September 18, 2024. *Id*. ¶ 77. A total of 529.8 hours of time was spent on Category 6 activities. *Id*. ¶ 6, Exhibit 2. After a 14.06% reduction for billing judgment, Plaintiff seeks recovery for 455.3 hours for Category 6. *Id*.

Category 7 (Fee Recovery): As noted, the parties agreed to bifurcate the settlement of the substantive issues at stake in this matter (*i.e.*, the removal of the Cables) from the resolution of the fees and costs attendant to Plaintiff's prosecution of this case. Accordingly, Category 7 accounts for Plaintiff's counsel's time preparing this Motion and negotiating with Defendant's counsel regarding

1  fee and cost related issues. A total of 190.8 hours of time was spent on Category 7 activities. *Id.* ¶ 6,

2  Exhibit 2. After a 42.19% reduction for billing judgment, Plaintiff seeks recovery for 110.3 hours for

3  Category 7. *Id.*

4  **III.  FEDERAL AND STATE LEGAL STANDARDS FOR FEE AWARD**

5     **A.  FEDERAL STANDARDS**

6       RCRA permits reimbursement of attorneys' fees and costs to prevailing parties. *See, e.g.*, 42

7  U.S.C. § 6972(e) ("The court in issuing any final order in any action brought pursuant to this

8  section … may award costs of litigation (including reasonable attorney's fees and expert fees) to the

9  prevailing or substantially prevailing party…."). An award is appropriate where no "special

10 circumstances" would warrant denial. *Saint John's Organic Farm v. Gem Cty. Mosquito Abatement

11 Dist.*, 574 F.3d 1054, 1062 (9th Cir. 2009). The "special circumstances" standard is narrow and

12 strict; "fee awards 'should be the rule rather than the exception.'" *Id.*; *see also Resurrection Bay

13 Conservation All. v. City of Seward*, 640 F.3d 1087, 1092 (9th Cir. 2011).

14      A "prevailing party" is one that has "obtained judicially enforceable 'actual relief on the

15 merits of [their] claim that materially alter[ed] the legal relationship between the parties.'" *St.

16 John's Organic Farm*, 574 F.3d at 1058-59. "[T]he relief achieved need not be of precisely the

17 same character as the relief sought in the complaint, but it must require defendants to do something

18 they otherwise would not have been required to do." *St. John's Organic Farm*, 574 F.3d at 1059. A

19 plaintiff need not need prevail on every claim to be a prevailing party; "[t]he threshold for sufficient

20 relief to confer prevailing party status is not high. 'If the plaintiff has succeeded on any significant

21 issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit, the

22 plaintiff has crossed the threshold to a fee award of some kind.'" *Id.* Thus, a judicially enforceable

23 consent decree confers "prevailing party" status on a plaintiff. *See, Richard S. v. Dep't of

24 Developmental Servs.*, 317 F.3d 1080, 1088 (9th Cir. 2003).

25      Once Plaintiff shows that it is the prevailing party, Courts in the Ninth Circuit uses the

26 "lodestar" method to decide whether requested fees are reasonable. *Sorenson v. Mink*, 239 F.3d

27 1140, 1145 (9th Cir. 2001) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) ("The most

28 useful starting point for determining the amount of a reasonable fee is the number of hours

reasonably expended on the litigation multiplied by a reasonable hourly rate."). Once the movant provides this information, "there is a 'strong presumption' that the lodestar figure is reasonable." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). "[O]nly in rare circumstances should a court adjust the lodestar figure, as this figure is the presumptively accurate measure of reasonable fees." *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). Included in the lodestar are those hours spent on recovering fees (so called "fees on fees"). *In re Nucorp Energy, Inc.*, 764 F.2d 655, 659-660 (9th Cir. 1985).

 "A district court, using the lodestar method to determine the amount of attorney's fees to award, must determine a reasonable number of hours for which the prevailing party should be compensated. Ultimately, a 'reasonable' number of hours equals '[t]he number of hours . . . [which] could reasonably have been billed to a private client.'" *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) (internal citations omitted). When considering the number of hours reasonably expended in a case, the Ninth Circuit has observed that,

> [i]t must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. . . . By and large, the court should defer to the winner lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

To determine whether hourly rates are reasonable, "the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986) (citing *Blum v. Stenson*, 465 U.S. 886 (1984)); *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). "Generally, the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). "A declaration regarding the prevailing rate in the relevant community is [generally] sufficient to establish a reasonable hourly rate." *Widrig v. Apfel*, 140 F.3d 1207, 1209 (9th Cir. 1998). Nevertheless, the "burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11.

1    Moreover, in determining a reasonable fee, courts also consider the factors articulated in

2  *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds, City*

3  *of Burlington v. Dague*, 505 U.S. 557 (1992). These factors include: (1) the time and labor required,

4  (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal

5  service properly, (4) the preclusion of other employment due to acceptance of the case, (5) time

6  limitations imposed by the circumstances, (6) the results obtained, (7) the experience, reputation,

7  and ability of the attorneys, (8) the undesirability of the case, and (9) awards in similar cases.

