# EXHIBIT 6

ANDREW L. PACKARD (State Bar No. 168690)
Email: andrew@packardlawoffices.com
LAW OFFICES OF ANDREW L. PACKARD
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062

[Additional counsel on p. 2]

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>    Plaintiff,<br><br>    v.<br><br>PACIFIC BELL TELEPHONE COMPANY<br><br>    Defendant. | Case No: 2:21-cv-00073-JDP<br><br>**PLAINTIFF'S FIRST AMENDED RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES** |

MATTHEW MACLEAR (State Bar No. 209228)
Email: mcm@atalawgroup.com
JASON FLANDERS (State Bar No. 238007)
Email: jrf@atalawgroup.com
ERICA A. MAHARG (State Bar No. 279396)
Email: eam@atalawgroup.com
J. THOMAS BRETT (State Bar No. 315820)
Email: jtb@atalawgroup.com
AQUA TERRA AERIS LAW GROUP
4030 Martin Luther King Jr Way
Oakland, CA 94609
Tel: (415) 568-5200

WILLIAM VERICK (State Bar No. 140972)
Email: wverick@igc.org
KLAMATH ENVIRONMENTAL LAW CENTER
1125 16th Street, Suite 204
Arcata, CA  95521
Tel: (707) 630-5061; Fax: (707) 630-5064

J. KIRK BOYD (State Bar No. 122759)
Email: jkb@drjkb.com
LAW OFFICE OF JOHN KIRK BOYD
548 Market St., Suite 1300
San Francisco, CA 94104-5401
Tel: (415) 440-2500

BRIAN ACREE (State Bar No. 202505)
Email: brian@brianacree.com
LAW OFFICES OF BRIAN ACREE
331 J Street, Suite 200
Sacramento, CA 95814
Tel: (916) 505-6861

WILLIAM CARLON (State Bar No. 305739)
Email: william@carlonlaw.com
LAW OFFICE OF WILLIAM CARLON
437 Post Street
Napa, CA 94559
Tel: (530) 514-4115

| | | |
|---|---|---|
| PROPOUNDING PARTY: | | DEFENDANT PACIFIC BELL TELEPHONE COMPANY |
| RESPONDING PARTY: | | PLAINTIFF CALIFORNIA SPORTFISHING PROTECTION ALLIANCE |
| SET NUMBER: | | ONE |

## PRELIMINARY STATEMENT

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff California Sportfishing Protection Alliance ("CSPA" or "Plaintiff") makes the following amended responses to the First Set of Interrogatories ("Interrogatories"), Interrogatory Numbers 1, 2, 3, and 12, propounded by Defendant Pacific Bell Telephone Company ("Defendant"). CSPA's responses to all other Interrogatories included in Plaintiff's to Defendant's First Set of Interrogatories to Plaintiff, served September 20, 2023, remain unchanged.

CSPA has not yet completed its investigation, discovery, or trial preparation for this matter. These responses are based only upon such information and documents which are presently available and specifically known to CSPA. It is anticipated that further discovery, independent investigation, and analysis will reveal additional documents or facts, add meaning to the known facts or documents, as well as establish entirely new factual conclusions and legal contentions, all of which might lead to substantial additions, variations and changes to the responses set forth herein. CSPA reserves the right to produce evidence of any subsequently discovered documents or facts which CSPA may later recall, locate, or discover. Accordingly, CSPA reserves the right to change these responses as additional facts are ascertained, analyses are made, legal research is completed, documents are discovered, and contentions are made. These responses should in no way prejudice CSPA in relation to further discovery, research, or analysis.

**INTERROGATORY NO. 1:**

Describe in detail all testing conducted by YOU concerning the CABLES.

**RESPONSE TO INTERROGATORY NO. 1:**

Plaintiff objects to the extent that the request seeks information protected by an attorney client privilege or constitutes attorney work product. Plaintiff further objects that the request is vague and ambiguous in its use of the undefined word "testing," as the term is undefined and unclear. Plaintiff

further objects that the subject of this request or interrogatory is properly the subject of expert testimony, calls for premature disclosure of expert opinions, and responses will be provided to properly promulgated expert discovery. Without waiving these objections and subject to them, Plaintiff responds as follows:

