Joshua Koltun (Bar No. 173040)
One Sansome Street
Suite 3500, No. 500
San Francisco, California  94104
Telephone:  415.680.3410
Facsimile:  866.462.5959
joshua@koltunattorney.com

Attorney for Nonparty Witnesses
Marine Taxonomic Services, Ltd,
Below the Blue, Seth Jones, and
Monique Rydel-Fortner ("BTB-MTS")

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>    Plaintiff,<br>v.<br><br>PACIFIC BELL TELEPHONE COMPANY<br><br>    Defendant | Case 2:21-cv-00073-JDP |
| PACIFIC BELL TELEPHONE COMPANY,<br><br>    Movant,<br>v.<br><br>MARINE TAXONOMIC SERVICES, LTD.<br><br>    Respondent | Case No. 2:24-cv-00022-KJM-JDP<br><br>**DECLARATION OF SETH JONES**<br><br>Zoom Hearing:  December 12, 2024<br>Time:                10 am<br>Courtroom         9<br>Judge:          Hon. Jeremy D. Peterson |

I, Seth Jones, declare as follows:

1. I am the President of Marine Taxonomic Services, Ltd ("MTS") and Cofounder, with Monique Rydel-Fortner, of its nonprofit affiliate, Below the Blue ("BTB"). I will refer to MTS, BTB, myself and Ms. Rydel-Fortner collectively as "BTB-MTS." MTS is an environmental consulting firm. BTB is a nonprofit dedicated to removing foreign debris from water bodies and educating the public about pollution. *Id.*

2. MTS has 16 permanent employees; 40 including seasonal staff. In the last four years, its net annual profit has varied from -$4451 to $792,983. BTB currently has about $5000 in assets, and has never had more than $10,000, most of which was donated by Ms. Rydel-Fortner.

3. I discovered a severed cable at the bottom of Lake Tahoe, and in 2018, realized it was a submarine telecom cable. At that point MTS performed an assay and determined that the cable was sheathed in lead and that sheathing weighed over 17,898 pounds per mile. Over the next two years BTB-MTS attempted to interest government environmental regulators in the lead cables at the bottom of the lake. In 2020, I brought the matter to the attention of Plaintiff's counsel. Subsequently Plaintiff brought this lawsuit.

4. I attach hereto as **Exhibit A** a copy of my text message that AT&T referred to in its informal brief, at 1 n. 8 (bates number TRDC0000372).

5. Immediately after the Complaint was filed, in January 2021, Torey Denoo, an AT&T employee, arranged with plaintiff's lawyers for Ms. Rydel-Fortner and I to give him a boat tour and show him the location of the lead-clad cables, both the submerged portions and where they came on land.

6. When, in November 2021, the Court issued the Consent Decree, BTB issued a press release in which it took credit for bringing the existence of the Cables to public attention and pushing for their removal, a copy of which I attach as **Exhibit B**. Contemporaneous media coverage similarly credited BTB as having discovered the Cables and brought them to public attention. I attach as **Exhibits C & D** examples of such coverage.

7. Torey Denoo was well aware of our public positions and of the media coverage. At the

- 1 -

1  time, AT&T did not regard BTB-MTS' public environmental advocacy as a problem.  BTB-MTS
2  continued to provide assistance to AT&T on locating the cables and with obtaining the proper permits
3  to remove them.  BTB-MTS provided this assistance *pro bono*.  In January 2022, Mr. Denoo invited
4  MTS to submit a bid for work relating to the removal of the cables.  MTS submitted a bid for
5  permitting and surveying work, but a different firm was hired in February 2022.  It was clear by
6  February 2022 that MTS was not going to get paid work from AT&T.   By January 2024, when BTB-
7  MTS began to incur the expenses of compliance with the subpoena  AT&T had  actually completed
8  the work on which MTS had bid.

9      8.  Starting in January 2022, BTB-MTS began assisting the *Journal* and the
10 Environmental Defense Fund ("EDF") on an investigation of lead-clad cables, which culminated in
11 BTB-MTS publishing a report on that investigation and the *Journal* publishing a series of articles in
12 July 2023 on the subject.  As soon as those articles were published, AT&T began to aggressively treat
13 BTB-MTS (and the Journal) as an adversary.  In August 2023, BTB and MTS were served with
14 identical subpoenas.  After defense counsel refused to give BTB-MTS an extension of time to look for
15 counsel unless it agreed to produce the requested documents, I "object[ed] to the requests in the
16 subpoena because they are burdensome, not related to litigation and violate my first amendment
17 rights." (*See* DE 65-18 at 2, 3.)

18     9.  On August 26, the Vance Center for International Justice agreed to assist BTB-MTS by
19 finding counsel from its roster of large law firms to represent it.  On separate occasions, two law firms
20 each agreed to represent BTB-MTS, but later withdrew; the firms were Covington and Weil Gotschal.

21     10.  I first spoke with Joshua Koltun on November 22, 2023, and shortly thereafter BTB-
22 MTS signed a written engagement agreement with him to represent us concerning this matter.

23     11.  Starting in January 2024, I and Ms. Rydel-Fortner began working closely with Mr.
24 Koltun and the staff of Alvarez & Marsel ("A&M").  MTS signed the engagement agreement with
25 A&M.  A&M visited MTS offices and imaged multiple computers, devices and cellphones, and we
26 gave it access to multiple domains and email accounts so that it could download these as well. Over
27 the next several weeks, Ms. Rydel-Fortner and I, working  nonstop with A&M staff and Mr. Koltun,
28 conducted multiple word searches and reviewed tens of thousands of documents for responsiveness.

Joshua Koltun ATTORNEY

Ms. Rydel-Fortner and I kept contemporaneous track of the time we spent on this project which had the code-name "Project Melrose" given to it by A&M. I attach as **Exhibit E** timesheets generated by the billing software MTS uses, at the hourly rates Ms. Rydel-Fortner and I ordinarily charge for our time in the marketplace. The software we use requires one to select from a limited drop-down menu to characterize the activity. Since document review in litigation is not one of the ordinary activities listed in the drop-down menu, we selected "project management" as a placeholder for the document review we were doing. No time was charged to anything other than the review of documents in conjunction with A&M and Mr. Koltun for purposes of making the document production to comply with the subpoena.

I swear under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on November ___, 2024 at _____ California.

_____
Seth Jones

- 3 -

Decl. Seth Jones                                                                                                  2:21-cv-00073-JDP / 24-cv-00022-KJM-JDP

1  Ms. Rydel-Fortner and I kept contemporaneous track of the time we spent on this project which had
2  the code-name "Project Melrose" given to it by A&M. I attach as **Exhibit E** timesheets generated by
3  the billing software MTS uses, at the hourly rates Ms. Rydel-Fortner and I ordinarily charge for our
4  time in the marketplace. The software we use requires one to select from a limited drop-down menu
5  to characterize the activity. Since document review in litigation is not one of the ordinary activities
6  listed in the drop-down menu, we selected "project management" as a placeholder for the document
7  review we were doing. No time was charged to anything other than the review of documents in
8  conjunction with A&M and Mr. Koltun for purposes of making the document production to comply
9  with the subpoena.

11 I swear under penalty of perjury under the laws of the United States that the foregoing is true and
12 correct.
13 Executed on November 5, 2024 at South Lake Tahoe California.

                                                                    Seth Jones

Joshua Koltun ATTORNEY