MATTHEW MACLEAR (State Bar No. 209228)
Email: mcm@atalawgroup.com
JASON FLANDERS (State Bar No. 238007)
Email: jrf@atalawgroup.com
ERICA A. MAHARG (State Bar No. 279396)
Email: eam@atalawgroup.com
J. THOMAS BRETT (State Bar No. 315820)
Email: jtb@atalawgroup.com
AQUA TERRA AERIS LAW GROUP
8 Rio Vista Ave.
Oakland, CA 94611
Tel: (415) 568-5200

[Additional counsel on p. 2]

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC BELL TELEPHONE COMPANY,<br><br>Defendant. | Case No.: 2:21-cv-00073-JDP<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS UNDER THE RESOURCE CONSERVATION AND RECOVERY ACT (42 U.S.C. § 6972(e)) AND CODE OF CIVIL PROCEDURE SECTION 1021.5**<br><br>Date: December 19, 2024<br>Time: 10:00 am<br>Judge: Hon. Jeremy D. Peterson<br>Courtroom: 9, 13th Floor |

ANDREW L. PACKARD (State Bar No. 168690)
Email: andrew@packardlawoffices.com
LAW OFFICES OF ANDREW L. PACKARD
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062

WILLIAM VERICK (State Bar No. 140972)
Email: wverick@igc.org
KLAMATH ENVIRONMENTAL LAW CENTER
1125 16th Street, Suite 204
Arcata, CA 95521
Tel: (707) 630-5061; Fax: (707) 630-5064

J. KIRK BOYD (State Bar No. 122759)
Email: jkb@drjkb.com
LAW OFFICE OF JOHN KIRK BOYD
548 Market St., Suite 1300
San Francisco, CA 94104-5401
Tel: (415) 440-2500

BRIAN ACREE (State Bar No. 202505)
Email: brian@brianacree.com
LAW OFFICES OF BRIAN ACREE
331 J Street, Suite 200
Sacramento, CA 95814
Tel: (916) 505-6861

WILLIAM CARLON (State Bar No. 305739)
Email: william@carlonlaw.com
LAW OFFICE OF WILLIAM CARLON
437 Post Street
Napa, CA 94559
Tel: (530) 514-4115

**TABLE OF CONTENTS**

I. ARGUMENT ........................................................................................................................ 2

    A. Plaintiff's Proposed Lodestar Amount is Fully Supported. ...................................... 2

        i. The Number of Hours Billed by Plaintiff's Counsel Was Reasonable. ........................ 2

            a. Defendant Fails to Contest the Overwhelming Majority of Plaintiff's Counsel's Hours. ................................................................................................................ 3

            b. Defendant's Evidence in Opposition Fails to Negate Any Essential Element of Plaintiff's Fee and Cost Request. ........................................................................ 5

            c. Defendant's Argument that "Early Settlement" Undermines Plaintiff's Fee Claim is Inaccurate. ........................................................................................... 6

            d. Plaintiff Seeks Recovery for Time that was Necessary to Prosecute this Case, which Led to a Significant and Impressive Settlement. ..................................... 8

            e. CSPA's Claims Were Novel Because Extremely Few Published Cases Consider Discharges to Waters Under Proposition 65, Let Alone How Proposition 65 and RCRA Interact ................................................................... 10

        ii. The Hourly Rate Requested by CSPA's Counsel is Reasonable in Light of the Rates Prevailing in the Community for Similar Work. ........................................ 11

    B. A Fee Multiplier is Warranted. ................................................................................ 13

    C. Plaintiff's Requested Costs are Compensable. ....................................................... 14

II. CONCLUSION ................................................................................................................. 15

# **MEMORANDUM**

Defendant Pacific Bell Telephone Company's ("Defendant") Opposition to Plaintiff's Motion for Attorneys' Fees and Costs ("Opposition," ECF No. 171) never overcomes the simple fact that Plaintiff California Sportfishing Protection Alliance ("Plaintiff") obtained excellent results in this case. Plaintiff initiated the lawsuit to compel Defendant to remove its six miles of decaying, abandoned, and toxic telecommunications cables (the "Cables") from Lake Tahoe, and achieved exactly that. Maharg Decl., ¶ 92. If "[a] plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Feminist Women's Health Ctr. v Blythe*, 32 Cal.App.4th 1641, 1674 n. 8 (1995).

Accordingly, Defendant's Opposition goes to great lengths to describe what this case was *not*, emphasizing that the case included no motions for summary judgment, expert depositions, or pretrial filings. This is irrelevant, and the Opposition fails to address the overwhelming majority of the attorney time Plaintiff included in its motion. Defendant's extreme position that Plaintiff is entitled to *no recovery* for any time or expenses incurred since the entry of the first Consent Decree undermines its entire argument and conflicts with the Ninth Circuit rule that it is an abuse of discretion to deny prevailing environmental citizen suit plaintiffs attorney fee recovery absent "extremely rare" special circumstances. *See. e.g.*, *Resurrection Bay Conservation Alliance v. City of Seward*, 640 F.3d 1087, 1091-92 (9th Cir. 2011); *Waterkeeper v. Corona Clay Co.*, No. 8:18-cv-00333-DOC (DFM), 2024 U.S. Dist. LEXIS 10550, at *6 (C.D. Cal. Jan. 19, 2024) (full compensation is necessary to "prevailing environmental citizen suit plaintiffs to encourage the achievement of statutory goals as fee shifting is typically required for public interest groups to secure representation," [internal cites omitted]). Moreover, state law strongly supports a fee multiplier in this case: a successful multi-year effort by a team of attorneys and scientists to compel a major corporation represented by several prominent law firms to remove the massive, abandoned Cables from one of this country's most visited and cherished natural wonders.

