MATTHEW MACLEAR (State Bar No. 209228)
Email: mcm@atalawgroup.com
JASON FLANDERS (State Bar No. 238007)
Email: jrf@atalawgroup.com
ERICA A. MAHARG (State Bar No. 279396)
Email: eam@atalawgroup.com
J. THOMAS BRETT (State Bar No. 315820)
Email: jtb@atalawgroup.com
AQUA TERRA AERIS LAW GROUP
4030 Martin Luther King Jr Way
Oakland, CA 94609
Tel: (415) 568-5200

[Additional counsel on p. 2]

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>    Plaintiff,<br><br>v.<br><br>PACIFIC BELL TELEPHONE COMPANY<br><br>    Defendant. | Case No.: 2:21-cv-00073-JDP<br><br>**SUPPLEMENTAL DECLARATION OF ERICA MAHARG IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS UNDER THE RESOURCE CONSERVATION AND RECOVERY ACT (42 U.S.C. § 6972(e)) AND CODE OF CIVIL PROCEDURE SECTION 1021.5** |

ANDREW L. PACKARD (State Bar No. 168690)
Email: andrew@packardlawoffices.com
LAW OFFICES OF ANDREW L. PACKARD
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062

WILLIAM VERICK (State Bar No. 140972)
Email: wverick@igc.org
KLAMATH ENVIRONMENTAL LAW CENTER
1125 16th Street, Suite 204
Arcata, CA 95521
Tel: (707) 630-5061; Fax: (707) 630-5064

J. KIRK BOYD (State Bar No. 122759)
Email: jkb@drjkb.com
LAW OFFICE OF JOHN KIRK BOYD
548 Market St., Suite 1300
San Francisco, CA 94104-5401
Tel: (415) 440-2500

BRIAN ACREE (State Bar No. 202505)
Email: brian@brianacree.com
LAW OFFICES OF BRIAN ACREE
331 J Street, Suite 200
Sacramento, CA 95814
Tel: (916) 505-6861

WILLIAM CARLON (State Bar No. 305739)
Email: william@carlonlaw.com
LAW OFFICE OF WILLIAM CARLON
437 Post Street
Napa, CA 94559
Tel: (530) 514-4115

SUPPLEMENTAL DECLARATION OF E. MAHARG IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS       2

I, Erica Maharg, declare:

1. The facts set forth in this declaration are based on my personal knowledge; if called to testify as a witness, I could and would competently testify thereto under oath. As to those matters that reflect a personal opinion, they reflect my personal opinion and judgment upon the matter.

2. I am more than eighteen years old and am competent to testify as to the matters set forth herein.

3. I am an attorney licensed to practice law in the State of California. I am a partner with Aqua Terra Aeris ("ATA") Law Group, representing California Sportfishing Protection Alliance ("Plaintiff" or "CSPA") in the above referenced action.

4. I briefly explained the work I did during the discovery phase in my declaration supporting Plaintiff's Motions for Attorneys' Fees and Costs, filed October 31, 2024. ECF No. 56-15, ¶ 20. I am providing this supplemental declaration to give the Court more detailed factual information about Plaintiff's work during the discovery phase of this litigation, in response to Defendant's assertion that Plaintiff's hours during discovery are not reasonable.

5. I was personally leading or involved in many of the actions described below, and if not, I was tracking the overall progress of Plaintiff's discovery efforts.

## I. PLAINTIFF'S PRODUCTION OF INFORMATION AND DOCUMENTS

6. I helped prepare initial disclosures. I drafted the initial disclosure document and conferred with co-counsel regarding people with discoverable information and relevant documents in our possession to do so. The parties exchanged initial disclosures on September 28, 2023.

7. During the same time period as the initial disclosures, Plaintiff was preparing responses, compiling information, and reviewing documents to respond to Defendant's twenty-six Requests for Production ("RFP"); fourteen interrogatories; and fourteen Requests for Admission ("RFA"), which Defendant served on August 15, 2023.

8. Defendant's first RFPs included twenty-six requests for different categories of documents, some of which were very broad, such as "All DOCUMENTS concerning or discussing the allegations in the COMPLAINT."

