1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CALIFORNIA SPORTFISHING                     Case No.  2:21-cv-0073-JDP
     PROTECTION ALLIANCE,
12
                Plaintiff,
13                                               ORDER
           v.
14
     PACIFIC BELL TELEPHONE
15   COMPANY,

16              Defendant.

17

18         This case is before the court on plaintiff California Sportfishing Protection Alliance's

19   motion for attorneys' fees, ECF No. 156, and non-parties Below the Blue, Marine Taxonomic

20   Services, Ltd, Seth Jones, and Monique Rydel-Fortner's (collectively "BTB/MTS") motion to

21   shift the costs of responding to subpoenas to defendant Pacific Bell Telephone Company

22   ("AT&T")—or, alternatively, for sanctions, ECF No. 158.[1]  For the reasons set forth below,

23   plaintiff's motion for attorneys' fees is granted in part, and BTB/MTS's motion is denied.[2]

24

25

26   _____
            [1] The court determined that oral argument would not materially assist in the resolution of
27   the pending motions.  *See* E.D. Cal. 230(g).
            [2] AT&T has also filed for leave to file a redacted version of Exhibit A to the Declaration
28   of Jon David Kelley.  Good cause appearing, AT&T's motion is granted.

**Background**

In January 2021, plaintiff filed this action against AT&T, alleging violations of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.*, and California's Safe Drinking Water and Toxic Enforcement Act of 1986 (commonly referred to as "Proposition 65"), Cal. Health & Safety Code § 25249.5, *et seq.* The crux of plaintiff's second amended complaint is that AT&T previously installed two telecommunication cables along the bottom of Lake Tahoe that, although no longer operational, remain in the lake. These abandoned cables allegedly discharge lead, contaminating the water and surrounding environment. ECF No. 12.

Within months of AT&T's appearance, the parties reached a settlement and moved for entry of a consent decree that formalized the terms of the parties' agreement. ECF No. 16. On November 5, 2021, the court approved the consent decree, which required AT&T to remove the cables from Lake Tahoe in exchange for dismissal of plaintiff's claims. ECF No. 22. The decree also required AT&T to reimburse plaintiff "in the amount of $220,000 to defray Plaintiff's reasonably incurred investigative, expert, consulting and attorneys' fees and costs." *Id.* at 8. Initially, AT&T was afforded six months to secure all necessary approvals from local, state, and federal agencies for the removal—with removal to be completed within ninety days of receipt of the last permit, "or as soon thereafter as reasonably practicable," *id.* at 5—but the court subsequently granted multiple requests to extend that deadline, ECF Nos. 24, 26, 28. In June 2023, AT&T reported that all required permits and approvals had been obtained, and that it was ready to begin removal "when feasible to do so and consistent with regulatory authorizations, which prohibit removal during the summer recreation season." ECF No. 29 at 2; *see also* ECF No. 33. Plaintiff disagreed with AT&T's position that removal was not feasible until after summer, but it initially agreed to meet and confer about an appropriate removal deadline. ECF No. 35 at 4.

However, the initial agreement fell apart in July 2023, when the *Wall Street Journal* published a series of articles that, according to AT&T, asserted that "lead-clad telecom cables in Lake Tahoe and located elsewhere raise a significant public health concern." ECF No. 41 at 2. On July 27, 2023, AT&T exercised its right to render the consent decree null and void, ECF

49, and on August 1, 2023, the court vacated the consent decree.[3]

In August and September 2023, AT&T served identical subpoenas on third parties Below the Blue, Marine Taxonomic Services, Ltd ("MTS"), Seth Jones, and Monique Rydel-Fortner that sought eighteen categories of documents and inspection of three categories of tangible items. ECF No. 65-17 at 5-7. After receiving no response, AT&T moved to compel Below the Blue's compliance with the subpoena. ECF No. 65.[4] Below the Blue neither filed an opposition to AT&T's motion nor appeared at the November 9 hearing.[5] On November 13, 2023, the court granted the unopposed motion and ordered Below the Blue to produce all documents demanded by the subpoena by November 30, 2023. ECF No. 80.

On November 29, 2023, Below the Blue, through newly retained counsel, asked for an extension until December 7, 2023, to produce all documents to which it had no objection to producing, and until December 14, 2023, to file a motion for reconsideration relating to any other documents. ECF No. 87. The court subsequently granted Below the Blue until December 7 to produce those documents not in dispute and set an informal discovery conference for December 21, 2023, to address Below the Blue's production of any remaining documents. The parties were unable to resolve their differences at the conference, and on January 4, 2024, Below the Blue moved for reconsideration of the November 13 order and for a protective order. ECF No. 98. On the same date, AT&T moved to compel Below the Blue's compliance with the November 13

---

[3] As previously noted, the consent decree required the cables be removed within ninety days of securing all approvals. If the work was not completed by that deadline, the parties were required to meet and confer about a new removal date. ECF No. 22 at 6. However, the consent decree also provided that "[i]n the event that no resolution is reached regarding a new date by which the Cables will be removed, then this Decree shall be null and void and vacated at the written election of either Party, and the Parties shall be restored to their respective legal positions prior to the entry of this Decree." *Id.*

[4] AT&T also filed in the Southern District of California similar motions to compel Jones and Marine Taxonomic Services, Ltd to comply with the subpoenas. Both of those motions were subsequently transferred to this district. *See Pacific Bell Telephone Co. v. Jones*, 2:23-cv-3052-KJM-JDP (E.D. Cal. 2023); *Pacific Bell Telephone Co. v. Marine Taxonomic Services, Ltd.*, 2:24-cv-0022-KJM-JDP (E.D. Cal. 2024).

[5] Seth Jones appeared at the hearing. ECF No. 78. However, because Mr. Jones is not an attorney, he was not permitted to appear on behalf of Below the Blue. *See D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973-74 (9th Cir. 2004) ("It is a long-standing rule that corporations and other unincorporated associations must appear in court through an attorney.").

1    order.  ECF No. 104.

2         On February 2, 2024, the court denied Below the Blue's motion for reconsideration and

3    granted in part AT&T's motion to compel compliance with the November 13 order.  ECF No.

4    124.

