Joshua Koltun (Bar No. 173040)
One Sansome Street
Suite 1400, No. 2544
San Francisco, California 94104
Telephone: 415.680.3410
Facsimile: 866.462.5959
joshua@koltunattorney.com

Attorney for Nonparty Witnesses
Marine Taxonomic Services, Ltd,
Below the Blue, Seth Jones, and
Monique Rydel-Fortner ("BTB-MTS")

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PACIFIC BELL TELEPHONE COMPANY,

        Movant,

v.

MARINE TAXONOMIC SERVICES, LTD.

        Respondent

Case No. 2:24-cv-00022-KJM-JDP

**MEMORANDUM IN SUPPORT OF REQUEST FOR RECONSIDERATION BY THE DISTRICT COURT OF MAGISTRATE JUDGE'S RULING DATED SEPTEMBER 30, 2025**

[No hearing, per L.R. 303(e)]
Judge:    Hon. Kimberly J. Mueller

CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,

        Plaintiff,

v.

PACIFIC BELL TELEPHONE COMPANY

        Defendant

Case 2:21-cv-00073-JDP

*TABLE OF CONTENTS*

TABLE OF AUTHORITIES ..................................................................................................iv

Introduction .........................................................................................................................1

Background ..........................................................................................................................3

Argument .............................................................................................................................5

I.    BTB-MTS has a right to reconsideration of the Magistrate Judge's Order by an Article III Judge.. ...........................................................................................................................................5

II.   Where, as here, the facts are not in dispute, the Magistrate Judge made no findings, and constitutional issues are implicated, review is de novo. ......................................................6

III.  The Magistrate Judge's ruling that BTB-MTS is an "interested party" that is not entitled to an award of its "significant expenses" is contrary to law and clearly erroneous .......................................7

A.    The obligation to pay "significant expenses" to nonparties is mandatory ...................7

B.    AT&T waived any argument that it was not obligated to reimburse the costs of its recommended ESI vendor, because BTB-MTS raised before this Court its contention that it was entitled to such reimbursement and AT&T did not dispute that..........................................7

C.    As a matter of law, the only "interest" the court may consider is whether the nonparty has a substantial financial stake in the outcome of the litigation that would render the discovery expenses less "significant" ..................................................................................................8

D.    The concededly "speculative" financial interest on which the Magistrate Judge relied cannot be a basis to deny cost-shifting..............................................................................................10

E.    The rule that the Magistrate Judge would impose, that a nonparty should be denied cost-shifting simply because it advocated the same public interest goal as the plaintiff, is contrary to law. ...........................................................................................................................................12

1.    A rule that would deny cost-shifting to a nonparty that had advocated for the same goal as was accomplished by public-interest litigation, is flatly contrary to Legal Voice, the seminal Ninth Circuit decision on cost-shifting ........................................................................12

2.    To deny cost-shifting on the grounds that BTB-MTS had advocated the removal of the cables would penalize it for its advocacy, in violation of the First Amendment ..........................13

Joshua Koltun ATTORNEY

IV.    Dow Jones's agreement to pay or to advance any of these significant expenses does not negate AT&T's obligations to reimburse them. ............................................................................... 14

V.    AT&T withdrew from the consent decree even though it had every intention of complying with it, solely that it could take discovery of the Wall Street Journal and BTB/MTS; the discovery in this case was a sanctionable misuse of the subpoena power ..................................................................... 15

Conclusion .............................................................................................................................. 17

### TABLE OF AUTHORITIES

**Cases**

*Allstate Ins. Co. v. Vavasour*, 797 F. Supp. 785, 787 (N.D. Cal. 1992) ...................................9

*Am. Mun. Power, Inc. v. Voith Hydro, Inc.*, 2023 U.S. Dist. LEXIS 91455, at *23-25, 33-36 (S.D. Ohio May 24, 2023 ...................................................................................................................10

*Art of Living Found. v. Does*, 2011 U.S. Dist. LEXIS 129836...................................................6

*Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009).........................................9

*Balfour Beatty Infrastructure, Inc. v. PB & A, Inc.,* 319 F.R.D. at 282-83 (N.D. Cal. 2017) .................9

*Barracuda Networks v. J2 Global*, 2020 U.S. Dist. LEXIS 183538 ...................................15

*Brandenburger v. Thompson*, 494 F.2d 885, 889 (9th Cir. 1974) ............................................15

*Cornell v. Columbus McKinnon Corp.*, 2015 U.S. Dist. LEXIS 105450, at *8 (N.D. Cal. Aug. 11, 2015). ..........................................................................................................................passim

*Durando v. U.S.*, 70 F.3d 548, 549 (9th Cir. 1995) .............................................................6

*Ed A. Wilson, Inc. v. GSA*, 126 F.3d 1406, 1409-10 (Fed. Cir. 1997)....................................14

*First Am. Corp. v. Price Waterhouse Ltd. Liab. P'ship 184 F.R.D.* 234, 242 (S.D.N.Y. 1998).............11

*Gamefam v WowWee Grp.,* 2024 U.S. Dist. LEXIS 47464, at *17 (N.D. Cal. Mar. 18, 2024...............8

*Haglund v. Sawant*, 781 F. App'x 586, 589 (9th Cir. 2019) ...................................................13

*re Alpine Partners*, 635 F. Supp. 3d 900, 905-06 (N.D. Cal. 2022)........................................10

*In re Sanomedics, Inc.*, 583 B.R. 796, 799-800 (Bankr. S.D. Fla. 2018) ....................................16

*Irwin v. Mascott*, 370 F.3d 924, 929 (9th Cir. 2004). ...........................................................5

*Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) ("Legal Voice I") ..........1, 7, 12, 15

*Legal Voice v. Stormans.* 757 F.3d 1015, 1016-17 (9th Cir. 2014) ("*Legal Voice II*").....................1, 2

*Lolley v. Campbell*, 28 Cal. 4th 367 (2002)........................................................................14

*Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792, 813-14 (9th Cir. 2003...................................17

*McClatchy v. C.I.R.*, 147 F.3d 1089, 1090 (9th Cir. 1998)......................................................6

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347, 115 S. Ct. 1511, 1519 (1995). ....................13

