# EXHIBIT 2

| | |
|---|---|
| **From:** | Joshua Koltun |
| **To:** | Kelley, Jon David |
| **Cc:** | Harrison, Martha K.; Nomellini, Mark J.; Karis, Hariklia |
| **Subject:** | RE: ESI |
| **Date:** | Tuesday, January 2, 2024 11:46:03 AM |
| **Attachments:** | image001.png |

---

**This message is from an EXTERNAL SENDER**
Be cautious, particularly with links and attachments.

Dear Mr. Kelley:

Happy new year.  Thank you for sending me AT&T's proposed protocol.

When we discussed this matter on December 22, we discussed some of the interim methods of dealing with ESI that you had suggested in your email to me of December 20, and I mentioned some of the technical difficulties that they apparently presented.  (I should note in passing that I don't agree with all of your characterizations in that email but I think we are past all that at this point.)  As I represented to the Court, my clients have conducted a further search and had located some further responsive documents.  Rather than produce such documents in a technically deficient manner, we will produce them as discussed below.

Mr. Nomellini indicated, and I agree, that from a technical point of view it would be preferable to have a vendor handle the issues of collection and preservation of ESI.   Mr. Nomellini sketched out a proposed protocol whereby (i) AT&T would hire a vendor that would collect the devices from BTB/MTS and perform searches, (ii) the fruits of those searches would be disclosed to both parties, with (iii) some sort of measure being taken to hold back documents subject to BTB/MTS claim of privilege.

I suggested that such a protocol might be acceptable to BTB/MTS if the documents were provided directly only to BTB/MTS, which would then review for responsiveness and privilege before producing.  Mr. Nomellini responded that that would be unacceptable to AT&T because AT&T would be paying for the vendor.  I then suggested that although the parties might disagree about that issue, and present it to the court for resolution, in the meantime it would speed up the production adopted my proposal as an interim measure and began the process, with AT&T reserving its rights to ask for the court to impose its proposal.  Mr. Nomellini declined to accept such an interim solution.

You sent me AT&T's proposed protocol on December 28.  I have reviewed it, and on behalf of my clients I accept the technical protocol (Exhibit C), as to the specifications for the production of documents/ESI.  But the highly unusual Stipulation and Agreement  that you propose is not acceptable.

In order not to unnecessarily delay production in this matter, BTB/MTS has taken the following steps.   We are in the process of engaging a third  party vendor to assist with this document production.   It is our position that the costs of using this vendor should be borne by AT&T under Fed.R.Civ.P. 45(d)(2)(B)(ii).  BTB/MTS also reserves the right to argue that at least some portion of attorney fees may also be so compensable.  It would make the most sense to adjudicate such cost-shifting issues once the production is concluded and there is a full record of expenses.  At that point I would hope we could meet and confer to avoid BTB/MTS having to file a cost-shifting motion.  If AT&T wishes to contest the general question whether such costs should be shifted it may wish to present that issue in the current round of motion practice.

The vendor will take images of devices from the following custodians, which include the ones we have discussed:  Seth Jones, Monique Rydel-Fortner, Robert Mooney, Rachel Ostrander, Kiera Colloruso, Robin

Jones, Emma Redulovic, as well as material maintained by BTB/MTS in the cloud. The vendor will conduct word searches, including all word searches BTB/MTS has already made use of in its efforts to find all responsive documents, and will also advise BTB/MTS on additional word searches that might be fruitful. In addition, the vendor may make use of data analytics to review the documents BTB/MTS have determined were responsive, in order to search for other similar documents that might be responsive and might not have been located through word searches.

If AT&T wishes to propose its own list of word searches, the vendor can run those word searches. After running word searches, the vendor can generate a preliminary "hit list," which would help determine whether a given word has created an overly expansive universe of documents to review. We can meet and confer over that. An overly expansive universe will take longer to review for responsiveness, and such review may also constitute an added expense that BTB/MTS may seek to shift to AT&T.

My expectation is that the vendor would be able to quickly locate those documents that have already been produced so that they may be produced again under the technical ESI protocol (Exhibit C) on which we have agreed. To the extent that the above process locates additional documents that have not previously been produced, BTB/MTS and I will review them for responsiveness and privilege. We will create a privilege log pursuant to Fed.R.Civ.P. 45(e )(2)(A) both as to the First Amendment privilege and attorney-client/work product. With respect to the latter, we will log BTB/MTS communications seeking legal advice and legal representation. We do not agree to provide a log of BTB/MTS communications with me after I was retained to represent them in this matter.