8  *Stetson v. Grissom*, 821 F.3d 1157, 1166-67 (9th Cir. 2016). Finally, for multi-year cases, which is

9  particularly important here, as the case has been litigated for over three and a half years, the Ninth

10  Circuit uses *current* billing rates to compensate for the delay in receiving payment. *Davis v. City*

11  *and County of San Francisco*, 976 F.2d 1536, 1548 (9th Cir. 1992).

12    RCRA also allows for the reimbursement of expert-related costs where the experts at issue

13  were not appointed by the court. 42 U.S.C. § 6972(e). The cost applicant must show in "real detail

14  how the experts divided their time between various tasks." *Cal. Sportfishing Prot. Alliance v. Chico*

15  *Scrap Metal, Inc.,* 2016 U.S. Dist. LEXIS 2511, at *9 (E.D. Cal. 2016) (citing *Banas v. Volcano*

16  *Corp.*, 47 F. Supp. 3d 957, 978-79 (N.D. Cal. 2014)).

17    **B.   STATE STANDARDS**

18    Fees in a Proposition 65 action may be sought pursuant to California Code of Civil

19  Procedure section 1021.5. *DiPirro v. Bondo Corp.*, 153 Cal.App.4th 150, 197 (2007). Generally,

20  "there are three criteria required to support an award of attorney's fees under 1021.5: (a) the action

21  resulted in the enforcement of an important right affecting the public interest; (2) a significant

22  benefit was conferred on the general public or a large class of persons; and (3) the necessity and

23  financial burden of private enforcement were such as to make the award appropriate." *Id.* Further,

24  the California Attorney General has adopted regulations guiding its review of Proposition 65

25  attorney fee recovery, making clear that: (a) where a defendant changes its conduct because of the

26  plaintiff's action, the plaintiff should be deemed successful, (b) a reduction or elimination of a

27  discharge of a listed chemical is a significant public benefit, and (c) the necessity of public

28  enforcement can be demonstrated by showing that the defendant changed its conduct because of the

1    plaintiff's action. 11 C.C.R. § 3201. Once these criteria are met, the reasonableness of the fees is

2    established by the application of the standard lodestar calculation. *Id.*

3        **C.   Fee Multipliers**

4        Both state and federal law provide for a fee multiplier in this case. *See Hensley*, 461 U.S. at

5    448-449 ("[D]istrict courts should not end their fee inquiries when they have multiplied a customary

6    hourly rate times the reasonable number of hours expended, and then checked the product against

7    the results obtained. They should also consider both delays in payment and the prelitigation

8    likelihood that the claims which did in fact prevail would prevail"); *see also Mangold v. California*

9    *Pub. Utils. Comm'n*, 67 F.3d 1470, 1478–1479 (9th Cir. 1995) (2.0 multiplier). Similarly, California

10    courts awarding fees under section 1021.5 may, and regularly do, incorporate multipliers into

11    attorney fee awards. *See, e.g., Yes in My Back Yard v. City of Culver City*, 96 Cal.App.5th 1103,

12    1121 (2023) (1.25 multiplier under section 1021.5 for challenge to city land use ordinance);

13    *Kennedy Comm'n v. City of Huntington Beach*, 91 Cal.App.5th 436, 467 (2023) (1.4 multiplier

14    under section 1021.5 in challenge to city's failure to comply with housing law); *Kern River Pub.*

15    *Access Comm. v. City of Bakersfield*, 170 Cal.App.3d 1205, 1228 (1985) (1.5 multiplier under

16    section 1021.5 in environmental action challenging land use decision); *San Bernardino Valley*

17    *Audubon Soc'y v. County of San Bernardino*, 155 Cal.App.3d 738, 754 (1984).

18        **D.   Eastern District Local Rules for Fee Awards**

19        The Eastern District local rules follow the Federal and State legal standards discussed above.

20    Local Rule 293 guides the award of attorneys' fees, and requires "an affidavit showing: (1) that the

21    moving party was a prevailing party . . . ; (2) that the moving party is eligible to receive an award of

22    attorneys' fees, and the basis of such eligibility; (3) the amount of attorneys' fees sought; (4) the

23    information pertaining to each of the criteria set forth in (c) [discussed below]; and (5) such other

24    matters as are required under the statute under which the fee award is claimed." L.R. 293(b).

25        Further, the court must consider: "(1) the time and labor required of the attorney(s); (2) the

26    novelty and difficulty of the questions presented; (3) the skill required to perform the legal service

27    properly; (4) the preclusion of other employment by the attorney(s) because of the acceptance of the

28    action; (5) the customary fee charged in matters of the type involved; (6) whether the fee contracted

1   between the attorney and the client is fixed or contingent; (7) any time limitations imposed by the

2   client or the circumstances; (8) the amount of money, or the value of the rights involved, and the

3   results obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the

4   "undesirability" of the action; (11) the nature and length of the professional relationship between

5   the attorney and the client; (12) awards in similar actions; and (13) such other matters as the Court

6   may deem appropriate . . . ." L.R. 293(c).