Prior to this action being filed, attorneys for Plaintiff obtained a piece of cable which attorneys for Plaintiff are informed and believe was removed from the disconnected end of Defendant's cable in Lake Tahoe some years before. The water that was used for testing the discharge of lead was taken directly from Lake Tahoe. A piece of the Cable approximately 40 centimeters in length was submerged in a plastic container of Lake Tahoe water. A sample was taken of the water after one day. A second sample of the water was taken after seven days. These samples, as well as a sample blank of the Lake Tahoe water prior to the placement of the Cable, were provided to a certified lab for analysis of lead content. The analysis of sample blank showed no detection of lead in the water. The analysis of the sample taken after the cable had been submerged in the Lake Tahoe water for one day showed a concentration of 650 micrograms of lead per liter of water, and analysis of the sample after one week showed that enough lead had continued to be dissolved from the Cable to raise the concentration of lead in the water to 1,500 micrograms per liter. A copy of the laboratory report of this concentration has been or will be provided as part of the document production requested by Defendant. A second test was performed on the length of Cable. The cut ends of the length of Cable were immersed in melted paraffin which was allowed to harden and seal the Cable ends. The length of Cable was placed in a plastic tub, immersed in Walnut Creek tap water for an undetermined length of time. A sample was taken of the water in which the length of Cable was immersed. This water sample was sent to the same laboratory as performed the first water sample taken of water in which the length of Cable was immersed (described above). Analysis of the water sample taken in this second test showed that the water contained a concentration of 29 micrograms of lead per liter of water. The protocol the laboratory used to analyze the above-described samples is described in the laboratory reports, all of which will be produced. In addition, a photograph of the paraffin end-sealed length of cable, sitting in the plastic tub, will also be produced. The length of Cable and plastic

container used in this sample collection are in the custody of counsel for Plaintiff and can be arranged so that Defendant can inspect them.

**INTERROGATORY NO. 2:**

IDENTIFY each of YOUR members who YOU contend has been injured due to the CABLES, and for each member identified, describe the nature, extent, and alleged cause of the injury.

**RESPONSE TO INTERROGATORY NO. 2:**

Plaintiff objects to the extent that the request seeks information protected by an attorney client privilege or constitutes attorney work product. Plaintiff further objects that the request is vague and ambiguous in its use of the undefined phrase "has been injured," and Plaintiff interprets this phrase to include all injuries recognized for the purposes of Article III standing and answers accordingly. Plaintiff further objects to this Interrogatory as it is compound, seeking both the identities of certain members and their alleged injuries. Without waiving these objections and subject to them, Plaintiff responds as follows:

CSPA contends the following members have suffered injuries sufficient to demonstrate Article III standing:

- Richard Izmirian
- Alan Wilhelmy
- Harry Petrakis
- William Uyeki
- Chris Shutes

Richard Izmirian is currently a member of CSPA and has been since 1985. Over the years, he has made numerous monetary donations to CSPA. He is currently a member of CSPA's Board of Directors and has served in that capacity for decades. Mr. Izmirian's family vacationed at Lake Tahoe at least every other summer while he was growing up. He and his family swam, fished, and played in Lake Tahoe, and currently he has family members that have a residence at Lake Tahoe. As an adult, Mr. Izmirian has fished extensively in the Truckee River and Pyramid Lake downstream from Lake Tahoe. He has organized and managed a number of fly-fishing events at Lake Tahoe that have brought hundreds of people to the Lake.

Alan Wilhelmy is currently a member of CSPA and has been since approximately 2010. Mr. Wilhelmy has donated to CSPA several times over the past ten to twelve years, and his last donation to CSPA was in December 2023. Mr. Wilhelmy has vacationed at a friend's home on Lake Tahoe in Tahoe City a number of times. When he visits, he often fly fishes the Truckee River and the Little Truckee. He also swims and paddle boards in the Lake.

Harry Petrakis is a current member of CSPA and has been for approximately ten years. He has made three to four donations to CSPA since becoming a member, totally less than $400. Mr. Petrakis is also a member of the Santa Cruz Flyfishing Club and the Granite Bay Flycasters. I have had a vacation home near Tahoe City since 2017. For over fifty years, Mr. Petrakis and his wife have enjoyed swimming, picnicking, hiking, fishing, and boating on and in Lake Tahoe. Lake Tahoe is of particular interest to Mr. Petrakis because his wife Linda was raised on the south shore of Lake Tahoe and has many fond memories of the Lake. Mr. Petrakis and his wife raised their children enjoying activities on and in the Lake as well. Mr. Petrakis' family drinks water that comes from Lake Tahoe, and/or wells near the lake. He also enjoys viewing the flora and fauna in and around the lake and our activities in Lake Tahoe's relatively pristine environs. Lake Tahoe's pristine environment, pure water, and flora and fauna instill a sense of wonder and renewal in Mr. Petrakis, as well as his family. As a result, Mr. Petrakis looks forward to going and make trips to the Lake frequently. Mr. Petrakis believes that Lake Tahoe is one of the most pure bodies of water in the world and that it should remain that way.