In its opening brief, Plaintiff identified 2,862.5 attorney and paralegal hours prosecuting this case, and eliminated 510.2 hours (20.87%) for billing judgment. ECF No. 156-1 at 25. Since then, Plaintiff has incurred 109.9 legal and paralegal hours, which Plaintiff reduces by 32.2 hours (29.3%)

for billing judgment. Maclear Decl., Ex. 1. Thus, Plaintiff seeks recovery of $1,366,182.25 in fees, plus a multiplier to be determined, and $133,678.51 in costs.

I.  ARGUMENT

    A.  **Plaintiff's Proposed Lodestar Amount is Fully Supported.**

Defendant's opposition strategy is to minimize the scope of this case by recharacterizing it as fully cooperative and relatively simple. This revisionist history must be rejected. Following vacatur of the first Consent Decree, Defendant made clear that it "strongly disputes these claims." ECF No. 57 at 2. When the first Consent Decree was vacated, Defendant hired a *second* consulting firm to argue that the Cables were harmless. ECF No. 57 at 2-3. When the second Consent Decree was lodged with the Court, Defendant filed its "non-opposition" to the settlement but included **nine new** expert declarations and several new expert reports characterizing the harms from the Cables as minimal. ECF No. 148. Yet, Defendant baselessly contends that Plaintiff's time and expense working with Plaintiff's experts up through settlement was not reasonable or necessary. This is plainly contradicted by Defendant's own tactics. Similarly, Defendant downplays Plaintiff's discovery efforts by noting that no motions to compel were filed, but completely ignores the numerous laborious meet-and-confer calls, letters, and compromises that Plaintiff undertook to avoid unnecessary motion practice. Maharg Decl., ¶¶ 6-70. Defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986). As outlined below, Defendant's arguments in its Opposition are either irrelevant or misguided (or both), and a fully compensatory fee, including a multiplier, and full costs, should be awarded.

        i.  <u>**The Number of Hours Billed by Plaintiff's Counsel Was Reasonable.**</u>

Defendant's Opposition largely relies on generalized complaints that this case was simple and should not have incurred much time or expense. However, with a handful of exceptions discussed below, Defendant fails to pinpoint which specific activities it contends were unnecessary or unreasonable. Generalized complaints about counsel's time fail:

> [L]awyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment

as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

### a. Defendant Fails to Contest the Overwhelming Majority of Plaintiff's Counsel's Hours.

Most of Defendant's Opposition explains what this case was *not* – no motions for summary judgment, no expert depositions, no trial; but in so doing, Defendant completely ignores the well documented work Plaintiff was required to undertake to fully achieve its litigation goal of compelling Defendant to remove the Cables from Lake Tahoe. As explained in its underlying Motion, Plaintiff's counsel divided their time into seven categories: (1) pre-filing factual investigations; (2) research, drafting, serving, and filing the notice letter and complaints; (3) case management and analysis; (4) post-filing factual investigations; (5) discovery; (6) settlement negotiations and work necessary to obtain this Court's approval of the two settlements; and (7) and preparing and arguing this fee motion. ECF No. 156-01 at 13-18. Yet, Defendant's Opposition *only specifically addresses* activities within *three categories* presented by Plaintiff: case management and analysis, discovery, and settlement negotiations including obtaining judicial settlement approval. Specifically, Defendant argues the following activities are not recoverable (ECF No. 171 at 21-24) and Plaintiff has correlated the specific entries Defendant complains of to the corresponding category from Plaintiff's motion:

- Time spent researching and drafting pleadings that were not filed (**Category 3**, *see,* ECF Nos. 156-01 at 14-15; 156-4 at 64–69, 86, 96, 103–12; 156-6 at 56; 156-7 at 94; 156-15 at 82–83, 85–88; 156-16 at 25 31, 40; 157-2 at 423, 431–33);

- Time spent coordinating funding efforts for this litigation (Plaintiff's motion wrote off <u>all</u> such time [ECF No. 157-2], which would nonetheless have fallen under **Category 3**, *see,* ECF No. 157-2 at 244-248, 270-274);

- Time spent preparing for depositions that never occurred (**Category 5**; *see,* ECF Nos. 156-01 at 16-17; 156-4 at 107, 111; 156-7 at 103, 106; 156-12 at 28; 156-13, at 19 44–45, 48–49; 156-15 at 78–79, 91, 95–101; 156-16 at 31, 33–38; 157-2 at 407, 409, 411, 417, 419–20, 437, 444, 455, 457–61);