9. I, and other members of Plaintiff's attorney team, particularly Matthew Maclear and William Verick, prepared responses and objections to the RFPs, RFAs, and interrogatories. Plaintiff served responses and objections on September 20, 2023.

10. As soon as my firm became involved in this matter, I took the lead on gathering all documents within Plaintiff's custody and organizing the review of documents for responsiveness and privilege. This included compiling all the documents produced in response to public records requests to various agencies, other information from third parties, all documents prepared thus far in the litigation, and all emails of CSPA and CSPA's counsel that were not only between counsel or between client and the attorneys related to the litigation.

11. Defendant sent a seven-page meet-and-confer letter alleging deficiencies in Plaintiff's responses on October 6, 2023. Plaintiff's counsel made themselves available for a meet-and-confer days later, on October 10, 2023. CSPA attorney William Verick followed up from the meet-and-confer summarizing the agreements, including Plaintiff's commitment to produce documents the next week, and notifying Defendant of its intent to modify some interrogatory and RFA responses.

12. CSPA produced documents promptly thereafter on October 12, 2023.

13. CSPA amended its responses to the RFAs on October 25, 2023. William Verick and I were primarily responsible for preparing those responses.

14. CSPA served its second production on November 7, 2023, which completed its response to Defendants RFPs, Set One.

15. On October 20, 2023, Defendant served four additional RFPs and one more interrogatory, all of which sought information related to CSPA's funders. This discovery requested irrelevant and privileged communications and information, but I was required to conduct legal research to provide a well-reasoned, supported objection to these requests, which we served on November 20, 2023. Defendant never provided support for the validity of these requests or followed up after Plaintiff objected.

16. On December 29, 2023 (more than two months after Plaintiff produced all documents response to the RFPs, Set One and produced amended RFA responses), Defendant wrote

CSPA, notifying us of ongoing issues with the responses to their first set of discovery. The parties met and conferred about these issues on January 2, 2024, and Plaintiff provided further written responses to these issues on January 9, 2024.

17. After meeting and conferring, Plaintiff provided amended responses to the RFAs and interrogatories and supplemented its document production with eleven additional documents on February 5, 2024.

18. Based on a review of the case file and my emails, I do not see any further discussion with Defendant regarding the sufficiency of Plaintiff's discovery responses.

19. Upon request by Defendant, Plaintiff also prepared a privilege log, and the parties mutually exchanged privilege logs on April 25, 2024.

## II. PLAINTIFF'S REQUESTED DISCOVERY AND EFFORTS TO OBTAIN COMPLETE RESPONSES.

20. Plaintiff met and conferred with Defendant consistently over a seven-month period in an effort to get Defendant to fully respond to Plaintiff's discovery requests. As demonstrated below, Plaintiff avoided motion practice by engaging in a painstakingly long meet-and-confer process, which successfully resolved many complaints about Defendant's discovery responses and resulted in Defendant slowly producing more responsive information. While the disputes were not fully resolved by the time the parties agreed to stop litigation and settle this matter, the process was generally successful at getting further information, without using the limited resources of the Court to resolve the disputes.

21. CSPA served its first set of discovery requests, including RFPs, RFAs, and interrogatories, on Defendant on October 4, 2023. These included thirty-eight RFPs, twenty RFAs, and seventeen interrogatories. Other members of Plaintiff's attorney team worked on these requests, in particular Kirk Boyd, Matthew Maclear, and Tom Brett.

22. On November 17, 2023, Defendant served its responses and objections to all three requests and produced approximately 400 documents.

23. Defendant asserted it would not produce any more responsive documents until the parties entered into a protective order, and Defendant provided a draft on the day responses were

due, November 17, 2023. It took the parties almost two months to finalize the protective order. Plaintiff provided edits to the protective order on December 8, 2023, and Defendant provided further edits on December 23, 2023. The parties met and conferred about the protective order on December 29, 2023. Plaintiff then provided further revisions based on that discussion on January 2, 2024. Plaintiff requested a response from Defendant on January 5, 2024. The parties finalized and filed the stipulated protective order on January 11, 2024 (ECF No. 108), and it was signed by the Court on January 24, 2024 (ECF No. 117).