5         Then, on September 18, 2024, plaintiff filed a motion to approve settlement and for entry

6    of a consent decree—which it noticed for hearing on November 7, 2024, ECF No. 147—and

7    AT&T filed a statement in support of entry of a final consent decree, ECF No. 148.  The parties'

8    proposed consent decree again required AT&T to remove the cables from Lake Tahoe in

9    exchange for dismissal.  ECF No. 147-2 at 6-15.  However, unlike the earlier agreement, the

10   parties' proposed consent decree did not cover plaintiff's claim for attorneys' fees.  *Id.*  Instead,

11   the parties agreed that plaintiff would file a separate motion addressing its entitlement to fees and

12   costs.  ECF No. 147 at 8; ECF No. 148 at 6.

13        On November 7, 2024, the court entered an amended final consent decree, which resolved

14   plaintiff's claims RCRA and Proposition 65 claims.[6]  ECF No. 165.  However, in the week prior

15   to entry of that consent decree, plaintiff filed its motion for attorneys' fees and costs, ECF No.

16   156, and BTB/MTS filed its motion to shift costs or for sanctions, ECF No. 158.  The court now

17   grants plaintiff's motion in part and denies BTB/MTS's motion.

18                                **Motion for Attorneys' Fees**

19   **I.     Legal Standard**

20        Under the RCRA, "[t]he court . . . may award costs of litigation (including reasonable

21   attorney and expert witness fees) to the prevailing or substantially prevailing party, whenever the

22   court determines such an award is appropriate."  42 U.S.C. § 6972(e) (brackets in original).  An

23   award under the RCRA is not mandatory.  However, under a fee-shifting statute like 42 U.S.C.

24   § 6972(e), "the court's discretion to deny a fee award to a prevailing plaintiff is narrow."  *St.*

25   *John's Organic Farm v. Gem Cnty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1064 (9th Cir.

26

27        [6] On October 28, 2024, plaintiff filed a proposed amended final consent decree, which
     includes a slight modification requested by California Attorney General.  ECF No. 155.  The
28   November 7 consent decree included this modification.

2009) (quoting *N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 68 (1980)).  "It is 'the rule rather than the exception' that fees and costs are awarded to the prevailing party when a statute so permits." *Cmty. Ass'n for Restoration of the Env't Inc. v. DeCoster*, 704 F. Supp. 3d 1110, 1115 (D. Wash. 2023).

California Code of Civil Procedure section 1021.5 authorizes an "award of attorneys' fees to a successful party" in an action "which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

In determining the appropriate attorney fee award, courts use the lodestar method.  *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003).  Under this method, "a district court must start by determining how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill required to perform the litigation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).  In assessing a fee award, the court need not "achieve auditing perfection" or "become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011).  Rather, "the trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id*.  Importantly, "[a] request for attorneys' fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

While "[a] fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended," *id.*, counsel is "not required to record in great detail how each minute of [their] time was expended . . . ." *United Steelworkers of Am. v. Retirement Income Plan*, 512 F.3d 555, 565 (9th Cir. 2008).  Rather, counsel "'need only keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed.'" *Id.* (quoting *Hensley*, 461 U.S. 441).  However, [w]here the documentation of the hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 432.

1    **II.   Discussion**

2        Plaintiff seeks $1,366,182.25 in attorneys' fees and $133,678.51 in costs.[7]  ECF No. 156;

3    ECF No. 176 at 4-5.  Defendant does not dispute that plaintiff is entitled to fees but argues that

4    amount requested is excessive.  ECF No. 171.

5        **A.   Reasonable Hourly Rate**

6        The "district court must determine a reasonable hourly rate to use for attorneys and

7    paralegals in computing the lodestar amount."  *Gonzalez v. City of Maywood*, 729 F.3d 1196,

8    1205 (9th Cir. 2013).  "The Supreme Court has consistently held that reasonable fees 'are to be

9    calculated according to the prevailing market rates in the relevant community," *Van Skike v. Dir.*

10   *Off. Of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009), and not "by reference to

11   rates actually charged by the prevailing party," *Chalmers v. City of Los Angeles*, 796 F.2d 1205,

12   1210 (9th Cir. 1986).  Generally, the relevant community is the forum in which the district court

13   sits.  *Shirrod v. Dir., Off. of Workers' Comp. Programs*, 809 F.3d 1082, 1087 (9th Cir. 2015).

14   The party seeking fees has the burden "to produce satisfactory evidence . . . that the requested

15   rates are in line with those prevailing in the community for similar services by lawyers of

16   reasonably comparable skill, experience, and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895

17   n.11 (1984).  "Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing

18   fees in the community, and rate determinations in other cases . . .  are satisfactory evidence of the

19   prevailing market rate."  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407

20   (9th Cir. 1990).  "District courts may also use their 'own knowledge of customary rates and their

21   experience concerning reasonable and proper fees.'"  *Sam K. ex rel. Diane C.*, 788 F.3d at 1041

22   (quoting *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)).

23       Plaintiff seeks fees based on work performed by thirteen attorneys at hourly rates ranging

24   from $325.00 to $725.00.  Specifically, it asks for fees based on the following rates:

25

26

27       [7] This figure reflects the requested amount in plaintiff's reply, which includes nearly 80
     additional attorney and paralegal hours for work performed after plaintiff filed its fee motion.
28   ECF No. 176 at 4-5; ECF No. 176-5 at 5.

6

| Attorney | Years' Experience | Requested Rate |
|---|---|---|
| J. Kirk Boyd | 38 | $725.00 |
| William Verick | 36 | $725.00 |
| David Williams | 35 | $725.00 |
| Andrew Packard | 30 | $725.00 |
| Brian Acree | 24 | $650.00 |
| Matthew Maclear | 24 | $650.00 |
| Jason Flanders | 19 | $625.00 |
| Erica Maharg | 15 | $575.00 |
| William Carlon | 8 | $550.00 |
| Tom Brett | 8 | $550.00 |
| Kenya Rothstein | 3 | $325.00 |
| Harrison Beck | 3 | $325.00 |
| Theresa Trillo | 1 | $325.00 |

Plaintiff also seeks an hourly rate of $215.00 for work performed by paralegal Esmeralda Bustos, who has seventeen years' experience. ECF No. 156-13.