*NAACP v. Button*, 371 U.S. 415, 429-30, 83 S. Ct. 328, 336 (1963) .......................................13

Joshua Koltun ATTORNEY

*Nadarajah v. Holder*, 569 F.3d 906, 916 (9th Cir. 2009) ........................................................ 14

*Rawlings v. Heckler*, 725 F.2d 1192, 1195 (9th Cir. 1984) ....................................................... 9

*Reed v. Town of Gilbert*, 576 U.S. 155, 64-65 (2015) ( ........................................................... 13

*Satchell v. Wallace*, 439 F. App'x 644, 645 (9th Cir. 2011) ..................................................... 14

*Smith v. Ark. State Highway Emps.*, 441 U.S. 463, 464, 99 S. Ct. 1826, 1827-28 (1979) ................... 13

*Speiser v. Randall*, 357 U.S. 513, 535-36, 78 S. Ct. 1332, 1345-46 (1958) ................................. 13

*Stivers v. Pierce*, 71 F.3d 732, 751 (9th Cir. 1995) ............................................................... 6

*Tutor-Saliba Corp. v. United States,* 32 Fed. Cl. 609, 610 n.5. (1995 ...................................... 10

*United States v. McGraw-Hill Cos.*, 302 F.R.D. 532, 535-36 (C.D. Cal. 2014) ............. 7, 11, 14, 15

*United States v. Neville*, 985 F.2d 992, 999 (9th Cir. 1993) ..................................................... 5

*Valcor Engineering Corp. v Parker Hannifin Corp.,* 2018 U.S. Dist. LEXIS 142120 (C.D. Cal. July 12, 2018) ..................................................................................................... 9, 10, 13

*Whitmire v. C.I.R.*, 178 F.3d 1050, 1051 (9th Cir. 1999) ......................................................... 6

**Statutes**

28 USC § 636 ........................................................................................................... 5, 6

**Rules**

Fed.R.Civ.P.  45 ............................................................................................................ 1

Advisory Note to the 1991 amendments to Rule 45 ................................................................ 17

Fed.R.Civ. P. 72 ......................................................................................................... 5

Local Rule 303 ........................................................................................................... 5

Local Rule 302 ........................................................................................................... 5

*Joshua Koltun* ATTORNEY

### Introduction

Nonparty witnesses BTB-MTS respectfully requests this Court  to reconsider the ruling of the Magistrate Judge, dated September 30, 2025 denying BTB-MTS's request for cost-shifting under Fed.R.Civ.P. 45(d)2(B)(ii) (hereinafter: "Order"), especially the denial of reimbursement for ESI vendor costs. [1]

In this public interest lawsuit, plaintiffs succeeded in causing AT&T to remove lead-clad cables from the bottom of Lake Tahoe.  On September 30, the Magistrate Judge issued the Order, awarding plaintiffs $1,227,992 as the "prevailing party."  In the same Order, the Magistrate Judge *denied nonparty BTB-MTS's* motion to shift the "significant expenses" it incurred in responding to discovery in this matter, on the strange ground that BTB-MTS had "*actively assisted plaintiff* in filing this action. [sic]"  Order at 22 (emphasis added).

Why would plaintiffs be entitled to an award for accomplishing (on behalf of the public) the removal of the cables, whereas the nonparty would be *denied* any award *precisely because* (according to the Magistrate Judge's reasoning) the nonparty had assisted in achieving that public goal?

The ruling is contrary to law and clearly erroneous.  The award of "significant expenses" to a nonparty is *mandatory* under Rule 45(d)(2)(B)(ii).  *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) ("Legal Voice I"); *see also id.* 757 F.3d 1015, 1016-17 (9th Cir. 2014) ("*Legal Voice II*")  The court is obligated to shift "significant" costs from the nonparty to the requesting party "as a matter of course." *Cornell v. Columbus McKinnon Corp.*, 2015 U.S. Dist. LEXIS 105450, at *8 (N.D. Cal. Aug. 11, 2015).

As discussed below in section III, the Magistrate Judge's ruling is squarely in conflict with *Legal Voice I,* the seminal case on cost-shifting.  In that case, just as here, the nonparty nonprofit that sought cost-shifting had brought to public attention the issue that was the subject of the litigation and

---

[1] The ruling is Docket Entry 178 in Case 2:21-cv-00073-JDP.  In this brief, entries on that docket will be referred to as "BTB/DE__," and docket entries in Case No. 2:24-cv-00022-KJM-JDP as "MTS/DE__."  As explained herein, both "matters" relate to the discovery of BTB-MTS, which treated in a unified fashion.

1  had assisted the party that successfully sought a result in the public interest.  Moreover, as explained

2  in section IV, in *Legal Voice II*, the Ninth Circuit awarded attorney fees to the nonparty, even though

3  the nonparty faced no expense, since the attorneys had worked *pro bono*.  But the Magistrate Judge

4  ignored *Legal Voice II* and denied cost-shifting on the alternative ground that BTB-MTS could

5  "shoulder the significant expense of complying with the subpoena" because those expenses would be

6  paid by Dow Jones.  Order at 23.   Just as the nonparty – which faced no expense for its attorneys'

7  work -- could recover fees on behalf of its attorneys in *Legal Voice II,* BTB-MTS should be able

8  to recover its "significant expenses" on behalf of Dow Jones.  To enable AT&T to impose "significant

9  expenses" on Dow Jones because it was unhappy about the *Wall Street Journal's* reporting on the

10  environmental issues at issue in this case would violate the policies behind Rule 45, and the First

11  Amendment.

12      This is particularly true with respect to the vendor fees at issue here, because BTB-MTS

13  reasonably relied on an expectation that the A&M fees would be reimbursed by AT&T.  As explained

14  in section III.B, following on meet-and-confer discussions, BTB-MTS engaged a top-flight, very

15  expensive, ESI vendor – Alvarez & Marsel ("A&M")– which AT&T had specifically recommended.