A few remaining items. Mr. Nomellini agreed to get back to me on a number of issues:
1. Does AT&T in fact retain text messages of its users and if so, going back how far in time?
2. Has AT&T or its counsel accessed or disclosed any contents of any of BTB/MTS text messages?
3. Will AT&T stipulate to consolidating the motion transferred from the Southern District into the present motion practice.

Let me know if you have any questions.

Best regards,

**Joshua Koltun** ATTORNEY

One Sansome Street
Suite 3500, No. 500
San Francisco, CA 94104

415.680.3410
866.462.5959 fax
joshua@koltunattorney.com

---

**From:** Kelley, Jon David <jon.kelley@kirkland.com>
**Sent:** Thursday, December 28, 2023 11:06 AM
**To:** Joshua Koltun <joshua@koltunattorney.com>
**Cc:** Harrison, Martha K. <martha.harrison@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>; Karis, Hariklia <hkaris@kirkland.com>
**Subject:** RE: ESI

Joshua,

Following up on our December 22 discussion, and without waiver of any of Pacific Bell's positions or rights, attached is a proposed Below the

Blue ESI protocol.

The protocol includes relevant date ranges based on our understanding of your position as to when Below the Blue started work with the Journal (March 2022), when the Journal's articles were published (July 9, 2023), and when we understand you were engaged to represent your clients in this case (November 22, 2023).

Please let us know if you agree to this, and also if you would like to schedule a call to discuss.

Jon

**Jon David Kelley**
--------------------------------------------------------------
**KIRKLAND & ELLIS LLP**
4550 Travis Street, Dallas, TX 75205
**T** +1 214 972 1755   **M** +1 480 225 9934
**F** +1 214 972 1771
--------------------------------------------------------------
jon.kelley@kirkland.com

**From:** Joshua Koltun <joshua@koltunattorney.com>
**Sent:** Friday, December 22, 2023 11:09 AM
**To:** Kelley, Jon David <jon.kelley@kirkland.com>
**Cc:** Harrison, Martha K. <martha.harrison@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>
**Subject:** RE: ESI

Thanks.  Lets talk at 2 ET/11 PT

**Joshua Koltun** ATTORNEY

One Sansome Street
Suite 3500, No. 500
San Francisco, CA 94104

415.680.3410
866.462.5959 fax
joshua@koltunattorney.com

**From:** Kelley, Jon David <jon.kelley@kirkland.com>
**Sent:** Thursday, December 21, 2023 7:00 PM
**To:** Joshua Koltun <joshua@koltunattorney.com>
**Cc:** Harrison, Martha K. <martha.harrison@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>
**Subject:** Re: ESI

Hi Joshua,

Yes, we are free to discuss tomorrow between 1-3pm ET.  Please let us know what works best for you.

Jon David Kelley
--------------------------------------------------------------
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
T +1 214 972 1755
M +1 480 225 9934
--------------------------------------------------------------
jon.kelley@kirkland.com

On Dec 21, 2023, at 7:29 PM, Joshua Koltun <joshua@koltunattorney.com> wrote:

Jon,

Would you have any time tomorrow to discuss the various options you list at the end of your email.

**Joshua Koltun** ATTORNEY

One Sansome Street
Suite 3500, No. 500
San Francisco, CA 94104

415.680.3410
866.462.5959 fax
joshua@koltunattorney.com

**From:** Kelley, Jon David <jon.kelley@kirkland.com>
**Sent:** Wednesday, December 20, 2023 8:55 PM
**To:** Joshua Koltun <joshua@koltunattorney.com>; Karis, Hariklia <hkaris@kirkland.com>
**Cc:** Nomellini, Mark J. <mnomellini@kirkland.com>; Meier, Peter C. <petermeier@paulhastings.com>;
*navidhillon@paulhastings.com <navidhillon@paulhastings.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell
Telephone Company

Joshua,

We write to memorialize the issues discussed during our meet and confer Monday afternoon, and also to repeat our request
for information that we sought during that call but that you were unable to provide.