7          Likewise, pursuant to Local Rule 292, requests for reimbursement of costs must "itemize the

8   costs claims" in conformance with 28 U.S.C. § 1924 and must "be supported by a memorandum of

9   costs and an affidavit of counsel that the costs claimed are allowable by law, are correctly stated,

10  and were necessarily incurred." The following cost items, among others, are taxable in the Eastern

11  District: (1) Clerk's fees; (2) Court reporter's fees; (3) Docket fees; (4) Fees for exemplification and

12  copies of papers necessarily obtained for use in the action; and, (5) Other items allowed by any

13  statute or rule or by the Court in the interest of justice. L.R. 292(f).

14  **IV.   ARGUMENT**

15        **A.   FEDERAL AND STATE LAW ENTITLE PLAINTIFF TO FEE AND COST RECOVERY.**

16          RCRA authorizes reimbursement of fees and costs to a plaintiff who "prevail[s] or

17  substantially prevail[s] . . . ." and where no special circumstances warrant denial of the proposed fee

18  award. 42 U.S.C. § 6972(e); *St. John's Organic Farm*, 574 F.3d at 1062. Here, Plaintiff is the

19  prevailing party because it secured a binding settlement that requires Defendant to remove the

20  Cables. *Richard S.*, 317 F.3d at 1088. Further, no special circumstances warrant denial.

21          Per California standards, courts may award attorneys' fees when "a significant benefit,

22  whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of

23  persons" and "the necessity and financial burden of private enforcement were such as to make the

24  award appropriate." Code Civ. Proc § 1021.5; 11 C.C.R. § 3201. These elements are easily met. Per

25  controlling regulations, "[i]n a case alleging violations of Health and Safety Code section 25249.5,

26  the reduction or elimination of the discharge of listed chemicals establishes a significant public

27  benefit." 11 C.C.R. § 3201(b)(3). The Second Consent Decree guarantees that Defendant will

28  remove the Cables, thereby reducing or eliminating a discharge of a listed chemical (lead) from the

1   iconic Lake Tahoe and its Emerald Bay. Maclear Decl. ¶ 5, Exhibit 1. Plaintiff has therefore

2   conferred a significant benefit on the general public.

3          Further, per controlling regulations, "[t]o establish necessity of private enforcement, the

4   plaintiff should establish that its continued prosecution of the action was necessary to obtain the

5   relief in the settlement." 11 C.C.R. § 3201(c). Here, Defendant would not have agreed to remove

6   the Cables but for Plaintiff's continued prosecution of this matter. Defendant left these Cables

7   abandoned on the Lake's floor for decades until Plaintiff filed its lawsuit. Maclear Decl. ¶¶ 29-32.

8   There is no indication that Defendant would have acted to remove the Cables had Plaintiff not

9   brought this action compelling it to do so. The fact that Defendant vacated the First Consent Decree

10  is further evidence of this. Accordingly, Plaintiff's "continued prosecution of the action was

11  necessary to obtain the relief in the settlement" and Plaintiff has established the necessity of its

12  enforcement as a matter of law. 11 C.C.R. § 3201(c); *see also DiPirro*, 153 Cal.App.4th at 197.

13  Plaintiff is therefore entitled to fees and costs under both federal and State standards.

14      **B.   PLAINTIFF'S PROPOSED FEE AND COST AWARD IS REASONABLE.**

15         To determine the reasonableness of a fee award, "[b]oth the California and federal courts . . .

16  have generally settled on the "lodestar-adjustment" method: Courts must first calculate the "lodestar,"

17  which is the number of hours reasonably spent multiplied by the reasonable hourly rate for each

18  billing professional; that figure may then be adjusted upward (usually called a "multiplier") . . . ."

19  Pearl, C.E.B. § 8.1; 11 C.C.R. § 3201(d); *Hensley*, 461 U.S. at 433 ("The most useful starting point

20  for determining the amount of a reasonable fee is the number of hours reasonably expended on the

21  litigation multiplied by a reasonable hourly rate.")

22         When deciding if fees are reasonable, the Eastern District Local Rules consider many of the

23  same factors as Federal and State case law. Plaintiff's counsels' declarations and exhibits explain

24  the amount of fee's sought in sufficient detail, the time and labor required by each of Plaintiff's

25  counsel, the novelty and difficulty of the legal and factual questions presented, the skill required to

26  prosecute the case, the customary fee charged in matters of this nature, the experience, reputation,

27  and ability of Plaintiff's counsel, the nature and length of Plaintiff's relationship with counsel,

28  awards in similar actions, and the fact that Plaintiff's counsel assumed responsibility for this case on

1    a contingency basis. E.D. Cal. L.R. 293. Plaintiff has therefore satisfied the Eastern District's rules

2    regarding the reasonableness of the requested fee award.

3         As discussed, below, all of the attorney time sought herein was reasonably necessary for the

4    excellent results achieved; the time is validated by timekeeping records and declarations; counsel's

5    market rates are supported by an expert declaration, experience, and case law; and a fee multiplier is

6    warranted to compensate for the unique risks, time commitment, and public benefits of this case.

7              **i.   Plaintiff's counsel's hours were reasonable.**

8         To determine whether the number of hours incurred were reasonable, courts consider

9    whether they could have reasonably been billed to a private client. *Gonzalez*, 729 F.3d at 1202. This

10   begins with a review of the billing records. *Id*; L.R. 293(c)(1). Here, Plaintiff's counsel maintained

11   contemporaneous time records reflecting each hour and activity required to prosecute this action.