William Uyeki is currently a member and has been a member of CSPA since at least 2017. He has donated to CSPA approximately two times over the last six years. He is a past president and has served on the Board of Directors for Peninsula Fly Fishers, a recreational fly fishing nonprofit club in Redwood City, CA. He is also a current member and donor for the following additional conservation organizations: California Trout, Trout Unlimited, Fly Fishers International, and The Wild Salmon Center. He has performed volunteer work for the California Department of Fish and Wildlife (CDFW) at Pescadero Creek on the San Mateo County coast, which consisted of assisting with fish sampling surveys and conducting angler surveys on behalf of CDFW. Since 2009, Mr. Uyeki has fly-fished near Sutcliffe, Nevada, at Pyramid Lake which is fed by the Truckee River, downstream

1  of Lake Tahoe. He has fished Pyramid Lake annually since 2018 (and sometimes 2-3 times a year)
2  from personal watercraft and from ladders, so his hands are in constant contact with the Lake's water.
3  Mr. Uyeki has also fished in the Truckee River periodically since the late 1990s, including wading in
4  the Truckee River downstream from Lake Tahoe near Alpine Meadows (where Bear Creek flows into
5  the Truckee) and further downstream near Boca and at Floriston. He expects to continue fishing both
6  Pyramid Lake annually and the Truckee River frequently in future years.  He enjoys fishing those
7  pristine waters, and it's extremely important to him that these waters are safe and do not contain
8  toxins that would harm the micro-organisms and aquatic life upon which the fish populations are
9  highly dependent. It's also important to Mr. Uyeki that these waters are safe for human beings.

   Chris Shutes is the Executive Director of CSPA and has worked for the organization for eighteen years. As Executive Director of CSPA, he is extremely concerned about water quality and quantity issues across the State of California and has dedicated many years of his life to ensuring that his daughter and grandchildren can enjoy these natural resources as much as he has. Mr. Shutes is a lifelong California fisherman. He first fished in Lake Tahoe and one of its tributaries when he was about ten years old, when he camped with his father and sister at Meeks Bay. As a teenager, Mr. Shutes spent a week or more over several summers at summer homes of schoolmates at the north end of Lake Tahoe. He fished in Lake Tahoe itself, in one of its tributaries, and in the Truckee River downstream of Lake Tahoe. He also boated in the Truckee River. As a teenager, Mr Shutes also spent two summers with his mother and sister at the cabin of a family friend at Echo Summit on Highway 50. Going and coming to that cabin, he enjoyed breathtaking views of Lake Tahoe and the surrounding mountains. He also enjoyed the views travelling to South Lake Tahoe, over Luther Pass south of Lake Tahoe, and driving along the west shore of Lake Tahoe to Fallen Leaf Lake, Emerald Bay, and Tahoe City. As a young adult, Mr. Shutes hiked in Desolation Valley Wilderness Area near the southwest flank of Lake Tahoe. The hike out of Rockbound Valley over to Emerald Bay afforded Mr. Shutes one of the most magnificent visual experiences of his life, cresting the ridge to see Emerald Bay and Lake Tahoe below. As an adult, Mr. Shutes returned to some of the areas around Lake Tahoe that he fished as a child, as much to see the Lake as for the fishing. He has also driven along the Lake and along the lower Truckee River at various times traveling to and from other locations.

As part of his work with CSPA, Mr. Shutes worked on the El Dorado National Forest's and El Dorado County's planning for Off-Highway Vehicle use. Part of that work sought to limit erosion along one of the tributaries to Lake Tahoe that he fished as a child. On behalf of CSPA, he has also worked to assure adequate inflow to the upper Truckee River, Lake Tahoe's biggest tributary, from Echo Creek. Echo Creek provides juvenile rearing habitat for trout that are the progeny of spawners that move upstream from Lake Tahoe. He is also a client representative in litigation against the Lahontan Regional Water Quality Control Board concerning excessive nutrient discharges into Lake Tahoe from a development at the mouth of the Upper Truckee River, as well as the client representative for CSPA for this litigation.