- Time spent preparing and serving subpoenas that were not properly served and researching and participating in the dispute that emanated therefrom (**Category 5**; *see,* ECF Nos. 156-01 at 16-17; 156-4 at 107; 156-5 at 18–20; 156-11 at 38–40; 156-13 at 28 29; 156-15 at 91–92; 156-17 at 27–33; 157-2 at 425, 431–33, 437–38);

- Time spent between the entry of the First Consent Decree and the vacatur thereof (**Category 6**, *see,* ECF Nos. 156-01 at 17; 156-4 at 106–08; 156-5 at 15 20; 156-6 at 33, 47–53, 56; 156-7 at 92, 96, 98, 104; 156-8 at 31–32; 156-13 at 15, 22, 38; 156-15 at 75, 90; 157-2 at 409–10, 413, 415–16, 438, 441–44, 446–47, 450, 461, 464, 471).

At no point has Defendant explained, with any specificity, why the billing entries Plaintiff's counsel attributed to categories one, two, four, or seven are inappropriate for fee recovery. This includes the appropriateness of fee recovery for: preparing the complaints; preparing and arguing the motion to amend the scheduling order; searching for and reviewing government agency records concerning the Cables; meeting with co-counsel to discuss the case and strategize its prosecution; preparing and serving discovery requests onto Defendant and several third-party entities; reviewing and responding to discovery requests served on Plaintiff by Defendant; coordinating and managing the sampling regimen necessary to prove the Cables were discharging significant lead into Lake Tahoe; investigating the area surrounding the Cables to analyze issues including the cost of removal; negotiating both consent decrees; and preparing and arguing this Motion. ECF No. 156-01 at 13-18.

Again, nowhere in Defendant's Opposition does it <u>specifically</u> take issue with (1) whether any of these activities were necessary, (2) whether the time spent on any specific activity was reasonable, or (3) whether timekeeping for any of these activities was accurate or reliable. Failure to raise arguments in briefing is to be construed as a waiver of those arguments. *See, e.g., A-1 Ambulance Serv., Inc. v. Cnty. of Monterey*, 90 F.3d 333, 338-39 (9th Cir. 1996); *Sanchez v. Pacific Powder Co.*, 147 F.3d 1097, 1100 (9th Cir. 1998). While Defendant offers rhetorical arguments, like its oft-quoted line that the case was handed to Plaintiff "on a platter," this approach fails to satisfy Defendant's *Moreno* burden of providing "specific reasons for reducing the fee request . . . ." *Moreno*, *supra*, 534 F.3d at 1116; *see also Waterkeeper*, 2024 U.S. Dist. LEXIS 10550, at * 7 (criticizing the "level of generality of Defendant's request for reduction"). Surely Defendant cannot task the Court with the burden of combing through Plaintiff's thousands of rows of time entries and determining which do and do not align with Defendant's generalized arguments. *See Potter v. Dist. of Columbia*, 558 F.3d 542 (2009) (cleaned up) (judges "are not like pigs, hunting for truffles buried in briefs or the record."). Because Defendant has failed to raise any specific critique of any time contained in Plaintiff's Categories one, two, four, or seven (*see* Categories at ECF No. 156-01 at 13-18), these should be

awarded in full.

As to the disputed time entries, Defendant has only specifically objected[1] to 153.8 hours:

- 67.9 hours related to preparation of Plaintiff's Motion for Summary Judgment (44.7 hours of Mr. Boyd's time; 1.1 hours of Mr. Packard's time; 3.5 hours of Ms. Maharg's time; 17.6 hours of Ms. Rothstein's time, and 1 hour of Mr. Maclear's time). *Cf.* ECF No. 171-2 *with* ECF Nos. 156-4, 156-6, 156-15, 156-16, and 157-2.

- 14.8 hours related to preparation of a Motion to Compel (12.9 hours of Mr. Boyd's time; 0.5 hours of Mr. Verick's time; 0.5 hours of Ms. Maharg's time; and 0.9 hours of Mr. Maclear's time). *Cf.* ECF No. 171-2 *with* ECF Nos. 156-4, 156-7, 156-15, and 157-2.

- 39.6 hours related to preparation for depositions (1.5 hours of Mr. Boyd's time; 1.4 hours of Mr. Verick's time; 0.1 hours of Mr. Brett's time; 3.4 hours of Ms. Bustos' time; 9.2 hours of Ms. Maharg's time; 13.7 hours of Ms. Rothstein's time; and 10.3 hours of Mr. Maclear's time). *Cf.* ECF No. 171-2 *with* ECF Nos. 156-4, 156-7, 156-12, 156-13, 156-15, 156-16, and 157-2.

- 31.5 hours related to preparation and service of two third-party subpoenas to Defendant's consultants (0.9 hours of Mr. Boyd's time; 1.4 hours of Mr. Carlon's time; 4.1 hours of Ms. Bustos' time; 2.9 hours of Ms. Maharg's time; 18.3 hours of Ms. Trillo's time; and 3.9 hours of Mr. Maclear's time). *Cf.* ECF No. 171-2 *with* ECF Nos. 156-4, 156-5, 156-11, 156-13, 156-15, 156-17, and 157-2. (But note none of the time entries cited by Defendant for attorney Mr. Beck actually relate to these third-party subpoenas.)