24. While the parties were negotiating the protective order, Plaintiff notified Defendant of numerous deficiencies in its responses to the discovery requests and requested a meet-and-confer via letter on December 8, 2023. To highlight the number of deficiencies, the letter was thirty pages long. This letter required both legal research and close analysis of the responses, as well as drafting a comprehensive and persuasive argument for each challenged response. Kirk Boyd, Harrison Beck, and I were the counsel primarily responsible for preparing this letter.

25. On December 22, 2023, Defendant sent a letter to Plaintiff's counsel responding to the December 8 letter. I immediately wrote back providing dates for a meet-and-confer.

26. On December 29, 2023, the parties met and conferred on Defendant's discovery responses. Kirk Boyd, William Verick, and I attended on behalf of CSPA, and Jon Kelley, Peter Meier, and Navi Dhillon attended for Defendant. The discussion lasted for over two hours. I also spent considerable time preparing for the meet-and-confer in order to facilitate a productive discussion and move towards agreements on issues (for example, my notes preparing for the meeting are ten typed pages long). After the meet-and-confer, I followed up with an email the same day articulating the agreements and information that Defendant agreed to provide in response.

27. On January 11, 2024, Defendant committed to produce all non-privileged documents related to removal of the Lake Tahoe cables and to amend responses to RFPs and interrogatories related to relevant Board communications, insurance policies, costs of removal, maintenance of cables, and risk assessments.

28. On January 24, 2024 (the day the Court signed the protective order), Defendant produced a second batch of documents responsive to Plaintiff's RFPs, Set One.

1      29.     On February 5, 2024, Defendant provided the amended RFP and interrogatory
2 responses it promised on January 11.
3      30.     On February 9, 2024 and March 1, 2024, Defendant produced additional sets of
4 documents responsive to Plaintiff's RFPs, Set One.
5      31.     On February 23, 2024, CSPA served document subpoenas on Haley & Aldrich and
6 Ramboll, two consulting firms that Defendant had hired to conduct sampling related to the Lake
7 Tahoe cables and to opine about the harms from the cables. Defendant had already submitted these
8 reports to the Court; therefore, the reports were public. CSPA generally sought information related
9 to the firm's experience and qualifications to perform sampling; any analytical testing, data,
10 analysis, or reports related to the published reports; any studies or peer-reviewed sources used to
11 prepare the published reports; and permits acquired to conduct the testing. The consulting firms and
12 Defendant immediately objected to the subpoenas. Defendant objected, in part, because the
13 subpoenas requested information that Plaintiff had already requested from Defendant in discovery.
14      32.     On March 5, 2023, the parties met and conferred about the subpoenas to the
15 consulting firms. At the meet-and-confer, Plaintiff explained that it subpoenaed the consulting
16 firms, because, thus far, Defendant had failed to provide the information when requested from
17 Defendant (specifically in response to RFPs 16-19, 24, 27, 29, and 32). In particular, Defendant had
18 not produced any photos, lab results, sampling protocols, or any other information underlying the
19 published reports.
20      33.     Shortly after the discussion on March 8, 2024, Matthew Maclear sent a letter to
21 Defendant's counsel agreeing to withdraw the subpoenas, if Defendant provided the information
22 responsive to Plaintiff's RFPs.
23      34.     On March 12, 2024, Defendant's counsel responded, wherein they promised to
24 produce additional responsive documents, but again narrowed the requests and did not provide a
25 date by which they would make the production.
26      35.     On April 1, 2024, I wrote Defendant's counsel following up on the ongoing disputes
27 related to Plaintiff's RFPs, Set One (which were served October 2023). Plaintiff again asked
28 Defendant to provide a date by which they would produce documents they already promised to

produce twenty days earlier. CSPA also objected to Defendant's improper narrowing of Plaintiff's requests related to the testing of the Lake Tahoe cables and documents related to testing of lead cables outside of Lake Tahoe. Plaintiff also objected to the fact that Defendant indicated it would not produce documents outside of the time period from January 1, 2020, to July 19, 2023; Defendant had objected to producing documents outside of this time period based on the burden, yet provided no details of the burden, as required. Plaintiff explained how the documents outside of that time period were relevant and important to Plaintiff's case. Plaintiff also requested to meet-and-confer on the chosen custodians, as they appeared not to include people with responsive documents.