Here, the court finds that the requested $750.00 hourly rate for Boyd, Verick, Williams, and Packard, who each have thirty or more years' experience, is reasonable for this district. *See, e.g.*, *Pompeian, Inc. v. Mill at King River, LLC*, No. 1:24-cv-0766-JDT-EPG, 2025 WL 2467612, at \*5 (E.D. Cal. Aug. 27, 2025) ("[O]ther courts in this district have found that hourly rates for attorney fees awarded in the Eastern District of California range from $200 to $750, with hourly rates exceeding $600 reserved for attorneys who have been practicing approximately 30 years."); *see also Cal. Open Lands v. Butte Cnty. Dept. of Public Works*, No. 2:20-cv-00123-DJC-DMC, 2024 WL 4819205 (E.D. Cal. Nov. 18, 2024) (finding that attorney Andrew Packard was entitled to rate typically charged in the Northern District of California, but reducing rate to $913.50 because the plaintiff "and the facts of this case are largely based in the Eastern District of

1   California where rates are cheaper").

2         However, the court finds that the requested $650.00 hourly rate for Acree and Maclear,

3   who both have 24 years' experience, $625.00 hourly rate for Flanders, who has 19 years'

4   experience, and $575.00 hourly rate for Maharg, who has 15 years' experience, exceed the

5   prevailing rate for this district.  *See Sahota v. Mercedes-Benz USA, LLC*, No. 2:24-cv-136 WBS

6   AC, 2025 WL 1643979, at *2 (E.D. Cal. June 10, 2025) (finding that the "appropriate hourly

7   rates for attorneys with 21-23 years' experience was $500.00"); *Siafarikas v. Mercedes-Benz

8   USA, LLC*, No. 2:20-cv-01784-JAM-AC, 2022 WL 16926265, at *3 (E.D. Cal. Nov. 14, 2022)

9   (finding appropriate an hourly rate of $500.00 for an attorney with 21 years' experience).

10  Accordingly, the court will adjust Acree and Maclear's rates from $650.00 to $600.00, Flanders's

11  from $625.00 to $575.00, Maharg's from $575.00 to $550.00.

12        The court also finds that the requested rate of $550.00 for attorneys Carlon and Brett, both

13  with 8 years' experience, are higher than the prevailing rate in this district.  *See Samran v.

14  Manulife Inv. Mgmt. Farmland Mgmt. Servs., Inc.*, No. 2:24-CV-01042-DJC-CSK, 2025 WL

15  19008, at *3 (E.D. Cal. Jan. 2, 2025) (finding an appropriate hourly rate of $500.00 for an

16  attorney with 7 years' experience).  Accordingly, the court will adjust Carlon and Brett's rates

17  from $550.00 to $500.00.

18        The requested $325.00 hourly rate for Rothstein and Beck, attorneys with 3 years'

19  experience, is in line with rates charged by attorneys of like experience in this district, but that

20  same rate is excessive for Trillo, who has been practicing for one year.  *See Unit 53, Inc. v. Run

21  Roadlines, Inc.*, No. 2:24-CV-01718-DJC-CSK, 2025 WL 373637, at *2 (E.D. Cal. Feb. 3, 2025)

22  (finding an appropriate hourly rate of $370.00 for an attorney with over 3 years' experience);

23  *Owen v. Hyundai Motor Am.*, No. 2:22-CV-00882-KJM-CKD, 2024 WL 3967691, at *4 (E.D.

24  Cal. Aug. 28, 2024) (finding rates of $200.00-$250.00 for attorneys with less than 5 years'

25  experience and hourly rates of $125.00-$175.00 for law clerks).  Accordingly, the court will

26  adjust Trillo's hourly rate from $325.00 to $250.00.  Finally, the court finds that $150, rather than

27  the requested $215, is a more appropriate rate for work performed by paralegal Bustos.  *See

28  Penton v. Johnson*, No. 2:11-cv-00518-DJC-KJN; 2024 WL 4755801, at *2 (E.D. Cal. Nov. 12,

1    2024) ("Courts in this district have regularly awarded $125 per hour as a reasonable rate for

2    paralegal work."); *Doe v. California*, No. 1:24-cv-00337-JLT-CDB (PC), 2024 WL 5182467, at

3    *6 (E.D. Cal. Dec. 2024).

4    **B.    Hours Reasonably Expended**

5        "The fee applicant bears the burden of documenting the appropriate hours expended in the

6    litigation and must submit evidence in support of those hours worked." *United States v.*

7    *$28,000.00 in U.S. Currency*, 802 F.3d 1100, 1107 (9th Cir. 2015) (quoting *Gates v. Deukmejian*,

8    987 F.2d 1392, 1397 (9th Cir. 1992)).  The party opposing the fee motion "has a burden of

9    rebuttal that requires submission of evidence . . . challenging the accuracy and reasonableness of

10   the . . . facts asserted by the prevailing party in its submitted affidavits." *Chaudhry v. City of Los*

11   *Angeles*, 751 F.3d 1096, 1110-11 (9th Cir. 2014) (quoting *Camacho*, 523 F.3d at 980).  The

12   "court should exclude from the lodestar amount hours that are not reasonably expended because

13   they are 'excessive, redundant, or otherwise unnecessary.'" *Seachris v. Brady-Hamilton*

14   *Stevedore Co.*, 994 F.3d 1066, 1083 (9th Cir. 2021) (quoting *Van Gerwen v. Guarantee Mut. Life*

15   *Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

16       Plaintiff's motion asks for fees based on 2,169.8 hours worked by thirteen attorneys, and

17   182.52 hours of work performed by a paralegal.[8]  ECF No. 157-2 at 2.  Its motion divides the

18   work performed into seven categories: (1) pre-filing factual investigations; (2) research, drafting,

19   serving, and filing the notice letter and complaints; (3) case management and analysis; (4) post-

20   filing factual investigations; (5) discovery; (6) settlement negotiations and work necessary to

21   obtain this court's approval of the two settlements; and (7) preparing and arguing this fee motion.