16  At the point at which the parties were disputing before the Magistrate Judge the scope of the

17  upcoming discovery, BTB-MTS specifically raised the point that AT&T would be obligated to pay for

18  this expense  BTB/DE 109 at 19-20.  AT&T did not dispute that: "Given Pacific Bell's willingness to

19  shoulder the financial burden of BtB's production, it's baffling that BtB insists on litigating whether

20  Pacific Bell *must* do so."  BTB/DE 115 at 11. n. 6.

21      If AT&T had raised its arguments against to cost-shifting at that time, BTB-MTS would have

22  obtained an adjudication in advance on this issue (if necessary, from an Article III Judge)  prior to

23  incurring the massive expense at issue on this motion.  In the event of an adverse ruling, it would

24  certainly have chosen a less-expensive vendor and resisted AT&T's ever-expanding discovery

25  requests.  At a minimum, this Court should award the amount of the A&M fee.

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Joshua Koltun ATTORNEY

*Background*

The following facts are in the record, were not disputed, and the Magistrate Judge made no contrary findings:

Marine Taxonomic Services, Inc. ("MTS") is an environmental consulting firm.  BTB/ED 161 at, ¶1.  Seth Jones is one of its principals; Monique Rydel-Fortner is an employee.  *Id.* Jones and Rydel-Fortner founded a nonprofit organization, Below the Blue ("BTB"), dedicated to removing foreign debris from water bodies and educating the public about pollution.  *Id.*  MTS, BTB, Jones and Rydel-Fortner are referred to collectively here as "BTB-MTS."

Jones discovered a severed cable at the bottom of Lake Tahoe, and in 2018, realized it was a submarine telecom cable. *Id.,* ¶ 3.  At that point MTS performed an assay and determined that the cable sheathed in lead. *Id.*  Over the next two years BTB-MTS attempted to interest government environmental regulators in the lead cables at the bottom of the lake. *Id.*. In 2020, Jones brought the matter to the attention of Plaintiff's counsel.  *Id.* Subsequently Plaintiff brought this lawsuit. *Id.;* Order at 2.

The parties initially entered into a Consent Decree in November 2021.  Order at 2.  BTB-MTS worked for a while thereafter on a volunteer basis with Plaintiff counsel and AT&T personnel on the logistics of removing the Cables from the lake.   BTB/DE 161, ¶5, ¶7; Order at 21.  In January 2022, MTS submitted a bid for the removal of the cables, but by February 2022 the bid was given to another firm.  BTB/DE 161, ¶7; Order at 21.

Starting in January 2022, BTB-MTS began assisting the *Journal* and the Environmental Defense Fund ("EDF") on an investigation of lead-clad cables, which culminated in BTB-MTS publishing a report on that investigation and the *Journal* publishing a series of articles in July 2023 on the subject.  BTB/DE 161, ¶ 8, Order at 2, 3, 21.

Because of the *Journal's* reporting on the environmental issue of lead-clad cables, AT&T withdrew from the Consent Decree.  Initially, AT&T indicated that it would take discovery directly of the *Journal*.   BTB/DE 41 at Exh. A p. 6 ("Further testing also may be required after AT&T receives more information from Plaintiff and the Journal in response to discovery.")  Ultimately, however,

Joshua Koltun ATTORNEY

1    AT&T chose not to pursue discovery from the *Journal* directly, and instead, in August 2023, BTB,

2    MTS and Jones were served with identical subpoenas.  Order at 3.  The subpoena to BTB issued from

3    this Court, because BTB was located in Lake Tahoe, whereas the subpoenas to Jones and MTS were

4    issued out of the Southern District.  Order at 3 n.4.

5         After facing initial difficulties in obtaining counsel, the undersigned was engaged and

6    responded to the discovery on behalf of BTB, MTS and Jones jointly in the proceeding before Judge

7    Peterson, even though the subpoena to MTS was technically before the Southern District.  BTB/DE

8    162 ¶ 6; Order at 3.

9         In the course of the discovery dispute, and in an effort to resolve issues, BTB-MTS engaged

10   Alvarez and Marsel ("A&M") an ESI vendor that was on a list of vendors AT&T had proposed hiring.

11   BTB/DE 162 at ¶8; Order at 20.   As discussed below in section III.B, BTB-MTS argued to the

12   Magistrate Judge that AT&T was obligated to pay the costs of the ESI vendor it had engaged, and

13   AT&T did not dispute that obligation.  It merely complained that "[g]iven Pacific Bell's willingness

14   to shoulder the financial burden of BtB's production, it's baffling that BtB insists on litigating

15   whether Pacific Bell *must* do so."  BTB/DE 115 at 11. N 6.[2]

16        This Court (Judge Mueller) related the motion to compel MTS to the underlying case before

17   Magistrate Judge Peterson, where the motion to compel BTB was heard.  "Given that the first action is

18   assigned to Magistrate Judge Jeremy D. Peterson, and that all parties … have not consented to the

19   jurisdiction of a United States Magistrate Judge, the … case…will be reassigned to the undersigned

20   and Magistrate Judge Peterson for all further proceedings."  MTS/DE 27, BTB/137; *see also* MTS/DE

21

22        [2]In January 2024, MTS signed a written engagement with A&M," BTB/DE162 ¶ 8.  AT&T,
     however, objected to BTB-MTS reviewing its own documents.  BTB/DE 104-1 at 6-7.  Instead, it
23   asked BTB-MTS to stipulate to a protocol whereby a "neutral third-party vendor" would collect BTB-
     MTS devices,  review the documents therein and make its own determinations of responsiveness
24   based on word searches or by any "methods [the vendor] deem[ed] appropriate." *Id.* at 6.  There was
     no provision for the Court to review such "methods." *Id.* It was in the context of this proposal that
25   AT&T proposed to pay the costs of the vendor, up to $100,000.  BTB-MTS declined to accept that
     proposal.  AT&T moved the Court to issue the proposed protocol as an order, and BTB-MTS
26   opposed.  BTB/DE 104-1, BTB/DE 109.  The Court declined to issue the extraordinary order
     requested by AT&T and simply set a deadline for production.  BTB/DE 124 at 7.  Dow Jones has not
27   paid the invoices for A&M, because of its understanding that these invoices would be paid by AT&T.