1. **Collection of responsive materials:**
   1. We asked you what steps your clients took to collect documents responsive to Pacific Bell's subpoena. You
      represented that you discussed Pacific Bell's document requests with your clients, described what they should
      look for, and that your clients were responsible for identifying and pulling documents they deemed in their
      judgment to be responsive based on your discussions.
   2. Accordingly, you acknowledged that you relied on their judgment with regard to identifying documents both for
      purposes of responsiveness and privilege, and that you did not conduct the responsiveness or privilege review
      yourself.
   3. You confirmed that you did not collect your client's custodial files, nor did you run any searches, yourself, through
      your client's files.
   4. You also mentioned that your clients used certain "search terms" to conduct these searches, but when asked
      what terms your clients used, you responded that you did not know. <u>Please provide the search terms.</u>
   5. You confirmed that all documents reflecting any communications between your clients and Plaintiff in this case
      had been given to you. We asked about your basis for this statement, and you confirmed that this is what your
      clients had represented to you, that you were relying on their representation, and that you had not reviewed the
      documents that your clients determined did not reflect communications between them and Plaintiff.
   6. We asked whether documents had been collected from any BtB or MTS employee, aside from Jones and Fortner,
      and you responded that an individual named Robert Mooney may have responsive documents. <u>Please confirm
      whether Mr. Mooney has documents responsive to the subpoena.</u>
   7. You confirmed that you had taken no steps to confirm whether the videographer involved with the Lake Tahoe
      cables was in possession of responsive documents, but you were not aware of any others. <u>Please confirm
      whether the videographer has documents responsive to the subpoena.</u>

2. **Status of information from Jones' and Fortner's phones:**
   1. In your e-mail of December 10th, after we inquired why there were no text messages in your client's document
      production, you wrote that your clients' cell phones "no longer exist" and that your clients were trying to
      determine "whether any old text messages might still exist." <u>Please confirm whether Jones' text messages pre-
      dating the "loss" of his phone exists.</u>
   2. We explained to you both via e-mail and during our call today the reasons this is such a significant problem,
      especially given the importance of your clients' communications during this period.
   3. During our call yesterday, you explained that the representations you made on December 10 were incorrect. You
      represented that Jones "got rid of his old phone" in or around November of 2022. You further represented that
      Fortner's phone "got wet" and she was forced to get a new phone, but her phone had retained all old text
      messages as far as you were aware.
   4. You made the following representations in response to our questions concerning the status of Jones' and
      Fortner's phones:
      1. **Jones**:
         1. You stated that Jones gave his phone to MTS in or around November of 2022, and as a result he is

no longer in possession of the phone, nor does he have access to any of the information that was previously on it. <u>Please confirm the name of the person at MTS who Jones gave his phones to, what that MTS person did with it, and when.</u>

2. You stated that you did not know whether Jones has photos that were on his phones before November 2022. <u>Please confirm.</u>
3. You stated that, to your knowledge, this was not his personal phone, but it was owned by MTS. <u>Please confirm.</u>
4. You stated that MTS no longer has access to the phone, either, but you did not know why, or what happened to it. <u>Please confirm what happened to the phone.</u>
5. You speculated that MTS may have turned the phone into the phone company "for credit," though you again stated that you were simply not sure what happened to it. <u>Please confirm.</u>
6. You stated that you did not know whether Jones' iPhone information was backed up to the cloud. <u>Please confirm.</u>
7. You stated that Jones used the same phone number before and after the event. <u>Please confirm.</u>
8. You stated that both Jones and Fortner used AT&T as their carrier.

2. **Fortner**:
    1. You represented that Ms. Fortner's cell phone "got wet" during a dive, and that she was forced to get a new phone. We asked you when this occurred, and you said you did not know. <u>Please confirm when and how Ms. Fortner's phone "got wet."</u>
    2. You further stated that this new phone still has all of her prior text messages dating back to 2015 or 2016.
    3. We asked you to confirm whether Ms. Fortner had all of the photos it had before it got wet. You said you did not know. <u>Please confirm.</u>
    4. You stated that Fortner used the phone number before and after the phone "got wet." Please confirm.
    5. When we asked you why none of these text messages had been produced, you responded that "none are responsive" as far as you are aware.
    6. You again confirmed that your clients did not turn over or provide any text messages to you that would allow you to search for responsive information.
    7. You confirmed that you have not seen any of Fortner's text messages, nor have you reviewed any of Fortner's text messages to determine whether any are privileged.
    8. You represented that, to ensure collection and production of responsive messages, you had simply "relied on my client who told me she doesn't have anything."