12   Maclear Decl. ¶ 6, Exhibit 2. Counsel's billing records are sufficiently detailed to demonstrate that

13   these are hours that could have reasonably been billed to a private client. *Id*. ¶ 6, Exhibit 2.

14        Next, Plaintiff only seeks compensation for hours expended on activities that were

15   reasonably necessary to prosecute the case. For this motion, Counsel has divided their time into

16   seven categories, each of which has been authorized by the courts for fee recovery: (1) pre-filing

17   factual investigations (*Webb v. Cnty. Bd. of Educ.,* 471 U.S. 234, 243, 250 (1985) ["[I]t is settled

18   that a prevailing party may recover fees for time spent before the formal commencement of the

19   litigation on such matters as attorney-client interviews, investigation of the facts of the case . . ."]);

20   (2) research, drafting, serving, and filing the notice letter and complaints (*id.* at 243, 250); (3) case

21   management and analysis (*MacDonald v. Ford Motor Co.,* 2016 U.S. Dist. LEXIS 70809,

22   *21 (N.D. Cal. 2016); *Sierra Club v. U.S. Envt'l Prot. Agency,* 625 F. Supp. 2d 863, 871 (N.D. Cal.

23   2007)); (4) post-filing factual investigations (*Amazon.com, Inc. v. Personalweb Techs., LLC,* 2021

24   U.S. Dist. LEXIS 39062, at *37-38 (N.D. Cal. 2021)); (5) discovery (*Ridgeway v. Wal-Mart Stores

25   Inc.,* 269 F. Supp. 3d 975, 986-7 (N.D. Cal. 2017)); (6) settlement negotiations and work necessary

26   to obtain this Court's approval of the two settlements (*Fleming v. Kemper Nat'l Servs.,* 373 F. Supp.

27   2d 1000, 1009 (N.D. Cal. 2005); *Amaro v. Anaheim Mgmt., LLC,* 69 Cal.App. 5th 521, 545 (2021));

28   and (7) preparing and arguing this fee motion (*Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 981

1  (9th Cir. 2008) ["In statutory fee cases, Federal courts, including our own, have uniformly held that

2  time spent in establishing the entitlement to and amount of the fee is compensable"]).

3       This Court has already approved 526 hours of Plaintiff's counsel's hours as reasonable,

4  although that total reflected a reduced amount as a compromise for settlement and did not include

5  the higher amount of actual fees incurred that what could have reasonably been billed. ECF. No. 22

6  at 2. Notably, that fee total was approved as reasonable *before* the majority of work in this case was

7  necessitated and completed, including: propounding, responding to, reviewing, and dispute

8  resolution related to voluminous and expansive discovery (including third-party discovery);

9  extensive expert factual investigation, sampling, and drafting reports; negotiating a remedy that

10  <u>requires</u> Defendant to remove the Cables; and presenting all of the above in the instant motion.

11       Critically, to support the reasonableness of this request, Plaintiff's counsel carefully reviewed

12  all time entries and exercised considerable billing judgment. Maclear Decl. ¶¶ 92-96. In grand total,

13  Plaintiff's counsel and support staff expended 2,862.5 hours of time prosecuting this case. *Id.* ¶ 6,

14  Exhibit 2. Counsel has eliminated 510.2 hours and reduced 87.2 hours for billing judgment, a 20.87%

15  cut in hours, for a total lodestar request of 2,265.1 hours, which constitutes 23.07% reduction in total

16  lodestar from $1,725,087.00 to $1,327,172.00. *Id.* This compares favorably to *Ecological Rights*

17  *Found. v. Hot Line Constr., Inc.,* No. 5:20-cv-01108-AB-kk, 2024 U.S. Dist. LEXIS 129282, at *8

18  (C.D. Cal. 2024), a RCRA citizen suit in which plaintiffs' counsel incurred a total of 3,600 hours,

19  exercised 15% billing judgment, and were awarded full recovery for 3000 hours of legal time

20  incurred. Thus, Plaintiff's 597.4-hour or 20.87% billing judgment reduction for this RCRA citizen

21  suit is more than reasonable in comparison.

22       In determining the reasonableness of an attorney's time, courts also consider the novelty and

23  difficulty of the issues presented, and this case presented novel legal issues. *Moreno*, 534 F.3d at

24  1114; *Kerr*, 526 F.2d at 70. As noted, although RCRA has been found to apply to discharges of

25  hazardous waste from telephone poles, *see, e.g., Ecological Rights Foundation*, 713 F.3d at 502,

26  Plaintiff's counsel found no prior case that applied RCRA to *in situ* telephone cables. ECF. No. 16-

27  1 at 14. And although Proposition 65 has been applied to discharges of lead into drinking water, *see,*

28  *e.g., People ex rel. Lungren*, 14 Cal.4th at 294, Plaintiff's counsel identified no case that alleged a

1    discharge to drinking water in violation of Proposition 65 from an *in situ* telephone cable. ECF. No.

2    16-1 at 14. Expending time on the legal research and factual investigation components of this

3    litigation was therefore necessary and reasonably incurred.