All of these members are aware of the lead-containing cables in Lake Tahoe they understand are or were owned and operated by Defendant. They are concerned that the lead in the cables is discharging into the Lake and that these pollutants will harm the health of the lake, the Truckee River, and all downstream tributaries, which they use and enjoy. They are also concerned that the pollutants will endanger the health of themselves, family, friends, and the others, as well as animals, that use the Lake for drinking and/or swimming. They are concerned that the pollution will cause the Lake to suffer harm to its reputation and potentially diminish the tourism economy upon which the region relies. The members' knowledge of the discharges of lead from the cables prevents them from fully enjoying their recreational, aesthetic, and other activities at Lake Tahoe.

**INTERROGATORY NO. 3:**

State all facts supporting any injuries YOU contend YOU have suffered due to the CABLES.

**RESPONSE TO INTERROGATORY NO. 3:**

Plaintiff objects to the extent that the request seeks information protected by an attorney client privilege or constitutes attorney work product. Plaintiff further objects that the request is vague and ambiguous in use of the phrase "injuries", also in its lack of time specification. Plaintiff interprets this phrase to include all injuries recognized for the purposes of Article III standing and answers accordingly. To the extent this Interrogatory seeks information regarding Plaintiff's members, other than the members that Plaintiff has identified in Interrogatory No. 2, Plaintiff objects to the Interrogatory as irrelevant and the information is protected under the First Amendment of the U.S.

Constitution. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1126 (9th Cir. 2010); *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, 2018 WL 2441518, at *8-11 (N.D. Cal. May 31, 2018). Plaintiff further objects to the extent the information requested is properly the subject of expert testimony and responses will be provided to properly promulgated expert discovery.

Without waiving these objections and subject to them, Plaintiff fully incorporates its response from Interrogatory No. 2 herein.

**INTERROGATORY NO. 12:**

Describe in detail all standards that YOU followed in testing lead-clad cables.

**RESPONSE TO INTERROGATORY NO. 12:**

Plaintiff objects to the extent the request seeks information protected by an attorney client privilege or constitutes attorney work product. Plaintiff further objects that the request is vague and ambiguous in use of the word "tests" and "standards.". Plaintiff further objects that the subject of this request or interrogatory is properly the subject of expert testimony and responses will be provided to properly promulgated expert discovery. Without waiving these objections and subject to them, Plaintiff incorporates its response to Interrogatory No. 1 herein. Plaintiff also points Defendant to Bates Nos. CSPA000002-13 and CSPA003079-3086.

Dated: February 5, 2024

AQUA TERRA AERIS LAW GROUP

/s Erica A. Maharg
Erica A. Maharg
Attorneys for Plaintiff CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

**PROOF OF SERVICE**

I am a citizen of the United States, employed in the County of Alameda. My business address is 4030 Martin Luther King Jr. Way, Oakland, California 94609. I am over the age of 18 years and not a party to the above-entitled action. Document(s) served:

- **PLAINTIFF'S FIRST AMENDED RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

On February 5, 2024, I served the foregoing document(s) on the parties in this action, located on the **attached service list,** by placing copies thereof in sealed envelopes addressed as shown below for service as designated below:

| | | |
|---|---|---|
| ( ) | By First Class Mail: | Deposited the sealed envelope with the United States Postal Service, with the postage fully paid. |
| ( ) | By Personal Service: | I personally delivered each such envelope to the office of the address on the date last written below. |
| ( ) | By Overnight Mail: | I caused each such envelope to be placed in a box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express service carrier to receive documents, in an envelope or package designated by the express service carrier with delivery fees paid or provided for. |
| (xx) | By Electronic Transmission: | Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the person(s) at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful. |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on February 5, 2024, in Hayward, California.

Esmeralda Bustos

**SERVICE LIST**

NAVI DHILLON
Email : navidhillon@paulhastings.com
PETER C. MEIER
Email : petermeier@paulhastings.com
LUCAS GRUNBAUM
Email : lucasgrunbaum@paulhastings.com
PAUL HASTINGS, LLP
101 California Street, 48th Floor
San Francisco, CA  94111

HARIKLIA KARIS
Email: hkaris@kirkland.com
ROBERT B. ELLIS
Email: rellis@kirkland.com
MARK J. NOMELLINI
Email: mnomellini@kirkland.com
KIRKLAND & ELLIS, LLP
300 North LaSalle
Chicago, IL  60654

JONATHAN D. KELLEY
Email: jon.kelley@kirkland.com
KIRKLAND & ELLIS, LLP
4550 Travis Street
Dallas, TX 75205

*Attorneys for Pacific Bell Telephone Company*