These topics are each addressed below, but even assuming *arguendo* Defendant is correct, then Plaintiff's fee recovery should be reduced by no more than 153.8 hours in total.

### b. Defendant's Evidence in Opposition Fails to Negate Any Essential Element of Plaintiff's Fee and Cost Request.

Defendant's evidence is insufficient to warrant any reduction of the fees or costs claimed:

> In challenging attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence. General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice.

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*, 163 Cal. App. 4th 550, 564 (2008). As discussed above and below, Defendant has only specifically complained of a small portion of Plaintiff's counsel's time entries. Further, and critically, the *entire universe* of Defendant's evidence in its Opposition consists of eleven documents (exhibits A-K to the Declaration of Jon Kelley), each

---

[1] Defendant generally objects to all time incurred between entry and vacatur of the first Consent Decree but fails to articulate which entries or how much time this includes.

of which is irrelevant and immaterial. ECF No. 171-2. None of the documents provided by Defendant speak to the appropriateness of fee recovery for Plaintiff's counsel's hours. Exhibits B, C, D, E, F, G, J, and K all relate to Plaintiff's efforts to obtain funding to cover the hard costs associated with this litigation,[2] not Plaintiff's counsel's reasonable attorneys' fees. Maharg Decl., ¶ 93. And Plaintiff's counsel wrote off <u>all attorney time</u> spent coordinating these funding efforts as part of their billing judgment process. ECF No. 157-2.

Further, Exhibit A relates to sampling results from local agencies and the Wall Street Journal which, according to Defendant, demonstrate that the Cables were not a major problem. That is irrelevant to this fee dispute. Plus, as evidenced by the fact that Defendant acquiesced to the second Consent Decree and removed the Cables, Plaintiff's sampling efforts were necessary and sufficiently persuasive to push Defendant to forego litigating this case.

Exhibits H and I relate to the subpoenas Plaintiff served Defendant and then later revoked. For the reasons explained *supra*, Defendant's argument that time spent on these subpoenas is not recoverable misstates the controlling law and ignores key facts relevant to this dispute.

Again, this being the <u>entire universe of evidence</u> supplied by Defendant, the Opposition leaves the overwhelming majority of Plaintiff's counsel's time undisturbed by any tangible evidence.

### c. Defendant's Argument that "Early Settlement" Undermines Plaintiff's Fee Claim is Inaccurate.

Defendant argues that the "early settlement" achieved by Plaintiff makes its submitted lodestar unreasonable. ECF No. 171 at 18-21. Again, Defendant offers repetitive descriptions of what *did not* occur in this case, but fails to discuss the events that did transpire, except to contend that "even when the case was resumed following vacatur of the First Consent Decree, the parties engaged in little more than document production." ECF No. 171 at 20. This characterization is patently false.

Since vacatur of the First Consent Decree, Plaintiff's counsel planned and implemented a detailed and evidently successful strategy to prosecute this matter. Plaintiff's counsel managed extensive sampling conducted by scientific experts and commercial divers in consultation with other

---

[2] Regardless of whether Plaintiff obtained donations to help cover the costs of this lawsuit, such costs are recoverable under RCRA. 42 U.S.C. § 6972(e)

experts in biology, hydrology, materials science/metallurgy, lead sampling methodologies, and laboratories that performed the analyses. Samples of biofilm/algae, sediment, water, biota/fish tissue, and the bitumen and lead from Cables themselves were collected and analyzed for lead and additional samples were analyzed at UC Davis for isotopic analyses to fingerprint the lead from the Cables. ECF No. 156-10 at 4-7; ECF No. 157 at 21. There was a total of 117 samples taken over the course of four (4) days. ECF No. 156-10 at 4-7. Plaintiff's counsel worked closely with the divers to prepare and implement Quality Assurance Project Plans and Sampling and Analysis Plans and coordinated with implicated agencies to obtain required permits and authorizations to undertake the sampling. ECF No. 156-10 at 4-7; ECF No. 157 at 21. And before any samples were taken, the entirety of the six (6) miles of Cables was surveyed using a remotely operated underwater vehicle. ECF No. 156-10 at 4-7; ECF No. 157 at 21. This investigation confirmed that the Cables were discharging lead into Lake Tahoe, a fact that was necessary to compel Defendant to remove the Cables. ECF No. 156-10 at 4-7; ECF No. 157 at 21. Moreover, the fact that Defendant hired consultants, had them prepare reports regarding the impact of the Cables on the Lake, and then submitted those reports to this docket further necessitated Plaintiff's sampling regime. *See* ECF No. 33-1; ECF No. 57-1.