36. On April 1, 2024, Defendant also produced another set of documents responsive to Plaintiff's RFPs, Set One.

37. On April 5, 2024, Defendant's counsel responded to Plaintiff's April 1 letter regarding the RFPs and Defendant's document production.

38. On April 12, 2024, Plaintiff served a second set of interrogatories, asking for Defendant to provide the factual bases for three RFAs it had previously denied.

39. The parties met to discuss the disputes regarding Defendant's document production again on April 17, 2024.

40. On April 24, 2024, Defendant produced another set of documents responsive to Plaintiff's RFPs, Set One.

41. On April 25, 2024, I wrote an email again asking for Plaintiff to provide an explanation of the burden they would suffer if Defendant fully responded to the RFPs, in particular related to the time limitation that Defendant imposed on its responses.

42. On April 29, 2024, I again met with Defendant's counsel regarding their document production, specifically related to the named custodians, potential other custodians, and how searches were conducted. I again requested that Defendant provide an explanation of the burden they asserted as a justification for withholding responsive documents.

43. On May 14, 2024, Defendant again produced additional documents responsive to Plaintiff's RFP, Set One.

44. On May 27, 2024, Defendant amended its responses to Plaintiff's RFAs, Set One, admitting a previously-denied RFA, and responded to Plaintiff's second set of interrogatories.

45. On May 28, 2024, Defendant's counsel wrote further responding to Plaintiff's April 1 letter regarding Defendant's document production. Defendant agreed that it would produce documents outside of the time period it had previously identified for certain RFPs and that it would expand its search for documents to an additional custodian.

46. On June 11, 2024, Defendant produced another set of documents responsive to Plaintiff's RFPs, Set One. This was Defendant's eleventh production to the RFPs that were served in October 2023. Thus, the document production was still ongoing after eight months.

47. Around that time, the parties reinitiated settlement discussions. Had the parties not come to a settlement, Plaintiff would have raised the ongoing issues with Defendant's document production with the Court.

**III. THIRD PARTY DISCOVERY**

48. Defendant also served a number of subpoenas for documents on non-parties, including RTI International, Environmental Defense Fund, Washington Street Journal, Beyond the Blue, Marine Taxonomic Services, Monique Fortner, Seth Jones, Tom Neltner, Pace Analytical Services, Enthalpy, Quest Diagnostics, Complete Environmental Testing, Alta Environmental Corporation, Jennifer Redmon, Bruce Nelson, Gordon Binkhorst, Jack Caravanos, Clean up the Cayes, SWCA Environmental Inc., and Tahoe Resource Conservation District.

49. Tens of thousands of documents were produced in response to these subpoenas, produced from Fall 2023 through May 2024.

50. Beyond the Blue and Marine Taxonomic Services alone produced thousands of pages of documents, followed by a hard drive of over 400 gigabytes of data, and then another hard drive with 16,816 documents (or 51,731 pages), as well as supplemental productions after these. Much of this information was relevant and helpful to our case, including lab reports, photographs and videos of the Lake Tahoe cables, and GPS data.

51.     Plaintiff reasonably reviewed the productions for relevance and to evaluate whether the information supported or harmed our case, if relevant.

52.     To review these documents, as well as Defendant's numerous productions, Plaintiff's attorney team created a coding structure, so that we could easily organize and find useful documents. We uploaded every document into Everlaw, which allowed Plaintiff's counsel to review and code the documents efficiently.

53.     I assigned documents to attorneys on Plaintiff's team and monitored the progress of the review. But most of Plaintiff's counsel were involved in the review process, because of the extent of the production.

54.     While CSPA was not directly involved in Defendant's disputes regarding the third-party subpoenas, Plaintiff did need to track these disputes. At one point, CSPA was tracking disputes in three different forums, including the Eastern District of California.