22   ECF No. 156-1 at 13-7.

23       1.    Categories one, two, and four

24       Counsel's billings records reflect that five attorneys—Acree, Boyd, Verick, Packard, and

25   Williams—spent a total of 224.6 hours work related to pre-filing factual investigations.  ECF No.

26

27       [8] Plaintiff's evidence reflects that counsel expended a total of 2,669.7 hours on this case,
     but it deducted 499.9 hours for billing judgment.  ECF No. 157-2 at 2.  Ms. Bustos, a paralegal,
28   spent 192.8 hours, of which 10.3 hours was deducted for billing judgment.  *Id.*

157-2 at 3.  These same five attorneys spent 142.9 hours on tasks covered by category two—research, drafting, serving, and filing the notice letter and complaints.  *Id.*  For category four, plaintiff's attorneys (excluding Acree and Rothstein) collectively spent 489.3 hours working on post-filing factual investigations.  For work performed in relation to plaintiff's fee motion, all attorneys collectively spent 190.8 hours.  *Id.*  To account for billing judgment, plaintiff reduced its hours for these three categories as follows: 179.9 hours for category one; 116.3 hours for category two; 427.5 hours for category four; and 110.3 hours for category seven.

AT&T does not challenge any of the numerous billing entries that fall into these three categories.  Instead, AT&T generally argues that the amount of fees requested is unreasonable given that the plaintiff did not litigate a discovery motion, took no depositions, and never moved for summary judgment.  ECF No. 171.  It contends that a fee award of $220,000—the amount AT&T originally agreed to pay under the initial settlement—is a more appropriate amount to compensate plaintiff's counsel for litigating this case.  *Id.* at 10.

The court agrees that, at least facially, the total amount of fees sought appears large considering this case's procedural history.  However, the Ninth Circuit has held that district courts "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case."  *Moreno v, City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); *see Cal. Open Lands v. Butte Cnty. Dept. of Public Works*, No. 2:20-cv-00123-DJC-DMC, 2024 WL 4819205 (E.D. Cal. Nov. 18, 2024) (citing *Charlebois v. Angels Baseball*, LP, 993 F. Supp. 2d 1109, 1123 (C.D. Cal. 2012) ("Courts typically do not reduce the number of hours worked unless the time claimed is obviously and convincingly excessive under the circumstances.").  The court may cut the number of hours where counsel performs unnecessary or duplicative work.  *Id.*  But determining what tasks were duplicative or unnecessary "is no easy task."  *Id.* (observing that some duplicative work is necessary, and that courts should keep "in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees").  "Nevertheless, the district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation."  *Id.*

Given that AT&T does not specifically challenge any specific billing entries, the court declines to cut time spent on any specific task. The court, however, will exercise its discretion and apply a ten percent reduction to the total number of hours for these categories.

## 2.    Case Management and Analysis

Plaintiff seeks fees based on 408.4 hours of work performed on tasks falling under case management.[9]  AT&T argues that plaintiff improperly seeks compensation for work that did not contribute to the favorable result it achieved. ECF No. 171 at 21. AT&T argues that improperly billed work related to a motion for summary judgment that was never filed. *Id.* at 22; *see* ECF No. 171-2 at 3.

The billing entries related to a motion for summary judgment are sporadic, and do not show that counsel was performing unnecessary work. ECF No. 156-4 at 86 (1.3 hours conducting legal research on burden of proof and standard of proof for summary judgment and trial on Proposition 65, as well as other tasks), 103 (.2 hours researching cases re: summary judgment standards), 104 (.1 hours researching cases for Proposition 65 standard of proof for summary Judgment), (.4 hours Proposition 65 law for summary judgment), 105 (.3 outline summary judgment motion). For example, in January 2024, attorney Boyd spent 9.5 hours drafting and editing "memorandum to co-counsel re: summary judgment on Proposition 65" and drafting "facts for summary judgment brief." ECF No. 156-4 at 106. The following month, he spent an additional 8.5 hours on summary judgment issues. *Id.* at 107. Other billing records reflect minimal work related to summary judgment issues. However, the court is not convinced that plaintiff's counsel spent extensive unnecessary time preparing a motion for summary judgment that was never filed, as AT&T suggests. Instead, the billing records indicate that during the course of discovery, counsel performed minimal research on the summary judgment standards and the factual showing plaintiff would be required make on summary judgment. Accordingly, the court will not exclude the relevant billed amounts.

---

[9] Counsel performed 520.3 hours in this category but deducted 111.9 hours in exercising billing judgment. ECF No. 156-1 at 15.

1    Likewise, the court is not convinced that work related to a motion to compel "internal

2    documents" and a motion to compel a privilege log from Pacific Bell was unnecessary. *See* ECF

3    No. 156-4 at 106-11; ECF No. 156-7 at 94; ECF No. 156-15 at 86-87; ECF No. 157-2 at 431.

4    The majority of the work related to a motion to compel was performed between early-February

5    and May 2025. *Id.* Around that time, the court held an informal discovery conference in hopes of

6    resolving the parties' discovery disputes. *See* ECF No. 132. Given the parties' disagreements at

7    that time, there is no basis for concluding that performing work in anticipating of filing a motion

8    to compel was unnecessary or otherwise non-compensable. To find otherwise would

9    unnecessarily punish plaintiff for its willing to reach a comprise.

10    Accordingly, the court will not reduce plaintiff's award for work performed on these

11    tasks. However, as discuss above, the court finds that the total number of hours expended,

12    including those performed on tasks covered by this category, are excessive in light of the case's

13    procedural history. Accordingly, the court will cut ten percent from the requested amount of

14    408.4 hours.

15              3.    Discovery

16    AT&T argues that plaintiff should be awarded fees for work that was performed in

17    relation to depositions that never occurred and subpoenas that were improperly served. Counsel's

18    work related to the relevant deposition primarily occurred in early in early- to mid-2024, in the

19    months leading up to the agreement to settle this case.[10] ECF No. 157-2 at 407, 409, 411, 417,

20    419-20, 437, 444, 455, 457-61. Given that the initial settlement fell apart, it would have been

21    imprudent for counsel to cease working on discovery, banking on an informal resolution.

22    Accordingly, the work performed related to the depositions that never occurred will not be

23    excluded.

24    AT&T also argues that 31.5 hours should be excluded for subpoenas that plaintiff

25    improperly served on its experts and ultimately withdrew. ECF No. 171 at 23; ECF No. 171-2 at

26

27    _____

      [10] *See* ECF No. 156-4 at 107, 111; ECF No. 156-7 at 103, 106; ECF No. 156-12 at 28;
      ECF No. 156-13 at 19, 44-45, 48-49; ECF No. 156-15 at 78-79, 91, 95-101; ECF No. 156-16 at
28    31, 33-38; ECF No. 157-2 at 407, 409, 411, 417, 419-20, 437, 444, 455, 457-61.