28

1  30 (Motion to compel MTS is referred by Judge Mueller to Magistrate Judge Peterson "as provided by

2  Local Rule 302(c)(1)").[3]

3        MTS had asked AT&T to reimburse it for the significant expenses that it incurred in

4  complying with the subpoena, to wit: $227,512 for fees charged by A&M, $68,860 in attorney fees,

5  and $85,269 in hours spent by Jones and Rydel-Fortner (at their ordinary billable rates), for time spent

6  reviewing documents in complying with the subpoena.  Order at 20.  The vast majority of these costs

7  concerned BTB-MTS reporting with the *Journal* and EDF.  BTB/DE 162, ¶ 9.  Because AT&T

8  declined, BTB-MTS moved for cost-shifting under Rule 45,[4] which motion the Magistrate Judge

9  denied in its entirety.

                              *Argument*

10

11

I.    **BTB-MTS has a right to reconsideration of the Magistrate Judge's Order by an Article III**
12     **Judge.**

13        "The right to adjudication before an Article III judge is an important constitutional

14  right." *United States v. Neville*, 985 F.2d 992, 999 (9th Cir. 1993).  A nonparty cannot be subject to

15  the jurisdiction of a Magistrate Judge without consenting thereto.  *Irwin v. Mascott*, 370 F.3d 924, 929

16  (9th Cir. 2004).

17        As this Court correctly recognized, BTB-MTS has never consented to the jurisdiction of the

18  Magistrate Judge.  MTS/DE 27, BTB/DE 137.  Thus the Magistrate Judge only adjudicates this cost-

19  shifting motion in the first instance, subject to review by an Article III Judge.

20        This is as true for BTB as much as for MTS and Jones.  The fact that the subpoenas to BTB

21  were initiated in the Eastern District, and to MTS and Jones were initiated out of the Southern District

22  is irrelevant, since BTB-MTS responded to the discovery jointly before Judge Peterson in the

23  underlying case.  The fact that two separate ECF dockets were created is irrelevant to BTB-MTS's

24

25        [3] BTB-MTS has consistently taken the position that, since it has never consented to have its
   rights finally adjudicated by a Magistrate Judge, it has the right to object to any such ruling and seek
26  reconsideration by an Article III Judge.  See 28 USC § 636(b)(1); Fed.R.Civ. P. 72(a); L.R. 303.
   BTB/DE 159 at 4 n4.
27        [4] On the motion BTB-MTS also asked to be compensated for attorney fees on the cost-shifting
   motion.  Order at 20; BTB/DE 162,  ¶ 14, BTB/DE162 ¶10, BTB/DE 174 ¶3, BTB/DE 175.

28

Joshua Koltun  ATTORNEY

1  statutory and constitutional right to have Judge Peterson's ruling reviewed by an Article III Judge.

2  This motion is thus properly before Judge Mueller.[5]

3

4  **II.    *Where, as here, the facts are not in dispute, the Magistrate Judge made no findings, and constitutional issues are implicated, review is de novo.***

5          In reviewing a magistrate judge's order resolving a pre-trial discovery dispute, the district court

6  may overturn any legal conclusion that is "contrary to law." *Art of Living Found. v. Does*, 2011 U.S.

7  Dist. LEXIS 129836, at *8-9 (N.D. Cal. Nov. 9, 2011) (citing 28 U.S.C. § 636(b)(1)). Findings of fact

8  may be reversed only if they are "clearly erroneous." *Id.* Where the "the challenged decision involves

9  the application of constitutional standards to particular facts," the district court must review the

10  magistrate judge's conclusion *de novo. Id.*

11          Review is also *de novo* where the Magistrate Judge has made no factual findings, or where the

12  facts are undisputed. *Whitmire v. C.I.R.*, 178 F.3d 1050, 1051 (9th Cir. 1999) (reviewing de novo the

13  tax court's application of law to undisputed facts); *Estate of McClatchy v. C.I.R.*, 147 F.3d 1089, 1090

14  (9th Cir. 1998) (reviewing de novo a case submitted only on stipulated facts); *Durando v. U.S.*, 70

15  F.3d 548, 549 (9th Cir. 1995) (finding that "the issue for review, which was submitted to the district

16  court on cross-motions for summary judgment based on stipulated facts, is a legal one subject to de

17  novo review"). Even where the Magistrate Judge has made factual findings, the "clearly erroneous"

18  standard only applies to the findings themselves, not to legal conclusions or mixed questions of law

19  and fact. *Stivers v. Pierce*, 71 F.3d 732, 751 (9th Cir. 1995) ("we will reverse the fee determination if

20  the district court applied an incorrect legal standard in arriving at its decision").

21          As discussed above in the factual section, and in the arguments below, none of the issues turn

22  on a dispute of fact, nor did the Magistrate Judge make any findings bearing on the legal issues

23  discussed below.  Thus this Court should review the Order *de novo.*

24

25          [5] This Request has been filed in the docket of case 2:24-cv-0j0022-KJM-JDP because that

26  docket reflects Judge Mueller's supervisory role and permits the docketing of a request to reconsider under Local Rule 303(c).   Because the docket in that case does not reflect the role of Kirkland & Ellis

27  as lead counsel in this matter, the relevant lawyers have been served outside the ECF system as reflected in the Proof of Service to the Request.

28

Joshua Koltun ATTORNEY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Joshua Koltun ATTORNEY

### III.    The Magistrate Judge's ruling that BTB-MTS is an "interested party" that is not entitled to an award of its "significant expenses" is contrary to law and clearly erroneous

#### A.    The obligation to pay "significant expenses" to nonparties is mandatory

As the Magistrate Judge correctly noted (Order at 19), the Ninth Circuit has held that 45(d)(1), as amended, *Legal Voice I,* the Ninth Circuit held that the 1991 amendment "made cost shifting mandatory in all instances in which a non-party incurs significant expense from compliance with a subpoena," *Id.* 738 F.3d at 1184-85.  "[W]hen discovery is ordered against a non-party, the *only* question before the court in considering whether to shift costs is whether the subpoena imposes significant expense on the non-party."  *Id.* at 1184; *accord United States v. McGraw-Hill Cos.*, 302 F.R.D. 532, 535-36 (C.D. Cal. 2014) ("Someone must pay the costs of production—the issue is whether those costs should fall on a party to the suit or a non-party who is powerless to control the scope of discovery. The Ninth Circuit has clarified that the former bears the burden, to the extent that the expenses are significant.").