3. <u>**Status of production:**</u>
    1. We asked you whether your clients had completed their productions. You responded that your clients had completed production of all documents to which they did not object, including (1) all documents and correspondence with plaintiffs, and (2) all documents in your clients' possession that relate to the Lake Tahoe litigation.
    2. You also mentioned that a small additional production of a "handful" of documents was forthcoming, based on information you received just before our call from your clients. You did not (or could not) identify the size of this production, and you did not offer any reason these documents had not been previously produced.
    3. You identified the source of this forthcoming production as being an employee of MTS named Robert Mooney.

4. <u>**Format of production:**</u>
    1. You represented that you produced your clients' documents in PDF format because you believed this was the only way to bates-label emails.
    2. We informed you that emails and other documents are routinely produced in litigation with bates-labels and metadata.
    3. You explained that you were unsure how to make such a production given your "limited resources" as a solo practitioner, and we agreed to provide you with tips and instructions concerning how such a production could be made.
    4. At the end of this e-mail, we have provided instructions and tips concerning how emails and other documents can be produced as they are stored in the ordinary course without losing metadata.
    5. You also represented that it might "take time" for you to produce documents with metadata, and suggested that narrowing the scope of the documents would speed up the process.
    6. We explained that production as these documents are kept in the ordinary course was required under the rules, and Pacific Bell would not prejudice itself by agreeing to a delayed production, or to narrowing the scope of documents it is willing to receive with metadata.
    7. We again explained that Pacific Bell will pay for an independent third-party eDiscovery vendor to handle all data collection and production for your clients.

5. <u>**Privilege assertion:**</u>

1. We asked you to describe the nature of the privilege you claim that forms the basis of your client's refusal to produce a majority of the responsive documents requested in the subpoena.
2. You again claimed that your clients entered into an oral agreement with the Wall Street Journal to act as reporters, and that as a result, all documents and communications relating to that investigation were privileged.
3. You admitted that the reporters' privilege can be waived, but again insisted that EDF's production of the very documents you claim are privileged somehow does not wave privilege as to your clients.
4. We asked you to provide the basic details of this alleged agreement between your clients and the Journal, and you were unable to provide any of the information requested, including:
    1. When the agreement was entered between your clients and the Wall Street Journal;
    2. Who at the Wall Street Journal entered into the agreement with your clients; or
    3. The scope of the agreement between your clients and the Wall Street Journal, and what was covered.

6. **Privilege log:**
    1. You confirmed that your clients refuse to produce a privilege log.

**Methods of Production that Comply with the Federal Rules and Pacific Bell's subpoena:**

Finally, as discussed, it is a standard (and required) practice in litigation to bates label and produce emails and other documents without losing or otherwise altering metadata.

The following are key steps you can and should take to comply with your production obligations. We again reiterate our willingness to pay for a vendor to simply conduct the collection and handle bates-labeling and production for you.

1. The process for labeling and producing varies depending on the technology being employed to collect and review documents.
2. As an example, discovery software called Relativity is the most widely used, and it is used by a variety of e-discovery vendors and law firms that can collect data from most enterprise platforms and makes it possible to review the data and create productions with both automated and custom workflows while allowing bates stamping and redaction without altering or otherwise removing metadata.
3. If you do not have access to this or similar software, an e-discovery vendor can assist without requiring familiarity with the technological requirements to produce documents in a manner that meets the requirements of the FRCP.
4. In the absence of such a tool, you could simply produce documents in their native form as we requested in our earlier correspondence, and we would be willing to bates label the documents for you.
5. If the documents are located in Outlook, you can drag the messages out of Outlook into a folder where they will be saved as MSG files, which can be exported via FTP to allow preservation of the documents' metadata.

Please provide answers to the identified questions prior to our conference with the Court on December 21, and let us know whether your clients agree to produce its documents in a form that complies with the federal rules.