4          Likewise, courts also factor in the relative skill required to litigate a case and the results

5    obtained when evaluating the reasonableness of attorneys' fees. Here, Plaintiff's counsel needed to

6    exercise considerable expertise in multiple facets. Again, no published case applied RCRA and

7    Proposition 65 to underwater telecommunications cables leaching toxins to freshwater.

8    Accordingly, liability was hotly contested by defense counsel from three large prominent national

9    law firms. Moreover, the claims involved complex physics, biology, hydrology, and biochemistry to

10   demonstrate exactly *how* the lead discharges emanating from the Cables adversely impact aquatic

11   species. *Kerr*, 526 F.2d at 70; *Stetson*, 821 F.3d at 1166-67. Plaintiff's counsel oversaw a detailed,

12   thorough, and complicated underwater investigation of the Cables and their impacts on Lake Tahoe

13   that required them to work closely with experts to ensure that their sampling regimen was

14   representative and resultant reports were as informative as possible. Maclear Decl. ¶ 81; *see also id*

15   ¶ 6, Exhibit 2 (evidencing the level of involvement Plaintiff's counsel had in overseeing the factual

16   investigations into the Cables and their impacts on the Lake); Wren Decl. ¶¶ 13-20 (same).

17   Substantial evidence was also collected by third-parties, raising additional complex factual and legal

18   complications. *See, e.g*., ECF No. 124. This required Plaintiff's counsel to expend a considerable

19   amount of time and to leverage their expertise to ensure that Plaintiff developed a sufficient factual

20   basis to support its claims.

21          **ii.   Plaintiff achieved excellent results.**

22          Next, the courts and Local Rules factor in the results obtained. Here, Plaintiff's counsel

23   achieved a complete victory: Defendant has committed to expeditiously remove the offending

24   Cables from the Lake and thereby protect its precious ecosystem and everything and everyone who

25   cherishes it. *Kerr*, 526 F.2d at 70; *Stetson*, 821 F.3d at 1166-67; *C.f. Hot Line Constr., Inc., supra*,

26   at *2, 13 (in RCRA case where "Court entered a Consent Decree . . . settling the substantive claim"

27   requiring site remediation, "Plaintiffs secured an excellent result in this contentious litigation, and

28

1    the Court finds that full compensation is warranted"). There can be no dispute that Plaintiff

2    achieved exactly the result it set out to achieve here.

3          **iii.   The requested fee award is reasonable under the Eastern District's Rules.**

4          Plaintiff satisfies the Eastern District's rules regarding the reasonableness of this proposed

5    fee award. The declarations of Plaintiff's counsel provided herewith demonstrate that Plaintiff is the

6    prevailing party and that Plaintiff is eligible for fee recovery under both RCRA and Proposition 65.

7    E.D. Cal. L.R. 293(b). These declarations and the exhibits attached thereto explain the amount of

8    fees sought in sufficient detail, the time and labor required by each of Plaintiff's counsel, the

9    novelty and difficulty of the legal and factual questions presented, the skill required to prosecute the

10   case, the customary fee charged in matters of this nature, the experience, reputation, and ability of

11   Plaintiff's counsel, the nature and length of Plaintiff's relationship with counsel, awards in similar

12   actions, and the fact that Plaintiff's counsel assumed responsibility for this case on a contingency

13   basis. E.D. Cal. L.R. 293(f). Plaintiff therefore satisfied the Eastern District's rules regarding the

14   reasonableness of the requested fee award.

15         **iv.   Plaintiff's hourly rates are reasonable.**

16         The attorney fee rates sought herein are consistent with prevailing rates in the Eastern

17   District of California. *See Blum*, 465 U.S. at 895, n.11; *United Steelworkers of Am. v. Phelps Dodge*

18   *Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) ("Affidavits of the plaintiffs' attorney[s] and other

19   attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are

20   satisfactory evidence of the prevailing market rate"). In setting hourly rates, Plaintiff's counsel

21   reviewed the hourly rates charged by other lawyers of reasonably comparable skill, experience, and

22   reputation in the Eastern District of California. Flanders Decl. ¶¶ 10-20; *see also Franco v. Ruiz*

23   *Food Prods.*, 2012 U.S. Dist. LEXIS 169057, at *55 (E.D. Cal. 2012) ("[p]revailing rates in the

24   Eastern District of California are in the $400 range, with rates of up to $650 to $675 approved for

25   partners and senior associates with significant years of experience"); *Barbosa v. Cargill Meat Sols.*

26   *Corp.*, 297 F.R.D. 431, 452-53 (E.D. Cal. 2013) (awarding $400/hour to attorney with 5 years of

27   experience; $560/hour to attorney with 8 years of experience; $720/hour to attorney with 21 years

28   of experience); *Garcia v. Gordon Trucking, Inc.*, 2012 U.S. Dist. LEXIS 160052, at *9 (E.D. Cal.