Plaintiff's counsel also managed the discovery process in this matter, which was complex. To this end, the parties negotiated a protective order and "each served discovery requests and written responses, including eight responses from Plaintiff [] and seven responses from [Defendant]." ECF No. 171-2 at 1. Defendant's refusal to adequately respond to Plaintiff's discovery requests required Plaintiff to research, draft, and send several letters to Defendant articulating its failures to produce, requesting to meet-and-confer, and requiring Plaintiff's counsel to prepare for and attend repeated meet-and-confer calls with Defendant's counsel. Maharg Decl., ¶¶ 6-70. (Plaintiff's extensive efforts to ensure code-compliant discovery without judicial intervention are set forth in full detail in the accompanying supplemental declaration of Erica A. Maharg.) As a result of this extensive meet-and-confer process, Defendant produced additional documents and amended its initial discovery responses. *Id*. Plaintiff's counsel coordinated the production of over 700 documents and closely reviewed the 2,158 documents Defendant eventually produced. ECF No. 171-2 at 1. Plaintiff's counsel also prepared and served seven subpoenas on third-party entities that yielded approximately

4,395 additional documents, each of which Plaintiff's counsel then reviewed and analyzed. *Id*. And Plaintiff's counsel reviewed the eighteen subpoenas that Defendant served on non-party entities in this case and monitored their progression. ECF No. 170 at 18.

Plaintiff's counsel also successfully negotiated two significant settlement agreements that each required Defendant to promptly remove the Cables, which it has since completed. ECF No. 156-01 at 9; Maharg Decl., ¶ 92. After it became evident that the parties could not agree on attorney fee and cost settlement, Plaintiff's counsel prepared this Motion. All told, it is abundantly clear that this case was not so simple and straightforward as Defendant suggests.

### d. Plaintiff Seeks Recovery for Time that was Necessary to Prosecute this Case, which Led to a Significant and Impressive Settlement.

Defendant challenges the reasonableness of some *specific* activities, all of which are defensible and fully compensable. ECF No. 171 at 21-24. For example, Defendant argues that "[c]ourts decline to award fees for work that did not 'contribute[] to any favorable result achieved by the litigation.'" ECF No. 171 at 15 (citing *Outdoor Sys., Inc. v. City of Mesa*, 997 F.2d 604, 619 (9th Cir. 1993)). According to Defendant, that includes "work related to motions or pleadings that are never filed or depositions that are never taken," including time spent researching and preparing motions for summary judgment that were never filed and a motion to compel that was never filed. ECF No. 171 at 15-16. Not so. Extensive authority from within the Ninth Circuit supports awarding fees for time spent on incomplete projects, including unfiled motions. *See, e.g., Marbled Murrelet v. Pacific Lumber Co.*, 163 F.R.D. 308, 327 (N.D. Cal. 1995) (rejecting argument that plaintiffs should not be awarded fees for second amended complaint and motion for reconsideration that were not filed, where the work was reasonably needed for the case); *ExperExchange, Inc. v. Doculex, Inc.*, No. C-08-03875 JCS, 2010 U.S. Dist. LEXIS 54530, *9 (N.D. Cal. May 10, 2010) ("[t]he fact that the motion was not, ultimately, filed, does not mean that the time spent preparing the motion was unreasonable."); *Rux v. Starbucks Corp.*, No. CIV S-05-2299 MCE EFB, 2007 U.S. Dist. LEXIS 30180, *3-4 (E.D. Cal. Apr. 11, 2007) (granting fees for time drafting joint discovery statement not filed due to last minute agreement to produce requested deponent); *Hernandez v. Welcome Sacramento, LLC*, No. 2:20-cv-02061-KJM-JDP, 2024 U.S. Dist. LEXIS 189178, at *23 (E.D. Cal.

Oct. 15, 2024) (awarding fees for unfiled MSJ); *Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109, 1125 (C.D. Cal. 2012) (collecting cases). Defendant cites *Melendres v. Maricopa Cnty.*, 878 F.3d 1214, 1216 (9th Cir. 2018), where the court declined to award fees for drafting an opposition brief where the underlying motion was never filed, which is inapposite. This Court should ignore the remainder of Defendant's out-of-circuit cases which are contrary to the cases cited above that awarded fees for work that was inherently necessary but unfinished at the precise time of settlement. To do otherwise would create an inappropriate disincentive to settle until all pending proceedings are completed.

Moreover, the scheduling order in place at the time required Plaintiff to prepare expert reports, depositions, and anticipated motions in advance. The Parties first reengaged in settlement discussion just a few weeks before the first deadlines related to expert discovery. *See* ECF No. 127. In fact, the Court did not stay all deadlines until the date of expert exchanges. S*ee id.*; ECF No. 138. Of course, Plaintiff and its experts had spent time preparing to meet those deadlines. In addition, Plaintiff had noticed the deposition of Marine Taxonomic Services for June 2024 and, thus, reasonably prepared to take that deposition on that timeline, before the Parties settled or deadlines were stayed. Maharg Decl., ¶ 57. Finally, the scheduling order left little time between the end of discovery and the dispositive motion hearing. *See* ECF No. 127 (discovery cut-off – 10/18/2024; last day to hear dispositive motions – 12/19/2024, which required filing a motion no later than November 14, 2024). Plaintiff made a reasonable decision to begin drafting a planned motion for summary judgment early to avoid any rushing at the end and to help frame discovery, especially depositions. Maharg Decl., ¶ 72. Thus, contrary to Defendant's assertion, preparing for these inevitable litigation tasks was, in most cases, necessary, and, in all cases, reasonable, considering the schedule in place at the time.