55.     Plaintiff also propounded document subpoenas on non-parties, including California Department of Parks and Recreation ("CDPR"), UC Davis Tahoe Environmental Resource Center ("TERC"), the Lahontan Regional Water Quality Control Board ("RWQCB"), the State Water Resources Control Board – Division of Drinking Water ("SWRCB"), and the U.S. Environmental Protection Agency. Plaintiff's counsel Matthew Maclear led the efforts related to these subpoenas, and associates and a paralegal at Aqua Terra Aeris Law Group contributed to the work.

56.     In addition to preparing the subpoenas, Plaintiff also reviewed the documents after they were received from CDPR, the SWRCB, TERC, and RWQCB.

57.     Plaintiff and Defendant also noticed the deposition of Marine Taxonomic Services pursuant to Federal Rule of Civil Procedure 30(b)(6). The deposition was scheduled for June 26, 2023, and by the time the Parties agreed to stop litigation and settle the case, Plaintiff's counsel, primarily Kenya Rothstein and myself, had fully prepared the for the deposition.

**IV.  ADDITIONAL REQUESTS BY DEFENDANT**

58.     Plaintiff was also required to respond to ancillary requests by Defendant that required time but, in the end, Defendant did not follow up on.

59. On February 18, 2024, Defendant requested that Plaintiff coordinate its sampling of the cables in Lake Tahoe with Defendant and asked to meet-and-confer regarding that request. Matthew Maclear and I were the CSPA counsel responsible for responding to this request and further communications regarding the request.

60. On February 20, 2024, Plaintiff responded via email, agreeing to meet with Defendant to discuss but asking for a specific proposal from Defendant.

61. On February 22, 2024, Defendant's counsel responded, stating they could not make a specific proposal.

62. The parties met and conferred regarding the request on February 29, 2024. At that meeting, the parties did not come to any agreement about coordinating sampling. Plaintiff again asked Defendant to provide a specific proposal with details regarding sharing boats or coordinating different boats, divers, split samples, etc.

63. Defendant did not raise the issue again until Defendant's counsel sent a letter over a month later on April 1, 2024, reiterating its demand for Plaintiff to coordinate its sampling efforts. In that letter, Defendant also demanded that Plaintiff respond within two days, by April 3, 2024, or they would move forward with seeking a conference with the Court.

64. Plaintiff responded on April 3, 2023, reiterating that we did not yet have a specific proposal for what Defendant was asking of Plaintiff, that Plaintiff would not delay sampling, and that Plaintiff disagreed with the relevance of the one case from the Western District of New York to which Defendant cited for its position that Plaintiff was required to coordinate sampling.

65. On April 9, 2023, Defendant responded providing more detail about the coordination it was proposing and reiterating its belief that Plaintiff was legally required to coordinate sampling, although Defendant did not agree that its sampling was subject to the same requirements.

66. On April 12, 2023, Plaintiff responded, rejecting Defendant's request for Plaintiff to coordinate their sampling with Defendant.

67. On April 25, 2023, the parties attended a pre-discovery motion conference with the Court regarding this request. Matthew Maclear and I attended on behalf of CSPA. The court authorized the filing of discovery motions on the issues raised by Defendant. ECF No. 132.

68.     After reviewing my email and the case file, it does not appear the parties had further discussions about coordinating sampling.

69.     And by that time, Plaintiff had, for the most part, completed all sampling that it was conducting for the case. Plaintiff repeatedly told Defendant that it was in the process of obtaining sampling and that it would not (and could not considering the case schedule) wait to sample.

70.     In the midst of the sampling discussion, Defendant also requested to bifurcate the trial. My first record of this request was from April 12, 2024. I responded to this request on April 16, 2024, asking for specifics about what Defendant was proposing would be bifurcated, and Defendant's counsel provided a brief response the same day, indicating Defendant was proposing to bifurcate liability and remedy. I coordinated with Plaintiff's counsel in order to assess Plaintiff's strategic position on Defendant's request. I believe the parties discussed the proposal on April 17, 2024, during a meet-and-confer on another discovery issue. I have no further records of the parties' discussing this again.

### V. PREPARING FOR FUTURE DEADLINES

71.     At the time the Parties settled, Plaintiff was prepared to serve notices of the subject of its designated experts and to exchange expert reports, according to the deadlines in the scheduling order. ECF No. 127. While CSPA had not officially designated the experts it had consulted up to that point, it planned to do so on the deadline for expert exchanges.