5.[11]  It contends that the time spent in relation to these subpoenas was unreasonably expended because the subpoenas "were unlawful and unnecessary, in part due to their premature request for expert discovery." ECF No. 171 at 23.  Plaintiff does not dispute that the subpoenas were improperly served, and it acknowledges that they were subsequently withdrawn. ECF No. 176 at 9.  Critically, plaintiff's reply fails to meaningfully address AT&T's argument, much less explain why it was reasonable to spend time on tasks related to these subpoenas.[12]  The court will therefore exclude the 31.5 hours for time spent related to these subpoenas.

The court will reduce by ten percent the remaining 710.3 hours of work performed in relation to discovery.

### 4.    Settlement Negotiations and Consent Decrees

Plaintiff claims that its counsel spent 529.8 on settlement-related tasks.  It explains that this category is logically divided into two subcategories: (1) work performed in relation to negotiating the initial consent decree, ensuring its implementation, and participating in the vacatur process; and (2) time spent negotiating the second consent decree. ECF No. 17.  With respect to the first consent decree, plaintiff states that counsel spent 174.6 hours negotiating the parties' settlement, and an additional 192 hours "during the vacatur process, as detailed by consolation with expert and others to determine how long it would reasonably take to remove the Cables was required . . . ." ECF No. 156-1 at 17.[13]

The time spent negotiating the first consent decree was reasonable.  However, the court agrees with AT&T that it was not reasonable for counsel to spent 192 hours "during the vacatur process."  The terms of that consent decree required AT&T, and not plaintiff, to promptly secure

---

[11] The relevant billing records cited by AT&T include work performed by attorney Beck in relation to third-party subpoenas. ECF No. 171-2 at 3; *see* ECF No. 156-11 at 38-40.  Since AT&T has not argued that work related to third-party subpoenas should be excluded, this time was not included in 31.5-hour figure.

[12] In its reply brief, plaintiff's response to AT&T's argument is limited to the following statement: "For the reasons explained supra, Defendant's argument that time spent on these subpoenas is not recoverable misstates the controlling law and ignores key facts relevant to this dispute." ECF No. 176 at 9.

[13] Plaintiff does not specify the number of hours spent in conjunction with the second consent decree, but presumably the remaining 163.2 hours in this category was spent on such work.

13

all necessary approvals for removal of the cables from the appropriate government agencies. ECF No. 22 at 5. AT&T also agreed to shoulder the costs of removal and to pay a certain amount to compensate plaintiff for its attorneys' fees. *Id.* at 6, 8. In exchange for AT&T's performance, plaintiff agreed to dismiss this action and to release AT&T from all liability from all claims. *Id.* at 7.

Given the time counsel expended negotiating this settlement, which placed the cost and onus of facilitating removal on AT&T, it is difficult to understand the level of plaintiff's billing here. Although plaintiff's counsel needed to expend some time to ensure that AT&T was working towards fulfilling its obligations, the court cannot agree with plaintiff that it needed to consult "with experts and others to determine how long it would reasonably take to remove the Cables . . . ." ECF No. 156-1 at 17. As noted above, the consent decree placed the logistical and financial burden on AT&T's shoulders.

However, it would also be unreasonable to assume that plaintiff would incur no expenses in relation to the implementation of the decree and its eventual vacatur. Accordingly, rather than exclude all 192 hours spent in relation to "the vacatur process," the court will apply a seventy-five percent reduction. Accordingly, the court will exclude 147.75 hours from the 529.8 hours covered by this category, resulting in 382.05 hours. After applying the 14.06 percent reduction used by plaintiff to account for billing judgment, the court finds that plaintiff should be awarded fees based on approximately 328 hours.[14] The court declines to impose an additional ten percent "haircut."

     5.    Time Spent Preparing Fee Motion

Plaintiff also seeks fees for the time its counsel spent litigating the motion for fees and costs. "[T]ime spent by counsel in establishing the right to a fee award is compensable." *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992) *opinion vacated in part on*

---

[14] Counsel's billing statements do not identify the specific billing entries for work performed in relation to vacatur of the initial consent decree. However, the 147 excluded hours equates to approximately 27 percent of the total time spent on discovery. The court therefore deducts 27 percent of the time each attorney spent on settlement-related tasks. The court will also further reduce each attorney's time by 14.06 percent, which is in accord with plaintiff's average reduction for billing judgment.

*denial of reh'g*, 984 F.2d 345 (9th Cir. 1993); *see Camacho*, 523 F.3d at 981 (observing that "federal courts . . . have uniformly held that time spent in establishing the entitlement to an amount of the fee is compensable").

In preparing plaintiff's fee motions, all attorneys and Ms. Bustos collectively worked 190.8 hours. ECF No. 157-2 at 3. Plaintiff requests fees based on 110.3 hours to account for billing judgment. *Id.*; ECF No. 157-2 at 3. Additionally, plaintiff's attorneys spent 64.9 hours of attorney time and 14.1 hours of paralegal time preparing plaintiff's reply. ECF No. 176-5 at 5.

The court finds that, with a minor exception, the requested fees are reasonable. Specifically, four hours will be excluded from the time Ms. Bustos spent preparing plaintiff's reply. In her declaration, Ms. Bustos states that she has reduced the 18.4 hours of time she worked to 14.1 to account for billing judgment. ECF No. 176-3; *see* ECF No. 176-5 at 20-21. She also states that four of the 18.1 hours were reclassified as "legal assistant time" rather than paralegal work. ECF No. 176-5 at 20-21. For the reclassified time, Ms. Bustos asks to be compensated at an hourly rate of $125, rather than the requested $215 rate for paralegal work. But the clerical tasks covered by the reclassified entries are not compensable, even at a reduced rate. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."); *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (work that is "clerical in nature . . . should [be] subsumed in firm overhead rather than billed" and is therefore not recoverable). In addition to these four hours, the court will exclude all hours Ms. Bustos billed for legal assistant tasks. Finally, the court will also cut ten percent from those hours that are compensable.