In *Legal Voice I,* the Ninth Circuit had "no trouble" in concluding that an expense of $20,000 was a "significant expense," and thus the only issue for the lower court was how much of that amount should be shifted "to render the remainder non-significant."  738 F.3d at 1185.

The Magistrate Judge nevertheless declined to award any costs to BTB-MTS, on grounds (i) that BTB-MTS is an "interested party" that should be denied cost-shifting, and because (ii) Dow Jones it can shoulder the discovery expenses because Dow Jones has agreed to cover BTB-MTS's expensive.  Both conclusions are contrary to law and clearly erroneous, as discussed in the next sections.

#### B.    AT&T waived any argument that it was not obligated to reimburse the costs of its recommended ESI vendor, because BTB-MTS raised before this Court its contention that it was entitled to such reimbursement and AT&T did not dispute that

The Magistrate Judge's failure to award the costs of using A&M (AT&T's recommended vendor) is particularly inappropriate, as AT&T waived any argument that it was not obligated to reimburse such expenses.

Per Rule Rule 45(d)(2)(ii), any order to compel a nonparty "must protect [that nonparty] from

1  significant expense resulting from compliance."  All that is required to invoke that protection is that

2  the subpoenaed party put the requesting party on notice that it will seek reimbursement of costs.  *See,*

3  *e.g., Gamefam v WowWee Grp.,* 2024 U.S. Dist. LEXIS 47464, at *17 (N.D. Cal. Mar. 18, 2024).

4  At the point at which the parties were disputing before the Magistrate Judge the scope of the

5  upcoming discovery, BTB-MTS specifically stated its understanding to the Magistrate Judge that Rule

6  45(d)(2)(B)(ii) required that AT&T reimburse it for such expenses.  BTB/DE 109 at 19-20.  AT&T

7  was not only put on notice, it did not contest BTB-MTS's right to shift costs. BTB/DE 115 at 11 n.6

8  ("Given Pacific Bell's willingness to shoulder the financial burden of BtB's production, it's baffling

9  that BtB insists on litigating whether Pacific Bell *must* do so").  Had AT&T contested that obligation,

10  BTB-MTS would have asked the Magistrate Judge – and this Article III Judge, if necessary -- to

11  adjudicate the issue in advance.  And in the event that this Court had ruled that it had no right to shift

12  costs, BTB-MTS would certainly would have hired a less expensive vendor and resisted AT&T's ever

13  expanding discovery requests.  BTB/DE 162, ¶ 8.   BTB-MTS (and Dow Jones) reasonably relied

14  upon the understanding that these expenses would be reimbursed and has been prejudiced by AT&T's

15  litigation behavior.  BTB/DE 159 at 18.

16  **C.    As a matter of law, the only "interest" the court may consider is whether the
nonparty has a substantial financial stake in the outcome of the litigation that would
render the discovery expenses less "significant"**

18  Since the only question is whether the nonparties' costs are "significant," the only "interest"

19  that the court may consider is whether the nonparty has such a ***substantial financial interest*** in the

20  litigation as to affect the "significance" of the expenses.  The cases cited by the Magistrate Judge

21  explain why that is the case.

22  In *Cornell,* the court stated "in determining whether cost-shifting is appropriate 'is the extent

23  to which the nonparty has an interest in the outcome of the case.'" *Id.,* 2015 US Dist. LEXIS 105450

24  at * 13-14).  The court made clear, however, that the "interest" to which it was referring was a

25  ***financial*** interest, because, under the mandatory rule where "significant expenses" are to be shifted

26  "as a matter of course," a factor can only be relevant "to the extent that it bears on the question of

27  significance." *Id.* at *8. The Magistrate Judge correctly cited the key to the reasoning of *Cornell* and

28

Joshua Koltun ATTORNEY

1   kindred decisions:

> It was not intended as a mechanism for entities which stand to benefit from
> certain litigation outcomes to evade discovery costs arising ***from their
> involvement in the underlying acts that gave rise to the lawsuit***. *See Tutor-
> Saliba Corp. v. United States*, 32 Fed. Cl. 609, 610, nt. 5 (1995) (the fact that
> the non-party was "***substantially involved in the underlying transaction*** and
> could have anticipated that [its involvement might] reasonably spawn some
> litigation, and discovery" was a circumstance weighing against shifting costs).

6   Order at 20 (citing *Cornell,* 2015 US Dist. LEXIS 105450 at *14) (emphasis added); *accord Valcor*

7   *Engineering Corp. v Parker Hannifin Corp.,* 2018 U.S. Dist. LEXIS 142120 (C.D. Cal. July 12,

8   2018), *6 (same); *Balfour Beatty Infrastructure, Inc. v. PB & A, Inc.,* 319 F.R.D. at 282-83 (N.D. Cal.

9   2017) (same).

10         The Magistrate Judge stated that cases such as *Cornell* and *Valcor* had not "specifically held

11   that the non-party's interest must be financial in nature to have any bearing on whether the expense is

12   significant." Order at 22. But the reasoning of these cases is clear. A nonparty's expenses may not

13   be significant if its own involvement in ***"the underlying acts giving rise to the lawsuit"*** are such that

14   it faced legal liability similar to the defendant in that case. The terminology used in these cases is well

15   understood. The "underlying acts" that "give rise" to a suit are the acts ***by defendant, on which its***

16   ***liability*** is premised. *See , e.g.*, *Rawlings v. Heckler*, 725 F.2d 1192, 1195 (9th Cir. 1984) (the phrase

17   "underlying government action giving rise to the litigation" is used to mean the "underlying

18   government action" that lacked factual or legal justification); *Allstate Ins. Co. v. Vavasour*, 797 F.

19   Supp. 785, 787 (N.D. Cal. 1992) ("insurers must look beyond the causes of action actually pled to

20   determine whether the underlying facts giving rise to the lawsuit might support a covered claim"), *see*

21   *also Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009) ("When there are well-

22   pleaded factual allegations, a court should assume their veracity and then determine whether they

23   plausibly give rise to an entitlement to relief.").

24         The cases cited by the Magistrate Judge ***all*** involved nonparties that either had a direct

25   financial interest in the case, or an indirect interest based on their involvement in the "underlying

26

27

28

transaction," to wit, the "underlying facts giving rise to the lawsuit."[6]  (The Magistrate Judge's contention that BTB-MTS's nonfinancial interest in cleaning up Lake Tahoe is one that should be taken into account is also contrary to law, as discussed in section III.E below).