Thanks,

Jon

**Jon David Kelley**
---------------------------------------------------------
**KIRKLAND & ELLIS LLP**
4550 Travis Street, Dallas, TX 75205
**T** +1 214 972 1755  **M** +1 480 225 9934
**F** +1 214 972 1771
---------------------------------------------------------
jon.kelley@kirkland.com

**From:** Joshua Koltun <joshua@koltunattorney.com>
**Sent:** Friday, December 15, 2023 2:38 PM
**To:** Karis, Hariklia <hkaris@kirkland.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>; Meier, Peter C. <petermeier@paulhastings.com>; *navidhillon@paulhastings.com <navidhillon@paulhastings.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

Lets talk at 10 am Pacific Monday

**Joshua Koltun** ATTORNEY

One Sansome Street
Suite 3500, No. 500
San Francisco, CA 94104

415.680.3410
866.462.5959 fax
joshua@koltunattorney.com

---

**From:** Karis, Hariklia <hkaris@kirkland.com>
**Sent:** Friday, December 15, 2023 4:47 AM
**To:** Joshua Koltun <joshua@koltunattorney.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>; Meier, Peter C. <petermeier@paulhastings.com>; *navidhillon@paulhastings.com <navidhillon@paulhastings.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

Joshua,

Thank you for your email seeking to respond to the issues I raised with your clients' document production. Unfortunately, the description of the reason you chose to convert the produced files into a single PDF does not resolve the issue and, on its face, does not comply with the requirement contained in the Federal Rules and Pacific Bell's subpoena that BtB produce responsive documents as they are stored in the ordinary course.

The admission that you altered the format of every document produced—and in a way that *removed* all metadata and other necessary information from those documents—only confirms that you have not complied with these requirements. As you are undoubtedly aware, counsel for a party cannot unilaterally alter the format of documents prior to production, which is precisely why courts have found that producing emails and other electronics documents as PDFs (let alone as a single PDF, thousands of pages long) is not permitted. Respectfully, we do not need the "roadmap of the file structure and contents of this production" you say you are working to create. Instead, you need only simply produce the files in their native format, which will enable us to run searches using metadata and other information already included in the native versions of the files themselves. For these reasons, we again request that BtB's production be immediately provided in the native format in which these documents are ordinarily maintained with their associated metadata.

Your email also raises new and equally significant concerns about data preservation and potential spoliation issues.

First, please explain what you mean by "the cellphones from the relevant time period . . . no longer exist." What happened to the phones to cause them to "no longer exist"? Were the phones destroyed, and if so, by whom and when? Why were they destroyed, if that's what happened? Did anyone give your clients permission to discard or destroy the phones and if so, who gave such permission?

Second, to what time period are you referring? Are you suggesting no phone records exist between 2020 and early 2022? As you can imagine, this is a critical timeframe in the lifespan of a case that your clients are in large part responsible for instigating, and any records in your clients' possession from that period are highly relevant and important to obtain.

Third, in whose name, specifically, were the phones at issue? Given your representation of multiple clients in this case, it is unclear to whom you are referring.

Fourth, were the phone numbers for these individuals abandoned, or was the phone changed and the number transferred to a different phone? The attached documents produced by the Environmental Defense Fund reflect text messages sent from the cell phones of Mr. Jones (+1-858-232-1958) and Ms. Fortner (+1-858-349-4503) to Tom Neltner in July of this year. We are also aware that Mr. Jones and Ms. Fortner had the same phone numbers at least as early as January 2021. Given that these numbers were being used by Jones and Fortner as recently as July, are you alleging that these cell phones are now among those that "no longer exist"?

Given that potentially critical evidence located on the phones that you contend no longer exists, please confirm that your clients will consent to Pacific Bell serving a subpoena for the relevant phone company (or companies) seeking relevant evidence and related information.

Fifth, you also haven't responded to the other questions posed in my email, namely:

1. Who collected these documents and who determined what documents were responsive?
2. What is the universe of sources and custodians searched, including specific email addresses and phone numbers?
3. Were hard-copy documents collected and searched?

Finally, Pacific Bell's subpoena included a request that BtB provide a privilege log for any documents it claims are privileged.  You have made clear that BtB has withheld a significant volume of documents based on the purported "reporters privilege."  When will BtB provide its privilege log?