2012) (prevailing hourly rates in the Fresno division of the Eastern District of California in the $400 range, and up to $650 to $675 for partners and senior associates with significant experience); *Bond v. Ferguson Enters.*, 2011 U.S. Dist. LEXIS 70390, at *9 (E.D. Cal. 2011) ($675/hour appropriate for partner with over 20 years of experience and $261/hour appropriate for associate with 2 years of experience); *Doe v. Cty. of Sacramento*, No. 2:21-cv-01438-MCE-CKD, 2024 U.S. Dist. LEXIS 83141 at *7, (E.D. Cal. 2024) ("the hourly rate of $425.00 . . . is reflective of the prevailing market rate within the Eastern District of California, Sacramento Division, for similar services by lawyers of reasonably comparable skill" for attorney with four years of experience). These collected cases span 2011-2024, over which time market rates have increased due to inflation. *See Graham v DaimlerChrysler Corp.,* 34 Cal.4th 553, 583-4 (2004) (approving a regular "percentage adjustment" during "an inflationary era"); *Perdue*, 559 U.S. at 555; *Missouri v Jenkins*, 491 U.S. 274, 284 (1989); *Moreno*, 534 F.3d at 1115; *Valdivia v Brown*, 848 F. Supp. 2d 1141, 1143 (E.D. Cal. 2011). Similarly, Plaintiff's counsel were awarded market rates in Sacramento Superior Court in 2018 which, when adjusted for inflation, would exceed the rates sought in the instant motion. *See* Flanders Decl. ¶¶ 14-20 (comparing rates previously awarded to Plaintiff's counsel, including in Sacramento, and adjusting based on annual inflation as reflected by the Consumer Price Index). The rates provided herein thus reflect and compensate for recent inflation during the pendency of this litigation.

Notably, there are no published opinions within the Eastern District providing fee awards in the RCRA context. The most recent California court to address fee recovery in a RCRA citizen suit is *Ecological Rights Found. v. Hot Line Constr., Inc*, where the Central District awarded counsel of record in this case the following hourly rates (by bar admission year): Matthew Maclear (2000) $950; Jason Flanders (2005) $910; Tom Brett (2017) $610; Harrison Beck (2021) $525; Theresa Trillo (2023) $455; Esmeralda Bustos (paralegal) $350. Flanders Dec. ¶ 15; *Ecological Rights Found. v. Hot Line Constr., Inc., supra,* ¶ 15. 2024 U.S. Dist. LEXIS 129282, at *6 (C.D. Cal. 2024). Counsel acknowledges that the Bureau of Labor Statistics reports attorney salaries roughly 19% lower in the Sacramento metro area than in the Los Angeles metro area where the *Hot Line* rates were approved, but counsel's rates requested herein are roughly 30+% lower than approved in

the Central District. Flanders Dec. ¶ 16. Moreover, the *Hot Line* case speaks to the complexity of prosecuting RCRA claims, and the expertise and competency of Plaintiff's counsel. Each attorney's supporting declaration sets forth their general litigation experience, and specific RCRA and Proposition 65 experience, to substantiate their rate for this matter. Maclear Decl. ¶ 6, Exhibit 2; *see also id.* ¶¶ 14-24; Maharg Decl. ¶¶ 5-16; Beck Decl. ¶¶ 5-13; Rothstein Decl. ¶¶ 5-12; Flanders Decl. ¶¶ 4-20; Brett Decl. ¶¶ 5-11; Trillo Decl. ¶¶ 5-13; Acree Decl. ¶¶ 5-13; Packard Decl. ¶¶ 5-15; Carlon Decl. ¶¶ 5-14; Boyd Decl. ¶¶ 5-11; Verick Decl. ¶¶ 5-19; Williams Decl. ¶¶ 5-17.

In addition, Plaintiff retained the services of Richard Drury, a highly experienced public-interest environmental litigator in California, to opine on the reasonableness of Plaintiff's requested rates. Mr. Drury has determined that the rates requested are reasonable given the context of this case and the relative experience of Plaintiff's counsel. Drury Decl. ¶¶ 23-46. Based on this review, reasonable 2024 hourly rates for the attorneys in this case are as follows. (The below table also includes the rates previously approved by this Court when issuing the First Consent Decree.)

| Attorney | Years of Practice | Approved 2021 Rate | 2024 Rate |
|---|---|---|---|
| J.K. Boyd | 38 | $600.00 | $725.00 |
| W. Verick | 36 | $600.00 | $725.00 |
| D. Williams | 35 | $645.00 | $725.00 |
| A. Packard | 30 | $575.00 | $725.00 |
| B. Acree | 24 | $550.00 | $650.00 |
| M. Maclear | 24 | N/A | $650.00 |
| J. Flanders | 19 | N/A | $625.00 |
| E. Maharg | 15 | N/A | $575.00 |
| W. Carlon | 8 | $250.00 | $550.00 |
| T. Brett | 8 | N/A | $550.00 |
| K. Rothstein | 3 | N/A | $325.00 |
| H. Beck | 3 | N/A | $325.00 |
| T. Trillo | 1 | N/A | $325.00 |