Defendant also argues that Plaintiff's counsel's time spent between the execution of the First Consent Decree and the vacatur thereof is not recoverable. ECF No. 171 at 22. Not so. Plaintiff's counsel had an ethical duty to ensure compliance with the settlement, including monitoring the permit application processes. Verick Decl., ¶¶ 6-12; Boyd Decl., ¶¶ 23-39. This took additional time since Defendant chose not to include Plaintiff as an interested party in the permitting processes and the parties disagreed about whether removal was possible during the summer. Verick Decl., ¶¶ 7-8; Boyd

1  Decl., ¶¶ 23-39. Acting otherwise would arguably have been malpractice. Verick Decl., ¶¶ 6-12.

2  Defendant also disputes "[e]ntries related to subpoenas improperly served on Pacific Bell's experts and the resulting 'expert discovery dispute.'" ECF No. 171 at 23. To clarify, Plaintiff subpoenaed Haley & Aldrich and Ramboll for documents related to the reports they prepared for Defendant, which Defendant had already made public. *See* ECF Nos. 33-1; ECF No. 57-1; *see also* Maharg Decl., ¶ 31. However, Plaintiff only served these subpoenas because Defendant had failed to provide the facts underlying these reports, which Plaintiff requested five months prior. Maharg Decl., ¶¶ 31-32. For example, Defendant had not produced any photos, lab results, sampling protocols, or any other information underlying the published reports. *Id*. ¶ 21. Contrary to Defendant's assertion, these subpoenas were proper because Defendant had voluntarily made the reports public, and Plaintiff only withdrew the subpoenas after Defendant agreed to produce all of the sampling and other documents underlying Defendant's previously disclosed reports. *Id*. ¶ 33.

In sum, excluding Plaintiff's efforts coordinating funding (which have been completely written off), Defendant only specifically complains of 153.8 hours of Plaintiff's proposed lodestar (before billing judgment cuts). As demonstrated above, these hours were all reasonably necessary to the prosecution of this case and should be reimbursed.

### e. CSPA's Claims Were Novel Because Extremely Few Published Cases Consider Discharges to Waters Under Proposition 65, Let Alone How Proposition 65 and RCRA Interact.

Defendant argues that this case was not "novel" and that it was therefore unreasonable for Plaintiff's counsel to spend extra time litigating this matter, especially given Plaintiff's Counsel's extensive Proposition 65 experience. ECF No. 171 at 18. This argument misses the mark. Courts have held that litigation presents "novel" issues within the context of the lodestar calculation even when the prosecuting attorneys have significant relevant experience. *See, e.g., Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC*, No. 13-CV-3016-TOR, 2016 U.S. Dist. LEXIS 92110, at *24 (E.D. Wash. Jan. 12, 2016) (application of RCRA to industrial dairies was a novel issue even where the prosecuting attorneys had many years of relevant experience); *Sierra Club v. United States Dep't of Energy*, Civil Action No. 89-B-978, 1991 U.S. Dist. LEXIS 18102, *14-18 (D. Colo. Sep. 18, 1991) (application of RCRA to unique facts was "novel").

The cases cited by Defendant are distinguishable. *Med. Protective Co. v. Pang* dealt with a claim regarding the rescission of medical malpractice coverage. 25 F. Supp. 3d 1232, 1244 (D. Ariz. 2014). *Hernandez v. Spring Charter Inc.* dealt with a claim by a single person against a local grocer under the Americans with Disabilities Act. No. 19-cv-01479-TSH, 2020 U.S. Dist. LEXIS 42395, at *1-2 (N.D. Cal. Mar. 11, 2020). And *Trujillo v. Orozco* also dealt with a single individual's claims under the Americans with Disabilities Act (that time against a local restaurant). No. 5:17-cv-00566-EJD, 2018 U.S. Dist. LEXIS 34729, at *1-2 (N.D. Cal. Mar. 2, 2018). None of these cases considered the complicated factual burden implicit in proving submerged, decaying telecommunications Cables leaching into a lake constituted a substantial endangerment under RCRA or a "discharge" under Proposition 65. Again, Defendant "litigate[d] tenaciously," yet now unreasonably complains that it took Plaintiff's counsel more than a trivial amount of time to prove the existence and persistence of a substantial discharge from the Cables into Lake Tahoe. *City of Riverside*, 477 U.S. at 580 n.11.

### ii. The Hourly Rate Requested by CSPA's Counsel is Reasonable in Light of the Rates Prevailing in the Community for Similar Work.

Defendant makes three main arguments against Plaintiff's counsel's market rates. ECF No. 171 at 25-28. First, Defendant compiles selected cases from this District awarding lower rates without applying the facts or law of those cases to the instant case at all. *Id*. at 25. The Ninth Circuit has held it to be reversible error to peg rates for fee award purposes to the generally prevailing rates in a given practice area. Instead, the proper approach is to look at generally prevailing market rates ***for complex civil litigation***. *See, e.g.*, *Prison Legal News v. Schwarzenneger*, 608 F.3d 446, 455 (9th Cir. 2010); *Van Skike v. Dir., OWCP*, 557 F.3d 1041, 1046 (9th Cir. 2009).