72.     Because of the relatively tight turnaround between discovery ending and a motion for summary judgment deadline, I asked Kenya Rothstein to begin drafting the motion for summary judgment during discovery. In addition, Plaintiff's counsel made the strategic decision to use the motion for summary judgment to identify facts that we needed to acquire through the discovery process, in particular depositions.

### VI. MOTION TO AMEND SCHEDULING ORDER PROCESS

73.     Similar to the discovery disputes, the meet-and-confer process around the Motion to Amend the Scheduling Order was extended and laborious.

74. In October 2023, Plaintiff asked Defendant to stipulate to amend the scheduling order primarily to allow Plaintiff additional time to complete sampling within Lake Tahoe before expert reports were exchanged. While Defendants eventually did not oppose the request, this required the parties to meet-and-confer several times and for Plaintiff to file a motion, get guidance from the Court, and then file a further declaration with the Court. At that point, Defendant stated it did not oppose a more modest extension, which was very similar to a schedule Plaintiff had proposed to Defendant months earlier.

75. Matthew Maclear emailed Defendant's counsel on October 23, 2023, with a proposed schedule that would extend the schedule by approximately four months and asked to meet-and-confer about the same.

76. Mr. Maclear and I met with Defendant's counsel, Navi Dhillon, Peter Meier, Jon Kelley, Lucas Grunbaum, and Hariklia Karis, via videoconference on October 31, 2023.

77. At the meeting, Defendant's counsel indicated they would consider moving only specific deadlines two to four weeks at most and asked us to provide further details explaining the good cause supporting any extension. Mr. Maclear and I agreed to provide further details, although it did not seem like Defendant would agree to the length of extension that is necessary.

78. At the meet-and-confer, Defendant's counsel did not raise any specific conflicts with the schedule proposed by CSPA. When asked what harm or prejudice their client would suffer as a result of an extension, Defendant's counsel explained that their client has an interest in adjudicating CSPA's claims as quickly as possible.

79. Matthew Maclear sent a letter to Defendant's counsel with the promised additional explanation on November 2, 2023. In this letter, Plaintiff offered to modify the proposed dates for a more modest extension, as seen in the table below. The letter also asked Defendant's counsel to provide a response by November 7, 2023.

80. On November 7, 2023, Mr. Maclear provided further, newly-acquired information regarding the permitting requirements for Plaintiff's sampling.

81. On November 15, 2023, Defendant's counsel, Navi Dhillon, responded that they would provide a further response in a couple days.

82. On November 22, 2023, Mr. Dhillon sent a letter stating Defendant would not stipulate to the requested extension.

83. On November 27, 2023, Plaintiff filed a Motion to Amend Scheduling Order, which sought the original schedule proposed by Plaintiff on October 23, 2023. ECF No. 85.

84. The hearing on the Motion was held on January 25, 2023. At that hearing, the Court requested additional justification for the requested extension.

85. After the hearing, Plaintiff's counsel prepared another, extremely detailed stipulation, which included the sampling plan, all information about the permitting processes, and time and cost for all laboratory analyses. Before filing this supplemental declaration, the parties again met and conferred on January 31, 2024, but did not come to an agreement as to the schedule.

86. On February 1, 2024, Plaintiff filed the supplemental declaration from Mr. Maclear and proposed the shorter extension. ECF No. 123.

87. On February 8, 2024, Defendant filed its non-opposition to the shorter extension proposed by CSPA.

88. A summary of the schedules proposed by Plaintiff is in the table below:

| Deadline | Scheduling Order (ECF No. 70) | Proposed Extension (ECF No. 85) | 11/2/2023 "Compromise" Schedule | Supplemental Schedule (ECF No. 123) (Unopposed by Defendant) |
|---|---|---|---|---|
| Notice of subject matter for each expert report | 3/22/2024 | 7/24/2023 | mid-June | 6/26/2024 |
| Expert disclosures | 4/12/2024 | 8/10/2024 | 7/12/2024 | 7/10/2024 |
| Rebuttal disclosures | 5/10/2024 | 9/20/2024 | 8/16/2024 | 8/16/2024 |
| Last day to hear mtns to compel | 6/20/2024 | 11/8/2024 | 10/8/2024 | 9/25/2024 |
| Discovery cut-off | 7/12/2024 | 12/31/2024 | 11/8/2024 | 10/18/2024 |
| Last day - hearing dispositive mtns | 9/12/2024 | 2/28/2025 | move up a couple weeks to early February 2025 | 12/17/2024 |