### 6.    Total Fee Award

Based on the foregoing, the court will award fees as follows:

| Attorney | Hours | Rate | Total Award |
|---|---|---|---|
| J. Kirk Boyd | 468.7 | $725.00 | $339,807.50 |
| William Verick | 244.5 | $725.00 | $177,262.50 |

| | | | |
|---|---|---|---|
| David Williams | 69 | $725.00 | $50,025 |
| Andrew Packard | 197.12 | $725.00 | $142,912 |
| Brian Acree | 54.5 | $600.00 | $32,700 |
| Matthew Maclear | 363 | $600.00 | $217,800 |
| Jason Flanders | 21.1 | $575.00 | $12,132.50 |
| Erica Maharg | 253.2 | $550.00 | $139,260 |
| William Carlon | 38.85 | $500.00 | $19,425 |
| Tom Brett | 46.9 | $500.00 | $23,450 |
| Kenya Rothstein | 47.9 | $325.00 | $15,567.50 |
| Harrison Beck | 100.25 | $325.00 | $32,581.25 |
| Theresa Trillo | 46.73 | $250.00 | $11,682.5 |
| Esmeralda Bustos | 89.24 | $150 | $13,386 |

Thus, plaintiff is entitled to a total fee award of $1,227,991.75.

### 7.    Multiplier

Plaintiff requests an upward adjustment of the fee award by applying a multiplier of 2.0. ECF No. 156-1 at 31. Plaintiff argues that upward adjustment is appropriate because this case presented novel issues and was taken purely on a contingency-fee basis. Plaintiff further argues that the "considerable time commitment required to successfully prosecute this matter certainly precluded other employment opportunities." *Id.* Counsel also states that no public or charitable funding was provided. *Id.*

"The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guarantee Mut. Lift Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (some internal quotes omitted). Thus, an upward adjustment is only appropriate where the enhancement is necessary to provide counsel with fair and reasonable compensation. *Blum*, 465 U.S. at 901.

16

Here, the court finds that the lodestar calculation set forth above adequately accounts for the contingency risk of taking on this case. The court also is not convinced that this action presented novel issues, and counsel's contention that this case "certainly precluded other employment opportunities" is not otherwise supported. Accordingly, the court declines to apply a positive multiplier.

### 8.    Costs

Plaintiff asks that it be awarded $133,678.51 in costs. ECF No. 156-1 at 32. As discussed above, RCRA permits the court to award costs, including "*reasonable . . .* expert witness fees," to the prevailing party. 42 U.S.C. § 6972(e) (emphasis added).

Plaintiff's motion fails to adequately show that it reasonably incurred the numerous costs that it seeks to have AT&T pay. Rather than attempting to explain why the various costs were necessary for prosecuting this action, plaintiff offers only conclusory statements. Specifically, plaintiff's motion states: "[a]s outlined in the accompanying declarations and exhibits thereto, these costs were reasonably incurred and are compensable under federal, state, and local standards." ECF No. 156-1 at 32. Plaintiff goes on to state that "[m]ost of these costs are for litigation, investigative, and expert consultants' service," and the "remaining costs were in the nature of court fees, process server fees, maintaining an Everlaw (data management) account, printing, postage, increasing data storage, and travel costs." *Id.* at 32-33.

Although a reference to a fee motion's "accompanying declarations and exhibits" might prove sufficient under certain circumstances, it is not here. Plaintiff's fee motion is supported by sixteen declarations. ECF Nos. 156-3 through 156-17, ECF No. 157; ECF Nos. 157-1 through 157-8. These declarations and their exhibits span nearly 2,150 pages. As plaintiff observes in its reply, "judges 'are not like pigs, hunting for truffles buried in briefs or the record.'" ECF No. 176 at 8 (quoting *Potter v. Dist. of Columbia*, 558 F.3d 542, 553 (D.C. Cir. 2009)).

Apart from its general reference to all declarations, plaintiff's only other supporting citations are to Exhibit 3 and paragraphs 7, 99, and 100 of Matthew Maclear's declaration. ECF No. 156-1 at 32-33. The cited exhibit consists of a spreadsheet that lists the fifty-two items for which plaintiff seeks to recover costs. In addition to providing the total amount for each cost, the

17

1   spreadsheet includes a brief description for each item. ECF No. 157-3. Critically, the court is

2   unable to discern whether each item was necessary to prosecuting this action. For instance, item

3   42 lists $1,500 for "Payment to expert P. Green for May service," while item 38 reflects a

4   payment of $7,240.00 "to J.W. Morris for consulting services from April through June 2024." *Id.*

5   While this exhibit does provide the names and compensation for plaintiff's experts, its terse

6   descriptions fall short of showing that the listed expert fees (or other expenditures) were

7   reasonably incurred. *See Grove v. Wells Fargo Fin. Cal*., *Inc*., 606 F.3d 577, 579 (9th Cir. 2010)

8   ("[O]nly costs which 'are typically charged to paying clients by private attorneys' may be

9   recovered as nontaxable litigation costs.").

10      The cited paragraphs are not more enlightening. Paragraph seven has no bearing on costs,

11   while paragraph ninety-nine reiterates plaintiff's position that most costs relate to expert fees.[15]

12   In paragraph 100, Mr. Maclear states that the "costs were necessarily incurred because Defendant

13   sought a[n] adjudication of the safety of the Cables after the Wall Street Journal article came out

14   in July 2023." He further states that the "costs were incurred for Plaintiff to investigate the

15   impacts of the Cables and to prove the claims raised in this litigation." *Id.* These statements

16   amount to little more than an unsupported and unexplained representation that the incurred fees

17   related to the claims and defenses.

18      For these reasons, the court declines to award plaintiff its requested costs.

19                              **Motion to Shift Costs or for Sanctions**

20      BTB/MTS moves to shift to AT&T the costs they incurred in responding to its subpoenas.

21   ECF No. 158.

22   **I.    Legal Standard**

23      Rule 45 of the Federal Rules of Civil Procedure provides that, when a court orders

24   compliance with a subpoena over a non-party's objection, it "must protect a person who is neither

25   a party nor a party's officer from significant expense resulting from compliance" with a

26

27      [15] Paragraph seven states that the declaration's second exhibit "is a true and correct
     spreadsheet setting forth the time spent by each attorney on this case, recorded in tenths of an
28   hour, with a description of what work was done." ECF No. 157 at 3.