The underlying facts giving rise to the lawsuit are, as the Magistrate Judge explained, "that AT&T previously installed two telecommunication cables along the bottom of Lake Tahoe that, although no longer operational, remain in the lake [and] allegedly discharge lead, contaminating the water and surrounding environment."  Order, BTB/DE 178 at 2.

BTB-MTS did not put the cables there.  AT&T did.  BTB-MTS had no involvement in the facts giving rise to this lawsuit.  Thus the sort of substantial financial interest that might render BTB-MTS's expenses less "significant" is simply absent.

**D.    *The concededly "speculative" financial interest on which the Magistrate Judge relied cannot be a basis to deny cost-shifting***

The only purported financial interest that the Magistrate Judge concluded that BTB-MTS had in the case was (1) that "In January 2022, MTS submitted a bid for the removal of the cables, ECF No. 170-8, which ultimately was not accepted," and (2) that Seth Jones believed that the articles the *Wall Street Journal* had published about lead-clad cables would ultimately lead to a lot of work for the

---

[6]*See Cornell,* 2015 US Dist. LEXIS 105450 at *9-10 (nonparty FedEx had a "direct financial interest" in the case because it was liable for plaintiff's ever-growing medical expenses and disability benefits; "FedEx's direct stake in the outcome of this case — namely, the prospect of recouping more than its cost of compliance — effectively renders the discovery expenses involved here far less 'significant' to FedEx."); *Valcor* 2018 U.S. Dist. LEXIS 142120 *9-12 (nonparty had "been intimately involved in the acts giving rise to the litigation and has a financial interest in the case" – it had manufactured the part that had allegedly failed, and would have been liable if plaintiff succeeded and would have received ongoing income if plaintiff failed); *Tutor-Saliba Corp. v. United States,* 32 Fed. Cl. 609, 610 n.5. (1995)( nonparty had been "substantially involved in the underlying transaction," and thus would not have qualified for sanctions under the more lenient "undue burden" standard); *Balfour,* 319 F.R.D. at 282-83 (nonparty had the act's "involvement in the underlying acts that gave rise to the lawsuit" -- The defendant was alleged to have failed to properly design a feature of a contractual project; the nonparty had been hired by plaintiff to review defendants' plans to ensure compliance, and had required defendant to alter the design; *Am. Mun. Power, Inc. v. Voith Hydro, Inc.,* 2023 U.S. Dist. LEXIS 91455, at *23-25, 33-36 (S.D. Ohio May 24, 2023) (nonparty was subcontractor on contract in dispute in the litigation); *In re Alpine Partners*, 635 F. Supp. 3d 900, 905-06 (N.D. Cal. 2022) (nonparty had significant role in the merger at issue in appraisal proceeding, and so motion for cost-shifting in advance of compliance with subpoenas was denied without prejudice).

Joshua Koltun  ATTORNEY

environmental remediation "industry," of which MTS was a member.  Order at 21-22.  As the

Magistrate Judge conceded, such financial interest was "a speculative one that did not materialize."

Let us consider each of these purported financial interests in turn.

With respect to the hope of getting work from AT&T, "did not materialize" is true, but

imprecise.  The timeline is important.  After assisting plaintiff and AT&T in locating the cables for

removal in January 2022, MTS submitted a bid to AT&T to perform some remediation work, but the

project was awarded to another vendor *by February 2022.*  BTB/DE 161, ¶ 7.  AT&T did not subject

BTB-MTS to discovery requests until *August 2023*, by which time AT&T had taken an adversarial

position against BTB-MTS by reason of its reporting with the *Journal* about the environmental issue

of lead-clad cables. Order at 3.  And no expenses incurred prior to *January 2024* are being sought on

this motion. BTB/DE 162, ¶10.

In other words, at the time it was forced to incur the "significant expenses" at issue here, BTB-

MTS did not have even a "speculative" hope of getting work from AT&T.  It had absolutely no reason

to believe that AT&T would ever hire it to do anything, ever.

With respect to the second "speculative" interest, this was the hope that the environmental

remediation "industry" would get more work as a result of *the Wall Street Journal's reporting

generally,* and that some of that work might go to MTS.  Order at 22.

There is simply no authority that such a remote and conjectural financial possibility constitutes

a substantial enough financial interest to warrant denying cost shifting, and the Magistrate Judge cited

none.  On the contrary, even where the nonparty has a substantial financial stake in the litigation, that

only goes to determining the extent to which the costs are "significant" to that party; thus the court

may nevertheless shift substantial costs to the subpoenaing party.  For example, in *McGraw-Hill,* even

though the nonparties "may deserve the lion's share of the blame," the court stated that once the

nonparties filed their cost-shifting motion, "it is highly probably that some portion of the costs of

production will shift" to the subpoenaing party. *Id.*, 302 F.R.D. at 536 & n.1.  Accord, *First Am.

Corp. v. Price Waterhouse Ltd. Liab. P'ship184 F.R.D.* 234, 242 (S.D.N.Y. 1998) (nonparty

accounting firm that "played a role" and had a "unique responsibility" for the collapse of a bank was

required to absorb "a portion" of the expense of compliance with discovery).

Joshua Koltun ATTORNEY

Joshua Koltun ATTORNEY

**E.      The rule that the *Magistrate Judge* would impose, that a nonparty should be denied cost-shifting simply because it advocated the same public interest goal as the plaintiff, is contrary to law**

**1.      A rule that would deny cost-shifting to a nonparty that had advocated for the same goal as was accomplished by public-interest litigation, is flatly contrary to *Legal Voice, the seminal Ninth Circuit decision on cost-shifting***

By the same token, the fact that BTB-MTS shared the same public interest goal as plaintiffs – to clean up Lake Tahoe – cannot make it an "interested party."

The Magistrate Judge noted that BTB-MTS had discovered the cables in Lake Tahoe and had spent years "attempting to draw environmental regulators' attention" to them, before bringing the cables to the attention of plaintiff's counsel. Order at 21. "While plaintiff is responsible for filing and litigating this action, its success in obtaining removal of the cables would not have been achievable without" BTB-MTS. Order at 20-21. Thus, the Magistrate Judge reasoned that BTB-MTS had a non-financial "interest" in the case that disqualified it from cost-shifting. Order at 22.