We are available to confer this weekend or Monday between 10 a.m. to 1 p.m. Please confirm if the proposed times work.

Carrie

**Carrie Karis, P.C.**
**--------------------------------------------------------**
**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2330  **M** +1 847 525 6908
**F** +1 312 862 2200

hkaris@kirkland.com

**From:** Joshua Koltun <joshua@koltunattorney.com>
**Sent:** Sunday, December 10, 2023 1:29 PM
**To:** Karis, Hariklia <hkaris@kirkland.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>;
*navidhillon@paulhastings.com <navidhillon@paulhastings.com>; Meier, Peter C. <petermeier@paulhastings.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

Dear Carrie:

I converted those documents that could be converted into PDFs, so that we could make a bates stamped production of documents.  This created an easily searchable document and will enable us to specify documents in any discussion we may have.  We are working on creating a roadmap of the file structure and contents of this production that will assist defense counsel in reviewing documents and in any discussion we may have concerning this production.  My understanding is that the cellphones from the relevant time period (i.e. excluding the time during which my clients were working with the Journal and EDF, as to which we claim privilege) no longer exist.  My clients are trying to determine whether there is any place were such old text messages might still exist.

I can generally be available this week from Wednesday to Friday, although I'd appreciate if you would offer me more than one time because something may come up.

Best regards,

**Joshua Koltun** ATTORNEY

One Sansome Street
Suite 3500, No. 500
San Francisco, CA 94104

415.680.3410
866.462.5959 fax

joshua@koltunattorney.com

---

**From:** Karis, Hariklia <hkaris@kirkland.com>
**Sent:** Wednesday, December 6, 2023 8:33 PM
**To:** Joshua Koltun <joshua@koltunattorney.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>; *navidhillon@paulhastings.com <navidhillon@paulhastings.com>; Meier, Peter C. <petermeier@paulhastings.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

Joshua,

First, I don't think it is worth debating what relief you requested from the Court and what orders remain in effect. The Court will ultimately decide.

Second, the Court's November 9 Order is clear: BtB was required to "produce all documents called for by the Subpoena" by no later than November 30. That did not happen even though the Order is still in effect, and we made clear during our call that Pacific Bell was not agreeing to an extension. As a result, BtB is in violation of the Order. The documents and other responsive material you refer to as "privileged" and "irrelevant," and that you refuse to produce, are the same documents the Court Ordered BtB to produce by November 30.

Third, even the limited production made by BtB and MTS violates the Federal Rules. Not only was this initial production untimely -- made five days *after* the deadline imposed by the court -- but the produced materials were inexplicably produced as a single PDF, disregarding the format specified in the subpoena as well as the standard required by the Federal Rules of Civil Procedure. The subpoena specified that responsive documents were to be produced "as they are kept in the usual course of business." Rule 45 provides that "[i]f a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. Pro 45 (e)(1)(B).

A single PDF combining multiple unrelated pages is not the way documents are maintained in the ordinary course of business and creates significant problems that the instructions in the subpoena and the Federal Rules were meant to avoid. As an example, the production of multiple unrelated pages together in one PDF removes any ability to determine relationship, order, and sequencing of any of the documents contained within the PDF. Loading a large PDF into a database and then searching for information is also cumbersome. Further, documents produced in one large PDF have no useable metadata pertaining to the underlying documents contained within the PDF. Courts have repeatedly found that producing emails and other electronics documents as PDFs (let alone as a single PDF, thousands of pages long) is not permitted. *See, e.g., Abbott Labs. v. Adelphia Supply USA,* 2019 WL 3281324 (E.D.N.Y. 2019) (recommending sanctions and a default judgment against a party in part because they produced emails and invoices in a single, unusable, 1,941 page PDF file); *Johnson v. Italian Shoemakers, Inc.,* 2018 WL 5266853, at *2 (W.D.N.C. Oct. 23, 2018) (granting motion for sanctions after plaintiff repeatedly produced emails in PDF format, which "is not how emails are kept in the ordinary course of business"). BtB's production should be immediately provided in the native format in which these documents are ordinarily maintained with their associated metadata.