Plaintiff's requested rates are also reasonable given hourly rates prescribed by the *Laffey* Matrix. The *Laffey* Matrix is a United States Department of Justice billing matrix that provides billing rates for attorneys at various experience levels in the Washington, D.C., area and can be adjusted to establish comparable billing rates in other areas using data from the United States Bureau of Labor Statistics. *Bond*, 2011 U.S. Dist. LEXIS 70390, 2011 WL 2648879, at *9 (relying

on the *Laffey* Matrix and adjusting the rates provided there to account for differences in costs of living between D.C. and the relevant legal market).[1] As of 2023 (the last year for which the U.S. Bureau of Labor Statistics has data), the mean salary for attorneys in Washington D.C. and Sacramento, California was $223,890[2] and $177,160,[3] respectively. On average, therefore, Sacramento attorneys earn 21 percent less than attorneys in Washington D.C. Discounting the *Laffey* Rates by 21 percent yields rates commensurate with those claimed by Plaintiff here. Below is a comparison of the discounted *Laffey* Rates with rates claimed by counsel for Plaintiff here.

| Attorney | Years of Practice | Adjusted *Laffey* Rate | Rate Requested |
|---|---|---|---|
| J.K. Boyd | 38 | $1073.55 | $725.00 |
| W. Verick | 36 | $1073.55 | $725.00 |
| D. Williams | 35 | $1073.55 | $725.00 |
| A. Packard | 30 | $1073.55 | $725.00 |
| B. Acree | 24 | $953.76 | $650.00 |
| M. Maclear | 24 | $970.73 | $650.00 |
| J. Flanders | 21 | $919.82 | $625.00 |
| E. Maharg | 15 | $818.01 | $575.00 |
| W. Carlon | 8 | $663.89 | $550.00 |
| T. Brett | 8 | $663.89 | $550.00 |
| K. Rothstein | 3 | $431.25 | $325.00 |
| H. Beck | 3 | $431.25 | $325.00 |
| T. Trillo | 1 | $374.28 | $325.00 |

In sum, Plaintiff's counsel's market rates are supported by awards to attorneys of comparable skill and experience in this District, awards to Plaintiff's counsel in this and other Districts throughout California as adjusted for local costs of living and attorney salary data, expert declaration attestation to the reasonableness of the rates, and extensive declarations documenting counsel's experience.

---

[1] Available at: matrix (laffeymatrix.com)
[2] District of Columbia - May 2023 OEWS State Occupational Employment and Wage Estimates (bls.gov)
[3] Sacramento--Roseville--Arden-Arcade, CA - May 2023 OEWS Metropolitan and Nonmetropolitan Area Occupational Employment and Wage Estimates (bls.gov)

1

**v.  <u>Application of a fee multiplier is appropriate.</u>**

2      Both state and federal law strongly support a fee multiplier in this case. *See*, *Hensley, supra*,

3  461 U.S.at 448-449; *Mangold,* 67 F.3d at1478–1479 (2.0 multiplier). In *Asberry v. City of*

4  *Sacramento Sanitation Dept* , for example, the court approved a 1.5 multiplier after considering four

5  factors: 1) the novelty or difficulty of the questions involved; 2) the contingent risk involved in the

6  case; 3) the extent to which the nature of the litigation precluded other employment by the

7  attorneys; 4) and whether the lawyers received public and/or charitable funding. LEXIS 29138, at

8  *15-16 (E.D. Cal. 2004), citing *Bouman v. Block,* 940 F.2d 1211, 1237 (9th Cir. 1991) (1.3

9  multiplier).

10      Following *Asberry*, a 2.0 multiplier is appropriate in this case. As discussed, this case

11  required Plaintiff's counsel to apply RCRA and Proposition 65 to *in situ* telecommunications cables

12  submerged for decades in novel and challenging manner and against multiple leading nationwide

13  law firms. The case was taken on a purely contingency basis, with counsel receiving no

14  compensation for their substantial work on this case for several years. Maclear Decl. ¶ 51. No

15  public or charitable funding was provided. *Id*. And the considerable time commitment required to

16  successfully prosecute this matter certainly precluded other employment opportunities. *Id*. ¶ 87.

17  Although Plaintiff meets all four, only *one* of these factors needs to be met to justify the application

18  of a fee multiplier. *See Quevedo v. New Albertsons, Inc.,* No. SACV 13-1160-JLS (JPRx), 2015

19  U.S. Dist. LEXIS 178426, **17-18 (C.D. Cal. May 27, 2015), citing *Krumme v. Mercury Ins. Co.*,

20  123 Cal. App.4th 924, 947 (2004) (contingent risk alone required 1.2 multiplier to incentivize

21  enforcement of public rights); *Martinez v. Comm'r of Soc. Sec.*, No. 1:21-cv-00431-GSA, 2024 U.S.

22  Dist. LEXIS 112705, **4-5 (E.D. Cal. June 25, 2024) (lodestar-based calculations should be

23  increased to account for the risks attorneys assume in taking on cases on a contingency fee basis);

24  *Hensley,* 461 U.S. at 434 (same). California courts awarding fees under 1021.5 follow the same

25  practices. *See*, e.g., *San Bernardino Valley Audubon Soc'y,* 155 Cal.App.3d at 755 (1.4 multiplier);

26  *Kennedy Comm'n,* 91 Cal.App.5th at 467 (1.4 multiplier); *Kern River Pub. Access Comm.,* 170

27  Cal.App.3d at 1228 (1.5 multiplier).

28

1    *Crommie v. State of Cal., Public Utilities Com'n* is also compelling. 840 F. Supp. 719, 725-

2    726 (N.D. Cal. 1994). In that case the court noted that awarding a 2.0 multiplier in a contingency