Defendant makes no effort to distinguish the many Eastern District complex civil cases Plaintiff cited awarding market rates in line with those claimed by Plaintiff's counsel. *C.f.* ECF No. 156-01 at 19-20, citing *Franco v. Ruiz Food Prods.*, No. 1:10-cv-02354-SKO, 2012 U.S. Dist. LEXIS 169057, at *32-33 (E.D. Cal. Nov. 27, 2012) (discussing complexity of case); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 U.S. Dist. LEXIS 160052, at *9 (E.D. Cal. Oct. 29, 2012) (same); *Cow Palace, Ltd. Liab. Co.*, 2016 U.S. Dist. LEXIS 92110, at *24-33 (noting attorneys' complex litigation experience when setting market rates in case "arguing the novel

application of RCRA"). Nor does Defendant ever address Plaintiff's counsel's rates awarded in Sacramento in 2018, adjusted for inflation. *See Graham v. DaimlerChrysler Corp.,* 34 Cal. 4th 553, 583-4 (2004) (approving regular "percentage adjustment" for inflation). Similarly, Defendant downplays Plaintiff's counsel's rates awarded in *Hot Line* on the basis they are out of forum, but completely ignores the fact that Plaintiff relied on the Bureau of Labor Statistics to proportionally reduce those rates to adjust for Sacramento area attorney salaries. ECF No. 171 at 27; see also ECF No. 156-1 at 20-21 (citing *Ecological Rights Found. v. Hot Line Constr., Inc.*, 2024 U.S. Dist. LEXIS 129282, at *6 (C.D. Cal. 2024)). This, like the *Laffey* Matrix, simply provides a cross-check on the reasonableness of counsel's Sacramento rates.

Second, Defendant makes only passing objection to expert Richard Drury's declaration, contending that he only considers "(1) non-Sacramento cases and (2) Sacramento cases not involving RCRA or Proposition 65." ECF No. 171 at 27. As noted, the appropriate comparison is to market rates for counsel in complex civil litigation (*Prison Legal News*, 608 F.3d at 455), so Mr. Drury's citations are appropriate. Drury also notes a complex environmental 2015 suit in Sacramento where the court "awarded [his] law partner an hour rate of $700 per hour," and cites complex environmental matters in this District in which his client prevailed and fees were settled. ECF No. 156-9 at 6-14.

Third, Defendant points to two prior cases involving counsel from one of the law firms representing Plaintiff in this case. ECF No. 171 at 26-27. Those cases included legal and procedural irregularities not present here which cannot be relied upon to establish prevailing *community* rates. *See, e.g., Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc*., No. 2:10-cv-01207-GEB-AC, 2016 U.S. Dist. LEXIS 2511, *6 (E.D. Cal. Jan. 7, 2016) (denying fees where affidavit failed to submit evidence of "personal knowledge of Sacramento rates"). Defendant's reliance on *Forever Resorts* is also misplaced. ECF No. 171 at 8 (citing *California Sportfishing Protection Alliance v. Forever Resorts, LLC*, 2017 U.S. Dist. LEXIS 19465, at *2 (E.D. Cal. Feb. 10, 2017)). There, the court considered an uncontested motion to approve a Proposition 65 settlement under California Health & Safety Code §25249.7(f)(4), *not* a motion for attorneys' fees and costs under CCP Section 1021.5. The two statutes apply different legal and evidentiary standards and therefore a ruling under the former is not persuasive, much less controlling, authority under the latter.

Finally, Defendant makes no attempt to discredit Plaintiff's counsel's affidavits attesting to their extensive experience with Sacramento area market rates. *See* ECF Nos. 156-3 at 3-4; 156-4 at 2-3; 156-5 at 2-5; 156-6 at 2-4; 156-7 at 2-4; 156-8 at 2-4; 156-11 at 2-3; 156-12 at 3-4; 156-14 at 3-11; 156-15 at 3-7; 156-17 at 3-4; 156-18 at 3-4; 157 at 4-8. "Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). For each and all of these reasons, Plaintiff has carried its burden to produce satisfactory evidence that the requested rates align with prevailing community rates. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cit. 2008).

### B. A Fee Multiplier Is Warranted.

Plaintiff seeks a fee multiplier based on the novelty, contingent risk, preclusion of other employment, lack of funding, and excellent results obtained, as provided for by state law. Defendant takes issue with each of these factors. ECF No. 171 at 28-30.

Defendant cites only federal precedent to argue that novelty, complexity, contingent risk, and preclusion of other employment are accounted for in the lodestar and cannot support a multiplier. ECF No. 171 at 28-29. Defendant ignores that "when a plaintiff proceeds under multiple theories and prevails on her [state] claims, she is entitled to attorneys' fees under [state law]" when state law provides an independent ground for awarding fees. *Bouman v. Block.* 940 F.2d 1211 (9th Cir. 1991); *Asberry v. City of Sacramento/Sanitation Dep't*, 2004 LEXIS 29138, at *14-15 (E.D. Cal Apr. 5, 2004) (same). Under California law, novelty, contingent risk, and preclusion of other employment all support a multiplier. *See, e.g., Serrano v. Priest*, 20 Cal.App.3d 25, 48-49 (1977); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1136 (2001). Defendant's failure to address these state law claims concedes the issue.