1    89.    In the end, the schedule that Defendant eventually did not oppose in February 2024 was identical to the compromise schedule that Plaintiff proposed on November 2, 2023, in terms of expert exchanges, and similar to the compromise schedule for motions to compel and discovery cut-off. At no time prior to the motion being filed did Defendant offer a schedule that it would stipulate to, but if Defendant had, in all likelihood, the parties could have avoided motion practice on this issue.

### VII.    HOURS EXPENDED ON THIS REPLY

90.    Since filing day for Notice of Motion and Motion for Fees and Costs, I have expended 16.5 hours. My time has been spent preparing this declaration, corresponding with co-counsel on counterarguments to Defendant's Opposition, and reviewing and revising the reply. In an exercise of billing judgment, my hours sought during this time have been reduced by 1.5 hours, which equals 9.1%.

91.    A summary of the time expended by all of Plaintiff's counsel on this reply brief is provided below.

| Timekeeper | Total Hours | Attorney Lodestar | Billing Judgment Reduction | Adjusted Lodestar* | Percent reduction |
|---|---|---|---|---|---|
| Boyd, Kirk | 12.60 | $9,135.00 | 7.30 | $3,842.50 | 57.94% |
| Verick, William | 7.60 | $5,510.00 | 2.10 | $3,987.50 | 27.63% |
| Packard, Andrew | 4.30 | $3,117.50 | 1.60 | $2,610.00 | 37.21% |
| Flanders, Jason | 13.30 | $8,312.50 | 1.30 | $7,500.00 | 9.77% |
| Maclear, Matthew | 6.90 | $5,460.00 | 1.50 | $4,485.00 | 21.74% |
| Maharg, Erica | 16.50 | $8,682.50 | 1.50 | $7,245.00 | 9.09% |
| Beck, Harrison | 31.90 | $10,367.50 | 12.90 | $6,353.75 | 40.44% |
| **Attorney Total** | **93.1** | **$50,585.00** | **28.20** | **$36,023.75** | **29.12%** |

* Attorney adjusted lodestar includes hours cut, written off or reclassified at paralegal or legal assistant rates.

| Timekeeper | Paralegal Hours | Paralegal Lodestar | Legal Assistant Time Reduction | Billing Judgment Reduction | Adjusted Paralegal Lodestar | Legal Assistant Lodestar | Total Adjusted Lodestar | Percent Lodestar Reduction |
|---|---|---|---|---|---|---|---|---|
| Bustos, Esmeralda | 18.40 | $3,956.00 | 4.00 | 4.30 | $3,031.50 | $500.00 | $2,986.50 | 23.37% |
| Totals | | | | | | | | |

| | Total Hours | Total Lodestar | Total Hours Reduced | Adjusted Lodestar | Percent Hour Reduction |
|---|---|---|---|---|---|
| Lodestar Fees | 111.50 | $54,541.00 | 32.20 | $39,010.25 | 28.88% |
| | | Reply Fees Total | | $39,010.25 | |

### VIII.    THE CABLES HAVE BEEN REMOVED

92.    On November 25, 2024, I received an email from Defendant's counsel Peter Meier notifying Plaintiff "that Pacific Bell has completed removal of the Cables from Lake Tahoe."

## IX. CASE FUNDING FOR PLAINTIFF

93. All case funding received by Plaintiff, whether through individual donations, or Rose Foundation grants, was used exclusively to support hard costs, including expert fees. No such funding was used to pay for attorneys' fees, which were purely contingent in this case.

I declare, under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on the 6th of December 2024 in Flagstaff, Arizona.

/S/ *Erica Maharg*
Erica Maharg