                                        18

subpoena.  Fed. R. Civ. P. 45(d)(2)(B)(ii).  This rule was amended to "enlarge the protections afforded persons who are required to assist the court by giving information or evidence."  Fed. R. Civ. P. 45, Advisory Committee Notes.  Prior to amendment, district courts were afforded broad discretion in deciding whether to shift costs.  In exercising that discretion, courts considered several equitable factors, including "the public importance of the litigation, the invasiveness of the request, the reasonableness of the costs of production, the relative ability of the parties to bear the costs, and the non-party's interest, if any, in the outcome of the case."  *Valcor Engineering Corp. v. Parker Hannifin Corp.*, 2018 WL 3956732, at *1 (C.D. Cal. July 12, 2018).

Under its current version, Rule 45 "make[s] cost-shifting mandatory in all instances in which a non-party incurs significant expense from compliance with a subpoena."  *Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013).  There are only two relevant considerations to Rule 45's cost-shifting inquiring: "[1] whether the subpoena imposes expenses on the non-party, and [2] whether those expenses are 'significant.'"  *Id.* (quoting *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001)).  If both requirements are satisfied, "the district court must order the party seeking discovery to bear at least enough of the cost of compliance to render the remainder 'non-significant.'"  Although "the shifting of significant expenses is mandatory, . . . the analysis is not mechanical; neither the Federal Rules nor the Ninth Circuit has defined 'significant expenses,' which is a term that readily lends itself to myriad interpretations depending on the circumstances of a particular case."  *United States v. McGraw-Hill Companies, Inc.*, 302 F.R.D. 532, 536 (C.D. Cal 2014).

At a minimum, courts consider the non-party's financial ability to shoulder the cost of compliance.  *Id.*  "Rather than looking to the cost of compliance in a vacuum, courts must evaluate that cost in light of all the relevant factors and circumstances to protect" the non-party from "incurring significant expense."  *Cornell v. Columbus McKinnon Corp.*, No. 13-cv-02188-DI, 2015 WL 4747260, * 4 (N.D. Cal. Aug. 11, 2015) (citing Fed. R. Civ. P. 45, Advisory Committee Notes).  This is because an "expense might be 'significant,' for instance, to a small family-run business, while being 'insignificant' to a global financial institution."  *McGraw-Hill*, 302 F.R.D. at 536.

19

1    "Courts also consider whether the nonparty has an interest in the outcome of the

2    underlying case." *Balfour Beatty Infrastructure, Inc. v. PB & A, Inc.*, 319 F.R.D. 277, 281 (N.D.

3    Cal. 2017) (citing *Cornell*, 2015 WL 4747260 at*3, 5.  As one court has observed,

4            Rule [45] is aimed at protecting persons who are disinterested, and
             thus have little to gain from their outlays in compliance cost—such
5            as when "a non-party [is] required to provide a list of class
             members." Fed. R. Civ. P. 45, Advisory Committee Notes . . . .
6            The Rule was meant to protect those who are "powerless to control
             the scope of litigation and discovery, and should [therefore] not be
7            forced to subsidize an unreasonable share of the costs of a
             litigation" that does not concern them.  [*United States v.*] *CBS*, 666
8            F.2d at 371 (9th Cir. 1982).  It was not intended as a mechanism for
             entities which stand to benefit from certain litigation outcomes to
9            evade discovery costs arising from their involvement in the
             underlying acts that gave rise to the lawsuit.  *See Tutor-Saliba*
10           *Corp. v. United States*, 32 Fed. Cl. 609, 610, nt. 5 (1995) (the fact
             that the non-party was "substantially involved in the underlying
11           transaction and could have anticipated that [its involvement might]
             reasonably spawn some litigation, and discovery" was a
12           circumstance weighing against shifting costs).

13    *Cornell*, 2015 WL 4747260 at * 5; *see also In re Alpine Partner, (BVI) L.P.*, 635 F. Supp. 3d 900,

14    915 (N.D. Cal. 2022) (observing that courts, when evaluating whether an expense is significant,

15    "consider both (1) whether the nonparty has an interest in the outcome of the underlying case; and

16    (2) the non-party's financial ability to bear the costs of production").

17    **II.    Discussion**

18            BTB/MTS claims that it spent $381,64 complying with the subpoena.  This amount

19    includes $227,512 for fees charged by Alvarez & Marsel, an ESI vendor that was purportedly

20    recommended by AT&T; $68,860 in attorney's fees; and $85,269 for the approximately 505

21    hours Mr. Jones and Ms. Rydel-Fortner collectively spent reviewing documents.  ECF No. 159 at

22    9; ECF No. 161 ECF No. 162 ¶ 8; ECF No. 162-1.

23            AT&T argues that it should not be required pay BTB/MTS's expenses because BTB/MTS

24    has an interest in the outcome of this case.  ECF No. 170 at 5-7.  AT&T further argues that cost

25    shifting is inappropriate because Dow Jones Company has paid all of BTB/MTS's attorney's fees.

26    *Id.* at 7, 17-20.

27            The court agrees that BTB/MTS cannot be fairly characterized as a typical disinterested

28    party.  While plaintiff is responsible for filing and litigating this action, its success in obtaining

1  removal of the cables would not have been achievable without Jones and the other non-parties.

2  Documents filed during the course of this litigation show that Jones first discovered one of

3  the cables at issue while scuba diving in Lake Tahoe in 2012.  ECF No. 100 ¶ 2; *see also* ECF

4  No. 170-7 at 3.  In 2014, Jones cut a piece off an exposed end of the cable in hopes of

5  ascertaining its composition, but his initial efforts proved unfruitful.  ECF No. 100 ¶ 2.  He stored

6  the piece of cable on a shelf, where it remained for the next four years.  Then, in 2018, after

7  realized that the cable "was a lead-sheathed submarine telecom cable," Jones "performed an assay

8  and determined that the cable was primarily composed of lead."  *Id.*

9  BTB-MTS spent the following two years attempting to draw environmental regulators'

10  attention to the cables.  *Id.* ¶ 3; ECF No. 161 at 2.  In March 2020, BTB/MTS "brought the matter

11  to the attention of Plaintiff's counsel, and gave them the cable section [he] had taken."  ECF No.

12  100 ¶ 3.  William Verick, one of plaintiff's attorneys, represented that this case "was kind of

13  brought to [him] on a platter."  ECF No. 65-13 at 7.  Thus, BTB/MTS assisted, at least in some

14  manner, in the filing of this case.