The reasoning and result in this case is exceedingly strange. Plaintiffs are entitled to a million dollar award because of the benefit they brought the public, but BTB-MTS is to be denied award precisely because they helped plaintiff achieve that goal. But the law does not permit such a bizarre result. As explained in section III.C, a  party is "interested" only if it was involved in the underlying transaction – that facts giving rise to the cause of action.  Again, that is not the case here, BTB-MTS discovered the environmental hazard, it did not cause it.

The rule the Magistrate Judge would impose that a nonparty can be denied cost-shifting because it advocated for action to be taken in the public interest – is flatly contrary to *Legal Voice,* the leading Ninth Circuit authority on cost-shifting.

In *Legal Voice I,* the nonparty was a nonprofit (Legal Voice/Law Center) that had brought to the government's attention "reports of incidents" in which pharmacists had refused to dispense emergency contraception, and had been "a member of a task force that participated in a rule-making process" that led to the rule that was being challenged by plaintiffs in that case. *Id.* 738 F.3d at 1181. The court had "no trouble" ruling that the nonprofit advocate was entitled to a cost-shifting of its "significant expenses" --$20,000. *Id.*

Joshua Koltun ATTORNEY

Like BTB, the group in that case had raised an issue of public interest – the refusal of pharmacies to dispense contraceptives -- to the attention of the government and public and that issue had become the basis of the underlying litigation. *Id.* 738 F.3d at 1181. The premise that the advocacy group's non-financial "interest" in the public availability of contraceptives was relevant to cost-shifting cannot be squared with the Ninth Circuit's ruling that it was error to consider whether the expenses were an "undue burden" on the nonprofit organization. *Id.,* 738 F.3d at 1185. "The **only** question before the court in considering whether to shift costs is whether the subpoena imposes significant expense on the non-party." *Id.* (emphasis added). *Cf. Cornell*, 2015 U.S. Dist. LEXIS 105450, at *7-8 (After 1991, courts must "focus solely on whether costs are "significant," and "a non-party's expenses are not made less significant by the fact that the litigation is important to the general public."); *Valcor* 2018 U.S. Dist. LEXIS 142120, at *7 n.2 (same).

### 2.  To deny cost-shifting on the grounds that BTB-MTS had advocated the removal of the cables would penalize it for its advocacy, in violation of the First Amendment

A rule that exempting from cost-shifting a nonparty that has advocated, in the public interest, the same remedy as is being sought in a public-interest lawsuit, would unconstitutionally penalize advocates for their protected First Amendment activities.

The First Amendment protects advocacy and petitioning the government to take action. *See, e.g, NAACP v. Button*, 371 U.S. 415, 429-30, 83 S. Ct. 328, 336 (1963); *Smith v. Ark. State Highway Emps.*, 441 U.S. 463, 464, 99 S. Ct. 1826, 1827-28 (1979); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347, 115 S. Ct. 1511, 1519 (1995). Indeed, BTB/MTS's environmental advocacy is "political speech," the very core of what the First Amendment protects. *See , e.g.*, *Haglund v. Sawant*, 781 F. App'x 586, 589 (9th Cir. 2019) (statements about landord's code violations are protected "political advocacy.").

Thus to penalize BTB/MTS by denying it cost shifting on the basis of that advocacy would be unconstitutional. *See , e.g.*, *Speiser v. Randall*, 357 U.S. 513, 535-36, 78 S. Ct. 1332, 1345-46 (1958) (Douglas, J., concurring).  *See Reed v. Town of Gilbert*, 576 U.S. 155, 64-65 (2015) (a law that differentiates between actors based on the "communicative content" of their acts – the "types of ideas"

conveyed – is a content-based regulation subject to strict constitutional scrutiny and may be struck down even if it seems 'entirely reasonable.'").

Such a rule would be a powerful weapon that entities could use to chill public scrutiny of their alleged violations of law or public policy.  And that is precisely the result that AT&T sought and obtained here.

### IV.   *Dow Jones's agreement to pay or to advance any of these significant expenses does not negate AT&T's obligations to reimburse them.*

The Court also correctly recognized that "at a minimum, courts consider the non-party's financial ability to shoulder the cost of compliance."  Order at 19 (citing *McGraw-Hill*, 302 F.R.D. at 536; *Cornell,* 2015 U.S. Dist. LEXIS 105450 at * 13).

In *Cornell,* the court considered the party (Fedex's) "ability to pay," noting that its "recorded net income of $2.57 billion," while not dispositive, "dwarfed" the expense at issue and weighed in favor of finding the expenses "insignificant."  *Id.* *10-11.He

re, AT&T's resources dwarf those of MTS, let alone BTB, which has effectively no resources. BTB/DE 162, ¶ 13 (AT&T posts net income of 15.6 billion in 2023); BTB/DE 161, ¶ 2.

Nevertheless the Court denied cost-shifting in its entirely, reasoning that since Dow Jones had agreed to pay its expenses, the expenses were not significant to BTB-MTS.

This reasoning was contrary to law.[7]  A "party may 'incur' attorney fees even if the party is not personally obligated to pay such fees."  *Satchell v. Wallace*, 439 F. App'x 644, 645 (9th Cir. 2011) (quoting *Lolley v. Campbell*, 28 Cal. 4th 367 (2002)); *accord Nadarajah v. Holder*, 569 F.3d 906, 916 (9th Cir. 2009);  *Ed A. Wilson, Inc. v. GSA*, 126 F.3d 1406, 1409-10 (Fed. Cir. 1997) ("[A]wards of attorneys' fees where otherwise authorized are not obviated by the fact that individual plaintiffs are not obligated to compensate their counsel"; collecting authorities awarding fees to litigant where attorney was paid by a third party).

The policy of the fee-shifting statutes that expressly use the term "incurred" is precisely the

---

[7]Moreover, the reasoning does not apply to compensation for the time Jones and Rydel-Fortner spent in compliance with the subpoenas.

same with regard to cost-shifting under Rule 45. In *Legal Voice I,* the Ninth Circuit interpreted the 1991 amendment whereby Rule 45(d)(2)(ii) was adopted to make "cost shifting mandatory in all instances in which a non-party ***incurs*** significant expense from compliance with a subpoena." *Id.* 738 F.3d at 1184 (emphasis added). The court held that the nonparty's attorney fees were "recoverable by *pro bono* attorneys to the same extent that they are recoverable by attorneys who charge for their services." *Legal Voice II*, 757 F.3d at 1017; *accord Brandenburger v. Thompson*, 494 F.2d 885, 889 (9th Cir. 1974) (failing to award fees to pro bono counsel would discourage entities from assisting litigants who are unable to pay).

Thus the nonparty in *Legal Voice* faced no expense for the legal services rendered by its attorneys, but nevertheless was entitled to recover fees on their behalf. So, too, BTB-MTS is entitled to recover the "significant expenses" it incurred, and reimburse Dow Jones. For the avoidance of any doubt, BTB-MTS proposes that, as part of any cost-shifting award, that this Court ***order*** BTB-MTS to to reimburse Dow Jones for any amounts in the award that it has paid. See Proposed Order.

The Magistrate Judge's ruling is contrary to the policy behind Rule 45, which is as follows:

> Someone must pay the costs of production—the issue is whether those costs should fall on a party to the suit or a non-party who is powerless to control the scope of discovery. The Ninth Circuit has clarified that the former bears the burden, to the extent that the expenses are significant."

*McGraw-Hill,* 302 F.R.D. at 535-36. It would directly contradict that policy if AT&T were entitled to avoid shouldering the massive burden it created by its enormous discovery request and place that burden on a nonparty, Dow Jones, *Cf Barracuda Networks v. J2 Global*, 2020 U.S. Dist. LEXIS 183538, at *4 ($22,000 in discovery costs "is significant to any company, even one like" the nonparty, which was "worth billions of dollars.")

This is particularly so in this case, in which AT&T views Dow Jones as an adversary for having published articles in the *Journal* raising environmental concerns about the lead-clad cables it has abandoned around the country.

## V.    AT&T withdrew from the consent decree even though it had every intention of complying with it, so that it could take discovery of the Wall Street Journal and BTB/MTS; the discovery in this case was a sanctionable misuse of the subpoena power

The Magistrate Judge denied BTB-MTS's alternative motion for sanctions under Rule

45(d)(1), reasoning that AT&T was entitled to withdraw from the consent decree and had done so "in good faith," in order to "defend against the Wall Street Journal's accusations."  Order at 23 n.16.

The Magistrate Judge's reasoning was contrary to law and clearly erroneous.  AT&T's use of the subpoena power to pursue BTB-MTS and the *Wall Street Journal* for their reporting was improper, and based on bad-faith misrepresentations to the Court.

The only reason AT&T has ever offered for why it withdrew from that Consent Decree was that it wished to obtain an "adjudication" in light of the BTB/MTS and the *Journal's* investigation and reporting on lead-clad cables. AT&T told the Court at the time that the adjudication was necessary in order to "assess the condition of the underwater cables to determine their condition, their current and anticipated releasee to the environment, and the risks posed by their removal *or leaving them in place*." DE 41 at 2:21-3:2 (emphasis added).

But at the conclusion of the case, AT&T contended, to the contrary, *that it always intended* to "fulfill its original commitment to remove the cables," and is now doing so, even though it contends that it claims to have "disproven" the *Journal's* reporting. DE 148 at 20-21. "In 2021, we agreed to remove these cables to avoid the distraction and expense of protracted litigation. Last summer, following news reports regarding the cables, we *paused the removal* process to allow for further analysis by experts. Now that these studies have been performed and confirmed the safety of the cables, we can return to our commitment to remove the cables." BTB/DE 174, Exh. A, p.7 (emphasis added).

Thus AT&T, by its own admission – and contrary to the reasons it initially gave to the Court -- always intended to remove the Cables *whatever the result of the adjudication.*  Thus AT&T highjacked the formidable power of the Court's discovery processes, for the improper purpose of taking discovery "in the hands of third parties," who had published a report about the environmental risks of lead-clad cables that displeased AT&T. BTB/DE 49 at 3:24-25; *see also* BTB/DE 41 at Exh. A p. 6 (AT&T intention to take discovery of *Wall Street Journal*). A party that is not seeking meaningful judicial relief has no legitimate purpose for using the powers of the court's discovery processes. *See In re Sanomedics, Inc.*, 583 B.R. 796, 799-800 (Bankr. S.D. Fla. 2018) (purchaser of de minimis bankruptcy claim had "improper motive" for seeking discovery).

Joshua Koltun ATTORNEY

If AT&T had **sued** BTB/MTS or the *Journal* over that reporting, they would have been entitled to bring an anti-SLAPP motion, and AT&T would have had to face the risk of paying **all of the fees** BTB/MTS or the *Journal* had spent defending the case, **including** any discovery that the Court had allowed to take place. *See, e.g.,* Cal. C.C.P. 425.16 (c)(2). But rather expose itself to that risk, AT&T chose to exploit its ability to use the Court's subpoena powers to take discovery of BTB/MTS and, indirectly, of the *Journal.*

As the Advisory Note to the 1991 amendments to Rule 45 explains, that Rule gives attorneys the awesome power of an officer of the court, "entitled to use the court's contempt power to investigate facts in dispute." That grant of power is "necessarily accompany[ed]" by "increased responsibility and liability for the misuse of this power." Sanctions are appropriate, for example, when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law. *Id.* (citing *Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792, 813-14 (9th Cir. 2003).

If the Magistrate Judge's ruling stands, and AT&T avoids reimbursing the costs it has imposed on nonparties, it will have succeeded in abusing the powers of this Court

### *Conclusion*

Because the Magistrate Judge's Order denying BTB-MTS's request for cost-shifting is contrary to law and clearly erroneous, this Court should reverse the order and award the requested amounts to BTB-MTS, together with an order that BTB-MTS reimburse Dow Jones for the amounts it has covered.

Respectfully submitted,

October 14, 2025

_____
/s/

Joshua Koltun
Attorney for Nonparty Witnesses BTB-MTS