Moreover, we have significant concerns about the selection and production process of even the narrow subset of documents BtB unilaterally selected for its untimely production. The following is a non-exhaustive list of basic questions:

1. Who collected these documents and who determined what documents were responsive?
2. What is the universe of sources searched, including specific email addresses and phone numbers?
3. Why are no text messages included?
4. Where hard-copy documents collected and searched?
5. Who compiled the collected documents into a PDF and why?

Please provide a time you are available to meet and confer concerning these issues.

Regards,

Carrie

**Hariklia ("Carrie") Karis, P.C.**
-------------------------------------------------------

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2330  **M** +1 847 525 6908
**F** +1 312 862 2200

hkaris@kirkland.com

---

**From:** Joshua Koltun <joshua@koltunattorney.com>
**Sent:** Tuesday, December 5, 2023 5:53 PM
**To:** Karis, Hariklia <hkaris@kirkland.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>;
*navidhillon@paulhastings.com <navidhillon@paulhastings.com>; Meier, Peter C. <petermeier@paulhastings.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell
Telephone Company

Dear Carrie:

I find your email both mystifying and offensive. I don't understand how you can contend that "your papers with the
Court do not seek relief for the production obligations that the Court required."

In any event, my clients have been making their best efforts to collect and produce documents in an orderly fashion,
subject to their efforts to obtain an adjudication of their objections. Defendant's cursory reference in its opposition to
the fact "a few documents" were produced (DE 88 at 4) is highly misleading. Thousands of pages of documents were
produced, as well as extensive geolocation information, and some additional such data will be produced tomorrow.
Defendant will be fully able to conduct the independent investigation of lead-clad cables in Lake Tahoe that it claims it
wishes to conduct.

The remainder of what Defendant is now seeking is not only privileged but irrelevant to the case before the Court.
Please let me know whether you wish to proceed with your efforts to have a third party vendor gain access to that
material. My clients will oppose.

**Joshua Koltun** ATTORNEY

One Sansome Street
Suite 3500, No. 500
San Francisco, CA 94104

415.680.3410
866.462.5959 fax
joshua@koltunattorney.com

---

**From:** Karis, Hariklia <hkaris@kirkland.com>
**Sent:** Saturday, December 2, 2023 4:56 AM
**To:** Joshua Koltun <joshua@koltunattorney.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>;
*navidhillon@paulhastings.com <navidhillon@paulhastings.com>; Meier, Peter C. <petermeier@paulhastings.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell
Telephone Company

Joshua,

Following up on our discussion earlier this week, as you are aware, the Court's November 9 Order required Below the
Blue ("BtB") to produce "all documents called for by the Subpoena by no later than November 30, 2023." BtB has not
produced any documents by this Court-imposed deadline. No stay of the Order has been entered and during our call,
we were very clear that we did not and would not agree to an extension. Why Mr. Jones had still not provided the
documents to you when we spoke on Tuesday remains of concern and a topic for discussion with the Court at the
appropriate time. In short, BtB is currently in violation of the Order. Moreover, your papers with the Court do not seek

relief for the production obligations that the Court required – in addition to misstating some key facts that we will address in due course.

Please be advised that, as a result of the initial delay and now violation of the Court's order, we intend to ask the Court to permit collection of BtB's files by an independent third-party e-discovery vendor to facilitate compliance with the Order.  Pacific Bell is willing to pay for this collection service.

We suggest four independent companies that specialize in document collection, below.  As soon as possible, but no later than COB on December 5, please let us know which of these companies BtB agrees on to conduct the collection for purposes of compliance with the Order.

1. Alvarez & Marsal
2. Deloitte
3. AlixPartners
4. Ankura

Absent agreement by that date, we will request that Alix Partners conduct the collection.  We intend to ask the Court to order this collection as soon as possible. Please advise if you wish to discuss this matter any further. We too will make ourselves available over the weekend, if that is necessary, to advance this critical discovery issue.

Regards,

Carrie

**Hariklia ("Carrie") Karis, P.C.**
-------------------------------------------------------
**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2330  **M** +1 847 525 6908
**F** +1 312 862 2200

hkaris@kirkland.com

---

**From:** Joshua Koltun <joshua@koltunattorney.com>
**Sent:** Friday, December 1, 2023 7:11 PM
**To:** *navidhillon@paulhastings.com <navidhillon@paulhastings.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Karis, Hariklia <hkaris@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>
**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

Counsel, if you wish to talk over the weekend let me know and I will make myself available.  Have a good weekend

**Joshua Koltun** ATTORNEY

One Sansome Street
Suite 3500, No. 500
San Francisco, CA 94104

415.680.3410
866.462.5959 fax
joshua@koltunattorney.com

---

**From:** Dhillon, Navi <navidhillon@paulhastings.com>
**Sent:** Friday, December 1, 2023 3:51 PM
**To:** Nicholas Cannarozzi <NCannarozzi@caed.uscourts.gov>; Joshua Koltun <joshua@koltunattorney.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Karis, Hariklia <hkaris@kirkland.com>; Nomellini, Mark J. <mnomellini@kirkland.com>

**Subject:** RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

Hi Nic

On 1, defense counsel will confer with Mr. Koltun on scheduling on the pre-discovery conference.

On 2, defense counsel will be filing an opposition to the extension request.

Thank you and have a nice weekend.

Best regards



**Navi Dhillon | Partner**
O: 415.856.7080 | M: 415.203.8805

**From:** Nicholas Cannarozzi <NCannarozzi@caed.uscourts.gov>
**Sent:** Friday, December 1, 2023 3:44 PM
**To:** Joshua Koltun <joshua@koltunattorney.com>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Karis, Hariklia <hkaris@kirkland.com>; Dhillon, Navi <navidhillon@paulhastings.com>; Nomellini, Mark J. <mnomellini@kirkland.com>
**Subject:** [EXT] RE: Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

Good afternoon,

Are the parties requesting the matter be set for another pre-discovery motion conference?  If so, we would have 12/14, 12/21 and 12/28 as our next three available.  All at 10:00 a.m. via Zoom.  As to your ex parte motion for an extension of time, will defense counsel be filing a response to that request?  Thanks.

Nic Cannarozzi
Courtroom Deputy to the
Honorable Jeremy D. Peterson and
the Honorable Edmund F. Brennan
United States District Court
501 I Street, Suite 4-200
Sacramento, CA 95814
916.930.4172

**From:** Joshua Koltun <joshua@koltunattorney.com>
**Sent:** Friday, December 1, 2023 12:08 PM
**To:** Nicholas Cannarozzi <NCannarozzi@caed.uscourts.gov>
**Cc:** Kelley, Jon David <jon.kelley@kirkland.com>; Karis, Hariklia <hkaris@kirkland.com>; *navidhillon@paulhastings.com <navidhillon@paulhastings.com>; Nomellini, Mark J. <mnomellini@kirkland.com>
**Subject:** Scheduling Informal Conference in 2:21-cv-00073 California Sportfishing Protection Alliance v. Pacific Bell Telephone Company

CAUTION - EXTERNAL:

Dear Mr. Cannarozzi:

I am newly-engaged counsel, (as of 11/22) for Third Party Witnesses Below the Blue, who has previously been unrepresented in this action.  On 11/24 I emailed counsel for defendants in this matter asking to meet and confer. (Note that this was during the Thanksgiving holiday).  On 11/28 I received a response and we scheduled a meet and confer Zoom call the morning of 11/29 (8 am), on a variety of issues and deadlines. Later that day I filed with the court an Administrative Motion for Extensions of Time; that filing contains more details about the meet and confer session. Dkt 87 at 2-3.

One upshot of the meet and confer is that Beyond the Blue wishes to file a motion to reconsider (in part) this Court's Order granting motion to compel (Dkt 80).  That motion to reconsider will be due on December 7 (unless the Court grants the requested extension) The Zoom call ended after an hour, and I understood that we would be exchanging potential times to propose for the informal conference with the Court pursuant to its procedures for discovery motions. Later on the morning of 11/29 I sent defense counsel proposed times for such a conference but I have not heard back from them.   I am copying them on this email.

Speaking for myself, I can make myself available anytime next week, although I note that, in the absence of an extension of time my date to file the motion is December 7.

Thank you for your assistance with scheduling such a conference.


**Joshua Koltun** ATTORNEY

One Sansome Street
Suite 3500, No. 500
San Francisco, CA 94104

415.680.3410
866.462.5959 fax
joshua@koltunattorney.com

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

*******************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.


The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.


The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.


The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.


The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.


The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.


The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.