3    fee case where, in that court's view, the plaintiff obtained exceptional results in light of the

4    defendant's "excessively vexatious and often unreasonable opposition to plaintiff's counsel" was

5    appropriate. *Id.* at 726. This is not to cast aspersions on Defendant's counsel, but every step of this

6    litigation has been fought tooth and nail. Maclear Decl. ¶¶ 85-86; Maharg Decl. ¶ 20. As a result of

7    Plaintiff's effort (and that of its counsel), over one hundred thousand pounds of lead will be

8    promptly removed from Lake Tahoe, one of the most famous and cherished natural wonders in the

9    entire country. Application of a 2.0 fee multiplier is thus appropriate. *See also Idaho Conservation*

10   *League v. Magar,* No. 3:12-cv-00337-CWD, 2015 U.S. Dist. LEXIS 124576, *7 (D. Idaho Sep. 17,

11   2015) (where environmental non-profit plaintiff "achieved substantial success in a case of public

12   importance" adjusting plaintiff's lodestar upwards was appropriate); *Farrar v. Hobby*, 506 U.S. 103

13   (1992), quoting *Hensley*, 461 U.S. at 436 ("'[T]he most critical factor' in determining the

14   reasonableness of a fee award 'is the degree of success obtained'"). Lake Tahoe is an irreplaceable

15   national treasure cherished by millions of Californians and other Americans, and Plaintiff has

16   achieved a substantial benefit for the Lake and the public who love it. Through the novel application

17   of complex statutes, Plaintiff achieved a great result for the public. For the foregoing reasons, a fee

18   multiplier of 2.0 is appropriate.

19       **C.  Plaintiff's Requested Costs are Also Reasonable.**

20       Through the date of this filing, Plaintiff has incurred $133,678.51 in litigation costs. Maclear

21   Decl. ¶ 7, Exhibit 3; *id.* ¶ 99. As outlined in the accompanying declarations and exhibits thereto,

22   these costs were reasonably incurred and are compensable under federal, state, and local standards.

23   Most of these costs are for litigation, investigative, and expert consultants' services.

24       RCRA provides for the reimbursement of litigation costs, including expert fees, for

25   prevailing parties. 42 U.S.C. § 6972(e). The Eastern District's local rules, therefore, allow for the

26   reimbursement of Plaintiff's reasonably incurred expert fees. E.D. Cal. L.R. 292(f)(11) (providing

27   for reimbursement of costs "allowed by any statute or rule or by the Court in the interest of

28   justice"). Plaintiff has provided a complete, itemized, and detailed accounting of its experts' fee

1  calculations, including a breakdown of their time spent. *Cal. Sportfishing Prot. Alliance,* 2016 U.S.

2  Dist. LEXIS 2511, at *9 (citing *Banas*, 47 F. Supp. 3d at 978-79) (holding that expert costs must be

3  shown in "real detail[,]" including "how the experts divided their time between various tasks" in

4  order to be compensable). And these expert fees were necessarily incurred in order to demonstrate

5  that the Cables were, are, and will continue discharging lead into Lake Tahoe in a serious,

6  significant way. Maclear Decl. ¶ 100; *see also Community Ass'n for Restoration of the Env't v.*

7  *Henry Bosma Dairy,* 2001 U.S. Dist. LEXIS 3579, at *59 (E.D. Wash. 2001) (expert testimony and

8  preparation is important in complex environmental matters and is therefore compensable).

9      The remaining costs were in the nature of court fees, process server fees, maintaining an

10  Everlaw (data management) account, printing, postage, increasing data storage, and travel costs. All

11  of these litigation costs were necessarily incurred and are fully recoverable. E.D. Cal. L.R. 292(f)

12  (providing for the recovery costs for "Clerk's fees[,]" "Court reporter's fees[,]" "Docket fees[,]"

13  "Fees for exemplification and copies of papers necessarily obtained for use in the action[,]" and

14  "Per diem, mileage and subsistence for witnesses"); *see also Sierra Club v. EPA*, 75 F. Supp. 3d

15  1125 (N.D. Cal. 2014); *In re Immune Responses Secs. Litigation,* 497 F. Supp. 2d 1166, 1177–78

16  (S.D. Cal. 2007) (costs for meals, hotels, and transportation; photocopies; postage; telephone and

17  fax; filing fees; messenger and overnight delivery; online legal research; class action notices;

18  experts, consultants, and investigators; and mediation fees recovered as reasonable and necessary).

19  Accordingly, Plaintiff's proposed cost award is also reasonable and compensable.

20  **V.   CONCLUSION**

21      For all the reasons set forth above, this Court should grant Plaintiff's motion for attorney's

22  fees and costs and award Plaintiff $1,327,172.00 in attorneys' fees and $133,678.51 for

23  reimbursement of costs, in addition to the multiplier the Court deems warranted.

24  ///

25  ///

26  ///

27  ///

28  ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AQUA TERRA AERIS LAW GROUP


DATED: October 31, 2024            */s/ Matthew Maclear*
Matthew C. Maclear
Jason R. Flanders
Erica A. Maharg
Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

MOTION FOR ATTORNEYS' FEES AND COSTS UNDER RCRA AND C.C.P. § 1021.5