Plaintiff's motion asserted that no public funding was provided to support Plaintiff's attorneys' fees, and this is true. Defendant cites Plaintiff's billing records and other evidence to argue that Plaintiff's "counsel received funds from public and charitable sources that were donated for the express purpose of funding [Plaintiff]'s case." ECF No. 171 at 29. This is true, and irrelevant, since all of these funds were used exclusively to support case costs and expert fees; none were used to pay

for attorneys' fees. Boyd Decl., ¶ 46; Packard Decl., Ex. 1; Maharg Decl., ¶ 93. Thus, no charitable support was provided for purposes of considering an attorney fee multiplier.

Indeed, the economic rationale for a multiplier is fully present here:

> A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans. . . . A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.

*Ketchum*, 24 Cal. 4th at 1132-1133.

Finally, the excellent results – complete removal of over six miles of polluting waste that had been abandoned for decades – an effort strenuously opposed by three leading national defense firms, are undeniable. Under California law, courts may consider the results obtained when evaluating whether to apply a fee multiplier. *Thayer v. Wells Fargo Bank*, 92 Cal.App.4th 819, 835 (2001); *Krumme v. Mercury Ins. Co.*, 123 Cal.App.4th 924, 947 (2004); *In re Vitamins Cases*, 110 Cal.App.4th 1041, 1052 (2003); *Idaho Conservation League v. Magar,* No. 3:12-cv-00337-CWD, 2015 U.S. Dist. LEXIS 124576, *7 (D. Idaho Sep. 17, 2015) (where environmental non-profit plaintiff "achieved substantial success in a case of public importance" multiplier was appropriate).

Plaintiff's counsel's efforts have compelled a major national corporation to promptly remove cables with over 100,000 pounds of lead in them from Lake Tahoe, one of the clearest, most beloved, and most visited waterbodies in the country. Indeed, Defendant has already completed removing the Cables from the Lake. Maharg Decl., ¶ 92. By any definition of the term, that is an exceptional result warranting an enhanced award.

### C. CSPA's Requested Costs Are Compensable.

Notably, Defendant does not dispute the general rule that expert fees are recoverable under RCRA. Instead, Defendant argues that fees incurred by "non-testifying consulting experts" are not recoverable. ECF No. 171 at 30 (citing *Sierra Club v. E.P.A.*, 769 F.2d 796, 812 (D.C. Cir. 1985) *and Nat. Res. Def. Council, Inc. v. E.P.A.*, No. 94-1079, 1998 U.S. App. LEXIS 26041, at *1 (D.C. Cir.

1998) (per curiam) (unpublished opinion)). As a threshold matter, Plaintiff planned to use all of its experts as testifying experts, but settled the case before expert disclosures were required. Maharg Decl., ¶ 71. Thus, just as the unfinished work at the time of settlement, discussed above, was still reasonably necessary to the prosecution of this case, so too was all of Plaintiff's work with experts.

Further, the Court should not be persuaded by Defendant's out-of-circuit cases. Unlike here, in both of those cases, the defendant in the citizen suit was the federal government, so the cost recovery provision at issue also functioned as a waiver of sovereign immunity. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 716 (3rd Cir. 2005) (discussing *Sierra Club* and choosing not to follow the D.C. Circuit's holding on this point); *see also Sierra Club*, 769 F.2d at 812. The D.C. Circuit there was therefore obligated to interpret the language of the statute in light of the principle that "waivers of sovereign immunity are to be construed narrowly." *Honeywell Int'l, Inc.*, 426 F.3d at 716; *Sierra Club*, 769 F.2d at 812. Sovereign immunity questions are not at issue here, so this Court should allow cost recovery for non-testifying consulting experts to effectuate RCRA's goals and mandates. Prohibiting such recovery could lessen nonprofit plaintiff trial preparation. On the contrary, all costs sought by Plaintiff should be awarded in full, and Defendant provides no specific reason or argument otherwise, except to cite to these inapposite cases.

## II. CONCLUSION

The Court should grant Plaintiff's motion for attorneys' fees and costs. Counsel have exercised an approximately 21% billing judgment reduction in hours, and have otherwise supported all fees and costs with verifiable facts and precedent. While no further cuts are warranted, if the Court is inclined to reduce Plaintiffs' requested lodestar, it should be limited to no more than a 10% haircut in keeping with *Moreno*. *See, e.g.*, *Waterkeeper*, 2024 U.S. Dist. LEXIS 10550, at *10. Finally, based on the novelty, contingent risk, preclusion of other employment, lack of funding, and excellent results obtained, an upward adjustment of the lodestar by a factor of 2.0 is justified.

///

///

///

///

| | |
|---|---|
| Respectfully submitted, | AQUA TERRA AERIS LAW GROUP |
| DATED: December 9, 2024 |    */s/ Jason R. Flanders* |
| | Jason R. Flanders<br>Matthew C. Maclear<br>Erica A. Maharg<br>Attorneys for Plaintiff<br>CALIFORNIA SPORTFISHING<br>PROTECTION ALLIANCE |