15  Moreover, the same month plaintiff commenced this case, Jones and Rydel-Fortner agreed

16  to take an AT&T employee on "a boat patrol to share their insights on where the cable goes and

17  on shore infrastructure."  ECF No. 170-10.  Jones subsequently reached out to the employee and

18  asked him to "stay in touch and let us know if you need anything."  *Id.*  In July 2021, Jones

19  emailed one of plaintiff's attorneys to inquire about whether there were any updates on this case,

20  noting that BTB/MTS was "ready to dig in as needed."  ECF No. 170-4.  Plaintiff's counsel

21  responded that it had been "trying to arrange having this work done by [Jones and another

22  individual] from the start."  *Id.*

23  Then, on November 16, 2021, less than two weeks after the court entered the initial

24  consent decree, Jones emailed the AT&T employee to express his interest in "helping with cable

25  removal."  ECF No. 170-11.  In January 2022, MTS submitted a bid for the removal of the cables,

26  ECF No. 170-8, which ultimately was not accepted, ECF No. 161 ¶ 7.  That same month, "BTB-

27  MTS began assisting the Journal and the Environmental Defense Fund ('EDF') on an

28  investigation of lead-clad cables, which culminated in BTB-MTS publishing a report on that

1    investigation and the [*Wall Street*] *Journal* publishing a series of articles in July 2023 on the

2    subject." ECF No. 161 ¶ 8. In an email sent around the time the articles were published, Jones

3    states that he had dedicated a lot of time in relation to the *Wall Street Journal*'s articles, which he

4    believed would apply pressure to the Environmental Protection Agency. ECF No. 170-6. He also

5    stated, "[t]his will be a slow process but will lead to a LOT of work for our industry in the years

6    to come. We are front and center so hopefully that will lead to good things after the dust settles."

7    *Id.* This evidence demonstrates not only that BTB/MTS has an interest in this case, but that it

8    actively assisted plaintiff in filing this action.

9        BTB-MTS argues that this evidence is irrelevant to the cost-shifting inquiring. According

10   to BTB-MTS, the "the only issue is whether the nonparty has a significant enough ***financial*** stake

11   in the outcome of the litigation to affect whether the costs it incurred should be considered

12   'significant.'" ECF No. 159 at 5. In support of this position, BTB-MTS relies on several cases

13   where the court declined to shift costs because the non-party had a financial in the case's

14   outcome. Critically, none of the cited cases specifically held that the non-party's interest must be

15   financial in nature to have any bearing on whether the expense is significant. *See Cornell*, 2015

16   WL 4747260; *Valcor Eng'g*, 2018 WL 3956732. Indeed, not all courts have concluded that the

17   interest is not so narrowly defined. *See, e.g.*, *Am. Mun. Power, Inc. v. Voith Hydro, Inc.*, No.

18   2:17-cv-708, 2023 WL 3624783, at *10 (S.D. Ohio May 24, 2023) (collecting cases and

19   observing that "[s]ome courts have defined an interested non-party as 'an entity that does not

20   have an actionable right at issue in the litigation, but has a significant, underlying connection to

21   the case and, typically, some sort of financial or reputational stake in the litigation's outcome'").

22       In any event, the evidence summarized above shows that BTB-MTS had a financial

23   interest, albeit a speculative one that did not materialize. Jones provided important information

24   that plaintiff needed to bring this action, and he remained in contact with plaintiff's counsel

25   regarding the prospect of MTS being hired to remove the cables the form the basis of this case.

26   Moreover, Jones opined that his work on this action and with the *Wall Street Journal* would result

27   in a lot of work for his industry, which he apparently believed would pay dividends as soon as

28   "the dust settles." ECF No. 170-6. Thus, there is no merit to BTB-MTS's contention that it did

1  not have a financial interest.

2     Additionally, BTB-MTS's financial ability to bear the costs of production must be

3  considered.  BTB-MTS acknowledges that the Dow Jones Company has agreed to cover its

4  expenses related to complying with subpoenas.  ECF No. 173 at 6; *see also* ECF No. 162 ¶ 4

5  (stating that Mr. Joshua Koltun has been billing "Dow Jones for [his] work representing BTB-

6  MTS")  It contends, however, that this arrangement should not preclude shifting fees because it

7  will give any awarded fees to Dow Jones to cover the expenses it has paid.  *Id.* at 11.  While the

8  court has no reason to doubt that representation, it does not change the fact that BTB-MTS is able

9  to shoulder the significant expense of complying with the subpoenas, given Dow Jones's financial

10 assistance.

11    Accordingly, BTB-MTS's motion to shift costs, ECF No. 158, is denied.[16]

12 **III.  Conclusion**

13    Accordingly, it is hereby ORDERED that:

14   1.  Plaintiff's motion for attorneys' fees, ECF No. 156, is GRANTED IN PART.

15   2.  AT&T is directed to pay $1,227,991.75 in attorneys' fees.

16   3.  Plaintiff's motion is denied as to its request for costs.

17   4.  Non-parties Below the Blue, Marine Taxonomic Services, Ltd, Seth Jones, and

18 Monique Rydel-Fortner's motion for cost-shifting, ECF No. 158, is DENIED.

---

24    [16] The court also rejects BTB-MTS's alternative argument that sanctions under Rule
25  45(d)(1) should be imposed because AT&T issued the subpoenas for an improper purpose.  ECF
    Nos. 21-23.  The subpoenas sought documents and information in BTB-MTS's possession that
26  related to plaintiff's claims and AT&T's potential defenses.  ECF No. 65-14.  AT&T's decision
    to declare the initial consent decree null and void, and to defend against the *Wall Street Journal*'s
27  accusations—which overlap with the allegations asserted against it in this action—in a public
    forum does not evidence bad faith.  Considering AT&T's contention that the cables pose no risk
28  of harm to the environment, its decision seems rational.

5.  Defendant's motion for leave to submit a redacted version of Exhibit A to the declaration of Jon David Kelley, ECF No. 172, is GRANTED, and the Clerk of Court is directed to replace the exhibit at ECF No. 171-3, with the redacted version submitted at ECF No. 172-2 at 2.

IT IS SO ORDERED.


Dated:    September 30, 2025                    _____

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE